**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------X
**CONGREGATION RABBINICAL COLLEGE OF**               7:20-cv-06158-KMK
**TARTIKOV, INC., RABBI MORDECHAI BABAD,**
**RABBI MEILECH MENCZER, RABBI JACOB**
**HERSHKOWITZ, and RABBI CHAIM ROSENBERG,**

                                        **Plaintiffs,**

        -against-

**VILLAGE OF POMONA, NY and BOARD OF TRUSTEES OF**
**THE VILLAGE OF POMONA, NY,**

                                        **Defendants.**
----------------------------------------------------------------------------X


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
# THEIR MOTION FOR PRELIMINARY INJUNCTION

Joseph Churgin (JC 6854)              Storzer & Associates, P.C.
Donna Sobel (DS 3267)                 Roman Storzer, (*pro hac vice* admission
Savad Churgin                         pending)
55 Old Turnpike Road, Suite 209       1025 Connecticut Avenue, NW – Suite 1000
Nanuet, New York 10954                Washington, D.C. 20036
                                      (202) 857-9766
Stepanovich Law, P.L.C.               storzer@storzerlaw.com
John G. Stepanovich
618 Village Drive, Suite K
Virginia Beach, Virginia 23454
(757)-410-9696
john@stepanovichlaw.com               Attorneys for Plaintiffs

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………….. ii

**INTRODUCTION**………...………………………………………………..…... 1

**FACTUAL BACKGROUND**………………………….…………………….…... 2

**ARGUMENT**………………………..………………………………… 11

I.    Plaintiffs' Motion For A Preliminary Injunction Should Be Granted………..……… 11

    A.  Standard of Review. ……………………….…………………… 12

    B.  Plaintiffs Meet the Standard for a Preliminary Injunction ..……………… 12

        1.    Plaintiffs Can Make a Strong Showing of Irreparable Harm ……. 13

        2.    The Court's prior ruling on these claims demonstrates a clear and substantial likelihood of success on the merits…..……………… 14

            a)    The single obstacle to relief has been removed…………. 16

            b)    RLUIPA's Substantial Burdens Provision ………..……. 21

            c)    New York Free Exercise ………………..……………… 25

            d)    Freedom of Association. ………………..……………… 26

            e)    Fair Housing Act. ………………..…………………….. 27

        3.    The Public Interest Favors Granting Relief…………………… 30

    **CONCLUSION**................................................................................ 30

## Cases

*Able v. U.S.*, 847 F. Supp. 1038 (E.D.N.Y. 1994) ........................................................................ 14

*Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467 (S.D.N.Y. 2019) ..................................... 30

*Al Falah Ctr. v. Twp. of Bridgewater*, No. CV112397MASLHG, 2013 WL 12322637 (D.N.J.
    Sept. 30, 2013) ........................................................................................................................... 13

*Amarin Pharma., Inc. v. FDA*, 119 F. Supp. 3d 196 (S.D.N.Y. 2015) ......................................... 30

*American Civil Liberties Union v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ................................... 30

*Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long
    Beach*, 298 A.D.2d 583, 584, 749 N.Y.S.2d 68 (2002) ............................................................ 5

*Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999) .................................................................................. 12

*Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267 (S.D.N.Y. 2009) ............................. 19

*Blackman v. District of Columbia*, 277 F. Supp. 2d 71 (D.D.C. 2003) ........................................ 21

*Boni Enterprises, LLC v. Zoning Bd. of Appeals of Town of Clifton Park*, 124 A.D.3d 1052 (3d
    Dept. 2015) ............................................................................................................................... 18

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ......................................................................... 26

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) .......................................................... 12, 14

*Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510 (2006) ..................................... 26

*Centers. of N.Y., Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146 (N.D.N.Y. 2019) ........................ 13

*Cobell v. Norton*, 310 F. Supp. 2d 77 (D.D.C. 2004) ................................................................... 21

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574
    (S.D.N.Y. 2013) .................................................................................................................... 16, 17

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352
    (S.D.N.Y. 2015) ............................................................................................................... 5, 16, 27

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 280 F. Supp. 3d 426
    (S.D.N.Y. 2017) ................................................................................................................... passim

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona* 945 F.3d 83 (2d Cir. 2019)
    ................................................................................................................................................. passim

*Cornell University v. Bagnardi,* 68 N.Y.2d 583 (1986) ................................................................. 4

*Couch v. Jabe*, 679 F.3d 197 (4th Cir. 2012)................................................................................. 25

*Dewey Beach Enterprises, Inc. v. Town of Dewey Beach*, No. C.A. 09-507-GMS, 2010 WL
    3023395 (D. Del. July 30, 2010)............................................................................................... 20

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................................ 13

*Fighting Finest, Inc. v. Bratton*, 95 F.3d 224 (2d Cir. 1996)........................................................ 27

*First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745 (D. Minn. 2018) ...................... 13

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144 (2d Cir. 1999).......... 12, 13

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ........... 30

*Golf Vill. N., LLC v. City of Powell, Ohio*, 338 F. Supp. 3d 700, 703 (S.D. Ohio 2018)............. 19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ................. 24

*Grace Church of N. Cty. v. City of San Diego*, No. 07-CV-419 H (RBB), 2008 WL 11508687
    (S.D. Cal. Aug. 4, 2008) ........................................................................................................... 14

*Guatay Christian Fellowship v. Cty. of San Diego*, No. 08CV1406 JM(CAB), 2008 WL 4949895
    (S.D. Cal. Nov. 18, 2008) ......................................................................................................... 14

*Hope Rising Cmty. Church v. Municipality of Penn Hills*, No. CV 15-1165, 2015 WL 7720380
    (W.D. Pa. Oct. 28, 2015) .......................................................................................................... 14

*In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1261 (7th Cir. 1980).......................................... 21

*Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996) ...................................................................... 13

*Kitevski v. City of New York*, No. 04 CIV. 7402 RCC RLE, 2006 WL 680527 (S.D.N.Y. Mar. 16, 2006) ............................................................................................................................... 30

*Matter of Gernatt Asphalt Products, Inc. v. Town of Sardinia,* 87 N.Y.2d 668 (1996) ......... 10, 18

*Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016) ................... 28

*Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173 (D. Conn. 2001) ...... 13

*Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88 (S.D.N.Y. 2000) ............................................................................................................................... 30

*New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ................................... 30

*New York Inst. of Tech., Inc. v. Ruckgaber*, 65 Misc. 2d 241 (Sup. Ct. 1970) ............................ 5

*NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461 (S.D.N.Y. 2004) ..................... 27

*Oneida Nation of New York v. Cuomo,* 645 F.3d 154 (2d Cir. 2011) ............................................. 12

*Reaching Hearts Int'l, Inc. v. Prince George's Cty*., 584 F. Supp. 2d 766 (D. Md. 2008) ........... 13

*S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 121 F. Supp. 2d 195 (D. Conn. 2000). 13

*Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) ......................................................... 12

*Sobel v. Yeshiva Univ.*, 839 F.2d 18 (2d Cir. 1988)....................................................................... 28

*Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) ........................................................................... 27

*Texas Dep't of Housing and Comm. Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507 (2015) ......................................................................................................................... 28, 29

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995).............................. 12

*Town of Islip v. Dowling Coll.*, 275 A.D.2d 366, 367, 712 N.Y.S.2d 160 (2000)......................... 5

*Tunick v. Safir*, 209 F.3d 67 (2d Cir. 2000) ................................................................................ 13

*United States v. Rutherford Cty, Tenn.*, No. 3:12-0737, 2012 WL 2930076................................ 13

*Vietnamese Buddhism Study Temple In Am. v. City of Garden Grove*, 460 F. Supp. 2d 1165 (C.D. Cal. 2006)........................................................................................................................... 14

*Westchester Cnty. v. Dept. of Housing & Urban Dev.*, 802 F.3d 413 (2d Cir. 2015) ................. 29

*Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477 (S.D.N.Y. 2006)............... 23

*Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007)........................ 22, 23

*Willis v. Comm'r, Indiana Dep't of Correction*, 753 F. Supp. 2d 768 (S.D. Ind. 2010) .............. 25

**Statutes**

42 U.S.C. § 2000cc ............................................................................................... 19, 22, 25

Fair Housing Act, 42 U.S.C. § 3604(a).................................................................................. 27

N.Y. CONST. Art I, § 3 .......................................................................................................... 26

U.S. CONST. Amend. XXI..................................................................................................... 17

Local Law No. 1 of 2001 ............................................................................................. *passim*

Local Law No. 1 of 2007 .................................................................................................. 6, 7

Local Law No. 5 of 2004 ............................................................................................. *passim*

Local Law No. 5 of 2007 ...................................................................................................... 7

Village Code § 130 ...................................................................................................... *passim*

## INTRODUCTION

Plaintiffs Congregation Rabbinical College of Tartikov, *et al.* ("Tartikov") move this Court to enjoin the Defendants, the Village of Pomona and the Board of Trustees of the Village of Pomona (collectively the "Village", "Defendants" or "Pomona"), from enforcing certain land use regulations that prohibit them from applying for, constructing and using a rabbinical college on property located within the Village.   Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs seek a preliminary order enjoining Defendants from enforcing specific zoning code provisions—adopted through the passage of two Local Laws that the Village has now refused to repeal—that prohibit non-accredited educational institutions and housing for students with families.

