VILLAGE OF POMONA

ZONING

Chapter 130

**ZONING**

ARTICLE I
**Authority and Purpose**

§ 130-1.   Statutory authority.

§ 130-2.   Purpose and intent.

ARTICLE II
**Definitions**

§ 130-3.   General construction of language; word usage.

§ 130-4.   Terms defined.

ARTICLE III
**General Provisions**

§ 130-5.   District classification.

§ 130-6.   Zoning Map.

§ 130-7.   Minimum standards.

§ 130-8.   Scope of controls.

ARTICLE IV
**Use Regulations**

§ 130-9.   Permitted uses.

§ 130-10. Special permit uses.

§ 130-11. Accessory uses.

13001

POMONA CODE

## ARTICLE V
### Area and Bulk Regulations

§ 130-12. R-40 District.

## ARTICLE VI
### General Regulations

§ 130-13. Application of regulations.

§ 130-14. Relationship to other regulations.

§ 130-15. Nonconforming uses, buildings or structures.

§ 130-16. General lot, yard and use regulations.

§ 130-17. Performance standards.

§ 130-18. Construction regulations.

## ARTICLE VII
### Parking Requirements

§ 130-19. Sufficient spaces required.

§ 130-20. Location.

§ 130-21. Driveways.

## ARTICLE VIII
### Administration and Enforcement

§ 130-22. Enforcing official; building permits and certificates of occupancy.

§ 130-23. Stop-work orders.

§ 130-24. Right of entry.

§ 130-25. Penalties for offenses.

ZONING

## ARTICLE IX
### Zoning Board of Appeals

§ 130-26. Appointment.

§ 130-27. Meetings and records.

§ 130-28. Powers and duties.

§ 130-29. Procedures.

§ 130-30. Expiration of variance.

§ 130-31. Fees.

## ARTICLE X
### Density Zoning

§ 130-32. Purpose.

§ 130-33. Procedure.

§ 130-34. Development standards and controls.

## ARTICLE XI
### Amendments

§ 130-35. Power to amend.

§ 130-36. Amendments on petition.

§ 130-37. Amendments on motion.

§ 130-38. Initial consideration.

§ 130-39. Referrals for review and report.

§ 130-40. Public hearing.

§ 130-41. Notice of hearing.

§ 130-42. Procedure upon protest.

§ 130-43. Records.

§ 130-44. Referral to adjacent municipalities and other agencies.

§ 130-45. Fees.

## ARTICLE XII
## Miscellaneous Provisions

§ 130-46. Title.

§ 130-47. Effect on current building permits.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 5-28-68; amended in its entirety at time of adoption of Code (see Ch. 1, General Provisions, Art. I). Subsequent amendments noted where applicable.]

GENERAL REFERENCES

Historical Review Board — See Ch. 13.
Planning Board and Zoning Board of Appeals — See Ch. 25.
Building construction — See Ch. 47.
Flood damage prevention — See Ch. 79.
Subdivision of land — See Ch. 118.

## ARTICLE I
## Authority and Purpose

### § 130-1.   Statutory authority.

Under the authority granted by § 7-700 of the Village Law, as amended, the Board of Trustees of the Village of Pomona hereby adopts this chapter to promote the purposes set forth in § 7-704 of the Village Law.

### § 130-2.   Purpose and intent.

Whereas areas of commercial, industrial and high- and medium-density residential development are to be found elsewhere in Rockland County, and whereas the area embraced by the Village of Pomona conforms to the low-density concept of the outlying areas of the existing Town of Ramapo Master Plan and the Zoning Ordinances of the Towns of Haverstraw and Ramapo,

therefore this chapter is intended to provide for the orderly and desirable development of the Village of Pomona and to regulate and restrict the use of land and the construction and use of buildings and accessory land improvements in the following manners:

    A.  To preserve and enhance the rural residential character of the village and to encourage the orderly and beneficial development of the entire village.

    B.  To prevent the overcrowding of land with persons and structures in relation to open spaces, circulation and neighboring land uses; to require adequate provision for off-street parking.

    C.  To prevent the contamination of streams and ponds, to safeguard the water table and to encourage the wise use and sound management of the natural resources throughout the village in order to preserve the integrity, stability and beauty of the community and the value of land.

    D.  To provide adequate light, air and privacy for residents; to secure safety from fire, flood and other danger and to discourage uses inimical to public health.

    E.  To encourage any construction which will tend to enhance the natural, rural beauty of the area.

    F.  To discourage auxiliary construction which detracts from the rural aesthetic beauty of the community.

    G.  To facilitate such services as utilities, sewerage, parks and other public requirements.

## ARTICLE II
### Definitions

### § 130-3.  General construction of language; word usage.

    A.  General construction of language. The following rules of construction apply to the language of this chapter:

        (1)  The specific shall control the general.

        (2)  All words used in the present tense include the future tense.

(3) All words in the singular number include the plural number, and vice versa, unless the natural construction of the wording indicates otherwise.

(4) Words used in the masculine gender include the feminine and neuter, and vice versa, unless the natural construction of the wording indicates otherwise.

(5) The word "shall" is mandatory; the word "may" is permissive.

(6) The word "includes" shall not limit a term to the specified examples, but is intended to extend its meaning to all other instances or circumstances of like kind or character.

(7) Unless the context clearly indicates the contrary, where a regulation involves two (2) or more items, conditions, provisions or events connected by the conjunction "and," "or" or "either...or," the conjunction shall be interpreted as follows:

  (a) "And" indicates that all the connected items, conditions, provisions or events shall apply.

  (b) "Or" indicates that the connected items, conditions, provisions or events may apply singly or in any combination.

  (c) "Either...or" indicates that the connected items, conditions, provisions or events shall apply singly but not in combination.

(8) The words "building" and "structure" include any part thereof.

(9) The words "lot," "plot" and "tract of land" shall one include the other.

(10) The word "premises" shall include land and all structures thereon.

(11) The word "herein" means "in this chapter"; the word "regulations" means the regulations of this chapter; and the words "this chapter" shall mean "this chapter and the maps included herein as enacted or subsequently amended."

(12) The words "occupied" and "used" shall be considered to be followed by the words "or intended, arranged or designed to be

occupied or used," unless the natural construction of the wording indicates otherwise.

(13) References made to officials and official bodies shall mean officials and official bodies of the Village of Pomona, unless the natural construction of the wording indicates otherwise.

(14) The "village" is the Village of Pomona in the County of Rockland, State of New York; the "Village Board," "Board of Appeals," "Planning Board" and "Code Enforcement Officer" are, respectively, the Board of Trustees of the Village of Pomona, the Village of Pomona Zoning Board of Appeals, the Village of Pomona Planning Board and the Village of Pomona Code Enforcement Officer.

(15) In case of any difference of meaning or implication between the text of this chapter and any caption or illustration, the text shall control.

B. Terms not defined. Where terms are not defined, they shall have their ordinarily accepted meanings or such as the context may imply.

## § 130-4.  Terms defined.

As used in this chapter, the following terms shall have the meanings indicated:

ACCESSORY BUILDING — A building subordinate to the main building on the lot and used for purposes customarily incidental to that of the main building. Where an "accessory building" is attached to the main building in a substantial manner, as by a wall or roof, such "accessory building" shall be considered part of the main building.

AGRICULTURAL USE — The growing of field crops or raising of livestock.

ALTERATION — A change or rearrangement in the supporting members of a building or structure, or an enlargement, whether by extending on a side or by increasing in height, or the moving from one location or position to anoher.

BASEMENT — A portion of a building partly underground, but having less than half its clear height below the average grade of the adjoining grade. See also "cellar."

BOARD OF APPEALS — The Board of Appeals of the Village of Pomona.

BOARD OF TRUSTEES — The Board of Trustees of the Village of Pomona.

BUILDING — Any structure having a roof, self-supporting or supported by columns or walls, which is permanently affixed to the ground and intended for the shelter, housing or enclosure of persons, animals or chattel.

BUILDING, AIR-PRESSURE — Any structure partially or totally supported by air pressure.

BUILDING AREA — The maximum horizontal cross section of a building, including porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three (3) feet and steps and terraces not more than three (3) feet above the average adjacent ground elevation.

BUILDING CODE — The New York State Uniform Fire Prevention and Building Code adopted by the Board of Trustees of the Village of Pomona.

BUILDING COVERAGE — That percentage of the land area covered by the combined building area of all buildings, excluding any buildings or structures located completely below ground.

BULK — The size and shape of buildings and nonbuilding uses; and the physical relationship of their exterior walls and accessory construction to plot lines; and all open spaces required in connection with a building or structure. "Bulk" regulations include regulations dealing with plot area, plot frontage, plot width, plot depth, height, required yards, the ratio of roofed or roofable area to the area of the plot.

BUSINESS OR PROFESSIONAL OFFICE — An establishment offering services to the general public or the business community.

CAMP — An establishment, including facilities for seasonal use, organized for recreational or athletic purposes.

CELLAR — A portion of a building partly or wholly underground, having half or more than half of its clear height below the average grade of the adjoining ground. See also "basement."

CEMETERY — A place containing graves or tombs for the interment of the dead.

CORNER LOT — A lot located at the junction of and fronting on two (2) or more streets intersecting at an angle of less than one hundred thirty-five degrees (135°).

DIMENSIONALLY NONCONFORMING — See "nonconforming, dimensionally."

DIMENSIONAL NONCONFORMITY — See "nonconformity, dimensional."

DRIVEWAY — A passageway with an impervious surface for the use of motor vehicles.

DWELLING, ONE-FAMILY DETACHED — A building containing a single principal dwelling unit occupied by only one (1) family and located in its own separate building which does not abut any other dwelling unit.

DWELLING, TWO-FAMILY DETACHED — A building containing two (2) principal dwelling units located in their own separate building which does abut any other dwelling and which does not include a dwelling unit attached or connected to another dwelling by a party wall.

DWELLING UNIT — A building or portion thereof providing complete housekeeping facilities for one (1) family, including independent cooking, sanitary and sleeping facilities, and physically separate from any other dwelling unit whether or not in the same building.

FAMILY — Any number of individuals related by blood, marriage or adoption, or not more than four (4) persons who are not so related, living together as a single housekeeping unit, using rooms and housekeeping facilities in common and having such meals as they may eat at home generally prepared and eaten together.

FARM STAND — An establishment offering agricultural products grown or raised on the premises for retail sale.

FINISHED GRADE — The elevation of the completed surfaces of lawns, landscaped areas, walks, driveways and parking areas or of the existing ground where it remains undisturbed.

FLOOR AREA — The horizontal area of a story of a building, measured from the exterior faces of exterior walls, or in the case of a common wall separating two (2) buildings, from the center line of such common walls, and including covered and uncovered porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three (3) feet and steps and terraces not more than three (3) feet above the average adjacent ground elevation.

FLOOR AREA RATIO — Gross floor area divided by the area of a lot.

FRONTAGE — See "lot frontage."

FRONT LOT LINE — See "lot line, front."

FRONT YARD — See "yard, front."

GARAGE — A part of a building, fully enclosed with four (4) walls and a roof, used for the parking of motor vehicles.

GROSS FLOOR AREA — The total floor area of all residential floors of a building, including all areas with headroom of seventy-five (75) inches or more.

HALF STORY — An uppermost story in which the floor area, having a clear height of at least seven and one-third (7 1/3) feet, is one-third (1/3) or less of the floor area of the story next beneath it.

HEIGHT, BUILDING — The vertical distance measured from the average elevation of the proposed finished grade at the front of the building to the highest point of the roof for flat roofs, to the deck line of mansard roofs and to the mean height between eaves and ridge for gable, hip and gambrel roofs.

HOME OCCUPATION — A use of a service character for gain customarily conducted entirely within a dwelling unit by the residents thereof, which use is incidental and secondary to the use of the dwelling for residential purposes and does not change the character

thereof, does not have any exterior evidence of such accessory use and does not involve the keeping of a stock in trade.

IMPERVIOUS SURFACE — Those surfaces which do not absorb stormwater. All buildings, parking areas, driveways, roads, sidewalks and any areas in concrete, asphalt or packed stone shall be considered "impervious surfaces" within this definition. In addition, other areas determined by the Village Engineer to be impervious within the meaning of this definition will also be classed as "impervious surfaces."

LOADING SPACE — An off-street space available for the loading or unloading of goods, not less than fifteen (15) feet wide, forty (40) feet long and with a minimum overhead clearance of fourteen (14) feet.

LOT — A parcel of land, not divided by streets, together with such yards as are required by the provisions of this chapter, and having its principal frontage on a street or on such other means of access as may be deemed in accordance with the provisions of law to be suitable as a condition of the issuance of a building permit on the lot.

LOT AREA — The total horizontal area included within the boundaries of the lot.

LOT COVERAGE — That percentage of the plot or lot area covered by buildings and structures that have foundations and are or can be roofed over. Open swimming pools shall not be considered a part of "lot coverage."

LOT FRONTAGE — The horizontal distance measured along the full length of the front lot line of a lot.

LOT LINE — A property line bounding a lot.

LOT LINE, FRONT — Any lot line separating the lot from the street.

LOT LINE, REAR — The lot line which is generally opposite and parallel to the front lot line. If the "rear lot line" is less than ten (10) feet in length, or if the lot comes to a point at the rear, the "rear lot line" shall be deemed to be a line parallel to the front lot line, not less than ten (10) feet long, lying wholly within the lot and farthest from the front lot line.

LOT LINE, SIDE — Any lot line other than a front lot line and the rear lot line.

LOT WIDTH — The distance measured along a line drawn parallel to the front lot line at a distance equal to the minimum front yard requirement.

MAIN BUILDING — A building in which is conducted the principal use of the lot on which such building is situated.

MICROWAVE RECEIVING DISH — A device, also known as a "satellite dish" or "earth station," whose purpose is to receive communication or other signals from orbiting satellites and which is designed for use by not more than two (2) dwelling units.

MOBILE TRAILER — See "trailer."

MULTIPLE DWELLING —A building used or designed as a residence for two (2) or more families living independently of each other and doing their own cooking therein.

NONCONFORMING BULK — That part of a building, structure or non-building use which does not conform to one or more of the applicable bulk regulations of this chapter.

NONCONFORMING, DIMENSIONALLY — See "nonconformity, dimensional."

NONCONFORMING USE — A use of a building or land, or both, which was lawfully established but which does not conform to the use regulations for the district in which it is located. It may or may not involve any principal building. Any use which is permitted in a district by special permit shall be considered a conforming use, subject to all conditions applicable thereto.

NONCONFORMITY, DIMENSIONAL — The status of a building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, floor area ratio, off-street parking, loading or similar dimensional requirements of this chapter and which conformed to such dimensional requirements of the zoning regulations in effect at the time such building or structure was established.

NOT-FOR-PROFIT CORPORATION — A corporation formed or existing under the Not-For-Profit Corporation Law of New York State.

NURSERY SCHOOL or DAY-CARE CENTER — An establishment providing care for three (3) or more children and operated in accordance with the Social Services Law of the State of New York.

ONE-FAMILY DWELLING — See "dwelling, one-family detached."

OWNERSHIP, SINGLE — Ownership by the same person, corporation, firm, entity, partnership or unincorporated association, or owned by different corporations, firms, partnerships, entities or unincorporated associations in which a stockholder, partner or associate or a member of his family owns an interest in each corporation, firm, partnership, entity or unincorporated association.

PARKING AREA — An off-street area with an impervious surface containing one (1) or more parking spaces.

PARKING SPACE — An off-street space available for the parking of one (1) motor vehicle on a transient basis. Such space shall not be located in a front yard.

PARKING SPACE, INDOOR — A parking space located in a fully enclosed structure.

PERSON — Any individual or group of individuals, corporation, partnership, association or any other entity, including state and local governments and agencies.

PLANNING BOARD — The Planning Board of the Village of Pomona.

PRIVATE MEMBERSHIP CLUB — A not-for-profit corporation organized to cater exclusively to its members and their guests, including land, buildings and facilities for recreational, athletic, social, professional and cultural purposes. The members of the organization shall have a financial interest in, and method of control of, the assets and management of the "private membership club."

PUBLIC SCHOOL — An educational institution operated by a public school district in accordance with the Education Law of the State of New York.

PUBLIC UTILITY — Any person duly authorized to furnish to the public, under public regulation, electricity, gas, water, sewage treatment, steam, cable television or telephone or telegraph service.

REAR LOT LINE — See "lot line, rear."

REAR YARD — See "yard, rear."

RECREATIONAL VEHICLE — A vehicular device designed to be used primarily as a temporary abode for travel, recreation or vacation use, including camper trailers, motor homes, pickup coaches and travel trailers.

RECREATION FACILITIES — Facilities designed and used for active and passive participatory athletic and general recreation activities, such as health clubs, gymnasiums, dance halls, skating rinks, swimming pools, tennis courts, ball fields, bowling alleys and billiard rooms; excluded are facilities intended for spectator activities, such as stadiums and arenas, and any structure in which is maintained for the amusement, patronage or recreation of the public more than three (3) electronic games.

RESIDENCE — A building designed or used as the living quarters for one (1) family.

ROOMER — An occupant of a rooming unit.

ROOMING UNIT — One (1) or more rooms, with or without private bathroom facilities, but without cooking facilities, which are rented or available for rent and which are located within a dwelling unit.

SCHOOL — An educational institution giving regular instruction for grades between kindergarten and 12th grade at least five (5) days a week for seven (7) months or more in each year and having a curriculum approved by the Board of Regents or the New York State Education Department (but not including a dormitory or a school or college giving special or limited instruction, such as business, art, music, dancing, automobile or riding school).

SCREENING — Either a strip at least four (4) feet wide densely planted (or having equivalent natural growth) with shrubs or trees at least four (4) feet high at the time of planting, of a type that will form a year-round dense screen at least six (6) feet high within three (3)

years, or an opaque wall or barrier or uniformly painted fence at least six (6) feet high.

SIDE LOT LINE — See "lot line, side."

SIDE YARD — See "yard, side."

SIGN — Any structure or part thereof, or any device attached thereto or painted thereon, or any material or thing, illuminated or otherwise, which displays or includes any numeral, letter, work, model, banner, emblem, light, device, trademark or other representation used as an announcement, designation, direction, display or advertisement of any person, firm, group, organization, commodity, service, profession or enterprise when placed in such a manner that it provides visual communication to the general public out of doors.

SIGN AREA — The area which results from the multiplication of the outside dimensions of a sign; the vertical, horizontal or diagonal supports which may affix the sign to the ground or to a structure shall not be included in determining these dimensions unless such supports are clearly a part of the message of the sign. Where a sign is on a plate or outlined or framed, all of the area of such plate or the area enclosed by such outline or frame shall be included. Where the sign consists of individual letters or symbols attached to or painted on a surface, the area shall be considered to be that of the smallest single rectangle which encompasses all of the letters or symbols. Where the sign consists of multiple plaques or parts, the "sign area" shall be the total area of all such parts. The area of all signs that can be seen from more than one (1) side shall be considered to be the area of the largest side on which the message appears.

SITE PLAN — A rendering, drawing or sketch prepared to specifications, and containing the necessary elements as set forth in § 118-32 of this Code, showing the arrangement layout and design of the proposed use of a single parcel of land as shown on said plan. [Amended 2-28-1994 by L.L. No. 1-1994]

SOLAR ENERGY COLLECTOR — A device or combination of devices which relies upon solar radiation as an energy source that is employed for the purposes of the heating or cooling of a building, the heating of water or the generation of electricity.

SPECIAL PERMIT USE — An authorization of a particular land use permitted by the Zoning Code of the Village of Pomona, subject to conditions imposed by such Code to assure that the proposed use is in harmony with said Code and will not adversely affect the neighborhood in which such use is to occur if such conditions are met. [Added 2-28-1994 by L.L. No. 1-1994]

STORY — That portion of a building included between the upper surface of any floor and the upper surface of the floor next above, except that the topmost "story" shall be that portion of a building included between the upper surface of the topmost floor and the ceiling or roof above. If the finished floor level directly above a basement or cellar is more than six (6) feet above the finished grade, such basement or cellar shall be considered a "story."

STREET — An existing state, county, town or village highway or road, or a way shown on a subdivision plat approved by the Planning Board of the Village of Pomona, Town of Ramapo or Town of Haverstraw or on a plat duly filed and recorded in the office of the County Clerk prior to the appointment of the Planning Board and the grant to such Board of the power to approve subdivision plats, including all of the land within the right-of-way.

STRUCTURE — Anything constructed or erected above or below ground. Included are swimming pools, parking garages, tennis courts, parking areas and driveways.

SUBDIVISION — Any division of land into two (2) or more parcels.

SWIMMING CLUB — A pool operated for members and their guests.

SWIMMING POOL — A man-made body of water or receptacle for water having a depth of more than twenty (20) inches and a water surface area of more than eighty (80) square feet and constructed, installed or maintained in or above ground outside any building.

TERRACE or PORCH — An uncovered flat platform with a surface material. A "terrace" which has a roof and which is attached to a building shall be considered a "porch."

TRAILER — A vehicle which can be used for living or sleeping purposes, standing on or designed to stand on wheels or on rigid supports.

USE — The specific purpose for which land, water, a building or a structure is designed, arranged, intended or for which it is or may be occupied or maintained.

USE, ACCESSORY — A use which is customarily incidental and subordinate to the principal permitted use on the lot and located on the same lot therewith, except that where specifically provided, accessory off-street parking need not be located on the same lot. An "accessory use" may not be accessory to another "accessory use."

USE, PRINCIPAL — The main use of a structure or lot.

(Cont'd on page 13017)

USE, SPECIAL PERMIT — A use allowed in a district, subject to the issuance of a special permit in accordance with the provisions of § 130-10 of this chapter.

YARD — Open space on the same lot as a building or structure, which open space lies between the building or structure and the nearest lot line. A "yard" shall be measured as the shortest distance between the building or structure and the lot line.

YARD, FRONT — A yard extending the entire length of the front lot line and lying between the front lot line and the nearest part of the building.

YARD, REAR — A yard extending the entire length of the rear lot line and lying between the rear lot line and the nearest part of the building.

YARD, REQUIRED — Open and unobstructed ground area of the plot extending inward from a plot line the distance specified in the regulations for the district in which the plot is located.

YARD, SIDE — A yard between a side lot line and the nearest part of the building and extending from the front yard to the rear yard, or, in the absence of either of such yards, to the front and rear lot line, as the case may be.

ARTICLE III
General Provisions

## § 130-5. District classification.

The entire area of the Village of Pomona is hereby designated as a residential district with a minimum of forty thousand (40,000) square feet per lot, hereinafter referred to as the "R-40 District."

## § 130-6. Zoning Map.

The areas and boundaries of such district are hereby established as shown on a map entitled, "Zoning Map of the Village of Pomona," dated and made a part of this chapter. A copy of this map, indicating the latest amendments, shall be on file in the Village Clerk's office.

## § 130-7. Minimum standards.

A. The provisions of this chapter shall be considered as minimum standards. The Planning Board and the Zoning Board of Appeals are hereby empowered to set more stringent requirements than herein set forth in those cases where such are deemed necessary for the preservation of natural features they consider desirable, the elimination or control of natural features considered undesirable or, in general, to meet the stated purposes of this chapter.

B. Lots whose effluent and wastes are not treated by a state, county or municipal sewage plant shall be required to have a lot size twice that designated for the district in which the lot is located.

## § 130-8. Scope of controls.

A. All new construction, every reconstruction or alteration of a building or structure, every change in bulk, all new uses of buildings or land and every change, enlargement or relocation of use shall conform to the use and bulk regulations of this chapter, except as otherwise set forth herein.

B. After the effective date of this chapter, no building permit shall be granted for construction in any subdivision in which the lots do not comply with all the provisions of this chapter. Any subdivision which may have been filed in the County Clerk's office and/or have had prior approval from any appropriate planning board prior to the effective date of this chapter must obtain approval from the Village of Pomona Planning Board regardless of such prior filing or approval, and such subdivision must comply with the provisions of this chapter. All construction which was commenced prior to the effective date and has progressed at least as far as a completed foundation may continue to be constructed in accordance with plans and specifications filed for such construction, except that a new building permit must be obtained from the Village of Pomona Code Enforcement Officer, a building permit fee and certificate of occupancy fee paid and, wherever possible, the provisions of this chapter shall be complied with.

§ 130-9             ZONING             § 130-9

ARTICLE IV
**Use Regulations**

**§ 130-9. Permitted uses.**

A. All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited, except as provided in §§ 130-10 and 130-11.

    (1) One-family residences, with one (1) dwelling unit per lot (no commercial; no trailers; no multiple dwellings).

    (2) Houses of worship, subject to the requirements of Subsection C below.

    (3) Public utilities rights-of-way.

    (4) Schools of general instruction, subject to the requirements of Subsection B below.

    (5) Libraries and museums.

    (6) Public parks and playgrounds.

    (7) Agricultural pursuits.

B. School of general instruction.

    (1) To qualify for use as a school, a lot must have a minimum area of five (5) acres and must have frontage on and practical access to a public road.

    (2) All buildings, structures and recreational facilities shall be set back from adjacent residential lot lines at least twice the minimum yard requirement for residential buildings, except that the Planning Board may permit a reduction of this additional setback requirement where, because of topography, the installation of additional buffer landscaping or fencing or the particular nature of the use, any potential adverse external effect of such use will be minimized. Buildings and structures shall meet all other requirements of this chapter.

    (3) Such school shall comply with all licensing, site area and dimensional requirements established for such school by the New York State Department of Education.

C. House of worship. A church, synagogue or similar place of worship or parish house is permitted as a special permit exception by the Board of Trustees, provided that it finds that:

    (1)  It is a bona fide religious use.

    (2)  The proposed structure meets all of the state requirements for a place of public assembly, including Fire Prevention Codes.

    (3)  Such use is located on a lot not less than three (3) acres in size.

    (4)  Such use shall have frontage on and practical access to a public road.

## § 130-10. Special permit uses.

The following uses are permitted in the R-40 District by special permit of the Board of Appeals:

A. Recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings not conducted as a business enterprise, provided that no building, pool, spectator or active play area erected under the provisions of this subsection shall be so erected nearer than fifty (50) feet to any lot line and provided that the following operations shall be prohibited:

    (1)  Outdoor entertainment, live or mechanical.

    (2)  The use of outdoor public-address systems for any purpose.

    (3)  Exterior lighting producing glare at the lot line other than that essential for the safety of the users of the premises.

B. Reservoirs on lots of three (3) acres or more, and water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on lots of three (3) acres or more and subject to the approval of the Board of Trustees.

C. Telephone exchanges and public utility substations, provided that they are housed in buildings that harmonize with the character of the neighborhood and have adequate fences and other safety devices and screening and landscaping.

## § 130-11. Accessory uses.

The following are permitted accessory uses in the R-40 District:

A. Greenhouses, toolsheds, garages, carports and other recreational facilities commonly associated with residential use.

B. Swimming pools and tennis courts, subject to the following regulations:

   (1) Such pool or court shall be completely surrounded by a fence or wall not less than four (4) feet in height and so constructed as to deter climbing. All gates or doors opening through such enclosure shall be equipped with a self-closing and self-latching device for keeping the gate or door securely locked at all times when the pool or court is not in actual use.

   (2) If located within fifty (50) feet of any lot line, such pool or court shall be screened from the view of the adjacent properties. Such screen shall be at least five (5) feet high.

C. Temporary storage of mobile trailers and boats, provided that they are not visible from the street and are properly screened from adjacent property.

D. The keeping of no more than five (5) household pets, exclusive of pets under three (3) months of age, but excluding the commercial breeding or boarding of same.

E. Customary home occupations, provided that:

   (1) No display of goods or signs is visible from the street, except as set forth in the regulations for signs.

   (2) Such occupation is incidental to the residential use of the premises and is carried on in the main building by a resident therein with no more than two (2) nonresident assistants.

   (3) Such occupation is carried on in an area not exceeding fifty percent (50%) of the area of one (1) floor of the main building.

   (4) There shall be no exterior effect such as noise, traffic, odor, dust, smoke, gas fumes, radiation or electromagnetic interference.

(5) There shall be provision for adequate off-street parking to accommodate the vehicles of persons connected with or visiting the permitted use, and there shall be no parking of such vehicles in public streets. The adequacy of off-street parking shall be determined by the Code Enforcement Officer.

F. Office or studio of an artist, dentist, musician, teacher, physician, lawyer or other professional person, but not including veterinarians, provided that:

(1) Such office or studio is incidental to the residential use of the premises and is carried on with not more than one (1) nonresident assistant.

(2) Such office or studio shall occupy not more than fifty percent (50%) of the area of the floor of the main building.

(3) Studios of music or dance are not used for the instruction of groups in excess of four (4) pupils at one time, nor for the giving of concerts or recitals.

(4) Medical centers, barbershops, beauty parlors, real estate offices, funeral homes or similar uses are not permitted professional uses and are prohibited.

(5) There shall be no exterior effect such as noise, traffic, odor, dust, smoke, gas fumes, radiation or electromagnetic interference.

(6) There shall be provision for adequate off-street parking to accommodate the vehicles of persons connected with or visiting the permitted use, and there shall be no parking of such vehicles in public streets. The adequacy of off-street parking shall be determined by the Code Enforcement Officer.

G. Signs, limited as follows:

(1) One (1) nameplate or professional sign with an area not over one by one and one-half (1 x 1½) feet.

(2) One (1) temporary nonilluminated sign advertising the sale or rental of the premises on which such sign is situated, with an area of not over four (4) square feet, provided that such sign is not located within twenty-five (25) feet of any side lot line.

    (3)   Temporary signs for garage sales, provided that such signs contain the address of the seller and date of the sale, are displayed only one (1) week prior to the sale and are removed within one (1) week after the sale.

## ARTICLE V
## Area and Bulk Regulations

### § 130-12.  R-40 District.

The following bulk regulations shall apply in the R-40 District:

    A.   Minimum lot area: forty thousand (40,000) square feet.

    B.   Minimum lot width: one hundred fifty (150) feet measured at the front of the lot along the public right-of-way, except that lots of two (2) acres or more having public sewer availability may be subdivided to produce a so-called "flag" lot with access to public streets by way of a twenty-five-foot-wide strip either owned by the rear lot owner in fee or over which the rear lot owner has a permanent easement for ingress and egress. A maximum of one (1) flag lot per parent parcel may be so created, with not more than one (1) newly created parcel being accessed by each twenty-five-foot-wide strip of property. That lot on the outside curb of a road may have frontage of only fifty percent (50%) of that required. **[Amended 9-11-1989 by L.L. No. 3-1989; 2-28-1994 by L.L. No. 1-1994]**

    C.   Minimum lot depth: one hundred forty (140) feet.

    D.   Minimum front yard: fifty (50) feet, measured from the edge of the right-of-way. If located on a right-of-way of less than fifty (50) feet, all buildings shall be set back a distance, measured from the center line of the existing roadway, of at least the required front yard plus twenty-five (25) feet.

    E.   Minimum rear yard: thirty (30) feet.

    F.   Minimum side yard: twenty-five (25) feet. On a corner lot, each yard which abuts a street shall be deemed a front yard and shall meet front yard requirements. Thus, a corner lot shall have two (2) front yards and two (2) side yards.

G. Maximum height of buildings and structures shall be thirty-five (35) feet measured from ground level in front of the building or structure.

H. Maximum lot coverage: ten percent (10%).

I. Minimum number of off-street parking spaces: two (2).

ARTICLE VI
General Regulations

## § 130-13. Application of regulations.

A. Conformity required. No building shall be erected, constructed, moved, altered, rebuilt or enlarged, nor shall any land, water or building be used, designed or arranged to be used, for any purpose except in conformity with this chapter.

B. Minimum requirements. In interpreting and applying this chapter, the requirements contained herein are declared to be the minimum requirements necessary for the protection and promotion of the public health, safety, morals, comfort, convenience and general welfare.

## § 130-14. Relationship to other regulations.

A. Other applicable codes, standards and regulations. There are many other applicable codes, standards and regulations of the Village of Pomona in addition to this chapter. These include the Subdivision of Land Regulations and the Uniform Fire Prevention and Building Code.[1]

B. Conflicting standards. This chapter shall not be deemed to affect in any manner whatsoever any easements, covenants or other agreements between parties; provided, however, that where this chapter imposes a greater or lesser restriction upon the use of buildings or land or upon the erection, construction, establishment, movement, alteration or enlargement of buildings than is imposed by other local laws, rules, regulations, licenses, certificates or other authorizations or by easements, covenants or agreements, the more restrictive requirements shall prevail.

---

[1] Editor's Note: See Ch. 118, Subdivision of Land; Ch. 47, Building Construction; and Ch. 74, Fire Prevention.

§ **130-15. Nonconforming uses, buildings or structures.**

    A.   Continuing existing uses, buildings and structures.

(Cont'd on page 13025)

(1)  Except as otherwise provided herein, the lawfully permitted use of lands or buildings and the lawfully permitted existence of buildings or structures at the time of the adoption of this chapter may be continued although such use, building or structure does not conform to the standards specified in this chapter for the district in which such lands, buildings or structures are located. Similarly, whenever a zoning classification or the restrictions affecting property within a district shall be changed hereafter so as to render nonconforming a use, building or structure then presently or theretofore lawfully existing, such use, building or structure may nevertheless continue, subject to the conditions set forth below. Said uses shall be deemed nonconforming uses and said buildings and structures shall be deemed dimensionally nonconforming.

