UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGATION RABBINICAL COLLEGE   :
OF TARTIKOV, INC., RABBI MORDECHAI
BABAD, RABBI WOLF BRIEF, RABBI   :
HERMEN KAHANA, RABBI MEIR   :    Case No. 07:CV6304 (KMK)
MARGULIS, RABBI MEILECH MENCZER,   :
RABBI JACOB HERSHKOWITZ, RABBI
CHAIM ROSENBERG, RABBI DAVID A.   :
MENCZER and RABBI ARYEH ROYDE,   :
  :
     Plaintiffs,   :
V.   :
  :
VILLAGE OF POMONA, NY; BOARD OF   :
TRUSTEES OF THE VILLAGE OF   :
POMONA, NY; NICHOLAS SANDERSON,   :
AS MAYOR; IAN BANKS as Trustee and in   :    APRIL 21, 2014
his official capacity, ALMA SANDERS   :
ROMAN as Trustee and in her official capacity,   :
RITA LOUIE as Trustee and in her official   :
capacity, and BRETT YAGEL, as Trustee and   :
in his official capacity,   :
  :
     Defendant.   :
  :

## DEFENDANTS' RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

Defendants hereby respond and object to Plaintiffs Congregation Rabbinical College of

Tartikov, Inc. (the "Rabbinical College"), Rabbi Mordechai Babad, Rabbi Wolf Brief, Rabbi

Hermen Kahana, Rabbi Meir Margulis, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz,

Rabbi Chaim Rosenberg, Rabbi David A. Menczer, and Rabbi Aryeh Royde (collectively

"Plaintiffs") Requests for Admission:

INSTRUCTIONS

1.      Provide all information in your possession, access, custody or control regardless of whether such information is possessed directly by you, any officers, directors, employees, agents, representatives, subsidiaries, affiliates, associates, attorneys, accountants or any other person or entity, or are within your access or control.

2.      If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.

3.      If good faith requires that you qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

4.      You must make reasonable inquiry regarding the Requests. You may only assert lack of knowledge or information as a reason for failing to admit or deny a Request if you state that you have made reasonable inquiry and that the information you know or can readily obtain is insufficient to enable you to admit or deny.

5.      If, in responding to these Requests, you encounter any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

6.      If responding to any Request is objected to on the grounds that responding is unduly burdensome, describe the burden or expense of the proposed discovery.

7.      Whenever in these Requests you are asked to provide information which is deemed by you to be properly withheld from production:

a.      If you are withholding the information under claim of privilege, please provide the information set forth in Fed. R. Civ. P. 26(b)(5) in a manner that, without revealing the

information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

     b.    If you are withholding the information for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each Request and, in addition to the information requested in ¶ 4.a, above, please state the reason for withholding the information.

     8.    When a response contains both privileged and non-privileged information, the non-privileged information must be disclosed to the fullest extent possible without thereby disclosing the privileged information.

     9.    If an individual Request has subparts, you must respond to each part separately and in full; do not limit your response to the request as a whole. If any individual Request cannot be responded to in full, you must respond to the extent possible.

     10.    If you claim that you cannot or may not, for whatever reason, respond to some of the Requests, you must nevertheless respond to the remaining Requests within thirty (30) days.

     11.    Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific custom and usage definition in a relevant trade or industry, in which case they shall be interpreted in accordance with such custom and usage definition.

     12.    Unless otherwise specified, the relevant time period to which these Requests refer is January 1, 1999, to the present day.

     13.    These Requests are continuing, so as to require supplemental answers should you obtain further information between the time the answers are served and the time of trial.

DEFINITIONS

1.      All words herein are as defined in S6 D6NjY~ Local Civil Rule 26.3.

2.      The present tense includes the past and future tenses.

3.      "Village" or "Pomona" means the Village of Pomona, NY, including, but not limited to, the Village Board of Trustees, the Village Clerk and Deputy Clerk, the Village Treasurer, the Village Historian, the Village's Building Inspector and Assistant Building Inspector, the Village Engineer, the Village Planning Board and its members, the Village Zoning Board of Appeals and its members, and the Board of Architectural Review and its members.

4.      The "Rabbinical College" means Plaintiff Congregation Rabbinical College of Tartikov, Inc.

5.      The "Subject Property" or "Property" is as defined in Paragraphs 1 and 75 of the Second Amended Complaint.

6.      "Zoning code" means the zoning laws of the Village of Pomona, including, but not limited to Chapter 130 of Pomona's laws and all rules, procedures and regulations related thereto.

7.      "Wetlands code" means the Wetlands laws of the Village of Pomona, including, but not limited to Chapter 126 of Pomona's laws and all rules, procedures and regulations related thereto.

8.      "Village Code" means the Code of the Village of Pomona.

9.      "Village Board meeting" means any meeting of members of the Village Board, including, but not limited to, Board Meetings, Executive Sessions, Workshops and any committee meetings attended by any Board members.

REQUESTS

      1.     Admit that Pomona's Village Code does not permit an unaccredited educational institution land use, including an unaccredited Rabbinical College, anywhere in the Village by right.

      <u>Response</u>:  Admitted.


      2.     Admit that Pomona's Village Code does not permit an unaccredited educational institution land use, including an unaccredited Rabbinical College, anywhere in the Village by special exception.

      <u>Response</u>:  Admitted that the Pomona's Village Code does not permit an unaccredited educational institution land use, including an unaccredited Rabbinical College, anywhere in the Village as a Special  Permit use.  Otherwise, denied.


      3.     Admit that Plaintiffs cannot currently develop and use the Subject Property as a Rabbinical College, as described in their Second Amended Complaint, by right under the Village Zoning Code.

