<u>Day 1</u>

- Transcript page 55 lines 15-21 – "The library could be accessory to the house of worship if it is part of that use; if it is a stand-along library it is a separate special permit use on its own lot."

- Transcript page 76 line 17 to page 77 line 5 – "No one asked plaintiffs' representatives specifically what the project would be nor did the representatives discuss what the project would be other than that it is to be a Rabbinical College."

- Transcript page 78 lines 3 – 11 – "No."

- Transcript page 95 lines 7 – 11 – "Special permits subject to Broad of Trustees approval are wireless communications facilities, camps, educational institutions, houses of worship, reservoirs, water tanks and water towers."

- Transcript page 109 lines 18 – 23 – "We do not have that information."

- Transcript page 118 lines 15 – 20 – "There was no site plan application in 1999, only a narrative proposing a 100,000 square foot primary school and a 35,000 square foot preschool."

- Transcript page 123 line 3 – 15 "There is no date on the first draft of what was to become Local Law No. 1 or 2001."

- Transcript page 131 lines 16 – 19 – "Unexcavated slopes in excess of 35% are not counted toward net lot area; not more than 25% of unexcavated slopes that are between 15% and 35% are counted toward net lot area."

- Transcript page 131 line 24 to page 132 line 12 – "Local Law No. 1 of 2001 made the changes referred to."

- Transcript page 185 lines 2 – 14 – "Page 22 of the Village of Pomona Master Plan Update states that the Village should be developed at the lowest density of residential development. It also states that in the event the Village wants to help serve the housing needs of elderly residents of the County, it may establish a provision for accessory apartments within existing single family residences."

- Transcript page 205 line 15 to page 206 line 11 – "At this time we have not been able to locate any list of persons who received a hold notice or the certified mail receipts."

- Transcript page 207 lines 9 – 14 – "At this time we have not been able to locate the receipts."

- Transcript page 210 lines 19 – 23 – "Guidance Software was retained in 2009 and completed the imaging in May and June of 2009."


PLAINTIFF'S EXHIBIT
800
8/15/14 – C
PENGAD 800-631-6989

- Transcript page 215 lines 3 – 11 – Additional documents attached.

- Transcript page 233 lines 7 – 13 – The answer remains the same.

- Transcript page 238 lines 13 – 18 –[ I do not know what question is still open here.]

**Day 2**

- Transcript page 10 line 6 – delete answer and add "special permits subject to Zoning Board of Appeals approval are recreational facilities, playgrounds, swimming clubs, tennis courts, non-commercial recreational buildings, public utility substations and other public utility buildings, emergency communications centers."

- Transcript 10 line 7 – "special permits subject to Board of Trustees approval are wireless communications facilities, camps, educational institutions, houses of worship, reservoirs, water tanks and water towers."

- Transcript page 11 line 20 – "The Schapiro property on Halley Drive is 10.63 acres."

- Transcript page 16 line 12 – "There are 10 acres of vacant lots on each side of Halley Drive Extension."

- Transcript page 16 line 22 – "There are 10 acres of vacant lots on each side of Halley Drive Extension."

- Transcript page 38 line 11 – "Net lot area is determined as follows:  no portion of land under water is counted toward net lot area; not more than ¼ of Army Corps, DEC or Village wetlands are counted toward net lot area; not more than ¼ of land within floodplain or within access, utility or drainage easements or rights-of-way are counted toward net lot area; no portion of land with unexcavated slopes in excess of 35% are counted toward net lot area and not more than 25% of land with unexcavated slopes greater than 15% but less than 35% are counted toward net lot area."

- Transcript page 51 line 19 – "The Board of Trustees adopted a negative declaration prior to adopting Local Law No. 5 of 2007."

- Transcript 54 to 55 line 25 – "The National Pollutant Discharge Elimination System regulations (NPDES) is the program administered by the U.S. Environmental Protection Agency whose goal is to limit pollution of the nation's lakes, streams, rivers, and estuaries.  The New York State Department of Environmental Conservation is designated by the EPA to carry out the NPDES program.  The New York program is called the State Pollutant Discharge Elimination System (SPDES).  The DEC issues permits to local governments, called MS4s, who are required to establish stormwater management programs that meet the federal requirements."

- Transcript page 78-79 line 4 – I called the Rockland County Planning Department and they are researching to determine if they have copies of the GML reviews.

- Transcript page 92 line 8 – "The first communication to the Planning Board by Yeshiva Spring Valley was a Narrative in December 1999 for a primary and preschool; the first application submitted to the Planning Board was in 2001 for a 26 lot subdivision. Public hearings were held by the Planning Board monthly until Yeshiva Spring Valley requested that the hearings be adjourned without date."

- Transcript page 94 line 10 – "The Schapiro property of Halley Drive is 10.63 acres."

- Transcript page 101 line 24 – "Prior to Local Law No. 1 of 2001 the minimum frontage requirement for schools was the same as for single family residences."

- Transcript page 105 line 21 – "Prior to Local Law No. 1 of 2001 there was no parking requirement for schools."

- Transcript page 108-109 line 25 – "The definition was changed to include preschool which was not permitted prior to Local Law No. 1 of 2001. In 1999 Yeshiva Spring Valley had proposed both a primary and preschool. Local Law No. 1 of 2001 made preschool a permitted use, subject to special permit."

- Transcript page 109-110 line 10 – "Prior to Local Law No. 1 of 2001 total floor area for schools was the same as for single family residential uses."

- Transcript page 126 line 5 – Amusement parks are not permitted uses in Pomona."

- Transcript page 132 – 133 line 25 – "Mr. Corless does not recall reviewing Local Law No. 5 of 2007."

- Transcript page 135 line 23 – "We have produced the GML letters for Local Law No. 1 of 2007 and Local Law No. 5 of 2007. I do not know if we received the GML letters for Local Law No. 1 of 2001 or for Local Law No. 5 of 2004."

- Transcript page 174 line 8 – "The occupancy limit of the downstairs meeting room is 49."

- Transcript page 191 line 22 – "The Chestnut Ridge Wetlands Protection Law is different from the Pomona law in that the Chestnut Ridge Planning Board, not the Board of Trustees, is the permitting agency and the Planning Board has greater discretion in granting permits."

- Transcript page 194 line 8 –Article 24, the State DEC definition of wetlands is attached;

- Transcript page 206 line 2 – "I checked the laws of a few other Villages, the reasons given to protect wetlands are generally the same in other villages as well as in Pomona."

- Transcript page 211 line 10 – "The Village Planning Consultant was not present at the Board of Trustees meeting at which the Board discussed changing the Zoning Law with respect to camps but had been consulted prior to drafting the local law."

- Transcript page 214 line 6 – Enclosed are the special permit standards for camps.

- Transcript page 214 line 18 – "In 2001 the first application would be for site plan approval so that the Planning Board would be Lead Agency for SEQRA purposes; the special permit application would be submitted after SEQRA was completed by the Planning Board. It should have been the same in 1991."

- Transcript page 214 line 25 – "The minimum lot area for camps is 50 acres; the Zoning Law does not impose a limit on the number of campers – that would be up to the Building Inspector depending upon the size of the facility."

- Transcript page 222 line 6 – "The Planning Board had a site visit to the subject property; the Board of Trustees did not."

