UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI WOLF BRIEF, RABBI HERMEN KAHANA,
RABBI MEIR MARGULIS, RABBI MEILECH MENCZER,    Case No. 07-CV-6304(KMK)
RABBI JACOB HERSHKOWITZ, RABBI
CHAIM ROSENBERG, and RABBI DAVID A.
MENCZER,

                                   Plaintiffs,

-against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF    June 29, 2020
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS as Trustee and in his official capacity,
ALMA SANDERS ROMAN as Trustee and in her official capacity,
RITA LOUIE as Trustee and in her official capacity,
and BRETT YAGEL, as Trustee and in his official capacity,

                                   Defendants.
-------------------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

John F. X. Peloso, Jr. (JP6110)
Thomas J. Donlon, (TD5850)
Robinson & Cole LLP
1055 Washington Blvd.
Stamford, CT 06901

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.     ATTORNEY'S FEES SHOULD BE DENIED BASED ON TARTIKOV'S
LACK OF SUCCESS ............................................................................................... 1

     A.     Tartikov's Hours Are Not Reasonable ........................................................ 2

          1.     Tartikov's Counsel Billed For Duplicative And Unnecessary Hours ........ 4

          2.     Tartikov's Counsel Submitted Vague, Block Billed Entries ..................... 7

          3.     Tartikov's Costs Are Inflated ................................................................. 10

     B.     The Practical Effect Of Tartikov's Entire Litigation Was Negligble ................. 11

     C.     Tartikov's Claim Of Intertwined Results Does Not Support A Fee Award ........ 18

     D.     Tartikov's Earlier Lack Of Success Would Have Merited Reduction In
Any Award ............................................................................................... 20

II.    TARTIKOV'S UNTIMELY APPLICATION AND LACK OF SUCCESS BARS
FEES FOR THE APPEAL ..................................................................................... 22

CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeyta v. City of N.Y.*,
   2014 WL 929839 (S.D.N.Y. 2014)..................................................................................7

*Allende v. Unitech Design*,
   783 F.Supp.2d 509 (S.D.N.Y. 2011).............................................................................5

*Alvarez v. City of N.Y.*,
   2017 WL 6033425 (S.D.N.Y. 2017)..........................................................................2, 12

*Amato v. Saratoga Springs*,
   991 F.Supp. 62 (N.D.N.Y. 1998)...............................................................................4, 7

*Ambling Mgmt. v. University View Partners*,
   2010 WL 457508 (D. Md. 2010)...................................................................................7

*Aponte v. Chicago*,
   728 F.3d 724 (7th Cir. 2013) .......................................................................................12

*Arcari v. 46th St. Devl.*,
   2011 WL 832809 (S.D.N.Y. 2011)...............................................................................23

*Assn. of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank
   Austria Creditanstalt*,
   2005 WL 3099592 (S.D.N.Y. 2005).............................................................................4

*Barfield v. NYC Health & Hospitals Corp.*,
   537 F.3d 132 (2d Cir. 2008).......................................................................2, 12, 13, 14

*Beastie Boys v. Monster Energy*,
   112 F.Supp.3d 31 (S.D.N.Y. 2015) ..........................................................................3, 10

*Blum v. Stenson*,
   465 U.S. 886 (1984).......................................................................................................3

*Brocuglio v. Proulx*,
   324 Fed. Appx. 32 (2d Cir. 2009).................................................................................12

*Burks v. Siemens Energy & Automation*,
   215 F.3d 880 (8th Cir. 2000) .........................................................................................7

*C.G. v. Ithaca School Dist.*,
   531 Fed. Appx. 86 (2d Cir. 2013)................................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Carroll v. Blinken*,
105 F.3d 79 (2d Cir. 1997)........................................................................12, 21, 22

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)...............................................................................................18

*Clarke v. Frank*,
960 F. 2d 1146 (2d Cir. 1992)..................................................................................4

*Congregation Rabbinical College of Tartikov v. Village of Pomona*,
945 F.3d 83 (2019)...........................................................................................19, 21

*Cush-Crawford v. Adchem Corp.*,
234 F. Supp. 2d 207 (E.D.N.Y. 2002) ...................................................................24

*Dailey v. Societe Generale*,
915 F.Supp. 1315 (S.D.N.Y. 1996) ..........................................................................8

*Daiwa Special Asset v. Desnick*,
2002 WL 31767817 (S.D.N.Y. 2002) ......................................................................4

*Dean v. Country of Gage*,
332 F.Supp.3d 1247 (D. Neb. 2018) .......................................................................25

*DeCorte v. Jordan*,
497 F.3d 433 (5th Cir. 2007) .................................................................................13

*DiLaura v. Ann Arbor*,
471 F.3d 666 (6th Cir. 2006) .................................................................................16

*Dillenbeck v. Hayes*,
830 F. Supp. 673 (N.D.N.Y. 1993)............................................................................6

*Dippin Dots v. Mosey*,
602 F.Supp.2d 777 (N.D. Tex. 2009) .....................................................................25

*Diver v. Goddard Memorial*,
783 F.2d 6 (1st Cir. 1986).................................................................................2, 22

*Dotson v. Syracuse*,
2011 WL 817499 (N.D.N.Y. 2011) .....................................................................5, 18

*Farrar v. Hobby*,
506 U.S. 103 (1992)...........................................................................................11, 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*G.B. v. Tuxedo Union Free School Dist.*,
894 F.Supp.2d 415 (S.D.N.Y. 2012)......................................................................2

*General Electric v. Compagnie Euralier*,
1997 WL 397627 (S.D.N.Y. 1997)........................................................................4

*Glowacki v. Howell Public School Dist.*,
566 Fed. Appx. 451 (6th Cir. 2014)....................................................................12

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992)......................................................................................7

*Green v. Torres*,
361 F.3d 96 (2d Cir. 2004)......................................................................................2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................1, 2, 3, 11, 12, 18, 19

*Hines v. Albany*,
613 Fed. Appx. 52 (2d Cir. 2015)..........................................................................3

*Howlink Global v. Centris Info. Servs.*,
2015 WL 216773 (E.D. Tex. 2015)......................................................................25

*Husain v. Springer*,
579 Fed. Appx. 3 (2d Cir. 2014)..............................................................12, 13, 21

*JCW Investments v. Novelty Inc.*,
509 F.3d 339 (7th Cir. 2007)................................................................................25

*K.L. v. Warwick Valley Cent. School Dist.*,
584 Fed. Appx. 17 (2d Cir. 2014)........................................................................18

*Katzenberg v. Lazzari*,
2007 WL 2973586 (E.D.N.Y. 2007)......................................................................8

*Kirsch v. Fleet St., Ltd.*,
148 F.3d 149 (2d Cir. 1998)....................................................................................7

*Long Island Head Start Devl. Servs. v. E.O.C. of Nassau County*,
2013 WL 6388633 (E.D.N.Y. 2013)................................................................24, 25

*Luedeke v. New Paltz*,
194 F.R.D. 64 (N.D.N.Y. 2000)............................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Matteo v. Kohl's Dept. Stores*,
   2012 WL 5177491 (S.D.N.Y. 2012)........................................................................3

*McCarthy v. Briscoe*,
   553 F.2d 1005 (5th Cir. 1977) ...........................................................................26

*Mr. X v. New York State Educ. Dept.*,
   20 F.Supp.2d 561 (S.D.N.Y 1998) ......................................................................8

*N.Y. State Assn. of Retarded Children v. Carey*,
   711 F.2d 1136 (2d Cir. 1983)........................................................................3, 4, 5, 9

