Local Law
#5 of 2007
adopted 4/3/07

A LOCAL LAW AMENDING THE CODE OF
THE VILLAGE OF POMONA IN RELATION
TO WETLAND PROTECTION

BE IT ENACTED BY THE BOARD OF TRUSTEES OF THE VILLAGE OF POMONA, as follows:

Section 1. The Code of the Village of Pomona is hereby amended by adding thereto a new Chapter, to be Chapter 126, to read as follows:

WETLANDS PROTECTION

Section 126-1. Legislative intent.

The protection of all wetlands is vital to the health, safety and welfare of all persons. Wetlands are a natural recipient for the storage of stormwater runoff to prevent flooding and damage to property; the vegetation in wetlands provides a natural filtration system to help reduce pollutants into our steams and rivers and ultimately into our water supply; the preservation and maintenance of wetlands in an undisturbed and natural condition constitute important physical, ecological, social, aesthetic and economic assets necessary to promote the health, safety and general welfare of present and future residents of the Village of Pomona and of downstream drainage areas. Due to recent court decisions, a void may exist in the protection of wetlands that do not meet the threshhold acreage for New York State protection. The purpose of this Chapter is to fill that void and to supplement existing State and Federal laws and regulations.

Section 126-2. Wetlands defined.

For the purposes of this Chapter wetlands are defined as all lands and waters of the Village of Pomona, including but not limited to any such lands and waters hereafter designated on the State Wetlands Map, which have a contiguous area of at least two thousand (2,000) square feet and which contain any or all of the following:

A. Lands and submerged lands commonly called marshes, swamps, sloughs, bogs and flats, whether flooded at all times, flooded only seasonally or having a water table during at least three (3) consecutive months of the year within six (6) inches of the ground surface or supporting aquatic or semi-aquatic vegetation of the types listed in Section 24-0107 (1)(a) of Article 24 of the New York State Environmental Conservation Law. The common names of these vegetative types are:

   (1) Wetland trees, which depend upon seasonal or permanent flooding or sufficiently waterlogged soils to give them a competitive advantage over other trees, including, among others, red maple, willows, black spruce, swamp white oak, red ash, black ash, silver maple, American elm and birch.

DEFENDANTS' EXHIBIT
Tartikov, et al. v.
Pomona, et al.
1013
7:07-cv-06304 (KMK)

  (2) Wetland shrubs, which depend upon seasonal or permanent flooding or sufficiently waterlogged soils to give them a competitive advantage over other shrubs, including, among others, alder, buttonbush, bog rosemary, dogwoods and leatherleaf.

  (3) Emergent vegetation including, among others, cattails, pickerelweed, bulrushes, arrow arum, arrowheads, reed, wild rice, bur reeds, purple loosetrife, swamp loosestrife and water plantain.

  (4) Rooted, floating-leaved vegetation including, among others, water lily, water shield and spatterdock.

  (5) Free-floating vegetation including, among others, duckweed and watermeal.

  (6) Wet meadow vegetation which depends upon seasonal or permanent flooding or sufficiently waterlogged soils to give them a competitive advantage over other open land vegetation; including among others, sedges, rushes, cattails, rice cut-grass, reed canary grass, swamp loosestrife and spike rush.

  (7) Bog mat vegetation including, among others, sphagnum mosses, bog rosemary, leatherleaf, pitcher plant and cranberries.

  (8) Submergent vegetation including, among others, pondweeds, naiads, bladderworts, wild celery, coontail, water milfoils, muskgrass, water weeds and water smartweed.

B. Lands and submerged lands containing remnants of any vegetation that is not aquatic or semiaquatic that has died because of wet conditions over a sufficiently long period, provided that such wet conditions do not exceed a maximum seasonal water depth of six (6) feet and provided, further, that such conditions can be expected to persist indefinitely, barring human intervention.

C. Lands and water substantially enclosed by aquatic or semi-aquatic vegetation or by dead vegetation, the regulation of which is necessary to protect and preserve the aquatic and semi-aquatic vegetation.

D. The waters overlying the areas set forth in Section 126-2A and B above and the lands underlying Section 126-2C above.

E. Lands and submerged lands containing poorly drained soils, as defined by the United States Department of Agriculture.

Section 126-3. Regulated activities.

Except as provided in Section 126-4 below, it shall be unlawful to conduct, directly or indirectly, any of the following activities upon any wetland, water body or watercourse or within 100 feet of the boundary of any wetland, water body or watercourse <u>unless a permit is issued therefor by the Board of Trustees or the Planning Board, as the case may be:</u>

 A. Any form of draining, dredging, excavation or removal of material, except removal of debris or refuse.

 B. Any form of depositing of any material such as but not limited to soil, rock, debris, concrete, garbage, chemicals, etc.

