170524tartikov1                    Trial

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CONGREGATION RABINNICAL COLLEGE
    of TARTIKOV, INC., et al.,
4
                  Plaintiffs,
5
            v.                              07 Civ. 6304 (KMK)
6
    VILLAGE of POMONA, NY, et al.,
7
                  Defendants.
8
    ------------------------------x          White Plains Courthouse
9                                            White Plains, N.Y.
                                             May 24, 2017
10                                           9:40 a.m.

11  Before:

12              THE HONORABLE KENNETH M. KARAS,

13                                              District Judge

14                            APPEARANCES

15  JOHN STEPANOVICH
    ROMAN STORZER
16  DONNA SOBEL
    TERRY RICE
17  PAUL SAVAD
            Attorneys for Plaintiffs
18
    JOHN PELOSO
19  ANDREA DONOVAN NAPP
    KARLA CHAFFEE
20          Attorneys for Defendants

21

22

23

24

25

            SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                        (914)390-4053

170524tartikovT1          Ulman - cross

1    A.   Yes, but would also need site plan approval from the

2    planning board.

3    Q.   Okay, but it's the Board of Trustees that has the authority

4    to approve the special permit; isn't that true?

5    A.   Yes, but a special permit is just another -- a special

6    permit is a -- an additional set of eyes, if you will, on a

7    project of the use of which is approved as an approved use

8    within the Village code.

9    Q.   This additional set of eyes that you mention really is the

10   Board of Trustees' authority to approve the special permit,

11   correct?

12   A.   To approve the special permit, not the entire project.

13   Q.   That's all I asked --

14   A.   Yes.

15   Q.   -- was whether or not the Board of Trustees --

16   A.   Yes, correct.

17   Q.   -- can approve the special permit for an educational

18   institution.  Okay.

19           Now, petitions for text amendments are regulated by

20   the code; isn't that true?

21   A.   By what?  I'm sorry.

22   Q.   By the code, the Village code.

23   A.   Yes.

24   Q.   And I believe that's from Section 130-35 through 130-45?

25   A.   It's towards the end of the code.

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170524tartikovT1          Ulman - cross

1  Q.  Okay.  I'm just going to ask you some general questions on

2  that right now.  Ms. Ulman, how many text amendments made by

3  petition by residents have been adopted by the Village Board of

4  Trustees?

5  A.  I'm not aware of any that have been applied for, so none

6  have been adopted.

7  Q.  Okay.  Thank you.

8       Now, isn't it true, Ms. Ulman, according to 130-38 of

9  the code that on making of -- on making the motion for a

10  petition for a text amendment, the Board of Trustees may decide

11  not to formally consider that amendment?

12  A.  Yes.

13  Q.  And there's no requirement that the Board of Trustees

14  decide on a petition for a text amendment within a certain

15  period of time; isn't that true?  And I think if I can

16  reference you to 130-42.

17  A.  I'm looking at that.  No, that -- no, there does not seem

18  to be a time period, a time limit for which the board would be

19  required --

20  Q.  That's my question.  There's nothing in the code --

21  A.  Not that I see; no.

22  Q.  -- that indicates a time period in which the board must

23  act?

24  A.  No.

25  Q.  Ms. Ulman, what is the legal standard of review if the

170524tartikovT1          Ulman - cross

1  board decides not to adopt a petition for a text amendment?

2  A.   What is the legal what?

3  Q.   Legal standard of review?

4  A.   Of review?

5  Q.   Yes, ma'am.

6  A.   If the board decides not to?

7  Q.   Not to adopt a petition?

8  A.   An Article 78 proceeding or a declaratory judgment action.

9  Q.   So, Ms. Ulman, isn't it true that the town board is not

10  duty-bound to act on a petitioner's application for a text

11  amendment; isn't that true?

12  A.   That's correct.

13  Q.   Ms. Ulman, in the event of a petition for a text amendment,

14  isn't it true that residents can voice their opposition to that

15  text amendment?

16  A.   The procedure for a -- an amendment to the zoning law,

17  which is what I think you're referring to as a text amendment,

18  is set forth in Chapter -- in Article 11 as you indicated; and

19  that provides for a public hearing to be held by the Board of

20  Trustees on the application, and of course, public hearings are

21  open for public comment, and that's the reason that you hold a

22  public hearing, is to get public comment on the particular

23  application.

24  Q.   Ms. Ulman, if I could direct your attention to 130-42,

25  which is procedure upon protest.  Do you see that?

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170524tartikovT1            Ulman - cross

1  A.  Yes.

2  Q.  And my question is that there is a procedure for Village

3  residents to protest the petition for a text amendment; isn't

4  that true?

5  A.  Yes.

6  Q.  Okay.  And what is that procedure?

7  A.  The procedure as set forth this seems to be a recitation of

8  the State Section 7-708 of the Village law, the State Village

9  Law, where a petition can be signed by at least 20 percent or

10 more of the area of the land included in such proposed change,

11 or by the owners of 20 percent or more of the land immediately

12 adjacent extending 100 feet from the subject property, or by

13 the owners of 20 percent or more of the land directly opposite

14 thereto extending 100 feet from the street frontage of such

15 opposite land.  I was just reading from the Section 130-42.

16 And what it requires is that the Board of Trustees, instead of

17 having the ability to approve the application by a majority,

18 you need a majority plus one, which is four members of the

19 board instead of three.

20 Q.  And you anticipated my last question.  If that protest

21 would occur by the 20 percent that you just set forth, then the

22 board is required to pass the action by what you would call I

23 think is a supermajority; is that fair?

24 A.  Yes.

25 Q.  So as you stated, instead of three out of five, it would be

170524tartikovT1          Ulman - cross

1   four out of five?

2   A.   Right.

3   Q.   Now, Ms. Ulman, I want to ask you a few questions about

4   zone change.  Your affidavit at paragraph 15 mentions zone

5   changes.  And my question, ma'am, is where in the zoning code

6   does it talk about zone changes as you've reflected in your

7   affidavit at paragraph 15?

8   A.   That's authorized by the amendment article.  An

9   amendment -- a zone change is in the nature of an amendment to

10  the zoning law, because what you're doing is changing the

11  zoning map, and you're -- if you were creating a new zone, you

12  would be including that language within the zoning law as an

13  amendment to the -- to the law itself.

14  Q.   So then, if I understand your testimony, then that process

15  would fall under the petition for an amendment; is that true?

16  A.   I believe so, yes.

17  Q.   How many zones are there in the Village?

18  A.   One.

19  Q.   Which zone could Tartikov change its property to in order

20  to be allowed?

21  A.   They would propose a new zone.

22  Q.   So, Tartikov then could not petition for a zone change;

23  isn't that true?

24  A.   Well, we call it a zone change.  It would be very difficult

25  to call it a zone increase.  Zone change covers any -- and this