# 18-0869-cv(L), 18-1062-cv(XAP)

## United States Court of Appeals

*for the*

## Second Circuit

CONGREGATION RABBINICAL COLLEGE OF TARTIKOV, INC, RABBI
MORDECHAI BABAD, RABBI WOLF BRIEF, RABBI HERMAN KAHANA,
MEIR MARGULIS, RABBI MEILECH MENCZER, RABBI JACOB
HERSHKOWITZ, RABBI CHAIM ROSENBERG,
RABBI DAVID A. MENCZER,

*Plaintiffs-Appellees-Cross-Appellants,*

RABBI GERGELY NEUMAN, RABBI KOLEL BELZ, OF MONSEY, RABBI
ARYEH ROYDE, RABBI AKIVA POLLACK,

*Plaintiffs,*

*(For Continuation of Caption See Inside Cover)*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## RESPONSE AND REPLY BRIEF FOR
## DEFENDANTS-APPELLANTS-CROSS-APPELLEES

JOHN F. X. PELOSO JR.
THOMAS J. DONLON
ROBINSON & COLE LLP
1055 Washington Boulevard
Stamford, Connecticut 06901
(203) 462-7599

MARCI A. HAMILTON, ESQ.
36 Timber Knoll Drive
Washington Crossing, Pennsylvania 18977
(215) 353-8984

*Attorneys for Defendants-Appellants-Cross-Appellees*

---

– v. –

VILLAGE OF POMONA, NY, BOARD OF TRUSTEES OF THE VILLAGE OF
POMONA, NY, NICHOLAS L. SANDERSON, as Mayor, IAN BANKS, as
Trustee and in his official capacity, ALMA SANDERS-ROMAN, as Trustee and
in her official capacity, RITA LOUIE, as Trustee and in her official capacity,
BRETT YAGEL, as Trustee and in his official capacity,

*Defendants-Appellants-Cross-Appellees.*

---

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .................................................................................. 1

ARGUMENT ......................................................................................... 2

I.    THE DISTRICT COURT'S REFUSAL TO APPLY THE SALERNO
STANDARD REQUIRES REVERSAL ......................................... 2

    A.    Standing Is Not The Issue .................................................. 4

    B.    The Overbreadth Doctrine Is Inapplicable ......................... 5

    C.    The Lukumi Analysis Is Inapplicable ................................ 7

II.    PLAINTIFFS FAILED TO PROVE THE CHALLENGED LAWS
WERE ENACTED WITH A DISCRIMINATORY PURPOSE ............... 11

    A.    The Accreditation Law Had No Discriminatory Purpose ............ 11

    B.    The Dormitory Laws Had No Discriminatory Purpose ................ 14

        1.    Local Law 5 of 2004 ............................................... 14

        2.    Local Law 1 of 2007 ............................................... 19

        3.    The January 22, 2007 Hearing ................................. 21

    C.    The Wetlands Law Had No Discriminatory Purpose ................ 25

III.    TARTIKOV FAILED TO MEET ITS  BURDEN OF PROOF
UNDER RLUIPA ................................................................... 28

    A.    Plaintiffs' Testimony Demonstrated On-Campus Family
Housing Was Not Their Religious Belief ............................ 30

    B.    Tartikov Failed To Prove The Challenged Laws Imposed A
Substantial Burden ........................................................... 33

        1.    Tartikov Did Not Prove The Accreditation Law Was A
Substantial Burden ................................................. 34

        2.    Tartikov Did Not Prove The Wetlands Law Was A
Substantial Burden ................................................. 35

        3.    Tartikov Did Not Prove The Dormitory Restrictions
Were A Substantial Burden ...................................... 36

        4.    This Case Is Not About A Torah Community ................ 38

# TABLE OF CONTENTS
## (continued)

**Page**

IV. THERE WERE NO OTHER STATUTORY OR
CONSTITUTIONAL VIOLATIONS ....................................................42

    A.     Free Exercise ......................................................................42

    B.     Free Association ..................................................................44

    C.     Fair Housing Act ................................................................45

V. THE INJUNCTION WAS IMPROPER .............................................47

    A.     The Judgment Exceeded The Relief Granted In The Decision..........47

    B.     The District Court Did Not Hear Any Evidence Before Issuing
The Judgment ....................................................................48

    C.     The Judgment Conflicts With New York State Land Use Law........50

RESPONSE TO CROSS APPEAL ......................................................54

VI. THE TRIAL COURT CORRECTLY DISMISSED TARTIKOV'S
AS-APPLIED CHALLENGE ............................................................54

    A.     This Court Requires One Meaningful Application ..........................55

    B.     Tartikov Could Have Made An Application ....................................56

    C.     Tartikov Cannot Rely On Futility ................................................59

VII. TARTIKOV FAILED TO PROVE ITS OTHER RLUIPA CLAIMS........63

    A.     Tartikov Did Not Prove Its Equal Terms Claim ...............................63

    B.     Tartikov Did Not Prove Its Exclusion And Limits Claim .................66

CONCLUSION ................................................................................69

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Able v. U.S.*,
    88 F.3d 1280 (2d Cir. 1996) .......................................................4

*Adhi Parasakthi Charitable v. W. Pikeland*,
    721 F.Supp.2d 361 (E.D. Pa. 2010) ...............................66, 68, 69

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................27

*Bethel World Outreach Ministries v. Montgomery County Council*,
    706 F.3d 548 (4th Cir. 2013) .....................................................34

*BT Holdings v. Chester*,
    670 Fed. Appx. 17 (2d Cir. 2016) ..............................................57

*Calvary Chapel Bible Fellowship v. Riverside*,
    2017 U.S. Dist. LEXIS 217331 (C.D.Cal. Aug. 18, 2017) ........68

*Canatella v. California*,
    304 F.3d 843 (9th Cir. 2001) .......................................................6

*Central Rabbinical Congress v. N.Y. Dept Health & Mental Hygiene*,
    763 F.3d 183 (2d Cir. 2014) ........................................................8

*Chabad Lubavitch of Litchfield County. v. Litchfield Historic District Commission*,
    768 F.3d 183 (2d Cir. 2014) .........................................28, 33, 36

*Chestnut Hill v. Ramapo*,
    2008 U.S. Dist. LEXIS 76881 (S.D.N.Y. 2008) ......................18

*Chicago v. Morales*,
    527 U.S. 41 (1999) ...................................................................3, 6

*Church of Lukumi Babalu Aye v. Hialeah*,
    508 U.S. 520 (1992) ........................................................7, 8, 42

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Citizens United v. FEC,*
    558 U.S. 310 (2010)...........................................................................................3

*Commack Self-Service Kosher Meats v. Hooker,*
    680 F.3d 194 (2d Cir. 2012) ............................................................................43

*Congregation Anshei Roosevelt v. P&ZB,*
    338 Fed. Appx. 214 (3d Cir. 2009).............................................................48, 56

*Cornell v. Kirkpatrick,*
    665 F.3d 369 (2d Cir. 2011) ............................................................................63

*Dickerson v. Napolitano,*
    604 F.3d 732 (2d Cir. 2010) ..............................................................................5

