*Village of Pomona, NY*
*Tuesday, October 20, 2020*

# Chapter 130. Zoning

[HISTORY: Adopted by the Board of Trustees of the Village of Pomona 5-28-1968; amended in its entirety 2-8-1988 by L.L. No. 1-1988. Subsequent amendments noted where applicable.]

**GENERAL REFERENCES**
Historical Review Board — See Ch. **13**.
Planning Board and Zoning Board of Appeals — See Ch. **25**.
Flood damage prevention — See Ch. **79**.
Subdivision of land — See Ch. **118**.

# Article I. Authority and Purpose

## § 130-1. Statutory authority.

Under the authority granted by § 7-700 of the Village Law, as amended, the Board of Trustees of the Village of Pomona hereby adopts this chapter to promote the purposes set forth in § 7-704 of the Village Law.

## § 130-2. Purpose and intent.

Whereas areas of commercial, industrial and high- and medium-density residential development are to be found elsewhere in Rockland County, and whereas the area embraced by the Village of Pomona conforms to the low-density concept of the outlying areas of the existing Town of Ramapo Master Plan and the Zoning Ordinances of the Towns of Haverstraw and Ramapo, therefore this chapter is intended to provide for the orderly and desirable development of the Village of Pomona and to regulate and restrict the use of land and the construction and use of buildings and accessory land improvements in the following manners:

A.  To preserve and enhance the rural residential character of the Village and to encourage the orderly and beneficial development of the entire Village.

B.  To prevent the overcrowding of land with persons and structures in relation to open spaces, circulation and neighboring land uses and to require adequate provision for off-street parking.

C.  To prevent the contamination of streams and ponds, to safeguard the water table and to encourage the wise use and sound management of the natural resources throughout the Village in order to preserve the integrity, stability and beauty of the community and the value of land.

D.  To provide adequate light, air and privacy for residents, to secure safety from fire, flood and other danger and to discourage uses inimical to public health.

E.  To encourage any construction which will tend to enhance the natural, rural beauty of the area.

F.  To discourage auxiliary construction which detracts from the rural aesthetic beauty of the

community.

G.  To facilitate such services as utilities, sewerage, parks and other public requirements.

# Article II. Definitions

## § 130-3. General construction of language; word usage.

A.  General construction of language. The following rules of construction apply to the language of this chapter:

  (1)  The specific shall control the general.

  (2)  All words used in the present tense include the future tense.

  (3)  All words in the singular number include the plural number, and vice versa, unless the natural construction of the wording indicates otherwise.

  (4)  Words used in the masculine gender include the feminine and neuter, and vice versa, unless the natural construction of the wording indicates otherwise.

  (5)  The word "shall" is mandatory; the word "may" is permissive.

  (6)  The word "includes" shall not limit a term to the specified examples, but is intended to extend its meaning to all other instances or circumstances of like kind or character.

  (7)  Unless the context clearly indicates the contrary, where a regulation involves two or more items, conditions, provisions or events connected by the conjunction "and," "or" or either... or," the conjunction shall be interpreted as follows:

    (a)  "And" indicates that all the connected items, conditions, provisions or events shall apply.

    (b)  "Or" indicates that the connected items, conditions, provisions or events may apply singly or in any combination.

    (c)  "Either ... or" indicates that the connected items, conditions, provisions or events shall apply singly but not in combination.

  (8)  The words "building" and "structure" include any part thereof.

  (9)  The words "lot," "plot" and "tract of land" shall one include the other.

  (10) The word "premises" shall include land and all structures thereon.

  (11) The word "herein" means "in this chapter"; the word "regulations" means the regulations of this chapter; and the words "this chapter" shall mean "this chapter and the maps included herein as enacted or subsequently amended."

  (12) The words "occupied" and "used" shall be considered to be followed by the words "or intended, arranged or designed to be occupied or used," unless the natural construction of the wording indicates otherwise.

  (13) References made to officials and official bodies shall mean officials and official bodies of the Village of Pomona, unless the natural construction of the wording indicates otherwise.

(14) The "Village" is the Village of Pomona in the County of Rockland, State of New York; the "Village Board," "Board of Appeals," "Planning Board" and "Code Enforcement Officer" are, respectively, the Board of Trustees of the Village of Pomona, the Village of Pomona Zoning Board of Appeals, the Village of Pomona Planning Board and the Village of Pomona Code Enforcement Officer.

(15) In case of any difference of meaning or implication between the text of this chapter and any caption or illustration, the text shall control.

B.   Terms not defined. Where terms are not defined, they shall have their ordinarily accepted meanings or such as the context may imply.

# § 130-4. Terms defined.

As used in this chapter, the following terms shall have the meanings indicated:

**ACCESSORY BUILDING**
A building subordinate to the main building on the lot and used for purposes customarily incidental to that of the main building. Where an "accessory building" is attached to the main building in a substantial manner, as by a wall or roof, such "accessory building" shall be considered part of the main building.

**AGRICULTURAL USE**
The growing of field crops or raising of livestock.

**ALTERATION**
A change or rearrangement in the supporting members of a building or structure, or an enlargement, whether by extending on a side or by increasing in height, or the moving from one location or position to another.

**BASEMENT**
A portion of a building partly underground, but having less than half its clear height below the average grade of the adjoining ground. See also "cellar."

**BOARD OF APPEALS**
The Board of Appeals of the Village of Pomona.

**BOARD OF TRUSTEES**
The Board of Trustees of the Village of Pomona.

**BUILDING**
Any structure having a roof, self-supporting or supported by columns or walls, which is permanently affixed to the ground and intended for the shelter, housing or enclosure of persons, animals or chattel.

**BUILDING, AIR-PRESSURE**
Any structure partially or totally supported by air pressure.

**BUILDING AREA**
The maximum horizontal cross section of a building, including porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three feet and steps and terraces not more than three feet above the average adjacent ground elevation.

**BUILDING CODE**

The New York State Uniform Fire Prevention and Building Code adopted by the Board of Trustees of the Village of Pomona.

**BUILDING COVERAGE**

That percentage of the land area covered by the combined building area of all buildings, excluding any buildings or structures located completely below ground.

**BULK**

The size and shape of buildings and nonbuilding uses; and the physical relationship of their exterior walls and accessory construction to plot lines; and all open spaces required in connection with a building or structure. "Bulk" regulations include regulations dealing with plot area, plot frontage, plot width, plot depth, height, required yards, the ratio of roofed or roofable area to the area of the plot.

**BUSINESS OR PROFESSIONAL OFFICE**

An establishment offering services to the general public or the business community.

**CAMP**

An establishment, including facilities for seasonal use, organized for recreational or athletic purposes.

**CELLAR**

A portion of a building partly or wholly underground, having half or more than half of its clear height below the average grade of the adjoining ground. See also "basement."

**CEMETERY**

A place containing graves or tombs for the interment of the dead.

**CLEARING**

The removal of trees with a circumference of 25 inches or more measured at a height four and one half feet above existing ground level at the base of the tree on the uphill side or the stripping of soil.
[Added 6-23-1997 by L.L. No. 8-1997; amended 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

**CORNER LOT**

A lot located at the junction of and fronting on two or more streets intersecting at an angle of less than 135°.

**DIMENSIONALLY NONCONFORMING**

See "nonconforming, dimensionally."

**DIMENSIONAL NONCONFORMITY**

See "nonconformity, dimensional."

**DORMITORY**

A building that is operated by an educational institution located on the same lot and accessory to a principal school use and which contains private or semiprivate rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students. Communal dining, cooking, laundry, lounge and recreation facilities may be provided. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with completed housekeeping facilities may be provided for use of a superintendent or supervisory staff for every 50 dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single-family, two-family and/or multifamily dwelling units other than as described above shall not be considered to be dormitories or part of dormitories.
[Added 9-27-2004 by L.L. No. 5-2004; amended 1-22-2007 by L.L. No. 1-2007]

**DRIVEWAY**

A passageway with an impervious surface for the use of motor vehicles.

**DRIVEWAY GRADIENT**

The average percent of grade increase or decrease of a driveway measured from the property line at which the private property meets the street to the end of pavement at the point at which the driveway meets the building. A level area, not to exceed 4%, shall be provided at the top of the driveway from the point at which the driveway meets the building. This area shall be a minimum of 30 feet by 30 feet and shall not be included in the driveway gradient calculation. [Added 3-22-2004 by L.L. No. 2-2004]

**DWELLING, ONE-FAMILY DETACHED**

A building containing a single principal dwelling unit occupied by only one family and located in its own separate building which does not abut any other dwelling unit.

**DWELLING, TWO-FAMILY DETACHED**

A building containing two principal dwelling units located in their own separate building which does not abut any other dwelling and which does not include a dwelling unit attached or connected to another dwelling by a party wall.

**DWELLING UNIT**

A building or portion thereof providing complete housekeeping facilities for one family, including independent cooking, sanitary and sleeping facilities, and physically separate from any other dwelling unit whether or not in the same building.

**EDUCATIONAL INSTITUTION**

Any private or religious elementary, junior high or high school, college, graduate or post-graduate school conducting a full-time curriculum of instruction a minimum of five days per week for seven months per year and accredited by the New York State Education Department or similar recognized accrediting agency. [Added 1-22-2001 by L.L. No. 1-2001; amended 9-27-2004 by L.L. No. 5-2004]

**FAMILY**

Any number of individuals related by blood, marriage or adoption, or not more than four persons who are not so related, living together as a single housekeeping unit, using rooms and housekeeping facilities in common and having such meals as they may eat at home generally prepared and eaten together.

**FARM STAND**

An establishment offering agricultural products grown or raised on the premises for retail sale.

**FILLING**

The placement of soil, rubble, spoils, rocks and/or any other appropriate fill on any property for the purpose of raising or elevating any portion of a property, except that the addition or movement of shall amounts of earth and fill for the purpose of gardening or leveling the grade by filling a hole or swale shall be excluded from regulation. "Appropriate filling" shall not include the burying of garbage, trash, combustibles or hazardous or toxic materials of any kind as the same are defined from time to time by state and federal laws, rules and regulations. Demolition or construction debris or waste shall not be deemed acceptable fill material. [Added 6-23-1997 by L.L. No. 8-1997; amended 12-22-1997 by L.L. No. 14-1997]

**FINISHED GRADE**

The elevation of the completed surfaces of lawns, landscaped areas, walks, driveways and parking areas or of the existing ground where it remains undisturbed.

**FLOOR AREA**

The horizontal area of a story of a building, measured from the exterior faces of exterior walls,

or in the case of a common wall separating two buildings, from the center line of such common walls, and including covered and uncovered porches, balconies and raised platforms, but excluding cornices, roof overhangs, gutters or chimneys projecting not more than three feet and steps and terraces not more than three feet above the average adjacent ground elevation.

**FLOOR AREA RATIO**
Gross floor area divided by the area of a lot.

**FRONTAGE**
See "lot frontage."

**FRONT LOT LINE**
See "lot line, front."

**FRONT YARD**
See "yard, front."

**GARAGE**
A part of a building, fully enclosed with four walls and a roof, used for the parking of motor vehicles.

**GRADING**
The changing or alteration of the surfaces of slopes of lawns or grounds on a site.
[Added 6-23-1997 by L.L. No. 8-1997]

**GROSS FLOOR AREA**
The total floor area of all residential floors of a building, including all areas with headroom of 75 inches or more.

**HALF STORY**
An uppermost story in which the floor area, having a clear height of at least 7 1/3 feet, is 1/3 or less of the floor area of the story next beneath it.

**HEIGHT, BUILDING**
The vertical distance measured from the average elevation of the proposed finished grade at the front of the building to the highest point of the roof for flat roofs, to the deck line of mansard roofs and to the mean height between eaves and ridge for gable, hip and gambrel roofs.

**HOME OCCUPATION**
Any commercial use customarily conducted entirely within a dwelling and carried on by residents thereof who are personally present during substantially all of the operations of the home occupation, and no more than two nonresident employees, subject to the provisions of §§ **130-11E** and **F**, which use is clearly incidental and secondary to the use of the dwelling for dwelling purposes and does not change the character thereof. The conducting of a hospital, barbershop, beauty parlor, coffee house, tearoom, rooming house, tourist home, veterinary office, animal hospital, warehouse, cooperative, medical center, funeral home or any other similar use shall not be deemed to be a home occupation.
[Amended 1-27-1997 by L.L. No. 2-1997; 6-23-1997 by L.L. No. 7-1997]

**HOUSE OF WORSHIP**
A building or structure commonly referred to as a church, synagogue or similar place of worship, intended primarily for the conduct of organized or regularly scheduled religious services.
[Added 1-23-1995 by L.L. No. 2-1995; amended 1-22-2007 by L.L. No. 2-2007]

**IMPERVIOUS SURFACE**
Those surfaces which do not absorb stormwater. All buildings, parking areas, driveways, roads,

sidewalks and any areas in concrete, asphalt or packed stone shall be considered "impervious surfaces" within this definition. In addition, other areas determined by the Village Engineer to be impervious within the meaning of this definition will also be classed as "impervious surfaces."

**LOADING SPACE**

An off-street space available for the loading or unloading of goods, not less than 15 feet wide, 40 feet long and with a minimum overhead clearance of 14 feet.

**LOT**

A parcel of land, not divided by streets, together with such yards as are required by the provisions of this chapter, and having its principal frontage on a street or on such other means of access as may be deemed in accordance with the provisions of law to be suitable as a condition of the issuance of a building permit on the lot.

**LOT AREA**

The total horizontal area included within the boundaries of the lot.

**LOT COVERAGE**

That percentage of the plot or lot area covered by buildings and structures that have foundations and are or can be roofed over. Open swimming pools shall not be considered a part of "lot coverage."

**LOT FRONTAGE**

The horizontal distance measured along the full length of a public street line abutting the lot. [Amended 2-28-2005 by L.L. No. 1-2005]

**LOT LINE**

A property line bounding a lot.

**LOT LINE, FRONT**

Any lot line separating the lot from the street.

**LOT LINE, REAR**

The lot line which is generally opposite and parallel to the front lot line. If the "rear lot line" is less than 10 feet in length, or if the lot comes to a point at the rear, the "rear lot line" shall be deemed to be a line parallel to the front lot line, not less than 10 feet long, lying wholly within the lot and farthest from the front lot line.

**LOT LINE, SIDE**

Any lot line other than a front lot line and the rear lot line.

**LOT WIDTH**

The distance measured along a line drawn parallel to the front lot line at a distance equal to the minimum front yard requirement.

**MAIN BUILDING**

A building in which is conducted the principal use of the lot on which such building is situated.

**MICROWAVE RECEIVING DISH**

A device, also known as a "satellite dish" or "earth station," whose purpose is to receive communication or other signals from orbiting satellites and which is designed for use by not more than two dwelling units.[1]

**MERCHANDISING**

Any activity, whether or not engaged in for profit, involving the sale, collection, distribution or warehousing of goods to members of the general public or to specific persons forming a club or

purchasing group.
[Added 1-27-1997 by L.L. No. 2-1997][2]

## MOBILE TRAILER
See "trailer."

## MONOPOLE
A freestanding pole having a single point of location on the ground comprising a part of a wireless communication services facility. For purposes of this chapter, the term monopole shall include, in addition to the pole, all other components of the wireless telecommunication services facility.
[Added 5-18-1998 by L.L. No. 2-1998]

## MULTIPLE DWELLING
A building used or designed as a residence for two or more families living independently of each other and doing their own cooking therein.

## NIER
Non-Ionizing electromagnetic radiation.
[Added 5-18-1998 by L.L. No. 2-1998]

## NONCONFORMING BULK
That part of a building, structure or nonbuilding use which does not conform to one or more of the applicable bulk regulations of this chapter.

