AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI MEILECH MENCZER, RABBI JACOB
HERSHKOWITZ, and RABBI CHAIM ROSENBERG

*Plaintiff(s)*

v.

VILLAGE OF POMONA, NY and BOARD OF
TRUSTEES OF
THE VILLAGE OF POMONA, NY,

*Defendant(s)*

Civil Action No. 20CV6158

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* VILLAGE OF POMONA, NY and BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY,
100 Ladentown Road, Pomona, New York 10970

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Joseph A. Churgin, Esq.
Savad Churgin
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: __August 12, 2020__

/S/ S. James

*Signature of Clerk or Deputy Clerk*



Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI MEILECH MENCZER, RABBI JACOB
HERSHKOWITZ, and RABBI CHAIM ROSENBERG,

DOCKET NO.:

7:20-CV-6158

COMPLAINT

Plaintiffs,

-against-

VILLAGE OF POMONA, NY and BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY,

Defendants.

-------------------------------------------------------------------------------X

Congregation Rabbinical College of Tartikov ("Tartikov" or the "Congregation"), Rabbi

Mordechai Babad, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz and Rabbi Chaim

Rosenberg (collectively "Plaintiffs"), by their attorneys, Savad Churgin LLP, Storzer &

Associates, P.C., and Stepanovich Law P.L.C., as for their Complaint against the

Defendants, allege as follows:

## NATURE OF ACTION

1.      This action is commenced by Plaintiffs to redress violations of their civil and

constitutional rights—as protected by the United States and New York Constitutions, the

Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et

seq.* ("RLUIPA"), and the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* ("FHA")—caused

by the Defendants' burdensome land use regulations and intentional conduct that has

prohibited and continues to prohibit the Congregation from building and operating a

Rabbinical College that will include places of worship, religious educational facilities,

religious courts, libraries of Jewish texts, and student housing solely dedicated for the religious use by the Plaintiff Congregation's full-time rabbinical students, lecturers and their families (the "Rabbinical College") on a portion of the Congregation's large 100-acre property ("the Subject Property") in the Village of Pomona, New York (the "Village" or "Pomona").

2.     Plaintiff Rabbinical College of Tartikov, Inc. is the owner of the Subject Property, an approximately 100-acre parcel of land located within the Village of Pomona ("Pomona" or the "Village"), upon which it seeks to build a rabbinical college that, in addition to providing all of the facilities necessary to train rabbinical judges, will include housing for its students and their families. The Subject Property is a single lot of approximately 100 acres, and is bordered by U.S. Route 202 on the north and New York State Route 306 on the west.

3.     The Village's Zoning Code forbids outright the Rabbinical College's use throughout its entire jurisdiction.  The Congregation has no means of using the Subject Property legally as a Rabbinical College.  In a recent filing to this Court, the Defendants have now finally and explicitly admitted this fact.

4.     In Southern District of New York Case No. 7:07-CV-6304, the Court found after a bench trial that Pomona's Local Law No. 1 of 2001, Local Law No. 5 of 2004, Local Law No. 1 of 2007 and Local Law No. 5 of 2007 (collectively the "Challenged Laws") substantially burdened Plaintiffs' religious exercise and that Defendants adopted the Challenged Laws with the discriminatory purpose of preventing the spread of the

2

Orthodox/Hasidic Jewish community into the Village, and in certain respects, to specifically target the Subject Property and Tartikov.

5.      The holding regarding discrimination was upheld by the Second Circuit with respect to Local Law No. 1 of 2007 and Local Law No. 5 of 2007, but was overturned with respect to Local Law No. 1 of 2001 and Local Law No, 5 of 2004.  Defendants were enjoined from applying Local Law No. 1 of 2007 and Local Law No. 5 of 2007 to an application by Plaintiffs.

6.      This Court's holdings on several of Plaintiffs' other claims, including those brought under RLUIPA "Substantial Burdens" provision, the First Amendment's Free Exercise Clause and Freedom of Association doctrine, the New York Constitution's Freedom of Worship provision, and the FHA, regarding the Challenged Laws were overruled by the Second Circuit, which held that Plaintiffs did not have "standing" to challenge the Laws (even facially) until they engaged in "conduct that would implicate or invoke the operation of the challenged zoning laws."  Defendants advised Plaintiffs that the manner in which they can invoke those zoning laws was to apply for a text amendment.  Plaintiffs have now petitioned for a text amendment and Defendants have refused to consider that petition in a final decision.

7.      In preventing the Congregation from using the Subject Property for its protected religious and expressive activity along with its housing availability, the Village and its officials are continuing to violate both federal and state law, including the First Amendment of the Constitution of the United States, RLUIPA, the FHA, and the New

York Constitution by:

A.      Burdening its religious exercise and expression without being an appropriate means of achieving a sufficient governmental interest;

B.      Denying or otherwise making residential housing/dwellings unavailable for the individual Plaintiffs and other Hasidic or Orthodox Jews;

C.      Violating New York State constitutional law requiring such educational and religious land uses to be accommodated in zoning codes.

The Defendants' actions, all of which took place under color of state law, are and should be declared unlawful, and should be permanently enjoined.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3), (4), 42 U.S.C. §§ 2000cc, *et seq.*, 42 U.S.C. §§ 3613(a), *et seq.*, and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities secured by the laws and Constitution of the United States, particularly the First and Fourteenth Amendments to the Constitution of the United States, and the Religious Land Use and Institutionalized Persons Act of 2000 and the Fair Housing Act.

9.      This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts

and transactions complained of occurred, and continue to occur in this District.

## THE PARTIES

11.     Plaintiffs are a corporation and individuals affiliated with the Hasidic Jewish community, all of whom allege an interest in the construction of a rabbinical college on the Subject Property.

12.     Plaintiff Rabbi Mordechai Babad, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz, Rabbi Chaim Rosenberg are rabbis who seek to live, teach, and/or study at Tartikov's proposed rabbinical college.

13.     Plaintiff Rabbi Meilech Menczer is a natural person who resides in Rockland County, New York with his wife and children and plans and intends to attend and live at the Congregation's Rabbinical College for the purposes of religious exercise, expression, association, and instruction, and who, among others, is prevented from attending the Rabbinical College due to the laws and actions of the Village.

14.     Plaintiff Rabbi Jacob Hershkowitz is a natural person who resides in Rockland County, New York with his wife and children and plans and intends to attend and live at the Congregation's Rabbinical College for the purposes of religious exercise, expression, association, and instruction, and who, among others, is prevented from attending the Rabbinical College due to the laws and actions of the Village.

15.     Plaintiff Rabbi Chaim Rosenberg is a natural person who resides in Rockland County, New York with his wife and children and plans and intends to attend and live at the Congregation's Rabbinical College for the purposes of religious exercise,

5

expression, association, and instruction, and who, among others, are prevented from attending the Rabbinical College due to the laws and actions of the Village.

16.     Plaintiff Rabbi Mordechai Babad will be the academic head (Dean) of the proposed Rabbinical College.

17.     All Plaintiffs that are natural persons will reside in adult student family housing on the campus of the proposed Rabbinical College.

18.     Defendant Village of Pomona is a municipal corporation duly formed and existing pursuant to the laws of the State of New York.  The Village is a "government" within the meaning of 42 U.S.C. § 2000cc-5(4)(a).

19.     Defendant Board of Trustees of the Village of Pomona is the municipal legislative body authorized by New York Village Law § 7-700 to adopt zoning and land use regulations for the Village of Pomona.  The Board of Trustees is a branch, department, agency or instrumentality of a government within the meaning of 42 U.S.C. § 2000cc-5(4)(a).

## BACKGROUND

### The Congregation's Need for a Rabbinical College

20.     The individual Plaintiffs are all Orthodox Hasidic Jews.

21.     Plaintiffs believe that Orthodox Jews are not permitted to resolve conflicts in the secular court system, but rather must have their conflicts adjudicated in rabbinical courts (*bais din*) before rabbinical judges (*dayanim* or *dayan*) applying Jewish law.

22.     Plaintiffs have observed that the rabbinical courts in the United States are

6

overburdened because there are not enough qualified rabbinical judges, forcing Orthodox/Hasidic Jews to go to secular courts to resolve their disputes.

23.     Tartikov believes that in order for students to become full-time rabbinical judges they must be properly trained in all four sections of the *Shulchan Aruch,* a compilation of Jewish laws of the Orthodox Hasidic Jewish tradition, also known as the Code of Jewish Law.

24.     To meet these religious needs and to satisfy its religious obligations, Tartikov therefore intends to build a rabbinical college that will train students in all four sections of the *Shulchan Aruch*.

