UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CONGREGATION RABBINICAL COLLEGE OF            7:20-cv-06158-KMK
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI MEILECH MENCZER, RABBI JACOB
HERSHKOWITZ, and RABBI CHAIM ROSENBERG,

                                        Plaintiffs,
     -against-

VILLAGE OF POMONA, NY and BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY,

                                        Defendants.
------------------------------------------------------------------------X

## DECLARATION OF MICHAEL TAUBER

Michael Tauber declares as follows, pursuant to 28 U.S.C. § 1746:

      1.     I am a citizen of the United States and of New York, and a resident of Monsey, New York.

      2.     I submit this declaration on behalf of Congregation Rabbinical College of Tartikov, Inc. ("Tartikov") as an officer of Tartikov and, where noted, in my personal capacity.

      3.     I am an Orthodox/Hasidic Jew. My religious beliefs require me to obey the beliefs and practices of my religion.

      4.     For my formal education, I attended Yeshiva Nitra in Mount Kisco, Westchester County. Later, in 1978-1979, I continued Jewish Hebrew studies at a kollel, in Monsey, New York which is a school similar to a college but is strictly for religious studies. There, I continued my religious studies of the Talmud and Jewish Law by studying The Shulchan Aruch.

      5.     Our religious sages and teachers have explained that the study of the Torah is Judaism's highest goal and not only a sacramental act but the greatest of all mizvots or commandments.

      6.     Tartikov and I believe as a matter of religious faith that the Torah embodies the word and will of G-d and that it is authoritative. In addition, from the Torah, our religious sages throughout history wrote the Talmud, The Code of Jewish Law and thousands of commentaries that form the body of religious law that we are religiously and morally obligated to follow.

      7.     As a Jewish man, I had a religious obligation to marry at a young age and to have

a large family.

8. As a matter of religious faith, I believe that the religious basis for having a large family is rooted in Genesis: G-d told Adam and Eve, representing all humankind to "be fruitful and multiply," Genesis 1:28; and again after the flood that consumed almost all of humankind, G-d repeated this command to Noah and his sons on the Ark, Genesis 9:1,7, and to Jacob when he entered the land of Israel, G-d said to him: "I am the Almighty G-d; be fruitful and multiply." Genesis 35:11.

9. In 2004, together with Chaim Babad we decided to form the Congregation Rabbinical College of Tartikov, Inc. I have known Chaim Babad for over four decades.

10. Tartikov is a religious corporation under New York law.

11. We formed Tartikov for the purpose of establishing a rabbinical college in Rockland County, New York in order to provide a religious learning and living community to train the new generation of students to become full-time rabbinical judges. Motivated by its sincere religious belief, Tartikov plans to develop and operate a rabbinical college specifically to train Orthodox Jewish rabbis to be qualified rabbinical judges or *dayanim*.

12. Tartikov believes that it is obligated by its religion to train qualified religious judges to serve Orthodox/Hasidic Communities around the world.

13. Based on our ongoing discussions about how to meet this religious need of the Orthodox/Hasidic community, I had been looking for a suitable property for several years. In that time frame, I had a good sense of the amount of property that would be needed and the kinds of facilities that would be required.

14. Together with other members of my family, I have devoted substantial amounts of time and financial support to Mechon L'Hoyroa, a kollel in Monsey, New York, for the purpose of developing rabbinical judges to serve the Orthodox community.

15. Mr. Babad and I believe as a matter of religious faith that the only way Tartikov would be successful was to follow the instruction of our religious sages and create a community where the students could be secluded and totally devoted to their religious obligations. Our religion refers to this as a "Torah community" or a "Bais Din Community."

16. For many years, Mr. Babad and I discussed our vision that one day we would be able to honor our families' long religious commitment to rabbinical courts and training the rabbinical judges that sit on them.

17. Tartikov believes as a matter of religious faith (as I do) that the Torah community creates a living and learning religious campus which allows our students to dedicate themselves completely to the religious obligations of mastering the Shulchan Aruch, or the Code of Jewish Law, to become full-time rabbinical judges while, at the same time, meeting their religious obligations to their families and to worshipping G-d in the proper way.

18. Mr. Babad's family and my family have been involved in religious training

programs including training of rabbinical judges for decades and we know the commitment and dedication required to complete the intense religious studies necessary to become a qualified religious judge.