This Court previously found that these land use regulations that prohibit the Plaintiffs' use of the subject property violates their statutory and constitutional rights. As a result, this Court enjoined them.  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 280 F. Supp. 3d 426 (S.D.N.Y. 2017) ("*Tartikov III*"), *aff'd in part, rev'd in part*, 945 F.3d 83 (2d Cir. 2019) (*"Tartikov IV*").  The Second Circuit upheld the Court's injunction based upon the discrimination claims regarding two Local Laws, the 2007 local law regarding educational institutions, and the 2007 "Wetlands Protection Law," both of which also barred Tartikov from using its property as a rabbinical school.  However, it reversed the Court's injunction with respect to the discrimination and related claims regarding the 2001 and 2004 Laws, and also held that Plaintiffs lacked "standing" to challenge those Laws with respect to their other claims.  Now, the Plaintiffs have taken the specific action recommended by the Village that "implicates" these challenged provisions—a petition for an amendment to change the laws themselves.  The Village Board refused to even consider that Petition.  The basis of the Court of Appeals' ruling has now been removed.  Because Plaintiffs now unquestionably have standing to challenge the Village's zoning

1

provisions, their claims are ripe, and they have a very strong likelihood of success on the merits of claims that had already previously been successful at trial.  Issuing an injunction in this case is appropriate here, given the Court's prior findings of liability and especially since the other factors under the standard for a preliminary injunction are easily met, and given the continuing deprivation of Plaintiffs' civil and constitutional rights.

## FACTUAL BACKGROUND

Tartikov is a New York religious corporation formed to establish a rabbinical college, which includes a housing component for students and their families, in Rockland County, New York.  Declaration of Michael Tauber, submitted herewith ("Tauber Dec.") ¶¶ 10-11; Declaration of Chaim Babad, submitted herewith ("C. Babad Dec.") ¶¶ 8-10, Ex. 1.  Plaintiffs believe that Orthodox/Hasidic Jews are prevented from resolving disputes that arise within their community in the secular courts.  Rather, these disputes must be resolved by specially trained Orthodox Jewish rabbinical judges, or *dayanim*.  Declaration of Chaim Rosenberg, submitted herewith ("Rosenberg Dec.") ¶ 19; Declaration of Jacob Hershkowitz, submitted herewith ("Hershkowitz Dec.") ¶ 29; Declaration of Meleich Menczer, submitted herewith ("Menczer Dec.") ¶¶ 20, 25; Declaration of Mordcho Babad, submitted herewith ("M. Babad Dec.") ¶¶ 28, 34; Tauber Dec. ¶¶ 27-28; C. Babad Dec. ¶¶ 18-19; Declaration of Steven Resnicoff, submitted herewith ("Resnicoff Dec."), Exhibit A ¶¶ 23-28.  Motivated by its sincere religious belief, Tartikov plans to develop and operate a rabbinical college specifically to train Orthodox Jewish rabbis to be qualified *dayanim*.  Tauber Dec. ¶ 11; C. Babad Dec. ¶ 10.  Tartikov's students, including Meilech Menczer, Jacob Hershkowitz and Chaim Rosenberg (the "Student Plaintiffs"), are young Orthodox/Hasidic men who are religiously commanded to marry young and raise large families.  They are religiously prohibited from using birth control and are commanded to care for their families.  Rosenberg Dec.

¶¶ 5-6, 8-9, 47, 52; Hershkowitz Dec. ¶¶ 14-16, 82, 87; Menczer Dec. ¶¶ 10-11, 39(n), 40, 45; Resnicoff Dec. Exhibit A ¶¶ 57-63.  The Student Plaintiffs are motivated by religious belief to be educated as *dayanim*.  Rosenberg Dec. ¶¶ 16-18; Hershkowitz Dec. ¶ 48; Menczer Dec. ¶¶ 19. Mordechai (or Mordcho) Babad is motivated by his religious belief to be the dean and to teach at the rabbinical college.  M. Babad Dec. ¶ 39.

Plaintiffs believe that in order to study to become *dayanim*, they must exile themselves to a Torah community.  Rosenberg Dec. ¶ 46; Hershkowitz Dec. ¶ 81; Menczer Dec. ¶ 69; Resnicoff Dec., Exhibit A ¶¶ 68-79.  Tartikov intends to create a religious campus where students will be completely dedicated to their religious obligations of mastering the Code of Jewish Law in order to become *dayanim* while at the same time being able to meet their religious obligations to God and their family.  C. Babad Dec. ¶¶ 10, 21, 36; Tauber Dec. ¶¶ 15, 17, 19.  In order for Tartikov to achieve its religious goal, it purchased an approximately 100-acre property (the "Property") in the Village of Pomona in August 2004.  C. Babad Dec. ¶¶ 8, 24; Tauber Dec. ¶¶ 9, 34.

The entire jurisdiction of Pomona is designated as an "R–40" residential zoning district.[1] Village of Pomona Zoning Code ("Village Code") §130-5.[2]  A use that is not listed as a permitted or special permit use in the R-40 zone is prohibited in that district.  *Id.* § 130-9.  Violations of the Village's zoning code are subject to fines up to $5,000 per day and/or imprisonment up to 15 days.

---

[1] Permitted uses in the R-40 district include one-family residences, public utilities rights-of-way, libraries and museums, public parks and playground, and agricultural pursuits.  Village Code § 130-9.  "Special permit" uses in the R-40 district include recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings; reservoirs, water towers and water tanks; telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company; camps; wireless telecommunication services facility; educational institutions; and houses of worship are currently allowed in the R-40 district as "special permit" uses.   Village Code § 130-10.

[2] The Village Code is attached as Exhibit 32 to the Declaration of Joseph A. Churgin, dated October 20, 2020, submitted herewith ("Churgin Dec.").

*Id.* § 130-24.  In order for Tartikov to use its Property as a rabbinical college, building permits and a certificate of occupancy are required, which Tartikov is unable to obtain if its use is not permitted. *Id.* § 130-22(C),(E).

"Special permit" uses are allowed in the Village if they are in "conformance with additional standards [as] required by [the zoning] chapter . . . in their respective districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of [the zoning] chapter." *Id.* § 130-28(e)(1).  "Educational institutions," as regulated by the Village's zoning code—as amended by Local Law No. 1 of 2001 and Local Law No. 5 of 2004, discussed below—are allowed as a special permit use in the R-40 district.  Village Code § 130-10.

Prior to 2001, the Village's zoning code completely prohibited colleges.  Churgin Dec. Ex. 1.  At that time, the code permitted "Schools of general instruction," limited to "[a]n educational institution giving regular instruction for grades <u>between kindergarten and 12th grade</u>" (emphasis added), among other conditions.  *Id.*  This prohibition of colleges and universities, or a requirement that colleges and universities must obtain a use variance, violated New York law and were therefore void.  *Cornell University v. Bagnardi*, 68 N.Y.2d 583 (1986).  The Village has admitted that its prohibition of colleges and universities violated New York law.  Churgin Dec. Ex. 2 ¶ 51.

The Village amended its zoning laws related to schools and educational institutions in 2001 and 2004 in an attempt to comply with the requirements of New York state case law.  Churgin Dec. Ex. 3 at 7-8.  However, as discussed below, the Village did so in a manner that continued to exclude the educational requirements of Orthodox/Hasidic Jews by, *inter alia*, requiring schools and educational institutions to be licensed and accredited, by prohibiting student family housing, by limiting housing to an unreasonable 20% of building space, and by enacting a "wetlands

4

protection law" that effectively prohibited any educational institution in the Village.[3]

In 2001, the Village adopted Local Law. No. 1 of 2001, which made "educational institutions" special permit uses rather than uses as of right and still prohibited colleges and universities in violation of New York law. *See supra*; Churgin Dec. Ex. 4. However, under the 2001 Law (prior to 2004), dormitories were still not permitted as part of an educational institution or school use anywhere within the Village of Pomona. *Id.* New York law prohibits local jurisdictions from prohibiting dormitories or requiring dormitories to obtain a use variance, as educational institutions are permitted to engage in activities and locate on their property facilities for such accessory uses as are reasonably associated with their educational purpose.[4] *See Town of Islip v. Dowling Coll.*, 275 A.D.2d 366, 367, 712 N.Y.S.2d 160, 161 (2000); *Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long Beach*, 298 A.D.2d 583, 584, 749 N.Y.S.2d 68, 70 (2002). The Village has also admitted that this prohibition against dormitories violated New York law. Churgin Dec. Ex. 2 ¶ 48.