(2)  Any use in existence as of the effective date of this chapter which is by this chapter made a special permit use in the district in which it is located shall be presumed to have a special permit to the extent such use is legally conforming as of the date immediately prior to the effective date of this chapter.

B.  Nonconforming use of land, buildings or structures.

(1)  The nonconforming use of land may be continued; provided, however, that no such nonconforming use shall be physically enlarged or intensified, nor shall it be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of this chapter, unless specifically allowed by other provisions in this chapter, nor shall any such nonconforming use be moved in whole or in part to any other portion of the lot or parcel of land occupied by such nonconforming use at the time of the adoption of this chapter.

(2)  A building or structure, the use of which does not conform to the use regulations for the district in which it is situated, shall not be enlarged, extended or altered structurally unless the use therein is changed to a conforming use or to conform to an order of the Code Enforcement Officer to either correct an unsafe condition or conform to the requirements of applicable laws or ordinances.

(3) No nonconforming use of a building or structure shall be enlarged or extended, except that any such nonconforming use may be extended throughout any parts of the building or structure which were obviously or manifestly arranged or designed only for such use at the time of the adoption or amendment of this chapter.

(4) No nonconforming use shall be changed to another nonconforming use, except as provided in Subsection E below.

(5) If a nonconforming use ceases for any reason for a total of six (6) months during any twelve-month period or is changed to a conforming use, any future use of the land, building or structure shall be in conformity with the provisions of this chapter. Substantial cessation of activities consistent with or required for the operation of such nonconforming use, or substantial vacancy of the building or structure in which the nonconforming use was conducted, together with substantial cessation of activities consistent with or required for the operation of such nonconforming use, shall be deemed to constitute a discontinuance thereof within the meaning of this chapter irrespective of whether an intention to abandon the nonconforming use may exist. On application, however, the Board of Appeals may extend the period upon a finding that it is not reasonable in its application to the particular premises, taking into consideration the characteristics of the use, the investment which has been made in it, the circumstances of the discontinuance and the suitability of the structure for a permitted or special permit use.

(6) If any building or structure in which any nonconforming use is conducted or maintained is hereafter removed, the subsequent use of the land on which such building or structure was located and the subsequent use of any building or structure thereon shall be in conformity with the standards specified by this chapter for the district in which such land is located.

C. Dimensional nonconformity. A building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, off-street parking, loading or similar dimensional requirements of this chapter shall be deemed to be dimensionally nonconforming. No permit shall be issued that will

result in the increase of any such dimensional nonconformity, but any building or structure or portion thereof may be altered to maintain or decrease its dimensional nonconformity.

D. Reconstruction.

    (1)  Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of more than seventy-five percent (75%) of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it shall not thereafter be reconstructed or used except in conformity with the provisions of this chapter.

    (2)  Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of seventy-five percent (75%) or less of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it may be reconstructed and any accompanying nonconforming use continued, provided that the reconstruction is commenced within one (1) year of the date of such damage and completed within two (2) years of said date, and further provided that it shall be reconstructed in accordance with a plan approved by the Planning Board so as to result, where possible, in greater conformity with this chapter.

E. Change to other nonconforming use. On application, any nonconforming use of land, buildings or structures may be changed to another nonconforming use upon approval by the Board of Appeals based upon a finding that the proposed use is more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Appeals may impose whatever conditions and safeguards it may deem necessary or appropriate to further the purposes of this chapter.

F. Improvement of nonconforming uses. In order that nonconforming uses may gradually be brought into greater conformity with this chapter and the adverse external effects of such nonconforming uses

may be reduced, the owner of the land, building or structure so used may be permitted to make limited changes to such building, structure or use in conjunction with a site plan whereby, through landscaped screening and buffer areas, control of noise, smoke, odors, lighting, architectural changes, location and layout of parking areas and access drives or by any other appropriate means, these purposes may be achieved. Such plan shall be presented to the Board of Appeals, which may then grant approval or approval with modifications, provided that said agency finds that the purposes of this section shall be met.

## § 130-16. General lot, yard and use regulations.

A. Lot for every building. Every building hereafter erected shall be located on a lot and there shall be no more than one (1) main building and its accessory buildings on one (1) lot, except for nonresidential buildings in districts where such uses are permitted.

B. Subdivision of a lot. Where a lot is formed hereafter from part of a lot already occupied by a building, such separation shall be effected in such manner as not to impair conformity with any of the requirements of this chapter with respect to the existing building and all yards and other required spaces in connection therewith, and no permit shall be issued for the erection of a building on the new lot thus created unless it complies with all the provisions of this chapter.

C. Irregularly shaped lots. Where a question exists as to the proper application of any of the requirements of this chapter to a particular lot because of its peculiar or irregular shape, the Board of Appeals shall determine how the requirements of this chapter apply as provided in § 130-28E of this chapter.

D. Obstructions to vision at intersections in residential districts. At the intersection of two (2) or more streets in a residential district, no fence, wall, structure or shrubbery or other obstruction more than two (2) feet in height above the center-line grade of the streets shall be erected or placed on any part of a yard herein established that is included within the triangular area formed by the nearest edges of the street line and a straight line between two (2) points, each a

minimum of twenty-five (25) feet back from the intersection of the nearest edges of the street line prolonged.

E.  New buildings on lots smaller than minimum required area. A permit may be issued for the erection of a building for a permitted use on a lot for which a valid conveyance has been recorded prior to May 28, 1968, notwithstanding that the area or dimensions of such lot are less than that required for the district in which such lot is located, provided that such lot meets the requirements of § 7-708, Subdivision 2, of the Village Law.

F.  Yard for every building. No yard or other open space provided about any building for the purpose of complying with the provisions of this chapter shall be included as any part of the yard or open space for any other building. No yard or any other open space on one lot shall be considered as a yard or open space for a building on any other lot.

G.  Use of yards. No accessory building or structure shall be permitted within any minimum required yard except as regulated by subsections J and O. No parking shall be permitted within any yard except as provided in Article VII.

H.  No reduction of required yards. No lot shall be so reduced in area as to make any yard smaller than the minimum required under this chapter.

I.  Yards on corner lots. On a corner lot, each lot line which abuts a street shall be deemed to be a front lot line, and the required yard along both lot frontages shall be a required front yard. Where a corner lot has frontage on three (3) streets, the remaining yard shall be a side yard.

J.  Structural projections permitted into required yards and courts.

    (1)  Limited walls and fences may be allowed in required yards, subject to the requirements of Subsection L.

    (2)  All required yards shall be unobstructed except as provided in this subsection. (Since required yards shall be open to the sky, an obstruction shall include the projection of a structure into such spaces at any level above ground.) However, an arbor, open trellis, flagpole, unroofed steps, unroofed terrace or deck

at not to exceed one (1) foot above ground level shall be permitted in any required yard up to within ten (10) feet of a property line.

(3)  An awning or movable canopy may project not more than ten (10) feet into any required yard.

(4)  Cornices or eaves may project not more than eighteen (18) inches into a required yard.

(5)  Windowsills or belt courses may project not more than six (6) inches into a required yard.

(6)  Driveways and parking areas shall be permitted in any yard, provided that they comply with the maximum impervious surface requirements of this chapter.

K.  Exceptions to height limitations. The height limitations of this chapter shall not apply to:

(1)  Church spires, belfries, cupolas, domes, monuments, observation towers, chimneys, smokestacks, derricks, flagpoles, radio towers, masts and aerials where not used for human occupancy and where such structures do not extend more than fifteen (15) feet above the roof.

(2)  Rooftop bulkheads, elevator penthouses, water towers, water tanks, monitors, fire towers, hose towers, cooling towers or solar energy collectors, provided that such features shall be erected only to the height necessary to accomplish the purpose they are intended to serve, the total area covered by such features shall not exceed twenty percent (20%) of the horizontal area of the roof on which they are located, such structures do not extend more than fifteen (15) feet above the roof and, where the lot on which they are located is in or adjacent to a residence district, such features shall be set back from the edge of the roof at least one (1) foot for each one (1) foot by which such features exceed the maximum height otherwise specified for the district in which they are located.

L.  Fences and walls. Fences and walls, including retaining walls, are permitted within required yards, provided that:

(1)   Except as provided in Subsection Q below, such fences or walls shall not exceed four (4) feet in height if located in a front yard and six (6) feet in height in any other yard. A fence or wall may have a maximum height of six (6) feet in any yard abutting a public road. The Code Enforcement Officer may, where necessary for safety, require the addition to a retaining wall of a motor vehicle bumper guard or fence.

(2)   The fence or wall meets the requirements of Subsection D of this section.

(3)   If any such fence or wall located within a required yard has a finished or more attractive side, such side shall face the neighboring property or street.

(4)   All fences or walls must be inside all lot lines.

(5)   Barbed wire is permitted as a part of a fence in a nonresidential district, provided that such barbed wire is located at least six (6) feet above the ground. A barbed wire or electrically charged fence is permitted in any district only upon approval of the Planning Board.

M.  Cemeteries. Cemeteries are not permitted in any district.

N.  Solar energy collectors. [Amended 2-28-1994 by L.L. No. 1-1994]

(1)   Solar energy collectors are permitted as a part of and may be attached to any building.

(2)   Installation of solar energy collectors shall require the issuance of a building permit and the approval of the Planning Board.

O.  Accessory buildings and structures. Accessory buildings and structures shall be permitted in all districts, subject to the following:

(1)   Not more than three (3) accessory buildings and structures shall be permitted on a lot in a residential district, except as approved in accordance with § 130-10D. [Amended 1-28-1991 by L.L. No. 1-1991]

(2)   The gross floor area of all principal and accessory buildings, regardless of size, located on a lot shall comply with the maximum lot coverage requirements of this chapter.

(3)　The following shall be considered accessory buildings and structures for the purposes of this subsection: tennis courts, paddle tennis courts, swimming pools, garages for passenger vehicles or one (1) vehicle with commercial registration under five thousand (5,000) pounds gross vehicle weight, greenhouses, playhouses, garden houses, toolhouses, stables, barns, solar energy collectors.

(4)　Accessory buildings and structures not greater than one hundred (100) square feet in floor area and not more than ten (10) feet in height measured to the highest point of the building or structure may be located not closer to a side or rear yard than one-third ($1/3$) of the side yard and rear yard dimensions specified in this chapter. Accessory buildings and structures shall comply with the front yard setbacks specified herein.

(5)　Individual accessory buildings and structures greater than one hundred (100) square feet in ground-floor area or greater than ten (10) feet in height shall meet the following requirements:

(a)　Accessory buildings and structures permitted under this subsection shall comply with the front, rear and side yard and building coverage requirements specified herein and shall be limited in height to a maximum of twenty (20) feet measured to the highest point of the building or structure.

(b)　The construction of an accessory building or structure over two thousand five hundred (2,500) square feet in ground-floor area or greater than twenty (20) feet in height shall require the issuance of a special permit by the Board of Trustees.

P.　Garage sales. Garage sales may be conducted from a property in a residential district, provided that:

(1)　Signs advertising the garage sale shall comply with the requirements of § 130-11G(3).

(2)　The number of garage sales shall be limited to two (2) per year, each to be limited to a maximum duration of three (3) days.

(Cont'd on page 13033)

Q. Animals.[2]

  (1)  General regulations. The following regulations apply to the maintenance of animals in all districts:

      (a)  The maintenance, breeding, raising, purchase and/or sale of all animals and their products, including but not limited to milk and eggs, is considered an accessory use and is permitted, subject to the requirements listed below.

      (b)  No venomous snakes or wild animals shall be permitted in residential districts.

      (c)  All animals living primarily within the residence and not regulated below are excluded from these regulations.

      (d)  All feed shall be housed in rodentproof containers.

      (e)  All animals shall be suitably contained to prevent damage to persons and property.

      (f)  Regulations for types of animals not regulated in Subsection Q(2) below and not excluded in Subsection Q(1)(c) above shall be determined by the Planning Board.

  (2)  Regulations for specific animals.

      (a)  Fowl (such as chickens and ducks). The maintenance of four (4) or less fowl is permitted as an accessory use in the R-40 District. No unneutered roosters shall be permitted. All fowl shall be kept in an enclosed area at least seventy-five (75) feet from any lot line.

      (b)  Horses, cattle, goats and sheep. The maintenance of these animals is permitted as an accessory use, subject to the conditions listed below:

         [1]  Two (2) acres of lot area are required for the first animal. One (1) acre of lot area shall be required for each animal above one (1). Abutting lots with common beneficial ownership shall be considered a single lot.

---

[2]  Editor's Note: See also Ch. 40, Animals.

[2]  All animals, barns and manure storage areas shall be contained by a fence located at least fifty (50) feet from each property line and one hundred fifty (150) feet from any existing residence other than that on the lot. All fences shall be at least five (5) feet in height and shall be of one of the following types, land fencing shall be determined by the Code Enforcement Officer to be strong enough to contain the fenced animals:

[a]  Chain link.

[b]  Post and rail, with a minimum of two (2) horizontal bars.

[c]  Barbed wire, with a minimum of two (2) horizontal strands.

[3]  Commercial livery stables are not permitted.

(c)  Dogs and cats.

[1]  Dogs or cats less than one (1) year old shall be exempt from these regulations.

[2]  The maintenance of five (5) or less dogs or cats is permitted as an accessory use in any district.

R.  Storage of vehicles or boats. In all residential districts, the storage of not more than one (1) unoccupied recreational vehicle or boat or one (1) unregistered vehicle shall be permitted so long as such vehicle or boat is stored only within a rear yard. No stored vehicle or boat shall exceed thirty-five (35) feet in length.

S.  Air-pressure buildings. No air-pressure buildings are permitted in any district.

T.  Municipal uses. Notwithstanding any other provision to the contrary, structures owned or occupied by the Village of Pomona in the performance of its municipal functions shall be exempt from the provisions of this chapter.

U.  Swimming pools. All swimming pools, as defined in this chapter, shall be completely enclosed by a fence or wall with a minimum height of four (4) feet. All such fences must contain a maximum vertical interspace of two (2) inches and must have self-closing and

self-latching gates, with latches placed at least four (4) feet above the ground or otherwise made inaccessible to small children. The fencing shall be determined by the Code Enforcement Officer to be strong enough to ensure pool security.

## § 130-17. Performance standards.

A. Conformance required. No special permit use or nonresidential use shall hereafter be established, altered, moved or expanded unless it complies with the performance standards set forth in this section. Continued conformance with such standards shall be a requirement for the continuance of any certificate of occupancy. Central utility systems serving three (3) or more dwelling units, including but not limited to systems providing heat, water, air conditioning, sewage treatment, garbage collection and electrical power, shall be deemed to be nonresidential uses for the purposes of this section.

B. Purposes. Consistent with the general purposes of this chapter, performance standards shall set specific controls on potentially objectionable external aspects of nonresidential uses so as to:

(1) Reduce to a reasonable minimum the dissemination of smoke, gas, dust, odor or other atmospheric pollutant outside the building in which the use is conducted.

(2) Control noise perceptible beyond the boundaries of the site of the use.

(3) Prevent the discharge of untreated or insufficiently treated wastes into any watercourse.

(4) Prevent the dissemination of vibration, heat or interference beyond the immediate site on which the use is located.

(5) Prevent physical hazard by reason of fire, explosion, radiation or any similar cause.

(6) Regulate and control the generation and flow of vehicular traffic so as to prevent hazardous conditions, traffic congestion and excessive noise in the streets.

C.  Standards for noise. No land use shall be permitted which will produce a volume of noise which would violate the provisions of any law regulating noise in the Village of Pomona.[3]

D.  Standards for vibration.

(1)  Method of measurement. For the purpose of measuring vibration, a two-component measuring system approved by the Planning Board shall be employed.

(2).  Maximum permitted steady-state and impact vibration displacement. No activity shall cause or create a steady-state or impact vibration on any lot line with a vibration displacement by frequency bands in excess of that indicated in the following table:

| Frequency (cycles per second) | Vibration Displacement (inches) | |
| --- | --- | --- |
| | Steady-State | Impact |
| Under 10 | .0005 | .0010 |
| 10 - 19 | .0004 | .0008 |
| 20 - 29 | .0003 | .0006 |
| 30 - 39 | .0002 | .0004 |
| 40 or more | .0001 | .0002 |

E.  Standards for smoke, dust and other atmospheric pollutants.

(1)  General control. The emission of smoke and other particulate matter shall not be permitted, regardless of quantity, if it will be in any way detrimental to the public health, safety, welfare or comfort or a source of damage to property.

(2)  Method of measurement of smoke. For the purpose of grading the density of smoke, the Ringelmann Smoke Chart shall be used to determine the total smoke units emitted. A reading shall be taken every minute for an hour, or if less than an hour, until the total smoke units emitted exceed the number allowed by these regulations. Each reading shall be multiplied by the number of minutes during which it was observed and the products added.

---

[3]  Editor's Note: See Ch. 96, Noise.

(3) Maximum permitted emission of smoke. There shall be no measurable emission of smoke, gas or other atmospheric pollutant. The emission of one (1) smoke unit per hour and smoke with discernible density of No. 1 on the Ringelmann Smoke Chart shall be prohibited.

(4) Maximum permitted emission of dust.

    (a) The emission of dust related to combustion for indirect heating from any source shall not exceed thirty-hundredths (0.30) pound of dust per thousand pounds of flue gas adjusted to fifty percent (50%) excess air for combustion.

    (b) There shall be no measurable emission of dust or other particulate matter not related to combustion for indirect heating.

    (c) All properties shall be suitably improved and maintained with appropriate landscaping and paving or other type of improvement so that there will be no measurable wind-blown dust or other similar types of air pollution created.

F. Standards for odorous matter. No land use shall be permitted which emits any discernible odor outside the building in which the use is conducted.

G. Standards for toxic or noxious matter. No use shall be permitted which will cause any dissemination whatsoever of toxic or noxious matter outside the building in which the use is conducted.

H. Standards for radiation and electromagnetic interference.

(1) Radiation. The handling, storage or disposal of radioactive materials or waste by-products, whether or not licensed by the Atomic Energy Commission, shall be conducted only in accordance with the standards established in Title 10, Chapter 1, Part 20, Code of Federal Regulations, Standards for Protection Against Radiation, as amended, and in accordance with any other applicable laws or regulations.

(2) Electromagnetic interference. No operation shall be permitted which produces any perceptible electromagnetic interference with normal radio or television reception in any area within or without the village.

I.   Standards for fire, explosive hazard and heat.

   (1)   Fire and explosive hazard. No storage or manufacture of explosives, or solid materials or solid products which burn actively or which have a low-ignition temperature, a high rate of burning or create great heat under ordinary temperature conditions shall be permitted.

   (2)   Heat. There shall be no emission of heat which would cause a temperature increase in excess of one degree Fahrenheit (1° F.) along any adjoining lot line, whether such change be in the air, in the ground or in any watercourse or water body.

J.   Standards for liquid or solid wastes. The discharge of any or all wastes shall be permitted only if in complete accordance with all standards, laws and regulations of the Rockland County Health Department, New York State Department of Environmental Conservation or any other regulatory agency having jurisdiction. Facilities for the storage of solid waste shall be so located and designed as to be screened from the street or from any adjoining property and as to discourage the breeding of rodents or insects.

K.   Standards for vehicular traffic. No home occupation or special permit use shall be permitted where it is determined by the Planning Board that the type and number of vehicle trips it is estimated to generate would be expected to produce unusual traffic hazards or congestion or cause or induce emissions which may be expected to interfere with the maintenance of air quality standards established by the United States Environmental Protection Administration, the New York State Department of Environmental Conservation or other regulatory agency having jurisdiction due to the design or capacity of the highway system, the relationship of such proposed use to surrounding or nearby uses or other factors affecting air pollution arising from mobile source activity.

L.   Procedure.

   (1)   In the case of any application for the establishment of a use subject to the performance standards, the Planning Board may require the applicant, at his own expense, to provide such evidence as it deems necessary to determine whether the proposed use will conform to said standards.

    (2)   If the Planning Board deems it necessary, expert advice may be obtained, with the cost of such advice paid for in advance by the applicant as a condition of further consideration of his application. The report of any expert consultants shall be promptly furnished to the applicant.

    (3)   During the course of subdivision or special permit review, the Planning Board will determine if the applicant's proposal will conform to the performance standards.

## § 130-18. Construction regulations.

A.  New construction is permitted only on a lot which fronts on a publicly maintained road or on a road shown on a map filed at the Rockland County Clerk's office.

B.  All buildings must conform to and be erected in compliance with the New York State Uniform Fire Prevention and Building Code.

C.  Any alteration or improvement of a site, including the grading of the land and the location of facilities, shall not adversely affect adjacent properties.

D.  No person, firm or corporation shall strip, excavate or otherwise remove topsoil for sale or for any use other than on the premises from which the same shall be taken, except in connection with the construction or alteration of a building on such premises or the grading incidental thereto, except by approval of the Zoning Board of Appeals. At least six (6) inches of topsoil must exist or be placed on land cleared for construction.

E.  Sheetrock scraps and other waste material not subject to decay shall be removed from the lot before a certificate of occupancy is issued.

F.  Rocks unearthed during construction shall be removed from the lot unless a specific request from the home buyer, in writing, is presented to the Code Enforcement Officer.

G.  No live tree with a circumference of fifteen (15) inches or more [measured four (4) feet above the ground] shall be removed from any land except where necessary for construction thereon and with the approval of the Code Enforcement Officer. Trees to be preserved, as

hereinabove set forth, shall be fenced outside their drip lines and shall have no grade change or earth work performed inside said drip lines without written approval of the Code Enforcement Officer. Removal of each tree shall be construed as a separate offense. Where a tree has been removed illegally, the court shall, in addition to a fine as provided herein, require that at least three (3) trees, of a type and girth deemed appropriate by said court, be replaced for every such tree illegally removed.

### ARTICLE VII
### Parking Requirements

### § 130-19. Sufficient spaces required.

All structures and uses shall be provided with a sufficient number of off-street parking and loading spaces to meet the needs of employees, residents, visitors, clients, patrons and other persons at such structures or uses, but not less than the minimum requirements of this chapter. No certificate of occupancy shall be issued for any structure or use, whether for a new structure or for a change of use of an existing structure, until such off-street parking and loading spaces have been established in accordance with the requirements of this chapter.

### § 130-20. Location.

A.  Required off-street parking spaces shall be provided on the same lot with the structure or use they serve and may be located within a building or in a side or rear yard.

B.  Not more than one (1) vehicle with commercial registration under five thousand (5,000) pounds gross vehicle weight may be parked on a lot. No vehicle with commercial registration over five thousand (5,000) pounds gross vehicle weight may be parked overnight or kept on a lot.

## § 130-21. Driveways.

For reasons of traffic and pedestrian safety, both on- and off-street, as well as to provide for possible future road widening or other improvements, all new driveways and sidewalk crossings entering onto any street shall comply with all requirements of these regulations and shall be subject to permit approval by the Planning Board, Rockland County Highway Department or New York State Department of Transportation for access onto village, county or state roads, respectively. No more than two (2) driveway accesses shall be allowed for any residence.

    A.  Driveway width. Unobstructed access to and from a street shall be provided for all parking spaces. Such access shall consist of one (1) or two (2) twelve-foot-wide lanes.

    B.  Driveway gradients. The maximum gradient for new access driveways to single-family dwellings shall be twelve percent (12%).

### ARTICLE VIII
### Administration and Enforcement

## § 130-22. Enforcing official; building permits and certificates of occupancy.

    A.  General. No board, agency, officer or employee of the village shall issue, grant or approve any permit, license, certificate or other authorization for any construction or alteration of any building or structure or for any use of land, building or structure that would not be in full compliance with the provisions of this chapter, except as permitted under Article IX of this chapter. Any permit, license, certificate or other authorization issued, granted or approved in violation of the provisions of this chapter shall be null and void and of no effect without the necessity of any proceedings for revocation or nullification thereof.

    B.  Code Enforcement Officer.

        (1)  This chapter shall be enforced by the Code Enforcement Officer and one (1) or more Assistant Code Enforcement Officers as deemed necessary, referred to herein individually and collectively as the "Code Enforcement Officer," as appointed by the Board

of Trustees, or it may be enforced by the direct action of the Board of Trustees.

(2) The duly appointed Building Inspector for the Village of Pomona is hereby designated as the Code Enforcement Officer.

(3) It shall be the duty of the Code Enforcement Officer and he is hereby empowered to:

    (a) Inspect any building, structure or land to determine whether any violations of this chapter have been committed or exist, whether or not such building, structure or land is occupied and whether or not a certificate of occupancy has been issued.

    (b) Keep the Board of Trustees advised of all matters pertaining to the enforcement of this chapter and make and keep all records necessary and appropriate to the office, including records of written complaints of violation of this chapter and action taken on same.

(4) The Code Enforcement Officer shall issue and post notices of violations, stop orders and revocations of certificates of occupancy and shall order the remedying of any condition or omission that is found to be in violation of this chapter. The Code Enforcement Officer shall also have the power, right and authority to issue an appearance ticket, as the same is defined in Article 150 of the Criminal Procedure Law of the State of New York, for the violation of any provision of this chapter. In addition, by resolution, the Board of Trustees may direct the Code Enforcement Officer to revoke such certificates of occupancy, issue such stop orders, make such inspection and reports, initiate and take such court proceedings and perform all other actions as required by the Board of Trustees as may be necessary to enforce this chapter or to invoke penalties for its violation.

C. Building permits and certificates of occupancy granted only in conformance with regulations.

(1) No building permit or certificate of occupancy shall be issued unless the proposed construction or use is in conformance with all the provisions of this chapter and other applicable laws.

(2)   Whenever the Code Enforcement Officer determines upon reasonable grounds that work on any building, structure or lot is being or has been conducted in violation of any of the provisions of the Building Code, state or federal laws, building laws, ordinances, local laws, regulations, rules or specifications of the Village of Pomona or other applicable laws or regulations, or the requirements of any approved site plans or subdivision plat, including required drainage, grade or elevation plans, or not in conformity with the provisions of any application, plans or specifications upon which a building permit was issued, or that such work is being conducted in a dangerous or unsafe manner, then the Code Enforcement Officer may notify the owner of the property or the owner's agent or the person performing the work to suspend such remaining work on any building or structure which is or could be affected by the violation, located within the plot or subdivision where the violation exists. If work remains to be performed on such buildings or structures, such persons shall forthwith stop such work and suspend all building activities on the affected buildings or structures until the stop order has been rescinded. Such stop order and notice shall be in writing, shall state the conditions under which the work may be resumed and may be served upon a person to whom it is directed either by delivering it personally to him or by posting the same upon a conspicuous portion of the building or structure under construction and sending a copy of the same by registered mail. Any person aggrieved by such a stop order may appeal to the Board of Appeals within thirty (30) days to review the same, and the Board of Appeals on such review may affirm, modify or reverse the action of the Code Enforcement Officer, as the facts may warrant.

(3)   Where the determination of violation concerns a building or structure for which a certificate of occupancy has already been issued, the Code Enforcement Officer may revoke the certificate of occupancy in accordance with Subsection E(5) of this section. Upon revocation of the certificate of occupancy, the occupants then have a maximum period of sixty (60) days in which to vacate the premises.

D. Building permits.

    (1)  A building permit is required for:

        (a)  The construction, reconstruction, moving, demolition or structural alteration or change in the use of a building or a structure affixed to the ground.

        (b)  Any change in the bulk of a building, structure affixed to the ground or nonbuilding use, but not including ordinary repairs which are not structural in nature.

    (2)  Application.

        (a)  Application for a building permit shall be made to the Code Enforcement Officer on forms provided by him and shall contain the following information:

            [1]  A description, agreeing with the Tax Map of the Village of Pomona, of the land on which the proposed work is to be done.

            [2]  A statement of the use or occupancy of all parts of the land and of the building or structure.

            [3]  The valuation of the proposed work.

            [4]  The full name and address of the owner and of the applicant, including the full name and address of each officer and director of any corporation or each member of a partnership.

            [5]  A brief description of the nature of the proposed work.

        (b)  All applications shall be accompanied by two (2) copies of the applicable site plan, subdivision maps, drainage, grading and elevation plans and all other documents, if required for the development of the plot, building or structure.

        (c)  Each application for a building permit shall be accompanied by plans and specifications, including plot plans as required, drawn to scale, showing the location and size of all proposed new construction and all existing structures on the site; the nature and character of the work to be

performed and the materials to be incorporated; distance from plot lines; widths and grades of adjoining streets, walks and alleys; details of structural, mechanical and electrical work, including computations, stress diagrams and other essential technical data. Such plans and specifications shall include, on the plot plan or site plan, the proposed location of all underground facilities, including gas service, electric service, sewer lines, drainage lines (including routing of drainage from roof leaders and footing drains) to a positive outlet, waterlines, sprinkler lines, telephone lines, etc. The building plans shall include plans for mechanical services, including gas, electric, water, heating and air conditioning. Plans and specifications shall bear the signature of the person responsible for the design and drawings and the architect's or engineer's signature, seal and New York State license number.

(d) Each application shall be accompanied by a site development plan, which shall be approved by the Village Engineer.

(e) Applications shall be made by the owner or lessee, or agent of either, or by the architect, engineer or builder employed in connection with the proposed work. Where such application is made by a person other than the owner, it shall be accompanied by an affidavit of the owner or applicant that the proposed work is authorized by the owner and that the applicant is authorized to make such application.

(f) Any amendment to the application or to the plans and specifications accompanying same must be filed with and approved by the Code Enforcement Officer prior to the commencement of the amended work, and such amendments shall comply with the provisions of this chapter. The granting or refusal of such an amendment by the Code Enforcement Officer shall be in writing and may be reviewed by appeal to the Board of Appeals within thirty (30) days after such determination is filed in the office of the Code Enforcement Officer.

   (3)  Approval or disapproval.

      (a)  Issuance of building permit. The Code Enforcement Officer shall examine or cause to be examined all applications for permits and the plans, specifications and documents filed therewith. Within twenty (20) days of receipt of same, he shall approve or disapprove the permit.

      (b)  Upon approval of the application and upon receipt of the fees therefor, he shall promptly issue a building permit to the applicant upon the form prescribed by him and shall affix his signature or cause his signature to be affixed thereto. Upon approval of the application, both sets of plans and specifications shall be endorsed with the word "approved."

      (c)  One (1) set of such approved plans and specifications shall be retained in the files of the Code Enforcement Officer and the other set shall be returned to the applicant, together with the building permit, and shall be kept at the building site and open to inspection by the Code Enforcement Officer or his authorized representative at all reasonable times.

      (d)  If the application, together with plans, specifications and other documents filed therewith, describes proposed work which does not conform to all of the requirements of the applicable building regulations, the Code Enforcement Officer shall disapprove the same and shall return the plans and specifications to the applicant.

   (4)  Expiration and extension. Every building permit shall expire by limitation at the end of one (1) year from the date issued. If a construction is not completed within said one-year period, the Code Enforcement Officer may, for due cause shown, extend the permit for a period not to exceed one (1) year.

   (5)  Liability insurance. In the event any application for a building permit provides for construction or other activity involving operation of equipment, personnel or placement of materials which may hazard a public street, way, easement or public property, prior to the issuance of such building permit the

applicant shall present evidence of liability insurance saving the village harmless in the amount of one hundred thousand dollars ($100,000.) per person and three hundred thousand dollars ($300,000.) per occurrence, in a form acceptable to the Village Attorney. Additionally, property damage insurance or other surety acceptable to the Village Attorney may be required where such construction or activity may damage public property, including sidewalks, paving, signs or landscaping. In reviewing any application hereunder, the Code Enforcement Officer shall determine whether such hazard may exist by virtue of the nature of activity described in such application. Where, after a building permit has been issued without such liability insurance, it shall appear that such hazards are present, the Code Enforcement Officer may, on due notice given, require such insurance, and, pursuant to Subsection B(4) of this section, may suspend such activity pending receipt of the required liability policy.

(6) Fees. Every application for a building permit pursuant to this chapter and/or the Building Code shall be accompanied by a fee in accordance with the fee schedule of the Village of Pomona.[4]

E. Certificates of occupancy.

(1) When required.

(a) No building or structure or portion thereof for which a building permit has been issued shall be used or occupied in whole or in part until a certificate of occupancy shall have been issued by the Code Enforcement Officer. Continued use or occupancy of the building or structure shall be in conformance with the issued certificate of occupancy.

(b) No change shall be made in the use or type of occupancy of an existing building or structure, nor change in the use of land, except to any use which is primarily agricultural, unless a certificate of occupancy authorizing such change in use shall have been issued by the Code Enforcement Officer. A "change in use" shall include a change in the type or general class of goods or services sold or manufactured

---

[4] Editor's Note: See Ch. 67, Fees, and Ch. 47, Building Construction.

§ 130-22                    POMONA CODE                    § 130-22

and any substantial change in manufacturing operation involving new equipment and machinery.

(2) Application and affidavit. The owner or his agent shall make application for a certificate of occupancy. Accompanying this application and before the issuance of a certificate of occupancy, there shall be filed with the Code Enforcement Officer:

(a) A complete set of as-built drawings showing the as-built locations of all the underground facilities and interior mechanical services. These plans shall be signed and certified by a New York State-licensed architect or engineer.