      <u>Response</u>:  To the extent that the Second Amended Complaint alleges that the proposed Rabbinical College is an Educational Institution as that term is defined by the Village Code, this request is admitted as no Educational Institutions are permitted in the Village as of right.  Otherwise, as a result of Plaintiff's failure to file an application, go through the process and have public hearings, following reasonable inquiry, the Defendants lack sufficient knowledge to admit or deny the allegations contained in Request 3 as the Second Amended Complaint does not provide sufficient details concerning the size,

scope or specifications of the proposed Rabbinical College and such information is solely

within the custody, possession and control of the Plaintiffs.

4.      Admit that Plaintiffs cannot currently develop and use the Subject Property as a

Rabbinical College, as described in their Second Amended Complaint, with a special permit

under the Village Zoning Code.

Response:  To the extent that the Second Amended Complaint alleges that the proposed

Rabbinical College is not accredited by any accrediting body, this request is admitted as

Educational  Institutions must be accredited in order to obtain a special use permit.

Otherwise,  as a result of Plaintiff's failure to file an application, go through the process

and have public hearings, following reasonable inquiry, the Defendants lack sufficient

knowledge to admit or deny the allegations contained in Request 4 as the Second

Amended Complaint does not provide sufficient details concerning the size, scope or

specifications of the proposed Rabbinical College and such information is solely within

the custody, possession and control of the Plaintiffs.

5.      Admit that Plaintiffs cannot currently develop and use the Subject Property as a

Rabbinical College, as described in their Second Amended Complaint, with a variance or

variances under the Village Zoning Code.

Response:  As a result of Plaintiff's failure to file an application, go through the process

and have public hearings, following reasonable inquiry, the Defendants lack sufficient

knowledge to admit or deny the allegations contained Request 5, as the Second Amended

Complaint does not provide sufficient details concerning the size, scope or specifications

of the proposed Rabbinical College, which information would be necessary to the

consideration of a variance, which, if granted, would allow use and development of the

Subject Property.

6.      Admit that the Villages of Wesley Hills, Spring Valley, Chestnut Ridge, New

Hempstead, Kaser, and New Square do not permit Rabbinical College's use (as described in the

Plaintiffs' Second Amended Complaint), either by right or by special exception.

Response/Objection:  Defendants object to this request as unduly burdensome.  In order

to admit or deny the truth of the allegations contained in Request 6, Defendants would be

required to review the complete zoning codes of six Villages, as well as the Village's

actions with regard to land use applications, in order to form an opinion as to whether or

not those Villages' laws permit all of the uses apparently contemplated by the Rabbinical

College, as described in the Second Amended Complaint.   These codes are multi-faceted

legal schemes administered by the governing bodies of the aforementioned Villages.

Additionally, whether the Rabbinical College is allowed by special exception is a fact

intensive inquiry that  would ultimately be conducted by the governing bodies of the

aforementioned Village and a decision reached only after an application is duly filed,

reviewed, and considered in public hearings.  Lastly, the Second Amended Complaint

does not provide sufficient details regarding the size, scope or specifications of the

project to permit Defendants to admit or deny this request. Accordingly, as a result of

Plaintiff's failure to file an application, go through the process and have public hearings,

following reasonable inquiry, the Defendants lack sufficient knowledge to admit or deny

the allegations contained in this request.

7.      Admit that the Town of Ramapo does not permit Rabbinical College's use (as described in the Plaintiffs' Second Amended Complaint), either by right or by special exception other than as "adult student housing" as that term is defined in § 376-5 of that Town's Code.

Response/Objection:  Defendants object to this request as unduly burdensome.  In order to admit or deny the truth of the allegations contained in Request 7, Defendants would be required to review the complete zoning code for the Town of Ramapo, as well as the history of application of that code,  in order to form an opinion as to whether or not those laws permit the uses apparently contemplated by the Rabbinical College on a single campus as described in the Second Amended Complaint.  This code is a multi-faceted legal scheme administered by the governing body of the Town.  Additionally, whether the Rabbinical College is allowed by special exception is a fact intensive inquiry that would ultimately be conducted by the Town of Ramapo and a decision reached only after an application was duly filed,  reviewed and considered in public hearings.  Lastly, the Second Amended Complaint does not provide sufficient details regarding the size, scope or specifications of the project to permit Defendants to even attempt to admit or deny this request.  Accordingly, as a result of Plaintiff's failure to file an application, go through the process and have public hearings, following reasonable inquiry, the Defendants lack sufficient knowledge to admit or deny the allegations contained in this request.

8.      Admit that the Village of Airmont does not permit Rabbinical College's use (as described in the Plaintiffs' Second Amended Complaint), either by right or by special exception other than as "adult student housing" as that term is defined in § 210-174 of that Village's Code.

8

Response/Objection:  Defendants object to this request as unduly burdensome.  In order to admit or deny the truth of the allegations contained in Request 8, Defendants would be required to review the complete zoning code for the Village of Airmont in order to form an opinion as to whether or not those laws permit the use apparently contemplated by the Rabbinical College on a single campus as described in the Second Amended Complaint. This code is a multi-faceted legal scheme administered by the governing body of the Village of Airmont.  Additionally, whether the Rabbinical College is allowed by special exception is a fact-intensive inquiry that would ultimately be conducted by the Village of Airmont and a decision reached only after an application was duly filed, reviewed and considered in public hearings.   Lastly, the Second Amended Complaint does not provide sufficient details regarding the size, scope or specifications of the project to permit Defendants to even attempt to admit or deny this request.  Accordingly,  as a result of Plaintiff's failure to file an application, go through the process and have public hearings, following reasonable inquiry, the Defendants lack sufficient knowledge to admit or deny the allegations contained in this request.


9.      Admit that on August 17, 2004, Pomona could not prohibit "dormitories," as part of an Educational Institution under New York state law.