## Day 3

- Transcript page 29 line 20 – "There are 1125 houses in the Village"

- Transcript page 53 – 54 line 2 – Enclosed are copies of the violations of the former Hudson Valley Humane Society Property;

- Transcript page 64 line 13 – "These percentages were recommended by Frederick P. Clark Associates. The Board was told that the firm had drafted similar local laws for other municipalities so the Board believed that the percentages were similar to those in other villages. No other percentages were considered."

- Transcript page 92 line 5 – "We do not have a list of other municipalities' local laws that limit dormitories to 10% of total floor area."

- Transcript page 113 line 5 – The State DEC manual can be obtained from the state.

- Transcript page 116 line 6 – We produced the Westchester wetlands booklet as well as discussions by the Board at that time. The State DEC manual can be obtained from the state.

- Transcript pages 127 and 128 line 3 – "The Haverstraw traffic study for the Route 202 property did not address educational uses. The traffic studies conducted by the Town of Ramapo for their Comprehensive Plan are not in the possession of the Village. They can be obtained from the Town of Ramapo."

- Transcript page 141 lien 13 – "The Frederick P. Clark Associates memos that were reviewed and considered by the Board of Trustees in 2000 and 2001 included discussions of traffic."

- Transcript page 176 line 22 – Enclosed are flyers issued by the Cornell Cooperative Extension on our behalf (and on behalf of other Consortium members) for use in our MS4 program.

- Transcript pages 205 and 206 line 2 – "We do not have maps showing the wetlands requested.  Ms. Beall, the Plaintiffs' wetlands expert, had obtained wetlands maps from the Google website and I am sure she can make them available."

## Day 4

- Transcript page 54 line 6 – "The Village of Pomona contains 2.5 square miles.  I am sure an engineer or surveyor can convert that into acres."

- Transcript page 54 line 22 – "We do not have a SEQRA determination in the file for Local Law No. 1 of 2001 but I am sure Frederick P. Clark Associates would not have ignored SEQRA."

- Transcript page 61 line 16 – "The resolution adopting Local Law No. 5 of 2004 does not contain a negative declaration."

- Transcript page 120 line 10 – "The Village has no additional information about Barr Laboratories."

- Transcript page 121 line 5 – "The Village took no action with respect to Barr Laboratories."

- Transcript page 173 line 10 – "We do not have a copy of any letter in the file from Mr. Ortenberg to the Ramapo Planning Board relating to Yeshiva Bais Yaakov."

- Transcript page 204 line 24 – Enclosed is a copy of the Rockland County Department of Planning GML review of proposed Local Law No. 1 of 2007.

§ 24–0105                           FRESHWATER WETLANDS
                                            Art. 24

### Cross References

Adirondack park wetlands, definition of, see Executive Law § 802.

### Library References

Environmental Law ⬦128, 135.
Westlaw Topic No. 149E.
C.J.S. Health and Environment § 173.

### Research References

**Encyclopedias**

NY Jur. 2d, Water § 246, Freshwater Wetlands Conservation as State Concern.
NY Jur. 2d, Water § 251, Generally; Commissioner's Study.
NY Jur. 2d, Water § 260, Land Use Regulations of Freshwater Wetlands.
NY Jur. 2d, Water § 267, Permit to Conduct Regulated Activities; After Issuance of
    Final Map — Exemption for Agricultural Activities.

**Treatises and Practice Aids**

New York Zoning Law and Practice, Fourth Edition § 9A:14, Enforcement Au-
    thority.

## § 24–0107.  Definitions

1.  ''Freshwater wetlands'' means lands and waters of the state as
shown on the freshwater wetlands map which contain any or all of
the following:

(a) lands and submerged lands commonly called marshes,
swamps, sloughs, bogs, and flats supporting aquatic or semi-aquatic
vegetation of the following types:

(1) wetland trees, which depend upon seasonal or permanent
flooding or sufficiently water-logged soils to give them a competitive
advantage over other trees; including, among others, red maple
(Acer rubrum) willows (Salix spp.), black spruce (Picea mariana);
swamp white oak (Quercus bicolor), red ash (Fraxinus pennsylvani-
ca), black ash (Fraxinus nigra), silver maple (Acer saccharinum),
American elm (Ulmus americana), and Larch (Larix laricina);

(2) wetland shrubs, which depend upon seasonal or permanent
flooding or sufficiently water-logged soils to give them a competitive
advantage over other shrubs; including, among others, alder (Alnus
spp.), buttonbush (Cephalanthus occidentalis), bog rosemary (An-
dromeda glaucophylla), dogwoods (Cornus spp.), and leatherleaf
(Chamaedaphne calyculata);

2. "Freshwater wetlands map" shall mean a map promulgated by the department pursuant to section 24–0301 of this article on which are indicated the boundaries of any freshwater wetlands.

3. "Boundaries of a freshwater wetland" shall mean the outer limit of the vegetation specified in paragraphs (a) and (b) of subdivision one of section 24–0107 and of the lands and waters specified in paragraph (c) of such subdivision.

4. "Local government" shall mean a village, town, city, or county.

5. "State agency" shall mean any state department, bureau, commission, board or other agency, public authority or public benefit corporation.

6. "Person" means any corporation, firm, partnership, association, trust, estate, one or more individuals, and any unit of government or agency or subdivision thereof, including the state.

7. "Board" shall mean the freshwater wetland appeals board.

8. "Pollution" shall mean the presence in the environment of man-induced conditions or contaminants in quantities or characteristics which are or may be injurious to human, plant or wildlife, or other animal life or to property.

(Added L.1975, c. 614, § 1; amended L.1977, c. 654, § 2.)

### Historical and Statutory Notes

**L.1977, c. 654 legislation**
L.1977, c. 654, § 2, eff. Aug. 31, 1977, made non-substantive changes throughout section, generally.

**L.1975, c. 614 legislation**
Section effective Sept. 1, 1975, pursuant to L.1975, c. 614, § 5.

### Practice Commentaries

*by Philip Weinberg*

The definition of freshwater wetlands is based largely on the type of foliage, another instance of the Legislature's firmly basing this Act on scientific data regarding wetlands and their importance. The courts should accord great deference to the Department's expertise in determining whether a particular area is a wetland within the meaning of the Act. In the one reported case on the subject, *Rappl & Hoenig Co. v. New York State Dept. of Envtl. Conservation*, 61 A.D.2d 20, 401 N.Y.S.2d 346 (4th Dept., 1978), affirmed, 47 N.Y.2d 925, 419 N.Y.S.2d 490, 393 N.E.2d 485, (1979), the courts held the Act applicable to wetlands artificially created by a developer's flooding of adjacent parcels. The Appellate Division distinguished *State v. Lang*, 52 A.D.2d 921, 383 N.Y.S.2d 400 (2d Dept., 1976), a decision holding a tract not a tidal wetland under article 25, since the court in *Lang* found the

FRESHWATER WETLANDS
Art. 24

GENERAL PROVISIONS; PUBLIC POLICY   § 24–0107
Title 1

Cross References

efinition of, see Executive Law § 802.

Library References

135.

ent § 173.

Research References

eshwater Wetlands Conservation as State Concern.
nerally; Commissioner's Study.
nd Use Regulations of Freshwater Wetlands.
rmit to Conduct Regulated Activities; After Issuance of
on for Agricultural Activities.