*Norwood v. Bain*,
   215 F.3d 1320 (4th Cir. 2000) ...........................................................................12

*Pall Corp. v. 3M Purification*,
   2012 WL 1979297 (E.D.N.Y. 2012).....................................................................9

*Peanick v. Morris*,
   96 F.3d 316 (8th Cir. 1996) ...............................................................................22

*Penberg v. Healthbridge Mgmt.*,
   2011 WL 1100103 (E.D.N.Y. 2017).....................................................................9

*Pennsylvania v. Del. Valley Citizens' Council*,
   478 U.S. 546 (1986)............................................................................................4

*Pino v. Locascio*,
   101 F.3d 235 (2d Cir. 1996)...................................................................11, 12, 22, 26

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1999).............................................................................2, 3

*Quinn v. Nassau County Police Dept.*,
   75 F.Supp.2d 74 (E.D.N.Y. 1999) .......................................................................5

*Ragin v. Harry Macklowe Real Estate*,
   870 F. Supp. 510 (S.D.N.Y. 1994) ......................................................................5

*Rahman v. Smith & Wollensky Restaurant Group*,
   2008 WL 1899938 (S.D.N.Y. 2008).................................................................4, 8

*Raishevich v. Foster*,
   247 F.3d 337 (2d Cir. 2001)..............................................................................13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Robinson v. City of N.Y.*,
  2009 WL 3109846 (S.D.N.Y. 2009)..................................................................10

*Rotella v. Bd of Ed*,
  2002 WL 59106 (E.D.N.Y 2002)........................................................................5

*Rozell v. Ross-Holst*,
  576 F.Supp.2d 527 (S.D.N.Y. 2008)...................................................................5

*Sea Spray Holdings v. Pali Financial Group*,
  277 F.Supp.2d 323 (S.D.N.Y. 2003)..................................................................9

*Simmonds v. N.Y.C. Dept. of Corrections*,
  2008 WL 4303474 (S.D.N.Y. 2008)...................................................................5

*Tchemkou v. Mukasey*,
  517 F.3d 506 (7th Cir. 2008) ..............................................................................6

*In re Texaco Shareholder Derivative Lit.*,
  123 F.Supp.2d 169 (S.D.N.Y. 200)..............................................................23, 25

*Themis Capital v. Dem. Rep. of Congo*,
  2014 WL 4379100 (S.D.N.Y. 2014)...................................................................9

*Toussie v. County of Suffolk*,
  2012 WL 3860760 (E.D.N.Y. 2012)...................................................................8

*Urban v. Jefferson County School Dist.*,
  89 F.3d 720 (10th Cir. 1996) ............................................................................12

*Valley Housing v. City of Derby*,
  2012 WL 1077848 (D. Conn. 2012) ...................................................................8

*Valvo v. City of N.Y.*,
  2018 WL 3999011 (E.D.N.Y. 2018)............................................................13, 18

*Vernon v. Port Auth. Of N.Y. & N.J.*,
  220 F.Supp.2d 223 (S.D.N.Y. 2002)................................................................10

*VFS Financing, v. Pioneer Aviation*,
  2009 WL 2447751 (S.D.N.Y. 2009)...................................................................5

*Weyant v. Okst*,
  198 F.3d 311 (2d Cir. 1999)..............................................................................23

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Zheng v. Ashcroft*,
  383 F.3d 919 (9th Cir. 2004) ...................................................................................23

*Zoroastrian Center & Darb-E-Mehr of Washington D.C. v. Rustam Guiv Foundation*,
  245 F.Supp.3d 742 (E.D.Va. 2017) .................................................................24, 25

**Other Authorities**

Federal Rules of Civil Procedure 54 ........................................................22, 23, 24, 25

Supreme Court Rule 13(3) .........................................................................................23

## INTRODUCTION

The landscape has changed considerably since Tartikov filed its original attorney's fees motion in the summer of 2018. Then, flushed with success from this Court's decision on the merits and injunctive relief, Tartikov boldly asked for almost every penny it expended over 11 years – a total of $5.2 million. Now, Tartikov's success has been eviscerated by the Second Circuit. As a practical matter, Tartikov's vast expenditures have accomplished nothing. It is right back where it was when this litigation began – unable to build the rabbinical college it wants.

Tartikov is unfazed by this turn of events. In addition to seeking virtually no reduction in its previous request for vastly inflated hours, Tartikov wants all its fees on appeal. Tartikov fails to understand the critical difference between eligibility for attorney's fees and entitlement to an award. The most important factor in deciding to award attorney's fees is the final result. As Tartikov's ultimate results were negligible, it is not entitled to a fee award for earlier proceedings before this Court. As for the appeal, which it effectively lost, Tartikov not only failed to make a timely application, but the lack of success would not entitle it to fees regardless. The Supreme Court and Second Circuit recognize that, in some cases, the practical effect of a particular litigation is so minimal that no fees should be awarded. This is such a case. Therefore, this Court should deny Tartikov's motion.

## ARGUMENT

### I.

### ATTORNEY'S FEES SHOULD BE DENIED BASED ON TARTIKOV'S LACK OF SUCCESS

The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) held that, in awarding attorney's fees, "the <u>most critical factor</u> is the degree of success obtained." (emphasis

added).  It does not matter that the claims were made in good faith or skillfully tried, "[t]he result is what matters."  *Id*. at 435.  The Second Circuit, and courts in this District, have reiterated that principle over the ensuing years.  In *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (cited by Tartikov), the Court of Appeals stated, "the degree of success obtained by the plaintiff is <u>the most important factor</u> in determining the appropriate fee award under § 1988(b)." (emphasis added).  *See also Barfield v. NYC Health & Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008); *Alvarez v. City of N.Y.*, 2017 WL 6033425, \*4 (S.D.N.Y. 2017).  The decision of the Second Circuit reversed Tartikov's prior successes.  This Court's decision, to award fees or not, must be based on the ultimate result.  As the court in *Diver v. Goddard Memorial*, 783 F.2d 6 (1st Cir. 1986) pointed out, a litigant faces the risk that attorney's fees "will not be shifted to the other party if one's efforts are unsuccessful."  Tartikov took that risk and Defendants should not pay the price, now that Tartikov's efforts have failed.

A.      <u>Tartikov's Hours Are Not Reasonable</u>

        Traditionally, courts talked of the "lodestar" basis for an attorney's fee determination.  This was calculated by multiplying the reasonable hourly rate times the reasonable hours spent.  The Second Circuit, however, has abandoned use of the term "lodestar" in calculating fees.  *See Barfield*, 537 F.3d at 151.  In practice, courts still begin considering attorney's fees by multiplying the reasonable rate times the reasonable hours.  *See e.g. G.B. v. Tuxedo Union Free School Dist.*, 894 F.Supp.2d 415, 429 (S.D.N.Y. 2012) (cited by Tartikov).  Courts then adjust based on factors such as degree of success.  *Id.* at 428.  *See also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (cited by Tartikov) ("lodestar may be adjusted based on several factors, including in particular the results obtained").