 C. Erecting any building or structure of any kind, roads, <u>driveways,</u> the driving of pilings or placing of any other obstructions, whether or not they change the ebb and flow of water. The definitions of the words BUILDING and STRUCTURE shall be defined in the Zoning Law of the Village of Pomona.

 D. Installing a septic tank, running a sewer outfall, discharging sewage treatment effluent or other liquid waste into or so as to drain into any wetland, water body or watercourse.

 E. Any other activity which substantially impairs any of the several functions served by wetlands, water bodies and watercourses or the benefits derived therefrom as set forth herein.

 F. For the purposes of this Chapter, the term WATER BODY shall mean any body of standing water which is not dry more than three (3) months of the year as computed from the average of the last two (2) consecutive years and which, when wet, is customarily more than 500 square feet in water surface area.

 For the purposes of this Chapter, the term WATERCOURSE shall mean any body of flowing water flowing in an identifiable channel or course and which is not dry more than three (3) months of the calendar year <u>during a year of normal rainfall.</u>

 <u>G. The aforesaid 100 foot buffer in which regulated activities are not permitted to take place shall not apply to lots that are improved with single family residences.</u>

Section 126-4. Activities permitted by right.

The following activities are permitted by right within or adjoining any wetland, water body or watercourse except that the Planning Board or the Building Inspector may determine that such activity violates the intent and purpose of this Chapter. In such case, written notice shall be given to the property owner that work shall not begin or continue until a permit is obtained pursuant to Section 126-5 of this Chapter.

A. The depositing or removal of the natural products of the wetlands, water bodies or watercourses by recreational or commercial fishing or agriculture where otherwise legally permitted.

B. Outdoor recreation activity that does not materially alter the natural state of the land or require construction including use of field trails for nature study, hiking or horseback riding, swimming, skin diving and boating, where otherwise legally permitted.

C. Grazing, farming and harvesting of crops where otherwise legally permitted provided, however, that any tillage of soil shall leave an undisturbed strip not less than 6 feet wide at the edge of any wetland, watercourse or water body to prevent erosion.

D. The activities of farmers and other landowners in grazing and water livestock, making reasonable use of water resources, harvesting natural products of the wetlands, selectively cutting brush and timber, draining land or wetlands for growing agricultural products and otherwise engaging in the use of wetlands or other land for growing agricultural products shall be excluded from regulated activities and shall not require a permit under Section 126-5 of this Chapter, except that structures not required for the enhancement or maintenance of the agricultural productivity of the land and any filling activities shall not be excluded from such regulation and provided that the use of the wetlands, water bodies and watercourses for uses other than those specifically exempted from this subsection shall be subject to the provisions of this Chapter.

E. Gardening where otherwise legally permitted provided, however, that any tillage of soil shall leave an undisturbed strip not less than six (6) feet wide at the edge of any wetland, watercourse or water body to prevent erosion.

F. Operation and maintenance of such dams, retaining walls, terraces, sluices, culverts or other water control structures or devices as legally existed on the effective date of this Chapter.

G. Public health activities as set forth in orders or regulations of the Rockland County Department of Health. The affected property owner shall notify the Planning Board, in writing, of the proposed activity to be undertaken.

H. Any actual and ongoing emergency activity as determined by the Building Inspector which is immediately necessary for the protection and preservation of life or property or the protection or preservation of natural resources.

Section 126-5. Permit Procedure.

In the event the regulation of wetlands pursuant to this Chapter results in a deprivation of [all] the reasonable use of a property so as to constitute a de facto taking of such property, the owner of said property may apply to the Board of Trustees for a permit to conduct a specific activity otherwise prohibited herein.

A. Application for Permits.

Any person proposing to conduct or cause to be conducted a regulated activity specified in Section 126-3 of this Chapter or any activity not specifically exempt shall file ten (10) copies of an application for a permit with the Board of Trustees. Such application shall include but not be limited to the following information:

(1) Name and address of the applicant and the applicant's agent, if any, and whether the applicant is the owner, lessee, licensee, etc. of the property affected. If the applicant is not the owner, the written consent of the owner, in affidavit form, must be attached.

(2) Owner's consent for Village representative to enter upon the property.

(3) Street address, tax map designation of the subject property together with a vicinity map showing the location of the property.

(4) A detailed description of the specific purpose, nature and scope of the activity proposed.