*DLX v. Kentucky,*
    381 F.3d 511 (6th Cir. 2004) ...........................................................................60

*Doe v. Albuquerque,*
    667 F.3d 1111 (10th Cir. 2012) .........................................................................3

*Dreher v. Doherty,*
    531 Fed. Appx. 82 (2d Cir. 2013).....................................................................60

*Eagle Cove Camp & Conf. Ctr. v. Woodboro,*
    734 F.3d 673 (7th Cir. 2013) ...........................................................................68

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006) ..............................................................................5

*Fifth Ave. Presbyterian Church v. City of N.Y.,*
    293 F.3d 570 (2d Cir. 2002) ......................................................................30, 31

*Fortress Bible Church v. Feiner,*
    694 F.3d 208 (2d Cir. 2012) ............................................................................50

*Gilbert v. Cambridge,*
    932 F.2d 51 (1st Cir. 1991)..............................................................................61

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Grace Community Church v. Lenox Township*,
    544 F.3d 609 (6th Cir. 2008) ......................................................56

*Greenbriar Village v. Mountain Brook City*,
    345 F.3d 1258 (11th Cir. 2003) ..................................................48

*Guatay Christian Fellowship v. San Diego County*,
    670 F.3d 957 (9th Cir. 2011) ..........................................56, 58, 60

*Holt v. Hobbs*,
    135 S.Ct. 853 (2015)........................................................28, 30, 32

*Insomnia v. Memphis*,
    278 Fed. Appx. 609 (6th Cir. 2008)...........................................55

*Int'l Church v. San Leondro*,
    632 F. Supp. 2d 925 (N.D. Cal. 2008)........................................68

*Islamic Community Center v. Yonkers Landmark Preservation Bd.*,
    2018 U.S. App. LEXIS 18369 (2d Cir. July 6, 2018) ...........55, 59, 60

*Jana-Rock Constr. v. New York State Dept. of Econ Dev.*,
    438 F.3d (2d Cir. 2006) ..............................................................27

*Lerman v. Bd. of Elections*,
    232 F.3d 135 (2d Cir. 2000) .....................................................5, 6

*Los Angeles v. Patel*,
    135 S.Ct. 2443 (2015).................................................................9

*Lost Trail v. Weston*,
    289 Fed.Appx. 443 (2d Cir. 2008)..............................................57

*Lucas v. S.C. Coastal Council*,
    505 U.S. 1003 (1992)..................................................................62

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................61

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*MacDonald, Sommer & Frates v. Yolo County,*
  477 U.S. 340 (1986)...........................................................................62

*Members for a Better Union v. Bevona,*
  152 F.3d 58 (2d Cir. 1998) ..............................................................61

*Midrash Sephardi v. Surfside,*
  366 F.3d 1214 (11th Cir. 2004) .......................................................37

*Murphy v. New Milford Zoning Commission,*
  402 F.3d 342 (2d Cir. 2005) ................................. 48, 55, 56, 58, 59, 60

*N.Y. State Rifle & Pistol Assn. v. Cuomo,*
  804 F.3d 242 (2d Cir. 2014) ...............................................................3

*Nenninger v. Port Jefferson,*
  509 Fed. Appx. 36 (2d Cir. 2013)................................................48, 59

*Norton v. Sam's Club,*
  145 F.3d 114 (2d Cir. 1998) .............................................................42

*Palazzolo v. Rhode Island,*
  533 U.S. 606 (2001)..........................................................................62

*Petra Presbyterian Church v. Northbrook,*
  409 F.Supp.2d 1001 (N.D. Ill. 2006)................................................68

*Petra Presbyterian Church v. Northbrook,*
  489 F.3d 846 (7th Cir. 2007) ............................................................33

*Planned Parenthood v. Casey,*
  505 U.S. 833 (1992)..........................................................................10

*R.G. Barry Corp. v. Mushroom Makers,*
  612 F.2d 651 (2d Cir. 1979) .............................................................23

*Reich v. Mashantucket Sand & Gravel,*
  95 F.3d 174 (2d Cir. 1996) ...............................................................29

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Safe Harbor Retreat v. East Hampton*,
    629 Fed. Appx. 63 (2d Cir. 2015)........................................................55, 57, 59

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ...........................................................................48

*Sherman v. Chester*,
    752 F.3d 554 (2d Cir. 2014) ...........................................................................50

*Southern Pacific Transp. v. Los Angeles*,
    922 F.2d 498 (9th Cir. 1990) .....................................................................58, 60

*Suitum v. Tahoe Regional Planning Agency*,
    520 U.S. 725 (1997)........................................................................................62

*Sunrise Detox v. White Plains*,
    769 F.3d 118 (2d Cir. 2014) ...........................................................................57

*Tabbaa v. Chertoff*,
    509 F.3d 89 (2d Cir. 2007) ...............................................................................5

*Third Church of Christ, Scientist v. City of New York*,
    626 F.3d 667 (2d Cir. 2010) ...........................................................................64

*Tree of Life Christian Schools v. Upper Arlington*,
    2018 U.S. App. LEXIS 26400 (6th Cir. 2018)................................................65

*Trinity Lutheran Church of Columbia v. Comer*,
    137 S.Ct. 2012 (2017)..................................................................................7, 8

*Tsombanidis v. W. Haven Fire Dept*,
    352 F.3d 565 (2d Cir. 2003) ...........................................................................47

*U.S. v. Cheng Le*,
    902 F.3d 104 (2d Cir. 2018) .............................................................................3

*U.S. v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) .............................................................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*U.S. v. Guerino,*
   607 Fed. Appx. 117 (2d Cir. 2015)..................................................................19

*U.S. v. Rybicki,*
   354 F.3d 124 (2d Cir. 2003) ..........................................................................3

*U.S. v. Sampson,*
   898 F.3d 287 (2d Cir. 2018) ..........................................................................13

*U.S. v. Yonkers Bd. of Ed.,*
   837 F.2d 1181 (2d Cir. 1987) ........................................................................45

*Unity Ventures v. Lake Cty.,*
   841 F.2d 770 (7th Cir. 1988) .........................................................................61

*Vision Church v. Long Grove,*
   468 F.3d 975 (7th Cir. 2006) .....................................................................38, 67

*Wash. State Grange v. Wash. Republican Party,*
   552 U.S. 442 (2008)........................................................................................6

*Westchester Day School v. Mamaroneck,*
   504 F.3d 338 (2d Cir. 2007) ...........................................................29, 41, 50

*Winston v. Syracuse,*
   887 F.3d 553 (2d Cir. 2018) .......................................................................4, 5

*Wisconsin Bell v. Bridge,*
   334 F. Supp.2d 1127 (W.D. Wisc. 2004) ......................................................61

*World Outreach Conference Center v. Chicago,*
   591 F.3d 531 (7th Cir. 2009) .........................................................................34

**State Cases**

*Costco v. Oyster Bay,*
   90 A.D.3d 657 (2d Dept 2011) ......................................................................53

# TABLE OF AUTHORITIES
## (continued)

*Equine Facility v. Pavacic,*
    155 A.D.3d 1035 (2d Dept. 2017) ....................................................56