## NONCONFORMING USE
A use of a building or land, or both, which was lawfully established but which does not conform to the use regulations for the district in which it is located. It may or may not involve any principal building. Any use which is permitted in a district by special permit shall be considered a conforming use, subject to all conditions applicable thereto.

## NONCONFORMITY, DIMENSIONAL
The status of a building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, floor area ratio, off-street parking, loading or similar dimensional requirements of this chapter and which conformed to such dimensional requirements of the zoning regulations in effect at the time such building or structure was established.

## NOT-FOR-PROFIT CORPORATION
A corporation formed or existing under the Not-For-Profit Corporation Law of New York State.

## NURSERY SCHOOL or DAY-CARE CENTER
An establishment providing care for three or more children and operated in accordance with the Social Services Law of the State of New York.

## ONE-FAMILY DWELLING
See "dwelling, one-family detached."

## OWNERSHIP, SINGLE
Ownership by the same person, corporation, firm, entity, partnership or unincorporated association, or owned by different corporations, firms, partnerships, entities or unincorporated associations in which a stockholder, partner or associate or a member of his family owns an interest in each corporation, firm, partnership, entity or unincorporated association.

## PARKING AREA
An off-street area with an impervious surface containing one or more parking spaces.

**PARKING SPACE**
An off-street space available for the parking of one motor vehicle on a transient basis. Such space shall not be located in a front yard.

**PARKING SPACE, INDOOR**
A parking space located in a fully enclosed structure.

**PERSON**
Any individual or group of individuals, corporation, partnership, association or any other entity, including state and local governments and agencies.

**PLANNING BOARD**
The Planning Board of the Village of Pomona.

**PRIVATE MEMBERSHIP CLUB**
A not-for-profit corporation organized to cater exclusively to its members and their guests, including land, buildings and facilities for recreational, athletic, social, professional and cultural purposes. The members of the organization shall have a financial interest in, and method of control of, the assets and management of the "private membership club."

**PROTECTED TREE**
Any tree of historical value as determined by resolution of the Board of Trustees or any tree having a circumference of 45 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side.
[Added 3-28-2005 by L.L. No. 2-2005]

**PUBLIC SCHOOL**
An educational institution operated by a public school district in accordance with the Education Law of the State of New York.

**PUBLIC UTILITY**
Any person duly authorized to furnish to the public, under public regulation, electricity, gas, water, sewage treatment, steam, cable television or telephone or telegraph service, including wireless communication services which are regulated separately under this chapter.
[Amended 5-18-1998 by L.L. No. 2-1998]

**REAR LOT LINE**
See "lot line, rear."

**REAR YARD**
See "yard, rear."

**RECREATIONAL VEHICLE**
A vehicular device designed to be used primarily as a temporary abode for travel, recreation or vacation use, including camper trailers, motor homes, pickup coaches and travel trailers.

**RECREATIONAL FACILITIES**
Facilities designed and used for active and passive participatory athletic and general recreation activities, such as health clubs, gymnasiums, dance halls, skating rinks, swimming pools, tennis courts, ball fields, bowling alleys and billiard rooms; excluded are facilities intended for spectator activities, such as stadiums and arenas, and any structure in which is maintained for the amusement, patronage or recreation of the public more than three electronic games. Also excluded are basketball facilities commonly found on residential premises at the edge of driveways or at the rear of homes and consisting of a pole, backboard and hoop for the playing of basketball.
[Amended 7-28-1997 by L.L. No. 10-1997][3]

**RESIDENCE**

A building designed or used as the living quarters for one family.

**ROOMER**

An occupant of a rooming unit.

**ROOMING UNIT**

One or more rooms, with or without private bathroom facilities, but without cooking facilities, which are rented or available for rent and which are located within a dwelling unit.[4]

**SCREENING**

Either a strip at least four feet wide densely planted (or having equivalent natural growth) with shrubs or trees at least four feet high at the time of planting, of a type that will form a year-round dense screen at least six feet high within three years, or an opaque wall or barrier or uniformly painted fence at least six feet high.

**SIDE LOT LINE**

See "lot line, side."

**SIDE YARD**

See "yard, side."

**SIGN**

Any structure or part thereof, or any device attached thereto or painted thereon, or any material or thing, illuminated or otherwise, which displays or includes any numeral, letter, work, model, banner, emblem, light, device, trademark or other representation used as an announcement, designation, direction, display or advertisement of any person, firm, group, organization, commodity, service, profession or enterprise when placed in such a manner that it provides visual communication to the general public out of doors.

**SIGN AREA**

The area which results from the multiplication of the outside dimensions of a sign; the vertical, horizontal or diagonal supports which may affix the sign to the ground or to a structure shall not be included in determining these dimensions unless such supports are clearly a part of the message of the sign. Where a sign is on a plate or outlined or framed, all of the area of such plate or the area enclosed by such outline or frame shall be included. Where the sign consists of individual letters or symbols attached to or painted on a surface, the area shall be considered to be that of the smallest single rectangle which encompasses all of the letters or symbols. Where the sign consists of multiple plaques or parts, the "sign area" shall be the total area of all such parts. The area of all signs that can be seen from more than one side shall be considered to be the area of the largest side on which the message appears.

**SITE PLAN**

A rendering, drawing or sketch prepared to specifications, and containing the necessary elements as set forth in § 118-32 of this Code, showing the arrangement layout and design of the proposed use of a single parcel of land as shown on said plan.
[Amended 2-28-1994 by L.L. No. 1-1994]

**SOLAR ENERGY COLLECTOR**

A device or combination of devices which relies upon solar radiation as an energy source that is employed for the purposes of the heating or cooling of a building, the heating of water or the generation of electricity.

**SPECIAL PERMIT USE**

An authorization of a particular land use permitted by the Zoning Code of the Village of Pomona, subject to conditions imposed by such Code to assure that the proposed use is in

harmony with said Code and will not adversely affect the neighborhood in which such use is to occur if such conditions are met.
[Added 2-28-1994 by L.L. No. 1-1994]

**STORY**

That portion of a building included between the upper surface of any floor and the upper surface of the floor next above, except that the topmost "story" shall be that portion of a building included between the upper surface of the topmost floor and the ceiling or roof above. If the finished floor level directly above a basement or cellar is more than six feet above the finished grade, such basement or cellar shall be considered a "story."

**STREET**

An existing state, county, town or Village highway or road, or a way shown on a subdivision plat approved by the Planning Board of the Village of Pomona, Town of Ramapo or Town of Haverstraw or on a plat duly filed and recorded in the office of the County Clerk prior to the appointment of the Planning Board and the grant to such Board of the power to approve subdivision plats, including all of the land within the right-of-way.

**STRUCTURE**

Anything constructed or erected above or below ground. Included are swimming pools, parking garages, tennis courts, parking areas and driveways.

**SUBDIVISION**

Any division of land into two or more parcels.

**SWIMMING CLUB**

A pool operated for members and their guests.

**SWIMMING POOL**

A man-made body of water or receptacle for water having a depth of more than 20 inches and a water surface area of more than 80 square feet and constructed, installed or maintained in or above ground outside any building.

**TERRACE or PORCH**

An uncovered flat platform with a surface material. A "terrace" which has a roof and which is attached to a building shall be considered a "porch."

**TRAILER**

A vehicle which can be used for living or sleeping purposes, standing on or designed to stand on wheels or on rigid supports.

**USE**

The specific purpose for which land, water, a building or a structure is designed, arranged, intended or for which it is or may be occupied or maintained.

**USE, ACCESSORY**

A use which is customarily incidental and subordinate to the principal permitted use on the lot and located on the same lot therewith, except that where specifically provided, accessory off-street parking need not be located on the same lot. An "accessory use" may not be accessory to another "accessory use."

**USE, PRINCIPAL**

The main use of a structure or lot.

**USE, SPECIAL PERMIT**

A use allowed in a district, subject to the issuance of a special permit in accordance with the provisions of § **130-10** of this chapter.

**WIRELESS TELECOMMUNICATION SERVICES**

The provision of wireless telecommunication services, including those more commonly referred to as "cellular phones," which services are regulated by the Federal Communications Commission (FCC) in accordance with and as the term "personal wireless service" is defined in the Communications Act of 1996, 47 U.S.C. Section 332(c)(7)(C), or as hereafter amended.
[Added 5-18-1998 by L.L. No. 2-1998]

**WIRELESS TELECOMMUNICATION SERVICES FACILITY**

Any equipment used in connection with the commercial operation of wireless telecommunication services, as defined herein, and as the term "personal wireless services facility" is defined in the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. Section 332(c)(7)(C), or as hereafter amended, to transmit and/or receive frequencies, including but not limited to antennas, monopoles, equipment, appurtenances and structures.
[Added 5-18-1998 by L.L. No. 2-1998]

**YARD**

Open space on the same lot as a building or structure, which open space lies between the building or structure and the nearest lot line. A "yard" shall be measured as the shortest distance between the building or structure and the lot line.

**YARD, FRONT**

A yard extending the entire length of the front lot line and lying between the front lot line and the nearest part of the building or structure.

**YARD, REAR**

A yard extending the entire length of the rear lot line and lying between the rear lot line and the nearest part of the building or structure.

**YARD, REQUIRED**

Open and unobstructed ground area of the plot extending inward from a plot line the distance specified in the regulations for the district in which the plot is located.

**YARD, SIDE**

A yard between a side lot line and the nearest part of the building and extending from the front yard to the rear yard, or, in the absence of either of such yards, to the front and rear lot line, as the case may be.

[1]   *Editor's Note: The former definition of "major religious use," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.*

[2]   *Editor's Note: The former definition of "minor religious use," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.*

[3]   *Editor's Note: The former definition of "religious or neighborhood gathering," which was added 1-23-1995 by L.L. No. 2-1995 and which immediately followed this definition, was repealed 1-22-2007 by L.L. No. 2-2007.*

[4]   *Editor's Note: The definition of "school," which immediately followed this definition, was repealed 9-27-2004 by L.L. No. 5-2004.*

# Article III. General Provisions

## § 130-5. District classification.

The entire area of the Village of Pomona is hereby designated as a residential district with a minimum of 40,000 square feet per lot, hereinafter referred to as the "R-40 District."

## § 130-6. Zoning Map.

The areas and boundaries of such district are hereby established as shown on a map entitled, "Zoning Map of the Village of Pomona," dated and made a part of this chapter, and as same may hereafter be amended from time to time. A copy of this map, indicating the latest amendments, shall be on file in the Village Clerk's office.

## § 130-7. Minimum standards.

A.   The provisions of this chapter shall be considered as minimum standards. The Planning Board and the Zoning Board of Appeals are hereby empowered to set more stringent requirements than herein set forth in those cases where such are deemed necessary for the preservation of natural features they consider desirable, the elimination or control of natural features considered undesirable or, in general, to meet the stated purposes of this chapter.

B.   Lots whose effluent and wastes are not treated by a state, county or municipal sewage plant shall be required to have a lot size twice that designated for the district in which the lot is located.

## § 130-8. Scope of controls.

A.   All new construction, every reconstruction or alteration of a building or structure, every change in bulk, all new uses of buildings or land and every change, enlargement or relocation of use shall conform to the use and bulk regulations of this chapter, except as otherwise set forth herein.

B.   After the effective date of this chapter, no building permit shall be granted for construction in any subdivision in which the lots do not comply with all the provisions of this chapter. Any subdivision which may have been filed in the County Clerk's office and/or have had prior approval from any appropriate planning board prior to the effective date of this chapter must obtain approval from the Village of Pomona Planning Board regardless of such prior filing or approval, and such subdivision must comply with the provisions of this chapter. All construction which was commenced prior to the effective date and has progressed at least as far as a completed foundation may continue to be constructed in accordance with plans and specifications filed for such construction, except that a new building permit must be obtained from the Village of Pomona Code Enforcement Officer, a building permit fee and certificate of occupancy fee paid and, wherever possible, the provisions of this chapter shall be complied with.

## Article IV. Use Regulations

## § 130-9. Permitted uses.

A.   All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited, except as provided in §§ **130-10** and **130-11**.

   (1)   One-family residences, with one dwelling unit per lot (no commercial; no trailers; no multiple dwellings).

   (2)   Houses of worship, subject to the requirements of Subsection **C** below.

(3)  Public utilities rights-of-way.

(4)  (Reserved)[1]

   [1]  *Editor's Note: Former Subsection A(4), regarding schools of general instruction, was repealed 1-22-2001 by L.L. No. 1-2001.*

(5)  Libraries and museums.

(6)  Public parks and playgrounds.

(7)  Agricultural pursuits.

B.  (Reserved)[2]

   [2]  *Editor's Note: Former Subsection B, School of general instructions, was repealed 1-22-2001 by L.L. No. 1-2001.*

C.  (Reserved)[3]

   [3]  *Editor's Note: Former Subsection C, House of worship, as amended, was repealed 1-22-2007 by L.L. No. 2-2007.*

# § 130-10. Special permit uses.

[Amended 1-28-1991 by L.L. No. 1-1991; 4-28-1997 by L.L. No. 4-1997; 5-18-1998 by L.L. No. 2-1998; 10-26-1998 by L.L. No. 4-1998; 1-22-2001 by L.L. No. 1-2001]
The following uses are permitted in the R-40 District by special permit only, to be reviewed, approved, or disapproved by the board set forth in each subsection:

A.  By the Zoning Board of Appeals: Recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings not conducted as a business enterprise, provided that no building, pool, spectator or active play area erected under the provisions of this subsection shall be so erected nearer than 50 feet to any lot line, and provided that the following operations shall be prohibited:

(1)  Outdoor entertainment, live or mechanical.

(2)  The use of outdoor public-address systems for any purpose.

(3)  Exterior lighting producing glare at the lot line other than that essential for the safety of the users of the premises.

B.  By the Board of Trustees: Reservoirs on lots of three acres or more, and water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on lots of three acres or more.

C.  By the Zoning Board of Appeals: Telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company, provided that such facilities are housed in buildings that harmonize with the character of the neighborhood and have adequate fences and other safety devices and screening and landscaping as shall be required by the Zoning Board of Appeals. A public utility company shall be a corporation or company for which the Public Service Commission of the State of New York has issued a certificate certifying that the company is a public utility.

D.  Camps, subject to special permit by the Village Board, provided that:

(1)  They have a minimum lot area of 50 acres.

(2)  Access to such facilities shall be limited to improved state, county, town or Village roads which are major collector roads. Subdivision (residential) roads shall not be used for access to such uses.

(3)  Such facilities shall be adequate to preclude the necessity of pedestrian traffic outside the approved facility.

(4)  The facility may include bungalows, cottages and tents for temporary use by visitors or patrons of such camps, provided that no heating or plumbing facilities are installed to permit year-round residential communities.

(5)  One year-round residence for a caretaker may be provided for each 50 acres.

(6)  Trailers and recreation vehicles shall not be permitted.

(7)  No building, ballfield, swimming facility or other property use shall be permitted within 125 feet of a residential property line, except that the Planning Board may permit a reduction where, because of topography or the installation of additional buffer landscaping and/or fencing, the Planning Board determines that any potential adverse external effect of such use will be minimized.

(8)  Site plan approval by the Village of Pomona Planning Board shall be obtained. Such site plan shall address the following:

    (a)  Adequate parking for buses, staff and visitors shall be provided.

    (b)  No camp shall be operated so as to create a nuisance to surrounding properties. The Planning Board shall attach such conditions to the permit and may require such other facilities as are required to protect neighbors from excessive light or as are required to protect neighbors from excessive light or noise. No outdoor public address systems shall be permitted.

    (c)  Water facilities by either well or municipal water shall be provided subject to approval by the Rockland County Health Department.

    (d)  Sewer disposal by municipal sewer or septic tanks shall be provided subject to approval by the Rockland County Health Department.