25.     Tartikov's religious beliefs impel it to develop and use the Subject Property as a rabbinical college is motivated by Tartikov's religious beliefs.

26.     Tartikov also believes that it must establish its Rabbinical College as a Torah community in order for students to become full-time rabbinical judges. A Torah community is a living and learning community that will provide the opportunity for students to be totally dedicated to religious obligations of mastering the *Shulchan Aruch* in order to become full-time rabbinical judges. Creating the Torah community will allow the students to be isolated from the distractions of the outside world, permitting them to devote themselves to the study of Jewish law.

27.     As part of the development and construction of the planned Rabbinical College, Tartikov plans to construct and foster the development of a Torah community on its campus.

28.     The Torah community will consist of on-campus housing where its students and their families can live, so that the students can study from 6 a.m. until 10 p.m. and also meet their religious obligations to their families.

29.     Tartikov believes that it cannot offer its religious program to train students to become full-time rabbinical judges if it cannot include a Torah community with on-campus housing.

30.     The Student Plaintiffs believe that they should become full-time rabbinical judges trained in all four books of the *Shulchan Aruch*.

31.     The Student Plaintiffs are enrolled at Kollel Belz in Monsey, New York.

32.     Kollel Belz does not offer a complete program on the *Shulchan Aruch* and does not have a Torah Community, which is why the Student Plaintiffs seek to enroll at Tartikov's Rabbinical College.

33.     The Student Plaintiffs are studying at Kollel Belz because they have no option to study and live at a program such as that proposed by Tartikov.

34.     This Court previously found that the "Student[ Plaintiffs] are studying the Torah at Kollel Belz because they have no other option. They cannot study in a Torah community because no such community exists within the United States." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, NY, 280 F. Supp. 3d 426, 473 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

35.     Tartikov's rabbinical program will focus specifically on all four books of the *Shulchan Aruch*.

8

36.     Compared to a regular *kollel*, where students spend their time studying the Talmud and rabbinic literature, students at Tartikov's Rabbinical College will specialize in a directed and intense study of the *Shulchan Aruch*.

37.     Tartikov estimates that its proposed program will take approximately 13 to 15 years to complete because its students must master thousands of religious texts and commentaries, as well as certain aspects of secular law.

38.     During this period of study, the students will be required to spend their days from about 6 a.m. until about 10 p.m. in study, in observation of judges, and in collegial examination of the issues that are presented by their studies.

39.     Students will break from their studies only as is required to fulfill the other religious obligations in daily life for an Orthodox Jew.

40.     Tartikov's planned Torah community will permit students to focus on studying Torah day and night, while surrounded by like-minded individuals.

41.     No other rabbinical college in the United States offers this type of program, although one institution in Israel offers one similar to it.

42.     Admission to the program will be based on interviews conducted by Tartikov's future dean, Mordechai Babad, who will review the applicants' backgrounds and assess their knowledge of Jewish law.

43.     Admission will also be conditioned upon having completed a high school level program in the Talmud, which is the primary source of Jewish religious law and Jewish theology.

9

44.     The Student Plaintiffs have satisfied these conditions and will be admitted into the rabbinical college when it opens.

45.     Student progress will be measured by regular testing.

46.     Some students also may undergo an oral examination at the Rabbinical College to determine whether they are qualified to serve as rabbinical judges.

47.     If a student passes that oral examination, the rabbi conducting it will give the student a *smicha*, which signifies that the student has accomplished proficiency in an area of Jewish law.

48.     The *smicha* is not a degree recognized by the New York State Board of Regents and Tartikov does not plan on offering any degree recognized by that body.

49.     Tartikov cannot be accredited by the New York State Board of Regents because it will not offer a degree recognized by that body and because educational institutions cannot be accredited by the Board of Regents until they are fully operational.

50.     The Rabbinical College is not accredited by the New York State Education Department, nor can it be.

51.     The Rabbinical College is not licensed by the State of New York, nor can it be.

52.     Tartikov was informed that it cannot be accredited by the Association of Advanced Rabbinical and Talmudic Schools ("AARTS"), the accrediting agency for Jewish educational institutions, because its proposed curriculum is not broad enough, it does not have existing facilities and must be in existence for at least two years.

53.     Upon information and belief, there is no public or private "similar recognized

10

accrediting agency" for the program offered by Tartikov.

54.     Tartikov cannot be accredited by the Board or Regents or by AARTS due to the Catch-22 of the Village's zoning laws.  Tartikov must be operational before it can be accredited by either body, but Tartikov cannot become operational until it obtains a special use permit from the Village, which requires accreditation.

55.     Tartikov cannot seek provisional accreditation from the Board of Regents, the Association of Advanced Rabbinical and Talmudic Schools, or any other body that accredits rabbinical colleges.

56.     Jewish law requires that Tartikov's students live with their families, and teach their children the Torah, among other religious obligations to their families.

57.     Jewish law also requires men to marry at a young age and have large families, and imposes conjugal duties upon a husband and wife while forbidding them from engaging in any family planning or using birth control.

58.     Tartikov's rabbinical college requires family housing for its students.

59.     Tartikov is motivated by its religious beliefs to develop and operate the rabbinical college.

60.     The Student Plaintiffs are motivated by their religious beliefs to live in such a community and are motivated by their religious beliefs to become full-time rabbinical judges qualified in all four books of the *Shulchan Aruch*.

61.     The Student Plaintiffs believe that the Torah commands them to study the Torah day and night.

62.    This Court previously found that "Plaintiffs' religious beliefs regarding the Torah community are sincere." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 474 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

63.    Living in a Torah community facilitates the learning experience because the students live among their fellow students and teachers.

64.    The manner in which Tartikov's students learn the religious texts is called *chevrusa*, study groups where everybody has a partner.  The Student Plaintiffs do not believe that they should study at home by themselves.

65.    For these Orthodox Hasidic Jewish students and teachers, the study of the Torah depends on immersing oneself in a community of Torah scholars, and the provision of on-campus housing is a means to serve these ends.

66.    The Student Plaintiffs' beliefs are grounded in religious texts such as Pirkei Avot, Chapter 4, Mishnah 18 that direct Jews to "exile yourself to a place of Torah."

67.    Without on-campus housing, Tartikov believes that its rabbinical college would otherwise be unsuccessful in training judges versed in the four books of the *Shulchan Aruch* and would fail in its religious purpose.

68.    This Court previously found that the purpose of Tartikov's proposed housing "is to facilitate religious exercise." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 472 (S.D.N.Y. 2017), *aff'd in part, rev'd in part on other grounds and remanded*, 945 F.3d 83 (2d Cir. 2019).

12

69.     This Court also found that Tartikov was seeking to "create a particular type of living and learning community—one that is free from the distractions of the outside world and permits students to focus on studying Torah day and night, while surrounded by like-minded individuals." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 473 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

70.     Two other kollels in the area that do not have on-campus housing or a Torah community—Kollel Belz and Mechon L'Hoyora—have been unsuccessful in producing rabbinical judges trained in all four books of the *Shulchan Aruch* for the past 30 years. Tartikov believes that the only way to achieve this religious goal of producing rabbinical judges trained in all four books of the *Shulchan Aruch* is to create a Torah community to accommodate its religious education.

71.     Students who had been studying at other kollels who had committed to Tartikov's program were forced to drop out while waiting for Tartikov to be permitted to build its Rabbinical College with student family housing.

72.     This Court previously found that "there may be other ways to become conversant in the Shulchan Aruch" but that "does not discredit the Students' beliefs that they 'have to live in a Torah community in order to study, to succeed in the studies to become a rabbinical judge.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 473 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

13

73.    Tartikov's requirement for student family housing is to accommodate the Student Plaintiffs' belief that Jewish law requires men to live with their families and to marry at a young age, have large families, and teach their children the Torah.

74.    Tartikov's on-campus housing will allow rabbinical students and their families to live in a manner consistent with Jewish law and the Students Plaintiffs' beliefs.

75.    The purpose of the on campus housing is to facilitate religious exercise.

76.    This Court previously found that the Student Plaintiffs "are each motivated by their religious beliefs to become full-time rabbinical judges qualified in all four books of the Shulchan Aruch"; "believe that the Torah commands them to study the Torah day and night" believe that "any unjustified detraction from Torah study is a sin"; and "[a]s a matter of religious faith, the Students are motivated to live in [a Torah] community." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, NY, 280 F. Supp. 3d 426, 471-472 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

77.    Tartikov has no feasible alternatives to house its students.

78.    Tartikov's facilities will also include additional facilities made necessary by the religious beliefs and practices of Orthodox Hasidic Jews; those facilities include classrooms, study halls, courtrooms, a library, one or more shuls, and mikvahs, or ritual baths.