19. We also knew that it was essential to the religious faith of those who would study at Tartikov and those who would teach there that we create a Torah community, a place where we believe that these students and their families could live.

20. In addition, because of the necessary but difficult nature of the program of study, training, and preparation, providing housing and free tuition, as well as a stipend, for students admitted to a program for the preparation of rabbinical judges is part of our religious exercise seeking to fulfill the religious duty to provide judges for our people.

21. Tartikov believes as a matter of religious faith that the Torah community will provide the necessary intensive learning interaction, day and night, with their fellow students, teachers and lecturers.

22. Tartikov believes as a matter of religious faith that a Torah community must also have a synagogue, or, as we call it, a shul, so that everyone can pray together.

23. Tartikov believes as a matter of religious faith that a Torah community must be constructed in a way that allows continuous study, minimizes time lost in moving from shul to class to home to courtroom to shul.

24. Tartikov believes as a matter of religious faith that it must provide shuls so that our students are able to meet their religious obligations to be in prayer individually and in community.

25. Learning in this way as part of the Torah community will allow students to have the opportunity to gain knowledge from the teachers and students by interacting with their teachers and discussing the issues with their fellow students. This interactive approach we call chavrusa. Chavrusa is a religious approach for collegial study of the Torah and Jewish law.

26. Tartikov and I know that this full-time study could take up to 15 years.

27. Tartikov believes as a matter of religious faith that Jews are prohibited from resolving our disputes in secular courts, so there is a demand for rabbinical judges.

28. Tartikov believes as of religious faith, only qualified Jewish religious judges should hear and decide disputes between and among Jews in religious courts. These religious courts are called *bais din* and the judges who sit on these religious courts are called *dayanim* (plural) and *dayan* (singular).

29. Tartikov believes as a matter of religious faith that disobeying this religious commandment is very serious because, by going to the civil courts, a Jew ignores the holy laws and legal system that G-d made just for the Jewish people and instead chooses the laws and rules made by man.

30. Tartikov believes as a matter of religious faith that Orthodox/Hasidic Jews also look for help on a daily basis from religious judges on the many religious issues that Jews confront, because our religious laws direct every part of our lives.

31. Tartikov and I believe as a matter of religious faith that our community does not have a sufficient number of religious judges to meet our spiritual duty of resolving disputes through religious courts; and those judges often do not have the complete training necessary to address all of the matters governed by the Code of Jewish Law. We believe that there is a great need for rabbinical judges, so Orthodox Jews are not forced to go to secular courts.

32. Tartikov and I also believe that only qualified Jewish religious judges shall hear and decide disputes between and among Jews, and that there is a shortage of sufficiently trained rabbinic judges.

33. Tartikov believes as a matter of religious faith that the authority to judge in religious matters is based on serious study and mastery of Jewish law.

34. In 2004, a 100-acre parcel in the Village of Pomona became available for purchase. Because it appeared to be the ideal space for Tartikov, I mentioned it to Chaim Babad in one of our meetings. The property sits in the southeast quadrant of the intersection of US Route 202 and New York Route 306, in the Village of Pomona, in Rockland County, New York.

35. At the time of our search for a property for the proposed rabbinical college, I was aware that both federal law and New York state law protected the construction and operation of religious educational institutions, even in communities like the Village of Pomona that require construction of such religious educational institutions to be subject to a special use permitting process.

36. Chaim Babad agreed, so, together we looked at the Property. On examination, we found that the property appeared capable of accommodating the basic plan for the college and Torah community. At that point, we made the decision to purchase the property.

37. The Property was actually purchased by K'hal Minchas Chinuch, which is a religious not-for-profit corporation that Chaim Babad is associated with and donates funds for charitable purposes. K'hal Minchas Chinuch then transferred the property to Tartikov. K'hal Minchas Chinuch appointed me a vice-president for the purpose of facilitating the planned development of the property as the religious college. That appointment terminated when K'hal Minchas Chinuch transferred the property to Tartikov.

38. K'hal Minchas Chinuch purchased the property because Tartikov was not yet incorporated. K'hal Minchas Chinuch made the purchase and then transferred the property to Tartikov when it was able to take possession of it.