During this timeframe, adult student housing for Hasidic/Orthodox Jews also became a concern for the Village. Churgin Dec. Ex. 6 (Village Planning Board members questioning whether yeshiva would include dormitories); Churgin Dec. Exs. 7, 8, 9, at 5 (Village and Village officials and employees opposed the Town of Ramapo's proposed master plan that allowed such housing); Churgin Dec. Ex. 10 (Village and Village officials and employees supported efforts to

---

[3] The latter two restrictions have been struck down by this Court, in a decision that was affirmed by the Court of Appeals for the Second Circuit.

[4] Under New York law, student housing is considered to be part of an educational institution use. *See id.*; *New York Inst. of Tech., Inc. v. Ruckgaber*, 65 Misc. 2d 241, 244-45, 317 N.Y.S.2d 89, 93 (Sup. Ct. 1970). This Court has also held that the required student family housing for Tartikov's rabbinical college can be considered to be incidental and required for the educational use. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 382-83 (S.D.N.Y. 2015) ("*Tartikov II*"), *aff'd, Tartikov IV* 945 F.3d 83.

form a proposed village called "Ladentown" to prevent such housing); Churgin Dec. Ex. 12 ¶ 86 (Village sued Ramapo to prevent such housing).   After Tartikov purchased the Property, the Village adopted Local Law No. 5 of 2004.  C. Babad Dec. ¶ 25; Churgin Dec. Ex. 5.  The 2004 Law adopted a "Dormitory" section which, among other things, prohibited both "separate cooking, dining or housekeeping facilities" and "'[s]ingle family, two-family and/or multi-family dwelling units . . . ."  Village Code § 130-4; Churgin Dec. Ex. 5.  These restrictions prevent Tartikov from building its rabbinical college.  C. Babad Dec. ¶ 10; Tauber Dec. ¶¶ 17, 71, 75; Rosenberg Dec. ¶¶ 47, 52, 55, 57-64;  Hershkowitz Dec. ¶¶ 82, 87, 9-96, 103-105; Menczer Dec. ¶¶ 39, 40, 45, 91.

The 2004 Law also required educational facilities to be accredited.  Churgin Dec. Ex. 5. Tartikov cannot be accredited.   Tauber Dec. ¶ 68;  Declaration of Kevin Kinser, submitted herewith, Exhibit A ¶¶ 9, 12-44, 52.   This Court previously found that "Tartikov must be operational before it can be accredited, but Tartikov cannot become operational until it obtains a special use permit, which requires accreditation."  *Tartikov III*, 280 F. Supp. 3d at 476.

Ultimately, these provisions in the Village Code (adopted through the 2001 and 2004 Laws) completely prohibit Tartikov from constructing its proposed rabbinical college, as family housing is required for its students and it cannot be accredited.  The Village has admitted that its zoning code completely prohibits Tartikov's use.  In its memorandum in opposition to Plaintiffs' motion for attorney's fees, currently pending before the Court in the earlier action, Pomona admitted that "the 2001 and 2004 laws still bar construction" of the rabbinical college.  Churgin Dec. Ex. 14 at 18 n.10.  Defendants again made the same admission in their sur-reply on the same motion: "The 2001 and 2004 zoning laws as written <u>do not permit construction of Tartikov's</u> <u>rabbinical college</u>."  *Id.,* Ex. 15 at 2 (emphasis added).

The Village also passed subsequent laws regarding dormitories ("Local Law No. 1 of

2007") and a "wetlands" law ("Local Law No. 5 of 2007") in 2007 (collectively the "2007 Laws"). The 2007 Laws were passed in order to thwart the spread of the Orthodox/Hasidic Jewish community into the Village and in certain respects to specifically target Tartikov and Tartikov's Property. *Tartikov III*, 280 F. Supp. 3d at 446.  Local Law No. 1 of 2007[5] amended Pomona's laws to limit a dormitory building to no more than twenty percent of the total square footage of all buildings on the lot; required an educational institution to have a net lot area of 10 acres; and removed certain steep slopes from net lot area calculations. Churgin Dec. Ex. 16.

Local Law No. 5 of 2007 was ostensibly a "wetlands protection law," but exempted all lots improved with single family homes.  Churgin Dec. Ex. 17.  As a result, Tartikov's property was one of the only properties in the Village subject to Local Law No. 5 of 2007.  Local Law No. 5 of 2007 was also designed to prevent Tartikov from building its proposed rabbinical college and was motivated by discriminatory animus against Orthodox/Hasidic Jews on the part of the Village and its Trustees. *Tartikov IV*, 945 F.3d at 89, 122.

On July 9, 2007, Tartikov sued the Village claiming, among other things, that the 2001 and 2004 Laws violated RLUIPA's Substantial Burden provision, the Fair Housing Act, the First

---

[5] Local Law No. 1 of 2007 was passed during a contentious Board of Trustees meeting where some of the attendees were opposed to the development because it was proposed by Orthodox/Hasidic Jews, including concerns that the Village not "turn into another Kiryas Joel," a Hasidic community located in the Town of Monroe. Churgin Dec. Ex. 18 page 56, lines 16-20. Village officials explicitly stated their intent to thwart Tartikov's plans, including in campaign materials where the officials promised that they would "stand up to the threat" that Tartikov posed and stating that the rabbinical college "could completely change the village and the make-up of the village." Churgin Dec. Exs. 19 and 20.  Village officials called Tartikov's proposed residents "homogenous individuals" and stated that stated that the Village should "maintain[ ] its cultural and religious diversity."  Churgin Dec. Ex. 12 ¶ 106 and Ex. 21.  This Court found that the 2007 Laws were enacted "to prevent the spread of the Orthodox/Hasidic community into the Village, and in certain respects, to specifically target the Subject Property and Tartikov." *Tartikov III*, 280 F. Supp. 3d at 446.  These holdings were affirmed by the Second Circuit Court of Appeals. *Tartikov IV,* 945 F.3d at 89, 122.

Amendment of the Federal Constitution, and the Freedom of Worship provision of the New York

Constitution. Churgin Dec. Ex. 27. This Court found for the Plaintiffs on each one of these counts.

*Tartikov III*, 280 F. Supp. 3d at 434. The Second Circuit did not consider the merits of Plaintiffs'

substantial burden, Fair Housing, freedom of association, and Free Exercise claims, but instead

held that Plaintiffs lacked standing to challenge the 2001 and 2004 Laws on these bases because

Tartikov did not submit a formal proposal for the building project, apply for a permit, or engage

in "any other conduct that would implicate or invoke the operation of the challenged zoning laws."[6]

*Tartikov IV*, 945 F.3d at 110. Nevertheless, the Court of Appeals held, with respect to the issue of

disparate impact on Plaintiffs, that:

> There is sufficient basis in the record to conclude, as the district court did, that on campus
> housing of the nature Tartikov sought was important to the exercise of Tartikov's faith
> because it would allow students to be near their families while maintaining a diligent study
> schedule. Further, Pomona has presented no evidence suggesting that the Village and
> surrounding community had sufficient housing for 1,000 students and 3,500 additional
> family members to live within walking or even driving distance of the TRC site without
> additional construction. (*Tartikov IV*, 945 F.3d at 123.)

As described above, the Village's zoning code prohibits the Village from issuing a special

use permit to Tartikov to allow its rabbinical college. *See Tartikov III*, 280 F. Supp. 3d at 444-45.

Additionally, Tartikov cannot obtain a variance to develop its rabbinical college.[7] *Id.* at 445.

Pomona has admitted that Tartikov cannot obtain a variance to develop its rabbinical college. *Id.*;

Churgin Dec. Ex. 2 ¶ 80. The Village's zoning authorities do not have the discretion to issue a

special use permit for an unaccredited institution or an educational institution that includes single-

---

[6] Plaintiffs believe that the Second Circuit's decision that a <u>facial</u> challenge to an ordinance
is not ripe unless a party seeks to legislatively change such law is contrary to the holdings of
the Supreme Court and other Courts of Appeals. Plaintiffs have petitioned the Supreme Court to
review this erroneous decision. *See* Churgin Dec. Ex. 30. The Supreme Court ordered the Village
to submit a response. Churgin Dec. Ex. 31.