(b) An affidavit of the owner or the registered architect or licensed professional engineer who supervised the construction of the work, or of the superintendent of construction who supervised the work, and who, by reason of his experience, is qualified to superintend the work for which the certificate of occupancy is sought. This affidavit shall state that the deponent has examined the approved plans of the structure for which a certificate of occupancy is sought and that the structure has been erected in accordance with the approved plans and, as erected, complies with this chapter and the law governing building construction, including all subdivision regulations and the requirements of any approved subdivision plat or site plan, except insofar as variations therefrom have been legally authorized. Such variations shall be specified in the affidavit.

(3) Issuance of certificate. Before issuing a certificate of occupancy, the Code Enforcement Officer shall examine or cause to be examined all buildings, structures and sites for which an application has been filed for a building permit to construct, enlarge, alter, repair, remove, demolish or change the use or occupancy; and he may conduct such inspections as he deems appropriate from time to time during and upon completion of the work for which a building permit has been issued. There shall be maintained by the Code Enforcement Officer a record of all such examinations and inspections, together with a record of findings of violations of the law. However, any certificate of

occupancy for the establishment of any use of a building or land requiring a special permit as provided herein and any other particular use requiring the approval of the Planning Board shall be issued only with the authorization of the Planning Board. Every certificate of occupancy for a use for which a special permit or variance has been granted shall contain a detailed statement of such special permit or variance and of the conditions to which the same is subject.

(4) Fees. Every application for a certificate of occupancy shall be accompanied by a fee as set forth in the fee schedule of the Village of Pomona.[5]

(5) Revocation. A certificate of occupancy shall be deemed to authorize, and is required for, both initial and continued occupancy and use of the building or land to which it applies, and shall continue in effect so long as such building or land is used for the use authorized in the certificate of occupancy. If terms of such certificate of occupancy are violated by the holder thereof, the Code Enforcement Officer may, by service of notice of violation, revoke such certificate of occupancy, which order of revocation is, however, subject to review by the Board of Appeals, by the holder thereof taking an appeal to the Board of Appeals within thirty (30) days of service of said order of termination.

(6) Copies. Copies of every certificate of occupancy issued hereafter shall be furnished, on request, to the Planning Board or Board of Appeals, and on the payment of the regular application fee therefor, to any other person. The Board of Trustees may fix the fees required from the general public for copies of public documents required under this chapter.[6]

## § 130-23. Stop-work orders.

Whenever the Code Enforcement Officer has reasonable grounds to believe that work on any building or structure is being prosecuted in violation of the provisions of the applicable building laws, ordinances or regulations or not in

---

[5] Editor's Note: See Ch. 67, Fees.
[6] Editor's Note: See also Ch. 67, Fees.

conformity with the provisions of an application, plans or specifications on the basis of which a building permit was issued or in an unsafe and dangerous manner, he shall notify the owner of the property or the owner's agent or the person performing the work to suspend all work. Any such persons shall forthwith stop such work and suspend all building activities until the stop order has been rescinded. Such order and notice shall be in writing, shall state the conditions under which the work may be resumed, and may be served upon a person to whom it is directed either by delivering it personally to him or by posting the same on a conspicuous portion of the building under construction and sending a copy of the same by registered mail.

## § 130-24. Right of entry.

The Code Enforcement Officer of the Village of Pomona, upon the showing of proper credentials and in the discharge of his duties, may enter upon any building, structure or premises at any reasonable hour, and no person shall interfere with or prevent such entry. Where permission to enter is not granted, the Code Enforcement Officer is authorized to apply to the Supreme Court for an order to enter.

## § 130-25. Penalties for offenses.

A. Penalties.

    (1) Any person, as defined in this chapter, other than a corporation, who shall violate any provision of this chapter or any other regulation made under authority conferred thereby, or who shall build or alter any structure or use any land in violation of any statement or plan submitted and approved thereunder, or who shall knowingly assist therein, shall be liable to a fine of not more than two thousand dollars ($2,000.) or imprisonment for a term not exceeding fifteen (15) days, or both such fine and imprisonment. Each day's continued violation shall constitute a separate and additional violation.

    (2) Any corporation which shall violate any provision of this chapter or any other regulation made under authority conferred thereby,

or which shall build or alter any structure or use any land in violation of any statement or plan submitted and approved thereunder, or which shall knowingly assist therein, shall be liable to a special corporate fine of not more than ten thousand dollars ($10,000.). Each day's continued violation shall constitute a separate and additional violation.

(3) In addition to the foregoing provisions, the village shall have such other remedies for any violation or threatened violation of this chapter as are now or may hereafter be provided by law.

B. Prevention. In case any land is used or structure is erected, constructed, altered or maintained in violation of this chapter, any regulation made pursuant thereto or any detailed statement or plan submitted and approved thereunder, in addition to other lawful remedies, any appropriate action or proceedings may be instituted to prevent such unlawful uses, erection, construction, alteration or maintenance, to restrain, correct or abate such violation, to prevent the occupancy of such structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Whenever the Code Enforcement Officer has reasonable grounds to believe that work on any structure is being prosecuted in violation of the provisions of this chapter or not in conformity with any regulation made pursuant thereto or not in compliance with any detailed statement or plan submitted and approved thereunder or in an unsafe and dangerous manner, he may issue a stop-work order pursuant to the provisions of § 130-23 above.

ARTICLE IX
Zoning Board of Appeals

## § 130-26. Appointment.

The Board of Trustees shall appoint a Board of Appeals pursuant to § 7-712 of the Village Law of the State of New York.[7]

---

[7] Editor's Note: See also Ch. 25, Planning Board and Zoning Board of Appeals.

## § 130-27. Meetings and records.

Meetings shall be held at the call of the Chairman and at such other times as the Board may determine. The Board shall adopt rules and regulations governing its procedures. The presence of three (3) members of the Board shall be necessary for a quorum. The concurring vote of three (3) members shall be necessary to effect any variation or variance in this chapter, to reverse any order, requirement, decision or determination appealed from or to decide in favor of the applicant any matter before the Board. The Board shall keep minutes of its proceedings, showing the vote of each member on every question, or if any member is absent or fails to vote, indicating that fact, and shall also keep records of its examinations and other official actions. Every rule, determination, regulation, amendment or appeal thereof and every order, requirement and decision of the Board shall promptly be filed in the office of the Board.

## § 130-28. Powers and duties.

A.  General. The Board of Appeals shall have all of the powers and duties prescribed by the Village Law and by this chapter, which powers and duties are summarized and more particularly specified in the following, provided that none of the following sections shall be deemed to limit any of the powers of the Board of Appeals that are conferred by the Village Law. In passing upon any matter before it, the Board shall take into specific consideration the goals of this chapter.

B.  Rules and regulations. The Board of Appeals may adopt such rules and regulations as are necessary or proper to the performance of its powers and duties hereunder and may amend or repeal the same.

C.  Nonconforming uses. The Board of Appeals is authorized to extend the permitted period for cessation of a nonconforming use in accordance with the requirements of § 130-15B(5) of this chapter; to review and approve, approve with modifications or disapprove a plan for reconstruction of a nonconforming building in accordance with the requirements of § 130-15D(2) of this chapter; to permit the change of a nonconforming use to another nonconforming use in accordance with § 130-15E of this chapter; and to review and approve, approve with modifications or disapprove a plan for the

improvement of a nonconforming use in accordance with § 130-15F of this chapter.

D.  Variances. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on referral of an applicant to the Board by an approving agency acting pursuant to this chapter, the Board of Appeals is authorized to vary or modify the strict letter of this chapter where its literal interpretation would cause practical difficulties or unnecessary hardships, as defined in this subsection, in such manner as to observe the spirit of the chapter, secure public safety and welfare and do substantial justice.

(1)  Use variances. Where, because of unnecessary hardship relating to the land, an applicant desires to utilize land for a use not allowed in the district in which the land is located, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make each of the following findings:

(a)  After considering all permitted uses, that the property in question cannot yield a reasonable return if used only for a purpose allowed in that district.

(b)  That the plight of the owner is due to unique circumstances affecting the property which is the subject of the application and not to general conditions in the neighborhood.

(c)  That the use to be authorized by the variance will not alter the essential character of the locality.

(d)  That the use to be authorized by the variance is in reasonable harmony with the intent of this chapter.

(e)  That the unnecessary hardship claimed as a ground for the variance has not been created by the owner or by a predecessor in title. Mere purchase of the land subject to the restrictions sought to be varied shall not itself constitute a self-created hardship.

(f)  That within the intent and purposes of this chapter the variance, if granted, is the minimum variance necessary to

afford relief. To this end, the Board may permit a lesser variance than that applied for.

(2)  Area variances. Where, because of practical difficulty, an applicant requests a variance of the lot area or other dimensional requirements of this chapter, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make a specific finding that the application of the requirements of this chapter to the land in question creates such practical difficulty. In making this determination, the Board shall make each and every one of the following findings:

(a)  That the variation is not substantial in relation to the requirement.

(b)  That the effect of any increased population density which may thus be produced upon available services and facilities is not significant.

(c)  That a substantial change in the character of the neighborhood or a substantial detriment to adjoining properties will not be created.

(d)  That the difficulty cannot be alleviated by some method feasible for the applicant to pursue other than a variance.

(e)  That, in view of the manner in which the difficulty arose and considering all of the above factors, the interests of justice will be served by allowing the variance.

(f)  That the variation would not cause adverse aesthetic, environmental or ecological impacts on the property or on surrounding areas.

E.  Special use permits. [Added 2-28-1994 by L.L. No. 1-1994[2]]

(1)  General provisions. Special permit uses are listed in §§ 130-9C and 130-10D of the Pomona Village Code. Special permit uses for which conformance with additional standards is required by this chapter are deemed to be permitted uses in their respective

---

2   Editor's Note: This local law also provided for the relettering of former Subsections E and F as Subsections F and G, respectively.

districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of this chapter. All such uses are declared to possess such unique and special characteristics of such unique and special forms that each specific permit shall be considered as an individual case.

(2) Approving agency. The Zoning Board of Appeals shall be the approving agency for all special use permits, except those designated by §§ 130-9C and 130-10D to be approved by the Board of Trustees.

(3) Informal application. Applicants are encouraged to submit a preliminary, informal application and to discuss it with the appropriate permitting Board prior to formal submission of a complete and detailed special permit application. The informal application should include a schematic plan showing the general layout of the property and the proposed use. The schematic plan should be submitted to the appropriate Board not less than three (3) weeks prior to the date of the Board meeting at which it is to be considered. At that meeting, the Board shall review the schematic plan and may schedule a field inspection of the site. The Board shall notify the applicant of any changes recommended prior to the preparation of a complete site plan.

(4) Formal application.

(a) Submission. Formal application for a special permit shall be made in twelve (12) copies to the Zoning Board or Board of Trustees, as the case may be. The formal application shall include the following items:

[1] A completed special permit application form, including the name and address of the person, firm or corporation for whom the use is intended and the name and address of the property owner. If the applicant or owner is a firm or corporation, the full name and residence of the firm or principal officers of the corporation shall be shown;

[2] A written statement describing the nature of the proposed use and how it will serve to implement the purposes of this chapter and the period of time for which the permit is requested;

[3]   Four (4) copies of a site plan with the information required by § 118-32 of this chapter; and

[4]   Long environmental assessment form.

(b)  Referrals.

[1]   The permitting Board shall submit copies of the special permit application to the Code Enforcement Officer and Village Engineer and to other village agencies or officials as it deems appropriate, all of whom shall inspect the premises and report their findings to the Board, in writing, within thirty (30) days of the date of forwarding. The Board may submit copies to the following agencies for information, review and comment regarding facilities under their jurisdiction and to any other county, state or federal agency with jurisdiction: the Rockland County Drainage Agency and the New York State Department of Transportation.

[2]   The permitting Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within five hundred (500) feet of the boundary of any city, village or town, or from the boundary of any existing or proposed county or state park or other recreation area, or from the right-of-way of any existing or proposed county or state parkway, thruway, expressway, road or highway or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit affecting such use or property within a distance of five hundred (500) feet. If the Rockland County Planning Board fails to report within such period of thirty (30) days or such longer period as has been agreed upon by it and the permitting Board, the permitting Board may act without such

report. If the Rockland County Planning Board disapproves the proposal, or recommends modification thereof, the permitting Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one (1) of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven (7) days after final action by the Zoning Board or Board of Trustees, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

(c) Board action.

[1] The Zoning Board or Board of Trustees, as the case may be, shall hold a public hearing within sixty-two (62) days after the receipt of a completed special permit application by the clerk of the appropriate permitting Board. Such hearing shall be advertised at least once in the official village newspaper at least five (5) days before such hearing; be noticed, by certified mail, return receipt requested, to each owner of the property within five hundred (500) feet of the perimeter of the subject property as indicated on the application for special permit approval and at least ten (10) days prior to the public hearing; and be advertised by the installation of four (4) posters, furnished by the clerk to the appropriate permitting Board, on the four (4) closest public roads in visible locations surrounding the proposed special permit at least ten (10) days prior to the public hearing. The Zoning Board or Board of Trustees shall, thereafter, approve, with or without modification, or disapprove such special permit application within sixty-two (62) days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Board. Within five (5) days of the decision of the Board, such decision shall be filed in the office of the Village Clerk, with a copy of the decision mailed to the applicant by regular mail. Notwithstanding the foregoing provisions, the time in which the Board must take action on the special permit application may be extended by

mutual consent of the applicant and the permitting Board.

[2] In approving applications for special use permits, the Zoning Board of Appeals or Board of Trustees may impose such reasonable conditions and restrictions as are directly related to and incidental to the proposed special use permit. Upon granting of said special use permit, any such conditions must be met in connection with the issuance of any building permits by the Code Enforcement Officer.

[3] The Zoning Board of Appeals or Board of Trustees may, however, when reasonable and proper, waive any preestablished requirements of approval of a special use permit where such requirements are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to the particular special permit use.

[4] Where a proposed special use permit contains one (1) or more features which do not comply with the Zoning Code, application may be made directly to the Zoning Board of Appeals for a variance without the necessity of a decision or determination of the Code Enforcement Officer. Said application may be taken up simultaneously with the special permit application.

(5) Site plan application. Site plan approval under § 118-32 of this chapter is required for all special permit uses. Insofar as practicable, special use permit and site plan approval procedures shall run concurrently.

(6) General standards. All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements.

(a) The location and size of the special permit use, nature and intensity of the operations involved in it or conducted in connection with it, the size of the site in relation to it and the

location of the site with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the area in which it is located.

(b) The location, nature and height of buildings, walls and fences and the nature and extent of existing or proposed plantings on the site are such that the special permit use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

(c) Operations in connection with any special permit use will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted uses not requiring a special permit.

(d) Parking and loading areas will be of adequate size for the particular special permit use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum convenience and safety.

(e) The special permit use will not result in diminution of the value of property in the neighborhood or a change in the character of the neighborhood in which the use would be situated.

(7) Expiration, temporary permits, inspection and change.

(a) A special permit shall be deemed to authorize only the particular use or uses specified in the permit and only for the original applicant and shall expire if said use shall cease for more than one (1) year for any reason, or if substantial construction, in accordance with the special permit, has not been completed within one (1) year from the date of issue or if all such required improvements are not maintained and all conditions and standards complied with throughout the duration of the special permit use.

(b) For a use intended to be temporary, the Zoning Board may issue a special permit for a specified period of time.

(c) In connection with issuance of a special permit, the Zoning Board or Board of Trustees may establish a schedule of

inspections by the Code Enforcement Officer of a special permit use to determine continued compliance with this chapter.

(d) Any change in use or reduction in lot size requires amendment to the special permit, following the application and review requirements of this section.

(8) Existing violations. No permit shall be issued for a special use permit for a property where the Code Enforcement Officer has found a violation of this chapter and where such violation has not been corrected.

(9) Fees. Application for a special use permit shall be accompanied by fee as listed in the fee schedule adopted by the Board of Trustees.[3]

F. Other appeals. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on request from any official, agency or board of the village, the Board of Appeals is authorized to decide any question involving the interpretation of any provision of this chapter. Interpretations shall be made in accordance with the intent of the particular provision being interpreted.

G. Conditions and safeguards. The Board of Appeals may prescribe such conditions or restrictions applying to the grant of a variance as it may deem necessary in each specific case, in order to minimize the adverse effects of such variance upon the character and property values of the neighborhood and to protect the public health, safety and welfare. Such conditions or restrictions shall be incorporated in the building permit and certificate of occupancy. Failure to comply with such conditions or restrictions shall constitute a violation of this chapter and may constitute the basis for denial or revocation of a building permit or certificate of occupancy and for all other applicable remedies.

---

[3]  Editor's Note: See Ch. 67, Fees.

## § 130-29. Procedures.

A. Appeal or application. An appeal shall be taken within sixty (60) days of the order, requirement, decision, interpretation or determination appealed from, by filing with the official or agency from whom the appeal is taken and with the Board of Appeals a notice of appeal, specifying the grounds thereof and the relief sought. The official or agency from whom the appeal is taken shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed from was taken. A referral to the Board for a variance or a request for an interpretation may be made at any time. All such appeals and applications to the Board shall be made by the owner or agent duly authorized, in writing, and shall be on forms prescribed by the Board. Each appeal or application shall fully set forth the circumstances of the case, shall refer to the specific provision of the chapter involved and shall exactly set forth, as the case may be, the interpretation that is claimed or the details of the adjustment that is applied for and the grounds on which it is claimed that the same should be granted. [Amended 2-28-1994 by L.L. No. 1-1994].

B. Review by other agencies.

(1) Upon receipt of a completed appeal or application, the Board of Appeals shall forward copies for review and report to the Code Enforcement Officer, Village Engineer and Planning Board and to other such officials and agencies of the village as it deems appropriate. All such agencies shall have thirty (30) days from the date of forwarding to submit a report. If approval of a site plan or issuance of a special permit is involved, the Board of Appeals shall forward sufficient copies for review and report to the applicable approving agency and shall not act on the matter until it has received the report of the approving agency or thirty (30) days have passed since such forwarding.

(2) The Board of Appeals shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-1 and 239-m, of the General Municipal Law which include real property lying within five hundred (500) feet from the boundary of any city, village or town or from the boundary of any existing or proposed county or state parkway, throughway, expressway, road, highway or from the existing or proposed right-of-way of any stream or drainage channel owned

by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit or variance affecting such use or property within a distance of five hundred (500) feet. The Rockland County Planning Board shall render its decision within thirty (30) days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such period of thirty (30) days or such longer period as has been agreed upon by it and the Board of Appeals, the Board of Appeals may act without such report. If the Rockland County Planning Board disapproves the proposal or recommends modifications thereof, the Board of Appeals shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one (1) of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven (7) days after final action by the Board of Appeals, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

C.  Public hearing. The Board of Appeals shall conduct a public hearing on any appeal, application or request made pursuant to this chapter. Such public hearing shall be held within forty-five (45) days of the

(Cont'd on page 13057)

date an appeal is taken or an application or request is made to the Board.

D.  Notice of hearing. Notice of the hearing shall be published in the official newspaper at least ten (10) days prior to the date of such hearing. Notice shall also be sent by the applicant ten (10) days prior to the date of such hearing to all property owners within five hundred (500) feet of the perimeter of the property, in the same manner as is required for amendments pursuant to § 130-41 of this chapter. The applicant shall cause signs to be posted on such property on each street frontage indicating the date and purpose of such hearing. The costs of all such notice shall be paid by the applicant.

E.  Action. Every decision of the Board of Appeals shall be by resolution, shall be recorded and shall fully set forth the facts of the case, the findings and the conclusions on which the decision was based. The Board shall immediately file its resolution in the office of the Board and shall, within ten (10) days thereafter, mail a copy of such resolution to the applicant.

## § 130-30. Expiration of variance.

A variance granted under this chapter shall automatically expire if substantial construction, in accordance with the plans for which such variance was granted, has not been completed within one (1) year, or such other time limit as may be chosen by the Board of Appeals in connection with its decision, from the date of granting such variance by the Board, or, if judicial proceedings to review the Board's decision shall be instituted, from the date of entry of the final order in such proceedings, including all appeals.

## § 130-31. Fees.

Every application or appeal to the Board shall be subject to a fee as set forth in the fee schedule of the Village of Pomona.[8]

---

[8]  Editor's Note: See Ch. 67, Fees.

ARTICLE X
**Density Zoning**

**§ 130-32. Purpose.**

It is the purpose of this Article to enable and encourage flexibility of design and development of land in such a manner as to preserve its natural and scenic qualities, protect areas of meaningful ecological value, reduce flood hazards, facilitate the adequate and economical provision of streets and utilities, minimize negative environmental impacts, improve the aesthetic quality of new residential developments, expand the variety of housing opportunities, encourage the conservation of energy, increase recreational opportunities and otherwise promote the planned and environmentally desirable use of land by permitting the Board of Trustees to authorize the Planning Board, simultaneously with the approval of subdivision plats, to modify otherwise applicable provisions of the Zoning Law in accordance with the standards, conditions and limitations as set forth herein and in § 7-738 of the Village Law.

**§ 130-33. Procedure.**

A.  After the submission of the preliminary plat to the Planning Board of the Village of Pomona, if either the applicant requests the use of density zoning or the Planning Board on its own motion determines that density zoning is suitable for the plat, then the preliminary plat, together with a Planning Board study setting forth the basis for the recommendation regarding utilization of the procedures in § 7-738 of the Village Law, shall be submitted to the Board of Trustees.

B.  Upon submission of the preliminary plat and recommendations, the Board of Trustees shall expeditiously cause to be published in the official newspaper of the village a notice stating that an application for the utilization of the provisions of § 7-738 of the Village Law has been submitted to the Board of Trustees, said notice generally describing the area covered in the application, and that such application will be placed on the agenda of the meeting of the Board of Trustees.

C.  In the event that the plat shows lands available for a sewer plant or school purposes, the Board of Trustees will conduct a public hearing

on the matter in lieu of placing the matter on the agenda as set forth in Subsection B hereof. Such public hearing shall be held after due notice in the official newspaper of the village, such notice to be published not less than ten (10) nor more than twenty (20) days prior to such public hearing.

D. If the Board of Trustees determines that the preliminary plat is suitable for the utilization of the procedures allowed under § 7-738 of the Village Law, the Board of Trustees shall adopt a resolution authorizing the utilization of the procedures contained in said § 7-738 of the Village Law.

## § 130-34. Development standards and controls.

Except as modified by the Planning Board pursuant to the authority hereby conferred, all regulations normally applicable to residential uses in the zoning district in which the property is located shall continue to apply. In addition, the following requirements are hereby established specifically for average-density developments:

A. Permitted uses. The permitted uses within an average-density development shall be the same as permitted in the zoning district in which the property is located.

B. Density. The number of dwelling units permitted in an average-density development shall in no case exceed the number which could be subdivided into lots conforming to all normally applicable requirements of this chapter, the Land Subdivision Regulations and other related land use and development controls. The basis for this determination by the Planning Board shall be a sketch layout of a conventional subdivision prepared and submitted by the applicant, which layout shall include topographic information and such other data as may be required by the Planning Board to assist in making its determination.

C. Common lands and facilities.

(1) In general, common open space land areas shall be preserved in their natural state, and their use shall be limited to appropriate conservation and passive recreation purposes. A portion of such common open space, not to exceed ten percent

(10%) of the gross land area of the average-density development, may be reserved and designated for active recreation purposes, provided that the size, shape, access and location of such area(s) is approved by the Planning Board. Within a designated active recreation area, there may be located swimming pools, ball fields, facilities for court games, clubhouses, playground equipment and so forth, provided that the use of all such facilities shall be limited to the residents of the average-density development and their guests, and further provided that such facilities shall be subject to site plan approval by the Planning Board.

(2)   The permanent preservation of common open space lands and facilities for their intended purpose shall further be legally assured to the satisfaction of the Board of Trustees and the Village Attorney by the filing of appropriate covenants, deed restrictions, easements or other forms of agreements. The permitted uses within such areas shall be limited to those specifically approved by the Planning Board and shown on the subdivision plat, plus uses customarily incidental and accessory thereto. Subsequent to the approval of the subdivision plat, the uses permitted within privately owned common land areas may be modified only upon approval by the Planning Board and only upon application by the entity owning such common land area. In each such case, a public hearing shall be held with the same notice as required by law for final subdivision plats. Such modification may permit a use in the same general category of uses previously approved or may allow a change in the location of a particular use from one portion of the common land area to another.

(3)   Dedication of the common land areas, including any common facilities or improvements thereon, to the common use of all property owners within an average-density development shall be recorded directly on the subdivision plat or by reference on the subdivision plat to a declaration of covenants, conditions and restrictions in a separate document recorded or to be recorded at or about the time of the filing of the approved subdivision plat. Such declaration of covenants, conditions and restrictions shall permanently grant to each property owner in

common with all other property owners within such average-density development an easement in and to the common land areas and the common facilities thereon and of the use thereof.

(4)   As another alternative, all or a portion of the conserved land areas may be dedicated to the Village of Pomona, provided that the Board of Trustees has voted to accept such offer.

## ARTICLE XI
### Amendments

### § 130-35. Power to amend.

The Board of Trustees may from time to time on its own motion, on petition or on recommendation of any board, agency or official of the village, after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter.

### § 130-36. Amendments on petition.

A petition for any amendment of this chapter shall be made to the Village Clerk and shall describe the proposed changes. For proposed amendments to the Zoning Map, a copy shall be included of the applicable portion of the official copy of the Zoning Map, as kept by the Village Clerk, showing existing and proposed zoning, as well as a map drawn to an appropriate scale showing all properties within five hundred (500) feet of the periphery of the subject property and any contiguous property of the petitioner in the same ownership. The petitioner shall be responsible for complying with the requirements as to notice in § 130-41 below.

### § 130-37. Amendments on motion.

An amendment on motion or an amendment proposed to the Board of Trustees by any board, agency or official of the village shall contain the information required in § 130-36 above. The Village Clerk shall be responsible for complying with the requirements as to notice in § 130-41 below.

## § 130-38. Initial consideration.

On the making of a motion, on receipt of a petition or on receipt of a recommendation of any board, agency or official of the village for a zoning amendment, the Board of Trustees may decide not to formally consider such amendment.

## § 130-39. Referrals for review and report.

If any amendment is to be considered by the Board of Trustees, it shall be referred for review and report to the Planning Board, the Village Attorney, the Village Engineer, Code Enforcement Officer and any other board, agency or official of the village which the Board of Trustees deems appropriate. The Planning Board shall confer with any petitioner and assist such petitioner, where necessary, to place the amendment in the most appropriate form. Such conference and assistance shall not be deemed to constitute any commitment by the Planning Board as to its position on the advisability of the proposed amendment. After said conference, the petitioner shall be allowed to revise his petition and to provide copies of such revision to the Board of Trustees and to any board, agency or official to which the original proposed amendment was referred. The Village Attorney shall report to the Board of Trustees regarding the form of the proposed amendment. The Planning Board shall report to the Board of Trustees regarding the form and the advisability of the proposed amendment. Its report shall analyze the proposed amendment and shall state the Board's reasons for its recommendation, describing any conditions it believes make the amendment advisable or not, and specifically stating whether the amendment would or would not be in accordance with the Comprehensive Plan and in furtherance of the purposes of this chapter. All such boards, agencies and officials shall have forty-five (45) days from the date of forwarding or from the date of revision by the petitioner, whichever is later, to submit reports. Failure of the Planning Board or other board, agency or officials to report within forty-five (45) days shall be construed as approval of the proposed amendment. In no case shall this section restrict the right of an applicant to come before the Planning Board for an informal discussion and review prior to formal submission.

## § 130-40. Public hearing.

On receipt of the requested reports and any revised proposed amendment from an application or notification by the petitioner that no revision will be made, the Board of Trustees shall schedule and hold a public hearing on the proposed amendment.

## § 130-41. Notice of hearing.

Notice of the public hearing shall be published once in the official newspaper not less than ten (10) nor more than thirty (30) days prior to the date of the hearing. A copy of the notice, with proof of mailing, together with proof of notice in the official newspaper, shall be filed in the Village Clerk's office on or before the date of the public hearing. The applicant shall cause notice by certified mail to owners of property within five hundred (500) feet of the perimeter of the property to which such change applies, to be mailed not less than ten (10) days prior to the required hearing. In the event that such amendment changes the district classification of land, there shall be posted not later than ten (10) days prior to the hearing a notice of the proposed change upon the property to which such change applies, said notice to be visible from each public street abutting such property.

## § 130-42. Procedure upon protest.

In accordance with the procedures of § 7-708, Subdivision 1, of the Village Law, in the event a protest against such change is signed by the owners of twenty percent (20%) or more of the area of the land included in such proposed change, or by the owners of twenty percent (20%) or more of the land immediately adjacent extending one hundred (100) feet therefrom, or by the owners of twenty percent (20%) or more of the land directly opposite thereto extending one hundred (100) feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of four (4) members of the Board of Trustees.

**§ 130-43. Records.**

The Village Clerk shall keep record copies of all Zoning Maps and text sections superseded by any amendment of this chapter.

**§ 130-44. Referral to adjacent municipalities and other agencies.**

Not less than ten (10) days prior to the public hearing, the Village Clerk shall send copies of the proposed amendment and notice of hearing on any amendment affecting property within five hundred (500) feet of the boundaries of any state park, parkway, village or town to the Regional State Park Commission having jurisdiction over such state park or parkway or to the Village or Town Clerk.

**§ 130-45. Fees.**

All petitions for amendment of this chapter, except those amendments recommended by the Board of Trustees, by the Planning Board or other municipal board or agency of the village, shall be accompanied by a fee in accordance with the fee schedule of the Village of Pomona.[9]

ARTICLE XII
Miscellaneous Provisions

**§ 130-46. Title.**

This chapter shall be known and may be cited as the "Zoning Law of the Village of Pomona."

**§ 130-47. Effect on current building permits.**

Except as provided in this section, nothing herein shall require any change in the plans, construction or designated use of a building or structure for which a building permit has been lawfully issued prior to or, under the circumstances noted below, within sixty (60) days after the effective date of this chapter, provided that the proposed use complies with the use

---

[9] Editor's Note: See Ch. 67, Fees.

requirements of this chapter and further provided that construction shall begin within six (6) months of the date of such permit, the foundation or fifteen percent (15%) of the construction valuation shall be completed within one (1) year of the date of such permit and the entire building or structure shall be completed within two (2) years of the date of such permit.