Response/Objection:  Defendants object to this request because they do not understand it. It is admitted that the Village Code in place on August 17, 2004 did not specifically address dormitories.

10.    Admit that on August 17, 2004, Pomona's Village Code contained no prohibition on unaccredited "Schools" or "Educational Institutions."

Response:  Admitted that the Village Code in effect as of August 17, 2004 did not contain a requirement that Schools or Educational Institutions be accredited by the State of New York or another accrediting body. It did, however, include a narrower requirement that the curriculum of schools must be approved by the State or the Board of Regents and that educational institutions must be licensed by the State of New York.

11.    Admit that there is currently no unaccredited School or Educational Institution (disregarding the Rabbinical College) seeking to operate a School or Educational Institution in the Village.

Response:  Admitted that Defendants are not aware of any unaccredited School or Educational Institution seeking to operate within the Village.

12.    Admit that, at the time Local Law No. 1 was passed on September 27, 2004, no unaccredited Schools or Educational Institutions operated within the Village of Pomona.

Response:  Admitted.

13.    Admit that on August 17, 2004, Pomona's Village Code contained no prohibition on any building related to an educational institution use taller than two stories or 25 feet, whichever is less.

Response/Objection:  Defendants object to this request as it is unclear what it meant by "any building related to an educational institution."  To the extent this request is related

10

to accessory uses, it is denied as the Village Code at that time prohibited other types of accessory use buildings to be taller than 10 feet.

14.     Admit that, pursuant to Village Code § 126-3(D), the Subject Property is subject to and not exempt from Pomona Village Code Chapter 126.

Response:  Admitted.

15.     Admit that on August 17, 2004, Pomona's Village Code contained no prohibition against more than one dormitory building as an accessory use to an educational institution on a lot.

Response:  Denied.

16.     Admit the Village is a government within the meaning of 42 U.S.C. § 2000cc-5(4)(a).

Response:  Admitted.

17.     Admit that the Village's Zoning code is a land use regulation, within the meaning of 42 U.S.C. § 2000cc-5(5).

Response:  Admitted.

18.     Admit that the Village's Wetlands code is a land use regulation, within the meaning of 42 U.S.C. § 2000cc-5(5).

Response:  Admitted.

19.     Admit that the Village's Subdivision of Land, Village Code chapter 118, is a land use regulation, within the meaning of 42 U.S.C. § 2000cc-5(5).

Response:  Admitted.

20.     Admit that Plaintiffs' proposed use of the Subject Property, as described in their Second Amended Complaint, is religious exercise.

Response/Objection:  Defendants object this this request as confusing and compound. Plaintiffs broadly identified multiple proposed land uses in their Second Amended Complaint as a single use, namely a proposed Rabbinical College.  Notwithstanding and without waiving the forgoing objection, Defendants admit that the use of shuls and synagogues are religious exercise.  Defendants admit that the use of libraries used solely for non-secular purposes or religious courtrooms solely for non-secular purposes are religious exercise.  Otherwise, denied.

21.     Admit that the use of real property as classrooms to train rabbinical judges is a religious land use.

Response:  Admitted that the use of real property as classrooms solely to train rabbinical judges is a religious land use.

12

22.     Admit that the use of real property as shuls, or synagogues, is a religious land use.

Response:  Admitted.


23.     Admit that the use of real property as bais din, or courtrooms where disputes are resolved according to Jewish belief, is a religious land use.

Response:  Admitted that real property solely devoted to use as bais din, or courtrooms where intra-religious disputes are resolved according to Jewish belief, is a religious land use.


24.     Admit that the use of real property as libraries to be used for the purpose of training rabbinical judges is a religious land use.

Response:  Admitted that the use of real property as libraries solely for the purpose of training rabbinical judges is a religious land use.


25.     Admit that the use of real property as housing for rabbinical students engaged in study at a Rabbinical College, as described in Plaintiffs' Second Amended Complaint, is a religious land use.

Response:  Denied that housing is a religious land use.


26.     Admit that teaching students to become rabbinical judges involves the communication of ideas and messages.

Response/Objection:  Defendants object to this request as vague.  Defendants can neither admit nor deny the allegations contained in request 26 because, after reasonable inquiry

and without an application filed by Plaintiffs, they are not familiar with the process for

training rabbinical judges and cannot gain the necessary information through reasonable

inquiry at this time.


27.     Admit that the Congregation Rabbinical College of Tartikov, Inc. is a religious

institution as alleged in the Second Amended Complaint.

Response/Objection:  Defendants object to this request because "institution" is vague and

undefined.  To the best of Defendants' knowledge and belief, Congregation Rabbinical

College of Tartikov, Inc. is a religious corporation.


28.     Admit that the proposed Rabbinical College use of the Subject Property is a

religious assembly as alleged in the Second Amended Complaint.

Response/Objection:  Defendants object this this request as confusing and compound.

Plaintiffs broadly identified multiple proposed uses in their Second Amended Complaint

as a single use, namely a proposed Rabbinical College.  Notwithstanding and without

waiving the foregoing objection, admitted that shuls and synagogues are a religious

assembly. Otherwise, denied.


29.     Admit that the use of the Subject Property is subject to the Village's land use

regulations.

Response:  Admitted.

30.     Admit that "[l]ibraries," as that term is used in the Village's Zoning Code § 130-9(A), are an assembly or institutional land use.

<u>Response/Objection</u>:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.


31.     Admit that [museums] as that term is used in the Village's Zoning Code § 130-9(A), are an assembly or institutional land use.

<u>Response/Objection</u>:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.


32.     Admit that "[p]ublic parks," as that term is used in the Village's Zoning Code § 130-9(A), are an assembly land use.