Practice, Fourth Edition § 9A:14, Enforcement Au-

s

ds'' means lands and waters of the state as
wetlands map which contain any or all of

rged lands commonly called marshes,
nd flats supporting aquatic or semi-aquatic
types:

ch depend upon seasonal or permanent
ter-logged soils to give them a competitive
es; including, among others, red maple
Salix spp.), black spruce (Picea mariana);
as bicolor), red ash (Fraxinus pennsylvani-
nigra), silver maple (Acer saccharinum),
ricana), and Larch (Larix laricina);

ich depend upon seasonal or permanent
ter-logged soils to give them a competitive
bs; including, among others, alder (Alnus
lanthus occidentalis), bog rosemary (An-
dogwoods (Cornus spp.), and leatherleaf
a);

404

(3) emergent vegetation, including, among others, cattails (Typha spp.), pickerelweed (Pontederia cordata), bulrushes (Scirpus spp.), arrow arum (Peltandra virginica), arrowheads (Sagittaria spp.), reed (Phragmites communis), wildrice (Zizania aquatica), bur-reeds (Sparganium spp.), purple loosestrife (Lythrum salicaria), swamp loosestrife (Decondon verticillatus), and water plantain (Alisma plantago-aquatica);

(4) rooted, floating-leaved vegetation; including, among others, water-lily (Nymphaea odorata), water shield (Brasenia schreberi), and spatterdock (Nuphar spp.);

(5) free-floating vegetation; including, among others, duckweed (Lemna spp.), big duckweed (Spirodela polyrhiza), and watermeal (Wolffia spp.);

(6) wet meadow vegetation, which depends upon seasonal or permanent flooding or sufficiently water-logged soils to give it a competitive advantage over other open land vegetation; including, among others, sedges (Carex spp.), rushes (Juncus spp.), cattails (Typha spp.), rice cut-grass (Leersia oryzoides), reed canary grass (Phalaris arundinacea), swamp loosestrife (Decodon verticillatus), and spiker-ush (Eleocharis spp.);

(7) bog mat vegetation; including, among others, sphagnum mosses (Sphagnum spp.), bog rosemary (Andromeda glaucophylla), leatherleaf (Chamaedaphne calyculata), pitcher plant (Sarracenia purpurea), and cranberries (Vaccinium macrocarpon and V. oxycoccos);

(8) submergent vegetation; including, among others, pondweeds (Potamogeton spp.), naiads (Najas spp.), bladderworts (Utricularia spp.), wild celery (Vallisneria americana), coontail (Ceratophyllum demersum), watermilfoils (Myriophyllum spp.), muskgrass (Chara spp.), stonewort (Nitella spp.), water weeds (Elodea spp.), and water smartweed (Polygonum amphibium);

(b) lands and submerged lands containing remnants of any vegetation that is not aquatic or semi-aquatic that has died because of wet conditions over a sufficiently long period, provided that such wet conditions do not exceed a maximum seasonal water depth of six feet and provided further that such conditions can be expected to persist indefinitely, barring human intervention;

(c) lands and waters substantially enclosed by aquatic or semi-aquatic vegetation as set forth in paragraph (a) or by dead vegetation as set forth in paragraph (b), the regulation of which is necessary to protect and preserve the aquatic and semi-aquatic vegetation; and

(d) the waters overlying the areas set forth in (a) and (b) and the lands underlying (c).

405

utility.

D.  Camps, subject to special permit by the Village Board, provided that:

   (1)  They have a minimum lot area of 50 acres.

   (2)  Access to such facilities shall be limited to improved state, county, town or Village roads which are major collector roads. Subdivision (residential) roads shall not be used for access to such uses.

   (3)  Such facilities shall be adequate to preclude the necessity of pedestrian traffic outside the approved facility.

   (4)  The facility may include bungalows, cottages and tents for temporary use by visitors or patrons of such camps, provided that no heating or plumbing facilities are installed to permit year-round residential communities.

   (5)  One year-round residence for a caretaker may be provided for each 50 acres.

   (6)  Trailers and recreation vehicles shall not be permitted.

   (7)  No building, ballfield, swimming facility or other property use shall be permitted within 125 feet of a residential property line, except that the Planning Board may permit a reduction where, because of topography or the installation of additional buffer landscaping and/or fencing, the Planning Board determines that any potential adverse external effect of such use will be minimized.

   (8)  Site plan approval by the Village of Pomona Planning Board shall be obtained. Such site plan shall address the following:

       (a)  Adequate parking for buses, staff and visitors shall be provided.

       (b)  No camp shall be operated so as to create a nuisance to surrounding properties. The Planning Board shall attach such conditions to the permit and may require such other facilities as are required to protect neighbors from excessive light or as are required to protect neighbors from excessive light or noise. No outdoor public address systems shall be permitted.

       (c)  Water facilities by either well or municipal water shall be provided subject to approval by the Rockland County Health Department.

       (d)  Sewer disposal by municipal sewer or septic tanks shall be provided subject to approval by the Rockland County Health Department.

       (e)  The location, nature and height or buildings for summer residence, dining facilities, temporary structures, walls and fences shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

       (f)  Building coverage, including accessory buildings and structures, shall not exceed 10% of the lot area, nor shall the sum total of the land covered with

§ 130-10                         POMONA CODE                         § 130-10

buildings and parking, including driveways, exceed 25% of lot area, within any residence district.

       (g)  In addition to the special standards described above, the use shall comply with any other special requirements deemed appropriate by the Planning Board.

*Kennels*

# Village of Pomona
## 100 Ladentown Road
## Pomona, New York 10970
## (845) 354-0545 * Fax (845) 354-0604

### Fire Inspector Christopher Kear

Dear Ray,                                                                    5-5-06

   I would like to take this opportunity to thank you for your time during the recent fire and safety inspection of your business. During the inspection, several conditions existed that do not meet the Fire Code of New York State. These conditions were mentioned at the time of the inspection, and need to be corrected as soon as possible. Please find a list of the conditions below. If you have any questions, please contact me at 222-1311. I will follow up with you in a few weeks to check on the progress being made.

*FIRE CODE*
*SECTION 1028 - EAST R.U.*
*8/21/08*
*ED GORZONG - STATE CODES*
*CALLED BACK ]*

**1. SECTION 1003.2.10.1-EXIT SIGNS-WHERE REQUIRED:** Exits and exit access doors shall be marked by an approved exit sign readily visible from any direction of egress travel. Access to exits shall be marked by readily visible exit signs in cases where the exit or path of egress travel is not immediately visible to the occupants. Exit sign placement shall be such that no point in an exit access corridor is more than 100 feet. *EXCEPTION - NOT REQUIRE IN ROOM THAT REQUIRES ONLY ONE(1) EXIT*

SECTION 1003.2.10.4-EXIT SIGN ILLUMINATION: Exit signs shall be illuminated internally or externally. The face of an exit sign illuminated from an external source shall have an intensity of not less than 5 foot candles (54 lux).

SECTION 1003.2.10.5-POWER SOURCE: Exits signs shall be illuminated at all times. To ensure continued illumination for a duration of not less than 90 minutes in case of primary power loss, the exit signs shall be connected to an emergency power system provided from storage batteries, unit equipment or an on site generator.