        The critical consideration in the calculation remains what is "reasonable."  A court "must limit both the rates and hours to what is reasonable 'with an eye to moderation, seeking to avoid

either the reality or the appearance of awarding windfall fees.'" *Matteo v. Kohl's Dept. Stores*, 2012 WL 5177491, *2 (S.D.N.Y. 2012) quoting *N.Y. State Assn. of Retarded Children v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983). Ultimately, this "boils down to what a <u>reasonable paying client</u> would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Beastie Boys v. Monster Energy*, 112 F.Supp.3d 31, 48 (S.D.N.Y. 2015) (emphasis added). *See also Matteo*, 2012 WL 5177491 at *3. The party seeking attorney's fees has the burden to prove the hourly rate and number of hours are reasonable by "satisfactory evidence." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). *See also Beastie Boys*, 112 F.Supp.3d at 48.[1]

A court considering the reasonableness of the hours expended should review carefully the supporting records that provide details on the hours spent. *Matteo*, 2012 WL 5177491 at *4. To assist in this process Defendants have prepared spreadsheets analyzing all of the attorney fee records submitted by Tartikov. *See* Declaration of John F.X. Peloso, dated June 26, 2020 (the "Peloso Decl."), Exhibits A and B (the "Spreadsheets"). The hours actually expended by counsel are not dispositive. *Matteo*, 2012 WL 5177491 at *4. A court "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino*, 166 F.3d at 425 *citing Hensley*, 461 U.S. at 433-5.

A court need not go through the laborious task of subtracting excessive or duplicative hours from the totals submitted by the movant. Rather, "in dealing with items that are 'excessive, redundant or otherwise unnecessary … the [district] court has discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of <u>trimming fat from a fee application</u>." *Hines v. Albany*, 613 Fed. Appx. 52, 54-5 (2d Cir. 2015) (cited by

---

[1] Defendants do not contest the rates charged by Plaintiffs' attorneys.

Tartikov) (emphasis added). *See also N.Y. State Assn. for Retarded Children*, 711 F.2d at 1146 (same). Thus, in *General Electric v. Compagnie Euralier*, 1997 WL 397627, *6 (S.D.N.Y. 1997) the court reduced fees by 50% for overstaffing and excessive hours. *See also Rahman v. Smith & Wollensky Restaurant Group*, 2008 WL 1899938, *4 (S.D.N.Y. 2008) (hours reduced 33%); *Assn. of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt*, 2005 WL 3099592, *7 (S.D.N.Y. 2005) (fees reduced 25%).

It is "less important that the judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Amato v. Saratoga Springs,* 991 F.Supp. 62, 69 (N.D.N.Y. 1998) citing *Clarke v. Frank*, 960 F. 2d 1146, 1153 (2d Cir. 1992). What is "reasonable" "<u>is not the same as the reasonableness of a bill that a law firm might present to its own paying client</u>." *Daiwa Special Asset v. Desnick*, 2002 WL 31767817 at *2 (S.D.N.Y. 2002), *citing Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546, 565 (1986) (emphasis added). Regardless of what Tartikov's counsels billed their client, many of their hours are not reasonable.

### 1. Tartikov's Counsel Billed For Duplicative And Unnecessary Hours

Tartikov claims its counsel "vigilantly avoided duplicative work." *See* Plaintiffs' Memorandum of Law In Support Of Their Motion For Attorneys' Fees, Doc# 397, filed May 13, 2020 (the "T.Memo."), p. 15. Even a cursory review of Tartikov's counsels' time sheets reveals that is not true.

The biggest example of duplication is extraordinary number of telephone and in-person conferences among counsel. The invoices reveal that Mr. Stepanovich, Ms. Sobel and Mr. Storzer charged for myriad such hours, which appear on the Spreadsheets as conferences with "3 attorneys." Virtually every issue in the case was the subject of such "3 attorney" conferences. These are not short conferences, just to "touch base" or confirm "they are on the same page."

Many lasted well over an hour. Nor are the excessive conferences limited to the Storzer/Sobel/Stepanovich "3 attorney" conferences. As the Spreadsheets demonstrate, there were numerous other conferences with more than three attorneys.

The court in *Dotson v. Syracuse*, 2011 WL 817499, *25 (N.D.N.Y. 2011) *citing Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 541 (S.D.N.Y. 2008), points out "[g]enerally <u>conferences between counsel are excessive entries</u>," and "where the records reveal a number of conferences between trial counsel there is an element of duplication of effort." (emphasis added). In *Simmonds v. N.Y.C. Dept. of Corrections*, 2008 WL 4303474, *8 (S.D.N.Y. 2008), the court imposed a 40% reduction in hours "to correct for the inefficiencies resulting from the co-counsel arrangement" where attorneys did not limit their work to their own specialty but "routinely reviewed and revised each other's work product" and spent many hours "drafting and reviewing correspondence to each other and discussing the case internally." *See also VFS Financing*, v. *Pioneer Aviation*, 2009 WL 2447751, *5 (S.D.N.Y. 2009) (court reduced fees where attorneys "were consistently reviewing each other's work, constantly discussing the case with each other . . . and reviewing the same documents and legal research").[2]

As this Court recognized in ruling on the prior sanctions fee motion, Defendants should not have to pay for Plaintiffs' choice of out-of-district counsel, nor should they have to pay for such excessive amounts of time in conferences. *See* Opinion and Order, dated March 25, 2016 Doc# 237 (the "Sanctions Order") at p. 18. *See also id.* at p. 12 n. 6. Given Tartikov's counsels'

---

[2] *See also Allende v. Unitech Design*, 783 F.Supp.2d 509, 515 (S.D.N.Y. 2011) (court reduced fees to account for duplicative billing for conferences between attorneys); *Ragin v. Harry Macklowe Real Estate*, 870 F. Supp. 510, 521 (S.D.N.Y. 1994) (court reduced attorney's fees by 30% upon a finding of excessive and duplicative efforts); *Rotella v. Bd of Ed*, 2002 WL 59106, *3-4 (E.D.N.Y 2002) (applying percentage reduction for excessive and redundant billing); *Quinn v. Nassau County Police Dept.*, 75 F.Supp.2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another by 30%); *N.Y. State Assn. for Retarded Children*, 711 F.2d at 1146 (reducing hours by up to 20%).

purported considerable legal experience, the time listed is clearly excessive.  As with the sanctions motion, Tartikov's fee request should be reduced for duplicative efforts.

Another area of needless duplication arises because multiple attorneys attended all court conferences, including Mr. Stepanovich and Mr. Storzer, both of whom traveled from out of state.  This is compounded by the time counsel billed for travel to and from court, and to and from Savad/Churgin's office for strategy meetings.[3]  Mr. Stepanovich and Mr. Storzer traveled constantly back and forth to New York from Virginia and D.C. respectively.  Tartikov was free to have whomever it wanted attend court appearances, and to meet at Savad/Churgin's offices to discuss the case.  Defendants just should not have to pay for it.[4]  *See Dillenbeck v. Hayes*, 830 F. Supp. 673, 675 (N.D.N.Y. 1993) (attorney's fees denied for unnecessary cost incurred by attorney who traveled 360 miles to meet client, when co-counsel could have visited client with minimal effort).  *See also* Sanctions Order, p. 18.

Moreover, the standard is what a <u>reasonable paying client</u> would be willing to pay. Tartikov, however, was willing to pay any amount of fees to succeed, even if unreasonable. Chaim Babad, who funded the litigation, testified that no expense would be spared.

> I'm willing to bet that whoever's gonna fight with me in Pomona, that they're gonna lose against us.  A, 'cause we probably have more money than the whole Pomona together; and B, <u>we have enough money to fight that whatever it's gonna cost, no matter what it is, we'll be able to make it</u>.
>
> But at least one thing you can be sure, that we're not gonna run out of money.  So tell your colleagues that if they want to fight, we're here. ...

---

[3] Courts may award fees for some inter-office communications so long as the time spent is "reasonably expended."  *Tchemkou v. Mukasey*, 517 F.3d 506, 511-512 (7th Cir. 2008). Tartikov's descriptions of the conferences, however, as well as many, many other descriptions in the invoices are not sufficiently detailed to enable the Court to determine if the time was "reasonably expended."