(5) A detailed description of the reasons the applicant believes that by complying with this Chapter, he/she has been deprived of [all] the reasonable use of the property.

(6) A map showing the area of wetland, water body or watercourse directly affected with specific dimensions of the affected area. In addition, the wetland, water body or watercourse shall be flagged in the field. A certification of the map and field locations certified by a licensed professional authorized by the New York State Department of Environmental Conservation to identify wetlands shall be filed by the applicant together with the application.

(7) A topographical and perimeter survey, hydrological computation, engineering studies and other factual or scientific data and reports as deemed necessary by the Board of Trustees to permit it to arrive at a determination. The survey shall show all natural features of the property and all buildings and structures thereon with dimensions.

(8) In the case of applications affecting water retention capability, water flow or other drainage characteristics of any wetland, water body or watercourse, the Board of Trustees may require the inclusion of a statement of the area of upstream and downstream watersheds, impact analysis and information as to rainfall intensity in the vicinity for not less than a one hundred year return frequency, together with approximate runoff coefficients to determine the capacity and size of any channel sections, pipes or waterway openings, together with plans for necessary bridges, culverts, stormwater or pipe drains and such other information and data that, in the opinion of the Board of Trustees, are needed to arrive at a proper determination on the application, consistent with this Chapter.

(9) A detailed plan for mitigation of the loss of wetland resulting from the proposed disturbance including but not limited to creation of new wetland, restoration of vegetation, new landscaping, and other similar mitigations;

(10) A list of all property owners of properties within 500 feet of the perimeter of the affected property.

B. Public Hearing.

Not sooner than 30 days nor later than 90 days after receipt of a complete application, the Board of Trustees shall begin a public hearing. Notice, posting and mailing of notice of said public hearing shall be made as set forth in the Village Site Plan requirements.

C. Board Action.

Within 45 days after the close of the public hearing, the Board of Trustees shall render a decision to approve, approve with modifications or disapprove the issuance of a permit for the proposed activity. The decision of the Board shall be made by resolution stating the findings and reasons for such decision.

Section 126-6. Standards for Granting Permits.

A. The applicant shall have the burden of demonstrating that he/she has been deprived of [all] the reasonable use of the property and that the proposed activity will be the minimum disturbance necessary to provide a reasonable use of the property.

B. In granting, denying or granting a permit with conditions, the Board of Trustees shall consider the effect of the proposed activity with reference to the public health and welfare, fishing, flood, hurricane and storm dangers and the protection or enhancement of the several functions of the wetlands and the benefits derived therefrom as set forth in this Chapter, irrespective of municipal boundaries.

C. The Board of Trustees may grant a permit, subject to such terms and conditions as it may reasonably impose.

D. In granting a permit, the Board may limit the same or impose conditions or limitations designed to carry out the public policy set forth in this Chapter. The Board of Trustees may require a cash bond or letter of credit in an amount and with surety and conditions satisfactory to the Village Attorney, securing compliance with the conditions and limitations set forth in the permit. The Building Inspector, with the concurrence of the Village Engineering Consultant, may suspend or revoke a permit if he/she finds that the applicant has not complied with any of the conditions or limitations set forth in the permit or has exceeded the scope of the activity as set forth in the approving resolution of the Board of Trustees or if the applicant fails to comply with the terms and conditions set forth in the application for the permit.

Section 126-7. Appeals.

Any person aggrieved by a determination of the Board of Trustees shall have the right to appeal pursuant to Article 78 of the Civil Practice Law and Rules within thirty (30) days after said determination has been filed in the office of the Village Clerk and mailed to the applicant.

Section 126-8. Fees.

An application for a Wetlands Permit shall be accompanied by a fee in accordance with the Fee Schedule adopted by the Board of Trustees. In addition, the applicant shall reimburse the Village for all consultants' fees incurred in connection with the application.

Section 126-9. Applicability.

In the event the provisions of this Chapter are more or less protective of the environment than the Environmental Conservation Law of the State of New York, the law that is more protective of the environment shall prevail.

Section 126-10. Penalties.

Pursuant to Sections 71-2303 and 2305 of the Environmental Conservation Law, the following penalties shall apply:

A. Any person who violates, disobeys or disregards any provision of this Chapter shall be liable for a civil penalty not to exceed $3,000.00 for each such violation. No such penalty shall be imposed unless and until the Board of Trustees has held a public hearing, upon due notice, and has made a determination that such violation has occurred and has made findings of fact relating to said determination. The alleged violator shall have a right to specification of the charges and to be represented by counsel at such hearing. Each day such violation shall continue shall be deemed to be a separate, distinct and additional offense.