*Friends of Stanford Home v. Niskayuna,*
    50 A.D.3d 1289 (3d Dept 2008) .......................................................52

*Hargraves v. Rye ZBA,*
    162 A.D.3d 1022 (2d Dept. 2018) ....................................................58

*Jackson v. NYS Urban Development Corp.,*
    67 N.Y.2d 400 (1986) .......................................................................51

*Jewish Bd of Family & Childrens Services v. ZBA,*
    79 A.D.2d 657 (2d Dept. 1980) ........................................................12

*Lowe's Home Centers v. Venditto,*
    15 Misc.3d (A) (Nassau Sup. Ct. 2007) ...........................................54

*Saratoga Springs Pres. Foundation v. Boff,*
    110 A.D.3d 1326 (2d Dept 2013) .....................................................52

**Federal Statutes**

42 U.S.C. § 2000cc(b)(2) ......................................................................34

42 U.S.C. § 3604 ...................................................................................45

42 U.S.C. § 3617 ...................................................................................45

**State Statutes**

N.Y. Village Law § 7-712-b ..................................................................58

N.Y. Village Law § 7-725-a ..................................................................52

Village of Pomona Zoning Code, §130-28 ............................................58

# TABLE OF AUTHORITIES
## (continued)

**State Regulations**

6 NYCRR 617.6 (b)(2)(3)................................................................................51

**Other Authorities**

C.A. Wright and A.R. Miller, FEDERAL PRACTICE & PROCEDURE
    § 2723...........................................................................................48, 49

MERRIAM-WEBSTER DICTIONARY, 2018 ...................................................37

# **INTRODUCTION**

Anti-Semitism is despicable.  No law in America, federal, state or local, should be enacted that is tainted with such hatred.  However, due to the stigma that even a charge of anti-Semitism brings, care must be taken in placing that label on a person or a group.  This is particularly true where the charge is leveled in a federal courtroom.

There is no dispute that some ugly things were said online about Tartikov and Hasidic Jews.  But they were not said by Village officials, some of whom were fellow Jews and minorities, or even by the overwhelming majority of residents. Tartikov assumes that any statement attacking, or even questioning, its desire for a rabbinical college with multi-family housing for thousands is evidence of prejudice chargeable to the Village.  That approach — lumping the good, expressing reasonable concerns, with the anonymous bad — risks undermining important legal principles, as well as weakening the struggle against real anti-Semitism.

Just the specter of anti-Semitism can be overwhelming, so a court must be careful to strictly enforce legal rules in making such a determination.  Here, the legal standards to bring and prove a discrimination claim represent real roadblocks that Tartikov cannot overcome merely by wielding claims of prejudice. The Village's reliance on those standards represents adherence to the rule of law, not prejudice.

The initial zoning law at issue was triggered by an Orthodox Jewish yeshiva seeking to move into the Village.  Fatal to Tartikov's claims, this first educational zoning law was written allowing the yeshiva to be built, not to stop it.  When the air is cleared of emotional claims of bigotry, Tartikov similarly has failed to prove the other Challenged Laws were enacted with a discriminatory purpose.  The Village's initial brief demonstrated the holes in the District Court's legal reasoning and fact-finding. Tartikov has been unable to fill them, or in many cases even to try.

The District Court erred in labeling the Village as prejudiced.  This Court is left with the difficult task of correcting that mistake in a time of charged language and vivid images. Fortunately, the Village can rely on this Court to weigh the law and the facts — and remove the stigma the Village presently endures.

## ARGUMENT

### I.

### THE DISTRICT COURT'S REFUSAL TO APPLY THE *SALERNO* STANDARD REQUIRES REVERSAL

Tartikov's unsuccessful attempt to excuse the District Court's error in not using the *Salerno* standard misstates the law and ignores the precedents of this Court.  Tartikov begins by dismissing the "dubious 'holding' of *Salerno*," citing

*Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999).[1]  As pointed out in the Village's

initial brief, pp. 12-13 (hereinafter "V.Br."), this Court rejected the *Morales'*

footnote's criticism of *Salerno* as "dicta of its own," never adopted by the whole

Supreme Court.  *U.S. v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003) *cert. denied*,

543 U.S. 809 (2004).  In *N.Y. State Rifle & Pistol Assn. v. Cuomo*, 804 F.3d 242,

265 (2d Cir. 2014), this Court denied an attempt similar to Tartikov's "to avoid

[*Salerno's*] prohibitively high bar" by urging reliance on *Morales*.  This Court

"determined that, because the test set forth by the *Morales* plurality has not been

adopted by the Supreme Court as a whole, we are not required to apply it."  *Id.*[2]

Instead, this Court has consistently applied the *Salerno* standard.  Since the

Village filed its initial brief, this Court reiterated in *U.S. v. Cheng Le*, 902 F.3d

104, 117 n.12 (2d Cir. 2018) that "[f]acial challenges … require the challenger to

establish that no set of circumstances exists under which the Act would be valid,"

quoting *Salerno*, 481 U.S. at 745.  The Village (V.Br. 11) set forth the consistent

---

[1] Tartikov also cites *Doe v. Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) but, unlike this Court, the 10th Cir. expressly rejected *Salerno* and adopted *Morales*. *See* V.Br. 13 n.1.  *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) does not address *Salerno*.

[2] Applying the looser *Morales* approach, striking down laws where "vagueness permeates the text" (527 U.S. at 55) would not lead to a different result because Tartikov does not contend the Challenged Laws are void for vagueness.

case law of this Circuit for over two decades, holding that facial challenges are governed by the *Salerno* standard, particularly in the land use regulation area.

Tartikov's response (*see* Plaintiffs-Appellees' Brief p. 72 (hereinafter "T.Br. ___")) to this established law is to claim that almost none of the cases involve discriminatory animus, without offering any authority that discrimination cases are treated differently. Tartikov acknowledges that *Able v. U.S.*, 88 F.3d 1280 (2d Cir. 1996) is a case dealing with discrimination, but tries to distinguish it as only addressing standing. T.Br. 72. However, *Able*, states, "[i]n a facial challenge, we need only consider whether there are any circumstances under which the prohibitions of the Act are permissible in order to uphold the Act." 88 F.3d at 1290. Rather than recognize any exception for discrimination, *Able* reaffirms the *Salerno* standard. The law in this Circuit is well-settled — *Salerno* controls. The District Court erred in not applying it.

## A. Standing Is Not The Issue

Tartikov devotes considerable space (T.Br. 63-66) to a discussion of prudential standing. *Salerno*, however, is not a standing case. There was no question that the *Salerno* plaintiffs had standing to attack the Bail Reform Act. Rather than determine standing, *Salerno* sets out the standard to apply to a facial challenge once the plaintiff has demonstrated standing. In deciding a facial challenge recently in *Winston v. Syracuse*, 887 F.3d 553, 559 (2d Cir. 2018), this

Court first independently addressed the issue of standing. Only when standing had been resolved in the plaintiff's favor, did this Court "turn to the merits" of plaintiff's case, applying the "well established" *Salerno* standard. *Id.* Standing, prudential or otherwise, provides no basis to fail to apply the *Salerno* standard.