    (e)  The location, nature and height or buildings for summer residence, dining facilities, temporary structures, walls and fences shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

    (f)  Building coverage, including accessory buildings and structures, shall not exceed 10% of the lot area, nor shall the sum total of the land covered with buildings and parking, including driveways, exceed 25% of lot area, within any residence district.

    (g)  In addition to the special standards described above, the use shall comply with any other special requirements deemed appropriate by the Planning Board.

E.  Wireless telecommunication services facility, subject to special permit approval by the Village Board of Trustees and the following requirements:

(1)  The following special permit standards and requirements shall apply to all wireless telecommunication services facilities.

(2)  Purpose. The purpose of these special regulations is to reasonably control the location, construction and maintenance of wireless telecommunication facilities in order to

encourage the siting of wireless telecommunication services facilities in nonresidential areas and to protect, to the maximum extent practicable, aesthetic impacts, the open space character of the Village of Pomona, the property values of the community, the health and safety of citizens and a citizen's ability to receive communication signals without interference from other communication providers, while not unreasonably limiting competition among telecommunication providers.

(3) Use. Except as provided hereinafter, no wireless telecommunication services facility shall be located, constructed or maintained on any lot, building, structure or land area in the Village of Pomona except in conformity with the requirements of this subsection and all other applicable regulations.

(4) Location and access. A wireless telecommunication services facility shall be located on Village-owned lands or facilities. If, because of unreasonable technological, financial or structural limitations or unless otherwise waived, modified or required by the Village Board of Trustees for aesthetic, safety or other reasons, location on Village-owned lands or facilities is not practicable, such facility shall be located on lands with commercial or nonresidential uses before locating on any lands used exclusively for residential purposes. Wherever possible, such facility shall be attached to an existing building or structure. To the maximum extent practicable, existing roadways shall be used to provide access to the site of a wireless telecommunication services facility.

(5) Collocation.

 (a) The shared use of existing public utility and wireless telecommunication services facilities shall be strongly encouraged. The Village shall maintain an inventory of existing wireless telecommunication services facilities (the "Existing Facilities Inventory") including utilities that are obligated under the Federal Telecommunications Act of 1996 to provide wireless telecommunication service carriers with nondiscriminatory access to their facilities. Collocation shall be required unless it has been demonstrated to the satisfaction of the Village Board of Trustees that:

  [1] Adequate and reliable wireless telecommunication service cannot be provided from any alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area in a reasonable financially and technologically feasible manner consistent with the wireless telecommunications service provider's system requirements;

  [2] None of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area can accommodate the proposed wireless telecommunication services facility with respect to structural or other engineering limitations, including frequency reuse incompatibilities; or

  [3] The owner of the alternative sites identified on the Existing Facilities Inventory or other existing sites with communication antennas within the service area lawfully refuse to permit the applicant use of the site.

 (b) All new wireless telecommunication services facilities and premises shall be of proper size, location and design to accommodate collocation of other service providers' facilities, unless otherwise permitted by the Village Board of Trustees.

(6) Setbacks. Wireless telecommunication services facilities, except those on Village-owned lands or those structurally mounted to an existing building or structure, shall be located not less than two times the otherwise applicable setback requirements for principal structures for the district in which the property is located, or the height of the facility plus the otherwise applicable setback requirements for principal structures for the district in which

the property is located, whichever shall be greater. Wireless telecommunication services facilities structurally mounted to the roof of an existing building or structure shall be set back from the side of the building or structure so as to minimize its visibility, but in no case less than 10 feet.

(7) Freestanding structures. No freestanding wireless telecommunication services facility shall be permitted except for a monopole.

(8) Height limitations. Notwithstanding the following height limitations, in no case shall a wireless telecommunication services facility exceed the minimum height reasonably necessary to accomplish the purpose it is proposed to serve.

    (a) The height of any antennas, or other associated equipment, structurally mounted as part of a wireless telecommunication services facility shall not exceed by more than 15 feet the highest point of the existing structure on which such antennas or equipment are affixed.

    (b) The height of any monopole utilized in a wireless telecommunication services facility shall not exceed 150 feet in height measured from the highest point of such facility to the finished grade elevation of the ground immediately adjacent to the structure.

(9) Visual mitigation. The applicant/provider shall prepare an impact assessment of the proposed wireless telecommunication services facility based upon appropriate modeling, photography and other pertinent analytical techniques as required by the Village Board of Trustees. Landscaping and/or other screening and mitigation, including but not limited to architectural treatment, use of neutral or compatible coloring and materials, or alternative construction and transmission technologies shall be required to minimize the visual impact of such facility from public thoroughfares, important viewsheds and vantage points and surrounding properties to the extent practicable, as determined by the Village Board of Trustees. No signs shall be erected on any wireless telecommunication services facility except as may be required by the Village Board of Trustees for security or safety purposes.

(10) Lighting. The wireless telecommunication services facility shall not be artificially lighted unless otherwise required by the Federal Aviation Administration or other federal, state or local authority.

(11) Operational characteristics. Unless otherwise superseded by the FCC, the design and use of the proposed wireless telecommunication services facility, including its cumulative impact with other existing and approved facilities, shall be certified to conform with the maximum NIER exposure standards promulgated by the FCC, as amended. Said certification shall include a report by a licensed professional electrical engineer with expertise in radio communication facilities and/or health physicist acceptable to the Village Board of Trustees. The applicant shall provide an annual certification of conformance with the applicable emissions standards and the requirements and conditions of special permit and site plan approval. The Village Board of Trustees may hire a qualified professional of its choosing to review and confirm such initial and annual certification report, the cost of which shall be reimbursed by the applicant in accordance with the escrow account procedures established for the reimbursement of professional review fees for subdivision, site plan and special permit applications. Any violation of the emissions standards shall require immediate discontinuation and correction of the use responsible for the violation. Any such violation of these requirements of the Zoning Law or the conditions of special permit or site plan approval shall be deemed to be an offense punishable by fine and/or imprisonment in accordance with § **130-25** of this Zoning Law.

(12) Noise. Noise-producing equipment shall be sited and/or insulated to prevent any detectable increase in noise above ambient levels as measured at the property line.

(13) Interference. Any interference, disruption of signal or reception of radio, television or other wireless telecommunication service resulting from the construction or operation of a wireless telecommunication services facility shall be remedied as soon as practicable by and at the expense of the responsible wireless telecommunication services provider to the satisfaction of the Village Board of Trustees.

(14) Utility service. Electrical and land-based telephone lines extended to serve the wireless telecommunication services facility sites shall be installed underground.

(15) Safety provisions. A wireless telecommunication services facility shall be designed and erected so that, in the event of structural failure, it will fall within the required setback area and, to the maximum extent possible, away from adjacent development.

(16) Security provisions. A security program shall be formulated and implemented for the site of a wireless telecommunication services facility. Such program may include physical features such as fencing, anti-climbing devices or elevating ladders on monopoles and/or monitoring either by staff or electronic devices to prevent unauthorized access and vandalism.

(17) Structural inspection and report. A monopole over 50 feet in height shall be inspected by a professional engineer licensed by the State of New York at the expense of the service provider(s) each time a change is made to the equipment mounted or wiring installed on the monopole, every three years on the anniversary of the initial installation of the monopole or at any other time upon a determination by the Building Inspector that the monopole may have sustained structural damage, and a copy of the inspection report shall be submitted to the Building Inspector.

(18) Lease agreement. In the case of an application for approval of a wireless telecommunication services facility to be located on the lands owned by a party other than the applicant or the Village, a copy of the lease agreement with the property owner absent the financial terms of such agreement, together with any subsequent modifications thereof, shall be provided to the Village Board of Trustees and a copy shall be filed with the Village Clerk.

(19) Removal. A wireless telecommunication services facility shall be dismantled and removed from the property on which it is located within 60 days when it has been inoperative or abandoned for a period of one year or more from the date on which it ceased operation. The applicant shall provide to the Village written notification including identification of the date the use of the facility was discontinued or abandoned by one or more of the service providers, acknowledgment of the requirement to remove the facility and identification of the plans for the future of the facility.

(20) Application procedure.

(a) An application or approval of a wireless telecommunications facility shall be submitted on the relevant forms for special use permit and site plan approval. Site development plan approval, in accordance with Chapter **119** of this Code, shall be required.

(b) The operator of the wireless telecommunication service shall submit a certificate of public utility and shall demonstrate to the satisfaction of the Village Board of Trustees that there is a compelling public need for such facility at the location(s) proposed by the applicant. Such demonstration shall include the preparation of existing and master effective service area plans which:

[1] Minimize the number of such facilities within the service area(s).

[2] Maximize collocation and shared use of existing public utility and wireless

telecommunication services facilities.

[3]  Identify all existing and proposed wireless telecommunication facilities which impact upon the service area covering the Village of Pomona, including but not limited to topographic maps of the Village with service coverage and service gap grids and all proposed and other functionally acceptable locations for such facility(ies).

[4]  Analyze feasible alternatives to reasonably minimize the visual impacts and exposure levels.

(c)  Any application for a wireless telecommunication services facility shall include a statement and appropriate documentation demonstrating that the Village's Existing Facilities Inventory has been reviewed and, to the extent relevant to provide wireless telecommunication services in the area which is the subject of such application, that all reasonable efforts have been made to collocate such facility on all sites identified in such Existing Facilities Inventory and all other existing sites with communication antennas within the service area.

(d)  As a condition of special permit approval, the applicant shall be required to provide a written agreement, in recordable form suitable for filing and prepared to the satisfaction of the Village Attorney, acknowledging that it shall be required to allow the collocation of other future wireless telecommunication service facilities unless otherwise unreasonably limited by technological, structural or other engineering considerations.

(e)  Where collocation of a wireless telecommunication services facility is proposed for any such alternative site identified on the Existing Facilities Inventory or other existing site with communication antennas within the service area, the added wireless telecommunication services facility shall be permitted, as an amendment to the existing special use permit for such alternative site, by submission of an application for a building permit and without the need for an application for an amended special permit or site plan approval, provided that such facility meets all of the otherwise applicable requirements of this subsection and no physical modification other than the attachment of the antennas and the installation of associated equipment to be located on the ground is required. An amended written narrative and certification report indicating conformance with all of the special permit standards and conditions of site development plan approval shall be provided in addition to all required information in support of the required building permit. An as-built drawing of the modified facilities shall be filed with the Building Department. The Building Inspector shall provide written notification to the Village Board of Trustees of such application for building permit.

(f)  The applicant and all future owners of the premises and the wireless telecommunication services facility shall at all times keep on file in the office of the Village Clerk the name, address and telephone number of the owner and operator of such facility and of at least one individual who shall have authority to arrange for the maintenance of the premises and facility, and who shall be authorized to accept service of notices and legal process on behalf of the owner and operator(s) of the premises and facility and to bind the owner to any settlement, fine, judgment or other disposition (other than incarceration) which may result from any civil or criminal action or proceeding instituted by the Village against such owner and/or operator(s).

F.  Educational institutions, as defined in § **130-4** of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following

standards and requirements shall apply:
[Added 1-22-2001 by L.L. No. 1-2001; amended 9-27-2004 by L.L. No. 5-2004]

(1) Minimum net lot area.
[Amended 1-22-2007 by L.L. No. 1-2007]

   (a) The minimum lot area for an educational institution shall be a net lot area of 10 acres.

   (b) No portion of any land under water shall be counted toward the net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter **126** of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted toward the net lot area.

   (c) No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward the net lot area.

(2) Maximum development intensity.

   (a) The total building coverage shall not exceed 10% of the net lot area.

   (b) The total floor area of the building(s) shall not exceed 20% of the net lot area.

   (c) The total coverage of impervious surfaces (which includes all buildings and structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(3) Required road frontage and access. An educational institution shall have a minimum of 250 feet of frontage on a public road and shall provide sufficient and safe access to such public road.

(4) Required setbacks and screening. All buildings, recreation areas, parking areas and other property uses and structures shall be set back a minimum of 125 feet from each property line. Such setback shall include a buffer area of a minimum of 35 feet in width consisting of trees, shrubs, plants, fencing and/or other materials as determined by the Planning Board to be sufficient to screen the educational use from adjoining uses and streets.

(5) Required parking.

   (a) The following number of off-street parking spaces shall be provided: one space per employee plus one per each eight students in the 12th grade, or one per four seats of public assembly area, whichever is greater.

   (b) The applicant shall be permitted to forego the initial improvement of required parking spaces if it is proven, to the satisfaction of the Planning Board, that such spaces are not needed based on the parking demands of the proposed use. In such case, the approved site plan shall show the location(s) on the site where such unimproved spaces could be provided and will be reserved for improvement and use in the future. If determined necessary by the Planning Board, the reserved parking spaces shall be constructed in accordance with the approved site plan within six months after written notice is provided by the Building Inspector to the property owner stating that the improvement of all or a portion of the reserved parking spaces is necessary. All unimproved parking spaces shall be used and maintained as landscaped grounds until used for parking.

(6) Noise and exterior lighting.

    (a)  The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located.

    (b)  No outdoor public address systems shall be permitted.

(7)  Signage. One monument sign, limited to eight square feet in area and set back 10 feet from lot lines, may be placed at the main entrance to the school.

(8)  Public water and sewer. The site shall be served by public water and sewer.

(9)  The Board of Trustees may impose such restrictions and regulations which would avoid or minimize traffic hazards, impairment of the use, enjoyment or value of property in the surrounding area, or generally protect the health, safety and welfare of the neighborhood and to otherwise implement the purpose and intent of this chapter.

(10)  The location and size of the use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith shall not be hazardous.

(11)  The location and height of buildings, the location, nature and height of walls and fences and the nature and extent of landscaping on the site shall be such that the use will not hinder or discourage the development and use of adjacent land and buildings.

(12)  A dormitory building is permitted as an accessory use to an educational use provided it is located on the same lot as the educational use and there shall be not more than one dormitory building on the lot. A dormitory building shall not occupy more than 20% of the total square footage of all buildings on the lot.
[Amended 1-22-2007 by L.L. No. 1-2007]

    (a)  The minimum distance between a dormitory building and any other principal building or structure on the lot shall be 50 feet.

    (b)  The minimum distance between a dormitory building and any interior driveway or other accessory structure shall be 25 feet.

    (c)  The maximum height of a dormitory building shall be two stories or 25 feet, whichever is less.

    (d)  No dormitory room or dwelling unit shall be permitted in any cellar.

    (e)  The dormitory building shall be equipped with sprinkler and fire alarm systems and comply with all requirements of the New York State Fire Prevention and Building Code.

G.  By the Board of Trustees: House of worship as defined in § **130-4** of this chapter, subject to special permit approval by the Village Board of Trustees and site plan approval by the Planning Board. In addition to all other requirements of this Code for special permit and site plan approval, the following standards and requirements shall apply:
[Added 1-22-2007 by L.L. No. 2-2007]

(1)  The minimum lot area for a house of worship shall be a net lot area of three acres.

    (a)  No portion of any land under water shall be counted toward net lot area. Not more than 1/4 of any land which is defined as wetland by the U.S. Army Corps of Engineers, the New York State Department of Environmental Conservation and/or Chapter **126** of this Code or which is within a one-hundred-year-frequency floodplain or within access, utility or drainage easements or rights-of-way shall be counted

toward net lot area.

   (b)  No portion of any land with unexcavated slopes over 35% shall be counted toward net lot area. Not more than 25% of any land with unexcavated slopes greater than 15% but less than 35% shall be counted toward net lot area.

(2)  The use shall have a minimum of 100 feet of frontage on and access to a public road.

(3)  The proposed structure meets all state requirements for a place of public assembly, including the Fire Prevention and Building Code.

(4)  Adequate off-street parking on the same lot as the house of worship shall be provided. A minimum of one parking space for every 200 square feet of floor space shall be required. The Planning Board may waive not more than 25% of the required number of parking spaces if the Board determines that such spaces are not needed based on the parking demands of the proposed use. The burden shall be on the applicant to prove that such spaces are not needed.