79.    All of these facilities are necessary to the religious exercise of the Plaintiffs.

80.    The library will hold the thousands of religious studies and commentaries that

14

discuss and explain the *Shulchan Aruch*.

81.    The mikvahs will be provided out of religious necessity for the rabbinical college students' and teachers' wives.

82.    One or more shuls will be constructed so people on campus can pray together.

83.    Tartikov's proposed campus will be located approximately ten miles from the New Jersey-New York state line.

84.    Tartikov's proposed campus will serve students from both New York and outside of New York.

85.    Tartikov's proposed campus will involve building construction, employment of workers to construct the facility, purchase of materials to build the facility, and use of interstate highways and communication.

86.    Tartikov's proposed campus will involve transfers of funds to those engaged to construct the facility.

87.    Tartikov's proposed campus will involve employment of individuals.

88.    Tartikov's proposed campus will involve the purchase of goods and services related to its operations and maintenance.

89.    Students attending Tartikov will include students from outside the State of New York, and students from outside the United States.

90.    This commercial building construction will affect interstate commerce.

**The Village of Pomona and Its Land Use Regulations**

91.    Pomona incorporated in 1967 and adopted a Master Plan in 1974, which it updated in 1997.

92.    The entire jurisdiction of Pomona is designated as an "R–40" residential zoning district.

93.    A use that is not listed as a permitted or special permit use in the R-40 zone is prohibited in that district.

94.    The Village Code explicitly states that "All uses listed hereunder are permitted in the R-40 District; all others not listed are prohibited, except as provided in §§ 130-10 and 130-11."  Village of Pomona Zoning Code, Article IV (Use Regulations), § 130-9 (Permitted Uses), paragraph A.

95.    Any person or entity that violates the Village's zoning code "shall be liable to a fine not to exceed $5,000 and/or imprisonment not to exceed 15 days, or by both such fine and imprisonment. Each day's continued violation shall constitute a separate and additional violation.  In addition to the foregoing, the Village shall have such other remedies for any violation or threatened violation as are now or may hereinafter be provided by law or in equity."  Village Code § 130-24.

96.    The Village's zoning code states: "A building permit is required for: The construction, reconstruction, alteration, moving, demolition, structural alteration or change in the use of a building or structure or any part thereof or change in the nature, use or occupancy of a building or structure."  Village Code § 130-22(E).

16

97.    The Village's zoning code further states: "No building permit, certificate of occupancy or certificate of use shall be issued unless the proposed construction or use is in conformance with all the provisions of this chapter and other applicable laws." Village Code § 130-22(C).

98.    The Village's zoning code further states: "Every certificate of occupancy for a use for which a special permit or variance has been granted shall contain a detailed statement of such special permit or variance and of the conditions to which the same is subject."

99.    Therefore, if a use is not permitted by right, or if a special permit or a variance has not been granted, property in the Village may not be used, occupied, or developed for such use, and the penalties for such use, occupancy, or development includes fines, imprisonment, and other remedies available to the Village.

100.    One-family residences, public utilities rights-of-way, libraries and museums, public parks and playground, and agricultural pursuits are permitted land uses as of right in the R-40 district.

101.    Recreational facilities; playgrounds, swimming clubs, tennis courts and recreational buildings; reservoirs, water towers and water tanks; telephone exchanges and public utility substations, communications centers for emergency and other purposes, and any and all other public utility facilities which are or support the primary function of the public utility company; camps; wireless telecommunication services facility; educational institutions; and houses of worship are currently allowed in the R-40

17

district as "special permit" uses.   (Code § 130-10)

102.   A "special permit" use is permitted in the Village if it is in "conformance with additional standards [as] required by [the zoning] chapter . . . in their respective districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of [the zoning] chapter."

103.   "Educational institutions," regulated by the Village zoning code as amended by Local Law No. 1 of 2001 and Local Law No. 5 of 2004, discussed below, are currently permitted as a special permit use in the R-40 zoning district.

104.   Prior to 2001, the Village's zoning code completely prohibited colleges and universities.

105.   Prior to 2001, the Village's zoning code permitted "Schools of general instruction," which were limited to "[a]n educational institution giving regular instruction for grades between kindergarten and 12th grade" (emphasis added), among other conditions.

106.   Colleges and universities were thus prohibited under the Village's zoning code.

107.   Such prohibition of colleges and universities, or a requirement that colleges and universities must obtain a use variance, violates New York law under the common law doctrine described by the New York Court of Appeals in *Cornell University v. Bagnardi,* 68 N.Y.2d 583 (1986), and were therefore void.

108.   Under New York common law, including the decision in *Cornell University v. Bagnardi,* 68 N.Y.2d 583 (1986), educational institutions, including colleges, enjoy

special treatment with respect to residential zoning ordinances because these institutions presumptively serve the public's welfare and morals.

109. The Village has admitted that its prohibition of colleges and universities violates New York law.

110. Prior to 2004, dormitories were not permitted as part of an educational institution or school use anywhere within the Village of Pomona.

111. New York law prohibits local jurisdictions from prohibiting dormitories or requiring dormitories to obtain a use variance.

112. The Village has admitted that this prohibition against dormitories violates New York law.

113. Educational institutions are permitted to engage in activities and locate on their property facilities for such accessory uses as are reasonably associated with their educational purpose. *Town of Islip v. Dowling Coll.*, 275 A.D.2d 366, 367, 712 N.Y.S.2d 160, 161 (2000); *Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long Beach*, 298 A.D.2d 583, 584, 749 N.Y.S.2d 68, 70 (2002).

114. Student housing is reasonably associated with a college or university use.

115. Under New York law, student housing is considered to be part of an educational institution use. *Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long Beach*, 298 A.D.2d 583, 583–84, 749 N.Y.S.2d 68, 69–70 (2002); *New York Inst. of Tech., Inc. v. Ruckgaber*, 65 Misc. 2d 241, 244-45, 317 N.Y.S.2d 89, 93 (Sup. Ct. 1970).

116.    This Court has previously held that the required student family housing for Tartikov's rabbinical college can be considered to be incidental and required for the educational use.  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,* 138 F. Supp. 3d 352, 382-83 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019).

117.    Tartikov's plan for its educational religious facility, with student housing, is a beneficial use under New York law under *Cornell University v. Bagnardi,* 68 N.Y.2d 583 (1986).

118.    The complete exclusion of colleges, with student housing, is contrary to New York law.

119.    Prior to 2001, the Village Code required that any school have "a curriculum approved by the Board of Regents or the New York State Education Department . . . ."

120.    Tartikov's rabbinical college cannot be approved by the Board of Regents or the New York State Education Department.

121.    Prior to 2001, the Village Code prohibited a school that gave "special or limited instruction, . . . ."

122.    Tartikov's rabbinical college will give "special or limited instruction, . . . ."

123.    The Village amended its zoning laws related to schools and educational institutions in 2001 and 2004 in an attempt to comply with the requirements of New York state case law.

124.    However, the Village amended its zoning code in a manner that continued to

exclude the educational requirements of Orthodox/Hasidic Jews by, *inter alia*, requiring schools and educational institutions to be licensed and accredited, by prohibiting student family housing, by limiting housing to an unreasonable 20% of building space, and by enacting a so-called "wetlands protection law" that effectively prohibited any educational institution in the Village. The latter two restrictions have been struck down by this Court, in a decision that was affirmed by the Court of Appeals for the Second Circuit.

125.   However, the prohibition against nonaccredited educational institutions and the prohibition against student family housing, while struck down by this Court, have been revived by the Court of Appeals in its decision that Plaintiffs previously lacked "standing" to pursue such claims, as discussed below.

**Local Law No. 1 of 2001**

126.   On December 15, 1999, Yeshiva Spring Valley ("YSV") made an informal appearance before the Village's Planning Board regarding its desire to build a yeshiva on the Subject Property.

127.   During the meeting, a representative from Frederick P. Clark Associates Inc. ("FPC"), the Village's planner, noted that the Village's zoning laws for schools "really stink" and recommended that the laws be updated.

128.   In January of 2000, FPC circulated memoranda entitled "YSV–Pomona (Primary School and Pre–School)," and "Proposed Primary School and Pre–School (YSV

21

Pomona) and the Village's Zoning Regulations regarding schools," both of which noted the existence of only "scant" regulations for schools and recommended that the Village amend the pertinent laws.

129.    There were no schools in the Village in 2001.

130.    FPC's recommendations spurred the creation of Local Law No. 1 of 2001, a law designed to regulate educational institutions.