39. The Property is the only parcel of property owned by Tartikov.

40. Currently, Chaim Babad and I are the officers of Tartikov, and the trustees for Tartikov include Abraham Halberstam, Naftale Babad, and Rabbi Usher Mandel.

41. I have responsibility for running Tartikov's start-up, including hiring professionals, and any non-religious daily responsibilities.

42. In addition to purchasing suitable property for the establishment of the College, the other principal activity of Tartikov at the present time is to provide financial support in the form of stipends to a group of students that have been admitted to Tartikov and will attend when it becomes operational.

43. These ~~current~~ students include Meilech Menczer, Jacob Hershkowitz, Meir Margulis and Chaim Rosenberg, who are plaintiffs in this action.

44. Tartikov has chosen to provide financial stipends to support these students so they are able to continue their religious studies.

45. Tartikov will be self-funding.

46. We have planned for Tartikov to be a special kollel. Students will only concentrate in the intensive study of the four sections of the Shulchan Aruch (literally meaning the "Set Table"), on which Jewish law is based.

47. There is currently no Torah community in which the plaintiff students can live and study the complete Shulchan Aruch around the Town of Ramapo, New York.

48. Although Tartikov understood what it meant to study all sections of the Shulchan Aruch, we believed that it was necessary to prepare a written version of that plan for the study of the Shulchan Aruch for our earlier litigation, so I asked Meilech Menczer to draft it. His plan of study was reviewed by Mordecai Babad, Chaim's brother, who has agreed to serve as the dean of the College when it is complete. Menczer Declaration Exhibit 2.

49. The study of and instruction on the Shulchan Aruch will be measured by regular testing. As they draw near the conclusion of their studies, they may also undergo the more traditional oral examinations our sages often use to decide whether an applicant is qualified to serve as a rabbinical judge. That certification is called a smicha.

50. There are aspects of our religious faith that motivate us to create the kind of college we contemplate, with the Torah community as a part of it.

51. As a matter of religious faith, Tartikov believes that men are required to marry young and to endeavor to father children. Our students must study, they must marry, they must endeavor to father children, and they must train their children in the Torah.

52. Because of our religious beliefs regarding the study of Torah, because of the daily religious practices of an Orthodox Jew, and because of our religious obligations to our families, our students will have a religious obligation to live on campus along with their families.

53. These religious obligations are the reason for the Torah community campus that we plan to build.

54. In addition to those reasons, our prior experiences have confirmed that the effort that we plan to undertake cannot succeed if students are not living together with like-minded students and their families.

55. Students that seek admission to Tartikov will be required to live on campus as part of our Torah community.

56. Tartikov will not build a subdivision or planned community that will serve the general public. Only students and faculty along with their families, and one or two caretakers, will live on the campus when constructed. These limitations are necessary to ensure that the nature of the Torah community is consistent with the religious obligations of the students.

57. In addition, students who discontinue their participation in the program of rabbinic study and preparation will be required to leave the campus.

58. Tartikov will admit qualified students. Admission to Tartikov is subject to the judgment of our future dean, Rabbi Mordecai Babad who will interview every applicant to review the candidate's background, knowledge, and learning to determine admission. Each student will need to at least complete a high school level program in the Talmud.

59. In order to meet the religious obligations related to the college and the Torah community, we plan to construct classrooms, study halls, courtrooms, a library, residences, and one or more shuls, and a facility to house a mikvah (a ritual bath).

60. As part of the Torah community, our students will have access to teachers and fellow students day and night, in the study halls, courtrooms, shuls, or in the living quarters, and allowing for constant communication and learning opportunities.

61. In addition to study of the Shulchan Aruch, our students are religiously obliged to sit with rabbinical judges and observe as they conduct their cases. "Shimush Talmedei Chachamim" is this religious practice of students observing the work of rabbinical judges, interacting with those judges as they consider cases, and learning how the Code of Jewish Law addresses the many kinds of matters brought to rabbinical judges for resolution or guidance.

62. Because of the students' need to participate in Shimush Talmedei Chachamim as preparation to serve as rabbinical judges, Tartikov plans and intended to provide religious courtroom facilities on the campus for the training of students.