[7] The findings that Pomona cannot issue a special use permit to Tartikov and that Tartikov
cannot obtain a variance were not disturbed by the Court of Appeals.

family, two-family and/or multifamily dwelling units (other than for a superintendent).  Village Code § 130-4.  Therefore, the only "conduct that would implicate or invoke the operation of the challenged zoning laws" in a manner that could possibly permit Tartikov to develop and operate its Rabbinical College would be a legislative change to the Village Code, also known as a "text amendment"/"zone change."[8]  The Village has repeatedly argued that Tartikov must apply for an amendment in order for Plaintiffs to have standing to challenge its zoning laws.  *Tartikov III*, 280 F. Supp. 3d at 480.  In fact, at trial, the Village Attorney and designated representative of the Village, Doris Ulman, stated that she told Tartikov's attorney that "the only application his client could make was for a zone change."  Churgin Dec. Ex. 2 ¶¶ 83, 87.  She also stated at trial that "the unaccredited rabbinical college does not comply with the Village definition of educational institution and that procedurally [Tartikov's attorney] could apply for a zone change or an amendment to the zoning law."  Churgin Dec. Ex. 2 ¶ 87.  In its appeal papers, Pomona asserted that the Village Attorney "suggested applying for a zone change before this lawsuit was filed" and that Tartikov "refused to follow the Village Attorney's advice to at least apply for a zone change."  Churgin Ex. 28-b pages 57, 58.

After the Second Circuit's decision, Tartikov submitted a petition for an amendment to the Pomona Board of Trustees.  Churgin Dec. Ex. 22.  The petition requested that, pursuant to Pomona Village Code §§ 130-35-45, Pomona repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004.  *Id.*  The petition, if granted, would have amended the Village's zoning code to remove the provisions enacted by those two local laws.  Pomona Village Code §§ 130-35 through 130-45

---

[8] Although Pomona uses the terms "text amendment" and "zone change" interchangeably, it is not possible for Tartikov to change the zoning district because the only zoning district in the Village is the R-40 zoning district.  Tartikov's only option would be an amendment to the zoning code. *Tartikov III*, 280 F. Supp. 3d at 480.

governs such amendments to the Code.  Significantly, § 130-35 contemplates "repeal" as such an amendment:

> **Power to __amend__.**  The Board of Trustees may from time to time on its own motion, on petition or on recommendation of any board, agency or official of the Village, after public notice and hearing, amend, supplement, __repeal__ or change the regulations and districts established under this chapter.  (Emphasis added.)[9]

On February 10, 2020, the Pomona Board of Trustees passed a resolution directing that all communications regarding Tartikov's February 7, 2020 petition be communicated through the office of Brian Nugent, Esq.  Churgin Dec. Ex. 23.  In February 2020, the Board of Trustees discussed Tartikov's February 7, 2020 petition for amendment and declined to formally consider Tartikov's petition.  Churgin Dec. Ex. 24.  The Village Code permits the Board to do this.  Village Code § 130-38 ("on receipt of a petition . . . the Board of Trustees may decide not to formally consider such amendment.").  The Village Board also voted to refund Tartikov's February 7, 2020 amendment fee.  Churgin Dec. Ex. 24.  On February 26, 2020, Mr. Nugent sent a letter to Tartikov's attorney that advised Tartikov that "the Village Board declined to formally consider" Tartikov's February 7, 2020 petition.  Churgin Dec. Ex. 24.  The February 26 letter also indicated that the amendment fee would be returned.  *Id.*  This was a final decision by the Board of Trustees. There is no additional level of review or appeal within the Village of such decision.

The Village Board's decision to decline to formally consider Tartikov's Petition was a final

---

[9] Repealing the Local Laws amends the Village Code by removing the provisions of the Code that the Local Laws had previously been added by those Laws.  *See also* Village Code § 130-36 ("A petition for any amendment of this chapter shall be made to the Village Clerk and shall describe the proposed __changes__." (emphasis added)); *Matter of Gernatt Asphalt Products, Inc. v. Town of Sardinia,* 87 N.Y.2d 668, 678 (1996) (notice referenced three (3) proposed amendments to the zoning ordinance, and the Town only adopted the two (2) "repealer amendments," and referring to the repeal of certain zoning provisions as "amendments" to the ordinance: "Counsel then recommended that the Board adopt the first two of the proposed zoning amendments (those repealing section 6.02[A][5] and 7.07)").  Thus, there is no legal distinction between a "repealer" amendment and any other type of text amendment under New York or Village law.

decision regarding Tartikov's petition for amendment.[10]  There is no further action that Tartikov can take before the Village or any of its bodies to have its petition for amendment considered.  The Village's zoning code provisions that prohibit the Plaintiffs from applying for, constructing and using the Subject Property as a nonaccredited rabbinical college with student family housing have now been "imposed" and "implemented" to the extent possible against the Plaintiffs.

## ARGUMENT

### I.   PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED.

Now that the basis for the Second Circuit's decision vacating part of this Court's prior judgment has been removed, Plaintiffs respectfully request that this Court preliminarily enjoin Defendants from enforcing the provisions of the Village's zoning code that prevent Tartikov from applying for, building, and using its Property as a rabbinical college, specifically the prohibitions against educational institutions providing family dwelling units and housekeeping facilities for

---

[10] The Board of Trustees could have referred Tartikov's Petition "for review and report to the Planning Board, the Village Attorney, the Village Engineer, Code Enforcement Officer and any other board, agency or official of the Village which the Board of Trustees deems appropriate," but chose not to do so.  Village Code § 130-39.  The Village's Planning Board, if a petition is referred to it, can "confer with any petitioner and assist such petitioner, where necessary, to place the amendment in the most appropriate form. . . . After said conference, the petitioner shall be allowed to revise his petition," *id.*; however, the Board of Trustees' action to decline to consider Tartikov's February 7, 2020 Petition prevented such revision.  If a petition is referred to it, "[t]he Planning Board shall report to the Board of Trustees regarding the form and the advisability of the proposed amendment. Its report shall analyze the proposed amendment and shall state the Board's reasons for its recommendation, describing any conditions it believes make the amendment advisable or not, and specifically stating whether the amendment would or would not be in accordance with the Comprehensive Plan and in furtherance of the purposes of this chapter." *Id.* Other Village "boards, agencies and officials shall have 45 days from the date of forwarding or from the date of revision by the petitioner, whichever is later, to submit reports," which would provide them an opportunity to comment on such petition. *Id.*  The Village's Board of Trustees took none of these actions, did not refer the petition to the Planning Board or any other board, agency or official, did not revise it or request revisions, or consider any conditions to the Petition; rather, it decided to not consider the Petition at all.

students, and the accreditation requirement.  The underlying facts and legal context are the same.

While some prior plaintiffs have been forced to discontinue their efforts to study at the rabbinical

college, there is no reason to continue to prevent Plaintiffs' religious exercise any further.

    A.  <u>Standard of Review.</u>

The Second Circuit's standard for a preliminary injunction is:

> (1) "irreparable harm"; (2) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party"; and (3) "that a preliminary injunction is in the public interest." *Oneida Nation of New York v. Cuomo,* 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks omitted).

*Actavis PLC*, 787 F.3d at 650.  There is a heightened standard for the first and second element

when the injunction is mandatory, that is, when it "alter[s] the status quo by commanding some

positive act." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).  *See*

*Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) (mandatory injunction when relief sought would

"prevent the Commissioner from enforcing one or more of the challenged provisions").  Thus, this

Court must find a "'clear' or 'substantial' showing of likelihood of success.  *Forest City Daly*

*Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 149-50 (2d Cir. 1999); *Cacchillo v. Insmed,*

*Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) ("[a] mandatory preliminary injunction should issue only

upon a clear showing that the moving party is entitled to the relief requested, or where extreme or

very serious damage will result from a denial of preliminary relief." (internal quotation marks

removed)).  Further, regarding the first element, there must be a "<u>strong</u> showing of irreparable

harm[.]"  *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 643 (2d Cir. 2015)

(internal quotation marks removed, emphasis added).   Even under this heightened standard,

Plaintiffs easily satisfy all three elements and are entitled to relief.

    B.  <u>Plaintiffs Meet the Standard for a Preliminary Injunction.</u>

1. *Plaintiffs Can Make a Strong Showing of Irreparable Harm.*

Irreparable harm is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Actavis*, 787 F.3d at 660 (quoting *Forest City*, 175 F.3d at 153 (internal quotation marks omitted)).  The type of harm at issue here—which arises under the federal and New York Constitutions (free exercise, freedom of worship, and freedom of association) and civil rights statutes (RLUIPA and the FHA)—demonstrates irreparable harm.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000) (citation and internal quotation marks omitted) ("violations of First Amendment rights are presumed irreparable"); *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 121 F. Supp. 2d 195, 204 (D. Conn. 2000) ("the Second Circuit expanded on this general proposition, recognizing a 'presumption of irreparable injury that flows from a violation of constitutional rights.'" (quoting *Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996))).