# POMONA SUPPLEMENTAL INDEX

— A —

ACCEPTABLE SECURITY
  Defined, 118-13
ALARM DEVICE
  Defined, 36-2
  Subdivision of land, 118-24
ALARM INSTALLER
  Defined, 36-2
ALARM SYSTEMS
  False alarms, 36-1 – 36-5
ALARM USER
  Defined, 36-2
ALCOHOLIC BEVERAGES
  Exceptions, 38-3
  Fees, 38-3
  Findings, 38-1
  Penalties for offenses, 38-5
  Permits, 38-3
  Possession or consumption in
    public, 38-2
  Presumptive evidence, 38-4
  Streets and sidewalks, 38-2
ANIMALS
  Animal control, 40-1 – 40-10
  Pit bulls and other dangerous
    animals, 40-11 – 40-13
ANTENNAS
  Fees, 67-1
APPEALS
  Architectural Review Board, 3-7
APPEARANCE TICKETS
  Littering, 91-11
APPOINTMENTS
  Commission on Solid Waste, 85-3
ARCHITECTURAL REVIEW
    BOARD
  Appeals, 3-7
  Creation, 3-2
  Failure to act, 3-6
  Meetings, 3-3
  Membership, 3-2
  Minutes, 3-3
  Powers and duties, 3-4, 3-5
  Procedures, 3-3
  Purpose and legislative intent, 3-1
  Quorum, 3-3
  Review of permit applications, 3-4
  Standards and criteria, 3-5
  Terms of office, 3-2

— B —

BONDS
  Subdivision of land, 118-12,
    118-13, 118-22
BUFFERS
  Subdivision of land, 118-32
BUILDING
  Defined, 49-1
BUILDING PERMITS
  Subdivision of land, 118-13
BUILDINGS, NUMBERING OF
  Definitions, 49-1
  Determination of buildings to be
    numbered, 49-2
  Display of other numbers
    prohibited, 49-5
  Duty of owners, 49-3
  Fees, 49-6
  Noncompliance, 49-6
  Notices, 49-6
  Notification to phone company,
    49-8
  Penalties for offenses, 49-7
  Size and display of numbers, 49-4

— C —

CERTIFICATE OF OCCUPANCY
  Subdivision of land, 118-13
COMMISSION ON SOLID WASTE
  Appointments, 85-3
  Garbage, rubbish and refuse, 85-3
  Membership, 85-3
  Powers and duties, 85-3
  Salaries and compensation, 85-3
  Terms of office, 85-3

— D —

DANGEROUS ANIMALS, see PIT
    BULLS AND OTHER
    DANGEROUS ANIMALS
DEFINITIONS
  Acceptable security, 118-13
  Alarm device, 36-2
  Alarm installer, 36-2
  Alarm user, 36-2
  Building, 49-1
  Exterior disengagement device,
    36-2
  False alarms, 36-2
  Garbage, 91-3
  Good cause, 20-3

Litter, 91-3
Other dangerous animal, 40-12
Parks, 91-3
Person, 91-3
Pit bull dog, 40-12
Public park, 101-2
Public place, 91-3
Refuse, 91-3
Rubbish, 91-3
Special permit uses, 130-4
Village, 91-3
DESIGN STANDARDS
  Subdivision of land, 118-21 –
    118-27
DRAINAGE
  Subdivision of land, 118-24,
    118-26, 118-32
DRIVEWAYS
  Subdivision of land, 118-25
DUMPING
  Dumping of trash and debris on
    public property prohibited, 85-5
  Garbage, rubbish and refuse,
    85-5, 85-6
  Penalties for offenses, 85-6

— E —

EASEMENTS
  Subdivision of land, 118-15,
    118-26
EMERGENCIES, PROCEDURES
    FOR
  Cooperation with county
    agencies, 8-3
  Hazards, 8-2
  Intent, 8-2
  Officials list, 8-5
  Officials responsible, 8-3
  Purpose, 8-1
  Scope of operations, 8-4
ENVIRONMENTAL QUALITY
    REVIEW
  Subdivision of land, 118-32
EXPLOSIVES
  Applicability, 65-10
EXTERIOR DISENGAGEMENT
    DEVICE
  Defined, 36-2

— F —

FALSE ALARMS
  Alarm systems, 36-1 – 36-5

POMONA  SUPPLEMENTAL  INDEX

Definitions, 36-2
Enforcement, 36-5
Legislative intent, 36-1
Penalties for offenses, 36-4
Unlawful acts, 36-3
FEES
Alcoholic beverages, 38-3
Antennas, 67-1
Buildings, numbering of, 49-6
Garbage, rubbish and refuse, 85-2
Inspections, 67-2
Planning Board, 67-2
Professional consultants, 67-2
Site plans, 67-2
Subdivision of land, 67-2, 118-11,
    118-13, 118-14, 118-32
Zoning Board of Appeals, 67-2
FENCES
Subdivision of land, 118-24
FINAL PLAT
Subdivision of land, 118-12,
    118-30
FIRE HYDRANTS
Subdivision of land, 118-24

— G —

GARBAGE
Defined, 91-3
GARBAGE, RUBBISH AND
    REFUSE
Collection contracts authorized,
    85-1
Commission on Solid Waste, 85-3
Dumping, 85-5, 85-6
Fees, 85-2
Solid waste collection, 85-1 –
    85-3
GOOD CAUSE
Defined, 20-3
GRADING
Subdivision of land, 118-23

— H —

HEARINGS
Subdivision of land, 118-11,
    118-12, 118-32

— I —

IMPROVEMENTS
Subdivision of land, 118-13 –
    118-20
INSPECTIONS
Fees, 67-2
Subdivision of land, 118-14
INSURANCE
Pit bulls and other dangerous
    animals, 40-13

— L —

LANDSCAPING
Subdivision of land, 118-32
LIENS
Littering, 91-10
LIGHTING
Subdivision of land, 118-32
LITTER
Defined, 91-3
LITTERING
Appearance tickets, 91-11
Correction by village, 91-10
Definitions, 91-3
Legislative intent, 91-2
Liens, 91-10
Litter in parks, 91-8
Manner of placement in
    receptacles, 91-5
Notices, 91-9, 91-10
Owners to clean sidewalks, 91-7
Penalties for offenses, 91-12
Prohibited, 91-4
Recovery of costs, 91-10
Responsibilities of owners and
    automotive establishments,
    91-6
Sweeping litter into public areas,
    91-7
Title, 91-1
LOTS
Subdivision of land, 118-25

— M —

MEETINGS
Architectural Review Board, 3-3
MEMBERSHIP
Architectural Review Board, 3-2
Commission on Solid Waste, 85-3
MINUTES
Architectural Review Board, 3-3

MONUMENTS
Subdivision of land, 118-24

— N —

NATURAL FEATURES
Subdivision of land, 118-22
NOTICES
Buildings, numbering of, 49-6
Littering, 91-9, 91-10

— O —

OFFICERS AND EMPLOYEES
Definitions, 20-3
Dismissal of officials, 20-1 – 20-4
OTHER DANGEROUS ANIMAL
Defined, 40-12

— P —

PARKING
Subdivision of land, 118-32
PARKS
Definitions, 91-3, 101-2
Hours, 101-1 – 101-4
Legislative intent, 101-1
Littering, 91-8
Penalties for offenses, 101-4
Special permits, 101-3
Subdivision of land, 118-15,
    118-26
Time restrictions, 101-3
PENALTIES FOR OFFENSES
Alcoholic beverages, 38-5
Buildings, numbering of, 49-7
Dumping, 85-6
False alarms, 36-4
Littering, 91-12
Parks, 101-4
PERMITS
Alcoholic beverages, 38-3
Architectural Review Board, 3-4
PERSON
Defined, 91-3
PIT BULL DOG
Defined, 40-12
PIT BULLS AND OTHER
    DANGEROUS ANIMALS
Animals, 40-11 – 40-13
Animals born of regulated
    animals, 40-13
Confinement, 40-13

## POMONA SUPPLEMENTAL INDEX

Control of existing animals, 40-13
Definitions, 40-12
Identification photographs, 40-13
Insurance, 40-13
Keeping of certain animals
    prohibited, 40-11
Leash and muzzle, 40-13
Registrations, 40-13
Reports, 40-13
Sales, 40-13
Signs, 40-13
PLANNING BOARD
Fees, 67-2
Subdivision of land, 118-11,
    118-12
PLANNING BOARD AND ZONING
    BOARD OF APPEALS
Certification and removal of
    Zoning Board of Appeals, 25-3
POWERS AND DUTIES
Architectural Review Board, 3-4,
    3-5
Commission on Solid Waste, 85-3
PRELIMINARY PLAT
Subdivision of land, 118-11,
    118-28
PROCEDURES FOR
    EMERGENCIES, see
    EMERGENCIES,
    PROCEDURES FOR
PROFESSIONAL CONSULTANTS
Fees, 67-2
PUBLIC PARK
Defined, 101-2
PUBLIC PLACE
Defined, 91-3

— Q —

QUORUM
Architectural Review Board, 3-3

— R —

REFUSE
Defined, 91-3
REGISTRATIONS
Pit bulls and other dangerous
    animals, 40-13
REPORTS
Pit bulls and other dangerous
    animals, 40-13
RUBBISH
Defined, 91-3

— S —

SALARIES AND COMPENSATION
Commission on Solid Waste, 85-3
SALES
Pit bulls and other dangerous
    animals, 40-13
SEWERS
Subdivision of land, 118-24,
    118-32
SIGNS
Pit bulls and other dangerous
    animals, 40-13
Subdivision of land, 118-32
SITE PLAN APPROVAL
Subdivision of land, 118-32
SITE PLANS
Fees, 67-2
SPECIAL PERMITS
Parks, 101-3
SPECIAL PERMIT USES
Defined, 130-4
STREETLIGHTING
Subdivision of land, 118-24
STREETS AND SIDEWALKS
Alcoholic beverages, 38-2
Littering, 91-7
Subdivision of land, 118-15,
    118-22 – 118-24
SUBDIVISION OF LAND
Alarm device, 118-24
Bonds, 118-12, 118-13, 118-22
Buffers, 118-32
Building permits, 118-13
Certificate of occupancy, 118-13
Definitions, 118-13
Design standards, 118-21 –
    118-27
Drainage, 118-24, 118-26, 118-32
Driveways, 118-25
Easements, 118-15, 118-26
Environmental quality review,
    118-32
Fees, 67-2, 118-11, 118-13,
    118-14, 118-32
Fences, 118-24
Final construction plans, 118-31
Final plat, 118-12, 118-30
Fire hydrants, 118-24
Grading, 118-23
Hearings, 118-11, 118-12, 118-32
Improvements, 118-13 – 118-20
Inspections, 118-14
Landscaping, 118-32
Lighting, 118-32
Lots, 118-25

Modification of requirements,
    118-20
Monuments, 118-24
Natural features, 118-22
Parking, 118-32
Parks, 118-15, 118-26
Planning Board, 118-11, 118-12
Preliminary construction plans,
    118-29
Preliminary plat, 118-11, 118-28
Self-imposed restrictions, 118-27
Sewers, 118-24, 118-32
Signs, 118-32
Site plan approval, 118-32
Staged construction, 118-19
Streetlighting, 118-24
Streets and sidewalks, 118-15,
    118-22 – 118-24
Trees, 118-24
Utilities, 118-24, 118-26
Water, 118-32
Watercourses, 118-25

— T —

TERMS OF OFFICE
Architectural Review Board, 3-2
Commission on Solid Waste, 85-3
TREES
Subdivision of land, 118-24

— U —

UTILITIES
Subdivision of land, 118-24,
    118-26

— V —

VEHICLES AND TRAFFIC
Bus excluded, 124-11
VILLAGE
Defined, 91-3

— W —

WATER
Subdivision of land, 118-32
WATERCOURSES
Subdivision of land, 118-25

# POMONA  SUPPLEMENTAL  INDEX

— Z —

ZONING BOARD OF APPEALS
    Fees, 67-2

SEWERS

Chapter 110

SEWERS

ARTICLE I
Definitions

§ 110-1.   Terms defined.

ARTICLE II
Use of Public Sewers Required

§ 110-2.   Dumping of sewage or wastes prohibited.

§ 110-3.   Use of alternative facilities restricted.

§ 110-4.   Discharge into natural or man-made outlets restricted.

§ 110-5.   All premises to be connected.

§ 110-6.   Disconnection and abandonment of old facilities.

§ 110-7.   Nonavailability of public sewer.

§ 110-8.   Notice to connect.

§ 110-9.   Record of costs.

§ 110-10. Charges a lien on property.

§ 110-11. Validity of charges.

§ 110-12. Grounds for waiving requirements.

§ 110-13. Regulations promulgated by Board of Sewer Commissioners.

ARTICLE III
Private Sewage Disposal Systems

§ 110-14. When permitted.

11001

POMONA CODE

§ 110-15. Type, capacity and location.

§ 110-16. Abandonment.

§ 110-17. Responsibility for maintenance.

§ 110-18. Additional requirements.

## ARTICLE IV
### Building Sewers and Connections

§ 110-19. Unauthorized tampering with sewer prohibited.

§ 110-20. Building sewer permits.

§ 110-21. Installation costs.

§ 110-22. Independent building sewer required.

§ 110-23. Construction standards and specifications.

§ 110-24. Elevation; sump pumps.

§ 110-25. Connections of downspouts or drains prohibited.

§ 110-26. Connection standards.

§ 110-27. Inspection.

§ 110-28. Excavations; guarding and restoration of surface.

§ 110-29. Sewer connection provided by municipality.

## ARTICLE V
### Sewer Use Charges

§ 110-30. Charges established.

§ 110-31. Areas where charges not applicable.

## ARTICLE VI
### Sewer Use

§ 110-32. Prohibited discharges.

11002

SEWERS

§ 110-33. Use of storm sewers.

§ 110-34. Enumeration of prohibited wastes.

§ 110-35. Wastes subject to additional standards.

§ 110-36. Pretreatment of certain wastes.

§ 110-37. Grease, oil and sand interceptors.

§ 110-38. Maintenance of treatment or flow-equalizing facilities.

§ 110-39. Control manhole; meters.

§ 110-40. Measurements, tests and analyses.

§ 110-41. Special arrangements not precluded.

ARTICLE VII
Protection From Damage

§ 110-42. Penalties for tampering with equipment.

ARTICLE VIII
Enforcement

§ 110-43. Right of entry.

§ 110-44. Use of easements for inspection or repair.

ARTICLE IX
Violations

§ 110-45. Written notice of violations.

§ 110-46. Penalties for offenses.

§ 110-47. Liability for damages.

§ 110-48. Other remedies.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 4-19-77 as L.L. No. 1-1977. Sections 110-1, 110-6, 110-7, 110-8, 110-20, 110-26, 110-27, 110-28, 110-30A(1) and (2), 110-33, 110-35, 110-42, 110-43, 110-44 and 110-46 amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I. Other amendments noted where applicable.]

GENERAL REFERENCES

Building construction — See Ch. 47.
Sewage disposal in flood hazard areas — See Ch. 79.
Street excavations — See Ch. 115, Art. I.

ARTICLE I
Definitions

## § 110-1. Terms defined.

A.  Unless the context specifically indicates otherwise, the meaning of terms used in this chapter shall be as follows:

BOARD OF SEWER COMMISSIONERS — The Board of Sewer Commissioners appointed by the Board of Trustees in accordance with § 3-308 of the Village Law and charged with administering the sewerage system of the Village of Pomona.

BOD (denoting "biochemical oxygen demand") — The quantity of oxygen utilized in the biochemical oxidation of organic matter under standard laboratory procedure in five (5) days at twenty degrees centigrade (20° C.), expressed in milligams per liter.

BUILDING DRAIN — That part of the lowest horizontal piping of a sewer system which receives the discharge from soil, waste and other drainage pipes inside the walls of a building and conveys it to the building sewer, at a point five (5) feet outside the inner face of the building wall.

BUILDING SEWER — The extension of the pipe from the building drain to the public sewer or other place of disposal.

CODE ENFORCEMENT OFFICER — The Code Enforcement Officer of the Village of Pomona.[1]

DISCOLORATION — An intensity of color in the untreated waste which is less than eighty percent (80%) luminance as determined by the spectrophotometric method defined by Standard Methods, and shall also mean such color as will, in combination with domestic wastes, not be susceptible to removal by secondary treatment methods used for domestic wastes.

GARBAGE — Solid wastes from the domestic and commercial preparation, cooking and dispensing of food and from the handling, storage and sale of produce.

HEALTH OFFICER — The Health Officer or the person duly licensed by the Public Health Law, State of New York, or other applicable law, and performing the duties of Health Officer of this municipality.

INDUSTRIAL WASTE — Any liquid, gaseous, solid or waste substance, or a combination thereof, resulting from any process of industry, manufacturing, trade or business or from the development or recovery of any natural resources, which may cause or might reasonably be expected to cause pollution of the waters of the state in contravention of the standards adopted in the Public Health Law.

JOINT REGIONAL SEWERAGE BOARD — The Board govering the Joint Sewerage Project.

MUNICIPALITY — The Village of Pomona.

NATURAL OUTLET — Any outlet into a watercourse, pond, ditch, lake or other body of surface or ground water.

PERSON — Any individual, firm, company, association, society, corporation or group.

pH — The logarithm of the reciprocal of the weight of hydrogen ions in grams per liter of solution.

PRIVATE SEWAGE DISPOSAL SYSTEM — Those septic tanks, cesspools, sewage disposal devices or subsurface drainage systems in connection with the foregoing serving or designed to serve

---

[1] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

residential, business or commercial structures and any establishment producing industrial wastes.

PROPERLY SHREDDED GARBAGE — The wastes from the preparation, cooking and dispensing of food that have been shredded to such a degree that all particles will be carried freely under the flow conditions normally prevailing in public sewers, with no particle greater than one-half (½) inch in any dimension.

PUBLIC SEWER — A sewer which is owned or controlled by municipal or public authority.

SANITARY SEWAGE — The liquid and intermixed solid wastes from homes or other structures, exclusive of industrial wastes or storm- and surface waters and drainage.

SANITARY SEWER — A sewer which carries sanitary sewage and to which storm- , surface and ground waters are not intentionally admitted.

SEWAGE — A combination of sanitary sewage and industrial waste, together with such ground- , surface and storm waters as may be present.

SEWAGE TREATMENT PLANT — Any arrangement of devices and structures used for treating sewage.

SEWAGE WORKS — All facilities for collecting, pumping, treating and disposing of sewage.

SEWER — A pipe or conduit for carrying sewage.

SLUG — Any discharge of water, sewage or industrial waste which in concentration of any given constituent or in quantity of flow exceeds for any period of duration longer than fifteen (15) minutes more than five (5) times the average twenty-four-hour concentration or flows during normal operation.

STORM DRAIN (sometimes termed "storm sewer") — A sewer which carries storm- and surface waters and drainage but excludes sewage and industrial wastes, other than unpolluted cooling waters.

SUSPENDED SOLIDS — Solids that either float on the surface of or are in suspension in water, sewage or other liquids and which are removable by laboratory filtering.

WATERCOURSE — A channel in which a flow of water occurs, either continuously or intermittently.

B.  The term "shall" is mandatory; "may" is permissive.

ARTICLE II
Use of Public Sewers Required

## § 110-2.  Dumping of sewage or wastes prohibited.

It shall be unlawful for any person to place, deposit or permit to be deposited on public or private property within the Village of Pomona or in any area under the jurisdiction of said municipality any sanitary sewage or industrial waste, except as provided in this chapter.

## § 110-3.  Use of alternative facilities restricted.

It shall be unlawful to construct or maintain any privy, privy vault, septic tank, cesspool or other facility intended or used for the disposal of sewage, except as hereinafter provided.

## § 110-4.  Discharge into natural or man-made outlets restricted.

It shall be unlawful to discharge to any natural or man-made outlet any sewage or other polluted waters except where suitable treatment has been provided in accordance with subsequent provisions of this chapter.

## § 110-5.  All premises to be connected. [Amended 5-3-79 by L.L. No. 1-1979]

A.  All buildings or premises located within the area serviced by a public sewer shall be connected to such public sewer. Those buildings or premises within such area serviced by a public sewer which have privy vaults, cesspools, septic tanks, private sewage systems or similar facilities must terminate such septic use or private sewage connection and connect to such public sewer within six (6) months after being notified in writing that public sewer connection for such building and premises is available, except that any septic system in

proper working order may continue to operate as long as it remains in proper working order; provided, however, that the sewer use charges as specified in Article V of this chapter and as reduced by the applicable amount charged by the Joint Regional Sewerage Board are paid in accordance with this chapter. As soon as such septic system fails to operate properly or begins to malfunction, then such septic system must be discontinued and the property connected to the public sewer system in accordance with the procedures outlined in this chapter.

B.  Below-grade sewer users. The owners of all buildings or premises located within the area serviced by a public sewer, which buildings or premises are below the grade of the sewer line located for such premises, may elect as follows:

    (1)  To continue to use the septic system presently used by such building or premises, as long as the septic system operates properly. During this period the premises shall be exempt from all sewer use charges. In the event, however, that the septic system fails to operate properly or begins to malfunction, then the building or premises must be connected to the public sewer system and the premises shall be exempt from sewer charges for a period of five (5) years from the date of the commencement of such services.

    (2)  To connect such building or premises to the public sewer, in which event the premises shall be exempt from sewer charges for a period of five (5) years from the date of the commencement of such services.

C.  The Board of Sewer Commissioners shall cause a notice to be published in the official newspaper of the village requiring the owners or occupants of any and all property fronting or abutting on any street or portion thereof in or upon which any public sewer is about to be laid or is being laid or has been laid by the said Board to make and lay connection pipes to and from the sewer mains in said street or any portion thereof in front of each separate piece of property and, where directed by said Board, as in this section or in other sections of this chapter provided, within such time and in such manner and under such inspection as said Board shall prescribe; and whenever any such owner or occupant shall have defaulted in

making such connection with said sewer mains opposite the lands and premises owned or occupied by him, as directed in and required by said printed notice therefor, in the manner and within the time specified, the said Board shall have power and authority to so make, extend and complete the same to the property line of the lands and premises so owned or occupied opposite thereto and in front thereof and to connect the same with any existing connecting pipes in front thereof. The actual expense thereof, including all labor done and materials used in doing and completing the same, shall be assessed by the Trustees of the village upon each separate piece of property opposite which the same shall be done and completed, and shall be a lien and liens on said premises and lots of land respectively. The same shall be collected in the same manner as other local assessments or assessments for local improvements, as provided by the special Charter of the village or the general village laws of the state, as the case may be. When so collected, the amount thereof shall be paid into the Sewer Fund of the village, except that any septic system in proper working order may continue to operate as long as it remains in proper working order. As soon as such septic system fails to operate properly or begins to malfunction, then such septic system must be discontinued and the property connected to the public sewer system in accordance with the procedures outlined in this chapter.

D.  The Board of Sewer Commissioners shall also have authority to determine the manner and conditions under which said building sewers shall be installed and maintained and shall have authority to install and maintain said building sewers and to adopt such uniform service charges as it deems just for each building sewer so connected with the public sewer and extending to the street or right-of-way lines, regardless of the location of said public sewer within said street or right-of-way lines and regardless of the soil, rock or other physical conditions within said street or right-of-way lines. Notice shall be served pursuant to Subsection C hereinabove.

E.  Such uniform service charge as the Board may adopt shall be any percentage of the cost up to but not exceeding the average actual cost of installing such building sewers as before described. Such percentage of the average actual cost of installing such building sewers as may not be charged shall be borne by the village. Should

the owner of property so connected default, the Board shall act in the manner prescribed in Subsection C hereinabove.

F.   The said Board shall have authority to apply such percentage of the average actual cost of installing such building sewers as the village may pay to such other building sewer connection for the same property or properties as in the judgment of the Board may be advisable.

## § 110-6.   Disconnection and abandonment of old facilities.[2]

When such public sewer connection is completed, existing sewage disposal facilities, including privy vaults, cesspools, septic tanks, private sewage systems or similr facilities, shall immediately be disconnected, filled in where required and made as safe as possible and abandoned, under the inspection and approval of the Code Enforcement Officer.

## § 110-7.   Nonavailability of public sewer.[3]

Where a public sewer system is not available, the building or premises may be connected to such private sewage disposal system complying with the provisions of this chapter and in accordance with the requirements of the Rockland County Health Department until such time as a public sewer system becomes available to such building and premises.

## § 110-8.   Notice to connect.[4]

Before proceeding to make any such connection, the Code Enforcement Officer or such other official or department of the municipality as may hereafter be designated by the municipality shall cause notice of such contemplated installation or connection to be given to the owner of any properties affected thereby. The notice shall contain a description of the property affected, sufficiently definite in terms to identify it, as well as a decription of the required connection and notice that unless the connection shall be completed within thirty (30) days after the service thereof, the

[2] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[3] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[4] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

municipality will proceed to make such connection or cause the same to be done pursuant to the authority of § 110-5 hereinabove. The notice shall be served by certified mail.

## § 110-9. Record of costs.

When any such sewer connection shall be made by the municipality, a true and accurate account of the cost and expense shall be kept and apportioned to the property or the properties thereby connected with the sewers, and a true statement of such costs under oath shall be furnished by such official or department of the municipality as may hereafter be designated by the municipality and filed with the Village Clerk. The municipality shall examine the same and, if properly made, shall confirm it and file such statement with the Village Clerk of the municipality. The Village Clerk shall record the cost of the installation of the sewer connection in the same book in which he records other assessments.

## § 110-10. Charges a lien on property.

Every such sewer connection charge shall bear interest and penalties from the same time and at the same rate as assessments for local improvements in the municipality, and from the time of confirmation shall be a first and paramount lien against the respective property or properties so connected with the sewer to the same extent as assessments for local improvements and shall be collected and enforced in the same manner.

## § 110-11. Validity of charges.

No such charge for sewer connections shall be invalid by reason of any error or omission in stating the name of the owner or owners of properties affected by such sewer connections, nor for any other informality, where such property or real estate has actually been improved by such sewer connection.

## § 110-12. Grounds for waiving requirements.

A.  The Board of Trustees of the Village of Pomona, by resolution duly adopted, after public hearing within ten (10) days' written notice to owners within two hundred (200) feet of the applicant's property, may waive the provisions of this Article requiring connection with the sanitary sewer system upon the following grounds:

(1)  Where said municipality finds evidence of substantial hardship because of unusual physical conditions; or

(2)  Where it is found that the operation of the present septic tank system is adequate.

B.  The said waiver shall be for a period to be determined by the Board, such period not to exceed three (3) years.

## § 110-13. Regulations promulgated by Board of Sewer Commissioners.

All connections and operations of sewers provided for herein shall be made pursuant to such rules, regulations and standards as the Board of Sewer Commissioners shall promulgate, which shall be a public record in the office of the Village Clerk.

ARTICLE III
Private Sewage Disposal Systems

## § 110-14. When permitted.

Where a public sanitary sewer is not available under the provisions of Article II, § 110-5 hereinabove, or connection is waived pursuant to Article II, § 110-12 hereinabove, the building sewer shall be connected to a private sewage disposal system complying with the Public Health Law and Rockland County Sanitary Code, as well as the rules and regulations of the Board of Sewer Commissioners of the Village of Pomona.

## § 110-15. Type, capacity and location.

The type, capacities, location and layout of a private sewage disposal system shall comply with all requirements of the Department of Health of the State of New York and the Rockland County Sanitary Code, as well as the rules and regulations of the Board of Sewer Commissioners of the Village of Pomona.

## § 110-16. Abandonment.

At such times as a public sewer becomes available to a property served by a private sewage disposal system, as provided in Article II, § 110-5, a direct connection shall be made to the public sewer in compliance with this chapter, and the use of any septic tanks, cesspools and similar private sewage disposal facilities shall be abandoned within thirty (30) days of the making of such connection. The private sewage disposal system shall be cleaned of sludge and filled with clean dirt or bank-run gravel.

## § 110-17. Responsibility for maintenance.

The owner shall operate and maintain the private sewage disposal facilities in a sanitary manner at all times, at no expense to the municipality.

## § 110-18. Additional requirements.

No statement contained in this Article shall be construed to interfere with any additional requirements that may be imposed by the appropriate municipal agencies.

## ARTICLE IV
### Building Sewers and Connections

## § 110-19. Unauthorized tampering with sewer prohibited.

No unauthorized person shall uncover, make any connection with or opening into, use, alter or disturb any public sewer or appurtenance thereof

without first obtaining a written permit from the Board of Sewer Commissioners.

## § 110-20. Building sewer permits.[5]

There shall be one (1) class of building sewer permit for both residential and nonresidential service. The owner or his agent shall make application on a special form furnished by the municipality. The permit application shall be supplemented by any plans, specifications, insurance requirements or other information considered pertinent in the judgment of the Board of Sewer Commissioners. A sewer permit and inspection fee in the amount set forth in Chapter 67, Fees, shall be paid to the municipality at the time the application is filed.

## § 110-21. Installation costs.

All costs and expense incident to the installation and connection of the building sewer shall be borne by the owner. The owner shall indemnify the municipality for any loss or damage that may directly or indirectly be occasioned by the installation of the building sewer.

## § 110-22. Independent building sewer required.

A separate and independent building sewer shall be provided for each dwelling, building and property referred to in Article II, § 110-5, and the building drain shall be connected thereto.

## § 110-23. Construction standards and specifications.

The building sewer shall be extra-heavy cast-iron soil pipe, United States Department of Commerce Commercial Standard Cs 188-59, Class 2400 asbestos-cement pipe, ASTM C428, or other recognized, similar suitable material approved by the Board of Sewer Commissioners. All standards or specifications shall be those current at the time of passage of this chapter. Joints shall be tight and waterproof. Pipe shall be uniformly bedded on a tamped granular material. The building sewer shall be installed in a separate

---

[5]  Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

trench not less than five (5) feet horizontally from any underground water service pipe. Cast-iron pipe with leaded joints may be required by the Board of Sewer Commissioners where the bulding sewer is exposed to damage by tree roots. If installed in filled or unstable ground or at a depth providing less than a three-foot cover under driveways or roadways, the building sewer shall be of cast-iron soil pipe, except that nonmetallic material may be accepted if laid on a suitable concrete bed or cradle as approved by the Board of Sewer Commissioners. The inside diameter of the building sewer shall in no event be less than five (5) inches, and the slope of such five-inch pipe shall not be less than one-fourth (¼) inch per foot. Under special circumstances, larger pipe with lesser slopes which will provide a minimum velocity of two (2) feet per second will be permitted only on approval of the Board of Sewer Commissioners. Pipe shall be laid as nearly as possible in a straight line. Approved cleanouts, set at an angle of forty-five degrees (45°), shall be used at changes of grade or line and at fifty-foot intervals where the building sewer is over one hundred (100) feet long. Changes in direction shall be made only with properly curved pipe and fittings. The sewer shall not be laid within three (3) feet of or parallel to any bearing wall, which might thereby be weakened.

## § 110-24. Elevation; sump pumps.

A. Whenever practicable, the building sewer for new construction shall be brought to the building at an elevation below the basement floor. In existing buildings where no plumbing facilities are provided in the basement, the building sewer may be above the cellar floor. The amount of earth cover shall be sufficient to afford protection from frost.

B. In all existing buildings in which any building drain is too low to permit gravity flow to the public sewer, sanitary sewage carried by such drain shall be lifted by a sump pump. This pump shall be a submersible, heavy-duty, nonclog type with a nonclog enclosed pump impeller. The pump shall be capable of passing two-and-one-half-inch spheres. A suction tripod shall be provided of sufficient height to provide proper suction entrance for the liquids and solids to be pumped. The pump casing, impeller and tripod shall be of cast iron. The motor shall be submersible, oil-filled, totally enclosed, ball-bearing type with adequate thrust capacity for the pump. It shall be equipped with a stainless steel shaft and an expansion diaphragm.

Conduits and fittings shall be attached to the motors with watertight connection. Said pump and its installation shall be approved by the Board of Sewer Commissioners. An overflow, approved by the Board of Sewer Commissioners, shall be provided to permit temporary discharge to an approved subsurface disposal system in the event of pump failure. A standby pump may be required as determined by the Board of Sewer Commissioners.

C. The Board of Sewer Commissioners may adopt other and additional regulations not inconsistent with the standards set forth herein.

## § 110-25. Connections of downspouts or drains prohibited.

No person shall make connection of roof downspouts, exterior foundation drains, areaway drains or other sources of surface runoff or groundwater to a building sewer or building drain which in turn is connected directly or indirectly to a public sanitary sewer.

## § 110-26. Connection standards.[6]

The connection of the building sewer into the public sewer shall conform to the requirements of the Building Code or other applicable rules and regulations of the municipality and the Board of Sewer Commissioners and the Rockland County Plumbing Code. All such connections shall be made gastight and watertight. Any deviation from the prescribed procedures and materials must be approved by the Code Enforcement Officer before installation.

## § 110-27. Inspection.[7]

The applicant for the building sewer permit shall notify the Code Enforcement Officer when the building sewer is ready for inspection and connection to the public sewer and shall leave the entire sewer uncovered until such inspection is made and approval granted. The connection shall be made under the supervision of the Code Enforcement Officer, Village Engineer or other representative of the Board of Sewer Commissioners.

---

[6] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[7] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

### § 110-28. Excavations; guarding and restoration of surface.[8]

All excavations for building sewer installations shall be adequately guarded with barricades and lights so as to protect the public from hazard. Streets, sidewalks, parkways and other public property disturbed in the course of work shall be restored in a manner satisfactory to the Code Enforcement Officer. No person shall perform any of the work set forth in this chapter for any other person in the municipality unless he shall be a licensed plumber or other person approved by the Code Enforcement Officer. Such person shall first file an individual surety bond in the penal sum of five thousand dollars ($5,000.), payable to the municipality in such form and on such conditions as shall be approved by the Village Attorney of the Village of Pomona, for the faithful compliance with this chapter and all other local laws pertaining to the work.

### § 110-29. Sewer connection provided by municipality.

A sewer connection will be provided by the municipality between an existing fronting public sewer and the curb or right-of-way. The joint made between the sewer connection provided by the municipality and the building sewer provided by the owner shall be secure and watertight. Standard approved fittings with flexible joints shall be used for the connection. The building sewer for all buildings shall be connected to the public sewer at the curbline or right-of-way.

### ARTICLE V
### Sewer Use Charges

### § 110-30. Charges established.

A.  Sewer use charges are payable in advance of sewer connection. In new construction such sewer use charge must be paid at the time that application is made for a certificate of occupancy. All sewer use charges are on an annual basis, payable in advance on June 1 of each and every year, and shall be billed as a separate, itemized charge on the Village of Pomona tax bill and shall be payable with such Village of Pomona village taxes in advance of the year for which

---

[8] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

such charges are levied. All initial sewer connections not previously paid for shall pay a proportionate sewer use charge.

(1) Sewer use charges for residential premises, as established in Chapter 67, Fees, are payable in advance on June 1 of each and every year. A proportionate charge times the number of months remaining until the annual June 1 billing date shall be paid in advance for any connection made.[9]

(2) Sewer use charges for premises other than residential, where permitted by the Village of Pomona and the Joint Regional Sewerage Board, shall be as established in Chapter 67, Fees, per building units of use as determined by the Joint Regional Sewerage Board. A proportionate charge times the number of building units times the number of months remaining until the annual June 1 billing date shall be paid in advance for any connection made.[10]

B. All sewer use charges, except for the initial sewer use charges upon connection, must be paid by June 30 of each and every year. All payments after June 30 of each and every year shall carry a penalty of one-half of one percent (½ of 1%) per month or portion thereof until the sewer use charge is paid.

## § 110-31. Areas where charges not applicable. [Amended 9-18-79 by L.L. No. 2-1979]

The provisions of § 110-30 hereinabove are not applicable in the following areas:

A. Those areas of the Village of Pomona presently being serviced by public sewerge facilities under the jurisdiction of the Joint Regional Sewerage Board. Such areas shall comply with the sewer charges levied by such Joint Regional Sewerage Board, as well as all other requirements of such Joint Regional Sewerage Board.

B. All areas of the Village of Pomona located within the Town of Ramapo which are not serviced by public sewers and which were

---

[9] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[10] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

previously determined as not being included within the areas to be serviced by public sewers.