<u>Response/Objection</u>:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.


33.     Admit that "playgrounds," as that term is used in the Village's Zoning Code § 130-9(A), are an assembly land use.

<u>Response/Objection</u>:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.

34.     Admit that "[r]ecreational facilities," as that term is used in the Village's Zoning Code § 130-10(A), are an assembly or institutional land use.

Response/Objection:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.

35.     Admit that "swimming clubs," as that term is used in the Village's Zoning Code § 130-10(A), are an assembly or institutional land use.

Response/Objection:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.

36.     Admit that "recreational buildings," as that term is used in the Village's Zoning Code § 130-10(A), are an assembly or institutional land use.

Response/Objection:  Defendants object to this request as the words "assembly" and "institutional" are defined in various manners under different, potentially applicable land use statutes.  To the extent this request refers to RLUIPA, denied.

37.     Admit that "[c]amps," as that term is used in the Village's Zoning Code § 130-10(D), are an assembly or institutional land use.

Response/Objection:  Defendants object to this request as the words "assembly" and
"institutional" are defined in various manners under different, potentially applicable land
use statutes.  To the extent this request refers to RLUIPA, denied.

38.    Admit that the Village of Pomona is a "jurisdiction" as that term is used by
RLUIPA.

Response:  Admitted.

39.    Admit that the Village of Pomona and its Board of Trustees are "governments" as
that term is defined by RLUIPA.

Response:  Admitted.

40.    Admit that at least one defendant knew about the potential use of the Subject
Property as a Rabbinical College as early as August 31, 2004.

Response:  Denied. None of the defendants recall having knowledge that the subject
property was to be used as a Rabbinical College in August 2004.

41.    Admit that at least one defendant knew about the potential use of the Subject
Property as a Rabbinical College prior to September 27, 2004.

Response:  Denied.  None of the defendants recall having knowledge that the subject
property was to be used as a Rabbinical College prior to September 27, 2004.

42.    Admit that the proposed residential components of the Rabbinical College are "dwellings" as that term is defined by the Fair Housing Act, 42 U.S.C. § 3602.

Response:  Admitted.


43.    Admit that the Subject Property is the only parcel of land in the Village that can practicably accommodate the Rabbinical College, as that use is described in Plaintiffs' Second Amended Complaint.

Response:  Defendants can neither admit nor deny this request because the Second Amended Complaint provides insufficient detail about the size, scope or specifications of the proposed Rabbinical College, which information would be required to respond accurately.  Additionally, as a result of Plaintiff's failure to file an application, go through the process and have public hearings, following reasonable inquiry, the Defendants lack sufficient knowledge to admit or deny the allegations contained in this request.


44.    Admit that the Subject Property is a single lot of approximately 100 acres.

Response:  Admitted.


45.    Admit that the Subject Property is currently developed with approximately 12-13 structures including bungalows and other buildings.

Response:  Defendants admit that there are structures currently on the Subject Property. Otherwise, upon reasonable inquiry, Defendants lack sufficient information to admit or deny.

46.     Admit that the Subject Property is currently used as an Orthodox Jewish summer camp during the summer months.

Response:  Admitted.


47.     Admit that, under the Village's Zoning Code and Map, the only residential use permitted by right on the Subject Property without subdividing the Property would be one single-family home.

Response:  Admitted.


48.     Admit that the Village Code does not permit, either as a "matter of right" or by special permit, any Educational Institution land use with a residential component, dormitory or otherwise, that contains separate cooking, dining or housekeeping facilities, other than one dwelling unit with housekeeping facilities that may be provided for use of a superintendent or supervisory staff for every 50 dormitory rooms.

Response:  Admitted.


49.     Admit that the Village Code does not permit, either as a "matter of right" or by special permit, any Educational Institution land use with a residential component, dormitory or otherwise, that would be considered single-family, two-family and/or multifamily dwelling units, other than one dwelling unit with housekeeping facilities that may be provided for use of a superintendent or supervisory staff for every 50 dormitory rooms.

Response:  Admitted.

50.    Admit that adult students that live with spouses and children require dwelling units with housekeeping facilities.

Response/Objection:  Defendants object to this request as overly broad.  Notwithstanding and without waiving the foregoing objection, upon reasonable inquiry and in the absence of an application, Defendants lack the knowledge to either admit or deny this request as they do not have any knowledge concerning the specific needs of individual adult students living with spouses and children.

51.    Admit that, prior to the accreditation requirement adopted for "Educational institutions" in Village Code § 130-4 in September 2004, the Village had never before used an entity's "accreditation" status as a means of regulating land use.

Response:  Admitted that prior to 2004, the Village Code did not require Educational Institutions to be accredited by the State of New York or any accrediting agency.  It did, however, include a narrower requirement that an Educational Institution be licensed by the State of New York.

52.    Admit that the Village Code does not permit a dormitory building unless it is located on the same lot as the associated Educational Institution.

Response:  Admitted.

53.    Admit that the Village possessed no studies or reports establishing a need for controlling traffic when it adopted Local Law No. 1 of 2001.

<u>Response</u>:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling traffic when it adopted Local Law No. 1 of 2001 but denied to the extent this request suggests that such studies or reports were necessary.

54.    Admit that the Village possessed no studies or reports establishing a need for controlling traffic when it adopted Local Law No. 5 of 2004.

<u>Response</u>:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling traffic when it adopted Local Law No. 5 of 2004 but denied to the extent this request suggests that such studies or reports were necessary.

55.    Admit that the Village possessed no studies or reports establishing a need for controlling traffic when it adopted Local Law No. 1 of 2007.

<u>Response</u>:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling traffic when it adopted Local Law No. 1 of 2007 but denied to the extent this request suggests that such studies or reports were necessary.