*Exit lights are needed above the front door in the reception area, over the exit door leading to the outside in the grooming room and over the door leading to the outside in the hallway near the bathroom.*
*In addition, red and white plastic exit signs are to be placed on the interior doors of the kennel area.*

**2. SECTION 605.1 ABATEMENT OF ELECTRICAL HAZARDS:** Identified electrical hazards shall be abated. Identified hazardous electrical conditions in permanent wiring shall be brought to the attention of the code enforcement official. Electrical wiring, devices, appliances and other electrical equipment that is modified or damaged and constitutes an electrical shock or fire hazard shall not be used.

SECTION 605.6 UNAPPROVED ELECTRICAL CONDITIONS: Open junction boxes and open wiring splices shall be prohibited. Approved covers shall be provided for all switch and electrical outlet boxes.

*The electrical junction boxes in the reception area ceiling need covers.*
*The light switch by the exit door near the bathroom needs a plate.*
*The electrical junction box in the hallway ceiling near the bathroom needs a cover.*

**3. SECTION 605.5 EXTENSION CORDS:** Extension cords and flexible cords shall not be a substitute for permanent wiring. Extension cords and flexible cords shall not be affixed to structures, extended through walls, ceilings or floors, or under doors or floor coverings, nor shall such cords be subject to environmental damage or physical impact. Extension cords shall be used only with portable appliances.

*The extension cord being used for he dryer needs to be removed. The dryer must be plugged directly into a wall outlet.*

08/13/2014  03:52    8453543861          ULMAN LAW OFFICES                    PAGE  18

# DOMINICK R. PILLA ASSOCIATES, P.C.
## CONSULTING    ENGINEERING    +    ARCHITECTURE

F.   Pool House ~ One Story Shed (North West)

1.   Used for storage only.
2.   Pool has been filled in as noted in the documentation from the building department.
3.   Properly setback
4.   No structural issues were noted with the building.

05/12/2008  14:09   8453543861              ULMAN LAW OFFICES              PAGE  01

DORIS F. ULMAN
ATTORNEY AT LAW
134 CAMP HILL ROAD
POMONA, N. Y. 10970

(845) 354-6436                                                    FAX (845) 354-3881

May 12, 2008

Daniel E. Bertolino, Esq.
407 North Highland Avenue
Upper Nyack, New York 10960

       Re: Hudson Valley Humane Society
          200 Quaker Road
          Pomona, New York 10970

Dear Dan:

      In response to your letter of May 8, 2008, I have asked the Building Inspector to contact the Humane Society to obtain permission to inspect the premises with the Fire Inspector. As you know, the Village needs the owner's permission to enter the premises. If the owner continues to deny access, we will attempt to get a court order based upon your engineer's report.

      Please do not hesitate to call if you have any questions.

                  Very truly yours,

                  Doris F. Ulman

DFU:b

cc: Michael Zrelak

BY FAX AND MAIL

08/13/2014  21:51    8453543861          ULMAN LAW OFFICES              PAGE  02



# COUNTY OF ROCKLAND
## DEPARTMENT OF PLANNING
Building T
50 Sanatorium Road
Pomona, New York 10970
(845) 364-3434
Fax. (845) 364-3435

C. SCOTT VANDERHOEF
County Executive

SALVATORE CORALLO
Commissioner

ARLENE R. MILLER
Deputy Commissioner

December 18, 2006

Pomona Village Board
100 Ladentown Road
Pomona, NY 10970

Tax Data:

Re: GENERAL MUNICIPAL LAW REVIEW;  Section 239 L and M

Map Date:                                          Date Review Received: 12/6/2006

Item:  *VILLAGE OF POMONA - DORMITORY BUILDINGS  (POM-49)*

Zoning code amendment to allow dormitory buildings as an accessory use in the R-40 zoning district.
Throughout the Village of Pomona.

Reason for Referral:

State and County roads, state and county parks, Long Path, county streams, municipal boundaries

The County of Rockland Department of Planning has reviewed the above item. Acting under the terms of the above GML powers and those vested by the County of Rockland Charter, I, the Commissioner of Planning, hereby:

*Recommend the following modifications*

1  Specific parking requirements must be provided for the proposed accessory use. Currently, there are no specific parking requirements for schools of general instruction. Parking standards need to be provided for both the school and the dormitory uses to ensure that adequate parking exists onsite and to prevent unsafe traffic situations from arising, especially along state and county roads, due to insufficient parking onsite.

2  The Village Zoning Ordinance currently requires a minimum lot area of five acres for schools of general instruction. Since the dormitory use could take up to 20% of the lot area onsite, the village may want to consider increasing the overall lot area to reflect this added use.

Page 1 of 2

POM0011929

08/13/2014  21:51      8453543861              ULMAN LAW OFFICES                    PAGE  03

## VILLAGE OF POMONA - DORMITORY BUILDINGS  (POM-49)

*Salvatore Corallo*
Salvatore Corallo
Commissioner of Planning

cc: Mayor Herbert Marshall, Pomona
New York State Department of Transportation
Rockland County Department of Highways
Rockland County Department of Health
Rockland County Sewer District #1
Towns of Ramapo and Haverstraw
Villages of Wesley Hills & New Hempstead

*NYS General Municipal Law Section 239 requires a vote of a "majority plus one" of your agency to act contrary to the above findings.

*The review undertaken by the Rockland County Planning Department is pursuant to, and follows the mandates of Article 12-B of the New York General Municipal Law. Under Article 12-B the County of Rockland does not render opinions, nor does it make determinations, whether the item reviewed implicates the Religious Land Use and Institutionalized Persons Act. The Rockland County Planning Department defers to the municipality forwarding the item reviewed to render such opinions and make such determinations if appropriate under the circumstances.*

*In this respect, municipalities are advised that under the Religious Land Use and Institutionalized Persons Act, the preemptive force of any provision of the Act may be avoided (1) by changing a policy or practice that may result in a substantial burden on religious exercise, (2) by retaining a policy or practice and exempting the substantially burdened religious exercise, (3) by providing exemptions from a policy or practice for applications that substantially burden religious exercise, or (4) by any other means that eliminates the substantial burden.*

*Proponents of projects are advised to apply for variances, special permits or exemptions, hardship approval or other relief.*

Page 2 of  2

POM0011930

From:      Nick Sanderson <nick.sanderson@pomonavillage.com>
Sent:      Tuesday, September 4, 2007 8:42 AM
To:        Lisa Thorsen <lisa.thorsen@pomonavillage.com>
Subject:   Re: [Fwd: Memo to Village officials and employees - Docuemtn Hold and Preservation]

Yes, please - that is a good idea ...

nick

 Please consider your environmental responsiblity: before printing this email, ask yourself whether you need a hard copy !

Lisa Thorsen wrote:

> Nick:
> Do you also want to include:
> Audrey Koenig - Secretary/Minutes for planning and zoning boards.
> Eloise Litman
> Gde
>
> Please let me know at your convenience.
> Lisa
>
> Nick Sanderson wrote:
>
>> Lisa, please make sure that the following also get this memo from me:
>>
>>   • Joe Corless
>>   • Scott Shedler
>>   • Malverne Toll
>>
>>
>> Thanks
>>
>>
>>
>> -------- Original Message --------
>> Subject:Memo to Village officials and employees - Docuemtn Hold and Preservation
>>    Date:Wed, 29 Aug 2007 14:41:15 -0400
>>    From:Nick Sanderson <nick.sanderson@pomonavillage.com>
>>      To:Lisa Thorsen <lisa.thorsen@pomonavillage.com>
>>
>>
>> Lisa,
>>
>> in addition to the previous memo to trustees, attached is a memo from me to all village
>> employees and officials (you do not have to repeat to the trustees).
>> Please print and hand to all employees who work at village hall (in a sealed envelope)
>> including yourself.