[4] Defendants submit that none of Mr. Savad's time should be paid, including his time attending the trial.  Mr. Savad's area of practice is municipal law, and Tartikov retained Mr. Rice as their attorney "expert" in this area.

Babad Dep, p. 107 (emphasis added). Peloso Decl., Exhibit D. Mr. Savad corroborated Plaintiffs' willingness to pay any amount when he told the New York Times that "[a]s for the battle to come in Pomona, [Savad] said, 'we're very well financed.'" *See* Trial Exhibit 169. In contrast, the Village's annual budget is $2.8 million. The Village has had and will continue to have to pay legal fees out of its own funds. Any multimillion award works a substantial hardship on the Village residents.

Tartikov attempts to justify its counsels' hours by comparing the cost to fees paid defense counsel, citing *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). *See* T.Memo. 17-18. The *Grant* opinion says nothing about comparison to opposing counsel. Other courts have rejected such comparison as "apples-to-oranges." *Burks v. Siemens Energy & Automation*, 215 F.3d 880, 884 (8th Cir. 2000). *See also Ambling Mgmt. v. University View Partners*, 2010 WL 457508, *2 (D. Md. 2010) ("the hours needed by one side to prepare adequately may differ substantially from that of opposing counsel because the nature of work on each side may differ dramatically").[5] Here, for example, Tartikov produced practically no written discovery, while the Village's counsel had to oversee the production of tens of thousands of documents. In addition, the Village's counsel laid the groundwork for their successful appeal.

### 2. Tartikov's Counsel Submitted Vague, Block Billed Entries

Courts in this Circuit have reduced fee awards where the billing entries were overly vague. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (reduction by 20% for vague entries such as "letter to court," or "work on motion"). *See also Abeyta v. City of N.Y.*, 2014 WL 929839, *5 (S.D.N.Y. 2014) *aff'd* 588 Fed. Appx. 24 (2d Cir. 2014) (numerous entries of "Trial Preparation" found too vague); *Amato*, 991 F.Supp., at 65-66 (vague entries such as

---

[5] No cases have been found where courts in the Second Circuit utilized such a comparison.

"review research" and "review discovery response" contribute to a 90% reduction); *Dailey v. Societe Generale*, 915 F.Supp. 1315, 1328 (S.D.N.Y. 1996) *aff'd in relevant part* 108 F.3d 451 (1998) ("review of documents" entries not sufficiently specific). Where a fee application contains numerous vague entries, courts routinely impose an across-the-board reduction. *See Mr. X v. New York State Educ. Dept.*, 20 F.Supp.2d 561, 564 (S.D.N.Y 1998) (reducing the fee award by 20%); *Katzenberg v. Lazzari*, 2007 WL 2973586, *9 (E.D.N.Y. 2007)

In its decision on attorney's fees for the sanctions motion, this Court cited cases where fees were reduced for entries such as "trial preparation," "supervision/management," "attorney communication," "communication," "research," "review of document," "review research," "review deposition transcripts" and "prepare deposition transcripts." *See* Sanctions Order, pp. 15-16). This Court noted that Plaintiffs' invoices were "replete with examples of work identified in mere generalities, such as 'Team Meeting, etc.,'" that effectively prevented the Court from "independently assessing whether the time spent on each task was reasonable and necessary, and that such vague entries "are precisely the sort that courts have deemed impermissible in the context of fee awards." *Id*. at 15. Unfortunately, Tartikov did not learn from that experience. The same vague descriptions pervade the fee entries submitted with their current motion.

Courts also have held that cursory entries such as "trial prep" are too vague to support a full award of fees and justify a percentage reduction. *Toussie v. County of Suffolk*, 2012 WL 3860760, *7 (E.D.N.Y. 2012). *See also Valley Housing v. City of Derby*, 2012 WL 1077848, *9 (D. Conn. 2012) ("work on trial prep, rev depo, witness notes"). While it is "unnecessary for [counsel] to identify with precision the amount of hours allocated to each individual task," (*Rahman*, 2009 WL 72441, at *7), attorneys seeking reimbursement "must provide enough information for the Court, and the adversary, to assess the reasonableness of the hours worked on

each discrete project," *Themis Capital v. Dem. Rep. of Congo*, 2014 WL 4379100, *7 (S.D.N.Y. 2014). The invoices submitted by Tartikov's counsel contain many entries so vague that this Court will not be able to determine on what time was spent or if such time was necessary.[6] Entries by Mr. Savad and entries by Mr. Rice listed on the Savad/Churgin invoices particularly stand out.[7] In addition to the vague entries identified on the Spreadsheets, the invoices contain many entries that, per existing case law, are fatally vague: 1) numerous entries by Ms. Pecun of "expert witness research" (or a variant thereof); and 2) numerous entries by Ms. Sobel of "prepare cross examination questions," "continue to review trial outline," etc. Tartikov's numerous vague entries merit a further reduction in hours across the board.

Further, "[b]lock billing … 'makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity.'" *Pall Corp. v. 3M Purification*, 2012 WL 1979297, *7 (E.D.N.Y. 2012) (citation omitted). The court in *Penberg v. Healthbridge Mgmt.*, 2011 WL 1100103, *9 (E.D.N.Y. 2017) reduced attorney's time entries by 25% due to vagueness and block billing; "where billing entries contain merely vague descriptions of services rendered, or where counsel has engaged in block billing, courts have used percentage reductions as a practical means of trimming fat from a fee application'" (quoting *N.Y. Assn. for Retarded Children, Inc.*, 711 F.2d at 1146). *See also Sea Spray Holdings v. Pali Financial Group,* 277 F.Supp.2d 323, 325-6 (S.D.N.Y. 2003) (fees reduced by 15% after court found significant use of "block billing" rendering it difficult to determine whether work was duplicative or unnecessary).

Block billing is "most problematic where large amounts of time . . . are block billed," which "meaningfully clouds a reviewer's ability to determine the projects on which significant

---

[6] "Vague" entries are identified as such on the Spreadsheets.

[7] The entries on Mr. Rice's own invoices contain at least some descriptive information.

legal hours were spent." *Beastie Boys*, 112 F.Supp.3d at 53. Here, as well, Tartikov's invoices are full of block billing entries. While these entries do, for the most part, identify the general subject matter of the work being done, according to the Court's own criteria, they do not provide sufficient information for the Court to determine what actual work was being done, and therefore, if the work was necessary, excessive, and/or duplicative.

### 3. Tartikov's Costs Are Inflated

A chart is attached to the Peloso Decl. (Exhibit C), showing costs submitted by Savad/Churgin that are either unduly vague and/or unnecessary and, therefore, should not be paid. While photocopying and printing charges are ordinarily charged to clients and can be recoverable as costs, "plaintiffs must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." *Robinson v. City of N.Y.*, 2009 WL 3109846, *11 (S.D.N.Y. 2009). As in *Robinson*, Tartikov's counsel have not provided any information about why the copies were necessary. Further, Tartikov cannot recover for supplies such as labels, exhibit binders, and tabs because costs for those items are part of a law firm's overhead, which is already paid for in the attorneys' hourly fees. *Id.* citing *Vernon v. Port Auth. Of N.Y. & N.J.*, 220 F.Supp.2d 223, 232 (S.D.N.Y. 2002).