B. The Board of Trustees shall also have authority, following a hearing as set forth in Paragraph A above, to direct a violator to cease violation of this Chapter and, subject to the Board's supervision, to satisfactorily restore the affected wetland, water body or watercourse to its condition prior to the violation, insofar as is possible, within a reasonable time as may be determined by the Board of Trustees. The violator shall reimburse the Village for all consultants' fees incurred in relation to correction of such violation.

C. Any civil penalty or order issued by the Board of Trustees shall be reviewable pursuant to Article 78 of the Civil Practice Law and Rules within thirty (30) days after filing of such penalty or order in the office of the Village Clerk and mailing a copy thereof to the violator.

D. In addition to the above, any person who violates any provision of this Chapter shall be guilty of a violation punishable by a fine of not less than $500.00 nor more than $1,000.00 for the first offense, and not less than $1,000.00 nor more than $2,000.00 for a second and subsequent offense relating to the same property, and/or a term of imprisonment not to exceed fifteen (15) days. Each day such violation shall continue shall be deemed to be a separate, distinct and additional offense.

    E. In addition to the above, the Village shall have the right to seek equitable relief to restrain any violation or threatened violation of any provision of this Chapter.

Section 2. Section 118-2 of such Code is hereby amended to read as follows:

    Sec. 118-2. Compliance required.

    A. Lands within the Village of Pomona may be subdivided into lots, blocks or sites, with or without streets or highways, only if approved by the Planning Board in accordance with the procedures and requirements set forth in this Chapter and only if the approved plat is filed in the office of the County Clerk, County of Rockland. Construction, excavation, filling, regrading, clearing of vegetation or other similar activities related to a proposed subdivision shall not be commenced until a subdivision shall have been approved by the Planning Board and filed with the County Clerk.

    B. In addition to the requirements of this Chapter, every application for subdivision approval shall be in compliance with all other requirements of the Village Code including, but not limited to the provisions of Chapter 126 of this Code.

Section 3. Paragraph (4) of Subdivision C of Section 118-25 of such Code is hereby amended to read as follows:

    (4) No more than 25% of the minimum lot area required under the Zoning Law may be satisfied by land with unexcavated slopes over 25%, wetlands as defined in Chapter 126 of this Code, floodplain, utility or other easements or rights of way, or a combination of said encumbrances.

Section 4. Subdivision C of Section 118-28 of such Code is hereby amended to read as follows:

    C. The location of all existing structures and pertinent features, including railroads, water bodies, watercourses, wetlands, rock outcroppings, wooded areas, trees having a circumference of 25 inches or more, and stone walls, that may influence the design of the subdivision, plus accurate topography at a vertical contour interval of not more than two (2) feet. The topographic data shall be determined by field survey unless the Planning Board specifically waives this requirement and/or permits the substitution of topographic information obtained from other sources determined satisfactory by the Planning Board. The wetlands delineation shall be certified on the map and

in the field by a licensed professional authorized by the New York State Department of Environmental Conservation to make such certifications.

Section 5. The opening paragraph of Subdivision B of Section 118-32 of such Code is hereby amended to read as follows:

B. General standards. The Planning Board shall not approve a site plan unless it shall find that such plan conforms to the requirements of this Chapter, as well as to other applicable laws and regulations, including but not limited to Chapter 126 of this Code. In reviewing the site plan, the Planning Board shall also take into consideration the public health, safety and general welfare and shall impose appropriate conditions and safeguards which are in harmony with the general purpose and intent of this Chapter, particularly with respect to the following:

Section 6. Paragraph (4) of Subdivision C of Section 118-32 of such Code is hereby amended to read as follows:

(4) Location and dimensions of all existing buildings, retaining walls, fences, rock outcroppings, wooded areas, single trees with circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side, watercourses, wetlands, water supply, sanitary sewerage, storm drainage, utilities, and any other significant and existing features on the site. Wetland delineations shall be mapped and staked in the field and certified by a licensed professional authorized by the New York State Department of Environmental Conservation to certify said wetlands. All significant existing features within twenty (20) feet of all property lines shall also be shown.

Section 7. Paragraph (6) of Subdivision C of Section 119-7 of such Code is hereby amended by adding thereto a new subparagraph, to be Subparagraph (w), to read as follows:

(w) Protection of all wetlands in accordance with the requirements of Chapter 126 of this Code, the New York State DEC and the U.S. Army Corps of Engineers.

Section 8. This local law shall take effect immediately.