**B.**     <u>**The Overbreadth Doctrine Is Inapplicable**</u>

Tartikov, like the District Court, asserts that *Salerno* "does not apply" to First Amendment claims. Tartikov ignores the fact that the cases it cites,[3] and the District Court relied on, arise under the overbreadth doctrine. *See* V.Br. 13-15. *Salerno* itself described the limited nature of this exception: "[t]he fact that the Bail Reform Act might operate unconstitutionally under some concervable set of circumstances is insufficient to render it wholly invalid since we have not recognized <u>an overbreadth doctrine</u> outside the limited context of the First Amendment." 481 U.S. at 745 (emphasis added). Tartikov is so busy trying to shoehorn all its claims under the First Amendment, it ignores the fact the *Salerno* exception is limited to overbreadth claims. Tartikov did not bring an overbreadth claim.

---

[3] *See Lerman v. Bd. of Elections*, 232 F.3d 135, 144 (2d Cir. 2000); *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006); *Dickerson v. Napolitano*, 604 F.3d 732, 749 (2d Cir. 2010). *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) is an as-applied, not a facial, challenge.

Without ever mentioning the doctrine, Tartikov seeks in effect to expand overbreadth to encompass Free Exercise claims. It cites no authority for such expansion and ignores the contrary authority the Village presented. *See* V.Br. 14; *see also* V.Br. 20 n.5. The overbreadth doctrine "applies only to statutes that regulate speech." *Canatella v. California,* 304 F.3d 843, 853, n.12 (9th Cir. 2001). *See also Morales*, 527 U.S. at 77 (Scalia, J. dissenting) ("except in free-speech cases subject to the doctrine of overbreadth").[4] There is no general exception to the *Salerno* standard for any claim a party can seek to bring under the broad umbrella of the First Amendment.

Moreover, if overbreadth could be invoked, the most expansive view of the doctrine is that "a facial challenge must fail where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. Republican Party*, 552 U.S. 442, 449 (2008). *See also U.S. v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012). Tartikov (T.Br. 73) simply asserts the Challenged Laws have no legitimate sweep. This is untrue. All of the laws apply to schools, or property, in general — not merely Orthodox/Hasidic, or even religious, schools and property. The accreditation, dormitory and other restrictions would be constitutional as applied to any non-sectarian — or even other religious — school. As to the Wetlands Law, Tartikov

---

[4] *Lerman*, 232 F.3d at 144, specifically relies upon "interactive political speech" in the part of the quote Tartikov leaves out. T.Br. 66-67.

6

ignores the evidence that the Law applies not only to vacant lots, but even to lots with houses on them, if those houses are altered or added to in the future.[5]  Further, when considering the legitimate sweep of that law, the vacant lots are a proper example, regardless of whether there is sufficient room to build an educational institution, since the sweep of the Wetlands Law is not limited by that usage.  Similar constitutionally valid applications of the exclusion of unaccredited schools and limits on the size and scope of dormitories are readily apparent, however, the District Court never considered this issue.  Even under this narrower view of facial challenges — which this Court has not adopted — the Challenged Laws would be upheld.

## C.   The *Lukumi* Analysis Is Inapplicable

The District Court maintained that *Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520 (1992) provided an alternative standard.  A779.  In response to the Village's argument that *Lukumi* does not apply (*see* V.Br. 17-20), Tartikov contends that the Village "misreads" *Lukumi*.  T.Br. 69.  However, it is Tartikov that misreads both the case law and the Village's argument.

The critical factor in *Lukumi* is that the ordinances applied "<u>only</u> against conduct motivated by religious belief."  508 U.S. at 545 (emphasis added).  The Supreme Court in *Trinity Lutheran Church of Columbia v. Comer*, 137 S.Ct. 2012,

---

[5] *See* Trial Affidavit of Charles Voorhis, S.D.N.Y. Dkt. #301 ¶ 58.

2021 (2017) made that clear in striking down a policy which disqualified a church "from a public benefit <u>solely</u> because of its religious character" (emphasis added). At issue in both cases was whether the laws were "generally applicable." *Id.*; *see also* 508 U.S. at 542. Thus, as the Village argued, if the laws do not restrict <u>only</u> religious activity, *Lukumi* and *Trinity Lutheran* do not apply. V.Br. 18-19.

Tartikov (T.Br. 70) distorts this argument, claiming that the Village focused on whether a law "classifies on the basis of race and religion <u>on its face</u>…" (emphasis in original). That was never the Village's argument.[6] Rather, the Village stressed that the Challenged Laws do not subject <u>only</u> religious, or even Orthodox/Hasidic, schools to disfavored treatment. Any school, even non-sectarian, is subject to the same requirements, making *Lukumi* inapt.

Attempting to counter this, Tartikov cites language from, *Central Rabbinical Congress v. N.Y. Dept Health & Mental Hygiene*, 763 F.3d 183 (2d Cir. 2014) that *Lukumi* applies when "the burdens of the law fell on 'a particular religious group.'" T.Br. 71. However, Tartikov <u>leaves out a critical word</u> from this Court's decision that the burdens "fall on <u>only</u> a particular religious group." 763 F.3d at 196

---

[6] Tartikov (T.Br. 69-70) focusses on the Village's mention of the terms "sacrifice" and "ritual," but the Village pointed out that the Supreme Court also considered "the exception of non-ritual killings" in slaughter houses or for home consumption. V.Br. 18. Further, *Lukumi* pointed out that, although "the use of the words 'sacrifice' and 'ritual' does not compel a finding of improper targeting of … religion, the choice of these words is support for our conclusion." 508 U.S. at 534.

(emphasis added).  By that deletion, Tartikov seeks to turn from the proper focus

of the *Lukumi/Trinity Lutheran/Central Rabbinical* cases on general applicability,

(whether other non-religious uses are subject to the same restrictions) to specific

applicability as to Tartikov.  Thus, Tartikov contends "[w]hether accredited

schools or schools that do not require student family housing can locate in Pomona

is irrelevant."  T.Br. 73.

Such an approach stands a facial challenge on its head.  Instead of

considering both the Plaintiffs' and third-parties' rights — which Tartikov

acknowledges is central to a facial challenge (T.Br. 63-4) — Tartikov seeks to

limit the focus to the Plaintiffs' specific situation.  As the Village pointed out

(V.Br. 8) such an approach, adopted by the District Court, converts the analysis

into the functional equivalent of an as-applied challenge.

To dismiss other valid applications of the Challenged Laws as "irrelevant,"

Tartikov (T.Br. 74) relies on language from *Los Angeles v. Patel*, 135 S.Ct. 2443,

2451 (2015) that "only applications of the statute in which it actually authorizes or

prohibits conduct" are considered.  Tartikov (T.Br. 74) reads this as limited to

"those whose conduct is prohibited by the Challenged Laws."  However, *Patel*

goes on to point out facial challenges consider actions that "involve actual

applications of the statute" and then "plaintiff must establish that a law is

unconditional in all of its applications" 135 S.Ct. at 2451 (emphasis added).