(5)  All buildings, structures and other uses, including driveways and parking areas, shall be set back a minimum of 125 feet from all property lines. Such setback area shall include a buffer screening area of at least 35 feet which, in the judgment of the Planning Board, will be adequate to screen the use from adjoining properties. The buffer area may include trees, bushes, fences, walls, berms or any combination of the aforesaid, to be determined by the Planning Board.

(6)  The total building coverage shall not exceed 10% of the net lot area. The total coverage of impervious surfaces (which includes all buildings, structures, parking areas, driveways, sidewalks and other areas covered in concrete, asphalt or packed stone) shall not exceed 25% of the net lot area.

(7)  The sources of exterior lighting shall be so shielded that they are not visible beyond the boundaries of the lot on which they are located. No outdoor public address systems shall be permitted.

(8)  One monument sign, limited to eight square feet in area and set back a minimum of 10 feet from the lot line, may be permitted at the front entrance to the house of worship. Illumination, if provided, shall be indirect, and the source of such light shall not be visible from adjoining properties or roads.

(9)  The maximum height of buildings and structures shall be 35 feet measured from ground level in front of the building or structure. The height limitation shall not apply to church spires, belfries, cupolas, domes, monuments and similar appurtenances that are not used for human occupancy and do not extend more than 15 feet above the roof of the building or structure.

(10) Such other requirements as may be imposed by the Board of Trustees to mitigate traffic, safety hazards, drainage, aesthetics or other adverse impacts on adjacent properties or on the neighborhood.

# § 130-11. Accessory uses.

The following are permitted accessory uses in the R-40 District:

A.  Greenhouses, toolsheds, garages, carports and other recreational facilities commonly associated with residential use.

B.   Swimming pools and tennis courts, subject to the following regulations:

(1)   Such pool or court shall be completely enclosed by a fence or wall not less than five feet in height and so constructed as to deter climbing. All gates or doors opening through such enclosure shall be equipped with a self-closing and self-latching device for keeping the gate or door securely locked at all times when the pool or court is not in actual use.

(2)   If located within 50 feet of any lot line, such pool or court shall be screened from the view of the adjacent properties. Such screen shall be at least five feet high.

C.   Temporary storage of mobile trailers and boats, provided that they are not visible from the street and are properly screened from adjacent property.

D.   The keeping of no more than five household pets, exclusive of pets under three months of age, but excluding the commercial breeding or boarding of the same.

E.   Customary home occupations, including professional offices or studios of dentists, physicians, lawyers, artists, musicians and teachers, but not including those uses and occupations excluded from the definition of home occupation in § **130-4** of this chapter, provided that: [Amended 12-19-1994 by L.L. No. 4-1994; 1-27-1997 by L.L. No. 2-1997; 6-23-1997 by L.L. No. 7-1997]

(1)   No display of goods or signs is visible from the street, except as set forth in the regulations for signs.

(2)   Such occupation is incidental to the residential use of the premises and is carried on in the main building by a resident therein with no more than two nonresident assistants.

(3)   The primary residential purpose of the lot shall be maintained; to this end, home occupation use of the property (inclusive of permitted storage of all materials) shall be limited to not more than 1,000 square feet or 25% of the gross floor area of the principal residential structure, whichever is less.

(4)   A home occupation shall comply with all other applicable federal, state, county and local regulations.

(5)   A home occupation shall not involve merchandising, trade or the exchanging of commodities whether or not for profit by sale or distribution to persons who come to the premises.

(6)   Studios of music or dance which are not used for the instruction of groups in excess of four pupils at one time, nor for the giving of concerts or recitals.

(7)   There shall be no exterior effect such as noise, traffic, odor, dust, smoke, gas fumes, radiation or electromagnetic interference.

(8)   There shall be provision for adequate off-street parking to accommodate the vehicles of persons connected with or visiting the permitted use, and there shall be no parking of such vehicles in public streets. Notwithstanding the provisions of § **124-12** of this Code, vehicles making deliveries of goods and picking up goods in connection with a permitted home occupation, having a gross empty weight in excess of 12,000 pounds, must obtain the permission of the Town Police Department having jurisdiction prior to such delivery and pickup; such vehicles shall not be parked along the highways, streets, lanes, thoroughfares and public roads within the Village of Pomona during the course of such deliveries and pickups, but shall be parked wholly upon the premises to which the delivery is being made and from which pickups are being made. The adequacy of off-street parking shall be determined by the Code Enforcement Officer.

F.  Signs, limited as follows:
    [Amended 1-27-1997 by L.L. No. 2-1997]

    (1)  One nameplate or professional sign with an area not over 1 x 1 1/2 feet.

    (2)  One temporary nonilluminated sign advertising the sale or rental of the premises on which such sign is situated, with an area of not over four square feet, provided that such sign is not located within 25 feet of any side lot line.

    (3)  Temporary signs for garage sales, provided that such signs contain the address of the seller and date of the sale, are displayed only one week prior to the sale and are removed within one week after the sale.

G.  The conduct of noncommercial regularly scheduled gatherings of persons which are incidental to and secondary to the use of the premises as a single-family residence, provided such use complies with the requirements of the New York State Fire Prevention and Building Code relating to places of assembly and occupancy limitations, if applicable. The Building Inspector and/or Fire Inspector, as the case may be, shall have authority to inspect the premises for compliance with all safety requirements of the State Fire Prevention and Building Code relating to the use. The use shall be conducted within the single-family residence and shall not be permitted in a separate or accessory building on the lot.
    [Added 1-22-2007 by L.L. No. 2-2007][1]

    [1]  *Editor's Note: Former Subsection G, Signs in public right-of-way prohibited, added 10-27-1997 by L.L. No. 13-1997, as amended, was repealed 11-22-2004 by L.L. No. 8-2004. See now Ch. 112, Signs on Public Property.*

# Article V. Area and Bulk Regulations

## § 130-12. R-40 District.

The following bulk regulations shall apply in the R-40 District:

A.  Minimum lot area: 40,000 square feet.

B.  Minimum lot frontage: 100 feet except that during subdivision approval the Planning Board may reduce lot frontage to not less than 50 feet for residential lots fronting on cul-de-sacs or on streets with a center-line radius of 100 feet or less.
    [Added 2-28-2005 by L.L. No. 1-2005[1]]

    [1]  *Editor's Note: This local law also redesignated former Subsections B through I as C through J, respectively.*

C.  Minimum lot width: 150 feet measured along a line drawn parallel to the front lot line at a distance equal to the minimum front yard requirement, except that lots of two acres or more having public sewer availability may be subdivided to produce a so-called "flag" lot with access to a public street by way of a twenty-five-foot wide strip owned by the rear lot owner in fee. A maximum of one flag lot per parent parcel may be created with not more than one newly created parcel being accessed by such twenty-five-foot wide strip of property.
    [Amended 9-11-1989 by L.L. No. 3-1989; 2-28-1994 by L.L. No. 1-1994; 5-20-2002 by L.L. No. 2-2002; 2-28-2005 by L.L. No. 1-2005]

D.  Minimum lot depth: 140 feet.

E.  Minimum front yard: 50 feet, measured from the edge of the right-of-way. If located on a right-of-way of less than 50 feet, all buildings shall be set back a distance, measured from the center line of the existing roadway, of at least the required front yard plus 25 feet.

F.    Minimum rear yard: 30 feet.

G.    Minimum side yard: 25 feet. On a corner lot, each yard which abuts a street shall be deemed a front yard and shall meet front yard requirements. Thus, a corner lot shall have two front yards and two side yards.

H.    Maximum height of buildings and structures shall be 35 feet measured from ground level in front of the building or structure.

I.    Maximum lot coverage. In order to ensure the maximum coverage of a lot with vegetation, the prevention of over development of lots, to minimize adverse visual impacts and to minimize negative impacts of stormwater runoff, there is hereby established a maximum lot coverage of 15%. In calculating maximum lot coverage, there shall be included, in addition to the proposed building, the lot coverage of impervious surfaces and accessory structures such as swimming pools.
[Amended 1-27-1997 by L.L. No. 3-1997]

J.    Minimum number of off-street parking spaces: two.

# Article VI. General Regulations

## § 130-13. Application of regulations.

A.    Conformity required. No building shall be erected, constructed, moved, altered, rebuilt or enlarged, nor shall any land, water or building be used, designed or arranged to be used, for any purpose except in conformity with this chapter.

B.    Minimum requirements. In interpreting and applying this chapter, the requirements contained herein are declared to be the minimum requirements necessary for the protection and promotion of the public health, safety, morals, comfort, convenience and general welfare.

## § 130-14. Relationship to other regulations.

A.    Other applicable codes, standards and regulations. There are many other applicable codes, standards and regulations of the Village of Pomona in addition to this chapter. These include the Subdivision of Land Regulations and the Uniform Fire Prevention and Building Code.[1]
[1]    *Editor's Note: See Ch. 118, Subdivision of Land, and Ch. 74, Fire Prevention.*

B.    Conflicting standards. This chapter shall not be deemed to affect in any manner whatsoever any easements, covenants or other agreements between parties; provided, however, that where this chapter imposes a greater or lesser restriction upon the use of buildings or land or upon the erection, construction, establishment, movement, alteration or enlargement of buildings than is imposed by other local laws, rules, regulations, licenses, certificates or other authorizations or by easements, covenants or agreements, the more restrictive requirements shall prevail.

## § 130-15. Nonconforming uses, buildings or structures.

A.    Continuing existing uses, buildings and structures.

     (1)    Except as otherwise provided herein, the lawfully permitted use of lands or buildings and the lawfully permitted existence of buildings or structures at the time of the adoption of this

chapter may be continued although such use, building or structure does not conform to the standards specified in this chapter for the district in which such lands, buildings or structures are located. Similarly, whenever a zoning classification or the restrictions affecting property within a district shall be changed hereafter so as to render nonconforming a use, building or structure then presently or theretofore lawfully existing, such use, building or structure may nevertheless continue, subject to the conditions set forth below. Said uses shall be deemed nonconforming uses and said buildings and structures shall be deemed dimensionally nonconforming.

(2) Any use in existence as of the effective date of this chapter which is by this chapter made a special permit use in the district in which it is located shall be presumed to have a special permit to the extent such use is legally conforming as of the date immediately prior to the effective date of this chapter.

B. Nonconforming use of land, buildings or structures.

(1) The nonconforming use of land may be continued; provided, however, that no such nonconforming use shall be physically enlarged or intensified, nor shall it be extended to occupy a greater area of land than that occupied by such use at the time of the adoption of this chapter, unless specifically allowed by other provisions in this chapter, nor shall any such nonconforming use be moved in whole or in part to any other portion of the lot or parcel of land occupied by such nonconforming use at the time of the adoption of this chapter.

(2) A building or structure, the use of which does not conform to the use regulations for the district in which it is situated, shall not be enlarged, extended or altered structurally unless the use therein is changed to a conforming use or to conform to an order of the Code Enforcement Officer to either correct an unsafe condition or conform to the requirements of applicable laws or ordinances.

(3) No nonconforming use of a building or structure shall be enlarged or extended, except that any such nonconforming use may be extended throughout any parts of the building or structure which were obviously or manifestly arranged or designed only for such use at the time of the adoption or amendment of this chapter.

(4) No nonconforming use shall be changed to another nonconforming use, except as provided in Subsection **E** below.

(5) If a nonconforming use ceases for any reason for a total of six months during any twelve-month period or is changed to a conforming use, any future use of the land, building or structure shall be in conformity with the provisions of this chapter. Substantial cessation of activities consistent with or required for the operation of such nonconforming use, or substantial vacancy of the building or structure in which the nonconforming use was conducted, together with substantial cessation of activities consistent with or required for the operation of such nonconforming use, shall be deemed to constitute a discontinuance thereof within the meaning of this chapter irrespective of whether an intention to abandon the nonconforming use may exist. On application, however, the Board of Appeals may extend the period upon a finding that it is not reasonable in its application to the particular premises, taking into consideration the characteristics of the use, the investment which has been made in it, the circumstances of the discontinuance and the suitability of the structure for a permitted or special permit use.

(6) If any building or structure in which any nonconforming use is conducted or maintained is hereafter removed, the subsequent use of the land on which such building or structure was located and the subsequent use of any building or structure thereon shall be in conformity with the standards specified by this chapter for the district in which such land is located.

C. Dimensional nonconformity. A building or structure that is conforming in use but does not conform to the lot dimension, yard dimension, height, building coverage, off-street parking, loading or similar dimensional requirements of this chapter shall be deemed to be dimensionally nonconforming. No permit shall be issued that will result in the increase of any such dimensional nonconformity, but any building or structure or portion thereof may be altered to maintain or decrease its dimensional nonconformity.

D. Reconstruction.

   (1) Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of more than 75% of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it shall not thereafter be reconstructed or used except in conformity with the provisions of this chapter.

   (2) Should a building or structure, the use of which or the use of a portion of which is nonconforming or which is dimensionally nonconforming, be destroyed or damaged by any means to an extent of 75% or less of the replacement cost of the building or structure as determined by the Code Enforcement Officer at the time of the reconstruction, it may be reconstructed and any accompanying nonconforming use continued, provided that the reconstruction is commenced within one year of the date of such damage and completed within two years of said date, and further provided that it shall be reconstructed in accordance with a plan approved by the Planning Board so as to result, where possible, in greater conformity with this chapter.

E. Change to other nonconforming use. On application, any nonconforming use of land, buildings or structures may be changed to another nonconforming use upon approval by the Board of Appeals based upon a finding that the proposed use is more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Appeals may impose whatever conditions and safeguards it may deem necessary or appropriate to further the purposes of this chapter.

F. Improvement of nonconforming uses. In order that nonconforming uses may gradually be brought into greater conformity with this chapter and the adverse external effects of such nonconforming uses may be reduced, the owner of the land, building or structure so used may be permitted to make limited changes to such building, structure or use in conjunction with a site plan whereby, through landscaped screening and buffer areas, control of noise, smoke, odors, lighting, architectural changes and layout of parking areas and access drives or by any other appropriate means, these purposes may be achieved. Such plan shall be presented to the Board of Appeals, which may then grant approval or approval with modifications, provided that said agency finds that the purposes of this section shall be met.

## § 130-16. General lot, yard and use regulations.

A. Lot for every building. Every building hereafter erected shall be located on a lot and there shall be no more than one main building and its accessory buildings on one lot, except for nonresidential buildings in districts where such uses are permitted.

B. Subdivision of a lot. Where a lot is formed hereafter from part of a lot already occupied by a building, such separation shall be effected in such manner as not to impair conformity with any of the requirements of this chapter with respect to the existing building and all yards and other required spaces in connection therewith, and no permit shall be issued for the erection of a building on the new lot thus created unless it complies with all the provisions of this chapter.

C.   Irregularly shaped lots. Where a question exists as to the proper application of any of the requirements of this chapter to a particular lot because of its peculiar or irregular shape, the Board of Appeals shall determine how the requirements of this chapter apply as provided in § **130-28E** of this chapter.

D.   Obstructions to vision at intersections in residential districts. At the intersection of two or more streets in a residential district, no fence, wall, structure or shrubbery or other obstruction more than two feet in height above the center-line grade of the streets shall be erected or placed on any part of a yard herein established that is included within the triangular area formed by the nearest edges of the street line and a straight line between two points, each a minimum of 25 feet back from the intersection of the nearest edges of the street line prolonged.

E.   New buildings on lots smaller than minimum required area. A permit may be issued for the erection of a building for a permitted use on a lot for which a valid conveyance has been recorded prior to May 28, 1968, notwithstanding that the area or dimensions of such lot are less than that required for the district in which such lot is located, provided that such lot meets the requirements of § 7-708, Subdivision 2, of the Village Law.