131.    While discussing a rough draft of Local Law No. 1 of 2001, the Mayor of the Village from 1997 through 2007, Herbert Marshall ("Marshall"), stated: "This thing's going to come in. They're going to come in and we're going to be caught with our pants down if we don't move. That's why I want to make sure that we're moving ahead."

132.    On January 22, 2001, following a public hearing, the Board of Trustees adopted Local Law No. 1 of 2001.

133.    Local Law No. 1 of 2001 retained a definition of a "school" that included the requirement that a school have "a curriculum approved by the Board of Regents or the New York State Education Department . . . ."

134.    Local Law No. 1 of 2001 also defined "educational institution" for the first time, as "[a]ny school or other organization or institution conducting a regularly scheduled comprehensive curriculum of academic and/or alternative vocational instruction similar to that furnished by kindergartens, primary[,] or secondary schools and operating under the Education Law of New York State, and duly licensed by the State of New York," and subjected such institutions to certain restrictions under the special permit approval

22

process, including minimum net lot area, maximum development intensity, frontage, access, set back, parking, and noise guidelines.

135.   Local Law No. 1 of 2001 prohibited dormitories with respect to "Schools," but did not prohibit them with respect to "Educational Institutions."

136.   Local Law. No. 1 of 2001 made "educational institutions" special permit uses rather than uses as of right.

137.   Following the passage of Local Law No. 1 of 2001, YSV determined that it was impossible for it to build the yeshiva it wanted on the Subject Property, and eventually sold the Subject Property to Tartikov and built the yeshiva outside of the Village.

138.   The Village's zoning code, subsequent to the passage of Local Law No. 1 of 2001, prohibited post-secondary educational institutions, including colleges and universities.

139.   The Village's zoning code, subsequent to the passage of Local Law No. 1 of 2001, prohibited dormitories as part of a school.


**Local Law No. 5 of 2004**

140.   The Village next amended its zoning code provisions regarding schools and educational institutions in 2004.

141.   Prior to the adoption of Local Law No. 5 of 2004, dormitories were not permitted in the Village.

142.   Pomona's Village Attorney Doris Ulman ("Ulman") admitted that it is

unconstitutional under New York State law to prohibit educational institutions from building dormitories.

143.    During the time-frame leading up to the adoption of Local Law No. 5 of 2004, the Village began taking steps in opposition to adult student housing.

144.    In December 2002, Marshall spoke on behalf of the Village at a community meeting to support the formation of the Village of Ladentown.

145.    The Village of Ladentown was proposed in opposition to the Town of Ramapo's ("Ramapo") September 2002 Draft Comprehensive Plan, which sought to re-zone a 200-acre parcel of land known as the Patrick Farm Property to include multi-family housing for adult students on the property.

146.    Marshall stated that Ramapo's Draft Comprehensive Plan reflected its decision to "support the special agenda of a small but vocal group of citizens who would prefer replacing our trees with apartment buildings, our wetlands with asphalt, and our wildlife with traffic."

147.    In May 2004, the Village filed a lawsuit against Ramapo (the "May 2004 Ramapo Petition") seeking to set aside Ramapo's Comprehensive Plan for failing to comply with the New York State Environmental Quality Review Act ("SEQRA").

148.    The May 2004 Ramapo Petition noted that Ramapo "attracted a burgeoning Hassidic community," which "caused development and political pressures in the Town to increase its housing stock and infrastructure."

149.    On June 15, 2004, Ramapo adopted the Adult Student Housing Law ("ASHL")

which permitted married adult student multi-family housing in residential zones throughout the unincorporated portion of Ramapo.  This was in response to concerns raised by Orthodox/Hasidic Jews.

150.    The ASHL "permits married, adult, student, multi-family, high-density housing in single-family residential zones . . . in the unincorporated portion of Ramapo." *Village of Chestnut Ridge v. Town of Ramapo*, No. 07-CV-9278, 2008 WL 4525753, at *1 (S.D.N.Y. Sept. 30, 2008).

151.    On June 28, 2004, Pomona's Board of Trustees voted to challenge Ramapo's ASHL.

152.    The Village's petition, which was filed in October 2004 (the "October 2004 Ramapo Petition"), noted that the law was passed "to secure for one religious community a unique and significant zoning benefit."

153.    Marshall strongly opposed the ASHL, stating that Ramapo officials "were pandering to the special interest groups able to deliver the critically important block vote."

154.    The "block vote" Marshall was referring to was the Orthodox Jewish vote out of New Square, New York.

155.    Around the same time, during the summer of 2004, the Village Board of Trustees discussed amending the Village's zoning laws relating to educational institutions.

156.    There were no schools or institutions of higher education located in the Village in 2004.

157.   On September 7, 2004, Village Attorney Ulman provided formal
recommendations to the Board regarding which provisions should be amended. Ulman
recommended adding a provision allowing dormitories, clarifying the definition of
educational institution, and removing the requirement that educational institutions be on
a state or county road.

158.   The Village adopted Local Law No. 5 of 2004 in order to, *inter alia*, comply with
New York State common law.

159.   Ulman's recommendations served as the basis for Local Law No. 5 of 2004.

160.   Local Law No. 5 of 2004 re-defined "educational institution" as "[a]ny private or
religious elementary, junior high or high school, college, graduate[,] or post-graduate
school conducting a full-time curriculum of instruction . . . accredited by the New York
State Education Department or similar recognized accrediting agency," and amended
the minimum lot area, frontage, access, setback, and screening guidelines.

161.   The law also included a provision permitting the development of "dormitories,"
defined as:

A building that is operated by a school located on the same lot and which
contains private or semi-private rooms which open to a common hallway, which
rooms are sleeping quarters for administrative staff, faculty or students.
Communal dining, cooking, laundry, lounge and recreation facilities may be
provided. Dormitory rooms shall not contain separate cooking, dining or
housekeeping facilities except that one dwelling unit with complete housekeeping

26

facilities may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms. Not more than one communal dining room shall be provided in any building used for dormitory purposes. Single family, two-family and/or multi-family dwelling units other than as described above shall not be considered to be dormitories or part of dormitories.

162.    As a result of the adoption of Local Law No. 5 of 2004, the Village's zoning law now permits dormitories, but defines "Dormitory" in such a manner as to exclude family dwelling units, which is the type of housing required by the Plaintiffs.  Pomona Zoning Code, Article II (Definitions) §130-4 (Terms Defined).

163.    The student housing required by the Rabbinical College would also be excluded from the definition of "dormitory," since the Village Code expressly forbids "Dormitory rooms [from] contain[ing] separate cooking, dining or housekeeping facilities . . . ." Pomona Zoning Code, Article II (Definitions), § 130-4 (Terms Defined).

164.    The Village's Code also contains a prohibition against more than one dormitory building being permitted on a lot, *regardless of the size of the lot.*  Pomona Zoning Code, Article II (Definitions), § 130-4 (Terms Defined).

165.    After the adoption of Local Law No. 5 of 2004, the Village's zoning law now permits certain colleges, but prohibits outright Tartikov's proposed rabbinical college or any similar "unaccredited" religious education facility.

166.    This Court previously found that the accreditation requirement substantially burdens Plaintiffs' religious exercise because "Tartikov must be operational before it can

27

be accredited, but Tartikov cannot become operational until it obtains a special use permit, which requires accreditation." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 476 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

167.    No property in the Village may be principally used for an educational facility with family dwelling units or housekeeping facilities (other than one dwelling unit with complete housekeeping facilities that may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms), which is necessary for Tartikov's Rabbinical College.

168.    Significantly, on the Village's earlier appeal of this Court's judgment for the Plaintiffs, the Court of Appeals for the Second Circuit held:

There is sufficient basis in the record to conclude, as the district court did, that on campus housing of the nature Tartikov sought was important to the exercise of Tartikov's faith because it would allow students to be near their families while maintaining a diligent study schedule. Further, Pomona has presented no evidence suggesting that the Village and surrounding community had sufficient housing for 1,000 students and 3,500 additional family members to live within walking or even driving distance of the TRC site without additional construction.

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83, 122–24 (2d Cir. 2019).

169.    Nicholas Sanderson, one of the officials who voted for Local Law No. 5 of 2004,

28

stated in 2007 that Tartikov "could completely change the village and the make-up of the village."

170.    Most of the elected officials who voted in favor of Local Law No. 5 of 2004 were also trustees when the Village Board later took concrete steps to prevent the spread of the Orthodox/Hasidic Jewish community into the Village, motivated by discriminatory animus, including the passage of discriminatory Local Law No. 1 of 2007 and Local Law No. 5 of 2007.

## Local Law No. 1 of 2007 and Local Law No 5 of 2007

171.    The Village also passed subsequent laws regarding dormitories ("Local Law No. 1 of 2007") and a wetlands law ("Local Law No. 5 of 2007") in 2007 (collectively the "2007 Laws").