63. Thousands of studies and commentaries discuss and explain the Shulchan Aruch. To fully comprehend and apply the Shulchan Aruch, Tartikov's students will require access to those studies and commentaries. For this reason, Tartikov will provide a library on its campus. Providing the library on campus not only meets the need for studying and understanding the Shulchan Aruch, it allows students to devote themselves fully to their studies, avoiding the sin of *bitul* Torah, or wasting of Torah study through distraction.

64. Tartikov believes as a matter of religious faith that its students will not be able to fulfill all of their religious obligations except by living together with their families.

65. Because of our religious obligations, Tartikov's students and their wives will require access to a mikvah, which Tartikov intends to provide. Plaintiffs believe that the religious need for mikvah is based in the Talmud, as well as other Jewish sources

66. Our planned facilities are not just matters of convenience for our students. We believe that the religious obligations of life as an Orthodox Jew--including the obligations to appoint judges to resolve disputes amongst us and to provide guidance on our obligations in daily life, to appoint only judges who are qualified by reason of their study and mastery to render such decisions, the obligation to marry, to father children, to devote oneself to study of Torah, to engage in collegial discussion of the Torah and Jewish law, and to avoid exposure to that which is immodest and immoral--all are the actual reasons why our plan for the college must be as it is.

67. Because of the quantity of material involved in the Code of Jewish Law, including the Shulchan Aruch itself, and the thousands of commentaries on various sections of the Code, and based on our observations of previous efforts to create such programs, we expect students in our program to undergo a program of about 15 years in length and that, in that program, students will be required to spend their days from about 6 a.m. until about 10 p.m. daily in study, in observation of judges, in collegial examination of the issues that are presented by their studies, with only such time taken from these activities as is required to fulfill the other religious obligations in daily life for an Orthodox Jew.

68. The Association for Advanced Rabbinical and Talmudic Schools ("AARTS") reviewed Tartikov's program and concluded that it would not be eligible for accreditation by AARTS due to our admissions policy, our specialized focus, and the fact that Tartikov could not be reviewed for accreditation in any event until after it has been operational for a year or more. A copy of that letter is attached hereto as **Exhibit 1**.

69. Tartikov has its stated purpose, based on the religious needs of the Orthodox Hasidic community, of training fully equipped rabbinic judges. To accomplish that purpose, Tartikov has concluded that its specialized program must narrowly focus on the necessary materials to do so.

70. Additionally, Tartikov's rabbinical college program does not yet exist and is not operational.

71. The various changes to the zoning code for the Village of Pomona prevent Tartikov from building its rabbinical college; have coerced Tartikov to change its behavior; the college has not been constructed and opened; students have not been trained; courtrooms where they may observe rabbinical judges deciding cases have not been built.

72. On February 7, 2020, Tartikov, through its attorneys, submitted a petition for a text amendment to the Pomona Board of Trustees. The petition requested that, pursuant to Pomona Village Code §§ 130-35-45, Pomona repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004. Churgin Declaration Exhibit 22.

73. On February 26, 2020, Brian Nugent, Esq. sent a letter to Tartikov's attorney, advising Tartikov that "the Village Board declined to formally consider" Tartikov's February 7,

2020 petition and indicating that the text amendment fee would be returned. Churgin Declaration Exhibit 24.

74. We would have been willing to discuss such Petition with the Village, but they did not schedule or pursue such discussions. They simply declined to formally consider our petition.

75. Because of the Village of Pomona's zoning code, and because the Village has refused to consider our Petition for a text amendment (or even an alternative to such Petition), Tartikov cannot construct its rabbinical college, cannot use its property for its planned rabbinical college, and cannot apply for a special permit to do so. The Village and its officials are preventing Tartikov from fulfilling its religious obligations.

76. Tartikov's proposed campus will be located approximately 10 miles from the New Jersey-New York state line.

77. Tartikov's proposed campus will serve students from both New York and outside of New York.

78. Tartikov's proposed campus will involve building construction, employment of workers to construct the facility, purchase of materials to build the facility, and use of interstate highways and communication.

79. Tartikov's proposed campus will involve transfers of funds to those we engage to construct the facility.

80. Tartikov's proposed campus will involve employment of individuals.

81. Tartikov's proposed campus will involve the purchase of goods and services related to its operations and maintenance.

82. Students attending Tartikov will include students from outside the State of New York, and students from outside the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   October 15, 2020
              Nanuet, NY

_____
Michael Tauber

8