RLUIPA claims are no different. *See Opulent Life Church v. City of Holly Springs, Miss*, 697 F.3d 279, 295 (5th Cir. 2012) ("Opulent Life [Church] has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment and RLUIPA rights").[11]  It

---

[11] *See also Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173, 180-81 (D. Conn. 2001) ("Since [RLUIPA] was enacted for the express purpose of protecting the First Amendment rights of individuals, the allegation [here] that defendants have violated this statute also triggers the same concerns that led the courts to hold that these violations result in a presumption of irreparable harm"); *Centers. of N.Y., Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146, 165 (N.D.N.Y. 2019) *appeal withdrawn*, No. 19-1142, 2019 WL 3384889 (2d Cir. May 14, 2019) (granting injunction and finding that "the Ordinance inflicts irreparable harm by preventing the Church from worshipping in the property it purchased, which violates its rights under RLUIPA"); *First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 759 (D. Minn. 2018) ("violations of RLUIPA and the First Amendment constitute irreparable injury in the preliminary-injunction context"); *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 584 F. Supp. 2d 766, 795 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010); *United States v. Rutherford Cty, Tenn.*, No. 3:12-0737, 2012 WL 2930076, at *1 (M.D. Tenn. July 18, 2012); *Al Falah Ctr. v. Twp. of Bridgewater*,

13

is not surprising that courts have also found that the deprivation of constitutional and civil rights is also a "hardship" within the context of the balancing of hardships. *See Able v. U.S.*, 847 F. Supp. 1038, 1045 (E.D.N.Y. 1994) ("To deprive someone of constitutional rights is to inflict a hardship, and an especially heavy one where the rights are to free speech and equal protection.").

The irreparable harm and hardship suffered here certainly qualifies as the "extreme or very serious damage [that] will result from a denial of preliminary relief" warranting this Court's granting of a preliminary injunction. *Cacchillo*, 638 F.3d at 406 (internal quotation marks removed). Specifically, numerous Plaintiffs who have been offered admission to the proposed rabbinical college cannot fulfill their religious obligations to become rabbinical judges because no other educational institutions provide the requisite training and/or Torah community that the proposed college would provide. Rosenberg Dec. ¶¶ 37-42, 54-64; Hershkowitz Dec. ¶¶ 91-100, 103-105; Menczer Dec. ¶¶ 55-73. Mordechai Babad is a rabbinical judge selected to teach at the rabbinical college and cannot pass along his knowledge to a new generation of rabbinical judges in furtherance of his religious beliefs. M. Babad Dec. ¶ 39.

Thus, Plaintiffs continue to suffer irreparable harm due to Defendant's actions and this element strongly favors granting their motion.

> 2. *The Court's prior ruling on these claims demonstrates a clear and substantial likelihood of success on the merits.*

There is a very high likelihood of success on the merits of Plaintiffs' claims. Plaintiffs

---

No. CV112397MASLHG, 2013 WL 12322637, at *20 (D.N.J. Sept. 30, 2013); *Vietnamese Buddhism Study Temple In Am. v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1172 (C.D. Cal. 2006); *Grace Church of N. Cty. v. City of San Diego*, No. 07-CV-419 H (RBB), 2008 WL 11508687, at *2 (S.D. Cal. Aug. 4, 2008); *Guatay Christian Fellowship v. Cty. of San Diego*, No. 08CV1406 JM(CAB), 2008 WL 4949895, at *3 (S.D. Cal. Nov. 18, 2008); *Hope Rising Cmty. Church v. Municipality of Penn Hills*, No. CV 15-1165, 2015 WL 7720380, at *6 (W.D. Pa. Oct. 28, 2015), *report and recommendation adopted*, No. 2:15CV1165, 2015 WL 7721252 (W.D. Pa. Nov. 30, 2015).

have already succeeded at trial in proving a violation of their rights under RLUIPA, the First

Amendment, the Fair Housing Act, and the New York Constitution. *Tartikov III*, 280 F. Supp. 3d

at 482, 485-86, 493. Further, the Court of Appeals affirmed key findings and holdings rejecting

the same arguments the Village made with respect to these claims in the prior action:

> For the 2007 Dormitory Law, the court based its discriminatory effect finding on a finding that <u>three provisions of the law would burden TRC's planned construction of dormitories unlawfully</u>. The first two provisions were the <u>exclusion of multifamily dwelling units from the definition of "dormitory"</u> and the <u>prohibition on separate cooking and dining areas</u>. The court found that <u>both restrictions prohibited the types of residences TRC intended to build, which included "kitchens in each residence so that students can diligently study . . . while also meeting their religious obligations to their families."</u> . . . .

> Pomona appears to concede that Tartikov would face these burdens because it advances no argument challenging the district court's findings. It does, however, fleetingly argue that the court erred by finding the 2007 Dormitory Law[12] would have had an effect sufficient for Tartikov to prevail on its RLUIPA "substantial burden" claim. In that portion of its brief, it argues that the burdens identified by the district court are insubstantial because students could live off campus, TRC could buy more land, and living on campus was not essential to TRC's proposed Torah community.

> Even if we were to credit these arguments, they would not persuade us that the finding of discriminatory effect was clearly erroneous. <u>There is sufficient basis in the record to conclude, as the district court did, that on campus housing of the nature Tartikov sought was important to the exercise of Tartikov's faith because it would allow students to be near their families while maintaining a diligent study schedule</u>. Further, <u>Pomona has presented no evidence suggesting that the Village and surrounding community had sufficient housing for 1,000 students and 3,500 additional family members to live within walking or even driving distance of the TRC site without additional construction</u>.

> . . . . [T]he parties' [sic] stipulated to the district court that TRC did not qualify for a permit [sic, "variance"] because its property could be put to reasonable use – though not the use it desired.

> We find no error in the district court's reasoning.

---

[12] The Court of Appeals appeared to address the "family dwelling units" and housekeeping facilities provisions as part of the 2007 Law. It is unclear as to whether the court did not understand that the same provisions were part of the 2004 Law (as it failed to understand the same with the height limitation, *see Tartikov IV*, 945 F.3d at 120); however, despite the court's holding, there is no question that the provisions at issue existed in both the 2004 and 2007 Laws.

*Tartikov IV*, 945 F.3d at 122–24 (emphases added, footnotes omitted).  Thus, Plaintiffs can make a clear and substantial showing of a likelihood of success on the merits of their burden claims, as none of the underlying material facts have changed.

a)  The single obstacle to relief has been removed.

The Second Circuit vacated the Court's judgment as to these claims based on a lack of "standing" to bring them.  The court held that Plaintiffs never "submitted a formal proposal," "applied for a permit,"[13] or "engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws.  Whatever harm may arise from the application of the zoning laws to TRC's property is merely conjectural at this time."  *Tartikov IV*, 945 F.3d at 110.

Subsequent events have now removed the basis for the Court of Appeals' ruling.  As the Village has repeatedly admitted, and as this Court has found, the <u>only</u> "conduct" that might permit Plaintiffs' proposed rabbinical college use is a petition for an "amendment" to change the Village's zoning code to permit Tartikov's use.[14]  *See Tartikov III*, 280 F. Supp. 3d at 480 ("Defendants contend that Plaintiffs cannot succeed on a substantial burden claim until they request an amendment to the Village Code."); Churgin Ex. 26 at 18:20-19:8 (hearing transcript in which Village attorney admits that Plaintiffs "would need an amendment to one of [the Village's] laws"

---

[13] Despite the fact that the challenged code provisions prevented Tartikov from obtaining a special permit, as the Defendants even now admit in their opposition to Plaintiffs' fee application in the prior action, in a one-paragraph holding the court decided that any harm to Plaintiffs was "conjectural."  *Id.*

[14] It is undisputed that neither a special permit nor a variance can allow Plaintiffs' use because it is forbidden outright and because Plaintiffs cannot meet the standard for a variance, as admitted by Defendants and affirmed by the Court of Appeals.  *See Tartikov II*, 138 F. Supp. 3d at 418; *Tartikov III*, 280 F. Supp. 3d at 445 ("Moreover, Tartikov cannot obtain a variance to develop its rabbinical college because 'State law requires an applicant who applies for a use variance to prove that there is no other economic use for the property' and this would be 'impossible' for Tartikov to prove. (Ulman Aff. ¶ 80.)"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 2d 604, n.11 (S.D.N.Y. 2013) ("*Tartikov I*"); *Tartikov IV*, 945 F.3d at 124.

to build the rabbinical college); *Tartikov I*, 915 F. Supp. 2d at 633 ("under the zoning scheme as it currently exists, Plaintiffs' only option is to seek a text amendment to the Zoning Code.").