ARTICLE VI
**Sewer Use**

## § 110-32. Prohibited discharges.

No person shall discharge or cause to be discharged any stormwater, surface water, groundwater, roof runoff, subsurface drainage, uncontaminated cooling water or unpolluted industrial process waters to any sanitary sewer.


## § 110-33. Use of storm sewers.[11]

Stormwater and all other unpolluted drainage shall be discharged to such sewers as are specifically designated as storm sewers or to an outlet approved by the Code Enforcement Officer or the Village Engineer.


## § 110-34. Enumeration of prohibited wastes.

No person shall discharge or cause to be discharged any of the following-described waters or wastes to any public sewers:

A. Any gasoline, benzene, naphtha, fuel oil or other flammable or explosive liquid, solid or gas.

B. Any waters or wastes containing toxic or poisonous solids, liquids or gases in sufficient quantity, either singly or by interaction with other wastes, to injure or interfere with any sewage treatment process, constitute a hazard to humans or animals, create a public nuisance or create any hazard in the receiving waters of the sewage treatment plant, including but not limited to cyanides in excess of two (2) milligrams per liter as CN in the wastes as discharged to the public sewers.

---

[11] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

C.　Any waters or wastes having a pH lower than five point five (5.5) or having any other corrosive property capable of causing damage or hazard to structures, equipment and personnel of the sewage works.

D.　Solid or viscous substances in such quantities or of such size as to be capable of causing obstruction to the flow in sewers or other interference with the proper operation of the sewage works, such as but not limited to ashes, cinders, sand, mud, straw, shavings, metal, glass, rags, feathers, tar, plastics, wood, unground garbage, whole blood, paunch manure, hair and fleshings, entrails and paper dishes, cups, milk containers, etc., either whole or ground by garbage grinders.

## § 110-35. Wastes subject to additional standards.[12]

No person shall discharge or cause to be discharged the following-described substances, materials, waters or wastes if it appears that such wastes may harm either the sewers, sewage treatment process or equipment, have an adverse effect on the receiving stream or can otherwise endanger life, limb, public property or constitute a nuisance. In establishing standards as to the acceptability of these wastes, the Code Enforcement Officer or Village Engineer will give consideration to such factors as the quantities of subject wastes in relation to flows and velocities in the sewers, materials of construction of the sewers, nature of the sewage treatment process, capacity of the sewage treatment plant, degree of treatability of wastes in the sewage treatment plant and other pertinent factors. The substances prohibited are:

A.　Any liquid or vapor having a temperature higher than one hundred fifty degrees centigrade (150° C.).

B.　Any water or waste containing fats, wax, grease or oils, whether emulsified or not, in excess of one hundred (100) milligrams per liter, or containing substances which may solidify or become viscous at temperatures between thirty-two degrees and one hundred fifty degrees Fahrenheit (32° and 150° F.) [zero degrees and sixty-five degrees centigrade (0° and 65° C.)].

C.　Any garbage that has not been properly shredded. The installation and operation of any garbage grinder equipped with a motor of

---

[12] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

three-fourths (¾) horsepower [seventy-six hundredths (0.76) horsepower metric] or greater shall be subject to the review and approval of the Code Enforcement Officer or Village Engineer.

D.  Any waters or wastes containing strong acid iron-pickling wastes or concentrated plating solutions, whether neutralized or not.

E.  Any waters or wastes containing iron, chromium, copper, zinc and similar objectionable or toxic substances, or wastes exerting an excessive chlorine requirement to such degree that any such material received in the composite sewage at the sewage treatment works exceeds the limits established by the Board of Sewer Commissioners for such materials.

F.  Any waters or wastes containing phenols or other taste- or odor-producing substances in such concentrations as exceed the limits established by the Board of Sewer Commissioners as necessary, after treatment of the composite sewage, to meet the requirements of the state, federal or other public agencies of jurisdiction for such discharge to the receiving waters.

G.  Any radioactive wastes or isotopes of such half-life or concentration as may exceed limits established by the Board of Sewer Commissioners in compliance with applicable state or federal regulations.

H.  Any waters or wastes having a pH in excess of nine point five (9.5).

I.  Materials which exert or cause the following:

   (1)  Unusual concentrations of inert suspended solids, such as but not limited to fuller's earth, lime slurries and lime residues, or of dissolved solids, such as but not limited to sodium sulfate.

   (2)  Excessive discoloration, such as but not limited to dye wastes and vegetable tanning solutions.

   (3)  Unusual BOD, chemical oxygen demand or chlorine requirements in such quantities as to constitute a significant load on the sewage treatment works.

   (4)  Unusual volume of flow or concentration of wastes constituting slugs, as defined herein.

J.  Waters or wastes containing substances which are not amenable to treatment or reduction by the sewage treatment process employed,

or are amenable to treatment only to such degree that the sewage treatment plant effluent cannot meet the requirements of other agencies having jurisdiction over discharge to the receiving waters.

## § 110-36. Pretreatment of certain wastes.

A. If any waters or wastes are discharged or are proposed to be discharged to the public sewers, which waters contain the substances or possess the characteristics enumerated in § 110-35 hereinabove and which may have a deleterious effect upon the sewage works process, equipment or receiving waters, or which otherwise create a hazard to life or constitute a public nuisance, the Board of Sewer Commissioners may:

   (1) Reject the wastes;

   (2) Require pretreatment to an acceptable condition for discharge to the public sewers;

   (3) Require control over the quantities and rates of discharge; and/or

   (4) Require payment to cover the added cost of handling and treating the wastes not covered by existing taxes or sewer charges.

B. If the Village Engineer permits the pretreatment or equalization of waste flows, the design and installation of the plants and equipment shall be subject to the review and approval of the Village Engineer and subject to the requirements of all applicable codes, ordinances and laws.

## § 110-37. Grease, oil and sand interceptors.

Grease, oil and sand interceptors shall be provided when, in the opinion of the Village Engineer, they are necessary for the proper handling of liquid wastes containing grease in excessive amounts or any flammable wastes, sand or other harmful ingredients, except that such interceptors shall not be required for private living quarters or dwelling units. All interceptors shall be of a type and capacity approved by the Village Engineer and shall be so located as to be readily and easily accessible for cleaning and inspection.

**§ 110-38. Maintenance of treatment or flow-equalizing facilities.**

Where preliminary treatment or flow-equalizing facilities are provided for any waters or wastes, they shall be maintained continuously in satisfactory and effective operation by the owner at his expense.

**§ 110-39. Control manhole; meters.**

When required by the Village Engineer, the owner of any property serviced by a building sewer carrying industrial wastes shall install a suitable control manhole, together with such necessary meters and other appurtenances in the building sewer, to facilitate observation, sampling and measurement of the wastes. Such manhole, when required, shall be accessible and safely located and shall be constructed in accordance with the plans approved by the Village Engineer. The manhole shall be installed by the owner at his expense and shall be maintained by him so as to be safe and accessible at all times.

**§ 110-40. Measurements, tests and analyses.**

All measurements, tests and analyses of the characteristics of waters and wastes to which reference is made in this chapter shall be determined in accordance with the edition of Standard Methods for the Examination of Water and Wastewater, published by the American Public Health Association, as in effect at the time of the passage of this chapter, and shall be determined at the control manhole provided or upon suitable samples taken at said control manhole. In the event that no special manhole has been required, the control manhole shall be considered to be the nearest downstream manhole in the public sewer to the point at which the building sewer is connected. Sampling shall be carried out by customarily accepted methods to reflect the effect of constituents upon the sewage works and to determine the existence of hazards to life, limb and property. (The particular analyses involved will determine whether a twenty-four-hour composite of all outfalls of a premises is appropriate or whether a grab sample or samples should be taken. Normally, but not always, BOD and suspended solids analyses are obtained from twenty-four-hour composites of all outfalls, whereas pH's are determined from periodic grab samples.)

## § 110-41. Special arrangements not precluded.

Nothing in this Article shall be construed as preventing any special agreement or arrangement between the Village of Pomona and any industrial concern whereby an industrial waste of unusual strength or character may be accepted for treatment subject to payment therefor by the industrial concern in accordance with applicable provisions of law. Any such agreement shall be reviewed by the Joint Board and a report made prior to entering into such agreement. The Joint Board may initiate such an agreement for approval by the Village of Pomona.

## ARTICLE VII
## Protection From Damage

## § 110-42. Penalties for tampering with equipment.[13]

No unauthorized person shall maliciously or with willful and wanton negligence break, damage, destroy, uncover, deface or tamper with any structure, appurtenance or equipment which is a part of the sewage works. Any person violating this provision shall be subject to the same penalties as imposed by Article IX, §§ 110-46 and 110-47.

## ARTICLE VIII
## Enforcement

## § 110-43. Right of entry.[14]

The Village Engineer, Code Enforcement Officer and other duly authorized employees of the municipality, including agents of the Joint Regional Sewerage Board bearing proper credentials and identification, shall be permitted to enter all properties for the purposes of inspection, observation, measurement, sampling and testing in accordance with the provisions of this chapter. The Village Engineer or Code Enforcement Officer, or their representatives, shall have no authority to inquire into any processes, including metallurgical, chemical, oil, refining, ceramic, paper or other

[13] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[14] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

industries, beyond that point having a direct bearing on the kind and source of discharge to the sewers or waterways or facilities for waste treatment.

## § 110-44. Use of easements for inspection or repair.[15]

The Village Engineer, Code Enforcement Officer, Village Attorney, Board of Sewer Commissioners and other duly authorized employees of the Village of Pomona, including agents of the Joint Regional Sewerage Board bearing proper credentials and identification, shall be permitted to enter all private properties through which the municipality holds a duly negotiated easement for the purpose of, but not limited to, inspection, observation, measurement, sampling, repair and maintenance of any portion of the sewage works lying within said easement. All entry and subsequent work, if any, on said easement shall be done in full accordance with the terms of the duly negotiated easement pertaining to the private property involved.

ARTICLE IX
Violations

## § 110-45. Written notice of violations.

Any person found to be violating any provision of this chapter, except Article VII, shall be served by the municipality with written notice stating the nature of the violation and providing a reasonable time limit for the satisfactory correction thereof. The offender shall, within the period of time stated in such notice, permanently cease all violations.

## § 110-46. Penalties for offenses.[16]

Each and every person, partnership, firm or corporation violating any of the provisions of this chapter shall be punished as provided in § 1-12 of Chapter 1, General Provisions. Each day that a violation is permitted to exist shall constitute a separate offense.

---

[15] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.
[16] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

**§ 110-47. Liability for damages.**

Any person violating any of the provisions of this chapter shall become liable to the Village of Pomona for any expense, loss or damage occasioned the Village of Pomona by reason of such violation.

**§ 110-48. Other remedies.**

Nothing herein shall prevent the use of any other remedy available, including a civil action, equitable action or injunction, as provided for in the Public Health Law of New York, Rockland County Sanitary Code or other applicable provision of law.

Chapter 115

## STREETS AND SIDEWALKS

### ARTICLE I
### Excavations and Openings

§ 115-1.   Permit required.

§ 115-2.   Application for permit.

§ 115-3.   Fee and bond requirements.

§ 115-4.   Issuance of permits.

§ 115-5.   Restoration of surface.

§ 115-6.   Emergency street openings.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona: Art. I; 10-16-79 as L.L. No. 4-1979. Section 115-3 amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I. Other amendments noted where applicable.]

GENERAL REFERENCES

Transportation of explosives — See Ch. 65.
Vehicle and traffic regulations — See Ch. 124.

### ARTICLE I
### Excavations and Openings
### [Adopted 10-16-79 as L.L. No. 4-1979]

#### § 115-1.   Permit required.

It shall be unlawful for any person, corporation or public-service corporation to open or cause to be opened, by cutting or digging the surface or soil in, any street, highway or public ground in the Village of Pomona for

any purpose whatsoever without first securing a street opening permit from the Village Engineer and paying the fees prescribed hereinbelow or without complying with the provisions of this Article.

## § 115-2. Application for permit.

Any person seeking to cut, dig or open the surface or soil in any street, highway or public ground in the village for any purpose must complete a street opening permit application, which shall include detailed plans and specifications indicating the location, purpose and extent of such street opening. Such application must be filed with the Village Engineer.

## § 115-3. Fee and bond requirements.[1]

The fee for a street opening permit shall be as set forth in Chapter 67, Fees. In addition, a cash bond, in the amount set forth in Chapter 67, Fees, must be deposited at the time the application is filed, to cover any damages to the village streets or property.

## § 115-4. Issuance of permits.

Street opening permits shall be issued by the Village Engineer of the Village of Pomona, after completion and filing of the application and the payment of all fees, when in his estimation the village has sufficient information concerning the purpose and approved procedure for the street opening. The permit so issued will be numbered and must be conspicuously displayed at the site of the street opening. After the completion of the street opening, the original permit shall be returned to the Village Engineer before any deposit is released.

## § 115-5. Restoration of surface.

All openings shall be carefully backfilled, tamped, puddled and paved by the applicant after notification to the Village Engineer and after giving such Village Engineer the opportunity to inspect the restoration work. The Village Engineer shall indicate on the permit that he has inspected the restoration

---

[1] Editor's Note: Amended at time of adoption of Code; see Ch. 1, General Provisions, Art. I.

work. The deposit will be retained by the village until the frost has left the ground in the spring following the winter after the restoration has been completed. Any further repairs which may be necessary due to settlement, frost or spring thawing must be done by the applicant. If such work is not done by the applicant, the village will do such necessary work and use the deposit to pay for labor and material required to correct the restoration. Any balance remaining will be returned to the applicant. If the restoration work done by the village exceeds the deposit, the applicant will be required to make up the balance.

## § 115-6.  Emergency street openings.

In the event of an emergency because of pipe breakage, street cave-in or pipe blockage where immediate attention is required, street openings may be made by calling the Village Clerk or the Village Engineer and notifying either of them of such emergency. A street opening permit, however, must be obtained as soon as practicable and in no case more than twenty-four (24) hours from the time of such emergency street opening.

SUBDIVISION OF LAND

## Chapter 118

## SUBDIVISION OF LAND

### ARTICLE I
### General Provisions

§ 118-1.  Authority of Planning Board to approve plats.

§ 118-2.  Compliance required; parcels to be free of violations and delinquent taxes.

§ 118-3.  Resubdivision.

§ 118-4.  Policy; general requirements.

§ 118-5.  Building permits.

§ 118-6.  Modification of regulations.

§ 118-7.  Amendments.

§ 118-8.  Adoption of regulations.

### ARTICLE II
### Definitions

§ 118-9.  Terms defined.

### ARTICLE III
### Application Procedure

§ 118-10.  Steps outlined; time periods.

§ 118-11.  Preliminary plat.

§ 118-12.  Final plat.

### ARTICLE IV
### Required Improvements and Agreements

§ 118-13.  Completion of improvements.

5 – 25 – 94

POMONA CODE

§ 118-14.  Inspection of improvements.

§ 118-15.  Maintenance of improvements.

§ 118-16.  Future status of streets, parks and easements.

§ 118-17.  Waiver of required improvements.

§ 118-18.  Deferral of required improvements.

§ 118-19.  Staged construction.

§ 118-20.  Modification of requirements.

ARTICLE V
Design Requirements

§ 118-21.  Minimum standards.

§ 118-22.  General requirements.

§ 118-23.  Streets.

§ 118-24.  Improvements.

§ 118-25.  Lots.

§ 118-26.  Reservations and easements.

§ 118-27.  Self-imposed restrictions.

ARTICLE VI
Plat Details

§ 118-28.  Preliminary plat.

§ 118-29.  Preliminary construction plans.

§ 118-30.  Final subdivision plat.

§ 118-31.  Final construction plans.

§ 118-32.  Site plan approval.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 1-18-1969; amended in its entirety at time of adoption of Code 2-8-1988 by L.L. No. 1-1988 (see Ch. 1, General Provisions, Art. I). Subsequent amendments noted where applicable.]

GENERAL REFERENCES

Planning Board — See Ch. 25.
Building construction — See Ch. 47.
Electrical standards — See Ch. 61.
Fees — See Ch. 67.
Flood damage prevention — See Ch. 79.
Sewers — See Ch. 110.
Streets and sidewalks — See Ch. 115.
Zoning — See Ch. 130.
Street specifications — See Ch. A134.

ARTICLE I
General Provisions

## § 118-1. Authority of Planning Board to approve plats.

Pursuant to the provisions of § 7-728 of the Village Law, the Board of Trustees authorizes the Planning Board to review and approve or disapprove subdivision plats showing lots, blocks or sites, with or without roads, within the area of the village.

## § 118-2. Compliance required; parcels to be free of violations and delinquent taxes.

A. Land within the Village of Pomona may be subdivided into lots, blocks or sites, with or without streets or highways, only if approved by the Planning Board in accordance with the procedures and requirements as set forth in these regulations and only if the approved plat is duly filed in the office of the County Clerk of Rockland, New York. Construction, excavation, filling, regrading, clearing of vegetation or other similar activities related to a proposed subdivision shall not be begun within any area proposed or intended for subdivision until said subdivision shall have been approved by the Planning Board.

B. All parcels of land that are presented to the Planning Board for planning considerations shall be free of violations and delinquent taxes.

## § 118-3. Resubdivision.

A resubdivision, as defined herein, is subject to the same procedure, rules and regulations as are applicable to a subdivision.

## § 118-4. Policy; general requirements. [Amended 2-28-1994 by L.L. No. 1-1994]

It is declared to be the policy of the village to consider land subdivisions as part of a plan for the orderly, efficient and economical development of the village. Land to be subdivided shall be of such character that it can be used safely for building or development purposes without danger to health or peril from fire, flood or other menace and without resulting in significant damage to the ecology of the area in which it is located. Proper provision shall be made for drainage, water, sewerage, electric, telephone, gas and other needed improvements. The proposed streets shall compose a convenient and safe system and shall be properly related to potential streets on adjoining properties. Streets shall be of such width, grade and location as to accommodate the prospective traffic, to afford adequate light and air and to facilitate fire and police protection. Where the Planning Board has made a finding that a proper case exists for requiring that a park or parks be suitably located for playgrounds or other recreational purposes within the village, it can require that the same be shown by the developer on the subdivision plat. The Planning Board shall require access to undeveloped lands when possible.

## § 118-5. Building permits.

No permit shall be issued for the erection of any building within a proposed subdivision until said subdivision has been duly approved by the Planning Board and filed in the office of the County Clerk.

## § 118-6. Modification of regulations.

Where the Planning Board finds that, because of the special circumstances of a particular case, extraordinary hardship may result from strict compliance with these regulations, it may modify the regulations so that substantial justice may be done and the public interest secured; provided, however, that any such modification will be consistent with the spirit and intent of these regulations and all village laws. In permitting any such modification, the Planning Board

shall attach such conditions as are, in its judgment, necessary to secure substantially the objectives of the standard or requirement so modified.

## § 118-7. Amendments.

A. These regulations may be amended by the Planning Board, after public hearing and subject to the approval of the Board of Trustees. Notice of the time, place and purpose or such hearing shall be given by publication in the official village newspaper at least five (5) days prior to the date on which it is to be held. A copy of the proposed amendment shall be placed on file in the office of the Village Clerk, where it shall be available for public inspection during normal working hours for at least five (5) days before such hearing.

B. Applicability. Amendments adopted by the Planning Board shall take effect on the date of approval by the Board of Trustees or at such time as provided in the local law approving and adopting such amendments.

## § 118-8. Adoption of regulations.

In order that land may be subdivided in accordance with the authority, jurisdiction and policy as set forth above, these regulations are hereby adopted.

ARTICLE II
Definitions

## § 118-9: Terms defined.

For the purpose of these regulations, certain words and terms used herein are defined as follows (except where specifically defined herein, all words and terms shall carry their customary meaning):

BOARD OF TRUSTEES — The Board of Trustees of the Village of Pomona, New York.

BUILDING LOT — Any lot upon which a principal building can be constructed in conformance with the requirements of the Zoning Law.[1]

---

[1] Editor's Note: See Ch. 130, Zoning.

CALIPER — The diameter of a tree trunk, generally measured in inches, at a height of three (3) feet above ground level.

CODE ENFORCEMENT OFFICER — The Code Enforcement Officer of the Village of Pomona or his duly authorized representative.

CONSTRUCTION PLANS — The maps and engineering drawings, described in §§ 118-29 and 118-31 of this chapter, accompanying a subdivision plat and showing the specific location and design of improvements to be installed in the subdivision in accordance with these regulations.

EASEMENT — Authorization by a property owner for the use by another, and for a specified purpose, of any designated part of his property.

ENGINEER or LICENSED PROFESSIONAL ENGINEER — A person licensed as a professional engineer by the State of New York.

LOT — A parcel of land not divided by streets.

MAJOR SUBDIVISION — Any subdivision not classified as a minor subdivision, including but not limited to subdivisions of four (4) or more lots, or any size subdivision requiring any new street or extension of municipal facilities.

MASTER OR COMPREHENSIVE PLAN — A comprehensive plan, prepared by the Planning Board pursuant to § 7-722 of the Village Law, which indicates the general locations recommended for various functional classes of public works, places and structures and the general physical development of the village, and includes any unit or part of such plan separately prepared and any amendment to such plan or parts therein.

MINOR SUBDIVISION — Any subdivision containing not more than three (3) lots fronting on an existing street, not involving any new street or road or the extension of municipal facilities and not adversely affecting the development of the remainder of the parcel or adjoining property and not in conflict with any provision or portion of the Master Plan, Official Map, Zoning Law or these regulations.

OFFICIAL MAP — The map established by the Board of Trustees pursuant to § 7-724 of the Village Law, showing streets, highways, parks and drainage, both existing and proposed.

PLANNING BOARD or BOARD — The Planning Board of the Village of Pomona.

PLAT — A drawing, in final form, as described in § 118-30 of this chapter, showing a proposed subdivision and containing all of the information required by these or other applicable regulations and certified by a licensed land surveyor or registered engineer.

PRELIMINARY PLAT — A drawing or drawings, clearly marked "preliminary plat," showing the salient features of a proposed subdivision, submitted to the Planning Board for purposes of consideration prior to submission of the plat in final form and of sufficient detail to apprise the Planning Board of the layout of the proposed subdivision.

RESUBDIVISION — Any change of existing property lines or of property lines shown on a plat approved by the Planning Board and filed in the office of the County Clerk.

SKETCH PLAN [Repealed 2-28-1994 by L.L. No. 1-1994]

STREET — An existing state, county, town or village road or highway or a street shown upon a plat approved by the Planning Board of the Village of Pomona.

STREET, COLLECTOR — A street which serves or is designed to serve primarily the function of carrying traffic from minor streets to major streets.

STREET, DEAD-END or CUL-DE-SAC — A street or a portion of a street with only one (1) vehicular traffic outlet.

STREET, LOCAL — A street which serves or is designed to serve primarily as an access to abutting residential properties.

STREET PAVEMENT — The wearing or exposed surface of the street right-of-way designed to be used by vehicular traffic.

STREET RIGHT-OF-WAY WIDTH — The distance between property lines measured at right angles to the center line of the street.

SUBDIVIDER — Any person, firm, corporation, partnership or association who shall lay out any subdivision or part thereof, as defined herein, either for himself or others.

SUBDIVISION — The division of any parcel of land, regardless of use, into two (2) or more lots, plots, blocks, sites or parcels, with or without the creation of new streets, for the purpose, whether immediate or future, of transfer of ownership or building development, and shall include resubdivision as defined herein.

SUBDIVISION PLAT or FINAL PLAT — A drawing, in final form, showing a proposed subdivision and containing all information or detail required by law and by these regulations, to be presented to the Planning Board for approval and which, if approved, may be duly filed or recorded by the applicant in the office of the County Clerk.

SURVEYOR — A person licensed as a land surveyor by the State of New York.

VILLAGE CONSTRUCTION STANDARDS AND SPECIFICATIONS — The standards and specifications adopted by the Board of Trustees for the construction of streets and related subdivision improvements, and all amendments thereto.[2]

VILLAGE ENGINEER — The duly designated Engineer of the Village of Pomona.

ZONING LAW — The Zoning Law of the Village of Pomona, New York, and all amendments thereto.[3]

ARTICLE III
Application Procedure

§ 118-10. Steps outlined; time periods. [Amended 2-28-1994 by L.L. No. 1-1994]

A.  Whenever any subdivision of land is proposed and before any contract for the sale is carried out or title to any part thereof is transferred, the subdividing owner or his duly authorized agent shall proceed to secure approval of the proposed subdivision in accordance with the following steps:

(1)  Preparation of preliminary plat.

---

[2]  Editor's Note: See Ch. A134, Street Specifications.

[3]  Editor's Note: See Ch. 130, Zoning.

    (2)   Preparation of final plat.

B.  The time within which public hearings are required to be held by the Planning Board shall be calculated from the date of completion of procedures required, if any, by the New York State Environmental Quality Review Act (SEQRA).[4]

## § 118-11.[5] Preliminary plat. [Amended 2-28-1994 by L.L. No. 1-1994]

A.  Application. Prior to requesting approval of a proposed final plat, the applicant shall file an application for approval of a preliminary plat on forms available from the Planning Board. Said application shall:

    (1)   Be accompanied by an application fee, payable to the Village of Pomona, in the amount shown in the fee schedule as adopted by the Board of Trustees. Every subsequent submission of a new preliminary plat will be considered a new application and shall be accompanied by a new fee.

    (2)   Include all land which the applicant proposes to subdivide and all land immediately adjacent extending one hundred (100) feet therefrom or of that directly opposite thereto extending one hundred (100) feet from the street frontage of such opposite land, with the names of owners as shown in the Village Clerk's office. Where the Planning Board determines the need, a larger portion of adjacent lands may be required to be shown.

    (3)   Be accompanied by a minimum of twelve (12) copies of the preliminary plat as described in § 118-28 of this chapter.

    (4)   Be accompanied by a minimum of four (4) copies of construction plans as described in § 118-29 of this chapter.

    (5)   Be accompanied by a complete environmental assessment form or draft environmental impact statement, as required by the Planning Board under the New York State Environmental Quality Review Act (SEQRA).[6]

---

[4]   Editor's Note: See Article 8 of the Environmental Conservation Law.

[5]   Editor's Note: Former § 118-11, Sketch plat, was repealed 2-28-1994 by L.L. No. 1-1994. This local law also provided for the renumbering of former §§ 118-12 through 118-28 as §§ 118-11 through 118-27.

[6]   Editor's Note: See Article 8 of the Environmental Conservation Law.

    (6)  Be accompanied by complete drainage calculations in accordance with Rockland County Drainage Agency standards.

B.  Field trip. After receipt of the application by the Planning Board clerk, but before the public hearing on the application, the Planning Board may schedule a field trip to the site of the proposed subdivision, accompanied by the applicant or his representative. In order to facilitate field inspection and review of the site of the proposed subdivision, temporary staking along the center line of all proposed roads in the subdivision will be required in time for such field trip, or, if impracticable, the Planning Board shall permit a suitable alternative procedure.

C.  Planning Board action.

    (1)  The Planning Board shall hold a public hearing within sixty-two (62) days after the receipt of a complete preliminary plat application by the clerk of the Planning Board. Such hearing shall:

        (a)  Be advertised at least once in the official village newspaper at least five (5) days before such hearing.

        (b)  Be noticed, by certified mail, return receipt requested, to each owner of the property within five hundred (500) feet of the perimeter of the subject property as indicated on the application for subdivision approval and at least ten (10) days prior to the public hearing.

        (c)  Be advertised by the installation of four (4) posters, furnished by the Planning Board Secretary, on the four (4) closest public roads in visible locations surrounding the proposed subdivision at least ten (10) days prior to the public hearing.

    (2)  The Planning Board shall, thereafter, approve, with or without modification, or disapprove such preliminary plat within sixty-two (62) days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Planning Board. Within five (5) days of the approval of the preliminary plat, it shall be certified by the clerk of the Planning Board as having been granted preliminary approval, a copy filed in the clerk's office and a certified copy mailed to the owner. Notwithstanding the foregoing provisions, the time in which the Planning Board must take action on the preliminary plat may be extended by mutual consent of the applicant and the Planning Board.

D.  Expiration of approval. Approval of a preliminary plat application
expires if the owner has not submitted a proposed plat in final form
within six (6) months of the date of the approval of the preliminary
plat.

## § 118-12. Final plat.

Application for final subdivision plat approval shall be filed with the Planning
Board Secretary. Such application shall comply with the modifications, if any,
required by the Planning Board at the time of preliminary plat approval and shall
be submitted in duplicate on forms available from the Planning Board
Secretary.

A.  Items to accompany application. Application for final plat approval shall
be accompanied by the following:

(1)  Twelve (12) copies each of a final subdivision plat and final
construction plans conforming to all requirements of §§ 118-30
and 118-31 of this chapter as well as all conditions, if any, of
preliminary plat approval.

(2)  A final subdivision application fee, payable to the Village of
Pomona, in the amount specified in the fee schedule as adopted
by the Board of Trustees. Every subsequent submission of a new
final plat shall be considered a new application and shall be
accompanied by a new fee.

(3)  An affidavit of ownership, which shall include all contiguous
holdings of the owner and the dates the respective holdings of
land were acquired, together with the liber and page of each
conveyance to the present owner as recorded in the Rockland
County Clerk's office. The affidavit shall indicate the legal owner
of the property, the contract owner of the property, the date
contract of sale was executed and, if any corporations are
involved, a complete list of all directors, officers and stockholders
of each corporation owning more than five percent (5%) of any
class of stock.

(4)  Where subdivision roads and/or other improvements are involved
and where the applicant intends to post a performance bond or
other acceptable security to cover the cost of improvements, a
statement from the applicant's engineer giving the estimated

cost of construction, together with the quantities and unit costs used in making the estimate. [Amended 2-28-1994 by L.L. No. 1-1994]

(5) A list of any and all waivers of the provisions of these regulations which the applicant requests the Planning Board to grant in his specific case, with the reasons therefor.

B. Action by the Planning Board. [Amended 2-28-1994 by L.L. No. 1-1994]

(1) If the final plat application submitted to the Planning Board is in substantial agreement with the preliminary plat previously approved, the Planning Board shall, by resolution, conditionally approve, with or without modification, disapprove or grant final approval and authorize the signing of such plat within sixty-two (62) days of its receipt by the secretary to the Planning Board.

(2) If the final plat application submitted to the Planning Board is not in substantial agreement with the approved preliminary plat, the Planning Board may: require further review under SEQRA;[7] hold a public hearing on such final plat within sixty-two (62) days of receipt of the application, said hearing to be advertised in the official village newspaper at least five (5) days in advance of such hearing; or by resolution conditionally approve, with or without modification, disapprove or grant final approval and authorize the signing of such plat, within sixty-two (62) days after the date of the public hearing. The grounds for any modification or disapproval shall be stated upon the record.

(3) The time within which the Planning Board must take action on such plat may be extended by the mutual consent of the owner and the Planning Board.

C. [Amended 2-28-1994 by L.L. No. 1-1994] Public hearing. In addition to the requirements of § 118-11C of the within code on public hearings, prior to such hearing the Planning Board Secretary shall:

(1) File a copy of the subdivision plat and construction plans at the Village Clerk's office for public review at least five (5) days prior to the public hearing.

---

[7] Editor's Note: See Article 8 of the Environmental Conservation Law.

(2)   Submit a copy of the subdivision plat and final construction plans to the County Planning Board where a proposed road within the subdivision intersects with a state or county highway or where drainage lines connect directly into any channel lines established by the county, such plat and construction plans to be received at least ten (10) days prior to the date of the public hearing.

D.   Filing plat by sections. Prior to granting its approval, the Planning Board may permit or require the plat to be subdivided into two (2) or more sections and may impose such conditions upon the delineation and filing of the sections as it may deem necessary to assure the orderly development of the plat. Approval of the sections, subject to any conditions imposed by the Board, shall be granted concurrently with approval of the plat. If the owner files only a section of an approved plat within sixty-two (62) days of the date of approval, such section shall encompass at least ten percent (10%) of the total number of lots contained in the approved plat. Within thirty (30) days of the filing of a section of an approved plat with the County Clerk, the owner shall file the entire approved plat with the Village Clerk. The Planning Board may deny approval of any subsequent section if a prior approved section has not first been satisfactorily completed. **[Amended 2-28-1994 by L.L. No. 1-1994]**

E.   Action by applicant. Based upon the Planning Board resolution, the applicant shall have the final subdivision plat and construction plans revised, if necessary, in accordance with said resolution, and submit twelve (12) copies of such revised maps to the Planning Board Secretary.

F.   Approval of construction plans. The construction plans, revised as necessary to meet the requirements of the Planning Board resolution, shall be endorsed by the Planning Board Chairman or other duly authorized member of the Planning Board as "approved" prior to the signing of the plat or the beginning of any construction work within the proposed subdivision.

G.   Additional documents and information required. Prior to the endorsement of the Planning Board Chairman on the final subdivision plat, the following additional documents and information shall be submitted by the applicant:

(1)  An engineering inspection fee, payable to the Village of Pomona, as specified in the fee schedule adopted by the Board of Trustees.[8]

(2)  Where streets or park areas are included within the proposed subdivision, a formal offer of cession to the village of all such streets and park areas, in form approved by the Village Attorney, except where the proposed final subdivision plat has a notation to the effect that no offer of dedication of such streets and park areas, or any of them, is made to the public. The applicant shall deliver a deed to all such lands in proper form for recording, together with a title policy for the Village of Pomona in a sum not less than ten thousand dollars ($10,000.), which sum shall be determined by the Village Attorney before the signing of the final subdivision plat.