56.    Admit that the Village possessed no studies or reports establishing a need for controlling traffic when it adopted Local Law No. 5 of 2007.

<u>Response</u>:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling traffic when it adopted Local Law No. 5 of 2007 but denied to the extent this request suggests that such studies or reports were necessary.

57.     Admit that the Village possessed no studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 1 of 2001.

Response:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 1 of 2001 but denied to the extent this request suggests that such studies or report were necessary.

58.     Admit that the Village possessed no studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 5 of 2004.

Response:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 5 of 2004 but denied to the extent this requests suggests that such studies or report were necessary.

59.     Admit that the Village possessed no studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 1 of 2007.

Response:  Admitted that the Village did not possess any formal studies or reports establishing a need for controlling environmental impacts when it adopted Local Law No. 1 of 2007 but denied to the extent this request suggests that such studies or report were necessary.

60.     Admit that the Village possessed no studies or reports establishing a need for
controlling environmental impacts when it adopted Local Law No. 5 of 2007.

Response:  Admitted that the Village did not possess any formal studies or reports

establishing a need for controlling environmental impacts when it adopted Local Law No.

5 of 2007 but denied to the extent this request suggests that such studies or report were

necessary.

61.     Admit that the Village possessed no studies or reports establishing a lack of
Village infrastructure when it adopted Local Law No. 1 of 2001.

Response:  Admitted that the Village did not possess any formal studies or reports

establishing a lack of Village infrastructure when it adopted Local Law No. 1 of 2001 but

denied to the extent this request suggests that such studies or reports were necessary.

62.     Admit that the Village possessed no studies or reports establishing a lack of
Village infrastructure when it adopted Local Law No. 5 of 2004.

Response: Admitted that the Village did not possess any formal studies or reports

establishing a lack of Village infrastructure when it adopted Local Law No. 5 of 2004 but

denied to the extent this request suggests that such studies or reports were necessary.

63.     Admit that the Village possessed no studies or reports establishing a lack of
Village infrastructure when it adopted Local Law No. 1 of 2007.

Response:  Admitted that the Village did not possess any formal studies or reports establishing a lack of Village infrastructure when it adopted Local Law No. 1 of 2007 but denied to the extent this request suggests that such studies or reports were necessary.

64.    Admit that the Village possessed no studies or reports establishing a lack of Village infrastructure when it adopted Local Law No. 5 of 2007.

Response:  Admitted that the Village did not possess any formal studies or reports establishing a lack of Village infrastructure when it adopted Local Law No. 5 of 2007 but denied to the extent this request suggests that such studies or reports were necessary.

65.    Admit that a college is a beneficial use under New York law under *Cornell University v. Bagnardi*, 68 N.Y.2d 583 (1986).

Response:  Admitted that *Cornell University v. Bagnardi*, 68 N.Y.2d 583 (1986) provides that a college is presumed to be a beneficial use but that such presumption may be rebutted.

66.    Admit that on December 15, 1999, Yeshiva of Spring Valley made an informal presentation to the Village Planning Board of their plans for a 100,000-square foot private primary school building and synagogue.

Response:  Admitted that on December 15, 1999, Rabbi Fromowitz of Yeshiva of Spring Valley made an informal presentation before the Village Planning Board of Yeshiva Spring Valley's plans for a 100,000-square foot private primary school building. Otherwise, denied.

67.     Admit that on December 15, 1999, Yeshiva of Spring Valley made an informal presentation to the Village Planning Board to later build a 20,000 to 30,000 square foot pre-school, all to be built on less than ten acres of the approximately hundred-acre Subject Property.

Response: Admitted that Rabbi Fromowitz of Yeshiva Spring Valley made an informal presentation before the Village Planning Board on December 15, 1999 at which he separately stated that Yeshiva of Spring Valley was contemplating a second phase of construction to include a 20,000 to 30,000 square foot pre-school and that the actual development of the school itself would be under ten acres.

68.     Admit that on December 15, 1999 a school was a permitted use on the Subject Property.

Response:  Admitted that as of December 15, 1999, the Village Code identified "Schools of general instruction," as permitted uses subject to land use restrictions and New York state licensing requirements.

69.     Admit that at the December 15, 1999 Planning Board meeting, at least one Planning Board member asked if Yeshiva Spring Valley planned to build dormitories on the Subject Property.

Response:  Admitted.

70.     Admit that at the December 15, 1999 Planning Board meeting, a Village consultant stated that the Village's zoning for schools would not prohibit future development beyond Yeshiva Spring Valley's then-proposed development.

Response:  Denied.


71.     Admit that at the December 15, 1999 Planning Board meeting, a Village consultant stated that the Board should be looking at the fact that, under the Village's laws, Yeshiva Spring Valley could develop more than 800,000 square feet and two stories of building space on the Subject Property.

Response:  Admitted that a Village consultant stated that an 800,000 square feet, two story building was theoretically possible but that this theoretical figure could not occur in reality due to the presence of steep slopes and wetlands.


72.     Admit that at a December, 1999 Planning Board meeting, a Village consultant recommended that the Village should review and possibly change its requirements for schools.

Response:  Admitted.


73.     Admit that in 2001, the Village amended its Zoning Code to remove schools as a permitted use and included Educational Institutions as a "special permit" use.

Response:  Admitted that in 2001, the Village amended its Zoning Code to remove "Schools of general instruction, subject to the Requirements of Subsection B below" as a use permitted by right and included Educational Institutions as a "special permit" use.

74.    Admit that Local Law No. 1 of 2001 decreased the amount of land that counts towards the "net lot area" for a School land use.

Response:  Denied; the version of the Village Code that existed at the time Local Law No. 1 of 2001 was passed did not specify any "net lot area" for a School land use.