POM0000001

Also please send to each of the current Planning and ZBA members and alternates at their home addresses.

Please keep a record of who we sent to.

There will be a separate letter to ex-employees, mayor, trustees and planning board/ZBA members coming out later.

Thanks

--

Regards,
Nick Sanderson, Mayor
Village office 354-0545
Cell 845-596-9433
www.pomonavillage.com

 Please consider your environmental responsibility: before printing this email, ask yourself whether you need a hard copy !

--

Regards,
Nick Sanderson, Mayor
Village office 354-0545
Cell 845-596-9433
www.pomonavillage.com

 Please consider your environmental responsibility: before printing this email, ask yourself whether you need a hard copy !

--

*Lisa Thorsen*
Village Clerk
Village of Pomona
phone: (845) 354-0545
e-mail: lisa.thorsen@pomonavillage.com
web site: www.pomonavillage.com

| | |
|---|---|
| From: | Nick Sanderson <nick.sanderson@pomonavillage.com> |
| Sent: | Wednesday, August 29, 2007 3:03 PM |
| To: | Ian Borsook <ian.borsook@pomonavillage.com> |
| Subject: | Document Hold and Preservation Notice |
| Attach: | document hold and preservation memo 8-29-07.pdf |

Ian - attached is a memo that requires all village employees and officials to preserve documents - this is related to the lawsuit brought by the Congegation Rabbinical College of Tartikov againstthe Village et al.

Please read it very carefully. It is extremely important that we do not destroy any documents or electronic records.

If you have any questions, please contact me or Doris.

Thanks

--

Regards,
Nick Sanderson, Mayor
Village office 354-0545
Cell 845-596-9433
www.pomonavillage.com

 Please consider your environmental responsibility: before printing this email, ask yourself whether you need a hard copy !

POM0036728



Nick Sanderson
Mayor

CELL (845) 596-9433
OFFICE TEL 845-371-2505
OFFICE FAX 845-371-2506

## VILLAGE OF POMONA
100 Ladentown Road
Pomona, NY 10970
tel 354-0545   fax 354-0604
*www.pomonavillage.com*
email: nick.sanderson@pomonavillage.com

Wednesday, August 29, 2007

To:      **All current Village officials and employees**
From:    **Nick Sanderson**

**DOCUMENT HOLD AND PRESERVATION NOTICE – PRIVILEGED AND CONFIDENTIAL**

RE:    Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, Nicholas Sanderson, Ian Banks, Alma Sanders Roman, Rita Louie and Brett Yagel.

As you may know, the Village of Pomona and our current officials (the Mayor and Trustees listed above) were sued recently in a RLUIPA lawsuit by the Congregation Rabbinical College of Tartikov, Inc. ("the Congregation") and other individuals and entities concerning the Congregation's property at the intersection of Routes 202 and 306 in Pomona.  The Plaintiffs are a religious corporation (the Congregation) and several Orthodox Hasidic Jewish individuals who allegedly wish to attend as students or teach as lecturers a rabbinical college that the Plaintiffs wish to build, as well as a religious corporation.  The Plaintiffs assert several claims all centered around their allegation that the Congregation wants to propose to build a rabbinical college and related multi-family housing, synagogues, courtrooms, and libraries on the property.  They have brought suit against the Defendants under various federal and state laws such as RLUIPA, contending that the Village's zoning laws violate the U.S. and New York State Constitutions and discriminate against them.  We intend to vigorously defend against these claims.

DOCUMENT HOLD AND PRESERVATION MEMO 8-29-07.WPD

Aug 29, 2007
Page 2 of 3

While the case is pending, we are required by Court rules to preserve and maintain all relevant documents and we need your help and cooperation in this regard. During the course of this litigation, we will be asked to produce documents that may relate to the lawsuit and the claims made by us and by the Plaintiffs. In general terms, the documents to be preserved and held onto include but are not limited to the following:

- documents relating to the Village zoning laws and revisions and amendments to those laws,

- documents relating to the Plaintiffs' property (as described above) and the Congregation's purchase of the property,

- documents relating to the Patrick Farms property in Pomona,

- documents relating to Village public hearings and Village meetings concerning Plaintiffs or their property, and

- documents relating to any communications with or about Plaintiffs or their representatives including those at public hearings.

The documents that we ask you to preserve include all hard copy paper documents as well as all electronic and computer-stored documents (including all e-mail messages and attachments, calendar or diary entries, contacts, corporate or office documents such as Word, PowerPoint or Excel, voicemails, and audiotapes). The electronic documents may include items from your personal e-mail account if you used it for Village-related business or communications, or documents or emails on your personal home computer's hard drive, if you used your personal home computer for Village-related work. These documents include all originals, copies, notes, memos, drafts and preliminary form documents.

You should also not delete, discard, alter or destroy any electronic, computer or hard copy paper documents. If you have any plans or personal practice of discarding or destroying any documents, we ask that you suspend them immediately until such time as we ascertain all relevant documents, and collect and organize them. You should not, for example, delete from your computers or servers any e-mails or computer files or discard any paper documents. You must preserve and maintain everything in the form in which it now exists. It is important that any relevant documents you may have be preserved and maintained. Failure to preserve documents that we are required to hold onto

POM0036730

Aug 29, 2007
Page 3 of 3

could provide significant obstacles and cause serious adverse consequences or penalties to our defense in the case.

We therefore request that you hold onto and preserve all documents as described above that were dated, created or received by you from January 1, 1990 through the present date or that cover that time period.

Our lawyers will be in contact with us shortly to collect and segregate documents and to ask about whatever documents you might have that are relevant to the case. We ask that you please cooperate with them and share whatever files you have with them. They will work with me to identify relevant documents in your files and will avoid as best they can searches into your personal files or any Village files that we may need for operations. We appreciate your assistance.

Please contact me if you have any questions or concerns whatsoever. If you are unsure whether you have relevant documents, please hold onto the documents you do have and contact me immediately.

Thank you very much in advance for your help and cooperation in this regard.

POM0036731

# VILLAGE OF POMONA

100 Ladentown Road
Pomona, New York 10970
TEL: (845) 354-0545
FAX: (845) 354-0604
www.pomonavillage.com

May 14, 2008

Mr. Ray Munday,
Director of Humane Society
200 Quaker Road
Pomona, New York 10970

RE: Hudson Valley Humane Society, et al.

Dear Mr. Munday:

Please be advised that we received a copy (attached) of the field report prepared by by Dominic R. Pilla Associates, for the above-referenced property, with results of their findings.

Please note that the Building/Fire and Zoning violations cited need to be addressed by this department. Please call this office (845-354-0545), within 10-days from this letter to arrange a date for an on-site internal inspection by this department.