Mr. Stepanovich submitted two documents (attached to his Declaration) that relate to costs he incurred. Mr. Stepanovich's law office is in Virginia. He states his costs total $29,183.75 (Declaration, ¶ 14). The first document (Doc# 407-13, p. 1-2), appears to be an American Express bill to Mr. Stepanovich's account. Defendants note that the time frame of the charges listed is May 3, 2017 to June 12, 2017, the time leading up to and during trial. Between May 14 and May 24, 2017 there are 31 "FEDEX OFFICE" charges. If Mr. Stepanovich was in White Plains for the trial, which began on May 15, why was there any need for FEDEX's to be sent and, where would they be sent? There is no explanation for this. Further, there are plane

fare and hotel charges.  Since Plaintiffs could have (and did) use counsel in the District with expertise, these should not be paid.

Similarly, in Exhibit A to his Declaration, Mr. Storzer lists his costs (Doc# 404-1, pp. 56-57).  Mr. Storzer is located in Washington, D.C.  He, like Mr. Stepanovich, has substantial expenses relating to travel and lodging.  For the same reasons, these expenses should not be recoverable.  As the Court has indicated previously, Plaintiffs could have (and did) choose counsel within the District.

**B.      The Practical Effect Of Tartikov's Entire Litigation Was Negligible**

Tartikov's improper attempt to grossly inflate its hours is revealing and imposes an unnecessary burden on this Court.  However, this is not the most important consideration in deciding whether or not to award Tartikov attorney's fees.  As *Hensley* and its progeny teach, Tartikov's lack of success far outweighs its hourly billing excesses (which are still unacceptable) and does not justify an award of attorney's fees in any amount.

Applying its prior decision in *Hensley*, the Supreme Court in *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (cited by Tartikov), recognized that a plaintiff's success could be so limited that "even a plaintiff who formally 'prevails' under § 1988 <u>should receive no attorney's fees at all</u>." (emphasis added).   Justice O'Connor, in her *Farrar* concurrence, explained that, even considering non-financial results, "[w]hen the plaintiff's success is purely technical or *de minimis*, no fees can be awarded."  As she said, for "only a Pyrrhic victory," the "<u>reasonable fee is zero</u>."  *Id*. at 117 (emphasis added).

Second Circuit courts have followed *Farrar* and refused to award fees where there was no effective success.  In *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996), although plaintiff sought over $90,000, the district court awarded only $50,000.  The Second Circuit, relying on *Farrar*, reversed even that award and remanded with instructions to <u>completely deny plaintiffs'</u>

application, because no significant damages or other meaningful relief was obtained. *Id.* at 239. *See also Brocuglio v. Proulx*, 324 Fed. Appx. 32 (2d Cir. 2009) (affirming denial of attorney's fees where plaintiff lost his principal claim); *Alvarez*, 2017 WL 6033425 at *4 (plaintiff "is not entitled to any amount of attorney's fees") (emphasis added).

Other Courts of Appeals have similarly denied attorney's fees based on lack of success. *See Glowacki v. Howell Public School Dist.*, 566 Fed. Appx. 451, 454 (6th Cir. 2014) (attorney's fees denied where judgment for plaintiff "accomplished little" and "did nothing to achieve the primary goal of the underlying litigation"); *Aponte v. Chicago*, 728 F.3d 724, 728 (7th Cir. 2013) (denial of attorney's fees upheld where plaintiff was "aiming high and fell short and in the process inflicted heavy costs on his opponent"). *See also Urban v. Jefferson County School Dist.*, 89 F.3d 720, 729 (10th Cir. 1996) (plaintiff did not receive the placement in the particular school he sought); *Norwood v. Bain*, 215 F.3d 1320 (4th Cir. 2000) (plaintiffs request for injunction was denied). These cases reaffirm the basic principle in *Farrar* that merely being a prevailing party is no guarantee of recovery where the results do not support a fee award.

In deciding whether Tartikov should receive any attorney's fees, this Court "should focus on the significance of the overall relief obtained…." *Hensley*, 461 U.S. at 435. Second Circuit precedent directs trial courts to look at the "practical effect of the litigation … as judged by the gap between the relief requested in Appellants' complaint and the relief they actually obtained." *Husain v. Springer*, 579 Fed. Appx. 3, 5 (2d Cir. 2014) (emphasis added). "[T]he quantity and quality of the relief obtained is a critical factor …" *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997). *See also Barfield*, 537 F.3d at 152.

Defendants do not contest that Tartikov technically was, in part, a prevailing party, as the Second Circuit upheld this Court's ruling invalidating the two 2007 laws. "However, while

12

prevailing parties are eligible for fees under § 1988, they are <u>not invariably entitled to them</u>." *Husain*, 579 Fed. Appx. at 4 (emphasis added). *See also Raishevich v. Foster*, 247 F.3d 337, 345 (2d Cir. 2001) ("A plaintiff who has prevail[ed] in the litigation has established only his eligibility for, not his entitlement to, an award of fees"). Tartikov's claim that "Plaintiffs as the prevailing party are entitled to recover reasonable attorneys' fees" (T.Memo. 2) confuses eligibility with entitlement. *See also id.* at 19 ("Plaintiffs were prevailing parties in this litigation and are entitled to fees"). In the words of the court in *Valvo v. City of N.Y.*, 2018 WL 3999011, *4 (E.D.N.Y. 2018), "Plaintiff does not appear to understand that—despite being a prevailing party—a reduction for degree of success is nevertheless appropriate." The law is clear that being a prevailing party only makes one eligible for a possible award of attorney's fees. The court, considering the party's success – or lack thereof – then must determine whether the party is entitled to an actual award.[8]

Tartikov erroneously asserts that this Court "has already determined that Plaintiffs are entitled to attorney's fees …." T.Memo. 2-3. However, this Court never reached the question of entitlement to an actual award, as Tartikov's attorney's fee motion was stayed during the appeal.[9] Tartikov's further claim that "the award of attorneys' fees" was upheld by the Second Circuit (*id.* at 2) is simply wrong. The Second Circuit never considered the issue of attorney's fees because this Court had yet to rule on Tartikov's application.

The degree of success criteria "is not limited to inquiring whether a plaintiff prevailed on individual claims." *Barfield*, 537 F.3d at 152. Rather, the result as to "what plaintiff sought to

---

[8] The case Tartikov cites, *DeCorte v. Jordan*, 497 F.3d 433, 445 (5th Cir. 2007), merely says caselaw "allows awards of attorney's fees" on appeal, not that an appellant is entitled to them.

[9] This Court used the word "entitled" in the Judgment and Mandatory Injunction (Doc# 356) but made clear in same sentence that Tartikov still had to make an application, which was not ruled on before the appeal.

achieve as evidenced in [the] complaint," what constituted the "plaintiff's primary aim," determines the reasonableness of any fee award. *Id.* Considering the actual results of Tartikov's lengthy litigation were *de minimis*, no attorney's fees should be awarded.

Tartikov's goal in this case has been clear and consistent throughout – to eliminate the Village ordinances keeping it from building a rabbinical college with adult student family housing on its 100-acre property in Pomona. The "Relief Sought" in Tartikov's Second Amended Complaint states:

> Annulment of those provisions of the Village Zoning Code that violate the Rabbinical College's civil rights and permanent injunctive relief enjoining all Defendants from unconstitutionally and illegally applying the laws and codes of the Village that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College;

Second Amended Complaint (Doc# 28-2) p. 32. Tartikov's representative, Michael Tauber, testified at trial that Tartikov was formed "for the purpose of establishing a rabbinical college in Rockland County." Trial Declaration of Michael Tauber, Doc# 283, p. 2, ¶ 11. Tartikov further explained that the basic plan for the rabbinical college "includes having on-campus housing for students and their family…." May 15, 2017 Trial Transcript, p. 100.