9

The Challenged Laws would apply each time a school sought a special permit, whether or not it qualified for accreditation, or sought dormitories that met or exceeded the zoning limits; for example when YSV sought to move its school to the Village.  Similarly, the Wetlands Law would apply — constitutionally — to any plan of further development on the 20 vacant lots, or on lots with existing houses next to wetlands.[7]

Further, even Tartikov's improper attempt to limit the Challenged Laws to unaccredited schools, or those requiring student family housing, would not invalidate the Laws.  Any non-sectarian school, not previously in operation, would be subject to, and prohibited by, the Accreditation Law without violating the Constitution.  Similarly, any non-sectarian school seeking graduate student family housing would be constitutionally subject.[8]  Even under *Patel* and *Planned Parenthood v. Casey,* 505 U.S. 833, 894 (1992), such applications would defeat a facial challenge.

Tartikov's argument boils down to — because the Challenged Laws would be unconstitutional as applied to Tartikov, it is irrelevant if the laws are

---

[7] As the Wetlands Law does not apply only to educational institutions, it is irrelevant that the vacant lots cannot accommodate one.  *See* T.Br. 74.

[8] For example, a new school, which wished to offer education to returning veterans and required housing for their families, would face the same bar as Tartikov, without raising any constitutional issues.

constitutional as applied to anyone else.  That is not a facial challenge.  Under that
distorted approach, any plaintiff who claimed discrimination could avoid the limits
on facial challenges and demand a court proceed to "review challenges to the
[laws] under the applicable constitutional or statutory standard," as Tartikov does
here.  T.Br. 74.  Neither the *Lukumi/Trinity Lutheran* nor the *Patel/Planned
Parenthood* cases permit that.  As the Challenged Laws do not prohibit or restrict
conduct <u>solely</u> because of religious character or motivation, *Salerno* is the
operative standard.  Tartikov never contends that it met the *Salerno* standard,
because it cannot.  Therefore, the District Court's decision should be reversed.[9]

## II.

### PLAINTIFFS FAILED TO PROVE THE CHALLENGED LAWS WERE ENACTED WITH A DISCRIMINATORY PURPOSE

**A.**  <u>**The Accreditation Law Had No Discriminatory Purpose**</u>

The first of the Challenged Laws, Local Law 1 of 2001 (the "Accreditation
Law"), was adopted before Tartikov even existed.  The owner of the Property was
an Orthodox Jewish school, YSV.  Tartikov would rather focus on events after it
appeared on the scene, because those events may provide better optics (but not
better evidence).  However, to prove discriminatory intent for the Accreditation

---

[9] As pointed out in the Village's initial brief (V.Br. 16, n.3) this includes as to <u>all</u>
New York state law claims, including free exercise.

11

Law, Tartikov had to prove the Village passed it to discriminate against YSV. Tartikov failed.[10]

The Accreditation Law imposed two main restrictions on educational institutions:  the institution had to be accredited, and could not have dormitories. TE1482.  These are the very restrictions the District Court relied upon to find the Challenged Laws unconstitutional.  A794-5.  Neither of these restrictions, however, limited the use of the Property for YSV's planned primary and pre-school.  Unlike Tartikov's hypothetical rabbinical college, YSV already existed (in a neighboring town).  V.Br. 27.  YSV stated it had no plans for dormitories.  *See* TE588.  YSV only intended to use 10 acres to build its school (TE586), so the minimum lot size in the Accreditation Law would not bar YSV, nor would the 0.5 acre per student requirement.  *See* V.Br. 28.

In its very short discussion of YSV (*see* T.Br. 18-19),[11] Tartikov does not contest that YSV could have been accredited.  Tartikov also does not contest that

---

[10] In discussing the "series of events leading up to" the Challenged Laws, Tartikov ignores the Village's planner's earlier pronouncement in 1997 of "the need for guidelines designed to prevent development from adversely impacting the Village's natural resources… as the Village approaches complete build out of its total land area."  TE1446.

[11] Tartikov argues the Village Attorney only reviewed laws on private schools. T.Br. 18.  However, local governments can only regulate private schools.  Public schools are not subject to local zoning.  *See Jewish Bd of Family & Childrens Services v. ZBA,* 79 A.D.2d 657 (2d Dept. 1980).

YSV had no need, nor plans, for dormitories or multi-family housing. Further, Tartikov does not contest that the only evidence YSV could not be built after the Accreditation Law was enacted — the statement by Rabbi Fromowitz — was not admitted for the truth, and was contradicted by the evidence admitted without that restriction. V.Br. 27-8.[12]

Nonetheless, Tartikov continues to argue that the Accreditation Law was adopted with a discriminatory purpose. The facts simply do not support that claim. Without proof that YSV could not be accredited, there is no basis for claiming the intent of the law was discriminatory. Without proof YSV wanted to build dormitories, there is no basis for claiming discrimination. Tartikov would have this Court believe the Village adopted a law for the purpose of keeping out YSV that would not have stopped YSV from building the very school it planned. In fact, when YSV later submitted an application, the Village did not deny it. A1882, TE31.

The District Court, and now Tartikov, tries to avoid these facts by claiming that the Village really discriminated against the "spread of the Orthodox/Hasidic community into the Village…" T.Br. 12, quoting A793. *See also* T.Br. 20 n.2.

---

[12] On reply, Tartikov cannot contest these and other Village arguments to which it did not respond in its initial brief because a party may not raise new arguments on reply. *U.S. v. Sampson*, 898 F.3d 287, 314 (2d Cir. 2018). This is particularly true here, because Tartikov only has a reply due to its Cross-Appeal and should be limited to Cross-Appeal issues on reply.

That argument will not fly either. Who was this other Orthodox/Hasidic community that the Accreditation Law was intended to stop in 2001? As Tartikov points out (T.Br. 18), there were no other schools applying. The issue before the Village was the plan, and eventual application, of YSV. At the time the Village adopted the Accreditation Law, YSV met all of the criteria, and was free to construct its Orthodox Jewish school.[13]

Thus, Tartikov cannot and did not prove a discriminatory purpose behind the Accreditation Law. The District Court erred in ruling the law unconstitutional. As the District Court repeatedly points out, Tartikov could not build its rabbinical college because it is unaccredited — and plans on multi-family housing. While Tartikov failed to meet its burden on the remaining Challenged Laws (*see infra*), the District Court's ultimate conclusion, and injunctive remedy, cannot stand in the face of the Accreditation Law alone.

## B.   **The Dormitory Laws Had No Discriminatory Purpose**

### 1.   **Local Law 5 of 2004**

The District Court refers to a "Dormitory Law," combining Local Law 5 of 2004 with Local Law 1 of 2007. However, these laws were adopted at very different times, under different conditions, and should be analyzed separately.

---

[13] While the Wetlands Law was not passed for six more years, there was room on the Property to construct YSV "not in the wetlands." *See* TE586.

14

Local Law 5 of 2004 made significant changes to the Accreditation Law.[14]  It was

drafted, and adopted at least two months before the Village learned Tartikov had

purchased the Property — and three years before the Village learned what Tartikov

intended to build.  The Village properly considered YSV to be the only school at

the time likely to be affected by the changes to the zoning law.