F.   Yard for every building. No yard or other open space provided about any building for the purpose of complying with the provisions of this chapter shall be included as any part of the yard or open space for any other building. No yard or any other open space on one lot shall be considered as a yard or open space for a building on any other lot.

G.   Use of yards. No accessory building or structure shall be permitted within any minimum required yard except as regulated by Subsections **J** and **O**. No parking shall be permitted within any yard except as provided in Article **VII**.

H.   No reduction of required yards. No lot shall be so reduced in area as to make any yard smaller than the minimum required under this chapter.

I.   Yards on corner lots. On a corner lot, each lot line which abuts a street shall be deemed to be a front lot line, and the required yard along both lot frontages shall be a required front yard. Where a corner lot has frontage on three streets, the remaining yard shall be a side yard.

J.   Structural projections permitted into required yards and courts.

  (1)   Limited walls and fences may be allowed in required yards, subject to the requirements of Subsection **L**.

  (2)   All required yards shall be unobstructed except as provided in this subsection. (Since required yards shall be open to the sky, an obstruction shall include the projection of a structure into such spaces at any level above ground.) However, an arbor, open trellis, flagpole, unroofed steps, unroofed terrace or deck at not to exceed one foot above ground level shall be permitted in any required yard up to within 10 feet of a property line.

  (3)   An awning or movable canopy may project not more than 10 feet into any required yard.

  (4)   Cornices or eaves may project not more than 18 inches into a required yard.

  (5)   Windowsills or belt courses may project not more than six inches into a required yard.

  (6)   Driveways shall be permitted in any yard, provided that they comply with the maximum impervious surface requirements of this chapter.

K.   Exceptions to height limitations. The height limitations of this chapter shall not apply to:

  (1)   Church spires, belfries, cupolas, domes, monuments, observation towers, chimneys,

smokestacks, derricks, flagpoles, radio towers, masts and aerials where not used for human occupancy and where such structures do not extend more than 15 feet above the roof.

(2) Rooftop bulkheads, elevator penthouses, water towers, water tanks, monitors, fire towers, hose towers, cooling towers or solar energy collectors, provided that such features shall be erected only to the height necessary to accomplish the purpose they are intended to serve, the total area covered by such features shall not exceed 20% of the horizontal area of the roof on which they are located, such structures do not extend more than 15 feet above the roof and, where the lot on which they are located is in or adjacent to a residence district, such features shall be set back from the edge of the roof at least one foot for each one foot by which such features exceed the maximum height otherwise specified for the district in which they are located.

L.  Fences and walls. Fences and walls, including retaining walls, are permitted within required yards, provided that:
[Amended 11-22-2004 by L.L. No. 7-2004]

(1) Except as provided in Subsection **Q** below, such fences or walls shall not exceed four feet in height if located in a front yard and six feet in height in any other yard, except that such fences or walls shall not exceed six feet in height if located in a front yard abutting a state road. The Code Enforcement Officer may, where necessary for safety, require the addition to a retaining wall of a motor vehicle bumper guard or fence.

(2) The fence or wall meets the requirements of Subsection **D** of this section.

(3) All fences and walls must be inside all lot lines.

M.  Cemeteries. Cemeteries are not permitted in any district.

N.  Solar energy collectors.
[Amended 2-28-1994 by L.L. No. 1-1994]

(1) Solar energy collectors are permitted as a part of and may be attached to any building.

(2) Installation of solar energy collectors shall require the issuance of a building permit and the approval of the Planning Board.

O.  Accessory buildings and structures. Accessory buildings and structures shall be permitted in all districts, subject to the following:

(1) Not more than three accessory buildings and structures shall be permitted on a lot in a residential district, except as approved in accordance with § **130-10D**.
[Amended 1-28-1991 by L.L. No. 1-1991]

(2) The gross floor area of all principal and accessory buildings, regardless of size, located on a lot shall comply with the maximum lot coverage requirements of this chapter.

(3) The following shall be considered accessory buildings and structures for the purposes of this subsection: tennis courts, paddle tennis courts, swimming pools, garages for passenger vehicles or one vehicle with commercial registration under 5,000 pounds gross vehicle weight, greenhouses, playhouses, garden houses, toolhouses, stables, barns, solar energy collectors.

(4) Accessory buildings and structures not greater than 100 square feet in floor area and not more than 10 feet in height measured to the highest point of the building or structure may be located not closer to a side or rear yard than 1/3 of the side yard and rear yard dimensions specified in this chapter. Accessory buildings and structures shall comply with

the front yard setbacks specified herein.

(5) Individual accessory buildings and structures greater than 100 square feet in floor area or greater than 10 feet in height shall meet the following requirements:
[Amended 4-24-2000 by L.L. No. 2-2000]

   (a) Accessory buildings and structures permitted under this subsection shall comply with the front, rear and side yard and building coverage requirements specified herein and shall be limited in height to a maximum of 20 feet measured to the highest point of the building or structure.

   (b) The construction of an accessory building or structure over 2,500 square feet in floor area or greater than 20 feet in height shall require the issuance of a special permit by the Zoning Board of Appeals.

P. Garage sales. Garage sales may be conducted from a property in a residential district, provided that:

(1) Signs advertising the garage sale shall comply with the requirements of § 130-11G(3).

(2) The number of garage sales shall be limited to two per year, each to be limited to a maximum duration of three days.

Q. Animals.[1]

(1) General regulations. The following regulations apply to the maintenance of animals in all districts:

   (a) The maintenance, breeding, raising, purchase and/or sale of all animals and their products, including but not limited to milk and eggs, is considered an accessory use and is permitted, subject to the requirements listed below.

   (b) No venomous snakes or wild animals shall be permitted in residential districts.

   (c) All animals living primarily within the residence and not regulated below are excluded from these regulations.

   (d) All feed shall be housed in rodentproof containers.

   (e) All animals shall be suitably contained to prevent damage to persons and property.

   (f) Regulations for types of animals not regulated in Subsection **Q(2)** below and not excluded in Subsection **Q(1)(c)** above shall be determined by the Planning Board.

(2) Regulations for specific animals.

   (a) Fowl (such as chickens and ducks). The maintenance of four or fewer fowl is permitted as an accessory use in the R-40 District. No unneutered roosters shall be permitted. All fowl shall be kept in an enclosed area at least 75 feet from any lot line.

   (b) Horses, cattle, goats and sheep. The maintenance of these animals is permitted as an accessory use, subject to the conditions listed below:

      [1] Two acres of lot area are required for the first animal. One acre of lot area shall be required for each animal above one. Abutting lots with common beneficial ownership shall be considered a single lot.

      [2] All animals, barns and manure storage areas shall be contained by a fence

located at least 50 feet from each property line and 150 feet from any existing residence other than that on the lot. All fences shall be at least five feet in height and shall be of one of the following types, and fencing shall be determined by the Code Enforcement Officer to be strong enough to contain the fenced animals:

[a]   Chain link.

[b]   Post and rail, with a minimum of two horizontal bars.

[c]   Barbed wire, with a minimum of two horizontal strands.

[3]   Commercial livery stables are not permitted.

(c)   Dogs and cats.

[1]   Dogs or cats less than one year old shall be exempt from these regulations.

[2]   The maintenance of five or less dogs or cats is permitted as an accessory use in any district.

[1]   *Editor's Note: See also Ch. 40, Animals.*

R.   Storage of vehicles or boats. In all residential districts, the storage of not more than one unoccupied recreational vehicle or boat or one unregistered vehicle shall be permitted so long as such vehicle or boat is stored only within a side or rear yard. No stored vehicle or boat shall exceed 35 feet in length.
[Amended 1-22-2001 by Ord. No. 2-2001]

S.   Air-pressure buildings. No air-pressure buildings are permitted in any district.

T.   Municipal uses. Notwithstanding any other provision to the contrary, structures owned or occupied by the Village of Pomona in the performance of its municipal functions shall be exempt from the provisions of this chapter.

U.   Swimming pools. All swimming pools, as defined in this chapter, shall be completely enclosed by a fence or wall with a minimum height of five feet. All such fences must contain a maximum vertical interspace of two inches and must have self-closing and self-latching gates, with latches placed at least four feet above the ground or otherwise made inaccessible to small children. The fencing shall be determined by the Code Enforcement Officer to be strong enough to ensure pool security.

# § 130-17. Performance standards.

A.   Conformance required. No special permit use or nonresidential use shall hereafter be established, altered, moved or expanded unless it complies with the performance standards set forth in this section. Continued conformance with such standards shall be a requirement for the continuance of any certificate of occupancy. Central utility systems serving three or more dwelling units, including but not limited to systems providing heat, water, air conditioning, sewage treatment, garbage collection and electrical power, shall be deemed to be nonresidential uses for the purposes of this section.

B.   Purposes. Consistent with the general purposes of this chapter, performance standards shall set specific controls on potentially objectionable external aspects of nonresidential uses so as to:

(1)   Reduce to a reasonable minimum the dissemination of smoke, gas, dust, odor or other

atmospheric pollutant outside the building in which the use is conducted.

(2)  Control noise perceptible beyond the boundaries of the site of the use.

(3)  Prevent the discharge of untreated or insufficiently treated wastes into any watercourse.

(4)  Prevent the dissemination of vibration, heat or interference beyond the immediate site on which the use is located.

(5)  Prevent physical hazard by reason of fire, explosion, radiation or any similar cause.

(6)  Regulate and control the generation and flow of vehicular traffic so as to prevent hazardous conditions, traffic congestion and excessive noise in the streets.

C.   Standards for noise. No land use shall be permitted which will produce a volume of noise which would violate the provisions of any law regulating noise in the Village of Pomona.[1]

[1]    *Editor's Note: See Ch. 96, Noise.*

D.   Standards for vibration.

(1)  Method of measurement. For the purpose of measuring vibration, a two-component measuring system approved by the Planning Board shall be employed.

(2)  Maximum permitted steady-state and impact vibration displacement. No activity shall cause or create a steady-state or impact vibration on any lot line with a vibration displacement by frequency bands in excess of that indicated in the following table:

|  | **Vibration Displacement** | |
|  | **(inches)** | |
| **Frequency** | | |
| **(cycles per second)** | **Steady-State** | **Impact** |
| Under 10 | .0005 | .0010 |
| 10 - 19 | .0004 | .0008 |
| 20 - 29 | .0003 | .0006 |
| 30 - 39 | .0002 | .0004 |
| 40 or more | .0001 | .0002 |

E.   Standards for smoke, dust and other atmospheric pollutants.

(1)  General control. The emission of smoke and other particulate matter shall not be permitted, regardless of quantity, if it will be in any way detrimental to the public health, safety, welfare or comfort or a source of damage to property.

(2)  Method of measurement of smoke. For the purpose of grading the density of smoke, the Ringelmann Smoke Chart shall be used to determine the total smoke units emitted. A reading shall be taken every minute for an hour, or if less than an hour, until the total smoke units emitted exceed the number allowed by these regulations. Each reading shall be multiplied by the number of minutes during which it was observed and the products added.

(3)  Maximum permitted emission of smoke. There shall be no measurable emission of smoke, gas or other atmospheric pollutant. The emission of one smoke unit per hour and smoke with discernible density of No. 1 on the Ringelmann Smoke Chart shall be prohibited.

(4)  Maximum permitted emission of dust.

  (a)  The emission of dust related to combustion for indirect heating from any source shall not exceed 0.30 pound of dust per thousand pounds of flue gas adjusted to 50% excess air for combustion.

  (b)  There shall be no measurable emission of dust or other particulate matter not related to combustion for indirect heating.

  (c)  All properties shall be suitably improved and maintained with appropriate landscaping and paving or other type of improvement so that there will be no measurable windblown dust or other similar types of air pollution created.

F.  Standards for odorous matter. No land use shall be permitted which emits any discernible odor outside the building in which the use is conducted.

G.  Standards for toxic or noxious matter. No use shall be permitted which will cause any dissemination whatsoever of toxic or noxious matter outside the building in which the use is conducted.

H.  Standards for radiation and electromagnetic interference.

  (1)  Radiation. The handling, storage or disposal of radioactive materials or waste by-products, whether or not licensed by the Atomic Energy Commission, shall be conducted only in accordance with the standards established in Title 10, Chapter **1**, Part 20, Code of Federal Regulations, Standards for Protection Against Radiation, as amended, and in accordance with any other applicable laws or regulations.

  (2)  Electromagnetic interference. No operation shall be permitted which produces any perceptible electromagnetic interference with normal radio or television reception in any area within or without the Village.

I.  Standards for fire, explosive hazard and heat.

  (1)  Fire and explosive hazard. No storage or manufacture of explosives, or solid materials or solid products which burn actively or which have a low-ignition temperature, a high rate of burning or create great heat under ordinary temperature conditions shall be permitted.

  (2)  Heat. There shall be no emission of heat which would cause a temperature increase in excess of 1° F. along any adjoining lot line, whether such change be in the air, in the ground or in any watercourse or water body.

J.  Standards for liquid or solid wastes. The discharge of any or all wastes shall be permitted only if in complete accordance with all standards, laws and regulations of the Rockland County Health Department, New York State Department of Environmental Conservation or any other regulatory agency having jurisdiction. Facilities for the storage of solid waste shall be so located and designed as to be screened from the street or from any adjoining property and as to discourage the breeding of rodents or insects.

K.  Standards for vehicular traffic. No home occupation or special permit use shall be permitted where it is determined by the Planning Board that the type and number of vehicle trips it is estimated to generate would be expected to produce unusual traffic hazards or congestion or cause or induce emissions which may be expected to interfere with the maintenance of air quality standards established by the United States Environmental Protection Administration, the New York State Department of Environmental Conservation or other regulatory agency having jurisdiction due to the design or capacity of the highway system, the relationship of such proposed use to surrounding or nearby uses or other factors affecting air pollution arising from

mobile source activity.

L.   Procedure.

(1)  In the case of any application for the establishment of a use subject to the performance standards, the Planning Board may require the applicant, at his own expense, to provide such evidence as it deems necessary to determine whether the proposed use will conform to said standards.

(2)  If the Planning Board deems it necessary, expert advice may be obtained, with the cost of such advice paid for in advance by the applicant as a condition of further consideration of his application. The report of any expert consultants shall be promptly furnished to the applicant.

(3)  During the course of subdivision or special permit review, the Planning Board will determine if the applicant's proposal will conform to the performance standards.

# § 130-18. Construction regulations.

A.   New construction is permitted only on a lot which fronts on a publicly maintained road or on a road shown on a map filed at the Rockland County Clerk's office.

B.   All buildings must conform to and be erected in compliance with the New York State Uniform Fire Prevention and Building Code.

C.   Any alteration or improvement of a site, including the grading of the land and the location of facilities, shall not adversely affect adjacent properties.

D.   No person, firm or corporation shall strip, excavate or otherwise remove topsoil for sale or for any use other than on the premises from which the same shall be taken, except in connection with the construction or alteration of a building on such premises or the grading incidental thereto, except by approval of the Zoning Board of Appeals. At least six inches of topsoil must exist or be placed on land cleared for construction.

E.   No cut trees, timber, stumps, debris, rocks, stones, junk, rubbish or other waste materials of any kind shall be buried in any land or left deposited on any lot or street. If a building permit has been previously issued for premises, no certificate of occupancy shall be issued unless the conditions described above have been remedied nor shall any building permit or certificate of occupancy in the same subdivision be issued unless such conditions have been remedied on the lot or lots in question.
[Amended 4-22-1996 by L.L. No. 2-1996]

F.   Rocks unearthed during construction shall be removed from the lot unless a specific request from the home buyer, in writing, is presented to the Code Enforcement Officer.