172.    The 2007 Laws were passed in order to thwart the spread of the Orthodox/Hasidic Jewish community into the Village and in certain respects to specifically target Tartikov and Tartikov's Property.

173.    Local Law No. 1 of 2007 amended Pomona's laws again to limit a dormitory building to no more than twenty percent of the total square footage of all buildings on the lot; required that an educational institution to have a net lot area of 10 acres; and removed certain steep slopes from net lot area calculations.

174.    As part of the consideration of Local Law No. 1 of 2007, Pomona considered changing the height limitation for dormitories from 25 feet to 35 feet to make dormitories

consistent with all other uses in the Village's zoning law, but rejected such changes based on community comments directed at Tartikov.

175.   Local Law No. 1 of 2007 was motivated by discriminatory animus against Orthodox Hasidic Jews on the part of the Village and its Trustees.

176.   Local Law No. 1 of 2007 was passed during a contentious Board of Trustees meeting where some of the attendees were opposed to the development because it was proposed by Orthodox/Hasidic Jews, including concerns that the Village not "turn into another Kiryas Joel," a Hasidic community located in the Town of Monroe.

177.   Local Law No. 5 of 2007 was ostensibly a "wetlands protection law," but exempted all lots improved with single family homes.  As a result, Tartikov's property was one of the only properties in the Village subject to Local Law No. 5 of 2007.

178.   Local Law No. 5 of 2007 was designed to prevent Tartikov from building its proposed rabbinical college.

179.   Local Law No. 5 of 2007 was motivated by discriminatory animus against Orthodox/Hasidic Jews on the part of the Village and its Trustees.

180.   Village officials explicitly stated their intent to thwart Tartikov's plans, including in campaign materials where the officials promised that they would "stand up to the threat" that Tartikov posed and stating that the rabbinical college "could completely change the village and the make-up of the village."

181.   Village officials called Tartikov's proposed residents "homogenous individuals" and stated that stated that the Village should "maintain[ ] its cultural and religious

diversity."

182.   This Court found that the 2007 Laws were enacted "to prevent the spread of the

Orthodox/Hasidic community into the Village, and in certain respects, to specifically

target the Subject Property and Tartikov." *Congregation Rabbinical Coll. of Tartikov,*

*Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 446 (S.D.N.Y. 2017).

183.   This holding was based on the fact that "[t]here is no escaping the fact that the

events leading up to the enactment of the [2007] Laws, the context in which they were

adopted, the Village's specific focus on opposing Orthodox/Hasidic development in and

around the Village, and the public statements of Village officials and residents, to which

the officials were responsive, all reveal that Defendants passed the [2007] Laws to

thwart the spread of the Orthodox/Hasidic Jewish community into the Village. *Id.* at

455.

184.   After the Village appealed these holdings, they were affirmed by the Second

Circuit Court of Appeals, 945 F.3d 83 (2d Cir. 2019).


**The "Standing" Holding of the Court of Appeals for the Second Circuit**

185.   On the Village's appeal of this Court's earlier Judgment, the Court of Appeals for

the Second Circuit held that Plaintiffs did not have "standing" to raise their free exercise,

free speech, and freedom of association claims under the federal and New York

constitutions, their RLUIPA Substantial Burden and exclusion and limits claims, FHA

claims, and common law claims related to the *Berenson* doctrine because Tartikov did

31

not submit a formal proposal for the building project, apply for a permit, or engage in "any other conduct that would implicate or invoke the operation of the challenged zoning laws." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83, 110 (2d Cir. 2019).

186.    The Village's zoning code prohibits the Village from issuing a special use permit to Tartikov to allow development and operation of its rabbinical college. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 444-45 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

187.    Tartikov cannot obtain a variance to develop its rabbinical college. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 445 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

188.    The findings that Pomona cannot issue a special use permit to Tartikov and that Tartikov cannot obtain a variance were not disturbed by the Court of Appeals.

189.    Pomona has admitted that Tartikov cannot obtain a variance to develop its rabbinical college. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 445 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

190.    Tartikov cannot obtain a variance to develop its rabbinical college because state law requires an applicant who applies for a use variance to prove that there is no other

economic use for the property. Pomona has stated that it would be "impossible" for Tartikov to prove that there is no other economic use for the property.

191.    The Village's zoning authorities do not have the discretion to issue a special use permit for an unaccredited institution.

192.    The Village's zoning authorities do not have the discretion to grant a special permit for an educational institution that includes single-family, two-family and/or multifamily dwelling units other than one dwelling unit for use of a superintendent or supervisory staff for every 50 dormitory rooms.

193.    The Village's zoning authorities do not have the discretion to grant a special permit for an educational institution that includes housing with separate cooking, dining or housekeeping facilities other than one dwelling unit for the use of a superintendent or supervisory staff for every 50 dormitory rooms.

194.    In its memorandum in opposition to Plaintiffs' motion for attorney's fees, currently pending before the Court in the earlier action, Pomona has admitted that "the 2001 and 2004 laws still bar construction" of the rabbinical college. 7:07-CV-6304, Docket No. 414, page 18, note 10.

195.    Therefore, the <u>only</u> "conduct that would implicate or invoke the operation of the challenged zoning laws" in a manner that could possibly permit Tartikov to develop and operate its Rabbinical College would be a legislative change to the Village Code, also known as a "text amendment" or "zone change" (terms that are used interchangeably).

196.    The Village agrees, and has repeatedly stated that Tartikov must apply for a text

amendment (or, as they often refer to it, a zone change) in order for Plaintiffs to have standing to challenge its zoning laws. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 480 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

197.    Although Pomona uses the terms "text amendment" and "zone change" interchangeably, it is not possible for Tartikov to change the zoning district because the only zoning district in the Village is the R-40 zoning district and there is therefore no other zoning district to which the zone could be changed.  Tartikov's only option would be an amendment to the zoning code. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 444.

198.    At trial, Pomona's Village Attorney and designated representative of the Village, Doris Ulman, stated that she told Tartikov's attorney that "the only application his client could make was for a zone change."

199.    Pomona's Village Attorney and designated representative of the Village also stated at trial that "the unaccredited rabbinical college does not comply with the Village definition of educational institution and that procedurally [Tartikov's attorney] could apply for a zone change or an amendment to the zoning law."

200.    In its appeal papers, Pomona asserted that the Village Attorney "suggested applying for a zone change before this lawsuit was filed" and that Tartikov, "refused to follow the Village Attorney's advice to at least apply for a zone change."  Second Circuit Case No. 18-869, Document 156, pages 57-58.

201.   Pursuant to Pomona Village Code § 130-35, the Board of Trustees may "on petition . . . after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter."

202.   However, the Village is not required to consider such an amendment, pursuant to Pomona Village Code § 130-38 ("on receipt of a petition . . . the Board of Trustees may decide not to formally consider such amendment").

203.   The Village Attorney also admitted at trial that if Tartikov were to petition the Board for a text amendment, that the Board of Trustees may decide not to formally consider that amendment.


**Plaintiffs Were Denied a Text Amendment by Pomona**

204.   After the Second Circuit ruled that Plaintiffs lack standing to facially challenge the provisions of the zoning code that bar Tartikov's rabbinical college until Tartikov engaged in "conduct that would implicate or invoke the operation of the challenged zoning laws," Tartikov did so, submitting a petition for a text amendment to repeal the 2001 and 2004 Laws to the Pomona Board of Trustees.

205.   Pursuant to the Village's zoning code, "[t]he Board of Trustees may from time to time on its own motion, on petition or on recommendation of any board, agency or official of the Village, after public notice and hearing, amend, supplement, repeal or change the regulations and districts established under this chapter."

206.   On February 7, 2020, Tartikov submitted its petition for text amendment and

required fee for a text amendment to Pomona. A copy of that petition is attached hereto as **Exhibit A**.

207. The petition requested that, pursuant to Pomona Village Code §§ 130-35-45, Pomona repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004. Ex. A.

208. On February 10, 2020, the Pomona Board of Trustees passed a resolution directing that all communications regarding Tartikov's February 7, 2020 petition be communicated through the office of Brian Nugent, Esq. A copy of the correspondence to Tartikov informing them of such is attached hereto as **Exhibit B**.

209. At the February 24, 2020 Board of Trustees meeting, the Board of Trustees discussed Tartikov's February 7, 2020 petition.

210. During the February 24, 2020 meeting, Mayor Ian Banks stated that he had voted for Local Law No. 1 of 2001 and Local Law No. 5 of 2004 and that he felt that he did the right thing when he voted for those laws and that he feels that they should stand.