Since the ruling, Tartikov did exactly that. It submitted a petition for an amendment to the Village to repeal the 2001 and 2004 Laws, which contained the provisions that prohibit its use. Churgin Dec. Ex. 22. However, the Village Board refused to even consider the Petition. It did not send it to other agencies for comments, it did not discuss modifications with Tartikov, and it did not consider alternate legislation. It refused to consider the Petition outright and completely. Thus, all the harm, including legislative harm, that can injure the Plaintiffs, has now injured them. There is nothing more the Plaintiffs can do. They cannot obtain a special permit, they cannot obtain a variance, and the Village has refused to consider Plaintiffs' amendment.

The fact that the petition sought to repeal two local laws in their entirety is of no consequence. Under Pomona's Code, a petition for an amendment includes the "repeal" of a law:

> The Board of Trustees may "on petition . . . after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter."

Village Code § 130-35 (emphasis added); *see, e.g.,* U.S. CONST. Amend. XXI ("The eighteenth article of amendment to the Constitution of the United States is hereby repealed."). When Tartikov submitted its petition for an amendment, Pomona agreed that it was for an amendment. In fact, Pomona referred to it as a "proposed amendment," stating that "the Village Board declined to formally consider the proposed amendment." Churgin Dec. Ex. 24 (emphasis added); *see also* Ex. 23 (Pomona referring to Tartikov's "Petition pursuant to Article XI of the Village Code").

Further, as discussed above, the Village has repeatedly advised Tartikov, and represented to this Court and to the Court of Appeals, that Tartikov should petition the Board for an amendment. The portion of the Village Code that governs amendments, Article XI, is titled "Amendments" and is comprised of sections 130-35 through 130-45 of the Code. Churgin Dec.

Ex. 29.   This section explicitly contemplates that such amendments can include a repealer amendment.  *Id.*; Churgin Dec. Ex. 25 at 782-84; Churgin Dec. Ex. 29.  Pomona cannot claim now that Tartikov's petition for amendment—the very thing that Pomona suggested—does not meet the qualifications of an amendment petition because it sought to "repeal" a regulation, when that language comes directly from their Code.

Finally, New York law does not distinguish repealer amendments from other amendments.  *See Gernatt. v. Sardinia*, 87 N.Y.2d at 676 (notice requirements were satisfied for amendments to the Code that "repeal" portions of the Code); *Boni Enterprises, LLC v. Zoning Bd. of Appeals of Town of Clifton Park*, 124 A.D.3d 1052, 1055 (3d Dept. 2015) (notice stated that it would "amend" the zoning ordinance in relation to two business districts, where the proposed ordinance were to "repeal" a local law related to those two districts).

Defendants, rather, argue now—unsupported by any contemporaneous statement by the Board or its attorney—that Tartikov's petition for amendment was somehow "deficient," not "real" or "meaningful," "a feigned predicate," or that the petition could have more "substance."  ECF No. 22 at 3.   First, there was no "deficiency" to the petition, as it complied with all local requirements, and the Defendants do not claim otherwise.  *See* ECF No. 22.   There is no requirement to state "context" or "reasons."  *See* Village Code §§ 130-35 through 130-45.  For a text amendment,[15] a petition need only "describe the proposed changes," which Tartikov's petition unquestionably did: "to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004."  Churgin Dec. Ex. 22.  Nor did the Village ever inform Tartikov of any supposed "deficiencies."

Second, there is no standard for "meaningful" petitions.  Defendants stated in their letter

---

[15] A "map amendment," on the other hand, has additional substantive requirements. Village Code §§ 130-36.  A text amendment has none.

that alternative petition language could have been used, and that portions of the Local Laws could have been repealed instead of the "entire law."[16] ECF No. 22 at 3. That is irrelevant to the question of whether a petition was properly filed, and whether the Board of Trustees made a final decision with respect to the same. A similar argument was made and rejected by this Court in *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267 (S.D.N.Y. 2009), where that village argued that the "controversy [wa]s not yet ripe" because "Bikur Cholim's application for a variance was perfunctory . . . ." 664 F. Supp. 2d at 275. The Court rejected that argument, holding that:

> What matters at this stage is whether private plaintiffs adequately pleaded that their variance was denied. That, they did. . . .
>     . . . .
> . . . . Bikur Cholim sought a use variance from the Zoning Board of Appeals, which was denied.
>
> . . . . The Court can look at the Zoning Board of Appeals' decision as a definitive ruling on how Bikur Cholim can use its property. It is the denial of the application that serves as the basis for jurisdiction before the Court."

*Id.* Here, Tartikov submitted a Petition to the Board of Trustees, which was rebuffed.

Further, the fact that the Board refused completely to even consider the petition as opposed to voting to reject it is of no moment. Pursuant to the Village Code, that is an available, final option for the Board, and they took it. Village Code § 130-38. *Cf. Golf Vill. N., LLC v. City of Powell, Ohio*, 338 F. Supp. 3d 700, 703, 707 (S.D. Ohio 2018) (holding plaintiffs' claims to be ripe where zoning administrator refused to provide plaintiffs with the requested interpretation of

---

[16] The Village's claim that it "would be left with no guidance for any educational institution in the municipality," *id.*, is false. An educational institution would still be subject to various regulations controlling development, the same limitations as a library or museum would be subject to. Village Code § 130-12 (requirements for lot area, lot frontage, lot width, lot depth, setbacks, maximum height, and lot coverage). Regardless, this argument has nothing to do with standing or ripeness, but perhaps with the asserted governmental interest for its refusal to consider the petition. *See* 42 U.S.C. § 2000cc(a)(1)(A). However, the availability of alternative means to modify such proposal, *see* Village Code § 130-39, would obviously be a less restrictive means of achieving any such interest. 42 U.S.C. § 2000cc(a)(1)(B).

the zoning code, and city refused to hear their administrative appeal); *Dewey Beach Enterprises, Inc. v. Town of Dewey Beach*, No. C.A. 09-507-GMS, 2010 WL 3023395, at *6 (D. Del. July 30, 2010) (claims ripe where "the Town has refused to consider DBE's alternate Phase II and Phase III proposals").

Third, it is telling what the Defendants stated in their letter: "[N]o denial of the text amendment occurred. No motion was made to consider or review it when it was presented, . . . ." ECF No. 22, at page 3. Since the Board can <u>always</u> refuse to consider a petition regardless of its character, Village Code § 130-38, adopting the Defendants' position would mean that the Village would be immune from any review of its laws, forever, so long as it continues to refuse to consider a petition, which the code permits them to do. Plaintiffs have been prevented by the Court of Appeals from facially challenging the Village's zoning laws, they are unable to apply for a special permit for their use, they cannot obtain a variance for their use, and now the Village argues that it can evade review by simply ignoring petitions for amendment. This cannot be the law.

The law does not require—and even the Court of Appeals' decision does not command— such an absurd result. The decision to refuse to consider Plaintiffs' petition was a final action by the Board of Trustees. The standing analysis is satisfied here. The first prong, a concrete and particularized injury in fact suffered by Tartikov, 945 F.3d at 109, is met. Defendants have <u>admitted</u> that the zoning code provisions inserted by Local Laws 1 of 2001 and 5 of 2004 prohibit Tartikov's use: "Village zoning laws still do not permit building the rabbinical college that Tartikov wishes." Churgin Dec. Ex. 14 at 15 (Village admitted that Local Laws "thwart Tartikov's aims" and "**bar**[] construction of Tartikov's planned rabbinical college" (emphasis added)). Tartikov has now taken the only other step available—it petitioned the Board to remove such restrictions—and has been rebuffed. It cannot be disputed that the Petition was "conduct that . . .

implicate[d] . . . the operation of the challenged zoning laws." *Tartikov IV*, 945 F.3d at 110. Article III standing law cannot be twisted into such an unrecognizable shape as to require a holding that Tartikov has not suffered a concrete and particularized injury in fact under these circumstances.[17]

Having suffered an injury in fact, there is no reason to believe that the bases for this Court's trial decision are no longer valid. Plaintiffs' prior success on the merits, vacated solely on "standing" grounds, establish that they have at least[18] a clear and substantial likelihood of success. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994) (considering district court's conclusions relating to the same issues when ruling on "likelihood of success" prong); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1261 (7th Cir. 1980) ("Since a judgment of liability has been entered against the defaulting defendants, there is clearly more than a reasonable likelihood of success on the merits. While it is conceivable that the defendants might prevail on the merits in the final analysis, plaintiff has a substantial likelihood of success against the defaulters at this posture of the litigation" (footnote omitted)); *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 82 (D.D.C. 2003) ("Success on the merits of the underlying claim is assured in light of the Court's previous finding of liability in this matter"); *Cobell v. Norton*, 310 F. Supp. 2d 77, 95 (D.D.C. 2004) ("in light of their previous successes on the merits, the Court finds that Plaintiffs have demonstrated a substantial likelihood that they will prevail on the merits.").

b) RLUIPA's Substantial Burdens Provision.