(3)  (Reserved)[9]

(4)  A written agreement, in form satisfactory to the Village Attorney, permitting entry by the village onto any streets, easements and park areas for the purposes of inspecting and installing any required improvements in the event of the failure of the applicant to make such installations or to properly maintain such installations until such time as the village assumes the responsibility for them.

H.  Final approval of subdivision plat. Upon resolution granting conditional approval of a final plat, the Planning Board shall empower the Chairman or other duly authorized member to sign the plat, subject to completion of any requirements as may be stated in the resolution. Within five (5) days of such resolution, the plat shall be certified by the secretary of the Planning Board as conditionally approved and a copy filed in such secretary's office. A copy of the resolution shall be mailed to the owner, which copy shall include a statement of such requirements which, when completed, will authorize the signing of the conditionally approved final plat. Upon completion of such requirements, the plat shall be signed by the Chairman or other duly authorized member of the Planning Board. Conditional approval of a

---

[8]  Editor's Note: See Ch. 67, Fees.

[9]  Editor's Note: Former Subsection G(3), which provided for payment of a recreation fee, was repealed 2-28-1994 by L.L. No. 1-1994.

final plat shall expire one hundred eighty (180) days after the date of the resolution granting conditional approval, unless such requirements have been certified as completed. The Planning Board may, however, extend the time in which a conditionally approved plat in final form must be submitted for signature, if, in its opinion, such extension is warranted by the particular circumstances thereof. Such extensions shall not exceed two additional ninety (90) day periods. [Amended 2-28-1994 by L.L. No. 1-1994]

I.   Filing plat with the County Clerk. The approved plat shall be filed with the Rockland County Clerk within sixty-two (62) days of the date of Planning Board signing. Simultaneously with the filing of the plat, the Secretary to the Planning Board shall record the agreement of dedication, together with such legal documents as shall be required to be recorded by the Village Attorney. [Amended 2-28-1994 by L.L. No. 1-1994]

ARTICLE IV
Required Improvements and Agreements

## § 118-13. Completion of improvements. [Amended 2-28-1994 by L.L. No. 1-1994]

A.   Endorsement of final plat. After adoption of a resolution approving a final subdivision plat and before the plat is endorsed by the Planning Board Chairman or other duly authorized member, the applicant shall be required to complete, at his expense and without reimbursement by the village or any special district, all street and other improvements as shown on the approved construction plans or otherwise specified in the resolution, except the final street wearing course and sidewalks, or, as an alternative, file with the Board of Trustees acceptable security, in an amount fixed by the Planning Board in its resolution, to secure to the village the satisfactory construction, installation and completion of such improvements. All such improvements must be completed within three (3) years of the date of the Planning Board resolution. All improvements shall be completed to the satisfaction of the Planning Board, in accordance with the approved construction plans, the requirements of these regulations and the village construction standards and specifications.

B.  "Acceptable security" shall mean and be limited to: a performance bond issued by a bonding or surety company; the deposit of funds in or a certificate of deposit issued by a bank or trust company located and authorized to do business in this state; an irrevocable letter of credit from a bank located and authorized to do business in this state; obligations of the United States of America; or any obligations fully guaranteed as to interest and principal by the United States of America, each having a market value at least equal to the full cost of such improvements. If not delivered to the village, such security must be held in a village account at a bank or trust company. Such security must be provided pursuant to a written security agreement with the village, approved by the Village Board of Trustees and also approved by the Village Attorney as to form, sufficiency and manner of execution.

(1)  Any such performance bond or security agreement shall run for a term to be fixed by the Planning Board, but in no case for a longer term than three (3) years; provided, however, that the term of such performance bond or security agreement may be extended by the Planning Board with the consent of the parties thereto. If the Planning Board shall decide at any time during the term of the performance bond or security agreement that the extent of building development that has taken place in the subdivision is not sufficient to warrant all the improvements covered by such security, or that the required improvements have been installed as provided in this section and by the Planning Board in sufficient amount to warrant reduction in the amount of said security, and upon the approval by the Village Board of Trustees, the Planning Board may modify its requirements for any or all such improvements, and the amount of such security shall thereupon be reduced by an appropriate amount so that the new amount will cover the cost in full of the amended list of improvements required by the Planning Board.

(2)  In the event that any required improvements have not been installed as provided in this section within the term of such security agreement, the Village Board of Trustees may thereupon declare said performance bond or security agreement to be in default and collect the sum remaining payable thereunder, and, upon the receipt of the proceeds thereof, the village shall install such improvements as are covered by such security and as

commensurate with the extent of building development that has taken place in the subdivision but not exceeding in cost the amount of such proceeds.

C.  Issuance of building permits and certificate of occupancy.

(1)  No building permit shall be issued until such time as all required public improvements, except for final wearing courses and sidewalks, if required, are completed to the satisfaction of the Planning Board. Thereafter, certificates of occupancy for any such model homes and building permits and certificates of occupancy for additional lots, other than the final ten percent (10%) of all lots, may be issued upon the applicant's delivering to the Village of Pomona, in form satisfactory to the Village Attorney, such performance bond or other security agreement as provided for in the preceding subsections, in an amount equal to the total cost of the final road wearing course and sidewalks, if required, divided by the number of lots in the subdivision. No building permits shall be issued for the final ten percent (10%) of all lots until all required public improvements are fully completed to the satisfaction of the Planning Board and dedicated to the Village of Pomona.

(2)  The performance bond or security agreement to be delivered by the applicant to the Village of Pomona shall authorize payment to the Village of Pomona upon written certification of the Planning Board Chairman that the final road wearing courses and sidewalks have not been completed to the satisfaction of the Planning Board within the earlier of the following two (2) periods: three (3) years from the date of filing of the final subdivision plat or six (6) months from the date of issuance of the building permit for the last lot other than the final ten percent (10%) of all lots. Such performance bond or security agreement shall authorize payment to the Village of Pomona in the event that the installation of such final road wearing courses and sidewalks have caused damage to public or private property not under the ownership of the applicant. Such payments shall be in the aggregate amount of all expenses incurred by the village for the provision of final road wearing courses and sidewalks and for the cost of the aforementioned damage, if any. In the event that the applicant has elected to deposit cash with the Village of Pomona

in lieu of a performance bond or other security agreement, the village shall be authorized to pay for the expenses of provision of final road wearing courses and sidewalks and damages, if any, out of such cash, and any excess cash remaining after the completion of such final improvements and payment of such damages shall be returned to the applicant.

D.  Failure to complete improvements. Where a performance bond or security agreement is not filed and all required improvements are not completed within the period specified in the Planning Board resolution of approval or as set forth hereinabove, such approval shall be deemed to have expired unless, upon request of the applicant, the period has been extended by resolution of the Planning Board. Where such performance bond or security agreement has been filed and all required improvements are not completed within the time specified by the Planning Board and set forth in said bond or agreement, and if no application for the extension of such period and bond or agreement has been made by the applicant and approved by the Planning Board, the Board of Trustees shall notify the applicant of the expiration of such specified term and of the action it proposes to take to complete such improvements. Not less than thirty (30) days from such notification, the Board of Trustees may declare the performance bond or security agreement in default, arrange for the completion of such improvements by a contractor or contractors of its choice and pay for such improvements by drawing from the proceeds of such bond or agreement. The Board of Trustees shall have absolute authority to select the contractor or contractors to complete such improvements, and the applicant shall have no recourse against the village for any claims whatsoever resulting from the selection of contractors. By submitting an application for final plat approval, each applicant shall be deemed conclusively to have consented to the provisions of this section.

E.  Modification of letter of credit.

(1)  Extension of period specified in letter of credit. The time period specified for the completion of all required improvements, as set forth in the letter of credit, may be extended only by resolution of the Planning Board upon request by the applicant setting forth, in detail, the amount of work which has been completed, reasons for failure to complete the remainder of the work within the

specified period, the maximum estimated time required to complete the remainder of the work and the time period extension which is requested.

    (2)  Reduction of letter of credit. An applicant may request, in writing, that the Planning Board authorize a reduction in the amount of the letter of credit. Such request shall itemize the extent of required improvements already completed, the estimated cost of improvements remaining to be completed and the amount of the letter of credit reduction requested. Then, upon approval of the Board of Trustees, the Planning Board may, if it determines that sufficient required improvements have been installed to warrant such action, reduce the amount of the letter of credit to an appropriate amount so that the new amount will cover the cost in full of all required improvements remaining to be completed.

F.  Modification of requirements. If, at any time, either before or during the course of construction of the required improvements, it is determined by the Planning Board that unforeseen conditions make it necessary to modify the location or design of any improvements, the Board may modify the terms and conditions of the approval of the final subdivision plat so as to require such changes as may be necessary to comply with the spirit and intent of the Board's original approval and to conform to accepted engineering practices. If such modification affects the scope of work covered by a letter of credit, the Board may require or allow appropriate modification of such letter of credit.

## § 118-14. Inspection of improvements.

The Village Engineer or his designee shall be responsible for inspecting required improvements during construction to ensure their satisfactory completion and, upon such completion, shall furnish the Planning Board with a statement to that effect. If the Village Engineer determines that any of the required improvements have not been constructed in accordance with the approved plan, the applicant shall be responsible for properly completing said improvements. Failure of the Village Engineer to carry out inspections of required improvements during construction shall not in any way relieve the applicant or the bonding company of their responsibilities related to the proper construction of such improvements.

A.  Inspection of stages of construction.

(1)   To facilitate inspection of required improvements during construction, the applicant shall notify the Village Engineer or his designee at least three (3) working days before reaching each of the following stages of construction:

    (a)   Rough grading completed.

    (b)   Drainage and other underground facilities installed, but prior to backfilling.

    (c)   After gravel base is spread and compacted.

    (d)   When each paved course is being applied.

    (e)   After completion of all improvements.

(2)   The applicant shall not proceed to work on any stage subsequent to the first stage until the work of the previous stage has been inspected and approved by the Village Engineer or his designee. In the case of any other improvements, the Village Engineer or his designee shall inspect the work at such progressive stages as he shall specify, and he shall certify to the Planning Board that the work was inspected by him and was in accordance with the approved plans and specifications.

B.   Certificate of construction. At such time as the applicant has completed construction of all required improvements, he shall furnish to the Village Engineer three (3) copies of as-built plans and profiles which show the actual location of all paved streets, culverts, headwalls, drains, manholes, catch basins, sidewalks, curbs, utility lines and equipment, monuments, street signs, street trees and all other required improvements, as constructed, and all other pertinent information, such as cross sections of the streets at intervals determined by the Village Engineer, the culvert and drain grades, sewer grades, sidewalk and curb grades and invert elevations at manholes. Such plans and profiles shall bear a dated certification by a professional engineer or licensed surveyor to the effect that the data shown thereon was accurately determined by field survey. If the location or accuracy of improvements does not, in the opinion of the Planning Board, fully comply with the approved construction plans and specifications, the Planning Board shall have the right to refuse to sign the final plat or release the bond until such situation is corrected.

C. Inspection fee. To offset the costs incurred by the village in conducting inspections, all applicants for approval of submissions involving the construction of streets and/or other improvements shall be required to submit an inspection fee, payable to the Village of Pomona, as shown on the fee schedule adopted by the Board of Trustees.[10] [Amended 2-28-1994 by L.L. No. 1-1994]

## § 118-15. Maintenance of improvements.

The applicant shall be required to maintain all improvements and provide for snow removal on streets and sidewalks, including the cost of streetlighting, if required, until acceptance of said improvements by the Board of Trustees. If there are any certificates of occupancy on a street not dedicated to the village, the village may plow the street or effect emergency repairs and charge same to the developer. The applicant shall be required to file a letter of credit with the Board of Trustees, prior to dedication, in an amount considered adequate by the Village Engineer and in a form satisfactory to the Village Attorney, in order to assure the satisfactory condition of the required improvements for a period of two (2) years after the date of their acceptance by the Board of Trustees and dedication of same to the village.

## § 118-16. Future status of streets, parks and easements.

A. Offers of cession. All streets, parks and easements shall be indicated on the plat. In accordance with § 7-732 of the Village Law, the applicant may add as part of the plat a notation, if he so desires, to the effect that no offer of dedication of such streets or parks, or any of them, is made to the public. All offers of cession to the public of all streets and parks not so marked shall be filed with the Planning Board at the time of submission of the final application.

B. Petition for dedication. Upon completion of the subdivision and the road(s), a petition in the form required by the Board of Trustees shall be filed with such Board for the acceptance of parks or any other reservations or easements.

C. Acceptance by village. Acceptance of any offer of cession of streets or parks shall rest with the Board of Trustees. In the event that the

---

[10] Editor's Note: See Ch. 67, Fees.

applicant shall elect not to file the plat in the office of the County Clerk within the period prescribed for such filing, then such offer of cession shall be deemed void. The approval by the Planning Board of a subdivision plat shall not be deemed to constitute nor imply the acceptance by the village of any streets, parks or other areas shown on said plat, and the Planning Board may require the addition of appropriate notes to this effect on the plat.

D.  Maintenance. In the event that no offer of cession to the public is made for the streets, parks and required easements shown on the plat, there shall be submitted with the final application copies of agreements or other documents providing for the suitable maintenance of such facilities and a statement of all rights which exist with respect to each of them. The adequacy of such documents shall be subject to Planning Board approval.

## § 118-17.  Waiver of required improvements.

The Planning Board may waive, subject to appropriate conditions, the provision of any or all such improvements and requirements as in its judgment of the special circumstances of a particular plat are not requisite in the interest of the public health, safety and general welfare, or which in its judgment are inappropriate because of inadequacy or lack of connecting facilities adjacent or in proximity to the subdivision.

## § 118-18.  Deferral of required improvements.

When it is deemed necessary by the Planning Board to defer the construction of any improvement required herein because of incompatible grades, future planning, inadequate or lack of connecting facilities or for other reasons, the developer shall pay his share of the costs of the future improvements to the village in escrow prior to signing of the final subdivision plat, or the developer may post a bond ensuring completion of said improvements upon demand of the village. The village shall refund any funds so paid if not used for their intended purpose; and refund shall be made when the Board of Trustees determines that said funds shall not be so used.

## § 118-19.  Staged construction.

In the approval of a final subdivision plat, the Planning Board may require the construction of buildings on individual lots in a specified sequence where the Board finds that such staging is related to the public health, safety and welfare.

## § 118-20.  Modification of requirements.

If, at any time, either before or during the course of construction of the required improvements, it is determined by the Planning Board that unforeseen conditions make it necessary to modify the location or design of any improvements, the Board may modify the terms and conditions of the approval so as to require such changes as may be necessary to comply with the spirit and intent of the Board's original approval and to conform to accepted engineering practices.

## ARTICLE V
## Design Requirements

## § 118-21.  Minimum standards.

The Planning Board, in considering an application for the subdivision of land, shall be guided by the following considerations and standards, which standards shall be deemed to be the minimum requirements for the convenience, health, safety and welfare of the village.

## § 118-22.  General requirements.

A.  Character of land. Land to be subdivided shall be of such character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace. Land subject to such hazards shall not be subdivided nor developed for residential purposes nor for such other uses as may increase danger to health, life or property or aggravate a flood hazard, but such land may be set aside for such uses as shall not involve such danger nor produce unsatisfactory living conditions.

B.  Preservation of natural features.

(1) Land to be subdivided shall be designed in reasonable conformity to existing topography in order to minimize grading, cut and fill and to retain, insofar as possible, the natural contours, to limit stormwater runoff and to conserve the natural vegetative cover and soil. No tree, topsoil or excavated material shall be removed from its natural position except where necessary and incidental to the improvement of lots and the construction of streets and related facilities in accordance with the approved plan. Topsoil shall be restored to a depth of at least six (6) inches and properly seeded and fertilized in those disturbed areas not occupied by buildings or structures.

(2) Existing natural features which are of ecological, aesthetic or scenic value to residential development or to the village as a whole, such as wetlands, watercourses, water bodies, rock formations, stands of trees, historic spots and similar irreplaceable assets, shall be preserved, insofar as possible, through harmonious design of the subdivision, and, where appropriate, the Planning Board may require the inclusion of such features in permanent reservations.

C. Frontage on improved streets. The area proposed to be subdivided shall have frontage on and direct access to an existing village, town, county or state highway or a street shown on a plat approved by the Planning Board of the Village of Pomona. If such street is private, it shall be improved to the satisfaction of the Planning Board or there shall be a bond held by the village to guarantee such improvement.

§ 118-23. Streets.

A. Location, width and improvement. Streets shall be suitably located, of sufficient width and adequately improved to accommodate the expected traffic and to afford satisfactory access to police, fire-fighting, snow removal and other utility and road maintenance equipment and shall be coordinated so as to compose a safe and convenient system.

B. Relation to topography. Streets shall be appropriately related to the natural topography and shall be arranged so as to obtain as many as possible of the building sites at or above the grades of the streets. A combination of steep grades and curves shall be avoided.

C. Intersections. Cross (four-cornered) street intersections shall be avoided insofar as possible, except at important traffic locations. A distance at least equal to the minimum required lot width, but not less than one hundred fifty (150) feet, shall be maintained between center lines of offset intersecting streets. Within sixty (60) feet of the center of an intersection, streets shall be at approximately right angles and grades shall be limited to one and five-tenths percent (1.5%). When two (2) streets intersect at an angle of less than seventy-five degrees (75°), special pavement, channelization, right-of-way and/or sight easement restrictions may be required by the Planning Board.

D. Continuation of streets into adjacent properties.

(1) The arrangement of streets shall provide for their construction between adjacent properties where such continuation is determined necessary for proper traffic movement, effective fire protection, efficient provision of utilities, snow removal and other services. Alternatively, if a street continuation is not determined to be warranted by the circumstances or would result in unsafe traffic conditions or otherwise jeopardize the public safety and welfare, the Planning Board may require such street to be terminated short of the boundary lines of the subdivision.

(2) Where a continuation of a street beyond the boundaries of a subdivision is warranted, but the adjacent property is undeveloped and the street must dead-end temporarily, the Planning Board may require that the right-of-way and all improvements be extended to the property line. A temporary circular turnaround shall be provided on all temporary dead-end streets in excess of one hundred (100) feet in length, with a notation on the plat that land outside the normal street right-of-way shall revert to abutting property owners upon continuation of the street. The length of temporary dead-end streets shall normally be limited to not more than double the permitted length of permanent dead-end streets.

(3) Where a turnaround exists at the end of a street within an adjoining development to which a proposed street is to connect, the applicant may be required to remove the portions of the turnaround pavement outside of the normal width of the traveled way, perform any necessary reconstruction of the pavement edge, construct continuations of any existing driveways to the

new pavement edge and regrade, seed and drain the disturbed areas in such a manner as to blend them in with the surrounding landscape.

E.  Permanent dead-end streets. Where a street does not extend to the boundary of a subdivision and its future continuation is not required by the Board, it shall be separated from such boundary by a distance not less than the minimum required lot depth. The Planning Board may require the reservation of an easement to the boundary to accommodate utilities, drainage facilities and/or pedestrian traffic. A circular turnaround shall be provided at the end of a permanent dead-end street. For greater convenience to traffic and more effective police and fire protection, permanent dead-end streets shall, in general, be limited in length, exclusive of the turnaround, to twelve (12) times the minimum lot width for the zoning district in which they are located.

F.  Solar access considerations. To permit maximum solar access to proposed lots and future buildings, wherever reasonably feasible, consistent with other appropriate design considerations, new streets shall be located on an east-west axis. This encourages house siting with the maximum exposure of roof and wall area to the sun. The Board shall also consider the slope of the property and the nature and location of existing vegetation as they affect solar access.

G.  Street names. The Planning Board shall recommend to the Board of Trustees the names of new streets. Street names shall be sufficiently different in sound and in spelling from other names in the village so as not to cause confusion. A street which is a continuation of an existing street shall bear the same name. Proposed street names shall be reviewed by the local Fire Department and post office. The Board of Trustees shall adopt the names of streets.

H.  Design standards for new streets. Streets shall meet the following design standards. Street classifications may be determined by the Planning Board. Standards are not shown for streets which would be built by the state or county.

(1)  Minimum width of traveled way.

(a)  Local street: twenty-four (24) feet with shoulders.

(b)  Collector street: thirty (30) feet with shoulders.

(2) Road pavement, shoulders, drainage structures, curbs, turnarounds, etc.: see construction standards and specifications.[11] Concrete curbs are required for all roads where sidewalks are required.

(3) Maximum grade for local street: ten percent (10%).

(4) Minimum length of vertical curve: one hundred (100) feet, but not less than twenty (20) feet for each one-percent algebraic difference in grade.

(5) Minimum length of tangents between reverse curves on local streets: one hundred (100) feet.

(6) Minimum sight distance: two hundred (200) feet. At all intersections, the minimum sight distance across corners shall be seventy-five (75) feet back from the intersection.

(7) Minimum turnaround.

    (a) Diameter of right-of-way: one hundred twenty (120) feet.

    (b) Diameter of pavement: one hundred (100) feet.

(8) Maximum length of cul-de-sac.

    (a) Permanent: six (6) times the minimum lot width.

    (b) Temporary: twelve (12) times the minimum lot width.

(9) Sidewalks: four (4) feet wide, both sides.

(10) Minimum radius at intersections.

    (a) Right-of-way: twenty-five (25) feet.

    (b) Pavement: twenty-five (25) feet.

## § 118-24. Improvements.

A. Street improvements. Streets shall be graded and improved with pavement, sidewalks, curbs, gutters, streetlighting standards, street signs, street trees, water mains, sanitary sewers, storm drains, fire alarm signal devices, fire hydrants and other utilities, except that the Planning Board may waive, subject to appropriate conditions, such

---

[11] Editor's Note: See Ch. A134, Street Specifications.

improvements as it considers are not requisite in the interest of the public health, safety and welfare. The subdivider shall install underground service connections to the property line of each lot before the street is paved. Except where waivers are granted, all such grading and street improvements shall conform in all respects to these regulations and to the village construction standards and specifications.[12] Wherever the area to be subdivided is to utilize existing road frontage, said road shall be improved as provided above. The Planning Board shall further require that the entire right-of-way required by these regulations be dedicated to the agency owning the road as a condition of final plat approval.

B.  Drainage improvements.

(1)  The subdivider may be required by the Planning Board to carry away, by pipe or open ditch, any spring- or surface water that may exist either previous to or as a result of the subdivision. The subdivider may be required to continue the piping of upstream drainage systems. Such drainage facilities shall be located in the street right-of-way, where feasible, or in perpetual unobstructed easements of appropriate width, and shall be constructed in accordance with the village construction standards and specifications.

(2)  Drainage facilities shall, in each case, be large enough to accommodate potential runoff from their entire upstream drainage area, whether inside or outside the subdivision, based on a one-hundred-year storm and assuming conditions of maximum potential development within the watershed as permitted by the Zoning Law. The applicant shall be responsible for submitting such computations to the Village Engineer in sufficient detail to make possible the ready determination of the adequacy of the proposed drainage installations, and the Village Engineer shall be responsible for reviewing these and preparing recommendations for the Planning Board.

(3)  The Planning Board may also require the subdivider to prepare a study of the effects of the subdivision on existing downstream drainage facilities. Where such study or the Planning Board, after an independent analysis, determines that the additional runoff

---

[12]  Editor's Note: See Ch. A134, Street Specifications.

incident to the development of the subdivision will overload an existing downstream drainage facility, the Planning Board shall notify the owner of such downstream facility of such potential condition and may withhold approval of the subdivision until provision has been made for the correction of said potential condition, or, in the alternative, the developer may deposit in escrow the full cost of the required improvement of the said potential condition in such sum as the Planning Board shall determine. No subdivision shall be approved unless adequate drainage will be provided to an adequate drainage watercourse or facility.

C.  Underground utilities. In order to assure greater safety and improved appearance, all utility lines and related equipment for providing power and communication services shall be installed underground in the manner prescribed by the regulations of the utility company having jurisdiction. Underground utility lines shall be located outside of the traveled way of the streets but, except in unusual circumstances, within the street right-of-way. Underground service connections shall be provided to the property line of each lot before the street is paved and may pass under the traveled way of the street. Where existing utility facilities are located above ground, except on public rights-of-way, they shall be removed and placed underground.

D.  Other improvements.

(1)  Monuments.

(a)  Monuments shall be required wherever deemed necessary by the Planning Board to enable all property lines to be readily reproduced on the ground. Monuments shall be located at all lot corners.

(b)  Monuments shall be set vertically in solid ground three (3) inches above the ground surface, with accurate reference to a permanently identifiable fixed point, and shall meet or exceed the construction requirements specified in the village construction standards and specifications.

(2)  Traffic control and street signs. Traffic control and street signs shall be provided by the subdivider and placed at all intersections, within the street right-of-way, and in other locations as required by the approving authority. In the case of traffic control signs,

their type and location shall be approved by the Village Engineer, and in the case of street signs, by the Village Engineer.

(3) Fencing of hazardous conditions. Each subdivider and/or developer shall be required to furnish and install all fences wherever the Planning Board determines that a hazardous condition may exist. Said fences shall be constructed according to standards established by the Village Engineer and shall be noted as to height and material on the final plat. No certificate of occupancy shall be issued until said fence improvements have been duly installed.

(4) Streetlighting standards. Streetlighting standards, of a design and location approved by the Planning Board and Village Engineer, shall be provided and installed by the subdivider. Said streetlights are to be installed by the subdivider prior to the issuance of any certificate of occupancy and are to be maintained at his sole expense until such time as the roads have been accepted by the Village of Pomona. In the case of a subdivision involving a county or state highway, approval shall be obtained from the County Superintendent of Highways.

(5) Sanitary sewers and sewerage facilities, water mains and water supply facilities and fire hydrants. Where required by the Planning Board, the subdivider shall install sanitary sewers and sewerage facilities and/or water mains and water supply facilities and fire hydrants of the type and in a manner specified by the Village of Pomona Village Board construction standards and specifications. Necessary action shall be taken by the developer to enable the Ramapo or Haverstraw Town Board to extend or create a water supply district for the purpose of providing fire hydrants to the subdivision. To eliminate future street openings, all underground utilities for fire hydrants, together with the fire hydrants themselves, shall be installed before any final paving of a street shown on the subdivision plat.

(6) Fire alarm signal devices. Where required by the Planning Board, the subdivider shall install fire alarm signal devices, including necessary ducts, cables and other connecting facilities, of a type and in a manner and location prescribed by the appropriate fire district or other municipal agency having jurisdiction.

(7) Shade trees. The Planning Board may require the planting of street trees. Such trees shall be of a hardwood variety indigenous to the neighborhood and shall be three and one-half (3½) to four (4) inches caliper at a height of four (4) feet above ground level. Where they are required by the Planning Board, such trees shall be planted along both sides of the street, within the street tree easement, and spaced approximately forty (40) feet on center.

(8) School bus pickup areas. The Planning Board may require that the subdivider reserve, clear, grade, pave and otherwise improve an area of such size and location as will provide a safe and suitable place for the use of children awaiting school buses. In general, the size of such area shall not be less than one hundred (100) square feet, and no dimensions shall be less than eight (8) feet. Such area shall be included within the street right-of-way and shall be maintained by the holder of fee title to the street. The layout and design shall be subject to Planning Board approval.

## § 118-25. Lots.

A. Lot arrangement. The lot arrangement shall be such that there will be no foreseeable difficulty, for reasons of topography or other conditions, in securing building permits to build on all lots in compliance with the Zoning Law, the County Health Department regulations and other applicable regulations. If a proposed subdivision includes land that is zoned for commercial or industrial purposes, the layout of the subdivision with respect to such land shall make such provision as the Planning Board may require for safe and convenient access to such automobile parking and loading and unloading spaces as may be required by the Zoning Law or otherwise for safe and convenient service access to such land.

B. Driveways. Approximate driveway locations shall be shown on the construction plans. The maximum driveway gradient to the building site shall not exceed ten percent (10%), and the intersection of driveways with the road shall be so oriented and graded that vehicles may use the driveways safely. The Planning Board may require that the applicant submit necessary topographic and design information to demonstrate that the lot layout will allow driveways that met these criteria and provide proper drainage.

C. Lot dimensions.

    (1) Lot area and dimensions shall comply with at least the minimum standards of the Zoning Law for the district in which they are located.[13] Where lots are more than double the minimum required area, the Planning Board may require that they be arranged so as to allow for further subdivision and the opening of future streets where necessary to serve such potential lots, all in compliance with the Zoning Law and these regulations. Where, in the opinion of the Planning Board, lots of larger than minimum size are required for purposes of proper drainage, water supply, waste disposal or the preservation of important ecological features, the Board may require such oversized lots as a condition of plat approval.

    (2) Side lot lines shall generally be at right angles to street lines (or radial to curving street lines) unless the Planning Board allows a variation from this rule to give a better street or lot arrangement. Dimensions of corner lots shall be large enough to allow for erection of buildings observing the minimum front yard setback from both streets.

    (3) Where a proposed subdivision includes an existing residence larger in size than can appropriately be placed on a lot of the minimum size permitted in the zoning district, the Planning Board may require that the lot be of such size and relationship to the proposed street system that the structure will be an appropriate and harmonious part of the subdivision.

D. Access from collector streets. Lots shall not, in general, derive access from a collector street, but shall front on a minor interior street. Where driveway access from a collector street may be necessary for two (2) or more adjoining lots, the Planning Board may require that such lots be served by a combined access drive in order to limit the possible traffic hazard on such street. Any such driveways, where permitted, shall be designed in such a way as to provide adequate and convenient area for the turnaround of vehicles so as to avoid requiring them to back into traffic on such streets.

---

13   Editor's Note: See Ch. 130, Zoning.

E.  Double-frontage lots. Lots fronting on two (2) streets, other than corner lots, shall be avoided except where deemed essential by the Planning Board in order to provide separation of residential development from major or collector streets or to overcome problems of topography or orientation. The Planning Board may require access limitations and/or buffer landscaping for such double-frontage lots where the Board determines that such measures would be appropriate.

F.  Water bodies. If a subdivision contains a water body or portion thereof, lot lines shall be drawn so as to distribute the entire ownership of the water body among the fees of the adjacent lots, unless the Planning Board approves an alternate plan whereby the ownership of and responsibility for the safety of the water body is so placed that it will not become a village responsibility. No more than twenty-five percent (25%) of the minimum lot area required under the Zoning Law may be satisfied by land which is under water or is defined as a wetland by the New York State Freshwater Wetlands Act.[14]

G.  Access across a watercourse. Where a watercourse separates the buildable area of a lot from the street by which it has access, provision shall be made for the installation of a bridge, culvert or other drainage facility, of a design approved by the Planning Board based upon, among other considerations, a recommendation of the Village Engineer, to provide satisfactory access across such watercourse for fire, police and other emergency equipment.

## § 118-26.  Reservations and easements.

All reservations and easements shall be clearly indicated on the final subdivision plat, along with appropriate notations indicating the rights which exist with respect to each such reservation and/or easement.

A.  Park reservations. [Amended 2-28-1994 by L.L. No. 1-1994]

(1)  The Planning Board may require that land be reserved within subdivisions or on individual parcels subject to site plan approval for a park or other recreational purpose. Before the Planning Board may approve a site plan containing residential units, such

---

14  Editor's Note: See Art. 24 of the Environmental Conservation Law, § 24-0101 et seq.

site plan shall also show, when required by such Board, a park or parks suitably located for playground or other recreational purposes. Such land cannot be required until the Planning Board has made a finding that a proper case exists for requiring that a park or parks be suitably located for playgrounds or other recreational purposes within the village. Such findings must include an evaluation of the present and anticipated future needs for park and recreational facilities in the village based on projected population growth to which the particular site plan will contribute. In the event that the Planning Board makes such a finding, but a suitable park or parks of adequate size to meet the requirements cannot be properly located on such subdivision plat or site plan, the Planning Board may require a sum of money in lieu thereof be paid to the village pursuant to the fee schedule adopted by the Board of Trustees. Any moneys required by the Planning Board in lieu of land for park, playground or other recreational purposes shall be deposited into a trust fund to be used by the village exclusively for park, playground or other recreational purposes, including the acquisition of property. In making such determination of suitability, the Planning Board shall assess the size and suitability of lands shown on the subdivision plat or site plan which could be possible locations for park or recreational facilities, as well as practical factors including whether there is a need for additional facilities in the immediate neighborhood.

(2) Minimum size. Areas for parks shall be of reasonable size for neighborhood playgrounds or other recreational uses. In general, not less than ten percent (10%) of the area of the subdivision or site plan providing for multifamily housing shall be set aside for these purposes, and sites so reserved for park purposes shall have an area of at least one (1) acre. The Planning Board may require the location of such areas along the boundary of a subdivision or parcel so that additional land may be added at such time as the adjacent property is subdivided or developed.

(3) Ownership of park area. The ownership of reservations for park purposes shall be clearly indicated on the plat and established in a manner satisfactory to the Planning Board so as to assure their proper future continuation and maintenance.

B.  Widening or realignment of existing streets. Where a subdivision borders an existing street which is narrower than the recommended right-of-way width as specified for such streets in these regulations, or where a subdivision borders an existing street planned for widening or realignment in such a way as to require the use of some land in the subdivision, the Planning Board may require the subdivision plat to show such areas, which shall be marked "reserved for street realignment (or widening) purposes." Land reserved for such purposes may not be counted in satisfying yard or area requirements of the Zoning Law.