75.    Admit that Local Law No. 1 of 2001 reduced the "net lot area" for a School land use by requiring greater deductions for slopes and wetlands.

Response:  Denied; the version of the Village Code that existed at the time Local Law No. 1 of 2001 was passed did not specify any "net lot area" for a School land use.

76.    Admit that Local Law No. 1 of 2001 reduced the percentage of allowable building coverage, floor space and impervious surface area for School land uses from what was previously allowed.

Response:  Admitted.

77.    Admit that no proposed specific land development other than that of Yeshiva of Spring Valley was considered during the Village's deliberation and passage of Local Law No. 1 of 2001.

Response:  Denied to the extent this request suggests that the deliberation and passage of Local Law No. 1 of 2001 was related in any way to any specific land use development, including Yeshiva of Spring Valley.  Otherwise, admitted.

78.     Admit that in June of 2001, Yeshiva of Spring Valley submitted plans to the Village to use over 60 acres of the Subject Property for a religious school for 850 students, with a synagogue and adult education center, and using the remaining acreage for 25 single-family homes on 40,000 square-foot lots.

Response:  Admitted.

79.     Admit that the Village conducted public hearings and environmental reviews of Yeshiva Spring Valley's application in 2001, without resolution.

Response:  Admitted.

80.     Admit that the Village conducted public hearings and environmental reviews of Yeshiva Spring Valley's application in 2002, without resolution.

Response:  Admitted that the Village conducted public hearings and environmental reviews concerning Yeshiva Spring Valley in 2002, without resolution.  Otherwise, denied.

81.     Admit that in 2004, the Village denied Yeshiva Spring Valley's application for tax exemption for the Subject Property.

Response:  Admitted.

82.     Admit that the Village granted Yeshiva Spring Valley's application for tax exemption for the Subject Property in 1999, 2000, 2001, 2002 and 2003.

Response:  Admitted.

83.     Admit that in 2004, Doris Ullman told a representative of Yeshiva Spring Valley that the tax exemption would be granted if Yeshiva Spring Valley would withdraw its application for a religious school on the Subject Property.

Response:  Denied.

84.     Admit that Yeshiva Spring Valley sold the Subject Property to the Rabbinical College in August, 2004.

Response:  Admitted.

85.     Admit that the Village opposed the Town of Ramapo's Adult Student Housing law, enacted in June 2004 as Local Law Nos. 9 and 10 (2004) of the Town of Ramapo.

Response:  Admitted.

86.     Admit that the Village challenged Ramapo's Adult Student Housing law, first enacted in June 2004 as Local Law Nos. 9 and 10 (2004) of the Town of Ramapo, as a plaintiff in at least one lawsuit.

Response:  Admitted.

87.     Admit that the Village supported the formation of the proposed Village of Ladentown.

Response:  Denied.

88.     Admit that at least one Village trustee participated in efforts to form the proposed Village of Ladentown.

Response:  Admitted that at least one trustee participated in fundraising efforts to form the proposed Village of Ladentown.


89.     Admit that Village Attorney Doris Ullman [sic] participated in efforts to form the proposed Village of Ladentown.

Response:  Admitted that Doris Ulman provided Pro Bono appellate representation to the proposed Village of Ladentown.  Denied to the extent this request suggests that Doris Ulman was acting as counsel to the Village of Pomona when she did so.


90.     Admit that Leslie Sanderson participated in efforts to form the proposed Village of Ladentown.

Response:  Admitted.


91.     Admit that in 2007, the Village denied Plaintiffs' application for tax exemption for the Subject Property.

Response:  Admitted.


92.     Admit that the Village granted Plaintiffs' application for tax exemption for the Subject Property in 2005 and 2006.

Response:  Admitted.

93.     Admit that the restrictions listed in Local Law No. 5 of 2004 are not imposed on any other institutional and assembly land uses other than Educational Institutions.

Response:  Admitted that Local Law No. 5 of 2004 addresses only Educational Institutions.


94.     Admit that there are currently no Educational Institutions in the Village of Pomona.

Response:  Admitted.


95.     Admit that there were no Educational Institutions in the Village at the time of the passage of Local Law No. 5 of 2004.

Response:  Admitted.


96.     Admit that no proposed specific land development other than that of the Subject Property was considered during the Village's deliberation and passage of Local Law No. 5 of 2004.

Response:  Denied to the extent that this request suggests that the passage and deliberation of Local Law No. 5 of 2004 was related in any way to any specific land use developments, including the Subject Property.  Denied that land development of the Subject Property was considered during the deliberation and passage of Local Law No. 5 of 2007. Otherwise, admitted.

97.     Admit that there were no Educational Institutions in the Village at the time of the passage of Local Law No. 1 of 2007.

Response:  Admitted.


98.     Admit that there were no schools in the Village at the time of passage of Local Law No. 1 of 2001.

Response:  Admitted.


99.     Admit that more than one speaker who spoke at hearings on Public Law No. 1 of 2007 targeted their comments at Hasidic Jews.

Response:  Denied.


100.    Admit that no proposed specific land development other than that of the Subject Property was considered during the Village's deliberation and passage of Local Law No. 1 of 2007.

Response:  Denied to the extent that this request suggests that the passage and deliberation of Local Law No. 1 of 2007 was related in any way to any specific land use developments.  Denied that land development of the Subject Property was considered during the Village's deliberation and passage of Local Law No. 1 of 2007. Otherwise, admitted.


101.    Admit that more than one speaker who spoke at hearings on Public Law No. 5 of 2007 targeted their comments at Hasidic Jews.

<u>Response</u>:  Denied.


102.    Admit that more than one speaker who spoke at hearings on Public Law No. 1 of 2007 targeted their comments at the Rabbinical College.