Very truly yours,

Michael R. Zrelak, Jr., R.A. (os)
Building Inspector

MZ:cl

cc: Nick Sanderson, Mayor
    Doris Ulman, Esq., Village Attorney
    Daniel Bertolino, P.C.
    File

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Postage | $ .42 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.22 |

Postmark Here

Sent To: _Mrs. Ray Munday, Dir. Humane Society_
Street, Apt. No.; or PO Box No. _200 Quaker Road_
City, State, ZIP+4 _Pomona, NY 10970_

PS Form 3800, April 2002

4. SECTION 1003.2.11-MEANS OF EGRESS ILLUMINATION: The means of egress, including the exit discharge, shall be illuminated at all times the building space served by the means of egress is occupied.

SECTION 1003.3.11.2-ILLUMINATION EMERGENCY POWER: The power supply for means of egress illumination shall normally be provided by the premise's electrical supply. In the event of a power supply failure, an emergency electrical system shall automatically illuminate.

*Emergency lighting needs to be installed in the reception area and in the hallway outside the kitchen. Consider installing a combination exit and emergency light.*

5. SECTION 906-PORTABLE FIRE EXTINGUISHERS: Portable fire extinguishers shall be installed in all occupancie Within 30' of commercial cooking equipment. Within a travel distance of not more than 75' in any direction. In areas where flammable or combustible liquids are stored, used or dispensed. On each floor of structures under construction, except R-3 (residential) occupancies. Where required by State Codes Table 906.1. Special hazard areas, including but n limited to laboratories, computer rooms and generator rooms where required by the code enforcement official.

SECTION 906.5-CONSPICUOUS LOCATION: Extinguishers shall be located in conspicuous locations where they wi be readily accessible and immediately available for use. These locations shall be along normal paths of travel, unless th code enforcement official determines that the hazard presented indicates the need for placement away from normal path of travel.

SECTION 906.7-HANGERS AND BRACKETS: Portable fire extinguishers, not housed in cabinets, shall be installed o the hangers or brackets supplied. Hangers or brackets shall be securely mounted to the anchored surface in accordance with the manufacturer's installation instructions.

*You have several fire extinguishers in the building. All fire extinguishers need to be inspected on an annual basis. A local fire equipment company can assist you in this matter. You can also set up an annual schedule with a particular company. In addition, the fire extinguishers need to be mounted in the following locations:*

- *One in the grooming room.*
- *One in the reception area.*    MUST BE MOUNTED
- *One in the P.R. room.*    TOP NO HIGHER THAN 5'
- *One in the kennel area.*

*Thank You,*

*Chris Kear*

# VILLAGE OF POMONA

100 Ladentown Road
Pomona, New York 10970
TEL: (845) 354-0545
FAX: (845) 354-0604
www.pomonavillage.com

August 22, 2007

Daniel E. Bertolino, P.C.
Law Offices
407 North Highland Avenue
Upper Nyack, NY  10960

Re:  Hudson Valley Humane Society

Dear Mr. Bertolino:

Please be advised, the only violations of record are fire violations noted by the previous fire inspector. Today, I am not aware if any of those violations have been corrected. I personally have not done an internal inspection of the buildings.

If you need any additional information, please do not hesitate to contact me.

Very truly yours,

Michael R. Zrelak, Jr. RA

MZ/lt
cc:  Doris Ulman, Esq.

**DANIEL E. BERTOLINO, P.C.**
LAW OFFICES
407 NORTH HIGHLAND AVENUE
UPPER NYACK, NEW YORK 10960
(845) 358-9700
FAX: (845) 358-9707

**DANIEL E. BERTOLINO**
dbertolino@debpc.com

Donna L. Flynn, Paralegal
dflynn@debpc.com

**LAURIE A. DORSAINVIL**
ldorsainvil@debpc.com

April 28, 2008

VIA: Certified Mail, RRR

Attn: Michael Zrelak
        Building Inspector
Village of Pomona Building Department
100 Ladentown Road
Pomona, New York 10970

Re:    **Mark T. Schober v. Hudson Valley Humane Society, et al.**
Premises:    **200 Quaker Road**
                  **Pomona, New York 10970**

Dear Mr. Zrelak:

Enclosed herewith please find Field Report prepared by Dominick R. Pilla Associates, P.C., which reflects the results of a site visit which occurred on April 14, 2008. As you can see from the report, there are a number of violations extant at the premises. The violations appear to include fire code violations as well as zoning code violations regarding the various uses of the buildings.

On behalf of Mark Schober (who is the owner and holder of 66⅔ % of the mortgage and note on the property, in other words; he is "the bank"), we hereby request that the Village issue zoning violations to the property owner without further delay. Some of these violations appear to be threats to the health, safety and welfare of the individuals who reside at the premises, and those individuals who are employed by the Hudson Valley Humane Society. Illegal apartments should not be tolerated.

This is to put the Village on formal notice that we will hold the Village responsible if no action to enforce your zoning code is taken *immediately*.

Very truly yours,

*Daniel E. Bertolino/alf*

Daniel E. Bertolino

DEB:dlf
enc.
cc:    Mr. Mark T. Schober

# DOMINICK R. PILLA ASSOCIATES, P.C.
## CONSULTING    ENGINEERING    +    ARCHITECTURE

## FIELD REPORT

**Project Name:** Hudson Valley Humane Society
**Location:** 200 Quaker Road, Pomona, New York
**DRP Project #:** 08-033

**Date of site visit:** 4/14/08
**Time Arrived:** 10:45 PM
**Time Departed:** 11:45 PM
**Weather Conditions:** Mild and Sunny

**Parties Present:**

| | | |
|---|---|---|
| Ann Marie Galdio | Pomona Park Pet Care Center | |
| Dominick R. Pilla | Dominick R. Pilla Associates PC | |
| Matthew Seiff | Dominick R. Pilla Associates PC | |

### Purpose of Site Visit:

To perform general visual observations of the property and buildings with an emphasis on the structural integrity and compliance with all applicable codes.

### Observations and Comments:

A. Kennel Building

1. Certificate of Occupancy issued in 1970.
2. New CMU walls and concrete floor slabs were added at some point. No permit was found in the building department records for the work and no Certificate of Occupancy was issued.
3. Building is being used for grooming, office and boarding of Dogs as allowed by the BK (Boarding Kennel) Zoning designation.
4. As per the letter to Raymond Mundy by Fire Inspector Christopher Kear dated 5-05-06, the conditions stipulated were not all met. The list of conditions were as follows:

   - Exit lights are needed above the front door in the reception area, over the exit door leading to the outside in the grooming room and over the door leading to the outside in the hallway near the bathroom. In addition red and white plastic exit signs are to be placed on the interior doors of the kennel area.
   - The electrical junction boxes in the reception area ceiling need covers
   - The light switch by the exit door near the bathroom needs a plate
   - The electrical junction box in the hallway ceiling near the bathroom needs a cover
   - The extension cord is being used for the dryer needs to be removed. The dryer must be plugged directly into a wall outlet.
   - Emergency lighting needs to be installed in the reception area and in the hallway outside the kitchen. Consider installing a combination exit and emergency light.
   - Fire extinguishers need to be mounted in the grooming room, the reception area, the kennel area and the PR room.

5. Exit lights were not located over the exit doors. There was only one non illuminated exit sign visible leading out of the kennel area.
6. Emergency lighting was not visible and fire extinguishers were not clearly accessible in the required areas.