This Court's Decision recognized Tartikov's goal, noting it "is the owner of an approximately 100-acre parcel of land (the 'Subject Property') located within the Village of Pomona (the 'Village') upon which it seeks to build a rabbinical college that in addition to providing all the facilities necessary to train rabbinical judges, will include housing for its students and their families." Decision, Doc# 333, p. 2. *See also id.* at pp. 40-41 ("the Challenged laws prohibit Plaintiffs from constructing the type of rabbinical college they seek to obtain … Tartikov seeks to erect family housing on the Subject Property with kitchens in each residence…."). Tartikov's aggressive push for broad injunctive relief, changing the existing state and local process to fast-track any land use application by it, was part of this effort.

14

Tartikov's present fee motion confirms its goal remained constant. "Plaintiffs brought their lawsuit against Defendants for purposefully enacting laws that completely prohibited plaintiffs' ability to construct their rabbinical college." T.Memo. 21.

The Second Circuit held that Local Law 1 of 2001 and Local Law 5 of 2004, were not enacted with discriminatory intent and, therefore, are constitutional. This decision leaves Tartikov in the same position it was when this litigation began in 2007. Valid Village zoning laws still do not permit building the rabbinical college that Tartikov wishes. The 2001 law, as amended in 2004, prohibits construction of any college that is not "accredited by the New York State Education Department or similar recognized accrediting agency." Trial Exhibit 1011. Tartikov has consistently maintained that it cannot be accredited, and this Court so found. *See* Decision, Doc# 333, p. 40 ("The Accreditation Law bars construction of the rabbinical college because Tartikov, as proposed, cannot be accredited by any accrediting body"). Thus, the 2001 "Accreditation Law" by itself thwarts Tartikov's aims in this litigation.

Further, the 2004 law excludes from the definition of dormitories those accommodations with separate cooking facilities and any "[s]ingle family, two-family and/or multi-family dwelling units…." Trial Exhibit 1011. As this Court found, "[t]he prohibitions on student family housing and separate cooking, housekeeping and dining facilities preclude the rabbinical college from being built in the Village." Decision, Doc# 333, p. 21.

The combination of the 2001 and 2004 zoning laws bars construction of Tartikov's planned rabbinical college – the acknowledged goal of this litigation. Tartikov did obtain a ruling that the two 2007 laws were unconstitutional and cannot be enforced. However, that was a Pyrrhic victory, since those laws only provided additional requirements beyond the 2001 and

2004 laws, which remain in force and preclude construction. Thus, the practical effect of 12 years of litigation – which is a court's focus in an attorney's fees application – is nil.

The case Tartikov ultimately relies upon demonstrates this best. In *DiLaura v. Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2006), the court held that plaintiff's obtained complete relief because "[n]ow the plaintiffs are expressly allowed their purposed use of the property without any application of the defendants' zoning ordinances." Here, because Tartikov is still subject to the Village's 2001 and 2004 zoning laws, they are not allowed their purposed use – to build the rabbinical college they desire.

Tartikov specifically eschewed seeking damages in this case. Its success can only be measured by its other results. The expansive injunction it sought, controlling any future application, was vacated. The zoning laws that bar its rabbinical college still stand. Thus, the results achieved in this case are truly *de minimis*.

In a vain attempt to turn its lack of success into a victory, while attempting to minimize the significance of the 2001 and 2004 laws, Tartikov argues that the 2007 laws were the "greatest impediments" to building their rabbinical college. T.Memo. 21. Therefore, in Tartikov's view, the Second Circuit's affirmation of those laws unconstitutionality constituted "substantial" results. *Id*. Tartikov's abandonment of its aims and theory of the case at this late date cannot succeed. Contrary to Tartikov's new position, the 20 percent square footage of the Law 1 of 2007 was not the greatest impediment standing in Tartikov's way. As this Court pointed out, the "definition for 'dormitory' prohibits these types of residences because separate cooking and dining facilities are prohibited." Doc# 333, p. 41. That definition, which appears first in the 2004 law, was a far more important roadblock.

Even more unbelievable is Tartikov's claim that the 2001 Accreditation Law was unimportant, because "that law did not prohibit outright the rabbinical college use as latter challenged laws did" (T.Memo. 24, n.9) and that "plaintiffs did not challenge the 2001 law as prohibiting outright the use." *Id*. at 25. These statements are simply untrue. This Court will remember the countless times Tartikov argued that the 2001 law kept it from building the rabbinical college because such a collage could not be accredited. They successfully convinced this Court, which found "the Accreditation Law blocks Tartikov from building a rabbinical college within the Village." Doc# 333, p. 41. *See also id.* at p. 77 ("The Accreditation Law prevents Tartikov from building a rabbinical college within the Village because only an accredited educational institutional are eligible for special case permits"). Thus, at the end, as Tartikov contended it was throughout, the 2001 Accreditation Law remained a critical element keeping Tartikov from achieving its goal.

Tartikov's fantastical claim that its efforts support a "future challenge" to the 2004 law, which Tartikov's crystal ball reveals it is "very likely this provision will be struck down," (T.Memo. 21 n.8) provides no basis for a claim of success. This case is over. Tartikov sought reconsideration of the Second Circuit's decision and was denied. The Second Circuit's decision upholding both the 2001 and 2004 laws as constitutional is final. Tartikov cannot collect attorney's fees now on its baseless speculation about what might happen in the future (speculation with which Defendants heartily disagree). The effect of the Second Circuit's decision is that Tartikov cannot accomplish its goal of building the rabbinical college in Pomona.

Given the quality and quantity of its <u>lack of success</u>, no attorney's fees award is appropriate here.[10]

**C.      Tartikov's Claim Of Intertwined Results Does Not Support A Fee Award**

Tartikov contends that its "substantial" success allows it to recover attorney's fees even for its unsuccessful claims.  *See* T.Memo. 19.  However, where the lack of success is so pervasive, the fact some claims may arise out of a "common core" does not justify an award of fees.  As the court in *Dotson*, 2011 WL 817499 at *30 (quoting *Hensley*, 461 US at 436) points out, "the court cannot end its inquiry there.  In cases with a 'single claim' or a 'common core of facts,' the most critical factor is still the 'degree of success obtained.'"  The Second Circuit in *K.L. v. Warwick Valley Cent. School Dist.*, 584 Fed. Appx. 17, 20 (2d Cir. 2014) confirmed the district court's conclusion that "even if the unsuccessful and successful claims were 'interrelated,' the fees requested were 'still excessive in light of the degree of success achieved and the time required to obtain the award achieved in this case.'"  Rejecting the argument that no fee reduction was appropriate because all the claims were 'intertwined,' the court in *Valvo*, 2018 WL 3999011 at *4-5 pointed out "that would not mean that no reduction could be applied," which would be contrary to the controlling case law.  Instead a court "should focus on the significance of the overall relief obtained."  *Id.* (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 569 (1986)).

Tartikov (T.Memo, 24) quotes the Supreme Court in *Hensley* for the proposition that where a "plaintiff has obtained excellent results," it should recover even for unsuccessful claims.  However, Tartikov leaves off the subsequent language from *Hensley*:

---

[10] Tartikov claims complete success on the Wetlands Law.  T.Memo. 19, n.7.  That provides no practical relief either as the 2001 and 2004 laws still bar construction.  Further, the effect of this "success" is questionable since Tartikov never offered evidence they could obtain a permit for the remaining federal and state wetlands limits on construction.

> If, on the other hand, <u>a plaintiff has achieved only partial or limited success</u>, the product of hours reasonably expended on the litigation as a whole times a reasonable rate <u>may be an excessive amount</u>.