Pursuing its theory that the Village was trying to keep out the

Orthodox/Hasidic community in general, Tartikov ignores the positive effect of the

law on YSV.  T.Br. 20.  It fails to address not only that the prohibition on

dormitories was removed, which would have allowed other yeshivas to move to the

Village (*see* V.Br. 33) — but also that the law expanded the accrediting agency

possibilities, and removed the per student acreage requirement.  V.Br. 32-3.  Local

Law 5 is actually evidence that the Village had no discriminatory intent.  The

Village believed the amendments would make it easier for YSV (or another

similar, even Hasidic, yeshiva) to move to the Village (TE1891), recalling the

Mayor's testimony that YSV was "the best possible use of that property."  A1213.

Tartikov tries to shift the focus from the text of the Local Law 5, and its

results, to other actions not involving YSV or the Property.  Tartikov uses these

---

[14] Tartikov claims the Village violated state law in enacting Local Law 5.  T.Br.
22.  However, the testimony cited by Tartikov does not support this claim.  The
Village Attorney, Ulman testified only that she could not find records of a general
municipal law review of the law, not that none was done.  A1339.  Further, the
claim is irrelevant to any of the issues on appeal.

events to argue a general atmosphere of prejudice existed in the Village.  In making these claims — and throughout its discussion of discrimination — Tartikov makes assertions of fact that are not supported by its own cites to the record, and takes other statements wildly out of context.  For example, Tartikov states that the Village "was aware of the increasing number of Orthodox/Hasidic Jews in the area and wanted to ensure that it stopped this population at its border."  T.Br. 19. Tartikov cites a series of entries in the record, <u>not one of which</u> supports the assertion that the Village wanted to "stop the population at its border" or anything even remotely resembling such sentiment.

This is part of a pattern with Tartikov's arguments, including a string of record citations, but when the record is checked, none of the cites support the statement made.  *See, e.g.,* T.Br. 18 (String of cites does not support Tartikov's claim that the Village "acted directly on" the alleged prejudice of its residents). The frequency of this practice inevitably leads to the painstaking (and time wasting) check of every single cite in the string.

Tartikov (T.Br. 19) refers to the Village Board's resolution criticizing placing special interests above the interest of the people.  By citing to testimony from years later, Tartikov contends that the resolution really was aimed at Orthodox/Hasidic Jews.  However, the Board Minutes plainly state it was a "resolution regarding <u>the sand and gravel pit</u> on Route 202," and thus had nothing

16

to do with the Orthodox/Hasidic community. TE359 (emphasis added).

Moreover, the opening sentence shows the resolution was for "the protection of our

environment." *Id.* In this context, there is no religious animus in a resolution "to

oppose in the strongest possible terms any public officials who abdicate their

responsibility of office by placing the politics of special interest groups and

individual developers ahead of the best interest of the people they are committed to

serve." *Id.* (emphasis added). To attack such a statement is to attack

representative democracy.[15]

Tartikov argues that the Village's involvement in the lawsuit concerning

Ramapo's adult student housing law ("ASHL") is evidence of religious animus.

T.Br. 20. As stated, without contradiction by Tartikov, that lawsuit was about

overdevelopment. *See* V.Br. 36; TE881. Moreover, Tartikov fails to point out that

the Village was successful in getting a TRO against Ramapo's ASHL, for the

Town's failure to abide by environmental regulatory procedures, which validates

the substance of the lawsuit. That information is contained in the very case that

---

[15] Doris Ulman, the Village Attorney since 2003, testified that "groups of
developers are special interest groups," which "could possibly be"
Orthodox/Hasidic Jews. A1328. Here, Tartikov's representative is a developer.
A916. To the extent Orthodox/Hasidic Jews are recognized as "voting bloc," that
does not do more than state a fact. *See* A1200; A1328.

Tartikov (and the District Court) cited. *See Chestnut Hill v. Ramapo*, 2008 U.S. Dist. LEXIS 76881 at *18, 2008 WL 4525753 (S.D.N.Y. 2008).[16]

Although Tartikov repeatedly makes arguments unsupported by evidence in the record, it takes umbrage with the Village objecting to the District Court's choice of actual evidence. Tartikov cites the rule that where there are two permissible views of the evidence, the fact finder's choice cannot be clearly erroneous. T.Br. 13. The fact finder's view of the evidence, however, requires that it weigh <u>all</u> the evidence, as Tartikov acknowledges: "the district court's account of the evidence is plausible in light of the record viewed in its entirety …" T.Br. 13. The District Court did not weigh the record <u>in its entirety</u>. Thus, the Village did not offer merely an "alternative interpretation" of the facts. T.Br. 12. Rather, it demonstrated that the District Court selectively cherry-picked only the facts it believed would support its conclusion, without, for the most part, even acknowledging the existence of contrary evidence.

Tartikov references the District Court's indictment of the credibility of certain Village witnesses. T.Br. 14. The District Court stretched to reach such results. For example, it seized on the word, "recent," to discount Ulman's testimony about Local Law 5 of 2004. T.Br. 14 citing A803. Tartikov, and the

---

[16] The ASHL later was incorporated into a new comprehensive zoning law that received a complete environmental review, which ultimately led to the reversal of the TRO.

District Court, wrongly ignore the memorandum Ulman wrote before Local Law 5 was adopted and before she knew about Tartikov. TE1513. The memorandum is consistent with her testimony about the purpose of the law. *See, e.g., U.S. v. Guerino*, 607 Fed. Appx. 117, 118 (2d Cir. 2015), *cert den.*, 136 S. Ct. 428 (2015) (prior consistent statements are admissible as evidence).

When all of the evidence is considered, there is simply no way to conclude the Village had a discriminatory purpose regarding YSV, or any other Jewish school, in enacting Local Law 5 of 2004. Therefore, the law must be upheld.[17]

### 2.    Local Law 1 of 2007

Tartikov contends that Local Law 1 of 2007 "responded to Village residents', employees' and officials' hostility toward Tartikov's Orthodox/Hasidic school." T.Br. 21. The Law, however, was drafted by Ulman in late 2006, before the Village had any idea of what Tartikov's "school" might entail. The Law was on the agenda for, and received public comments at, the December 2006 Board Meeting, before Tartikov's attorney asked that the Law's discussion be put over

---

[17] Tartikov claims the Village's hostility to Orthodox/Hasidic Jews was evidenced by Sanderson's statement that perhaps YSV was advised to go to a "friendlier place." T.Br. 19. However, Sanderson pointed out that the Village has "a strong law governing schools" and YSV pulled their planning application before the process began (TE31), understandable as YSV was able to sell the Property for a 12 million dollar profit.

until the next meeting. TE261-2. The Village did not learn that Tartikov wanted to build multi-family housing dormitories until January 2007.

As emphasized above, the provision barring dormitories was in Local Law 1 of 2001. The provision regarding multi-family units was added in September 2004. It did not originate in Local Law 1 of 2007. The purpose of Local Law 1 of 2007 was to correct errors, inconsistencies and vagueness in the prior education laws. TE1894. Ulman testified that Local Law 1 of 2007 was drafted to make it clear that dormitories were an accessory use to a school, to add "net" to the "lot area" provision in the prior law and to clarify that dormitories would be buildings operated by an "educational institution" as opposed to a "school," i.e., simply replacing the words "educational institution" for the word "school." TE1894-1895. This is not evidence of discriminatory purpose.