G.   No live tree with a circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side shall be removed from any land except where necessary for construction thereon and with the approval of the Code Enforcement Officer. Trees to be preserved as hereinabove set forth shall be fenced outside their drip lines and shall have no grade change or earthwork performed within said drip lines without written approval of the Code Enforcement Officer. Removal of each tree shall be construed as a separate offense. This section shall not apply to a residential lot improved by a residential structure which lot may not, under the bulk provisions of this Zoning Law, be further subdivided.
[Amended 10-24-1988 by L.L. No. 6-1988; 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

H.  No person shall conduct or cause to be conducted any land operations to clear, fill or grade any property without securing a building permit (hereinafter referred to in this section as "permit") from the Building Inspector.
[Added 6-23-1997 by L.L. No. 8-1997; 11-13-2000 by L.L. No. 9-2000]

(1)  The following information or exhibits are required in order to secure a permit:

(a)  Engineering drawings showing the tax lot upon which the activity will be conducted.

(b)  The names and addresses and the section, block and lot numbers of all contiguous property owners, and the names and addresses and section, block and lot numbers of all property owners located within 500 feet of the proposed site.

(c)  A plan showing all existing and proposed contour lines, amounts of fill to be placed or displaced, location of trees with a circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side and road access to the site.
[Amended 11-25-2003 by L.L. No. 9-2003]

(d)  An erosion control plan and a plan for stabilizing the fill.

(e)  Preliminary copies of any contracts to perform such clearing, filling and grading, which contract shall state that it is subject to this chapter of the Code, which shall be attached to and become a part of such contract.

(f)  Documentation regarding permit status with the New York State Department of Environmental Conservation prior to the issuance of a permit. Any New York State Department of Environmental Conservation permit required must be in effect prior to the Village issuing a permit.

(g)  Proof of liability insurance adequate to cover the intended work pursuant to the terms of the permit. The Village shall be named as an additional insured on the applicant's policy. The applicant shall by a separate instrument agree to indemnify and hold harmless the Village from any claims arising out of the intended activity.

(h)  Completion date and any other information which the Building Inspector deems reasonable in reviewing the application.

(2)  Operations shall be conducted only during daylight hours, but not earlier than 7:00 a.m.

(3)  The Building Inspector may refer such application to the Village Engineer and other Village agencies for their review and recommendation.

(4)  Clearing, filling and grading shall be done in such manner as not to result in an increase of surface water runoff onto any other properties and shall not result in any conditions which increase erosion or result in any unstable conditions upon the site or adjacent properties or wetlands.

(5)  The Building Inspector may contract appropriate surveillance of the site on a twenty-four-hour, seven-days-per-week basis until the activity is completed. The applicant shall be required, as a condition of the permit, to sign the permit authorizing the Village, its employees or agents to enter onto the applicant's property and to conduct the appropriate surveillance. Any and all costs for this service will be estimated by the Building Inspector prior to the issuance of a permit, and the applicant will then be required to post a certified check to cover such costs.

(6)  The Building Inspector may impose any other reasonable conditions on the permit, such

as screening, access controls, dust controls, site security, etc., which the Building Inspector believes are necessary in order to adequately maintain the site.

(7) A permit to clear, fill or grade property shall not be required for the planting of landscaping, grading low areas with a total of 15 or fewer cubic yards of fill material, correcting hazards representing an imminent threat to life or property, removal of dead trees, harvesting of firewood not to exceed four live trees per year 25 inches in circumference or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side, or for land development pursuant to but not prior to the issuance of a building permit, an approved and filed subdivision plat or an approved site plan. A protected tree, as defined in this chapter, shall be preserved unless such tree endangers the health or safety of any person or interferes with the use or construction of any structure on the lot or is a dead tree as determined by a landscape architect or similar professional. An application for a building permit to remove a protected tree shall include a revegetation or replacement plan for replacement of the tree to be removed, Replacement may be proposed in another location on the same lot and is not required to be of the same species or size of the tree to be removed.
[Amended 11-25-2003 by L.L. No. 9-2003; 3-28-2005 by L.L. No. 2-2005]

(8) The applicant shall be required to post a letter of credit issued by a bank having a branch in Rockland County, New York, money or other security acceptable to the Village, in in amount to be determined by the Building Inspector and in a form satisfactory to the Village Attorney, to be posted with the Village Clerk to guarantee the satisfactory restoration of any state, county or Village roads or other public property which might be damaged as a result of the activities of the applicant in clearing, filling and grading pursuant to the terms of this section. In the event that the applicant fails or refuses to make the necessary repairs, the Village Board shall forfeit the letter of credit or money security deposit in order to underwrite the expense of making such repairs.

(9) All expenses incurred by the Village in connection with making the necessary repair, including but not limited to any administrative and legal costs relating thereto, either not covered by the performance security or in excess of the performance security, shall be assessed against the land on which said clearing, filling and grading has occurred and shall be levied and collected in the same manner as provided in Article 5 of the Village Law for the levy and collection of real property taxes.

I. No building permit shall be issued for construction of any residence until a plan for installation of street trees in size, species and number as required by Village specifications has been submitted and approved by the Building Inspector or Village Engineer. A cash bond or letter of credit in an amount to be determined by the cost of the number of trees to be installed shall be posted with the Village prior to issuance of the building permit. Said trees shall be installed within the right-of-way not less than six nor more than 10 feet back from the pavement prior to issuance of a certificate of occupancy for said construction.
[Added 2-23-2004 by L.L. No. 1-2004; amended 8-14-2006 by L.L. No. 3-2006]

# Article VII. Parking Requirements

## § 130-19. Sufficient spaces required.

All structures and uses shall be provided with a sufficient number of off-street parking and loading spaces to meet the needs of employees, residents, visitors, clients, patrons and other persons at such structures or uses, but not less than the minimum requirements of this chapter. No certificate of occupancy shall be issued for any structure or use, whether for a new structure or for a change of use of an existing structure, until such off-street parking and loading spaces have been established

in accordance with the requirements of this chapter.

## § 130-20. Location.

A.  Required off-street parking spaces shall be provided on the same lot with the structure or use they serve and may be located within a building or in a side or a rear yard, except that upon a determination made by the building inspector and the Village Engineer pursuant to § **118-25B** of the Code that parking spaces are required in the front yard of such lot.
[Amended 10-27-1997 by L.L. No. 12-1997]

B.  Not more than one vehicle having or eligible for commercial registration under 5,000 pounds gross vehicle weight may be parked on a lot. No vehicle having or eligible for commercial registration over 5,000 pounds gross vehicle weight may be parked overnight on any public street in the Village of Pomona or kept on a lot therein. Campers, motor homes and trailers may not be parked overnight on any street in the Village of Pomona.[1]
[Amended 9-11-1989 by L.L. No. 4-1989]

[1]      *Editor's Note: See also Ch. **124**, Vehicles and Traffic.*

## § 130-21. Driveways.

For reasons of traffic and pedestrian safety, both on- and off-street, as well as to provide for possible future road widening or other improvements, all new driveways and sidewalk crossings entering onto any street shall comply with all requirements of these regulations and shall be subject to permit approval by the Planning Board, Rockland County Highway Department or New York State Department of Transportation for access onto Village, county or state roads, respectively. No more than two driveway accesses shall be allowed for any residence.

A.  Driveway width. Unobstructed access to and from a street shall be provided for all parking spaces. Such access shall consist of one or two twelve-foot-wide lanes.

B.  Driveway gradients. The maximum gradient for new access driveways to single-family dwellings is 12 1/2%, except that the Planning Board may approve a driveway gradient in excess of 12 1/2% but not more than 15%, provided that at least two parking spaces are provided on the lot immediately adjacent to the public right-of-way. At no time shall the 10 feet of driveway from the edge of pavement into the property exceed a gradient of 4%. This 10 feet of driveway from the edge of pavement into the property shall not be included in the driveway gradient calculation.
[Amended 3-22-2004 by L.L. No. 2-2004]

# Article VIII. Administration and Enforcement

[Amended 3-2-1998 by L.L. No. 1-1998; 6-26-2000 by L.L. No. 4-2000; 9-25-2000 by L.L. No. 7-2000; 11-13-2000 by L.L. No. 8-2000; 11-22-2004 by L.L. No. 7-2004; 3-28-2005 by L.L. No. 2-2005; 7-23-2007 by L.L. No. 7-2007]

## § 130-22. Enforcement officials; powers and duties of Building Inspector/Code Enforcement Officer.

A.  This chapter shall be enforced by a Building Inspector and one or more Assistant Building Inspectors, Code Enforcement Officers or Fire Inspectors as the Mayor and Board of Trustees may appoint and deem necessary, hereinafter collectively referred to as the "Building

Inspector." It shall be the duty of the Building Inspector and he shall be empowered to:

(1) Administer and enforce all of the provisions of laws, rules and regulations that apply to the construction, alteration, repair, removal and demolition of buildings and structures, the installation and use of materials and equipment therein, and the location, use, occupancy and maintenance thereof, and the use and occupancy of land.

(2) Inspect any building, structure or land to determine whether any violation of this chapter, the New York State Fire Prevention and Building Code, including Section 1203 et seq. of such code, or any such other laws, rules and regulations as the Building Inspector shall be chargeable with inspection and/or enforcement of, has been committed or exist, whether or not such building, structure or land is occupied and whether or not a certificate of occupancy has been issued.

(3) Issue permits and certificates in conformity with the laws, rules and regulations of the State of New York and of this chapter and refuse to issue same in the event of noncompliance, which reason for such refusal shall be endorsed on the application and notice thereof given to the applicant.

(4) Keep the Board of Trustees advised of all matters pertaining to the enforcement of this Chapter and the aforesaid laws, rules and regulations.

(5) Make and keep all records appropriate to the office including the issuance and denial of building permits, certificates of occupancy and/or uses, of formal complaints of violation and the action taken thereon, and keep a record of all permits and certificates of occupancy issued, which shall be available for public inspection pursuant to the Freedom of Information Law.

(6) Issue and post notices of violation, stop-work orders, orders directing the remedying of any condition or omission that is or creates a violation of this or other applicable law, rule or regulation, and revoke building permits, certificates of occupancy and certificates of use.

(7) Make such inspections and reports as shall be appropriate in carrying out his/her duties and responsibilities.

(8) Have the power, right and authority to issue appearance tickets, as the same are defined in Article 150 of the Criminal Procedure Law of the State of New York for the violation of any provision of this chapter, the New York State Fire Prevention and Building Code or any order issued by the Building Inspector.

B. The New York State Fire Prevention and Building Code, including Section 1203 et seq. of said Code is hereby adopted and recognized as the official Building Construction Code of the Village for purposes set forth therein and as it may be amended from time to time. The provisions of said Code are incorporated by reference herein as if fully set forth in the Village Code. Violations of said Code are punishable in the same manner as violations of this chapter of the Village Code.

C. No building permit, certificate of occupancy or certificate of use shall be issued unless the proposed construction or use is in conformance with all the provisions of this chapter and other applicable laws.

D. Any person who shall violate any order of the Building Inspector shall be deemed to have violated this chapter.

E. A building permit is required for:

(1) The construction, reconstruction, alteration, moving, demolition, structural alteration or

change in the use of a building or structure or any part thereof or change in the nature, use or occupancy of a building or structure.

(2)  Any change in the bulk of a building, structure or nonbuilding use, but not including ordinary repairs which are not structural in nature.

F.  Application procedure:

(1)  Application for a building permit shall be made on forms provided by the Building Inspector and shall contain, at a minimum, the following information and be accompanied by the following documents and such other information as shall be required by the Building Inspector:

(a)  A description of the land on which the proposed work is to be done, including tax lot number and street address;

(b)  A statement of the use or occupancy of all parts of the land and of the building and/or structure;

(c)  The valuation of the proposed work;

(d)  The full name and address of the owner and of the applicant, including the names and addresses of each officer and director of any corporation, limited liability corporation or partnership;

(e)  A description of the proposed work;

(f)  Each application for a building permit shall be accompanied by two copies of the plans and specifications, including plot plans, drawn to scale, showing the location and size of all proposed new construction and all existing structures on the site, the nature and character of the work to be performed and the materials used and distance from lot lines and, where appropriate, details of structural, mechanical and electrical work, including computations, stress diagrams and other technical data. Such plans and specifications shall include, on the plot plan, the proposed location of all underground facilities, including gas and electric service, sewer lines, drainage system (including routing of drainage from roof leaders and footing drains), waterlines, sprinkler lines, telephone lines, etc. The building plans shall include plans for mechanical services including gas, electric, water, sewer, heating and air conditioning and generator, if appropriate; and

(g)  Plans and specifications shall bear the signature of the person responsible for the design and drawings, and, if construction is over $10,000 in value, the architect's or engineer's signature, seal and New York State license number.

(2)  Application shall be made by the owner or lessee of the subject property or agent of either, or by the architect, engineer or builder employed in connection with the proposed work. Where the application is made by a person other than the owner, it shall be accompanied by an affidavit of the owner that the proposed work is authorized by the owner and that the applicant is authorized to make such application.

(3)  Any amendment to the application or to the plans and specifications accompanying the application must be filed and approved by the Building Inspector prior to commencement of the amended work, and such amendments shall comply with the provisions of this Chapter and the New York State Fire Prevention and Building Code. The refusal of an amendment by the Building Inspector shall be in writing, setting forth the reason therefor.

(4)  Every application for a building permit shall be accompanied by payment of a fee in

accordance with the Village Fee Schedule.

(5)　The Building Inspector shall examine or cause to be examined all applications for building permits and the plans, specifications and documents filed therewith. The Building Inspector shall approve or disapprove the application within 30 days from the receipt of the completed application accompanied by all appropriate documents and fees.

(6)　If the application is approved, the Building Inspector shall issue a permit upon the prescribed form and shall affix his/her signature or cause his/her signature to be affixed thereto and mark the application, plans and specifications "Approved." One set of such approved plans and specifications shall be retained in the files of the Building Inspector and the other set shall be sent to the applicant, together with the building permit, and shall be kept on the building site and open to inspection at all reasonable times.

(7)　If the application is disapproved by the Building Inspector, the application, plans and specifications shall be marked "Disapproved" with the reason therefor. One copy shall be retained in the files of the Building Inspector and the other set shall be returned to the applicant.

G.　Expiration of permit. Every building permit shall expire at the end of one year from the date issued. If construction has not been completed within the one-year period, the Building Inspector may, in his discretion and for good cause shown, extend the permit for a period not to exceed one year, upon payment of one half the original permit fee. Failure to complete the work within the time prescribed shall require that a new building permit application be filed together with a new fee and a new permit issued before any work may commence or continue.

H.　Insurance. In the event any application for a building permit provides for construction or other activity involving operation of equipment, personnel or placement of materials which may hazard a public street, way, easement or public property, prior to the issuance of such building permit, the applicant shall present evidence of liability insurance, naming the Village as additional insured, in the amount of $1,000,000 per person and $3,000,000 per occurrence, in a form acceptable to the Village Attorney. Where, after a building permit has been issued without such insurance, it shall appear that such hazards are present, the Building Inspector may, on due notice, require such insurance and may suspend activity at the property pending receipt of the required liability policy.

I.　Revocation of building permit. The Building Inspector may revoke a building permit in any one of the following circumstances:

(1)　There has been a false statement or misrepresentation of material fact in the application, plans, specifications or other accompanying documents upon which the building permit was based;

(2)　The building permit was issued in error and should not have been issued in accordance with applicable laws;

(3)　The holder of the permit has failed to meet the requirements of an approved site development plan, subdivision plat, special permit, conditional use permit, variance, zone change or other permit or approval;

(4)　The work being performed under the permit is not in accordance with the approved application, plans, specifications or permit;

(5)　The holder of the permit has failed or refused to comply with a stop-work order issued by the Building Inspector.