211. The Village's zoning code states: "On the making of a motion, on receipt of a petition or on receipt of a recommendation of any board, agency or official of the Village for a zoning amendment, the Board of Trustees may decide not to formally consider such amendment."

212. Following the discussion at the February 24, 2020 meeting, Brian Nugent, Esq. stated that he would advise Tartikov that the Board would not consider its February 7, 2020 petition and asked if there were any objections to his doing so.

213. None of the Board members indicated that he or she had an objection to Mr.

36

Nugent's suggestion.

214.    Following that discussion at the February 24, 2020 meeting, the Village Board voted to refund Tartikov's February 7, 2020 text amendment fee. That motion passed 4-0.

215.    Following the passage of that motion, Village resident Susan Montemorano applauded. Ms. Montemorano is, upon information and belief, the administrator of The Monte Scoop, a Facebook page that focuses many of its posts on Orthodox and Hasidic Jews.

216.    On February 26, 2020, Brian Nugent, Esq. sent a letter to Tartikov's attorney that advised Tartikov that "the Village Board declined to formally consider" Tartikov's February 7, 2020 petition. A copy of that letter is attached hereto as **Exhibit C**.

217.    The February 26 letter also indicated that the text amendment fee would be returned. Ex. C.

218.    The Village Board's decision to decline to formally consider Tartikov's February 7, 2020 Petition was a final decision regarding Tartikov's petition for text amendment.

219.    There is no further action that Tartikov can take before the Village or any of its bodies to have its petition for text amendment considered.

220.    Tartikov has engaged in "conduct that would implicate or invoke the operation of the challenged zoning laws."

221.    Tartikov availed itself of the only conduct available to it that may permit its Rabbinical College use, a petition for a text amendment.

222.    According to the Village's zoning code, the Board of Trustees could have referred Tartikov's Petition "for review and report to the Planning Board, the Village Attorney, the Village Engineer, Code Enforcement Officer and any other board, agency or official of the Village which the Board of Trustees deems appropriate," but chose not to do so.

223.    The Village's Planning Board, if a petition is referred to it, can "confer with any petitioner and assist such petitioner, where necessary, to place the amendment in the most appropriate form. . . . After said conference, the petitioner shall be allowed to revise his petition"; however, the Board of Trustees' action to decline to consider Tartikov's February 7, 2020 Petition prevented such revision.

224.    If a petition is referred to it, "[t]he Planning Board shall report to the Board of Trustees regarding the form and the advisability of the proposed amendment. Its report shall analyze the proposed amendment and shall state the Board's reasons for its recommendation, describing any conditions it believes make the amendment advisable or not, and specifically stating whether the amendment would or would not be in accordance with the Comprehensive Plan and in furtherance of the purposes of this chapter."

225.    Other Village "boards, agencies and officials shall have 45 days from the date of forwarding or from the date of revision by the petitioner, whichever is later, to submit reports," which would provide them an opportunity to comment on such petition.

226.    The Village's Board of Trustees took none of these actions, did not refer the petition to the Planning Board or any other board, agency or official, did not revise it or

38

request revisions, or consider any conditions to the Petition; rather, it decided to not consider the Petition at all.

227.   The Village Board of Trustees' decision not to consider the Petition and to refund Tartikov's fee was a final decision.

228.   The Village's zoning code provisions that prohibit the Plaintiffs from applying for, and constructing and using the Subject Property as a nonaccredited rabbinical college with student family housing have been imposed upon the Plaintiffs.

229.   The Village's zoning code provisions that prohibit the Plaintiffs from applying for, and constructing and using the Subject Property as a nonaccredited rabbinical college with student family housing have been implemented against the Plaintiffs.

**Plaintiffs' Religious Exercise is Substantially Burdened by the Imposition and Implementation of Its Land Use Regulations that Prohibit Tartikov's Rabbinical College Use.**

230.   Plaintiffs' religious exercise is burdened by the imposition and implementation of the Village's land use regulations, as described above.

231.   The Village's land use regulations, and the Village's refusal to consider a text amendment to remove the prohibitions on Tartikov's rabbinical college use bars outright Tartikov's rabbinical college within the Village, because (a) Tartikov cannot be accredited prior to submitting an application (or at all); and (b) the Village's land use regulations prohibit the student family housing necessary for the rabbinical college and Plaintiffs' religious exercise.

39

232.    This Court previously found that Local Law No. 5 of 2004 "substantially burdens
[Plaintiffs'] religious exercise by banning student family housing outright" because there
is a "connection between their religious exercise and the provision of on-campus
housing". *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F.
Supp. 3d 426, 479 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d
83 (2d Cir. 2019).

233.    This Court has found that "[t]he Dormitory Law, specifically, prohibits any sort of
housing as part of an educational institution that is not defined as a "dormitory" in that
statute" and "the Dormitory Law explicitly precludes housing for students with families, .
. . ." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d
352, 383–84 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov,
Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019).

234.    The Village's land use regulations that prohibit Tartikov's rabbinical college deny
Tartikov the ability to construct an adequate facility for its religious exercise.

235.    The Village's land use regulations prohibiting Tartikov's rabbinical college are
arbitrary and unlawful under New York common law, as described in *Cornell Univ. v.
Bagnardi*, 68 N.Y.2d 583, 503 N.E.2d 509 (1986), and other precedents.

236.    Based on the existence of New York common law, as described in *Cornell Univ.
v. Bagnardi*, 68 N.Y.2d 583, 503 N.E.2d 509 (1986), and other precedents, Tartikov had
a reasonable expectation of being able to construct its rabbinical college on the Subject
Property.

237.   The Village has completely prevented Tartikov from building its rabbinical college on the Subject Property and anywhere else within its jurisdiction.

238.   Tartikov has no ready alternatives to build its rabbinical college.

239.   The Village has coerced Tartikov to change its behavior by preventing it from constructing and operating a rabbinical college, as motivated by its sincere religious beliefs.

**Defendants Do Not Have Any Compelling Interests Justifying its Land Use Regulations That Prohibit Tartikov's Rabbinical College, and any Such Regulations Are Not the Least Restrictive Means of Achieving Any Governmental Interest.**

240.   Defendants did not commission any studies or consult experts when examining any need for the Local Law No. 5 of 2004.

241.   Defendants do not have any compelling governmental interests for the 2001 and 2004 Laws.

242.   This Court held that the Village lacks any compelling governmental interest justifying the Local Law No. 5 of 2004.

243.   None of the Village's stated justifications for Local Law No. 5 of 2004 required the Village to ban student family housing.

244.   The Village claimed that Local Law No. 5 of 2004 was in response to "recent" developments in case law, but that explanation had no credibility because those cases were decided in 1956, 1986 and 2002.

245.   The Village also claimed that the purpose of the accreditation requirement was to

regulate commercial-type training schools, such as automotive and driving schools. However, those uses can be accredited.

246.   Local Law No. 5 of 2004 was not narrowly tailored to serve the Village's stated interests.

247.   This Court held that the Village did not use the least restrictive means of achieving any compelling governmental interest justifying Local Law No. 5 of 2004.

248.   The Village has not proffered any compelling governmental interest justifying the 2001 and 2004 Laws.

249.   The Village has no compelling interest justifying its land use regulations that prohibit Tartikov's rabbinical college use.

250.   The Village's outright ban on Tartikov's rabbinical college use is not the least restrictive means of achieving any governmental interest.

251.   The Village's outright ban on nonaccredited college uses is not the least restrictive means of achieving any governmental interest.

252.   The Village's outright ban on student family housing is not the least restrictive means of achieving any governmental interest.

253.   This Court also found that Local Law No. 5 of 2004 was "not the least restrictive means of achieving [Pomona's] desired goals." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 482 (S.D.N.Y. 2017), *aff'd in part, rev'd in part and remanded*, 945 F.3d 83 (2d Cir. 2019).

254.   Local Law No. 5 of 2004 is facially neutral with respect to race, color, national

origin, religion, sex, familial status, and disability.

255.    Despite the facial neutrality of Local Law No. 5 of 2004, it inflicts a disparate impact on Orthodox/Hasidic Jews, who are required by their religion to marry young, have large families, and to devote themselves to study of the Torah to the exclusion of other activities that detract therefrom.

256.    Because their religious beliefs compel them to spend extended periods every day in study of Torah, the Code of Jewish Law, and related materials, residential housing on the campus of the Rabbinical College is necessary to the Student Plaintiffs' fulfillment of their religious obligations.

257.    The proposed Adult Student Housing at the Rabbinical College are "dwellings" as that term is defined by the Fair Housing Act, 42 U.S.C. § 3602.