---

[17] There was never any question that the other two requirements of standing, causation and redressability, are also met. The harm is directly caused by the burdensome zoning provisions and enjoining their enforcement would redress Tartikov's injury by permitting its application.

[18] Plaintiffs respectfully submit that the Court of Appeals' affirmance on the predicate facts found by this Court establishing discriminatory effect of the same provisions in the 2007 Dormitory Law, namely the prohibition of family dwelling units and housekeeping facilities—and rejecting the Village's arguments about the same—establishes the necessary grounds for Plaintiffs' substantial burden and FHA disparate impact claims. *See supra.*

Plaintiffs have a clear and substantial likelihood of success on the Substantial Burdens provision of RLUIPA. *See* 42 U.S.C. § 2000cc(a).[19] Plaintiffs can demonstrate both the sincerity of their religious beliefs, and their belief that engaging in the Torah Community is religious exercise. The Village has attacked the credibility of the Plaintiffs on these points before and lost both before this Court and before the Court of Appeals. This Court found various facts supporting Plaintiffs' claims related to their religious beliefs and exercise, based on testimony of representatives of Tartikov, prospective students, and plaintiffs' expert witnesses. *Tartikov III*, 280 F. Supp. 3d at 435, 437, 470, 471, 474 (findings regarding the purpose of Tartikov, the proposed rabbinical college and Tartikov's intent to engage in religious exercise, the religious beliefs and motivations of the student plaintiffs, the sincerity of plaintiffs' beliefs, the religious need for the Torah community with housing, the religious requirement to live with their families, and the requirement for plaintiffs to "[e]xile yourself to a place of Torah."). These findings were affirmed by the Second Circuit. *Tartikov IV*, 945 F.3d at 122-24.

Addressing the Defendants' arguments, the Court soundly rejected the notion that "having family housing on a rabbinical college campus is not a religious belief[.]" *Tartikov III,* 280 F. Supp. 3d. at 472, 473 ("Tartikov is not seeking to create on-campus housing to cut down on travel time, but rather to create a particular type of living and learning community—one that is free from the distractions of the outside world and permits students to focus on studying to Torah day and night, while surrounded by like-minded individuals."). As described above, the Court of Appeals

---

[19] This section applies where the burden on religious exercise "affects . . . commerce . . . among the several States," 42 U.S.C. § 2000cc(a)(2)(B), or where the burden involves "individualized assessments . . . ." *Id.* § 2000cc(a)(2)(C). These elements are met here. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 354 (2d Cir. 2007) (construction activity); *Tartikov III*, 280 F. Supp. 3d at 469 (same). Further, the Village Board's decision to not consider Tartikov's Petition was an individualized assessment.

affirmed these findings in its discussion of discriminatory effect.

Next, the Court examined whether the challenged provisions substantially burdened Plaintiffs' religious exercise.   The evidence demonstrated that, by excluding student family housing and nonaccredited educational institutions, they completely prohibited Tartikov's planned construction of, and operation of, a rabbinical college that is a Torah community.  Such a <u>complete</u> prohibition certainly works a "substantial burden" on Tartikov's religious exercise by rendering it "effectively impracticable," *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 546 (S.D.N.Y. 2006).  The Court's conclusion comports with that holding:

> Defendants' argument ignores the sincere religious purpose that the Torah community will serve here. Tartikov's students will not study at home by themselves because that is not how Orthodox/Hasidic Jews study the Torah. . . . The provision of on-campus housing is a means to serve these ends. And while Tartikov's students are not required to study the Torah in any particular way, they sincerely believe that they have to live in a Torah community to "succeed in the study to become a rabbinical judge." . . . Accordingly, Plaintiffs have made the connection between their religious exercise and the provision of on-campus housing and have demonstrated that the Dormitory Law substantially burdens that religious exercise by banning student family housing outright.

*Tartikov III*, 280 F. Supp. 3d at 477-79.  Again, the Village's arguments to the contrary were rejected by the Court of Appeals, as described above.

Regarding the recent Petition for amendment, despite the myriad means that the Village Board had to consider it, *see supra*, it chose to reject it completely, not even considering it.  This rejection, especially when coupled with all the other targeted actions taken by the Village, cannot be seen as anything but a "complete" rejection.  "When the school has no ready alternatives, or where the alternatives require substantial 'delay, uncertainty, and expense,' a complete denial of the school's application might be indicative of a substantial burden." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007).  Thus, the only path available to Tartikov—the direction of which could have been addressed by the Village by several options available to it—

was instead completely, soundly, and unquestionably blocked by the Village.

Substantial burdens on religious exercise are subject to strict scrutiny review under RLUIPA. The Supreme Court has ruled that generalized statements of interest are insufficient, and that governments must establish that prohibiting the "particular use at issue" must be necessary to protect the public health and safety. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 432, 438 (2006) ("[I]nvocation of such general interests, standing alone, is not enough."). The Court found that there were no compelling governmental interests justifying the burden on Plaintiffs' religious exercise. *Tartikov III*, 280 F. Supp. 3d at 458. The Court of Appeals acknowledged that Plaintiffs' Equal Protection claim was subject to strict scrutiny review and noted that this Court "held that the Village lacked a compelling state interest in enacting them and, in any case, the laws were not narrowly tailored to serve any such interests." *Tartikov IV*, 945 F.3d at 108. The court then affirmed this Court's holding that the 2007 "Dormitory" Law discriminated against the Plaintiffs in violation of the Equal Protection Clause. *Id.* at 122. The Court did not question this Court's finding regarding lack of compelling governmental interest, necessary to find an Equal Protection violation.

The Village's purported interests in adopting the 2004 Law were to: "(1) remove the .05 acre-per-student requirement for educational institutions imposed by Local Law No. 1 of 2001; (2) permit dormitories within the Village; (3) clarify the definition of "educational institution" and remove the definition for "school"; and (4) remove the requirement that educational institutions be located on state or county roads." *Tartikov III*, 280 F. Supp. 3d at 459. The Court rejected all of the purported interests. *Id.* at 458-61. With respect to the dormitory provisions, "none of the stated justifications required the Village to ban multi-family housing." *Id.* at 460. The Court also rejected the justification of the accreditation provision ("to regulate 'commercial-type training

schools'") as there was "no evidence[] that the Village was about to be besieged by such trade schools or otherwise explained the timing of the promulgation of this requirement." *Id.*

Further, such outright prohibitions are not the least restrictive means of achieving the County's generalized interests (which are insufficient as a matter of law to begin with). "Even if Defendants had proffered evidence proving that the Challenged Laws were justified by compelling interests, the Challenged Laws would still fail to pass strict scrutiny because they are not narrowly tailored to serve those interests." *Id.* at 465; *see also Tartikov III*, 280 F. Supp. 3d at 482 ("Defendants have not credibly explained why these [existing] processes are inadequate to protect any interests that they seek to protect.").

Nor can the Village claim that it had any compelling interest in rejecting the Plaintiffs' Petition for amendment. As described above, the Village has various ways to address any concerns that may arise from the petition for amendment. The burden is on the Village to demonstrate that any of its purported interests cannot be addressed through alternate means (and not on Tartikov to offer an infinite number of permutations until it hits upon one that may be satisfactory to the Village). 42 U.S.C. § 2000cc-2(b) (burden of persuasion is on the government); *see Willis v. Comm'r, Indiana Dep't of Correction*, 753 F. Supp. 2d 768, 779 (S.D. Ind. 2010) ("DOC seems to misunderstand or ignore the controlling law: Under RLUIPA, it is not the plaintiff's burden to show that reasonable alternatives do exist—it is DOC's burden to show that reasonable alternatives do not exist."); *Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012) ("[T]he Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." (internal citation omitted)). There is a clear and substantial likelihood of success on Plaintiffs' substantial burdens claim.

c) New York Free Exercise.