C.  Utility and drainage easements.

(1)  Where topography or other conditions are such as to make impractical the inclusion of utilities or drainage facilities within street rights-of-way, perpetual unobstructed easements of at least twenty (20) feet in width shall be provided for such utilities or drainage facilities across properties outside the street lines and with satisfactory access to the street. Drainage easements shall extend from the street to the watercourse or other drainage facility and shall convey to the holder of fee title of the street the perpetual right to discharge stormwater runoff from the street and the surrounding area onto and over the affected premises by means of pipes, culverts or ditches, or a combination thereof, together with the right to enter said premises for the purpose of making such installations and doing such maintenance work as the holder of such fee title may deem necessary to adequately drain the street and the surrounding area.

(2)  When a proposed drainage system will carry water across private land outside the subdivision, appropriate drainage rights must be secured in a form satisfactory to the Village Attorney and suitable for recording in the office of the County Clerk.

D.  Slope easements. Where determined appropriate by the Planning Board, said Board may permit an embankment alongside a proposed street to extend beyond the normal right-of-way of such street, provided that a slope easement is granted conveying to the holder of fee title of the street the right to enter the premises for the purpose of maintaining such slope. Where the embankment slope is located on private land outside the subdivision, such easement shall be permitted only where the appropriate rights have been secured in a form

satisfactory to the Village Attorney and suitable for recording in the office of the County Clerk.

E.  Sight easements. Sight easements shall be provided across all street corners, outside the street right-of-way, within the triangular area formed by the nearest edges of street pavement and a straight line between two (2) points each seventy-five (75) feet back from the theoretical intersection of the edges of such pavement prolonged. The easements shall provide that the holder of fee title to the abutting streets shall have the right to enter the easement area for the purpose of clearing, pruning or regrading so as to maintain a clear line of sight in either direction across such triangular area between an observer's eye three and five-tenths (3.5) feet above the pavement surface on one street and an object one (1) foot above the pavement surface on the other. The initial establishment of clear-sight lines within the sight easement area shall be the responsibility of the subdivider.

F.  Easements for pedestrian access. The Planning Board may require, in order to facilitate pedestrian access from streets to schools, parks or neighboring areas, the reservation of perpetual unobstructed easements of at least ten (10) feet in width for such purposes and the construction of walkways thereon.

G.  Shade tree easements. The preliminary and final plat shall reserve an easement to permit the planting of shade trees within five (5) feet of the street right-of-way as specified in § 118-24D(7) of this chapter.

## § 118-27. Self-imposed restrictions.

The subdivider may place restrictions on any of the land contained within the subdivision which are greater than those required by the Zoning Law. Such restrictions shall be indicated on the final subdivision plat.

ARTICLE VI
Plat Details

## § 118-28.[15]  Preliminary plat.

The preliminary plat, prepared by a licensed land surveyor, shall be clearly marked "preliminary plat," shall be drawn to a convenient scale but not less than one (1) inch equals one hundred (100) feet and shall show the following information:

A. Proposed subdivision name or identifying title; name, address and endorsement of the property owner and subdivider (if other than owner); name and address of the surveyor and/or engineer preparing the plan; scale; approximate true North point; and date.

B. The location and dimensions of all property lines; the total acreage of the proposed subdivision; the location of any zoning, special district or municipal boundary lines affecting the subdivision; and the names of owners of record of properties adjoining and directly across the street from the proposed subdivision.

C. The location of all existing structures and pertinent features, including railroads, water bodies, watercourses, wetlands, rock outcroppings, wooded areas, major trees and stone walls, that may influence the design of the subdivision, plus accurate topography at a vertical contour interval of not more than two (2) feet. The topographic data shall be determined by field survey unless the Planning Board specifically waives this requirement and/or permits the substitution of topographic information obtained from other sources determined satisfactory for the particular case.

D. The location and status of existing streets, easements and rights-of-way (if any); proposals for the layout of new streets (including widths and approximate curve radii) and any proposed easements, rights-of-way and/or reservations.

E. The names of existing streets and proposed names for new streets.

F. The proposed arrangement of lots, including identifying section, lot and block numbers and approximate area and dimensions of each.

---

[15]  Editor's Note: Former § 118-29, Sketch plat, was repealed 2-28-1994 by L.L. No. 1-1994. This local law also provided for the renumbering of §§ 118-30 through 118-33 as §§ 118-28 through 118-31.

G.  Location, size and nature of any area proposed to be reserved for park purposes.

H.  A site location sketch, at a scale of one (1) inch equals three hundred (300) feet, showing the general situation of the applicant's property with respect to surrounding properties and streets.

I.  Where the preliminary plat includes only a portion of an applicant's contiguous holding, the applicant shall also indicate, on a sketch at a scale of not less than one (1) inch equals three hundred (300) feet, the probable future street system, lot arrangement and location of park and other reservations for the remaining portion of the tract. Such sketch shall be for the purpose of guiding the Planning Board in reviewing the proposed preliminary plat and shall include topographic data, at a vertical contour interval of not more than ten (10) feet, plus any other information determined necessary by the Planning Board.

J.  Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

K.  Planning Board approval block as follows:

"Approved as preliminary plat by the Pomona Planning Board

_____        _____
  Chairman                              Date"

## § 118-29. Preliminary construction plans.

The preliminary construction plans shall be drawn at the same scale as the preliminary plat and shall include the following information:

A.  Location and sizes of any existing water, sewer, storm drainage and other utility lines and structures within and nearby the proposed subdivision.

B.  The proposed system for the provision of water supply and fire protection facilities, sewage disposal, stormwater drainage and other utility services.

C.  Proposed street profiles and cross sections showing the approximate grade of proposed streets, the relationship of existing to proposed grades and the proposed vertical curvature along the center line of all

new streets. Where steep slopes exist, the Planning Board may require additional cross sections along the proposed street.

D. Location of all existing and proposed monuments and other subdivision improvements.

E. Existing and proposed contours at maximum vertical intervals of two (2) feet.

F. Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.

## § 118-30. Final subdivision plat.

The final subdivision plat shall be drawn clearly and legibly on transparent tracing cloth with black waterproof ink, at a scale no smaller than one (1) inch equals one hundred (100) feet. The sheet size shall not exceed thirty-six by forty-eight (36 x 48) inches. If the size of the proposed subdivision requires a drawing larger than this, two (2) or more sheets may be submitted, with match lines clearly indicated, and an index map shall be prepared on the same size sheet. The final plat shall contain the following information:

A. Proposed subdivision name or identifying title; name and address of owner of record and of subdivider (if other than owner); identification and seal of the registered engineer or licensed land surveyor who prepared the plat; names of the owners of record of adjoining properties and of properties directly across the street; graphic scale; approximate true North point; and date.

B. The location and dimensions of all boundary lines of the proposed subdivision and all existing and proposed streets, lot lines, easements and rights-of-way, with sufficient data to readily determine the location, bearing and length of all such lines and to reproduce such lines upon the ground.

C. The names of all existing and proposed streets.

D. The locations of all water bodies and watercourses.

E. The location of all existing buildings, including identification of all buildings to be removed as a condition of plat approval.

F.  The total acreage included in the entire subdivision, and the identification number and acreage of all lots and land reservations within the proposed subdivision.

G.  Location of all existing and proposed monuments.

H.  A site location map, at a scale of one (1) inch equals three hundred (300) feet, showing the location of the subject property with respect to neighboring properties and streets.

I.  Notations explaining any drainage, sight slope, road widening, park area or other reservations or easements, including any self-imposed restrictions or covenants.

J.  Lot numbers as directed by the Village Assessor.

K.  Endorsement of approval by the Rockland County Health Department or waiver of jurisdiction.

L.  The following note: "No building permits shall be issued until such time as all required public improvements, except final road wearing courses and sidewalks, if required, are completed to the satisfaction of the Planning Board. Thereafter, certificates of occupancy for such model homes and building permits and certificates of occupancy for additional lots other than the final lots may be issued upon the applicant's delivering to the Village of Pomona, for each lot, in form satisfactory to the Village Attorney, a performance bond or other security agreement in an amount equal to the total cost of the final road wearing course and sidewalks, if required, divided by the number of lots in the subdivision, or upon the applicant's depositing such amount of cash with the Village of Pomona. No building permits shall be issued for the final ten percent (10%) of all lots until all required public improvements are fully completed to the satisfaction of the Village Engineer and dedicated to the Village of Pomona." [Amended 2-28-1994 by L.L. No. 1-1994]

M.  Endorsement of owner as follows:

"Approved for filing:

_____     _____
Owner                                        Date"

N.  Form for endorsement by Planning Board Chairman as follows:

"Approved by resolution of the Pomona Village Planning Board Chairman

_____     _____
    Chairman                       Date"

O.  Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.


## § 118-31. Final construction plans.

Final construction plans and profiles shall be prepared for all proposed streets and other required improvements. Plans shall be drawn at the same scale as the final plat and on the same size sheets, but not on the same sheets. The following information shall be shown:

A.  Plans and profiles showing the location and a typical cross section of street pavements, including curbs and gutters, sidewalks, manholes and catch basins; the location of street trees, streetlighting and street signs; the location, size and invert elevations of existing and proposed sanitary sewers, stormwater drains and fire hydrants; the location and size of all water, gas or other underground utilities or structures; and the location and design of any other required improvements.

B.  Profiles showing existing and proposed elevations along the center line of all streets. Where a proposed street intersects an existing street or streets, the elevation along the center line of the existing street or streets within one hundred (100) feet of the intersection shall be shown.

C.  The Planning Board may require, where steep slopes exist, cross sections showing existing and proposed elevations of all new streets every one hundred (100) feet at five (5) points on a line at right angles to the center line of the street, said elevation points to be at the center line of the street, each property line and points twenty-five (25) feet inside each property line.

D.  Location, size, elevation and other appropriate description of any existing facilities which will be connected to proposed facilities and utilities within the subdivision.

E.  Where the design of the subdivision requires the regrading of land, the regraded contours shall be shown along with estimates of the quantity

of material to be added or removed and the proposed measures to be implemented by the subdivider to rehabilitate the disturbed area or areas.

F.  Title of all sheets; name, address, signature and seal of licensed engineer preparing the construction plans; the date prepared, including revision dates if any; approximate true North point; scale; and consecutive numbering as "sheet ..... of ......"

G.  A notation as follows:

"All specifications, materials and methods of construction to be in accordance with the village construction standards and specifications and with the requirements of the Planning Board resolution of approval dated ....................., 19 ........."

H.  A notation of approval on all sheets as follows:

"Approved by:

_____          _____
Owner                                                                    Date"

    and

_____          _____
Planning Board                                                     Date"

I.  Such additional information as may be required by these regulations, the Zoning Law or the Planning Board.


## § 118-32.  Site plan approval. [Added 2-28-1994 by L.L. No. 1-1994]

A.  Planning Board approval. The Planning Board shall have the authority to impose such reasonable conditions and restrictions as are directly related to and incidental to a proposed site plan. Additionally, the Planning Board may waive any requirements that are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to a particular site plan. Where a proposed site plan does not comply with zoning regulations, application may be made to the Zoning Board of Appeals for an area variance without the necessity of a decision or determination of the Code Enforcement Officer.

(1)  Approval of a site plan by the Planning Board is required for the development or redevelopment of any building, structure, lot or

portion thereof for a new use, the expansion or relocation of any existing use or any change of use of a property or structure. Where site plan approval is required, applications for the issuance of a building permit or certificate of occupancy must be accompanied by a copy of the approved site plan.

(2) All site development and all use of the property shall be in conformance with the approved site plan and such additional standards and safeguards as the Planning Board may impose as a condition of approval. No certificate of occupancy shall be issued until all such requirements have been met. Continued performance with the approved final site plan shall be a requirement of the continuing validity of any such certificate of occupancy.

B. General standards. The Planning Board shall not approve a site plan unless it shall find that such plan conforms to the requirements of this chapter, as well as to other applicable laws and regulations. In reviewing the site plan, the Planning Board shall also take into consideration the public health, safety and general welfare and shall set appropriate conditions and safeguards which are in harmony with the general purpose and intent of this chapter, particularly in regard to achieving the following:

(1) Traffic access. The number, location and design of all proposed driveways, in terms of their width, grade, alignment, visibility and relationship to the existing street system and neighboring properties and land uses shall be such that maximum safety will be achieved and function properly provided for.

(2) On-site circulation and parking. Adequate and convenient off-street parking and loading spaces shall be provided to prevent parking in public streets of vehicles belonging to any persons connected with or visiting the proposed use, and the interior circulation system shall be adequate to provide safe access to all required off-street parking, including access for the handicapped.

(3) Pedestrian circulation. An adequate and safe pedestrian circulation system shall be provided to permit safe access to uses on the site from the street and from all parking areas.

(4) Landscaping and buffering. All parking, loading and service areas shall be screened in a reasonable manner at all seasons of the

year from the view of adjacent residential lots and streets, the general landscaping of the site shall be designed in an attractive manner and, wherever possible, desirable natural features existing on the site shall be protected and retained.

(5) Lighting. Outdoor lighting shall be provided on the site to assure the safe movement of vehicles and persons and for security, and such lighting shall not create an undesirable impact on neighboring properties and streets.

(6) Drainage. The proposed stormwater drainage system shall be adequate to prevent any increase in the rate of surface runoff or otherwise contribute to downstream flooding during a storm of any magnitude up to and including a one-hundred-year-frequency storm.

(7) Water and sewage. The proposed systems for water supply and sewage collection and disposal on the site shall be adequate, and facilities shall be sufficient to handle the increase in service.

(8) Solid waste. Adequate provisions shall be made for the storage, collection and disposal of solid waste, and such facilities shall not be permitted to adversely affect neighboring properties or public facilities.

(9) Building design. The height, location and size of the proposed buildings shall be in conformity with the requirements of this chapter, and all such buildings and other structures shall harmoniously relate to each other, the site and neighboring properties.

(10) Signage. All proposed signs, including on-site directional signs and building signs, shall meet the requirements of this chapter, shall be adequate to provide reasonable information to the public and shall be in harmony with the design of the site and buildings and with neighboring properties.

(11) Other public needs. Other public needs and requirements, including the provision of recreational facilities, the protection of the environment, etc., shall also be properly and adequately provided for.

C. Procedure. The applicant shall submit to the Planning Board two (2) copies of a completed site plan application form and twelve (12)

copies of a site plan. The site plan shall show the information listed below, drawn to a scale of one (1) inch equals thirty (30) feet or larger:

(1)   Title of development, date, revision dates, if any, North point, scale, name and address of record owner and of applicant, if other than owner, and of the engineer, architect, landscape architect or surveyor preparing the site plan.

(2)   Area and boundaries of the subject property, section and lot numbers of the subject property, adjacent zoning and special district boundaries, building or setback lines as required in this chapter, lines of existing streets and adjoining lots as shown on the tax maps and reservations, easements and other areas dedicated to public and special use.

(3)   The names and mailing addresses of all owners of record of all adjacent properties.

(4)   Location and dimensions of all existing buildings, retaining walls, fences, rock outcrops, wooded areas, single trees with a diameter of eight (8) inches or more measured three (3) feet above the base of the trunk, watercourses, marshes, water supply, sanitary sewerage, storm drainage and any other utility facilities and of any other significant existing features on the premises. All significant existing features within twenty (20) feet of all property lines shall also be shown.

(5)   Existing and proposed contours at a maximum vertical interval of two (2) feet.

(6)   Proposed use or uses of all land and buildings and, where only a portion of a property is to be occupied by the development, the boundaries and area of such portion (including required screening and setback areas).

(7)   Outline and elevations of the pavement of abutting streets and of proposed means of vehicular and pedestrian access to and from the site.

(8)   Location, layout and numbers of any proposed off-street parking and loading spaces.

(9)   Location and layout of any proposed recreation areas.

(10)  Proposed finished floor elevation of buildings, finished grade of walls, pavements and storm drains.

(11)  Detailed construction plans of proposed retaining walls, steps, ramps, paving and drainage structures.

(12)  Expected storm drainage loads.

(13)  Estimate of all earthwork, including the quantity of any material to be imported to or removed from the site, or a statement that no material is to be removed or imported.

(14)  Location and dimensions of all proposed water supply, sanitary sewerage, storm drainage and other utility lines and equipment, including connections to existing facilities.

(15)  Detailed landscaping plan including type, size and location of all materials used and plans for buffer screening and fencing.

(16)  Proposed location, type, design, size, color and illumination of all signs.

(17)  Proposed type, design, mounting height, location, direction, power and timing of all outdoor lighting.

(18)  Conditions specified by the Zoning Board of Appeals in the approval of any variance or special permit related to the subject property.

D.  Environmental review. Where required by the New York State Environmental Quality Review Act (SEQRA),[16] additional information concerning the environmental impact of the proposed development may be required as a part of the site plan application.

E.  Review by other agencies.

(1)  The Planning Board shall submit copies of the site plan to the Village Engineer, Code Enforcement Officer and Architectural Review Board or other village agencies and officials as it deems appropriate, all of which shall submit written report within thirty (30) days of the date of forwarding for review and report. The Planning Board may submit copies to the following agencies for information, review and comment regarding facilities under their

---

[16]  Editor's Note: See Article 8 of the Environmental Conservation Law.

jurisdiction, and to any other county, state or federal agency with jurisdiction:

    (a)  The appropriate fire district.

    (b)  Rockland County Drainage Agency.

    (c)  New York State Department of Transportation.

  (2)  The Planning Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within five hundred (500) feet of the boundary of any city, village or town, or from the boundary of any existing or proposed county or state parkway, thruway, expressway, road or highway, or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any state-owned land on which a public building or institution is situated, and any special permit or variance affecting such use or property within a distance of five hundred (500) feet. The Rockland County Planning Board shall render its decision within thirty (30) days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such thirty-day period or such longer period as has been agreed upon by it and the Planning Board, the Planning Board may act without such report. If the Rockland County Planning Board disapproves the proposal, or recommends modifications thereof, the Planning Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one (1) of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven (7) days after final action by the Planning Board, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

  F.  Public hearing. The time within which public hearings are required to be held by the Planning Board shall be calculated from the date of the completion of procedures required, if any, by the New York State

Environmental Quality Review Act (SEQRA).[17] The Planning Board shall hold a public hearing within sixty-two (62) days after receipt of a complete site plan application by the clerk of the Planning Board. Such hearing shall:

(1)   Be advertised at least once in the official village newspaper at least five (5) days before such hearing.

(2)   Be noticed, by certified mail, return receipt requested, to each owner of the property within five hundred (500) feet of the perimeter of the subject property as indicated on the application for site plan approval and at least ten (10) days prior to the public hearing.

(3)   Be advertised by the installation of four (4) posters, furnished by the Planning Board Secretary, on the four (4) closest public roads in visible locations surrounding the proposed site at least ten (10) days prior to the public hearing.

G.   The Planning Board shall, thereafter, approve, with or without modification, or disapprove such site plan within sixty-two (62) days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Planning Board. Within five (5) days of the approval of the site plan, it shall be certified by the clerk of the Planning Board as having been approved, a copy filed in the clerk's office and a certified copy mailed to the owner. Notwithstanding the foregoing provisions, the time in which the Planning Board must take action on the site plan may be extended by mutual consent of the applicant and the Planning Board.

H.   Special permit applications. Where special permit approval is required for the proposed use under this local law, insofar as practicable the special use permit and site plan approval procedures shall run concurrently.

I.   As-built plan.

(1)   Upon compliance of any development or redevelopment pursuant to an approved final site plan, and prior to the issuance of a certificate of occupancy, the applicant shall submit to the Code Enforcement Officer an as-built plan prepared and certified by a

---

17   Editor's Note: See Article 8 of the Environmental Conservation Law.

licensed engineer or surveyor showing the location of all site improvements as constructed. Such plan shall be based on a field survey.

(2)   Said as-built plan shall be reviewed by the Code Enforcement Officer to determine if it is in compliance with the Zoning Code, the approved final site plan and related requirements of the Planning Board and any special permit or variance. Where the Code Enforcement Officer determines that the as-built plan is not in compliance, he shall not issue a certificate of occupancy unless either the construction is corrected or a revised site plan is submitted to and approved by the Planning Board.

J.   Field changes. During construction, the Code Enforcement Officer may authorize or require, at his own determination or upon the request of the applicant, minor adjustments to the approved site plan when such adjustments are necessary in light of technical or engineering considerations the existence or materiality of which was first discovered during actual construction. Such minor adjustments shall be consistent with the spirit and intent of the approved site plan. Where unforeseen conditions are encountered which require any material change to an approved site development plan, or where the developer wishes to modify the approved plan for other reasons, an amended site plan shall be filed with the Planning Board for review and approval in accordance with the same procedures required for initial applications.

K.   Expiration of approval. Approval of any final site plan shall expire unless a building permit and certificate of occupancy are applied for within a period of eighteen (18) months from the date of the signing of the final site plan by the Planning Board, except where the staging of development over a longer period of time has been specifically provided for at the time of site plan approval. The Planning Board may extend the site plan approval for not more than two (2) six-month periods.

L.   Fees. Fees for site plan approval are listed in the fee schedule (Chapter 67 of this Code) as adopted by the Board of Trustees. If a site plan or any portion thereof is revised to the extent that it warrants Planning Board reconsideration, a new application fee shall be required. The amount of such fee shall be determined by the Planning

Board based upon the nature and extent of the changes proposed but shall not exceed the original application fee.

# APPENDIX

STREET SPECIFICATIONS

Chapter A134

## STREET SPECIFICATIONS

§ A134-1.  Purpose.

§ A134-2.  Certification by engineer.

§ A134-3.  Preparation and submission of street plan.

§ A134-4.  Performance bond.

§ A134-5.  Maintenance bond.

§ A134-6.  General requirements.

§ A134-7.  Construction specifications.

§ A134-8.  Development of right-of-way; layout.

§ A134-9.  Clearing and grubbing.

§ A134-10. Excavation, filling and rough grading.

§ A134-11. Storm drainage design.

§ A134-12. Drainage pipe excavation, laying and backfilling.

§ A134-13. Drainage and culvert pipe.

§ A134-14. Catch basins and curb inlets.

§ A134-15. Fine grading.

§ A134-16. Foundation course; granular material.

§ A134-17. Base course.

§ A134-18. Surface course.

§ A134-19. Curbs.

§ A134-20. Driveways.

§ A134-21. Sidewalks.

§ A134-22. Intersections.

§ A134-23. Street name signs.

§ A134-24. Monuments.

§ A134-25. Easements.

§ A134-26. Open ditches.

§ A134-27. House drains.

§ A134-28. Culs-de-sac.

§ A134-29. Grades and vertical curves.

§ A134-30. Interpretation.

Summary of Street Specifications

Drawings and Diagrams

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 1-18-69; amended in its entirety at time of adoption of Code (see Ch. 1, General Provisions, Art. I). Subsequent amendments noted where applicable.]

GENERAL REFERENCES

Streets and sidewalks generally — See Ch. 115.
Subdivision of land — See Ch. 118.
Zoning — See Ch. 130.

## § A134-1. Purpose.

It is the purpose of these specifications to establish minimum acceptable standards of street construction for subdivisions in the Village of Pomona, including but not limited to width, design, drainage, construction of base and pavement, curbs and sidewalks, monuments and signs. Dedication of the right-of-way will not be accepted until the developer's professional engineer and the Village Engineer shall have certified to the Village Board in writing that the construction of the street or streets has been completed in accordance with the approval plans and the specifications which follow.

## § A134-2. Certification by engineer.

In his written certification, as required above, the developer's professional engineer shall state clearly that he or his authorized representative has inspected all phases of the street construction and that all work has been completed in accordance with the approved plans and these specifications.

## § A134-3. Preparation and submission of street plan.

The plan of the proposed street shall be prepared by a qualified engineer properly licensed by the State of New York. The plan shall clearly define the limits of the proposed right-of-way and shall include the location, widths, profiles and grades of proposed roadways, storm drainage, including culverts and other drainage structures, and the location of easements and utilities. The plan shall first be submitted to the Village Engineer and then to the Planning Board for review and approval under the applicable subdivision regulations of the village.[1] Such plans so submitted shall not be altered or amended after having been approved by the Planning Board, unless amended plans are resubmitted and approved as above. However, the developer shall, at his own expense, provide additional storm drainage facilities as may be ordered by the Village Engineer if, during the progress of the work, in the opinion of the Village Engineer, such additional structures or facilities are necessary to assure the durability of pavement, the future maintenance of the right-of-way or the welfare or safety of the public, except that the Planning Board may vary the requirements of such order where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such order, unless such variance conflicts with the provisions of a town or county official drainage map, in which event the official map shall prevail. If construction has not been started within one (1) year from the date of final approval by the Planning Board, plans shall be resubmitted and approved as above.

---

[1] Editor's Note: See Ch. 118, Subdivision of Land.

**§ A134-4. Performance bond.**

A. Prior to the start of construction of any improved street, the developer shall deposit with the Village Clerk a performance bond of acceptable surety or shall deposit with the chief fiscal officer of the village acceptable negotiable government bonds, cash or certified check or letter of credit drawn upon a national or state bank, payable at sight to the Village Board, guaranteeing:

   (1) That within two (2) years the developer will complete all the construction within the right-of-way, including roadway, shoulders, sidewalks, curbs, gutters, storm drainage, etc., and all utilities, including hydrants and house connections for each lot, in accordance with the approved plan and these specifications.

   (2) That, upon certification by the developer's professional engineer and by the Village Engineer that the construction of the street has been completed in accordance with the approved plans and specifications, the developer will dedicate the completed street to the village for use as a public highway free and clear of all liens and encumbrances. This guaranty of dedication shall apply to the owner of the property as well as the developer where the two are not synonymous.

B. As guaranty for the performance of the above requirements, the developer shall deposit as heretofore set forth a surety bond, letter of credit, negotiable government bond, cash or certified check, the minimum total amount of which shall be determined by applying to the quantities or dimensions shown on the approved plan the following rates per unit:

§ A134-4                    STREET  SPECIFICATIONS                    § A134-4

## TABLE OF RATES FOR COMPUTING TOTAL AMOUNT
## OF THE PERFORMANCE BOND

|  | 1987 Base Price* |
|---|---|
| For each linear foot of | |
|    Suburban street | $    75.00 |
| For each cubic yard of rock excavation | 20.00 |
| For each linear foot of storm drain pipe | |
|    15-inch round or 18 x 11-inch oblate | 18.50 |
|    18-inch round or 22 x 13-inch oblate | 20.00 |
|    21-inch round or 25 x 16-inch oblate | 25.00 |
|    24-inch round or 29 x 18-inch oblate | 30.00 |
|    30-inch round or 36 x 22-inch oblate | 36.00 |
|    36-inch round or 43 x 27-inch oblate | 50.00 |
|    42-inch round or 50 x 31-inch oblate | 60.00 |

Rates for pipe over 42 inches in diameter, for concrete culverts and for bridges shall be established by the Planning Board.

| For each catch basin | |
|---|---|
|    Up to 5 feet in depth | 1,500.00 |
|    For each additional foot to 10 feet | 100.00 |
|    For each additional foot over 10 feet | 100.00 |
| For each vertical foot of manhole | 200.00 |
| For each concrete headwall | 1,500.00 |
| For each block headwall | 1,500.00 |
| For each monument | 150.00 |
| For each street name sign | 300.00 |

*The escalation price over the 1987 base price will be determined by the Planning Board at time of approval.

## § A134-5.  Maintenance bond.

A. Prior to acceptance by the village of the dedication of the street as guaranteed by § A134-4A(2) above, the developer shall deposit with the Village Clerk a maintenance bond of acceptable surety or shall deposit with the chief fiscal officer of the village acceptable negotiable government bonds, cash or certified check or letter of credit drawn upon a national or state bank, payable at sight to the Village Board, guaranteeing that, for a period of one (1) year from the date of acceptance of the dedication of the street by the village, the developer will maintain the street to the standard of construction set by these specifications, normal wear and tear excepted. This shall be interpreted to mean that the developer will, at his own expense, repair and make good any defects or damage which may develop during this maintenance period as a result of faulty construction within the right-of-way or as a result of other construction by the developer off the right-of-way. During the maintenance period the village shall be responsible for snow and ice control, street cleaning, cleaning of culverts and catch basins and other work of a similar routine nature, provided that such work has in no way been caused by the developer's operations.

B. The amount of the maintenance bond shall be at least equal to ten percent (10%) of the original amount of the performance bond.

C. Subsequent to the acceptance of the dedication of the street and after receipt of the maintenance bond, the Village Board shall release the performance bond, letter of credit or other security.

## § A134-6.  General requirements.

A. The proposed street will serve subdivisions with lots one (1) acre in size.

B. The proposed street shall not be or be reasonably expected to become a through, commercial or industrial street.

C. The proposed street shall be a dead-end, loop or other minor street within a development as distinguished from a principal collector street.

### § A134-7.  Construction specifications.

A.  The drawings and diagrams attached hereto show cross sections of subdivision streets. These give the required design, dimensions and construction details.[2]

B.  The engineer shall design and construct streets which shall conform to both the specific and the general specifications.

### § A134-8.  Development of right-of-way; layout.

The developer shall establish and clearly mark on site the limits of the road right-of-way and easments, the center line and grades of the road pavement and the location and elevation of drainage and drainage structures in accordance with the approved plans. Such markers shall be maintained at the developer's expense until the construction of drainage, road pavement, curbs, sidewalks and shoulders has been completed, inspected and approved by the Village Engineer.

### § A134-9.  Clearing and grubbing.

A.  The developer shall clear the entire area within the limits of:

(1)  The road right-of-way.

(2)  Stream channels and ditches.

(3)  Easement areas.

B.  All roots and stumps shall be grubbed, excavated and removed from the above areas.

### § A134-10. Excavation, filling and rough grading.

A.  The developer shall complete the shaping of the road right-of-way, streams and ditches and easement areas to the line and grade as shown on the approved plan and as otherwise may be directed by the Village Engineer. All unsuitable or unstable materials shall be completely excavated and removed from the right-of-way and all

---

2  Editor's Note: The drawings and diagrams are included at the end of this chapter.

rock or boulders larger than six (6) inches in diameter shall be excavated at least eight (8) inches below the finished subgrade of road pavement, drainage or drainage structures, curbs and sidewalks.

B. Where fills are necessary to complete the required line and grade or to backfill trenches or other excavation, the materials incorporated in the work shall be acceptable to the Superintendent of Highways and shall be placed in layers not exceeding eight (8) inches in depth, each layer to be thoroughly compacted by rolling with a three-wheel, sheepsfoot, pneumatic tired or padded wheel roller, or by impact rammer or vibrator equipment in areas inaccessible to power rollers. All compaction shall continue until the fills are firm and unyielding.

C. The rough grade of the road pavement, curb and sidewalk areas shall be completed within one (1) inch above or below finished subgrade as shown on the approved cross section of the right-of-way improvement.

D. Earth shoulders and flow line of ditches and gutters shall be maintained in satisfactory condition at the developer's expense at all times during the course of construction of the subdivision and until such time as the Board of Trustees has accepted dedication of the right-of-way.

## § A134-11. Storm drainage design.

The storm drainage system shall be designed in accordance with the criteria established by the County of Rockland based on its 1959 county-wide drainage study. The minimum grade of any drainage pipe shall be one percent (1%).

## § A134-12. Drainage pipe excavation, laying and backfilling.

A. The widths of the trench in which the pipe is placed shall be sufficient to permit thorough tamping of the backfill under the haunches and around the pipe. Where rock, in either boulder or ledge formation, is encountered, it shall be removed below grade and replaced with suitable materials in such a manner as to provide an

earth cushion having a thickness under the pipe of not less than eight (8) inches; and where there are excessively heavy fills over the top of the pipe, the Village Engineer may specify that an earth cushion up to one-half (½) inch in thickness per foot of fill be placed over the top of the pipe. In no case shall the top of any drainage pipe be less than eighteen (18) inches below the finished grade of the pavement. Where soft, spongy or other unstable soil is encountered at the grade established, all such unstable soil under the pipe and for a width of one (1) diameter on each side of the pipe shall be removed and replaced with run-of-bank gravel or other acceptable material. In all cases the bed shall be thoroughly compacted and shall provide a firm foundation for the pipe.

B.  Pipe shall be laid to true line and grade on the prepared bed of the trench. All connections for making field joints in corrugated metal pipe shall consist of corrugated metal bands so constructed as to lap on equal portions of each of the culvert sections to be connected. All joints in making field connections of reinforced concrete pipe shall be filled with portland cement mortar.

C.  Backfilling of trenches shall be done in accordance with § A134-10B above.

D.  Any additional drainage facilities not shown on the approved plan and which may be ordered by the Village Engineer shall be constructed by the developer at the developer's expense and in accordance with these specifications.

## § A134-13. Drainage and culvert pipe.

A.  Storm drain and culvert pipe shall be reinforced concrete with a minimum diameter of fifteen (15) inches.

B.  Reinforced concrete pipe shall conform to the standard specifications for reinforced concrete culvert pipe adopted by the American Society for Testing Materials and designated as C 76-59T Class III.