<u>Response</u>:  Admitted that at least one private citizen who spoke at hearings on Public Law No. 1 of 2007 addressed the Rabbinical College in their comments.  Otherwise, denied.


103.    Admit that more than one speaker who spoke at hearings on Public Law No. 5 of 2007 targeted their comments at the Rabbinical College.

<u>Response</u>:  Admitted that at least one speaker, who was not a government official, who spoke at hearings on Public Law No. 5 of 2007 addressed the Rabbinical College in their comments.  Otherwise, denied.


104.    Admit that the Subject Property contains approximately 37 acres of wetlands under the jurisdiction of both the US Army Corps of Engineers and the NYSDEC.

<u>Response</u>:  Following reasonable inquiry, Defendants lack sufficient information to either admit or deny this request without access to a current survey.

105.   Admit that Local Law No. 5 of 2007 restricts development on approximately ten acres of the Subject Property which are not otherwise restricted by the federal or state wetlands law.

Response:  Following reasonable inquiry, Defendants lack sufficient information to either admit or deny this request.

106.   Admit that Nicholas Sanderson has publicly stated that the Village should "maintain[] its cultural and religious diversity."

Response:  Admitted.

107.   Admit that in January-March, 2007, Nicholas Sanderson was a candidate for mayor of the Village of Pomona.

Response:  Admitted.

108.   Admit that Nicholas Sanderson stated at an April, 2007 Pomona Civic Association meeting that the Village has "the gift of time" with respect to the Subject Property because any application submitted will be given a thorough review.

Response:  Defendant Nicholas Sanderson does not recall stating that the Village has "the gift of time" with respect to the Subject Property.  Accordingly, after reasonable inquiry, the Defendants can neither admit or deny this request.

109.    Admit that Brett Yagel published, caused to be published for him, circulated or caused to be circulated for him campaign literature that stated that he "is active in both the Coalition to Keep Ramapo Green and Preserve Ramapo."

Response:  Admitted.

110.    Admit that Brett Yagel stated at an April, 2007 Pomona Civic Association meeting that Village residents must be careful not to make discriminatory statements.

Response:  Admitted.

111.    Admit that Rita Louie stated at an April, 2007 Pomona Civic Association meeting that everyone must be careful about their statements.

Response:  Admitted.

112.    Admit that Nicholas Sanderson, Brett Yagel and Rita Louie hired Marci Hamilton in connection with their March, 2007 campaign for office.

Response:  Admit that Nicholas Sanderson hired Marci Hamilton in connection with his March 2007 campaign for office.  Otherwise, denied.

113.    Admit that the Village was aware that Plaintiff had purchased the Subject Property prior to proposing the Wetlands Law.

Response:  Admitted that the Village was aware that the Congregation had purchased the Subject Property when it proposed the Wetlands law in 2007.

114.    Admit that public sentiment opposed to the Rabbinical College has been posted on-line.

Response/Objection: Defendants object to the phrase "public sentiment" as vague and undefined.  Notwithstanding this objection, admitted that there are on-line postings by private citizens reflecting opposition to the Rabbinical College.

115.    Admit that public sentiment opposed to the Rabbinical College has been published in print.

Response/Objection: Defendants object to this request as the phrase "public sentiment" is vague and undefined.  Notwithstanding the foregoing objection, admitted that there are printed publications by private citizens reflecting opposition to the Rabbinical College.

116.    Admit that public sentiment opposed to the Rabbinical College has been stated at Village meetings.

Response/Objection: Defendants object to this request as the phrase "public sentiment" is vague and undefined.  Notwithstanding the foregoing objection, admitted that private citizens made statements in favor of and in opposition to the Rabbinical College at Village meetings.

117.    Admit that public sentiment opposed to the Rabbinical College has been stated by Village residents.

Response/Objection:  Defendants object to this request as the phrase "public sentiment" is vague and undefined.  Notwithstanding the foregoing objection, Defendants are aware

36

that private citizens residing within the Village have expressed opposition to the

development of a Rabbinical College.


118.    Admit that public sentiment opposed to development in the Village by Hasidic

and/or Orthodox Jews has been posted on-line.

Response/Objection:  Defendants object to this request as the phrase "public sentiment"

is vague and undefined.  Notwithstanding the foregoing objection, admitted that

Defendants are aware that private citizens have expressed opposition, on-line, to

development in the Village by the Plaintiffs.  Otherwise, denied.


119.    Admit that public sentiment opposed to development in the Village by Hasidic

and/or Orthodox Jews has been published in print.

Response/Objection:  Defendants object to this request as the phrase "public sentiment"

is vague and undefined.  Notwithstanding the foregoing objection, admitted that

Defendants are aware that private citizens have expressed opposition, in print, to

development in the Village by the Plaintiffs.  Otherwise, denied.


120.    Admit that public sentiment opposed to development in the Village by Hasidic

and/or Orthodox Jews has been stated at Village meetings.

Response/Objection:  Defendants object to this request as the phrase "public sentiment"

is vague and undefined.  Notwithstanding the foregoing objection, admitted that

Defendants are aware that private citizens have expressed opposition to development in

the Village by the Plaintiffs but not Hasidic or Orthodox Jews generally.  Otherwise, denied.

121.    Admit that public sentiment opposed to development in the Village by Hasidic and/or Orthodox Jews has been stated by Village residents.

Response/Objection:  Defendants object to this request as the phrase "public sentiment" is vague and undefined.  Notwithstanding the foregoing objection, admitted that Defendants are aware that private citizens have expressed opposition to development in the Village by the Plaintiffs.  Otherwise, denied.

122.    Admit that the Village of Pomona adopted a resolution to ask the United State Congress to hold hearings to amend RLUIPA.