23 Depew Avenue, Nyack NY 10960   Tel: 845.727.7793  Fax: 845.727.6377

# DOMINICK R. PILLA ASSOCIATES, P.C.

CONSULTING     ENGINEERING     +     ARCHITECTURE

7. A follow up inspection by the current Fire Inspector is recommended to verify compliance with the initial fire inspection.
8. The mechanical room was unkempt and proper clearance setbacks were not provided.
9. The Kennel Building and the associated kennel areas seem adequately maintained and the dogs were properly separated and fenced as required.
10. No structural issues were noted with the building.

B. Main Building (office and apartments)

1. Predates Zoning built in 1865
2. Certificate of Occupancy for a 3 room addition was issued in 1972.
3. Foundation looks newer than original wood framing. No documentation was any additional work to the foundation of the original house.
4. Main house is used as an office currently which would require proper exit signs, emergency lighting and egress paths provided with the change of use. I assume the house was originally used as a residence and is now clearly used as an office and accessory use to board cats.
5. The Main house appears neglected. There are tripping hazards, and both the first floor and the second floor need to be cleaned of dirt and debris.
6. The kitchen is being used to board cats. It looks organized and is the cleanest area of the house.
7. The second floor is not maintained and is presently used to quarantine sick animals in the bathroom.
8. There is a bedroom upstairs that appears to not be in use because of its abandoned condition, but should not be there if it is an office. Also the conditions are not suitable for habitation.
9. The door to apartments (3 room addition) was not accessible so that area of the house was not entered. Ann Marie verified that the 3 room addition was presently being rented as apartments.
10. No structural issues were noted with the building.

C. Barn – 2 Story Building (South West)

1. No Certificate of Occupancy or building permit on file.
2. The structure could have been built along with the original house which predates Zoning. Further investigation would have to be done to determine that.
3. First floor has storage compartments which were viewed but not investigated.
4. Second floor has kennels for the boarding of cats.
5. The stairs to the second floor do not meet egress requirements and there is no second means of egress visible.
6. No structural issues were noted with the building.

D. Storage Building – One Story building (North East)

1. No Certificate of Occupancy on file.
2. Used as storage and kennels with outside pens.
3. No structural issues were noted with the building.

E. Storage Shed – One Story shed

1. Used for storage only.
2. Looks like there is a setback issue w/ the Storage building. Building need to have a setback at least the height of the highest wall.
3. No structural issues were noted with the building.

23 Depew Avenue, Nyack NY 10960  Tel: 845.727.7793  Fax: 845.727.6377

# DOMINICK R. PILLA ASSOCIATES, P.C.
## CONSULTING    ENGINEERING    +    ARCHITECTURE

F.   Pool House – One Story Shed (North West)

1.   Used for storage only.
2.   Pool has been filled in as noted in the documentation from the building department.
3.   Properly setback
4.   No structural issues were noted with the building.



# VILLAGE OF POMONA

100 Ladentown Road
Pomona, New York 10970
TEL: (845) 354-0545
FAX: (845) 354-0604
www.pomonavillage.com

May 7, 2008

Mr. Mark T. Schober
200 Quaker Road
Pomona, New York 10970

RE: Hudson Valley Humane Society

Dear Mr. Schober:

Please be advised that we received a copy (attached) of the field report prepared by by Dominic R. Pilla Associates, for the above referenced property, with results of their findings.

Please note that the Building, Fire and Zoning violations cited need to be addressed by this department. Please call this office (845-354-0545) to arrange a date for an on-site internal inspection by this department.

Very truly yours,

Michael R. Zrelak, Jr., R.A. (cs)
Building Inspector

MZ:cl

cc: Nick Sanderson, Mayor
    Doris Ulman, Esq., Village Attorney
    Daniel Bertolino, P.C.
    File

*Landscapers and Site Contractors are invited to a dinner seminar on*

# Complying with Stormwater Management Guidelines

**It is important that you attend because these NYS DEC regulations will affect your business!**

The New York State Department of Environmental Conservation is committed to preserving our water quality
by ensuring that rain- and storm-water is free from litter, pesticides, fertilizers, soil runoff, and landscape debris
such as leaves and grass clippings.  As a landscaper or site contractor, you have a responsibility to use
Best Management Practices (BMPs), particularly on larger sites, to prevent erosion and pollution.
In this seminar, you will learn what is expected of you by state and local authorities,
in addition to BMPs that you should incorporate into your landscape work.

Thursday, February 12, 2009
*(Snow date = Feb. 19)*
La Terrazza Restaurant, 291 South Main Street, New City, NY 10956

6:30 pm — Registration & socializing
7:00 pm — Dinner (optional)
**8:00 pm — Stormwater Presentation**
9:00 pm — Adjourn

**INSTRUCTOR**
John Giardiello, PE, CPESC, CPSWQ, CPCA
-- A Certified Professional in Erosion & Sediment Control, Stormwater Quality, and Code Administration --
And Director of Orangetown Building, Zoning, and Planning Administration and Enforcement

---

**PRE-REGISTRATION IS REQUIRED BY FEBRUARY 6**

<u>TO PRE-REGISTER:</u>

- Register at www.PLARC.com (click on Meeting Notice)
  to submit reservation form
- OR -- Call Maggie Schaefer at 845-369-1186

<u>CHOICES:</u>

____ Dinner AND seminar ($35/person)
payable at the door to PLARC

____ Seminar only (free)

---

**This Program is Sponsored By**





Cornell University
Cooperative Extension
Rockland County

*You're Invited to ...*

a free seminar for Planning & Zoning Board of Appeals Members
Town & Village Board Members

# What to Look for in a Stormwater Pollution Prevention Plan
## Including Low Impact Development Considerations

As a member of a village, town, planning or zoning board of appeals, you are responsible for ensuring that your municipality and its contractors comply with the *NYS Stormwater Management Guidelines* issued by the NYS Department of Environmental Conservation.
*-- Two hours will be given to attendees of the seminar towards the annual four-hour State-required training hours for planning and Zoning Board of Appeals members. --*

## In this seminar, you will learn the answers to ...

- What is a Stormwater Pollution Prevention Plan (SWPPP) and why is it important?

- When is a SWPPP required for a development project?

- What is the role of the Planning and Zoning Board in reviewing and approving a SWPPP?

- What should Planning and Zoning Boards be asking the Town or Consulting Engineer to look for in a SWPPP?

- What are the benefits of using low impact practices in development projects?

- What low impact practices can be used in development projects and SWPPPs under the DEC's regulations?

**Instructor:** Barbara Kendall, Watershed Special Projects Coordinator for the NYSDEC Hudson River Estuary Program and the NYS Water Resources Institute at Cornell – and author of several publications on the Stormwater Phase 2 Program.

**Date:** Tuesday, February 24, 2009 from 7:00 – 9:00 pm

**Place:** Rockland County Fire Training Center, 35 Firemen's Memorial Drive, Pomona, NY 10970

**Pre-registration** is required by Friday, February 20. To pre-register contact Caryn Singer at Cornell Cooperative Extension at 845-429-7085 ext. 117 or email at cs356@cornell.edu.