461 U.S. at 435 (emphasis added).

Tartikov's basic premise is that its claims, regarding the 2007 laws, arise out of a common core and, therefore, are "inextricably intertwined" with the 2001 and 2004 laws. T.Memo. 19. This directly conflicts with the reasoning of the Second Circuit in deciding the present case. The Court of Appeals determined that, unlike the 2007 laws, the Village did not act with discriminatory intent in adopting the earlier laws. *See Congregation Rabbinical College of Tartikov v. Village of Pomona*, 945 F.3d 83, 119 (2019). Tartikov's argument that it should recover for all of its hours based solely on its "success" regarding the 2007 (*see* T.Memo. 25-29) runs aground on this determination by the Second Circuit.

Tartikov's tries to avoid this collision, not by steering around it, but by effectively asking this Court to override the Court of Appeals conclusions. In a series of stunning statements, Tartikov directly attacks the Second Circuit's critical rulings:

> Regardless of the Second Circuit's decisions that (a) the two earlier challenged laws were somehow "innocent" land use regulations while only the two later laws--imposed by the same body and responsive to the same local residents' hostility toward Orthodox Jews--were targeted at this population; and (b) that contrary to well-settled law, a facial challenge is not immediately ripe with respect to challenges brought under certain constitutional and civil rights provisions but not others …

T.Memo. 24-5. [11] *See also id.* at 25, n.10 ("Whether correctly addressed as a 'ripeness' issue (as this Court treated it) or as a "standing issue as the Court of Appeals decided the matter …"); *Id.* at 28 ("It is unreasonable to believe that the intentions of many of the Village residents were innocent in 2004 but somehow turned nefarious three years later").

---

[11] Tartikov ignores the fact that the Board of Trustees in 2007 contained different members.

In discussing whether the discrimination claims arose from a common core, Tartikov continues in the same vein: "[r]egardless of the Court of Appeals' replacement of the trier of fact's judgment for its own to determine no reasonable factfinder could dispute that the Board of Trustees motivations were innocent as the driven snow (and then became hostile discrimination two years later . . ." T.Memo. 27.[12]  Tartikov's audacity in asserting it should receive attorney's fees based upon its express disagreement with the Court of Appeals holdings is breathtaking.  No reasonable District Court would award attorney's fees relying on a party's claim that the Court of Appeals decided the appeal incorrectly.   Tartikov is treading on dangerous ground by even raising these arguments – which this Court must reject.

Tartikov's claim that the two sets of laws are so intertwined that it had to expend all the hours in its bills does not withstand scrutiny either.  Many of the facts pertaining to the adoption of the 2007 laws had nothing to do with the enactment of the 2001 and 2004 laws, as the Court of Appeals pointed out.  Moreover, even if the laws were intertwined, that does not supersede the rule that success is the most important factor.  Following the Court of Appeals decision, Tartikov achieved no meaningful success.  Therefore, it is not entitled to an award of attorney's fees for any claims – common core or not

**D.     Tartikov's Earlier Lack Of Success Would Have Merited Reduction In Any Award**

In the January 2013 ruling on Defendants' motion to dismiss (Doc# 53), this Court dismissed all of Tartikov's as-applied challenges.  This ruling effectively removed one-half of Tartikov's case.  Tartikov did not abandon these claims, however.  Rather, Tartikov sought to

---

[12] Going further, Tartikov states that the Court of Appeals "erroneously held" that the 2007 law created the 25-foot height limit. Tartikov failed to raise this claim in its Motion for Reconsideration to the Second Circuit and cannot claim it as error here.

reinstate them in its cross-appeal, which the Second Circuit denied. *See* 945 F.3d at 125. As a result, the claims that went to trial were significantly less than originally made.

Tartikov also sought summary judgment in its favor on its remaining facial claims. This Court (*see* Doc# 207) denied Tartikov's request in its entirety, while granting Defendants' cross-motion for summary judgment as to Tartikov's free speech and New York common law claims. As the billing entries show, significant time and money were spent in this fruitless endeavor by Tartikov.

Finally, in its December 2017 decision on the merits (Doc #333), this Court ruled against Tartikov on its RLUIPA equal terms and exclusion claims. Once again, the Second Circuit rejected Tartikov's cross-appeal on these claims. Each of these losses would have to be taken into account in any assessment of the reasonableness of Tartikov's fee request, even before the devastating impact of the Second Circuit's decision is considered.

The Second Circuit has repeatedly recognized that very large reductions in fee requests should be made based on the plaintiff's lack of success, even if some result was achieved. In *Husain*, for example, the plaintiffs ultimately won a judgment against only one of the 26 defendants on only one claim. Considering this limited result, the district court reduced plaintiffs' original fee request by almost 75%. On appeal the Second Circuit concluded that the fee award was still "excessive." 579 Fed. Appx., at 5 (emphasis added). The Court of Appeals remanded for the trial judge to recalculate the fee, "which may well be significantly lower than that originally awarded by the district court." *Id*. at 7.

In *Carroll*, the Second Circuit considered an award where the "practical effect of the relief obtained" was "entirely minimal" (105 F.3d at 82) as plaintiffs "failed in their far more significant claim." *Id.* at 81. Plaintiffs submitted a fee application seeking over $558,000, but

the district court awarded only $25,000 – a reduction of 95%. The Second Circuit found the fee award "entirely reasonable." *Id*. at 82. Similarly, in *C.G. v. Ithaca School Dist.*, 531 Fed. Appx. 86, 88-9 (2d Cir. 2013), the Court of Appeals affirmed a reduction of 80% from the lodestar amount considering plaintiff's limited success.[13]

Had this litigation ended in 2018, the combination of prior defeats and inflated hours would have called for significant reductions in any fee request. But the case did not end in 2018. It ended in 2020, with the Second Circuit's reversal on appeal. The final result was Tartikov received no damages, had its positive injunctive relief overturned and ended up with no relief that moved the rabbinical college forward. Therefore, even a percentage reduction would not be enough in these circumstances. *See Pino*, 101 F.3d at 239 (holding that even a reduction of almost 50% was not enough and remanding with instructions to award no attorney's fees). Under the prevailing case law, no fee should be awarded to Tartikov in this case.

## II.

### TARTIKOV'S UNTIMELY APPLICATION AND LACK OF SUCCESS BARS FEES FOR THE APPEAL

The Second Circuit issued its decision on December 20, 2019 and filed a judgment the same day. Tartikov moved for rehearing, which the Court of Appeals denied on February 6, 2020. The Court issued its Mandate on February 13, 2020. Tartikov never filed a motion for attorney's fees until May 13, 2020.

FRCP 54(d)(2) states that a motion for attorney's fees must "be filed no later than 14 days of entry of judgment." A "[j]udgment as used in these rules includes a decree and any order

---

[13] Other Courts of Appeals have affirmed similar sharp reductions in attorney fee requests. *See, e.g., Peanick v. Morris*, 96 F.3d 316, 323 (8th Cir. 1996) (where "trial court rejected the very heart of his case" on racial discrimination, award of only five hundred dollars upheld); *Diver*, 783 F.2d at 7 (upholding award of only $1,000 out of $25,000 sought).

from which an appeal lies." FRCP 54(a). For the Court of Appeals, time is measured from the date of its decision, not the Court's mandate. *See* Supreme Court Rule 13(3) (the time for a petition for certiorari runs from the date of entry of the decision "not from the issuance date of the mandate"); *see also Zheng v. Ashcroft*, 383 F.3d 919, 921 (9th Cir. 2004). A motion for rehearing tolls the time for a motion for attorney's fees. *Weyant v. Okst*, 198 F.3d 311, 315 (2d Cir. 1999). Therefore, Tartikov had to file a motion for fees by February 20, 2020 – 14 days after the denial of rehearing.