Tartikov elsewhere argues this Court cannot overturn findings of discrimination where there are "permissible inferences" from the evidence. T.Br. 13. However, the District Court relied on impermissible inferences. The best example is the District Court inferring that the Village's executive sessions held between July 2006 and December 2006 discussed ways to limit Tartikov's use of the Property. However, there was <u>no evidence</u> presented at trial of the content of

these sessions, as the District Court conceded.  V.Br. 47-48.[18]  The only evidence was Ulman's testimony that the Village became aware of the potential for litigation before December 2006.  A1352.[19]  In the absence of evidence, the District Court incorrectly jumped to embrace a negative inference.  This is insufficient to prove discriminatory intent for Local Law 1 of 2007.

### 3.    <u>The January 22, 2007 Hearing</u>

Tartikov focusses on its main "evidence" — the January 22, 2007 public hearing.  In bullet points Tartikov provides selected snippets of individuals' statements to the Board, which were often lengthy and detailed.  For example, Tartikov cites only the last sentence of the statement of Howard Bleiwas (T.Br. 26).  His full statement takes up three pages of the transcript.  TE390-392.  Among the significant comments by Bleiwas, which Tartikov omits:

- I've been a firefighter for Hillcrest for almost twenty years.  We don't have the equipment to handle six story buildings, which incidentally will be I think the third through ninth largest buildings in the county…. TE390.

- I went to Yeshiva Hadar.  I'm a member of Temple Beth El.  TE391.

---

[18] Tartikov claims the Village violated state law in conducting these sessions, again, providing a string citation to the record.  <u>None</u> of these citations support the claim that the sessions were in violation of New York state law, and no such finding was made by the District Court.

[19] This testimony suggests that the only discussions about Tartikov were concerns about litigation.  In any case, the true content of the executive sessions is unknown and should not have been speculated upon.

- I welcome the Rabbinical College of Tartikov to the area. I think any religious institution should take advantage of the law, should use the law and should be allowed to practice freely. *Id.*

Bleiwas' entire statement is worth reading for his thoughtful and unbiased commentary on the situation. Yet Bleiwas is chosen by Tartikov as a leading example of "[h]ostile community members." T.Br. 25.

The other "sound bites" chosen by Tartikov, similarly look a lot different in context. The people Tartikov quotes (T.Br. 25-6) came forward, gave their names, and expressed not prejudice but legitimate concern with over-development. Excerpts of each that Tartikov left out include:

- 1.[20] Vince Grapella — "[T]his monstrosity will have a setback of 20 feet from the curb, for dormitory, for housing … You can get into the environmental impact…" TE435.

- 2. Gregg Briem — "I did not bring my family to a college town, whether religious or secular. This village's infrastructure cannot handle, logistically, it is a matter of fact, the amount of students that would be at this college. It is a matter of fact. Not discussion or opinion. Our sewage lines cannot handle it. Our roads cannot handle it. Our entire social infrastructure cannot handle, whether it's a rabbinical college or a state university or a private school." TE393-94 (emphasis added).

- 3. Ed Leventhal — "I did not come here to discuss [RLUIPA] … What I did come here to discuss was that if I read the paper correctly, the population of Pomona is 3200 residents. I don't think it's reasonable to say that one institution can, by virtue of the dormitory restriction or the dormitory provision, be allowed to have 4500 people." TE389.

---

[20] The numbers represent the order in which Tartikov listed these individual's statements in the bullet points. T.Br. 25-6. Bleiwas would be Number 4.

- 5 and 6. Dennis Rheel — "[I]t puts an unfair burden on the people who are here … putting a burden on them financially.  I can only speak for myself.  I have a hard time making it here." TE398.

- 7. Michelle Diliberto — "[I]nstead of 45 hundred you're going to triple it."  TE418.

- 8. (Name Inaudible) "[C]an we put something in your proposed law, that states that it's for students only … otherwise any college in New York State would be flooded with family members…."  TE449.

Tartikov leaves out the comments of many other speakers that cannot be chopped up to support Tartikov's narrative.  This Court can review the complete transcript (and videotape) to reach its own conclusions about what motivated the residents — and the Board.  *See R.G. Barry Corp. v. Mushroom Makers*, 612 F.2d 651, 655-6 (2d Cir. 1979).  Tartikov claims the Village is asking this Court to ignore all of the District Court's findings and "substitute its own judgment."  T.Br. 13.  The Village limited its request to evidence like the videotape, which this Court is in as good a position as the trial court to review.  V.Br. 39.

Tartikov claims that then-Mayor Marshall removed some comments made at the January 22 hearing from the Village minutes T.Br. 22.  However, Ulman explained that "he didn't remove comments.  He removed the entire document that was prepared by the minute-taker" A1367.  The reason was because, as Ulman testified, the document "was not a good presentation of what happened at the meeting" (*id*), whereas there was a full transcript (and videotape) to rely on.

The comments at the January 22 hearing were made by real people, not anonymous postings on the internet. They came to practice democracy and address a plan which Tartikov's <u>own counsel said</u> would bring 1,000 new families (TE1129) — not to protest a particular religion.

In contrast, Tartikov relies on the nameless who spew filth online. *See* T.Br. 27. There is no evidence that these nameless are even residents of the Village. Their words are disgusting — but eye-catching. However, they are not real evidence, and the District Court claimed to "place[] little reliance on them." A790 n.20. Yet once again these words appear — an entire page (T.Br. 27) — in the futile hope they will be upsetting enough to influence this Court's decision, where the facts and law say otherwise.

Similarly, Tartikov highlights the comments of two residents, Robert Prol and Mel Cook, who did not even attend the January 22, 2007 meeting. T.Br. 26-7. Cook's statements were not made until years after the Challenged Laws were enacted. Prol testified he had no involvement in any of the Challenged Laws. V.Br. 44. Rather than benefitting politically from a relationship with the subsequent Mayor (*see* T.Br. 27), Prol testified they had no personal relationship: "I have never been to his home. I have never met with him outside of the village hall." A501. Again, Tartikov is seizing on the statements of anyone, named or

unnamed, who might have opposed Tartikov's hypothetical college, to brand the entire community as prejudiced.

Had Tartikov been able to prove the resident's hostility was fueled by religious animus (which it did not), it still had to show that the Board acted in response to such animus.  In an attempt to fill that gap, Tartikov provides another string of cites to the record.  T.Br. 29.  <u>None</u> of these references contain evidence that any Village official made a decision on the Challenged Laws based on any comment concerning the religious nature of the proposed college.  *See* V.Br. 41.  Without such a nexus, Tartikov's claim of discrimination must fail.