J.　Stop-work orders. Whenever the Building Inspector shall determine that work on any building

or structure is being or has been conducted in violation of any provision of this chapter, the New York State Fire Prevention and Building Code, state, federal, county or Village laws, rules or regulations or has failed to meet or violates any requirement of an approved site plan or subdivision plat, including, but not limited to, the required drainage, grade or elevation plans, sewer or septic plans, approved road profile plans and such other plans or specifications upon which a building permit was issued, or that the work is being conducted in a dangerous or unsafe manner, then the Building Inspector shall notify the owner of the property or the owner's agent, and the person performing the work, to suspend and halt work. Such direction by the Building Inspector of a stop-work order shall be in writing and delivered to the owner or the owner's agent and the person performing the work and shall be affixed to any part of the structure on which the work is being performed. Such stop-work order shall state the reasons therefor and the conditions under which the work may be resumed. Should work continue in violation of the stop-work order, the Building Inspector may, without further notice, revoke the building permit and, if there is a certificate of occupancy or use, revoke the same.

K.  Certificate of occupancy and/or use. Except for buildings constructed prior to February 5, 1930, no building or structure or portion thereof shall be used or occupied in whole or in part unless or until a certificate of occupancy or certificate of use, as appropriate, shall have been issued by the Building Inspector of the Village or Town, as the case may be, and only in conformity with said certificate. No change shall be made in the use or occupancy of a building or structure nor change in the use of land unless a certificate of occupancy authorizing the change of use has been issued. Continued use or occupancy of the building, structure and land shall be in conformance with the issued certificate of occupancy or use.

(1)  The owner of the property or his/her agent shall make application for a certificate of occupancy or use, as the case may be. Accompanying the application and before issuance of the certificate, there shall be filed with the Building Inspector the following:

(a)  A complete set of as-built drawings showing the as-built locations of all underground facilities and interior mechanical services. These drawings shall be signed and sealed by a New York State licensed architect or engineer;

(b)  An affidavit of the owner or the licensed architect or engineer who supervised construction of the work or of the superintendent of construction who supervised the work that he/she has reviewed the approved plans for the building or structure for which the certificate of occupancy is sought and that the building or structure has been constructed in accordance with the approved plans and that the building or structure complies with this chapter, the New York State Fire Prevention and Building Code and all laws governing building construction, including any approved site plan or subdivision plat, and the rules and regulations pertaining thereto.

(2)  Before issuing a certificate of occupancy, the Building Inspector shall examine or cause to be examined all buildings, structures and sites for which an application has been filed for a building permit to construct, enlarge, alter, repair, remove, demolish or change the use or occupancy and he may conduct such inspections as he deems appropriate from time to time during and upon completion of the work for which a building permit has been issued. There shall be maintained by the Building Inspector a record of all such examinations and inspections, together with a record of findings of approvals or disapprovals of work performed. Every certificate of occupancy for a use for which a special permit or variance has been granted shall contain a detailed statement of such special permit or variance and of the conditions to which the same is subject.

(3)  Every application for a certificate of occupancy shall be accompanied by payment of a fee in accordance with the Village fee schedule.

(4)  If the Building Inspector determines that the work performed was made in accordance with the approved building permit, plans, specifications, laws, rules and regulations, and that all

fees and charges relating to the property have been paid, he/she shall issue a certificate of occupancy or use, as the case may be. If the Building Inspector disapproves the work, he/she shall deny the certificate of occupancy or use and set forth the reasons therefor in writing.

L.  Revocation of certificate of occupancy or use. A certificate of occupancy or use shall be deemed to authorize, and is required for, both initial and continued occupancy and use of a building or structure and land to which it applies and shall continue in effect so long as such building, structure or land is used for the use authorized in the certificate of occupancy or use. The Building Inspector may revoke said certificate of occupancy or use if he/she determines that the use or occupancy violates any of the reasons for which the certificate was issued.

M.  Deposit of escrow.

    (1)  In the event of unusual and extraordinary circumstances, such as weather conditions, which make certain site improvements such as paving of driveways or planting of vegetation prior to the issuance of a certificate of occupancy impossible or impractical, the Building Inspector may require that an escrow be posted to insure the completion of all such improvements. In such case, an amount equal to two times the estimated cost of completion of all items to be completed shall be deposited by the applicant with the Village and a date for completion of all items shall be determined. Prior to, and as a condition for the issuance of a certificate of occupancy hereunder, the homeowner and the applicant shall agree in writing to such issuance and to the timetable established by the Building Inspector.

    (2)  In the event that the site work for which the escrow has been posted is not complete to the satisfaction of the Building Inspector or the Village Engineer within the time specified as set forth above, the Village shall have the right, but not the obligation, to use the escrow for completion of such work. In the event the cost of completion of said work exceeds the escrow deposit held by the Village, the owner of the property shall reimburse the Village for all costs plus administration costs incurred by the Village for the completion of such work.

# § 130-23. Right of entry.

The Building Inspector or his/her authorized agent, upon the showing of proper credentials and in the discharge of his/her duties, may enter upon any land or building or structure at any reasonable hour, subject to all applicable laws. Where permission to enter is not granted, the Building Inspector is authorized to apply to a court of competent jurisdiction for a search warrant to gain such entry.

# § 130-24. Penalties for offenses.

A.  Any person, partnership, corporation, limited liability company, limited liability partnership or other entity who shall violate any provision of this chapter, the New York State Fire Prevention and Building Code, or any rules or regulations pertaining thereto or who shall build or alter any building or structure or use any land in violation of any permit or plan issued pursuant to this chapter or who shall assist therein shall be liable to a fine not to exceed $5,000 and/or imprisonment not to exceed 15 days, or by both such fine and imprisonment. Each day's continued violation shall constitute a separate and additional violation.

B.  In addition to the foregoing, the Village shall have such other remedies for any violation or threatened violation as are now or may hereinafter be provided by law or in equity.

# § 130-25. Appeals.

Whenever the Building Inspector shall approve or disapprove, act or otherwise perform any of his/her duties and shall make a determination thereon, such determination shall be reviewable by appeal to the Board of Appeals. Such appeal shall be taken not more than 30 days after the filing of the Building Inspector's determination in the office of the Building Inspector.

# Article IX. Zoning Board of Appeals

## § 130-26. Appointment.

The Board of Trustees shall appoint a Board of Appeals pursuant to § 7-712 of the Village Law of the State of New York,[1]

[1]    *Editor's Note: See also Ch. **25**, Planning Board and Zoning Board of Appeals.*

## § 130-27. Meetings and records.

Meetings shall be held at the call of the Chairman and at such other times as the Board may determine. The Board shall adopt rules and regulations governing its procedures. The presence of three members of the Board shall be necessary for a quorum. The concurring vote of at least three members shall be necessary to effect any variation or variance in this chapter, to reverse any order, requirement, decision or determination appealed from or to decide in favor of the applicant any matter before the Board. The Board shall keep minutes of its proceedings, showing the vote of each member on every question, or if any member is absent or fails to vote, indicating that fact, and shall also keep records of its examinations and other official actions. Every rule, determination, regulation, amendment or appeal thereof and every order, requirement and decision of the Board shall promptly be filed in the office of the Board and in the office of the Village Clerk.

## § 130-28. Powers and duties.

A.  General. The Board of Appeals shall have all of the powers and duties prescribed by the Village Law and by this chapter, which powers and duties are summarized and more particularly specified in the following, provided that none of the following sections shall be deemed to limit any of the powers of the Board of Appeals that are conferred by the Village Law. In passing upon any matter before it, the Board shall take into specific consideration the goals of this chapter.

B.  Rules and regulations. The Board of Appeals may adopt such rules and regulations as are necessary or proper to the performance of its powers and duties hereunder and may amend or repeal the same.

C.  Nonconforming uses. The Board of Appeals is authorized to extend the permitted period for cessation of a nonconforming use in accordance with the requirements of § **130-15B(5)** of this chapter; to review and approve, approve with modifications or disapprove a plan for reconstruction of a nonconforming building in accordance with the requirements of § **130-15D(2)** of this chapter; to permit the change of a nonconforming use to another nonconforming use in accordance with § **130-15E** of this chapter; and to review and approve, approve with modifications or disapprove a plan for the improvement of a nonconforming use in accordance with § **130-15F** of this chapter.

D.  Variances. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on referral of an applicant to the Board by an approving agency acting pursuant to this chapter, the Board of Appeals is authorized to vary or modify the strict letter of this chapter where its literal interpretation would

cause practical difficulties or unnecessary hardships, as defined in this subsection, in such manner as to observe the spirit of the chapter, secure public safety and welfare and do substantial justice.

(1)  Use variances. Where, because of unnecessary hardship relating to the land, an applicant desires to utilize land for a use not allowed in the district in which the land is located, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make each of the following findings:

(a)  After considering all permitted uses, that the property in question cannot yield a reasonable return if used only for a purpose allowed in that district.

(b)  That the plight of the owner is due to unique circumstances affecting the property which is the subject of the application and not to general conditions in the neighborhood.

(c)  That the use to be authorized by the variance will not alter the essential character of the locality.

(d)  That the use to be authorized by the variance is in reasonable harmony with the intent of this chapter.

(e)  That the unnecessary hardship claimed as a ground for the variance has not been created by the owner or by a predecessor in title. Mere purchase of the land subject to the restrictions sought to be varied shall not itself constitute a self-created hardship.

(f)  That within the intent and purposes of this chapter the variance, if granted, is the minimum variance necessary to afford relief. To this end, the Board may permit a lesser variance than that applied for.

(2)  Area variances. Where, because of practical difficulty, an applicant requests a variance of the lot area or other dimensional requirements of this chapter, the Board may grant a variance in the application of the provisions of this chapter in the specific case, provided that as a condition to the grant of any such variance, the Board shall make a specific finding that the application of the requirements of this chapter to the land in question creates such practical difficulty. In making this determination, the Board shall make each and every one of the following findings:

(a)  That the variation is not substantial in relation to the requirement.

(b)  That the effect of any increased population density which may thus be produced upon available services and facilities is not significant.

(c)  That a substantial change in the character of the neighborhood or a substantial detriment to adjoining properties will not be created.

(d)  That the difficulty cannot be alleviated by some method feasible for the applicant to pursue other than a variance.

(e)  That, in view of the manner in which the difficulty arose and considering all of the above factors, the interests of justice will be served by allowing the variance.

(f)  That the variation would not cause adverse aesthetic, environmental or ecological impacts on the property or on surrounding areas.

E.   Special use permits.

[Added 2-28-1994 by L.L. No. 1-1994[1]]

(1)    General provisions. Special permit uses are listed in § § **130-9C** and **130-10D** of the Pomona Village Code. Special permit uses for which conformance with additional standards is required by this chapter are deemed to be permitted uses in their respective districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of this chapter. All such uses are declared to possess such unique and special characteristics of such unique and special forms that each specific permit shall be considered as an individual case.

(2)    Approving agency. The Zoning Board of Appeals shall be the approving agency for all special use permits, except those designated by §§ **130-9C** and **130-10D** and **E** to be approved by the Board of Trustees.
[Amended 5-18-1998 by L.L. No. 2-1998]

(3)    Informal application. Applicants are encouraged to submit a preliminary, informal application and to discuss it with the appropriate permitting Board prior to formal submission of a complete and detailed special permit application. The informal application should include a schematic plan showing the general layout of the property and the proposed use. The schematic plan should be submitted to the appropriate Board not less than three weeks prior to the date of the Board meeting at which it is to be considered. At that meeting, the Board shall review the schematic plan and may schedule a field inspection of the site. The Board shall notify the applicant of any changes recommended prior to the preparation of a complete site plan.

(4)    Formal application.

     (a)    Submission. Formal application for a special permit shall be made in 12 copies to the Zoning Board or Board of Trustees, as the case may be. The formal application shall include the following items:

         [1]    A completed special permit application form, including the name and address of the person, firm or corporation for whom the use is intended and the name and address of the property owner. If the applicant or owner is a firm or corporation, the full name and residence of the firm or principal officers of the corporation shall be shown;

         [2]    A written statement describing the nature of the proposed use and how it will serve to implement the purposes of this chapter and the period of time for which the permit is requested;

         [3]    Four copies of a site plan with the information required by § 118-32 of this chapter; and (41 Long environmental assessment form.

         [4]    Long environmental assessment form.

     (b)    Referrals.

         [1]    The permitting Board shall submit copies of the special permit application to the Code Enforcement Officer and Village Engineer and to other Village agencies or officials as it deems appropriate, all of whom shall inspect the premises and report their findings to the Board, in writing, within 30 days of the date of forwarding. The Board may submit copies to the following agencies for information, review and comment regarding facilities under their jurisdiction and to any other county, state or federal agency with jurisdiction: the Rockland County Drainage Agency and the New York State Department of Transportation.

[2]   The permitting Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within 500 feet of the boundary of any city, Village or town, or from the boundary of any existing or proposed county or state park or other recreation area, or from the right-of-way of any existing or proposed county or state parkway, thruway, expressway, road or highway or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit affecting such use or property within a distance of 500 feet. If the Rockland County Planning Board fails to report within such period of 30 days or such longer period as has been agreed upon by it and the permitting Board, the permitting Board may act without such report. If the Rockland County Planning Board disapproves the proposal, or recommends modification thereof, the permitting Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Zoning Board or Board of Trustees, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

(c)   Board action.

[1]   The Zoning Board or Board of Trustees, as the case may be, shall hold a public hearing within 62 days after the receipt of a completed special permit application by the clerk of the appropriate permitting Board. Such hearing shall be advertised at least once in the official Village newspaper at least five days before such hearing; be noticed, by certified mail, return receipt requested, to each owner of the property within 500 feet of the perimeter of the subject property as indicated on the application for special permit approval and at least 10 days prior to the public hearing; and be advertised by the installation of four posters, furnished by the clerk to the appropriate permitting Board, on the four closest public roads in visible locations surrounding the proposed special permit at least 10 days prior to the public hearing. The Zoning Board or Board of Trustees shall, thereafter, approve, with or without modification, or disapprove such special permit application within 62 days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Board. Within five days of the decision of the Board, such decision shall be filed in the office of the Village Clerk, with a copy of the decision mailed to the applicant by regular mail. Notwithstanding the foregoing provisions, the time in which the Board must take action on the special permit application may be extended by mutual consent of the applicant and the permitting Board.

[2]   In approving applications for special use permits, the Zoning Board of Appeals or Board of Trustees may impose such reasonable conditions and restrictions as are directly related to and incidental to the proposed special use permit. Upon granting of said special use permit, any such conditions must be met in connection with the issuance of any building permits by the Code Enforcement Officer.

[3]   The Zoning Board of Appeals or Board of Trustees may, however, when reasonable and proper, waive any preestablished requirements of approval of a special use permit where such requirements are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to the

particular special permit use.

    [4]   Where a proposed special use permit contains one or more features which do not comply with the Zoning Code, application may be made directly to the Zoning Board of Appeals for a variance without the necessity of a decision or determination of the Code Enforcement Officer. Said application may be taken up simultaneously with the special permit application.

(5)   Site plan application. Site plan approval under § 118-32 of this chapter is required for all special permit uses. Insofar as practicable, special use permit and site plan approval procedures shall run concurrently.

(6)   General standards. All special permit uses shall comply with the following standards, in addition to the site plan standards of this chapter. The permitting Board shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to ensure initial and continual conformance to all applicable standards and requirements.

    (a)   The location and size of the special permit use, nature and intensity of the operations involved in it or conducted in connection with it, the size of the site in relation to it and the location of the site with respect to streets giving access to it are such that it will be in harmony with the appropriate and orderly development of the area in which it is located.

    (b)   The location, nature and height of buildings, walls and fences and the nature and extent of existing or proposed plantings on the site are such that the special permit use will not hinder or discourage the appropriate development and use of adjacent land and buildings.

    (c)   Operations in connection with any special permit use will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted uses not requiring a special permit.

    (d)   Parking and loading areas will be of adequate size for the particular special permit use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum convenience and safety.