258.    The 100-acre property that the Rabbinical College owns in the Village of Pomona is limited to placement of only one single-family residence under the terms of the Village's Zoning Code.

259.    Limiting housing within the Village to single family residences on one acre lots disproportionately impacts these Plaintiffs and the Orthodox/Hasidic Jewish communities because such forms of housing are beyond their financial means.

The Village Code does not permit the Rabbinical College (constructed as and operating as a Torah Community) to exist anywhere in the Village of Pomona, either as a "matter of right" or by special use permit.

43

## AS A FIRST CAUSE OF ACTION
### Free Exercise Clause
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

260.    Plaintiffs repeat and reallege paragraphs 1 through 259 as if fully set forth herein.

261.    Defendants' laws (on their face and as applied to Plaintiffs) and actions deprived and continue to deprive all Plaintiffs of their right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, burdening the Plaintiffs' religious exercise without being the least restrictive means of achieving a compelling governmental interest.

262.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

263.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A SECOND CAUSE OF ACTION
### Freedom of Association
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

264.    Plaintiffs repeat and reallege paragraphs 1 through 263 as if fully set forth herein.

265.    Defendants' laws (on their face and as applied to Plaintiffs) and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi

44

Mordechai Babad, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz and Rabbi Chaim

Rosenberg of their right to freedom of expressive association, as secured by the First

Amendment to the United States Constitution and made applicable to the States by the

Fourteenth Amendment, by intruding upon the Plaintiffs' right to associate for purposes

of protected expressive activity.

266.    The Plaintiffs have no adequate remedy at law for the harm and damage caused

by Defendants' violation of its constitutional rights.

267.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer,

irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages

unless the Village's acts and conduct complained of are permanently enjoined.

**AS A THIRD CAUSE OF ACTION**
**"Substantial Burdens"**
**Religious Land Use and Institutionalized Persons Act of 2000**
**42 U.S.C. § 2000cc(a)**

268.    Plaintiffs repeat and reallege paragraphs 1 through 267 as if fully set forth herein.

269.    Defendants' laws (on their face and as applied to Plaintiffs) and actions deprived

and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi

Mordechai Babad, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz and Rabbi Chaim

Rosenberg of their right to the free exercise of religion, as secured by the Religious

Land Use and Institutionalized Persons Act, by imposing and implementing a land use

regulation in a manner that places a substantial burden on the Plaintiffs' religious

exercise without any compelling interest, and without using the least restrictive means

45

of furthering any compelling interest.

## AS A FOURTH CAUSE OF ACTION
### New York State Constitution - Article 1, § 3
### Freedom of Worship; Religious Liberty

270.   Plaintiffs repeat and reallege paragraphs 1 through 269 as if fully set forth herein.

271.   Defendants' laws (on their face and as applied to Plaintiffs) and actions deprived and continue to deprive Plaintiffs Congregation Rabbinical College of Tartikov, Rabbi Mordechai Babad, Rabbi Meilech Menczer, Rabbi Jacob Hershkowitz and Rabbi Chaim Rosenberg of their right to Freedom of Worship, as secured by Article I, § 3 of the New York State Constitution.

272.   The Defendants' interests in the Village's zoning code provisions that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College do not justify the burden, incidental or otherwise, on Plaintiffs' religious exercise.

## AS A FIFTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3604

273.   Plaintiffs repeat and reallege paragraphs 1 through 272 as if fully set forth herein.

274.   Defendants' zoning code provisions that prevent the application for, and construction and utilization of the Subject Property as a Rabbinical College, as enacted and as applied are neutral on their face as to categories of prohibited discrimination under the Fair Housing Act and amendments thereto.

275.     Nonetheless, Defendants' laws (on their face and as applied to Plaintiffs) and actions have had the effect and continue to have the effect, whether intended or not, of excluding Plaintiffs from obtaining student housing anywhere in the Village of Pomona by discriminating against the Plaintiffs based on religion, in violation of 42 U.S.C. § 3604.

276.     The Village of Pomona's prohibition of Adult Student Housing disparately impacts the Plaintiffs, who require access to such housing in order to meet their own needs and to satisfy the duties and obligations of their religion.

277.     Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

278.     Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

279.     Defendants have caused the Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and the Plaintiffs will continue to suffer such harm unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS A SIXTH CAUSE OF ACTION
### New York Common Law
***Cornell Univ. v. Bagnardi*, 68 N.Y.2d 583, 503 N.E.2d 509 (1986)**

280.    Plaintiffs repeat and reallege paragraphs 1 through 279 are incorporated by reference as if set forth fully herein.

281.    Prohibiting colleges and universities from a jurisdiction violates the New York

common law doctrine as enunciated in *Cornell Univ. v. Bagnardi*, 68 N.Y.2d 583, 503

N.E.2d 509 (1986), as not being reasonably related to the morals, health, welfare and

safety of the community, and beyond the scope of the Village's zoning authority.

282.   Prohibiting incidental uses customarily engaged in by colleges and universities,

such as student housing, similarly violates New York common law.

283.   Plaintiffs' educational use is, by its nature, in furtherance of the public morals and

general welfare.

284.   Plaintiffs' educational use is entitled to deferential treatment attributable to its

inherently beneficial use.

285.   Plaintiffs can meet their burden of establishing that, to the extent the zoning

ordinance excludes educational uses including student housing from the Village's

jurisdiction, it deprives Plaintiffs of the opportunity to demonstrate that the educational

use of its property does not pose a threat to the public welfare, and is not designed to

accomplish or advance a legitimate public purpose and on its face is unconstitutional.

286.   Defendants have violated and continue to violate this common law doctrine to the

extent that the Village's land use regulations would prohibit colleges and universities

and/or would prohibit student housing incidental to college and university uses.


## RELIEF SOUGHT

WHEREFORE, Plaintiffs demand Judgment as follows:

A.     Declaratory judgment holding the laws and actions of the Defendants that

prohibit Plaintiffs from applying for, and constructing and using the Subject Property as a nonaccredited rabbinical college with student family housing to be unconstitutional and illegal under the United States and New York Constitutions, and the New York State common law, including:

1.      Any requirement that an educational institution be accredited by the New York State Education Department or similar recognized accrediting agency;

2.      Any requirement that an educational institution have a curriculum approved by the Board of Regents or the New York State Education Department;

3.      Any requirement that an educational institution operate under the Education Law of New York State, and/or be licensed by the State of New York;

4.      Any prohibition against post-secondary education uses such as a college;

5.      Any prohibition against educational institution that does not conduct a regularly scheduled comprehensive curriculum of academic and/or alternative vocational instruction similar to that furnished by kindergartens, primary or secondary schools;

6.      Any prohibition against educational facilities providing student family housing for its students, including single family, two-family and/or multi-family dwelling units;

7.      Any prohibition against educational facilities providing student family housing with separate cooking, dining or housekeeping facilities;

8.      Any prohibition against dormitories or student housing generally;

9.      Any prohibition against a college that gives special or limited instruction; and

10.     The Board of Trustees' action declining to consider Plaintiffs' February 7, 2020

Petition.

B.      Declaratory judgment declaring that the Plaintiffs' use of the Subject Property as a rabbinical college with student family housing is permitted within the R-40 zoning district as a special permit use;

C.      Declaratory judgment declaring that the laws and actions of the Defendants, described above, that prevent the application for, and construction and utilization of the Subject Property as a rabbinical college deprive Plaintiffs of their statutory rights under the Fair Housing Act by having a discriminatory impact upon Plaintiffs based upon religion, and declaring that such action constitutes an illegal official act under color of law;

D.      Declaratory judgment declaring that portion of the Subject Property of the Rabbinical College used for dwelling purposes is a permitted use under the Fair Housing Act;

E.      Annulment of those provisions of the Village Zoning Code, described above, that violate the Plaintiffs' civil and constitutional rights and that prevent the application for, construction and utilization of the Subject Property as a rabbinical college;

F.      Preliminary and permanent injunctive relief enjoining all Defendants from unconstitutionally and illegally applying the provisions of the Village Zoning Code, described above, that violate the Plaintiffs' civil and constitutional rights and that prevent the application for, construction and utilization of the Subject Property as a rabbinical college as described above;

G.    Enjoinder of the Defendants their officers, employees, agents, successors and all others acting in concert with them from applying their laws in a manner that violates Plaintiffs' civil and constitutional rights by preventing the application for, construction and utilization of the Subject Property as a rabbinical college as described above;

H.    An award to Plaintiffs of full costs, disbursements and attorneys' fees, to the extent permitted by law, arising out of Defendants' actions and land use decisions and out of this litigation; and