Plaintiffs also have a high likelihood of success on their Freedom of Worship claim under the New York State Constitution.  Under that provision, "[t]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind . . . ."  N.Y. CONST. Art I, § 3.  As the Court recognized, there is no requirement to demonstrate that a burden is "substantial":

> The New York Court of Appeals has held, in analyzing a state free exercise claim, that "when the State imposes an incidental burden on the right to free exercise of religion," the courts are to consider the "interest advanced by the legislation that imposes the burden," and then "the respective interests must be balanced to determine whether the incidental burdening is justified." *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 825 N.Y.S.2d 653, 859 N.E.2d 459, 466 (2006) (alteration and internal quotation marks omitted); *see also Fortress Bible II*, 694 F.3d at 221 n.9 (noting that New York state courts "employ a balancing test to determine if the interference with religious exercise was unreasonable").

*Tartikov III*, 280 F. Supp. 3d at 493.

The Court found that "the burden imposed on Plaintiffs' religious exercise is substantial," and that, consequently, "Defendants' interests must be equally substantial." *Id.* at 493.  As discussed at length *supra*, "the Defendants have proffered no compelling governmental interest justifying the [2004] Law." *Id.* at 482.  The analysis has not changed.

d)  Freedom of Association.

Plaintiffs have a clear and substantial likelihood of success on their First Amendment freedom of association claim.  In addition to protecting the right to freely exercise one's religion, the First Amendment also protects the right to <u>associate</u> for expressive purposes, including for religious expressive purposes.  In order for an activity to fall within the ambit of the First Amendment's protection of expressive association, "a group must engage in some form of expression, whether it be public or private." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).  "To be cognizable, the interference with associational rights must be direct and substantial or

significant." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (internal quotation

marks removed).  Here, the Court held:

> Plaintiffs contend that they seek to 'pass[ ] knowledge from teacher and mentor to student, student to student, and student to children . . . throughout all the facilities of the proposed rabbinical college.' (Pls. Opp'n 22 (citing *Tabbaa [v. Chertoff]*, 509 F.3d [89] at 101 [2d Cir. 2007] (discussing protected right of expression "through association at" an Islamic conference)).)  The connection is more direct than with respect to Plaintiffs' free speech rights; Plaintiffs' arguably cannot associate at all in the context of their rabbinical studies, *see Tartikov*, 915 F. Supp. 2d at 627, because the venue of that association—the rabbinical college—is arguably foreclosed by the Challenged Laws.

*Tartikov II*, 138 F. Supp. 3d at 430; *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d

461, 472 (S.D.N.Y. 2004) (right to associate includes organizations engaged in expressive and

religious activities).  Prohibiting students from living on campus prevents the Plaintiffs from

developing their Torah Community.  Requiring the rabbinical college to be a "commuter college"

would drastically affect its message, how students will learn, and how they will communicate with

each other and their teachers.  Here, it is the Torah community that is the method of expression.[20]

Because the challenged laws cannot survive strict scrutiny, *see supra*; *Roberts*, 468 U.S. at 623;

*Tabbaa v. Chertoff*, 509 F.3d 89, 102 (2d Cir. 2007), Plaintiffs have demonstrated a strong

likelihood of success on their Free Association claim.[21]

> e)  Fair Housing Act.

Plaintiffs charge that the Village's laws and actions violate the Fair Housing Act, 42 U.S.C.

---

[20] The outright prohibition of a Torah Community is also a "direct and substantial or significant" interference with associational rights.  *See Tartikov III*, 280 F. Supp. 3d at 485-86 ("the Challenged Laws directly and substantially interfere with Plaintiffs' associational rights because the laws bar completely Tartikov's rabbinical college from the Village. . . .   The Challenged Laws present insurmountable obstacles to Plaintiffs . . . .").

[21] Again, this holding was not addressed by the Court of Appeals, other than as to the Plaintiffs' standing to bring the claim.  As the underlying facts, the findings of which were generally affirmed by the Court of Appeals, have not changed, there is a clear and substantial likelihood of success on this claim as well.

§ 3604(a), on a theory of disparate impact.  The Supreme Court has held that disparate impact claims are cognizable under the FHA.  *Texas Dep't of Housing and Comm. Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507, 2525 (2015).  Disparate impact analysis examines a facially neutral policy or practice for its differential impact or effect on a particular group.  *Sobel v. Yeshiva Univ.*, 839 F.2d 18, 28 (2d Cir. 1988).

Plaintiffs allege that the Village violated the FHA through enforcement of "zoning code provisions that . . . are neutral on their face" but that "[n]onetheless . . . have had the effect and continue to have the effect . . . of excluding Plaintiffs from obtaining student housing anywhere in the Village of Pomona by discriminating against the Plaintiffs based on religion . . . ."  ECF No. 1 ¶¶ 274-275.  By prohibiting the construction of student housing equipped with separate kitchen and maintenance facilities, the challenged dormitory provisions "makes unavailable" housing to the Orthodox/Hasidic Jewish students and teachers of the proposed rabbinical college who are religiously obligated to live with their families and to pursue their training to become *dayanim* (rabbinical judges).

The Second Circuit has outlined a burden-shifting test for a disparate impact claim:

> Under this test, a plaintiff must first establish a prima facie case by showing, (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices. Once a plaintiff has presented a prima facie case of disparate impact, the burden shifts to the defendant to prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect.

*Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016) (internal quotation marks and citations omitted); *see also Tartikov III*, 280 F. Supp. 3d at 492 n.38.  Because the 2004 Law disparately impacts this minority religious community, Plaintiffs are substantially likely to prevail on their Fair Housing Act claim unless the Village can demonstrate that its

prohibition served "bona fide governmental interests" and that no other alternative would serve those interests with less discriminatory effect.

The Student Plaintiffs are young, Orthodox Hasidic men; as Hasidic Jews, they are under religious duties to marry young, to raise large families, and to care for their families; they are also required to exile themselves to a Torah community in order to devote themselves to the study and training necessary to become full-time rabbinical judges. *See* Rosenberg Dec. ¶¶ 5, 8- 9, 13-14, 16-18, 46-55, 62-64; Hershkowitz Dec. ¶¶ 5, 11-16, 49-57, 61-71, 77-85, 87, 91, 96; Menczer Dec. ¶¶ 4, 10-12, 18-19, 40-52, 69-73, 90. These Student Plaintiffs cannot afford the costs associated with renting or owning homes in the Village, *see* Rosenberg Dec. ¶ 65; Hershkowitz Dec. ¶ 106; Menczer Dec. ¶ 93. Consequently, they cannot live in the Village and pursue their course of study without housing that can accommodate their families. *Id.* By making such housing unavailable to the Student Plaintiffs (and teachers), the Village's Code and its refusal to consider Tartikov's Petition effectively excludes Orthodox/Hasidic Jews from the Village.

"[Un]lawful practices [under the FHA] include zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification. Suits targeting such practices reside at the heartland of disparate-impact liability." *Texas Dep't of Hous. & Cmty. Affairs,* 135 S. Ct. at 2521-22. In *Westchester Cnty. v. Dept. of Housing & Urban Dev.,* 802 F.3d 413, 425 n.50 (2d Cir. 2015), the Second Circuit illuminated practices that are presumptively exclusionary: "a zoning code is presumptively exclusionary if it (1) restricts multifamily or two-family housing to districts with disproportionately large minority populations; or (2) disparately impacts minorities by restricting the development of housing types disproportionately used by minority residents." Here, by completely excluding the kind of housing that accommodates the religious needs of these Orthodox Hasidic students, the challenged

dormitory regulations cause an overt and blatant discriminatory effect.

3. *The Public Interest Favors Granting Relief.*

Given the "strong public interest in uncovering . . . civil rights violations," the public interest favors also granting Plaintiffs' requested relief in this case. *Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 96 (S.D.N.Y. 2000); *Kitevski v. City of New York*, No. 04 CIV. 7402 RCC RLE, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) ("the government has a vital interest in upholding civil rights"); *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights"). Conversely, it is well established that "[t]he Government does not have an interest in the enforcement of an unconstitutional law." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (quoting *American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)); *see also Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 500 (S.D.N.Y. 2019) (quoting *Amarin Pharma., Inc. v. FDA*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015) (explaining that, "[e]njoining an unconstitutional regulatory scheme 'serves the public interest . . . because the Government does not have an interest in the unconstitutional enforcement of a law.")).

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that this Court grant their motion for a preliminary injunction and enjoin the provisions of the Village Code that prohibit non-accredited educational institutions, family dwellings, and separate cooking, dining and housekeeping facilities.

Dated:  Nanuet, New York
October 20, 2020

Joseph A. Churgin (JC 6854)
Donna Sobel (DS 3267)

Savad Churgin
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Roman P. Storzer *pro hac vice* motion
pending)
Storzer & Associates, P.C.
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036

John G. Stepanovich (JS 8876)
Stepanovich Law, PLC
618 Village Drive, Suite K
Virginia Beach, Virginia 23454

*Attorneys for Plaintiffs*