C.  All reinforced concrete pipe shall be manufactured with slip joints or bell and spigot joints.

D.  Each piece of reinforced concrete pipe shall be marked with the specification number and the date of manufacture.

## § A134-14. Catch basins and curb inlets.

The specifications and drawings at the end of this chapter show the minimum acceptable construction for typical catch basins and curb inlets. Whenever, in the opinion of the Village Engineer, ground conditions or other circumstances require it, larger or heavier materials, additional materials, reinforcing or other modifications and improvements in design and construction shall be made as directed by the Village Engineer any time prior to paving.

A. Location. Catch basins shall be constructed at all points of change of slope or alignment and at all junction points. At no time shall catch basins be spaced farther apart then three hundred (300) feet on slopes less than three percent (3%), two hundred fifty (250) feet on slopes from three percent (3%) to six percent (6%) and two hundred (200) feet on slopes over six percent (6%) in steepness.

B. Excavation and concrete base. The hole for a catch basin shall be excavated to a depth of thirty-five (35) inches below the designated elevation of the invert of the effluent pipe. Crushed stone or run-of-bank gravel to a uniform depth of nine (9) inches leveled and compacted over the entire area under the base shall be laid in the hole. On this stone or gravel shall be laid an eight-inch-thick slab of one-to-two-to-four-mix portland cement concrete. The slab shall extend four (4) inches beyond the outside of the walls of the catch basin on every side. The slab shall be smooth and level. Through the center of the slab there shall be an opening for drainage one (1) square foot in area, which shall be protected and kept clean of concrete, mortar or other obstructing materials during construction.

C. Walls. Only precast catch basins shall be used.

D. Curb inlets.

(1) All catch basins shall be capped with curb inlets having a minimum frame opening of thirty by forty-eight (30 x 48) inches. Curb inlets shall be similar or equal to either Campbell Foundry Company Pattern No. 2501 or Campbell Foundry Company Pattern No. 2541 (stream flow grating), as designated by the Superintendent.

(2)  Curb inlets shall be installed so that the top of the grating is two (2) inches below the finished grade, and the pavement shall be sloped toward the inlet as shown on the drawings at the end of this chapter.

(3)  Curb-front openings on all curb inlets shall have, centered in the opening, a solid horizontal bar to prevent the ingress of small children. This bar shall be part of the casting or solidly welded in place subsequent to manufacture.

E.  Steps. Catch basins having a depth greater than forty-eight (48) inches from the finished surface to the top of the concrete base shall be provided with steps. Steps shall be of wrought iron having a minimum diameter of three-fourths (¾) inch, which shall be hot-bent to shape and hot-dipped galvanized after bending. They shall be solidly set in the masonry at the time of construction and shall extend all the way through the wall. The steps shall extend four and one-half (4 ½) inches inside the wall of the catch basin. The top step shall be not more than eighteen (18) inches below the finished surface, and thence to the base, steps shall be no more than eighteen (18) inches apart.

## § A134-15. Fine grading.

A.  Before fine grading or construction of curbs and sidewalks is started, all storm and sanitary sewers and all utilities, including house connections and hydrants, shall have been installed and all fill and backfill shall have been thoroughly compacted to the satisfaction of the Village Engineer.

B.  Also before fine grading or construction of curbs and sidewalks is started, all heavy trucking for building or site construction purposes shall have been completed.

C.  After completion of the rough grade and prior to the laying of the foundation course, the subgrade shall be shaped to line and grade and thoroughly compacted with an approved self-propelled roller weighing not less than ten (10) tons. All hollows and depressions which develop under rolling shall be filled with acceptable granular material and again rolled, this process to be continued until no

depressions develop. The subgrade shall not be muddy or otherwise unsatisfactory when the foundation course is laid upon it.

D.  Any soft or unstable portions of the subgrade which develop under the roller shall be completely excavated and removed from the right-of-way and shall be replaced with acceptable granular material and the area regraded and compacted as above.

E.  Fine grade shall conform to the prescribed width of pavement and shall extend equidistant from the center line of the road right-of-way and shall conform to the typical cross section of the road pavement and to the approved line and grade.

## § A134-16. Foundation course; granular material.

A.  After the fine grade and all curbs have been constructed to the satisfaction of the Village Engineer, the developer shall furnish and place a foundation course of approved run-of-bank gravel, crusher-run stone or crusher-run gravel, to the depths as called for in these specifications. All materials acceptable for this course shall be hard, durable and sound and shall be well graded from coarse to fine, the maximum diameter of the large particles not to exceed two-thirds (2/3) of the thickness of the compacted foundation course, and ninety to one hundred percent (90 to 100%) by weight of the particles shall be of such size as will pass through a four-inch square hole, not more than seventy percent (70%) by weight to pass the No. 40 mesh sieve and not more than ten percent (10%) by weight to pass the No. 200 mesh sieve.

B.  The materials shall be placed on the finished subgrade by means of mechanical spreaders and shall be thoroughly compacted by rolling with a self-propelled ten-ton roller. Water shall be added to the materials in such amounts as the Village Engineer may consider necessary for proper compaction. After compaction, the course shall be true to grade and cross sections, and any depressions shall be eliminated by the use of additional granular materials, thoroughly rolled in place. In all cases, the foundation course must be so thoroughly compacted that it will not weave under the roller.

## § A134-17. Base course.

A. After the foundation course has been completed as the applicable sections of these specifications dictate and to the satisfaction of the Village Engineer, the developer shall construct an asphaltic cement base course four (4) inches thick as called for in these specifications. Since it is imperative that this course conform accurately to the line, grade and cross section specified and as called for on the plans, the developer shall set up pins and lines or other controlled devices to attain the desired accuracy. Rolling shall begin at the sides or curbline and continue towards the center and shall continue until there is no movement of the course ahead of the roller.

B. The developer shall install an asphaltic concrete base course to a four-inch compacted thickness. After the foundation course has been completed to the satisfaction of the Village Engineer, asphaltic concrete conforming to the current specifications of the NYSDPW of 1957 for item 45SX, bottom course asphaltic concrete Type 1A, shall be uniformly spread by a self-propelled mechanical spreader equipped with tamping bars and heating unit and in sufficient depth so as to provide a finished compacted thickness after rolling equal to that specified above. The base material in place shall be thoroughly rolled with a ten-ton roller.

C. No trucking or construction traffic shall be permitted on any base course until the wearing surface has been constructed.

## § A134-18. Surface course.

A. After the stone or asphaltic concrete base course has been completed to the satisfaction of the Village Engineer, a two-course bituminous concrete wearing course shall be constructed conforming to the NYSDPW specifications of 1957 for item 51M, asphalt concrete.

B. After the base course has been thoroughly cured and cleaned of all foreign material, a bituminous concrete binder course shall be uniformly spread by a self-propelled mechanical spreader with tamping bars and heating unit in sufficient depth so as to provide a finished compacted thickness after rolling of not less than one and

one-half (1½) inches. The course in place shall be thoroughly rolled with a ten-ton roller.

C. After the binder course has been completed and thoroughly cleaned of foreign material and a tack coat of asphalt emulsion applied to the surface at the rate of one-tenth (1/10) to one-twentieth (1/20) gallon per square yard in the event that the binder course has been subject to traffic for an extended period of time, a final wearing course of fine bituminous concrete shall be uniformly spread by a self-propelled mechanical spreader equipped with tamping bars and heating unit and in sufficient depth so as to provide a finished compacted thickness after rolling of not less than one and one-half (1½) inches. The fine wearing course in place shall be thoroughly compacted with a two- or three-wheel tandem roller weighing approximately ten (10) tons.

D. Extreme care shall be exercised in the placing of bituminous concrete to ensure that all longitudinal joints shall be lapped in the placing of adjoining strips and that all lateral joints are trimmed before continuing with the placing of additional materials on that strip.

## § A134-19. Curbs.

A. Six-inch portland cement concrete curbs shall be constructed on both sides of the street as shown on Figure 4 attached hereto and to the dimensions and specifications shown on Figure 8.[3]

B. Three-inch porous tile shall be laid in coarse washed sand under all curbs as shown on Figure 8. This underdrain shall be so graded that any water under the curbs will drain to the nearest catch basin where the underdrain shall be connected as shown on Figure 7.[4]

C. Concrete shall be finished and cured to the satisfaction of the Village Engineer. The developer shall, at his own expense, replace any curbing damaged before dedication and any curb which proves defective or is damaged by his operations during the two-year maintenance period.

---

[3]  Editor's Note: Figures 4 and 8 are included at the end of this chapter.
[4]  Editor's Note: Figures 8 and 7 are included at the end of this chapter.

## § A134-20. Driveways.

A.  The developer shall so design, lay out and construct all driveways both within and without the limits of the right-of-way that the latest models of modern cars may enter and leave the right-of-way without difficulty.

B.  Driveway entrances.

(1)  The developer shall construct all driveway entrances according to the dimensions and specifications shown on Figure 10 attached hereto.[5]

(2)  All entrance construction shall be finished and cured to the satisfaction of the Village Engineer.

(3)  All necessary driveway entrances within the subdivision shall be constructed at the time of construction of the curbs.

## § A134-21. Sidewalks.

The developer shall construct four-inch-thick reinforced portland cement concrete sidewalks on both sides of streets as shown on Figure 4.[6] Concrete shall be of a four-thousand-five-hundred-pound-per-square-inch mix, air-entrained with Durex or equal, one (1) course, properly screened and finished to true grade with wooden float, and shall be cured, all to the satisfaction of the Village Engineer.

## § A134-22. Intersections.

The developer shall construct all street intersections in accordance with Figure 12 except in the case of a new street intersecting an existing narrow road, when such construction shall be modified as shown on Figure 13.[7]

---

[5]  Editor's Note: Figure 10 is included at the end of this chapter.
[6]  Editor's Note: Figure 4 is included at the end of this chapter.
[7]  Editor's Note: Figures 12 and 13 are included at the end of this chapter.

## § A134-23. Street name signs.

The developer shall furnish and install a four-way street name sign at every street intersection made by the streets he constructs. Signs and posts shall conform to the standards established by the Village Board.

## § A134-24. Monuments.

A. Monuments shall be set on all right-of-way lines of streets at all street intersections, angle points, points of curve and subdivision corners. There shall be a clear foresight and backsight to adjacent monuments on the right-of-way line or lines on which a monument is set.

B. Monuments shall be thirty-six (36) inches long, five (5) inches square at the top tapering to six (6) inches square at the bottom, and shall have centered in the top a three-eighths-inch or one-half-inch drill hole, three-eighths-inch or one-half-inch steel rod slightly protruding, or some other permanent and satisfactory center mark. Monuments shall be of cut granite free from imperfections or of concrete and similar or equal to those supplied by Bergen Building Block, Inc., Ridgefield Park, New Jersey.

C. Monuments shall not be set before final grading has been completed nor shall they be set while frost is in the ground. They shall be so set that the top is flush with the finished grade. They shall be so set and tamped as to prevent settlement or shifting.

D. The developer's engineer and/or licensed land surveyor shall certify that the location of all monuments is accurate before acceptance of the street by the Village Board.

## § A134-25. Easements.

Where surface water must be lead through other than right-of-way gutters and storm drains or existing stream channels, drainage easements having a minimum width of fifteen (15) feet shall be provided in the approved plans. A greater width than fifteen (15) feet shall be provided where called for by other provisions of these specifications.

### § A134-26. Open ditches.

No open ditches will be permitted in lieu of storm drain pipe.

### § A134-27. House drains.

Roof and cellar drains shall in no case be allowed to flow onto the right-of-way. With the approval of the Village Engineer in writing, these drains may be piped to the street stormwater pipe drain, to which they shall be connected on top only. Such drains must be installed prior to the start of fine grading of the streets.

### § A134-28. Culs-de-sac.

Wherever a temporary or permanent dead end is allowed on a subdivision street, a turnaround shall be constructed. This turnaround shall take the form of a tee or a circle as required by the Village Planning Board and shall be constructed as shown on Figures 17 and 18.[8] The temporary type of construction shall be used only when authorized by the Planning Board because of the foreseeable future extension of the street. The circular-shaped turnaround shall be completely paved, with no center island.

### § A134-29. Grades and vertical curves.

A.  Streets shall be so designed that finished tangent grades will not be less than one percent (1%) nor more than ten percent (10%).

B.  Every change in grade shall be effected with a vertical curve of sufficient length to ensure adequate stopping sight distance and to provide for smooth transition. These vertical curves shall be designed in accordance with the graph shown on Figure 19 of these specifications,[9] which is taken from New York State standards for thirty-mile-per-hour speeds.

---

[8]  Editor's Note: Figures 17 and 18 are included at the end of this chapter.
[9]  Editor's Note: Figure 19 is included at the end of this chapter.

## § A134-30. Interpretation.

Final decision as to the interpretation of any part of these street specifications shall rest with the Village Engineer. He shall have the authority to modify the requirements of these specifications when, in his opinion, conditions make it impracticable to follow the strict letter of these specifications or when conditions make it unnecessary to do so, such as for example:

A. When a storm drain meets or follows an existing brook so that a one-percent grade cannot be obtained without unreasonable channel changes, the Village Engineer may allow a grade of less than one percent (1%), provided that the pipe size is adequately increased.

B. When the subbase of a street or road is already composed of an acceptable granular material, the Village Engineer may waive or modify the requirement of a foundation course.

C. When the existing soil under the concrete curb is already composed of a sufficiently porous material to ensure a proper underdraining of the pavement, the Village Engineer may waive or modify the requirements for curb underdrains.

## STREET SPECIFICATIONS

### SUMMARY OF STREET SPECIFICATIONS

| | |
|---|---|
| Right-of-way width (feet) | 50 |
| Clearing width (feet) | 50 |
| Grading width (feet) | 50 |
| Pavement width (feet) | 30 |
| Storm drains | Yes |
| Foundation course | 6 inches thick |
| Base | 4-inch asphaltic ce-ment |
| Pavement | 1½-inch top 1½-inch binder |
| Curbs | 6-inch concrete |
| Sidewalks | Yes |
| Monuments | Yes |
| Street name signs | Yes |



NOTE
TREES SHALL BE
PLANTED WITHIN
R.O.W. LINE

LIMIT OF R.O.W.

2:1 MAX SLOPE

LEVEL LINE 3"

2:1 MAX SLOPE

25'-0"

2'-0"    4'-0"    4'-0"    15'-0"

GRASS          GRASS    LEVEL LINE    PARABOLIC CROWN
                                6"

4" CONC. SIDEWALK
4" APPROVED
POROUS MAT'L.

3" POROUS TILE
6" x 8" x 20" CONC. CURB

1"      ASPHALTIC CONCRETE WEARING COURSE
1 1/2"  ASPHALTIC CONCRETE BINDER COURSE
4"      ASPHALTIC CONCRETE BASE COURSE
6"      FOUNDATION COURSE -
        GRANULAR MATERIAL (ITEM 4)

SIDEWALK   DETAILS

6 GUAGE 6"X 6" STEEL REINFORCING
   MESH SHALL BE LAID 2" FROM
   BOTTOM OF SIDEWALK SLAB

CONTRACTION JOINTS HAVING 1/4"
   RADIUS EDGES SHALL BE PLACED
   AT 4'-0" INTERVALS IN SIDEWALK

EXPANSION JOINTS OF 1/4" CELLULOSE
   OR SIMILAR MATERIAL SHALL BE
   PLACED AT 20' INTERVALS.
   EDGES SHALL HAVE 1/4" RADIUS

Village of Pomona

SUBURBAN STREET SPECIFICATIONS

SCALE~ 1/4"= 1'-0"

FIGURE 1



# STANDARD CATCH BASIN

## DETAILS - SCALE

Village of Pomona

NOTE: CURB SHALL
BE CAST IN PLACE.
EXPANSION JOINTS
OF 3/16" CELLULOSE
OR SIMILAR MAT-
ERIAL SHALL BE
PLACED AT TEN
FOOT INTERVALS.

6"

1½" RADIUS

1:2:3 CONCRETE AIR ENTRAINED
WITH DUREX OR EQUAL

FOUNDATION COURSE —
GRANULAR MATERIAL

SLOPE 1:1

3" POROUS TILE

COARSE WASHED SAND

8"

8"

DETAIL OF CONCRETE CURB
AND UNDERDRAIN

SCALE  1½" = 1'-0"

Village of Pomona

FIGURE A



<u>NOTE</u>

THESE ARE MINIMUM OPENING SIZES.
FOR WIDER DRIVEWAYS, WIDER OPENINGS WITH
APRONS OF SIMILAR PROPORTIONS MAY BE CONSTRUCTED.

## PLAN OF DRIVEWAY ENTRANCE ON THROUGH & SUBURBAN STREETS
### SCALE— 1/4"=1'-0"



## SECTION "A-A"
### SCALE— 1/2"=1'-0"

Village of Pomona

FIGURE 10



NOTE: MINIMUM SIGHT DISTANCE AT INTERSECTIONS SHALL BE 400 FT. EACH DIRECTION FOR VEHICLE ENTERING FROM MINOR STREET AFTER STOP.

Village of Pomona

## STANDARDS FOR INTERSECTION OF TWO NEW STREETS

SCALE: 1"= 20'

FIGURE 12



LIMITS OF EXISTING PAVEMENT

NEW PAVING

SIDE WALK

VARIABLE

VARIABLE

16.5'

TRANSITION PERIOD

OLD R.O.W. LINE

NEW R.O.W. LINE

CURB RADIUS 35'

STREET SIGN

SIDE WALK

R.O.W. WIDTH

€ OF SUBDIVISION

**NOTE**

MINIMUM SIGHT DISTANCE AT INTERSECTIONS SHALL BE 400 FT. EACH DIRECTION FOR VEHICLE ENTERING FROM MINOR STREET AFTER STOP. (EXCEPT WHERE EXISTING CONDITIONS DO NOT PERMIT)

Village of Pomona

STANDARDS FOR INTERSECTION OF NEW STREET WITH OLD NARROW RD.

SCALE- 1"- 20'

FIGURE 13



Note: These are standards for maximum allowable side street approach grade intersecting with relatively flat through street grade. For other combinations of intersecting grades, intersections shall be so designed that grades are relatively flat in the stop zone and that no water will run across the intersection.

MAX GRADE : 10%

NORMAL CROWN OF ROAD

-3.0%

20'          100' V.C.

MAX. -3.0%

NORMAL CROWN OF ROAD

20'     30'          100' V.C.
                     MINIMUM

-3.0%

MAX. GRADE 10%

Village of Pomona

MINIMUM STANDARDS
FOR
SIDE STREET
APPROACH GRADES

SCALES: 1" = 30' HOR.
        1" = 3' VERT.

FIGURE 14



EXPOSED SURFACES SHALL BE RUBBED AT THE DIRECTION OF THE ENGINEER.

CHAMFER ALL EXPOSED EDGES ONE INCH

12"

3'0"

5 TIMES DIAMETER OF PIPE

1:2:4 MIX CONCRETE

18"

STANDARD HEADWALL DETAIL

SCALE: $\frac{1}{2}" = 1'-0"$

Village of Pomona

FIGURE 16.



Village of Pomona

STANDARDS FOR TURNAROUNDS

SCALE 1" = 20'

FIGURE 17



Village of Pomona

STANDARDS FOR CUL-DE-SAC

SCALE - 1"=40'

FIGURE 18

Case 7:20-cv-06158-KMK   Document 34-1   Filed 10/20/20   Page 187 of 202

# STOPPING SIGHT DISTANCE ON VERTICAL CURVE



VISION POINT 3.67' ABOVE ROADBED
OBJECT POINT 0.33' ABOVE ROADBED (4")

S = SIGHT DISTANCE

Village of Pomona

30 M.P.H.

S = 200

LENGTH OF VERTICAL CURVE IN STATIONS

ALGEBRAIC DIFFERENCE IN GRADE RATE

# INDEX

## INDEX INSTRUCTIONS

The main **INDEX**, beginning on page 1, will guide you to the legislation contained within the Code at the time the main **INDEX** was originally prepared. As new legislation is adopted, or existing legislation is amended, the Code pages are replaced by supplementary pages which include the new material, thereby causing some **INDEX** entries to become obsolete. **INDEX** entries to the new material will be provided for in the **SUPPLEMENTAL INDEX**, beginning on page SI-1.

The **SUPPLEMENTAL INDEX** should, therefore, be consulted first, since it refers to the more recent legislation. Then reference should be made to the main **INDEX**.

When received, **SUPPLEMENTAL INDEX** pages should be placed directly following this page and in front of the main **INDEX**, according to the instructions accompanying the supplement.

Numbers in the indices refer to section numbers in the Code, e.g., 39-3 is a reference to Chapter 39, Section 3.

# INDEX

(Note)

**TO OWNERS:**

The INDEX to this Code will be published in the near future. It will be inserted here.

Changes, alterations and new legislation inevitably follow the creation of a new Code. A complete and usable Index must include this new material. Upon enactment, these additions will be Indexed with the present legislation to make a complete and easy-to-use method of finding all information.

In the interim, refer to the TABLE OF CONTENTS in the forward part of this volume for a complete listing of all legislation; then refer to the Scheme at the beginning of each chapter for reference to particular subject matter.

**THE PUBLISHERS**

Chapter 67

FEES

§ 67-1.  Schedule of fees and charges.
§ 67-2.  Schedule of fees and charges for professional consultants.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 6-22-1992 as L.L. No. 1-1992.[1] Amendments noted where applicable.]

§ 67-1.  Schedule of fees and charges.

Applications for permits, licenses or action by the Board of Trustees, the Planning Board, the Zoning Board of Appeals, the Village Engineer, the Village Clerk and the Village Code Enforcement Officer shall be accompanied by payment of the following fees for the procedures set forth hereinafter:

| Code Chapter/Procedure | Agency or Official | Fee |
| --- | --- | --- |
| **Chapter 47, Building Construction** | | |
| Building permit (exclusive of reinspections) | Code Enforcement Officer | |
| New 1-family dwellings | — | First $75,000.00 of construction costs: $550.00 plus $2.00 each additional $1,000.00 or fraction thereof; plus $75.00 for certificate of occupancy payable with application; plus Clerk's fee of $75.00 payable with |

---

[1]  Editor's Note: This local law superseded former Ch. 67, Fees, as last amended 2-8-1988 by L.L. No. 1-1988.

| Code Chapter/Procedure | Agency or Official | Fee |
| --- | --- | --- |
| | | application; plus sewer permit fee of $75.00 payable with application |
| Alterations, repairs, additions, accessory buildings or structures, demolition, plumbing, etc., affecting 1-family dwellings [Amended 2-28-1994 by L.L. No. 1-1994] | — | First $2,000.00 of construction costs: $75.00 plus $75.00 for certificate of occupancy payable with application. Above $2,000.00 of construction costs: $150.00 plus $2.00 per each additional $1,000.00 or fraction thereof; plus $75.00 for certificate of occupancy payable with application; plus Clerk's fee of $75.00 payable with application |
| Antenna installations [Added 2-28-1994 by L.L. No. 1-1994] | — | $75.00 |
| Reinspection fee (for reinspections required after construction work has been disapproved) | Code Enforcement Officer | $50.00 for the first such reinspection and $75.00 for each subsequent reinspection |
| For inspection of work and review of certifications for issuance of building permit and certificate of occupancy for work completed without a prior building | Village Clerk | $300.00 plus $2.00 per each $1,000.00 of estimated current construction cost; plus $75.00 for certificate of occupancy payable |

| Code Chapter/Procedure | Agency or Official | Fee |
| --- | --- | --- |
| permit [Amended 2-28-1994 by L.L. No. 1-1994] | | with application |
| Violation search; tax certificate of occupancy [Amended 2-28-1994 by L.L. No. 1-1994] | Village Clerk | $100.00;  $100.00;  search; $75.00 |
| **Chapter 65, Explosives** | | |
| License to transport, store or use explosives | Village Clerk | $75.00 |
| **Chapter 106, Records, Public Access to** | | |
| Inspection of records or search for records | Village Clerk | No fee |
| Copies of public records the dimensions of which do not exceed 8½ x 14½ inches [Amended 2-28-1994 by L.L. No. 1-1994] | Village Clerk | $0.25 per page |
| **Chapter 110, Sewers** | | |
| Sewer permit and inspection fee | Board of Sewer Commissioners | $75.00 |
| **Chapter 115, Streets and Sidewalks** | | |
| Street opening permit | Village Engineer | $150.00 |
| Street opening cash bond | Village Engineer | $1,000.00 for the first 250 square yards and $3.00 per square yard thereafter |

| Code Chapter/Procedure | Agency or Official | Fee |
| --- | --- | --- |
| **Chapter 118, Subdivision of Land** | | |
| Sketch plan or layout | Planning Board | $200.00 plus $60.00 per lot, plus $150.00 per meeting for appearance at each meeting after first meeting on application |
| Preliminary plat | Planning Board | $350.00 plus $75.00 per lot, plus $150.00 per meeting for appearance at each meeting after first meeting on application |
| Final plat | Planning Board | $550.00 plus $75.00 per lot, plus $150.00 per meeting for appearance at each meeting after first meeting on application |
| Subdivision inspection fees before map is signed | Village Engineer | 6% of estimated costs of all public improvements |
| Recreation fee (in lieu of land) [Amended 2-28-1994 by L.L. No. 1-1994] | Planning Board | An amount to be determined by the Planning Board based upon its findings pursuant to § 118-26 but not to exceed the sum of $3,000.00 per lot |
| Planning Board appearance fee before map is signed | Planning Board | $200.00 |
| Informal appearance before | Planning | $150.00 |

| Code Chapter/Procedure | Agency or Official | Fee |
|---|---|---|
| Planning Board [Added 2-28-1994 by L.L. No. 1-1994] | Board | |
| Site plan [Added 2-28-1994 by L.L. No. 1-1994] | Planning Board and Zoning Board of Appeals | $500.00 plus $150.00 per meeting for appearance at each meeting after first meeting on application |
| **Chapter 130, Zoning** | | |
| Rezoning | Board of Trustees and Planning Board | Map changes: $150.00 for first acre or fraction thereof; $100.00 per acre for each additional acre or fraction thereof. All other: $300.00 |
| Actions by Zoning Board | Zoning Board of Appeals | $150.00 for actions involving an existing residence; $250.00 for all other actions |
| Clearing, filling and excavation | Code Enforcement Officer | $100.00 for first 1,000 square feet of affected area; $50.00 for each additional 1,000 square feet of affected area (affected area determined by Village Engineer) |
| Site plan | Planning Board and Zoning Board of Appeals | $500.00 plus $25.00 per parking space required by Zoning Law, plus $150.00 per meeting for appearance at each |

| Code Chapter/Procedure | Agency or Official | Fee |
| --- | --- | --- |
| | | meeting after first meeting on application |
| Special permit | Planning Board and Zoning Board of Appeals | (2 fees) $300.00; $150.00 for home occupation |
| Sign permit | Code Enforcement Officer | $50.00 |
| Site plan, residential | Village Engineer | $100.00 |
| Planner fees | — | Paid by applicant in amount billed by the Planner |
| Architectural Review Board, per application | — | $150.00 |
| Sewer connection advance | Village Clerk | Payment ½ year payment after December 1; payment full year between June 1 and December 1 |

## § 67-2. Schedule of fees and charges for professional consultants. [Added 2-28-1994 by L.L. No. 1-1994]

A. The Planning Board and Zoning Board of Appeals, in review of any applications as described within the Code of the Village of Pomona, may refer any such application to such engineering, planning, environmental, legal or other technical consultant as such Board shall deem reasonably necessary to enable it to review such application as required by law. The charges made by such consultants shall be in accord with charges usually made for such services in the metropolitan New York region or pursuant to an existing contractual agreement between the village and such consultant. The inspection

and consultant fees established by this section shall be in addition to and not in lieu of fees and charges required by law, including fees and charges permitted pursuant to the State Environmental Quality Review Act.[2] The applicant shall, simultaneously with the application, pay the following sums into an escrow account maintained by the Village of Pomona, from which such fees shall be paid:

(1)   Subdivision applications:

  (a)   Two (2) lots: five hundred dollars ($500.).

  (b)   Up to three (3) lots: one thousand dollars ($1,000.).

  (c)   More than three (3) lots: two thousand five hundred dollars ($2,500.).

(2)   Site plan applications:

  (a)   Residential:

    [1]   Up to three (3) lots: one thousand dollars ($1,000.).

    [2]   More than three (3) lots: two thousand five hundred dollars ($2,500.).

  (b)   Nonresidential: two thousand five hundred dollars ($2,500.) or as is deemed necessary by the Planning Board.

(3)   Other applications: as is deemed necessary by the appropriate board.

B.   All inspection and consultant fees shall be paid within thirty (30) days of notification to the applicant by the Village Clerk sent by regular mail to the applicant's last known address. Failure by the applicant to pay such fees within thirty (30) days from the date of said notification by the Village Clerk shall operate as an immediate bar to the continued consideration of the application by any board or individual or agency of the Village of Pomona. If said fees are not paid within sixty (60) days of the date of notice from the Village Clerk, the Clerk is hereby required to place a lien in the amount indicated in such notice, and said fees shall become a lien on the real property which is the subject of the application.

---

[2]   Editor's Note: See Article 8 of the Environmental Conservation Law.

*DONE ON*
*8|5|94*

# GENERAL CODE PUBLISHERS CORP.

## INSTRUCTIONS

### Village of Pomona Code Supplement No. 12

The enclosed new and/or replacement pages should be placed in your Code volume immediately! The dateline, on the bottom of the page, does not indicate the adoption date of the Code changes, but rather identifies the pages printed with this supplement.

**The page numbers should always correspond to this list.**

| REMOVE | INSERT |
|---|---|
| 2501 – 2502 | 2501 – 2503 |
| 6701 – 6705 | 6701 – 6707 |
| 11801 – 11845 | 11801 – 11850 |
| 13015 – 13016 | 13015 – 13016 |
| | 13016.1 |
| 13023 – 13024 | 13023 – 13024 |
| 13024.1 | 13024.1 |
| 13031 – 13032 | 13031 – 13032 |
| 13053 – 13056 | 13053 – 13056 |
| | 13056.1 – 13056.6 |
| Supplemental Index, | Supplemental Index, |
| SI-1 – SI-2 | SI-1 – SI-4 |

*WE DO NOT HAVE THE CHAPTERS WHICH CONTAIN THESE SECTIONS*

Legislation, by number or date of adoption, included in this supplement:  L.L. No. 1-1994.

5 – 25 – 94

## Chapter 25

## PLANNING BOARD AND ZONING BOARD OF APPEALS

§ 25-1. Planning Board.

§ 25-2. Zoning Board of Appeals.

§ 25-3. Certification and removal of Zoning Board of Appeals and Planning Board members.

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 6-25-1968; amended in its entirety at time of adoption of Code 2-8-1988 by L.L. No. 1-1988 (see Ch. 1, General Provisions, Art. I). Subsequent amendments noted where applicable.]

GENERAL REFERENCES

Salaries and compensation — See Ch. 30.
Subdivision of land — See Ch. 118.
Zoning — See Ch. 130.

## § 25-1. Planning Board.

A. There is hereby established a Planning Board, consisting of five (5) members to be appointed by the Board of Trustees.

B. All members of the Planning Board shall be residents of the Village of Pomona and shall be appointed for terms of five (5) years each. If a member ceases to be a resident of the Village of Pomona, his place shall be declared vacant by the Board of Trustees and a successor appointed by the Board of Trustees to fill his unexpired term.

C. The Planning Board shall determine its own rules of conduct and procedure and shall have such powers and duties as provided by the Village Law and this Code.

## § 25-2. Zoning Board of Appeals.

A. There is hereby established a Zoning Board of Appeals, consisting of five (5) members to be appointed by the Board of Trustees.

B.  All members of the Zoning Board of Appeals shall be residents of the Village of Pomona and shall be appointed for terms of five (5) years each. If a member ceases to be a resident of the Village of Pomona, his place shall be declared vacant by the Board of Trustees and a successor appointed by the Board of Trustees to fill his unexpired term.

C.  The Board of Appeals shall determine its own rules of conduct and procedure.

§ 25-3.  **Certification and removal of Zoning Board of Appeals and Planning Board members. [Amended 2-28-1994 by L.L. No. 1-1994]**

A.  In addition to any and all other qualifications for holding office as a member of the Zoning Board of Appeals or Planning Board, all present members of said Boards shall attend training classes offered by the Rockland Municipal Planning Federation and complete such classes and receive certification from the Federation within two (2) years from the effective date of this section. Members appointed after the effective date of this section shall be required to attend such classes and receive certification from the Federation within two (2) years from the date for such appointment. Recertification of all members shall be required every two (2) years thereafter from the date of initial certification.

B.  The Mayor of the Village of Pomona is hereby authorized to remove a member of the Zoning Board of Appeals or Planning Board for cause, after public hearing and an opportunity to be heard. Removal for cause shall include but not be limited to the following:

(1)  Failure of a member of the Zoning Board of Appeals or Planning Board to receive certification from the Rockland Municipal Planning Federation within two (2) years after the effective date of this section or within two (2) years after such member's appointment to the respective board, as the case may be.

(2)  Failure of a member of the Zoning Board of Appeals or Planning Board to receive recertification from the Rockland Municipal Planning Federation every two (2) years after the date of such member's first certification.

(3)  Failure of a member of the Zoning Board of Appeals or Planning Board to attend a minimum of eighty percent (80%) of the scheduled meetings held by such member's respective board.