Response:  Admitted.

123.    Admit that no member of the Village Board or committee accepted Paul Savad's March 26, 2007 request to meet.

Response:  Admitted that no member of the Village Board or committee agreed to Paul Savad's request for a meeting in the absence of a duly filed application.

124.    Admit that no member of the Village Board or committee met with a representative of the proposed Rabbinical College after Paul Savad's March 26, 2007 request to meet.

Response:  Admitted that no member of the Village Board or committee met with a representative of the proposed rabbinical college in the absence of a duly filed application.

125.    Admit that on April 12, 2007 Susan Cooper invited the Village Board at its meeting to meet with the proposed Rabbinical College to learn about the College's proposal and the results of two years of study concerning the environmental impact of the development.

Response:  Admitted that Susan Cooper requested that the Village Board meet with her firm regarding a conceptual plan for the proposed Rabbinical College.  Otherwise, denied.

126.    Admit that no member of the Village Board or committee accepted Susan Cooper's April 12, 2007 request to meet.

Response:  Admitted that that no member of the Village Board or committee accepted Susan Cooper's April 12, 2007 request to meet in the absence of a duly filed application.

127.    Admit that no member of the Village Board or committee accepted Paul Savad's request to meet in a letter sent to the Village Board on April 25, 2007.

Response:  Admitted that no member of the Village Board or committee accepted Paul Savad's request to meet in the absence of a duly filed application.

128.    Admit that no public meeting was held regarding the proposed Rabbinical College after Paul Savad's request for a public meeting made in two May 10, 2007 letters sent to Doris Ullman [sic].  Admit that the Village refused the Rabbinical College's several requests to meet concerning its proposed development on the Subject Property, and would not agree to have an informal meeting between its officials and the Rabbinical College regarding the Rabbinical College's plans.

Response/Objection:  Defendants object to this request as compound and confusing. Notwithstanding and without waiving this objection, admitted that no public meeting was held regarding the hypothetical Rabbinical College after Paul Savad's request for a public meeting made in two May 10, 2007 letters sent to Doris Ulman.  Further admitted that the Village declined the Rabbinical College's several requests to meet concerning its proposed development on the Subject Property, and declined to have an informal meeting between its officials and the Rabbinical College regarding the Rabbinical College's plans in the absence of a duly filed application.

129.    Admit that the Village Zoning Code establishes only one residential district encompassing the entire Village, which is the R-40 District.

Response:  Admitted.

130.    Admit that the R-40 zoning district has a minimum lot size of 40,000 square feet.

Response:  Admitted that there is a minimum net lot size of 40,000 square feet.

131.    Admit that multi-family dwellings are prohibited anywhere within the Village as a permitted use.

Response:  Admitted.

132.    Admit that multi-family dwellings are prohibited anywhere within the Village as either as a special permit use.

Response:  Admitted.

133.    Admit that the Village Master Plan Update in 1997 identified the lack of affordable housing in the region.

Response:  Denied.

134.    Admit that the Village has never amended its laws to permit multi-family dwellings by right.

Response:  Admitted.

135.    Admit that the Village has never amended its laws to permit multi-family dwellings by special permit.

Response:  Admitted.

136.    Admit that the Village did not pass legislation based upon the New York State Legislature's passage of 19 NYCRR § 1203 in 2007.

Response/Objection:  Defendants object to this request as the Village was not required to

pass legislation under 19 NYCRR § 1203 adopted in 2007.   Accordingly, Defendants can

neither admit nor deny.


137.    Admit that the Village never sought to inspect the camp operating at the Property

or the Property from 2007 through 2012.

Response:  Admitted.


138.    Admit that the Village attempted to inspect the camp operating at the Property or

the Property in 2013.

Response:  Admitted that the Village became aware of a serious safety issue involving

electrical wiring in 2013 that caused it to seek to inspect the Property.


139.    Admit that, since 1999, the Village has not taken any formal action to address

regional housing needs.

Response/Objection:  Defendant objects to this request because it does not know what is

meant by "formal action."

DEFENDANTS
VILLAGE OF POMONA, NY; BOARD OF
TRUSTEES OF THE VILLAGE OF
POMONA, NY; NICHOLAS
SANDERSON AS MAYOR; IAN BANKS
AS TRUSTEE AND IN HIS OFFICIAL
CAPACITY; ALMA SANDERS ROMAN
AS TRUSTEE AND IN HER OFFICIAL
CAPACITY, RITA LOUIE AS TRUSTEE
AND IN HER OFFICIAL CAPACITY;
AND BRETT YAGEL AS TRUSTEE IN
HIS OFFICIAL CAPACITY

By _____
John F. X. Peloso, Jr.
Andrea Donovan Napp
Robinson & Cole LLP
1055 Washington Blvd., 9th Floor
Stamford, CT 06901
Tel. No.:  (203) 462-7503
Fax No.:  (203) 462-7599

Marci A. Hamilton
36 Timber Knoll Drive
Washington Crossing, PA 18977
Tel. No.:  (215) 353-8984
Fax No.:  (215) 493-1094
Hamilton.Marci@gmail.com

**CERTIFICATION**

This is to certify that a copy of the foregoing was sent by electronic mail and Federal

Express, to the following on this 21ˢᵗ day of April 2014:

Paul Savad, Esq.                          Roman P. Storzer, Esq.
Donna Sobel, Esq.                         Storzer & Green, PLLC
Savad Churgin                             1025 Connecticut Ave., NW, Suite 1000
55 Old Turnpike Road, Suite 209           Washington, DC 20036
Nanuet, NY 10954


John George Stepanovich, Esq.
Stepanovich Law, PLC
516 Baylor Court
Chesapeake VA 23320


Andrea Donovan Napp