Rockland Municipal Planning Federation



Cornell University
Cooperative Extension
Rockland County

## Stormwater Management for Landscapers
## ROSTER OF ATTENDEES

*A presentation at the meeting of the Professional Landscape Association of Rockland County*
*February 12, 2009 at 6:30 pm at La Terrazza Restaurant, New City, NY*
*By John Giardiello, Director of Orangetown Building, Zoning, and Planning Administration and Enforcement*

| NAME | COMPANY | CONTACT INFORMATION |
|---|---|---|
| 1.  ? (can't read name on roster) | Nature's Keeper, New City | 353-9050 |
| 2.  Adamo, Alex | Pro Cut, West Nyack | 727-6949  alex@productlandscaping.com |
| 3.  Beaudry, Bryan | Second Nature, Pearl River | 735-2331 |
| 4.  Beaudry, John | " | |
| 5.  Christensen, Jim | Terra Firma, Spring Valley | |
| 6.  Curti, Kimberley | Curti's Landscaping, Nanuet | 627-2491 |
| 7.  Eldridge, Barry | Environmental Chemical, Spring Valley | |
| 8.  Ferguson, J. | Ferguson Landscaping, Pearl River | 364-9200  jgferg@optonline.net |
| 9.  Fowler, Bill | Pro Cut, West Nyack | 727-6949  bill@productlandscaping.com |
| 10. Holland, Joe Jr. | Majestic Landscaping, New City | 708-2988 |
| 11. Johnson, Scott | North Eastern Landscaping, Stony Point | 429-2710 |
| 12. Lang, Floyd | Custom Lawns, Spring Valley | 354-4494 |
| 13. Miller, Frank | Frank Miller's Landscaping, New City | 634-4531 |
| 14. Olson, Mike | MRO, Nanuet | 624-8147 |
| 15. Schaefer, Maggie | 4 Ever Green, Suffern | 369-1186 |
| 16. Schaefer, Mark | 4 Ever Green, Suffern | 357-4541 |
| 17. Schepis, Keith | KJS, New City | 634-7308 |
| 18. Smith, Dan | Custom Gardens, Pearl River | 735-6165  Dgs0331@verizon.net |
| 19. Trader, Paul | Cornell Cooperative Extension, Stony Point | 429-7035 ext. 107 |

# Jerry Kobre

| | |
|---|---|
| **From:** | Paul Trader [pwt2@cornell.edu] |
| **Sent:** | Tuesday, March 24, 2009 8:06 AM |
| **To:** | a_gromack@town.clarkstown.ny.us; fjw2169882@aol.com; supervisor@ramapo-ny.gov; d_jetson@town.clarkstown.ny.us; supervisor@fcc.net; emmavelez@yahoo.com; bksaiyang5@yahoo.com; hphaverstraw@aol.com; suffernmayor@suffernvillage.com; highway@otownhwy.org; Jerry Kobre; info; villageclerk; southnyackdpw@aol.com; jcaruso@maserconsulting.com; joe@corless.com; deptpubworks@suffernvillage.com; j_simoes@town.clarkstown.ny.us; obzpae@fcc.net; jloch@aol.com; l_kalarickal@town.clarkstown.ny.us; unyack@optonline.net; unclerk@cptonline.net; mayor@villageofmontebello.com; dmastroeni@villageofmontebello.com; sphighway@fcc.net; Mikeesmay@aol.com; sadowskim@ramapo-ny.gov; inspectorruben@yahoo.com; smunno@otownhwy.org; dzurinkot@ramapo-ny.gov; supervisor@orangetown.com; sharant@ramapo-ny.gov; highway@town.clarkstown.ny.us; quinnc@co.rockland.ny.us; hegartym@co.rockland.ny.us; rdelo@orangetown.com; supervisor@townofstonypoint.org; jdenise@westhaverstraw.org; dpwpiermont@juno.com; nyackdpw2@msn.com; villageclerk@nyack.org; johncincotta@nyack.org; marielorenzini@nyack.org; cdeerhunter1959@yahoo.com; pwt2@cornell.edu; MillerA@co.rockland.ny.us; tpurvis@ghve.com; jbubenko@ghve.com; devinee@co.rockland.ny.us; leslie.s@pomonavillage.com; mayor@wesleyhills.org; whvclerk@optonline.net; dpwpiermont@juno.com; kbulley@westhaverstraw.org; beersa@co.rockland.ny.us; DLindsay@riddicassoc.com; vze323vn@verizon.net; emancuso@brookerengineering.com; tvanderbeek@ghve.com; kfitzpatrick@ghve.com; mcarmona@villagespringvalley.com; kmaher@townofstonypoint.org; fleischf@co.rockland.ny.us |
| **Subject:** | Seminar Summary for Stormwater Annual Report |
| **Attachments:** | Landscaper Seminar on Stormwater Mgmt - 2-12-9.doc; Municipal Planning & Zoning Board Training 2-24-9.doc |

Dear Stormwater Consortium Members:

As you may recall, last month we held two seminars on stormwater management -- one for Landscapers, and the other for Municipal Planning & Zoning Boards.

Attached are two files; each contains the roster of attendees, the promotional flyer, and the evaluation summary. I tried to separate the municipal attendees by towns & villages, to make reporting easier for you. I hope you find these documents helpful.

I look forward to seeing you later today at the Stormwater Consortium meeting (Tuesday, March 24 at 2:00 pm at Cornell Cooperative Extension, 10 Patriot Hills Lane, Stony Point, NY 10980).

Sincerely,
Paul Trader
Cornell Cooperative Extension

Paul Trader
Executive Director, Cornell Cooperative Extension of Rockland
10 Patriot Hills Drive, Stony Point, NY 10980
Phone - 845-429-7085 ext. 107
Fax - 845-429-8667
Email - pwt2@cornell.edu
www.rocklandcce.org

# New Requirements for Small Construction Projects



---

Did you know that if your project disturbs *one or more acres* of land, you must have a permit for stormwater discharges from the site?

## Why?

- Excessive amounts of sediment and debris from construction sites are often washed into local waterbodies during a storm. Construction vehicles can leak fuel, oil, and other harmful fluids that can be picked up by stormwater as well.

## What to Do?

- Under a new regulation, the Department of Environmental Conservation (DEC) requires that before starting construction, a Stormwater Pollution Prevention Plan (SWPPP) must be developed. The SWPPP is a plan for erosion and sediment control, and for installation of treatment for post-construction runoff.

- *Before construction activity begins,* a Notice of Intent must be filed with the DEC affirming that a SWPPP has been prepared and is being implemented.

- If you begin construction before filing an NOI and obtaining coverage, you may be subject to a penalty of up to $37,500 per violation per day.

## Think Ahead!



- It could take up to sixty (60) business days to get a permit, but often only takes five (5) business days. The length of time depends on the type of construction site involved. It also depends on the existing levels of pollution in the waterbodies to which stormwater from the site will discharge.

## For More Information

- Visit our website:
  www.dec.state.ny.us/website/dow/mainpage.htm

- If you don't have web access, you can obtain written material by calling 518-402-8265. Or call the local DEC regional office.

---

## Tools Available from the DEC:

**Permit**

SPDES General Permit for Stormwater Discharges from Construction Activity (GP-02-01)

**Guidance**

Overview of the SPDES General Permit for Stormwater Discharges from Construction Activities

Instruction Manual for Stormwater Construction Permit

**Technical Information**

New York State Stormwater Management Design Manual

NYS Standards and Specifications for Erosion and Sediment Control (also known as the Blue Book)

New York Contractor's Erosion and Sediment Control Field Notebook

George E. Pataki, Governor
State of New York



Erin M. Crotty, Commissioner
NYS Dept. of Environmental Conservation