Tartikov first raised the issue of fees on appeal in a letter to this Court dated March 24, 2020, seeking a briefing schedule. However, that letter was insufficient to comply with FRCP 54(d), which states a request for attorney's fees "must be made by motion." *See also* Advisory Committee Notes to 1987 Amendment ("What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)"); *Arcari v. 46th St. Devl.,* 2011 WL 832809, *7 (S.D.N.Y. 2011) (request for fees in brief did not comply with FCRP 54(d)). Defendants acknowledge that, in response to Tartikov's letter, this Court issued its March 30, 2020 Order allowing Tartikov until May 14 to file its application and staying any time limits until then. However, by March 30, 2020 Tartikov's 14-days had long passed.[14] As Tartikov failed to file a timely motion, it cannot recover any fees for the appeal. *See In re Texaco Shareholder Derivative Lit.*, 123 F.Supp.2d 169, 172 (S.D.N.Y. 200); *Luedeke v. New Paltz*, 194 F.R.D. 64, 65 (N.D.N.Y. 2000).

In a footnote, Tartikov contends that FRCP 54(d) does not apply to requests for attorney's fees on appeal. T.Memo. 3 n.1. Tartikov argues that, because the appellate rules do

---

[14] Even if Tartikov's letter of March 24, 2020 could be viewed as meeting the timeliness requirement of FRCP 54(d), (which it did not), Tartikov was still far too late.

not state a time to file a fee application (only for costs), a motion for attorney's fees on appeal is timely even months after the Court of Appeals judgment.

Tartikov's argument for disregarding FRCP 54(d) makes no sense. First, Tartikov's motion was filed with, and will be decided by, this Court, to which FRCP 54(d) does apply. Second, Tartikov's view would lead to the absurd result that motions for attorney's fees made in the district court for proceedings before it would be denied if filed after the 14-day limit, but motions made in the same court for fees before the Court of Appeals would be timely whenever filed, even hundreds of days later. A motion for attorney's fees should not be "a sword of Damocles hanging over the losing party." *Zoroastrian Center & Darb-E-Mehr of Washington D.C. v. Rustam Guiv Foundation*, 245 F.Supp.3d 742, 754 (E.D.Va. 2017).

In claiming an indefinite, virtually unlimited, period to file an application for fees on appeal, Tartikov relies upon two outlier cases from the Eastern District. In *Long Island Head Start Devl. Servs. v. E.O.C. of Nassau County*, 2013 WL 6388633 (E.D.N.Y. 2013), the judge claimed that Rule 54(d) does not apply to appeals, even though the judge admitted the plain meaning of the definition of judgment in "Rule 54 could apply to a judgment from the Court of Appeals." *Id.* at *3. Ignoring the 14-day requirement, the judge in *L.I. Head Start* concluded that any "reasonable period of time" after an appeal decision was permissible, so a motion for attorney's fees filed 135 days after the Second Court's denial of rehearing was timely. *Id,* at *5. *L.I. Head Start* principally relied upon, *Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207 (E.D.N.Y. 2002), which found timely a motion filed 199 days after the Second Circuit's decision. The judge in *L.I. Head Start*, however, admitted that *Cush-Crawford* "has not been cited positively or negatively <u>by a single court</u>." 2013 WL 6388633 at *5 (emphasis added).

*L.I. Head Start* notes, and Tartikov's footnote refers to, some other out-of-circuit courts, which claim Rule 54(d) does not apply to attorney's fees on appeal. *L.I. Head Start* cites *Dippin Dots v. Mosey*, 602 F.Supp.2d 777, 783 (N.D. Tex. 2009) and Tartikov (T.Memo. 3 n.1) cites *JCW Investments v. Novelty Inc.*, 509 F.3d 339, 342 (7th Cir. 2007). However, both those decisions hold that the rule of diligence applies, requiring a motion for fees be filed within 30 days after the Court of Appeals decision. *See also Zoroastrian Center*, 245 F.Supp.3d at 754 (cited by Tartikov) (motion filed 23 days after Court of Appeals judgment).[15]

As Judge Brieant, enforcing the 14-day limit for fees on appeal in this District, pointed out "[i]t seems commonplace today for district judges to ignore the Federal Rules of Civil Procedure whenever they get in the way." *In re Texaco Shareholders*, 123 F. Supp. 2d at 172. This Court should reject Tartikov's invitation to fall into that trap and instead hold that Tartikov's request for fees on appeal is untimely.[16]

Moreover, to the extent this Court were to consider Tartikov's request for fees on appeal, Tartikov would still face the insurmountable hurdle of lack of success. Tartikov lost its entire cross-appeal. On the issues that Defendants took on appeal, Tartikov lost every count except the portion relating to the two 2007 laws (out of four laws appealed). As set out in detail in Section I.B. *supra,* the practical effect of the Second Circuit's decision is to deny Tartikov any relief. Tartikov still cannot build its rabbinical college, because Village ordinances, adopted without discriminatory intent, do not allow an unaccredited educational institution with family housing.

---

[15] While these courts are wrong in saying FRCP 54(d) does not apply, even these out-of-circuit courts recognize 30 days is the maximum reasonable time. *Compare Howlink Global v. Centris Info. Servs.*, 2015 WL 216773 at *4 (E.D. Tex. 2015) (motion filed after 55 days was not diligent and therefore untimely) with *Dean v. Country of Gage*, 332 F.Supp.3d 1247, 1255 (D. Neb. 2018) (motion filed 14 days after Court of Appeals denial of rehearing was timely).

[16] Tartikov cannot calculate any time from this Court's March 19, 2020 Judgment. First, it is not a judgment of the Court of Appeals, so cannot support fees before that court. Second, because that judgment only dismissed claims against the Village, Tartikov is not the prevailing party.

The Second Circuit's decision on appeal is the definition of lack of success.  No attorney's fees would be appropriate for that appeal.  *See Pino,* 101 F.3d at 239; *see also McCarthy v. Briscoe,* 553 F.2d 1005, 1007 (5th Cir. 1977) (court denied prevailing party attorney's fees "in light of appellant's lack of success on this appeal").

## **CONCLUSION**

The Court of Appeals' decision that the 2001 Accreditation Law and the 2004 Dormitory Law are constitutionally valid means that Tartikov came nowhere close to accomplishing its goal in this litigation.  While this Court's decision invalidating the 2007 laws remains, the practical effect of this entire case was that Tartikov received no relief.  Instead, it is right back where it began, unable to build its desired rabbinical college.  The Village should not be forced to bear the burden of Tartikov's failure – particularly given the wasteful, excessive and unnecessary hours that Tartikov's counsel spent along the way.  Results matter, and because Tartikov effectively did not obtain any, this Court should deny Tartikov's motion and award no attorney's fees.

DEFENDANTS

By: */s/ John F.X. Peloso, Jr.*
    John F. X. Peloso, Jr. (JP6110)
    Thomas J. Donlon, (TD5850)
    Robinson & Cole LLP
    1055 Washington Blvd.
    Stamford, CT 06901
    Tel. No.  (203) 462-7503
    Fax. No.  (203 462-7599
    jpeloso@rc.com
    tdonlon@rc.com

    *Attorneys for Defendants*

*CERTIFICATE OF SERVICE*

I hereby certify that on June 29, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.

*/s/ John F.X. Peloso, Jr.*