## C.    <u>The Wetlands Law Had No Discriminatory Purpose</u>

Tartikov claims that "as proposed," the Wetlands Law (Local Law 5 of 2007) applied to all parcels in the Village but was changed "due to residents' fears about its application to them."  T.Br. 21.  Tartikov, however, cites not a single piece of evidence to support this claim.  Tartikov further states that the "new version" of the law exempted nearly the entire Village from the 100 ft. buffer provision.  T.Br. 21.  First, Ulman, the Village Attorney, took the buffer provision language from New York State Law, which has the same exact provision. TE1897.  Second, the Village's expert, Voorhis, testified that, contrary to Tartikov's claim, the buffer provision applied to all preexisting single family homes.  S.D.N.Y. Dkt. #301, ¶ 58.  Tartikov contends wetlands concerns, and

alleged changes to the proposed law only surfaced <u>after</u> Tartikov's intentions became known. T.Br. 21. However, the Wetlands Law, with the buffer provision, was originally proposed in December 2006. TE174. The Village did not know Tartikov's intentions until a month later.

Tartikov contends that when the Wetlands Law was passed, the Village knew there were wetlands on the Property. T.Br. 21. This proves nothing. The Village did not have knowledge of where on the Property Tartikov intended to build, or where on the Property particular wetlands were located. Certainly, the Village had no knowledge there were wetlands near the driveway. While there was a lot of concern over the immense size of Tartikov's undefined concept, the evidence does not support that the Wetlands Law was a result of this, no less the result of religious animus.

Tartikov repeats the charge that Yagel's testimony was "demonstrably false." T.Br. 14. Tartikov does not contest the Village's point (V.Br. 49) that in making this finding the District Court misstated Yagel's testimony. The District Court said Yagel testified that he was "unaware of the existence of wetlands on the property". A811-812. However, Yagel actually testified that he did not know "what <u>kind of</u> wetlands" were on the Property. A1264 (emphasis added). As to Louie, Tartikov does not contest that the District Court failed to consider Louie's testimony that she voted for the Wetlands Law because having been on the Village

Planning Board she had encountered properties that had problems concerning wetlands. A1248-1249.

To prevail on its discrimination based claims, Tartikov had to prove the Village enacted the Challenged Laws based on religious discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-7 (2009). *See also Jana-Rock Constr. v. New York State Dept. of Econ Dev.*, 438 F.3d, 195, 204 (2d Cir. 2006). As discussed in the Village's initial brief, and *supra*, the evidence does not show that Village residents had <u>religious animus</u> against Tartikov. They were against any massive building project — even a Walmart. TE1885. Absent <u>religious animus</u>, however, there can be no finding that the Village acted on it. Further, even if Tartikov could get over that hurdle, it failed to prove that <u>religious animus</u> was the reason the Village enacted the Laws.

Tartikov incorrectly asserts that the Village failed to address discriminatory effect. T.Br. 29. Tartikov asserted an Equal Protection violation based on the third method: facially neutral laws, motivated by discriminatory animus, "and [their] application results in discriminatory effect." V.Br. 23. This requires some application of the Challenged Laws, which Tartikov studiously avoided, so the District Court should have determined that a facial challenge on this basis is not possible. V.Br. 24. Further, the District Court discussion of discriminatory effect repeats many of the same burdens discussed under RLUIPA. *See* V.Br. 62-8. In

27

sum, Tartikov did not provide that each of the four Challenged Law was adopted with a discriminatory purpose. [21]

### III.

### TARTIKOV FAILED TO MEET ITS BURDEN OF PROOF UNDER RLUIPA

Tartikov bore the burden to prove each aspect of its RLUIPA claim: statutory predicate, sincere religious belief, and substantial burden. *See Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015); *see also Chabad Lubavitch of Litchfield County. v. Litchfield Historic District Commission*, 768 F.3d 183, 192 (2d Cir. 2014). Tartikov failed at each stage.

Apparently conceding it cannot prove a burden "imposed in the implementation" of the Challenged Laws (T.Br. 30 n.3), Tartikov focusses on the effect on interstate commerce. However, Tartikov does not rely on actual evidence. Instead, it argues the hypothetical rabbinical college would involve construction, and that is sufficient. T.Br. 30-31. At no point before or during the trial did Tartikov offer a specific plan of development, demonstrating what would be built, as the District Court repeatedly acknowledged. *See, e.g.*, A818 ("Plaintiffs have not proffered any evidence about the square footage of the

---

[21] As the District Court recognized (A853-54), the analysis of an Equal Protection claim is the same as for a RLUIPA non-discrimination claim. Having failed to meet its burden of proof as to Equal Protection, Tartikov's RLUIPA non-discrimination causes of action must fail as well.

buildings …").  Even the putative Dean testified, "I didn't see no exact plans
whatever."  A983.  Tartikov relies on the argument that <u>any</u> <u>construction</u> is
sufficient.  However, *Westchester Day School v. Mamaroneck*, 504 F.3d 338, 353
(2d Cir. 2007) (*"WDS"*) states that the effect on interstate commerce "depend[s]
on the facts of a particular case."  *See also id.* at 354 ("nexus must be demonstrated
in each case").  Without any actual proof, the District Court accepted Tartikov's
claim, saying it "has no reason to doubt" it.  A819.

None of the cases Tartikov relies on involves a facial challenge.  *WDS* arose
after the ZBA denied the school's application to build a $9 million, 44,000 square
foot building.  *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 181 (2d Cir.
1996), a case on tribal immunity, involved expansion of an existing casino.  The
other cases offered (*see* T.Br. 31) are all appeals of criminal convictions for arson
and anti-trust violations.[22]

Tartikov is wrong that the mere claim of some construction in the future
meets its burden.  Without at least a plan of development showing what is to be

---

[22] Tartikov cites these cases allegedly regarding the "maintenance and operation"
of the rabbinical college that is not built, no less in operation.

constructed, Tartikov cannot prove an effect on interstate commerce.[23] As

Tartikov failed to offer such evidence, it did not prove the statutory predicate.

A. **Plaintiffs' Testimony Demonstrated On-Campus Family Housing Was
Not Their Religious Belief**

The second RLUIPA element is a sincerely held belief in a religious

exercise. *See Holt*, 135 S.Ct. at 862. *See also Fifth Ave. Presbyterian Church v.

City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002) ("demonstrate that the beliefs

professed are 'sincerely held'"). The laws at issue were Accreditation, Wetlands

and Dormitory. Tartikov never claimed a belief that students must attend an

unaccredited school, or must study and reside within 100 feet of a wetlands. The

sole basis of Tartikov's RLUIPA claim is an alleged belief that students must live

with their families on campus.

The Village's argument is quite simple — the Plaintiffs themselves do not

believe their religion requires them to live in on-campus family housing. [24] That

argument (*see* V.Br. 58-9) is based on the testimony in open court of the individual

---

[23] Tartikov's claim (T.Br. 31) it would serve students from outside the state is not
proof. The actual evidence was that every student identified comes from New
York.

[24] Tartikov misstates the Village's argument, incorrectly asserting the Village
claims that Tartikov's religious beliefs are "fungible," that the Village can say
what Tartikov's "religious beliefs should be," not what they "actually are," and
"cherry picking amongst Tartikov's religious beliefs." T.Br. 32-3. Tartikov does
not cite any specific language supporting this, only referencing generally five
pages of the Village's initial brief. T.Br. 33.