    (e)   The special permit use will not result in diminution of the value of property in the neighborhood or a change in the character of the neighborhood in which the use would be situated.

(7)   Expiration, temporary permits, inspection and change.

    (a)   A special permit shall be deemed to authorize only the particular use or uses specified in the permit and only for the original applicant and shall expire if said use shall cease for more than one year for any reason, or if substantial construction, in accordance with the special permit, has not been completed within one year from the date of issue or if all such required improvements are not maintained and all conditions and standards complied with throughout the duration of the special permit use.

    (b)   For a use intended to be temporary, the Zoning Board may issue a special permit for a specified period of time.

    (c)   In connection with issuance of a special permit, the Zoning Board or Board of Trustees may establish a schedule of inspections by the Code Enforcement Officer of a special permit use to determine continued compliance with this chapter.

    (d)  Any change in use or reduction in lot size requires amendment to the special permit, following the application and review requirements of this section.

  (8)  Existing violations. No permit shall be issued for a special use permit for a property where the Code Enforcement Officer has found a violation of this chapter and where such violation has not been corrected.

  (9)  Fees. Application for a special use permit shall be accompanied by fee as listed in the fee schedule adopted by the Board of Trustees.[2]

      [2]    *Editor's Note: See Ch. 67, Fees.*

  [1]    *Editor's Note: This local law also provided for the relettering of former Subsections E and F as Subsections F and G, respectively.*

F.   Other appeals. On appeal from an order, requirement, decision or determination made by an administrative official charged with the enforcement of this chapter or on request from any official, agency or board of the Village, the Board of Appeals is authorized to decide any question involving the interpretation of any provision of this chapter. Interpretations shall be made in accordance with the intent of the particular provision being interpreted.

G.   Conditions and safeguards. The Board of Appeals may prescribe such conditions or restrictions applying to the grant of a variance as it may deem necessary in each specific case, in order to minimize the adverse effects of such variance upon the character and property values of the neighborhood and to protect the public health, safety and welfare. Such conditions or restrictions shall be incorporated in the building permit and certificate of occupancy. Failure to comply with such conditions or restrictions shall constitute a violation of this chapter and may constitute the basis for denial or revocation of a building permit or certificate of occupancy and for all other applicable remedies.

# § 130-29. Procedures.

A.   Appeal or application. An appeal shall be taken within 60 days of the order, requirement, decision, interpretation or determination appealed from, by filing with the official or agency from whom the appeal is taken and with the Board of Appeals a notice of appeal, specifying the grounds thereof and the relief sought. The official or agency from whom the appeal is taken shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed from was taken. A referral to the Board for a variance or a request for an interpretation may be made at any time. All such appeals and applications to the Board shall be made by the owner or agent duly authorized, in writing, and shall be on forms prescribed by the Board. Each appeal or application shall fully set forth the circumstances of the case, shall refer to the specific provision of the chapter involved and shall exactly set forth, as the case may be, the interpretation that is claimed or the details of the adjustment that is applied for and the grounds on which it is claimed that the same should be granted.
[Amended 2-28-1994 by L.L. No. 1-1994]

B.   Review by other agencies.

  (1)  Upon receipt of a completed appeal or application, the Board of Appeals shall forward copies for review and report to the Code Enforcement Officer, Village Engineer and Planning Board and to other such officials and agencies of the Village as it deems appropriate. All such agencies shall have 30 days from the date of forwarding to submit a report. If approval of a site plan or issuance of a special permit is involved, the Board of Appeals shall forward sufficient copies for review and report to the applicable approving agency and shall not act on the matter until it has received the report of the approving agency or 30 days have passed since such forwarding.

(2) The Board of Appeals shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which include real property lying within 500 feet from the boundary of any city, Village or town or from the boundary of any existing or proposed county or state parkway, throughway, expressway, road, highway or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any county- or state-owned land on which a public building or institution is situated, and any special permit or variance affecting such use or property within a distance of 500 feet. The Rockland County Planning Board shall render its decision within 30 days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such period of 30 days or such longer period as has been agreed upon by it and the Board of Appeals, the Board of Appeals may act without such report. If the Rockland County Planning Board disapproves the proposal or recommends modifications thereof, the Board of Appeals shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Board of Appeals, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

C. Public hearing. The Board of Appeals shall conduct a public hearing on any appeal, application or request made pursuant to this chapter. Such public hearing shall be held within 45 days of the date an appeal is taken or an application or request is made to the Board.

D. Notice of hearing. Notice of the hearing shall be published in the official newspaper at least 10 days prior to the date of such hearing. Notice shall also be sent by the applicant 10 days prior to the date of such hearing to all property owners within 500 feet of the perimeter of the property, in the same manner as is required for amendments pursuant to § **130-41** of this chapter. The applicant shall cause signs to be posted on such property on each street frontage indicating the date and purpose of such hearing. The costs of all such notice shall be paid by the applicant.

E. Action. Every decision of the Board of Appeals shall be by resolution, shall be recorded and shall fully set forth the facts of the case, the findings and the conclusions on which the decision was based. The Board shall immediately file its resolution in the office of the Board and with the Village Clerk and shall, within 10 days thereafter, mail a copy of such resolution to the applicant.

# § 130-30. Expiration of variance.

A variance granted under this chapter shall automatically expire if substantial construction, in accordance with the plans for which such variance was granted, has not been completed within one year, or such other time limit as may be chosen by the Board of Appeals in connection with its decision, from the date of granting such variance by the Board, or, if judicial proceedings to review the Board's decision shall be instituted, from the date of entry of the final order in such proceedings, including all appeals.

# § 130-31. Fees.

Every application or appeal to the Board shall be subject to a fee as set forth in the fee schedule of the Village of Pomona.[1]

[1]   *Editor's Note: See Ch. **67**, Fees.*

# Article X. Density Zoning

## § 130-32. Purpose.

It is the purpose of this article to enable and encourage flexibility of design and development of land in such a manner as to preserve its natural and scenic qualities, protect areas of meaningful ecological value, reduce flood hazards, facilitate the adequate and economical provision of streets and utilities, minimize negative environmental impacts, improve the aesthetic quality of new residential developments, expand the variety of housing opportunities, encourage the conservation of energy, increase recreational opportunities and otherwise promote the planned and environmentally desirable use of land by permitting the Board of Trustees to authorize the Planning Board, simultaneously with the approval of subdivision plats, to modify otherwise applicable provisions of the Zoning Law in accordance with the standards, conditions and limitations as set forth herein and in § 7-738 of the Village Law.

## § 130-33. Procedure.

A.   After the submission of the preliminary plat to the Planning Board of the Village of Pomona, if either the applicant requests the use of density zoning or the Planning Board on its own motion determines that density zoning is suitable for the plat, then the preliminary plat, together with a Planning Board study setting forth the basis for the recommendation regarding utilization of the procedures in § 7-738 of the Village Law, shall be submitted to the Board of Trustees.

B.   Upon submission of the preliminary plat and recommendations, the Board of Trustees shall expeditiously cause to be published in the official newspaper of the Village a notice stating that an application for the utilization of the provisions of § 7-738 of the Village Law has been submitted to the Board of Trustees, said notice generally describing the area covered in the application, and that such application will be placed on the agenda of the meeting of the Board of Trustees.

C.   In the event that the plat shows lands available for a sewer plant or school purposes, the Board of Trustees will conduct a public hearing on the matter in lieu of placing the matter on the agenda as set forth in Subsection **B** hereof. Such public hearing shall be held after due notice in the official newspaper of the Village, such notice to be published not less than 10 nor more than 20 days prior to such public hearing.

D.   If the Board of Trustees determines that the preliminary plat is suitable for the utilization of the procedures allowed under § 7-738 of the Village Law, the Board of Trustees shall adopt a resolution authorizing the utilization of the procedures contained in said § 7-738 of the Village Law.

## § 130-34. Development standards and controls.

Except as modified by the Planning Board pursuant to the authority hereby conferred, all regulations normally applicable to residential uses in the zoning district in which the property is located shall continue to apply. In addition, the following requirements are hereby established specifically for average-density developments:

A.   Permitted uses. The permitted uses within an average-density development shall be the same as permitted in the zoning district in which the property is located.

B.   Density. The number of dwelling units permitted in an average-density development shall in no

case exceed the number which could be subdivided into lots conforming to all normally applicable requirements of this chapter, the Land Subdivision Regulations and other related land use and development controls. The basis for this determination by the Planning Board shall be a sketch layout of a conventional subdivision prepared and submitted by the applicant, which layout shall include topographic information and such other data as may be required by the Planning Board to assist in making its determination.

C.  Common lands and facilities.

(1)  In general, common open space land areas shall be preserved in their natural state, and their use shall be limited to appropriate conservation and passive recreation purposes. A portion of such common open space, not to exceed 10% of the gross land area of the average-density development, may be reserved and designated for active recreation purposes, provided that the size, shape, access and location of such areas is approved by the Planning Board. Within a designated active recreation area, there may be located swimming pools, ball fields, facilities for court games, clubhouses, playground equipment and so forth, provided that the use of all such facilities shall be limited to the residents of the average-density development and their guests, and further provided that such facilities shall be subject to site plan approval by the Planning Board.

(2)  The permanent preservation of common open space lands and facilities for their intended purpose shall further be legally assured to the satisfaction of the Board of Trustees and the Village Attorney by the filing of appropriate covenants, deed restrictions, easements or other forms of agreements. The permitted uses within such areas shall be limited to those specifically approved by the Planning Board and shown on the subdivision plat, plus uses customarily incidental and accessory thereto. Subsequent to the approval of the subdivision plat, the uses permitted within privately owned common land areas may be modified only upon approval by the Planning Board and only upon application by the entity owning such common land area. In each such case, a public hearing shall be held with the same notice as required by law for final subdivision plats. Such modification may permit a use in the same general category of uses previously approved or may allow a change in the location of a particular use from one portion of the common land area to another.

(3)  Dedication of the common land areas, including any common facilities or improvements thereon, to the common use of all property owners within an average-density development shall be recorded directly on the subdivision plat or by reference on the subdivision plat to a declaration of covenants, conditions and restrictions in a separate document recorded or to be recorded at or about the time of the filing of the approved subdivision plat. Such declaration of covenants, conditions and restrictions shall permanently grant to each property owner in common with all other property owners within such average-density development an easement in and to the common land areas and the common facilities thereon and of the use thereof.

(4)  As another alternative, all or a portion of the conserved land areas may be dedicated to the Village of Pomona, provided that the Board of Trustees has voted to accept such offer.

# Article XI. Amendments

## § 130-35. Power to amend.

The Board of Trustees may from time to time on its own motion, on petition or on recommendation of any board, agency or official of the Village, after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter.

## § 130-36. Amendments on petition.

A petition for any amendment of this chapter shall be made to the Village Clerk and shall describe the proposed changes. For proposed amendments to the Zoning Map, a copy shall be included of the applicable portion of the official copy of the Zoning Map, as kept by the Village Clerk, showing existing and proposed, zoning, as well as a map drawn to an appropriate scale showing all properties within 500 feet of the periphery of the subject property and any contiguous property of the petitioner in the same ownership. The petitioner shall be responsible for complying with the requirements as to notice in § **130-41** below.

## § 130-37. Amendments on motion.

An amendment on motion or an amendment proposed to the Board of Trustees by any board, agency or official of the Village shall contain the information required in § **130-36** above. The Village Clerk shall be responsible for complying with the requirements as to notice in § **130-41** below.

## § 130-38. Initial consideration.

On the making of a motion, on receipt of a petition or on receipt of a recommendation of any board, agency or official of the Village for a zoning amendment, the Board of Trustees may decide not to formally consider such amendment.

## § 130-39. Referrals for review and report.

If any amendment is to be considered by the Board of Trustees, it shall be referred for review and report to the Planning Board, the Village Attorney, the Village Engineer, Code Enforcement Officer and any other board, agency or official of the Village which the Board of Trustees deems appropriate. The Planning Board shall confer with any petitioner and assist such petitioner, where necessary, to place the amendment in the most appropriate form. Such conference and assistance shall not be deemed to constitute any commitment by the Planning Board as to its position on the advisability of the proposed amendment. After said conference, the petitioner shall be allowed to revise his petition and to provide copies of such revision to the Board of Trustees and to any board, agency or official to which the original proposed amendment was referred. The Village Attorney shall report to the Board of Trustees regarding the form of the proposed amendment. The Planning Board shall report to the Board of Trustees regarding the form and the advisability of the proposed amendment. Its report shall analyze the proposed amendment and shall state the Board's reasons for its recommendation, describing any conditions it believes make the amendment advisable or not, and specifically stating whether the amendment would or would not be in accordance with the Comprehensive Plan and in furtherance of the purposes of this chapter. All such boards, agencies and officials shall have 45 days from the date of forwarding or from the date of revision by the petitioner, whichever is later, to submit reports. Failure of the Planning Board or other board, agency or officials to report within 45 days shall be construed as approval of the proposed amendment. In no case shall this section restrict the right of an applicant to come before the Planning Board for an informal discussion and review prior to formal submission.

## § 130-40. Public hearing.

On receipt of the requested reports and any revised proposed amendment from an application or notification by the petitioner that no revision will be made, the Board of Trustees shall schedule and hold a public hearing on the proposed amendment.

## § 130-41. Notice of hearing.

Notice of the public hearing shall be published once in the official newspaper not less than 10 nor more than 30 days prior to the date of the hearing. A copy of the notice, with proof of mailing, together with proof of notice in the official newspaper, shall be filed in the Village Clerk's office on or before the date of the public hearing. The applicant shall cause notice by certified mail to owners of property within 500 feet of the perimeter of the property to which such change applies, to be mailed not less than 10 days prior to the required hearing. In the event that such amendment changes the district classification of land, there shall be posted not later than 10 days prior to the hearing a notice of the proposed change upon the property to which such change applies, said notice to be visible from each public street abutting such property. The cost of all notices shall be paid by the applicant except as provided in § **130-37**.

## § 130-42. Procedure upon protest.

In accordance with the procedures of § 7-708, Subdivision 1, of the Village Law, in the event a protest against such change is signed by the owners of 20% or more of the area of the land included in such proposed change, or by the owners of 20% or more of the land immediately adjacent extending one hundred feet therefrom, or by the owners of 20% or more of the land directly opposite thereto extending one hundred feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of four members of the Board of Trustees.

## § 130-43. Records.

The Village Clerk shall keep record copies of all Zoning Maps and text sections superseded by any amendment of this chapter.

## § 130-44. Referral to adjacent municipalities and other agencies.

Not less than 10 days prior to the public hearing, the Village Clerk shall send copies of the proposed amendment and notice of hearing on any amendment affecting property within 500 feet of the boundaries of any state park, parkway, Village or town to the Regional State Park Commission having jurisdiction over such state park or parkway or to the Village or Town Clerk.

## § 130-45. Fees.

All petitions for amendment of this chapter, except those amendments recommended by the Board of Trustees, by the Planning Board or other municipal board or agency of the Village, shall be accompanied by a fee in accordance with the fee schedule of the Village of Pomona.[1]

[1]    *Editor's Note: See Ch. **67**, Fees.*

# Article XII. Miscellaneous Provisions

## § 130-46. Title.

This chapter shall be known and may be cited as the "Zoning Law of the Village of Pomona."

## § 130-47. Effect on current building permits.

Except as provided in this section, nothing herein shall require any change in the plans, construction or designated use of a building or structure for which a building permit has been lawfully issued prior to or, under the circumstances noted below, within 60 days after the effective date of this chapter, provided that the proposed use complies with the use requirements of this chapter and further provided that construction shall begin within six months of the date of such permit, the foundation or 15% of the construction valuation shall be completed within one year of the date of such permit and the entire building or structure shall be completed within two years of the date of such permit.