I.    Granting such other, further and different relief as to this Court seems just, proper and equitable.

Dated: Nanuet, New York
August 6, 2020

Joseph A. Churgin (JC 6854)
Donna Sobel (DS 3267)
Savad Churgin LLP
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

John G. Stepanovich (JS 8876)
Stepanovich Law, PLC
618 Village Drive, Suite K
Virginia Beach, Virginia 23454

Roman P. Storzer (to file motion to be admitted *pro hac vice*)
Storzer & Associates, P.C.
1025 Connecticut Avenue, N.W.,
Suite 1000
Washington, D.C. 20036

*Attorneys for Plaintiffs*

51

# SAVAD CHURGIN, LLP
## ATTORNEYS AT LAW

Paul Savad
<u>Joseph A. Churgin</u>

Susan Cooper
Donna Sobel

Of Counsel:
Mark F. Goodfriend

55 OLD TURNPIKE ROAD – SUITE 209
(Rt. 59 & THRUWAY EXIT 14)
NANUET, NEW YORK 10954

(845) 624-3820

mail@savadchurgin.com
Fax: (845) 624-3821

February 7, 2020

Lisa Thorsen
Village Clerk
Village of Pomona
100 Ladentown Road
Pomona, NY 10970

*Via Overnight Mail and Fax*

Re: <u>Petition for Text Amendment</u>

Dear Ms. Thorsen:

Enclosed please find the petition, pursuant to Pomona Village Code §§ 130-35-45, of Congregation Rabbinical College of Tartikov, Inc. for a text amendment of the Village Zoning Code.  We have enclosed the fee of $3500, as you advised me that this is the fee for a petition for a text amendment when I came into Village Hall this morning.

Sincerely,

JOSEPH A. CHURGIN
JAC/mc

## PETITION TO THE BOARD OF TRUSTEES OF THE VILLAGE OF POMONA

WHEREAS, Congregation Rabbinical College of Tartikov, Inc. ("Tartikov") is a New York religious corporation formed to establish a rabbinical college as a Torah community for its students and teachers on property that it owns in the Village of Pomona;

THEREFORE, Tartikov hereby petitions the Board of Trustees of the Village of Pomona, pursuant to Pomona Village Code §§ 130-35-45, to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004.

Dated:  Nanuet, New York
        February 7, 2020

SAVAD CHURGIN LLP

By: _____
        JOSEPH A. CHURGIN, ESQ.
        Attorneys for Petitioner
        55 Old Turnpike Road - Suite 209
        Nanuet, New York 10954
        (845) 624-3820

**The Pines Homes Corp.**
**Tartikov Pomona**
**PO Box 304**
**Monsey, NY 10952**

Key Bank
Monsey, NY 10952
50-597/219



**4488**

2/7/2020

Pay to the Order of      Village of Pomona

$ **3,750.0

Village of Pomona
100 Ladentown Road
Pomona, NY 10970

**Three Thousand Seven Hundred Fifty and 00/100**

Memo:

⑈"000004488"⑈ ⑈021905977⑈476" 53217"8⑈"

# FEERICK NUGENT MacCARTNEY PLLC

### ATTORNEYS AT LAW

**ROCKLAND COUNTY OFFICE**
96 SOUTH BROADWAY
SOUTH NYACK, NEW YORK 10960
TEL. 845-353-2000   FAX. 845-353-2789

DONALD J. FEERICK, JR.
BRIAN D. NUGENT*
J. DAVID MacCARTNEY, JR.
MARY E. MARZOLLA*

OF COUNSEL
DAVID J. RESNICK
KEVIN F. HOBBS
MICHAEL K. STANTON, JR.

**ORANGE COUNTY OFFICE**
6 DEPOT STREET, SUITE 202
WASHINGTONVILLE, NEW YORK 10992
*(Not for service of papers)*

**www.fnmlawfirm.com**

*All correspondence must be sent to Rockland County Office*

JENNIFER M. FEERICK
STEPHEN M. HONAN*+
ALAK SHAH*
PATRICK A. KNOWLES*
JOHN J. KOLESAR III
PATRICK J. McGORMAN

*LICENSED ALSO IN NEW JERSEY
+LICENSED ALSO IN CONNECTICUT

February 12, 2020

*Via E-Mail*

Savad and Churgin, LLP
55 Old Nyack Turnpike Road
Nanuet, New York  10954

Attention:  Joseph Churgin, Esq.

Re:    Petition for Text Amendment:  Village of Pomona

Dear Mr. Churgin:

Our office has been provided with a copy of your February 7, 2020 submission to the Village Clerk regarding a Petition pursuant to Article XI of the Village Code.

The Village Board passed a Resolution at the February 10, 2020 Village Board meeting advising our office to communicate and receive future communications from your office regarding the submission.  A copy of that Resolution is attached for your review.  Please note that we have no objection if you wish to submit copies of any communications to the Village Clerk, but request any communications be copied to our office as Counsel to the Village Board of Trustees.

Our office will undertake a preliminary review of this matter and will keep you apprised

FEERICK NUGENT MACCARTNEY, PLLC

JOSEPH CHURGIN, ESQ.
FEBRUARY 12, 2020
PAGE TWO

of any developments.   Please feel free to contact me in the office if you wish to discuss this matter.

Very truly yours,

Brian D. Nugent

BDN/sd
Attachment
cc:     Mayor Ian Banks
        Trustee Carol McFarlane
        Trustee Robert Klein
        Trustee Ilan Fuchs
        Trustee Mendy Lasker
        Village Clerk, Lisa Thorsen



**BOARD OF TRUSTEES Workshop**

**Monday Feb 10, 2020**

**Resolution**

**Trustee Fuchs made the following motion:**

**LET IT BE IT RESOLVED that:**

**Mr Brian Nugent Esq be directed to communicate with Savad Churgin LLP that all future communications concerning the petition for amendment of village zoning code by the application of the Tartikov Rabbinical College be transmitted directly to the offices of Mr Brian Nugent, and he will later communicate and transfer the information and the documents to the Village Board , Mayor and Clerk.**

**Seconded trustee Lasker  4-1**

# FEERICK NUGENT MacCARTNEY PLLC

### ATTORNEYS AT LAW

#### ROCKLAND COUNTY OFFICE
96 SOUTH BROADWAY
SOUTH NYACK, NEW YORK 10960
TEL. 845-353-2000   FAX. 845-353-2789

ORANGE COUNTY OFFICE
6 DEPOT STREET, SUITE 202
WASHINGTONVILLE, NEW YORK 10992
*(Not for service of papers)*

www.fnmlawfirm.com

*All correspondence must be sent to Rockland County Office*

DONALD J. FEERICK, JR.
BRIAN D. NUGENT*
J. DAVID MacCARTNEY, JR.
MARY E. MARZOLLA*

───────

OF COUNSEL
DAVID J. RESNICK
KEVIN F. HOBBS
MICHAEL K. STANTON, JR.

JENNIFER M. FEERICK
STEPHEN M. HONAN*+
ALAK SHAH*
PATRICK A. KNOWLES*
JOHN J. KOLESAR III
PATRICK J. McGORMAN

───────

*LICENSED ALSO IN NEW JERSEY
+LICENSED ALSO IN CONNECTICUT

February 26, 2020

*Via E-Mail*

Savad and Churgin, LLP
55 Old Nyack Turnpike Road
Nanuet, New York  10954

Attention:  Joseph Churgin, Esq.

Re:     Petition for Text Amendment:  Village of Pomona

Dear Mr. Churgin:

As you are aware, our office serves as legal Counsel to the Village Board of Trustees. With respect to the February 7, 2020 Petition to the Board of Trustees to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004, the Village Board declined to formally consider the proposed amendment.

As there was no move to formally consider the Petition, our response is not a formal opinion on the sufficiency of the Petition or any other requirements applicable to the Petition.

As there was no formal consideration of the submitted Petition, our office recommended and the Board resolved to return the full fee that was submitted with the Petition.  We note that your February 7, 2020 correspondence indicated the fee was $3,500, but we note that the check submitted was for $3,750.  Accordingly, our recommendation will be to return the check if it has not been cashed and to otherwise refund the full amount of $3,750 if it was deposited.

FEERICK NUGENT MACCARTNEY, PLLC

JOSEPH CHURGIN, ESQ.
FEBRUARY 26, 2020
PAGE TWO

Please feel free to contact me in the office if you wish to discuss this matter further.

Very truly yours,

Brian D. Nugent

BDN/sd
cc:    Mayor Ian Banks
       Trustee Carol McFarlane
       Trustee Robert Klein
       Trustee Ilan Fuchs
       Trustee Mendy Lasker
       Village Clerk Lisa Thorsen
       Treasurer Dorinda Mittiga