# EXHIBIT "I"

No. 20-14

## In the
## Supreme Court of the United States

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., *et al.*,

*Petitioners*,

*v.*

VILLAGE OF POMONA, NEW YORK, *et al.*,

*Respondents.*

On Petition for a Writ of Certiorari to the United
States Court of Appeals for the Second Circuit

## REPLY BRIEF

Joseph A. Churgin
Donna C. Sobel
Savad Churgin
55 Old Turnpike Road,
  Suite 209
Nanuet, New York 10954
(845) 624-3820

Roman P. Storzer
Storzer & Associates, P.C.
1025 Connecticut Avenue NW,
  Suite 1000
Washington, DC 20036
(202) 857-9766

John G. Stepanovich
  *Counsel of Record*
James M. Henderson, Sr.
  *Of Counsel*
Stepanovich Law, PLC
618 Village Drive, Suite K
Virginia Beach, Virginia 23454
(757) 410-9696
john@stepanovichlaw.com

*Counsel for Petitioners*

299617



COUNSEL PRESS
(800) 274-3321 • (800) 359-6859

i

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS..........................i

TABLE OF CITED AUTHORITIES ..............ii

I. Respondents Misapprehend the Nature of the Decision Below and the Article III Standing Requirement of Ripeness...............1

II. Other Than a General Denial, Respondents Failed to Address the Conflicts Amongst the Decisions of the First, Second, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits ......3

III. The Review Sought by Petitioners will Change the Result Below .......................5

CONCLUSION ................................8

*ii*

# TABLE OF CITED AUTHORITIES

*Page*

**Cases**

*Cornell Univ. v. Bagnardi,*
   68 N.Y.2d 583 (1986)............................6

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)............................2

*Nat'l Org. for Marriage, Inc. v. Walsh,*
   714 F.3d 682 (2d Cir. 2013) ..................2, 3

*New York Civil Liberties Union v. Grandeau,*
   528 F.3d 122 (2d Cir. 2008) ....................2

*Ross v. Bank of Am., N.A. (USA),*
   524 F.3d 217 (2d Cir. 2008) ....................2

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149, 134 S. Ct. 2334,
   189 L. Ed. 2d 246 (2014) .......................2

**Statutes and Other Authorities**

U.S. Const. Art. III........................1, 2, 4, 7

42 U.S.C. § 2000cc................................1

42 U.S.C. § 2000cc-2(a)............................1

Doris Ulman Decl., *Congregation Rabbinical College of Tartikov, Inc., et al. v. Village of Pomona, et al.,* Case No. 7:07-cv-06304 .........6

1

Try as they might, Respondents cannot duck the important and recurring circuit conflict evidenced by the decision below. In their Brief in Opposition ("BIO"), Respondents limply doubt the existence of a conflict among eight of the Circuit Courts of Appeal. *Compare* BIO at 10 ("[r]egardless of whether such a split exists") and *id.* ("[e]ven if this case did present the conflict that Petitioners assert – and it does not – this present case would be an unsuitable vehicle for this Court's review") *with* Pet. 11-33 (iterating fully developed conflict among eight of the courts of appeals). Respondents' contentions—regarding the nature of the decision by the Second Circuit, the existence of compelling conflicts among the Circuits, and the assertion that adequate alternative grounds for affirmance exist—are incorrect.

## I. Respondents Misapprehend the Nature of the Decision Below and the Article III Standing Requirement of Ripeness.

Because Article III limits the reach of the federal judiciary to actual cases or controversies, federal courts must assure themselves that the matters over which they exercise jurisdiction are, in fact, justiciable. In cases such as Petitioners', presenting claims redressable under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") (Title 42 U.S.C. §§ 2000cc, *et seq.*), Congress has commanded that courts confine themselves, in determining standing, to "the general rules of standing under article III of the Constitution." *See* Title 42 U.S.C. § 2000cc-2(a).

Elevating form over substance, Respondents argue that Petitioners misapprehend the decision below and

2

confuse the question of *ripeness* with the concept of *standing*. BIO at 8-10. Respondents contend that the decision below examined the question of *standing* through the lens of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and did so in an unremarkable and correct application of *Lujan*. BIO at 7-8. Respondents are wrong.

Respondents arrive at their misplaced conclusion by ignoring that *ripeness* is, as the Second Circuit has elsewhere held, "a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157, n.5, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) ("The doctrines of standing and ripeness 'originate' from the same Article III limitation."). There is no dispute here that the three-part *Lujan* test governs determination of standing under Article III. What Respondents ignore, or dispute, is that a court's determination of the *ripeness* of a matter is a necessary aspect of the first prong of the test in *Lujan, supra,* at 560-61.[1]

Viewed thus, "[c]onstitutional ripeness ... is really just about the first *Lujan* factor" with the result that when a court concludes that "a plaintiff's claim is constitutionally

---

1. *Cf. New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n. 8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.") (quotation marks and alterations omitted); *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (because ripeness and standing "overlap," claims sufficiently "actual and imminent" to establish Article III standing also were ripe for adjudication rather than "merely speculative or hypothetical").

3

unripe," that court has concluded that the "plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *National Organization for Marriage, Inc.*, 714 F.3d at 688.

Here, a straightforward application of the *Lujan* test to Petitioners' claims leads ineluctably to the conclusion that Petitioners possessed the requisite "standing" to assert the RLUIPA challenges that the Second Circuit dismissed.

Because Petitioners' proposed use is completely forbidden in the Village, Petitioners are suffering an "actual" and "concrete" harm, not "conjectural" or "hypothetical." *See* Pet. App. 210a ("Challenged Laws directly and substantially interfere with Plaintiffs' associational rights because the laws bar completely Tartikov's rabbinical college from the Village"). Moreover, Petitioners' injury results directly from the ordinances. *Id.* And, of course, a decision striking down the challenged law would redress Petitioners' injury; after all, Respondents *appealed* the judgment of the district court for the very reason that, under the district court's judgment, Petitioners were liberated from the unconstitutional and/or illegal zoning provisions.

## II. Other Than a General Denial, Respondents Failed to Address the Conflicts Amongst the Decisions of the First, Second, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits.

Petitioners identified a fully developed and significant split among the United States Courts of Appeal for the First, Second, Third, Fifth, Sixth, Seventh, Eighth, and

4

Ninth Circuits on the exact question raised in the Petition. *Compare* Pet. 11-33 (iterating split) with Pet. *i* (stating the question presented). In the face of that serious conflict, Respondents attempt to deflect its impact by omitting any argument of substance.

Instead, "the Village questions" the existence of the conflict but does so without identifying a basis for its doubts that would have benefitted the Court in consideration of the Petition. BIO at 10. Then, having utterly omitted to dispel the identified conflict, Respondents simply declare that the conflict "does not" "exist." BIO at 10.

Respondents invite this Court to whistle past the graveyard, a graveyard in which the Second Circuit and several sister Circuits have buried their obligation to determine standing to sue under RLUIPA solely by reference to constitutional rules of standing, specifically ripeness. Respondents basically ignore that a substantial majority of the Circuit Courts have staked conflicted positions on the Question Presented. At present, RLUIPA claimants confront the unfortunate circumstance that the burden they must satisfy to establish their right to assert a claim under RLUIPA will depend on the federal judicial circuit within which their claims arise. Many RLUIPA claimants will be turned away from the federal courts because some Circuits, including the Second Circuit, have disregarded the congressional command that standing is to be assessed only by reference to Article III principles. This Court's duty to draw conflicting Circuit Courts into a uniform application of federal law should not be shirked here. This Court should grant review on certiorari and resolve that conflict. In doing so, the Court can correct the judgment below that resulted from the Second

5

Circuit's application of a flawed and improper standard in determining the question of Petitioners' standing to assert its claims pursuant to RLUIPA.

### III. The Review Sought by Petitioners will Change the Result Below

Respondents alternatively contend that this Petition is an inappropriate vehicle by which to address the Question Presented by Petitioners because, even if the Court agrees that the conflict exists and even if this Court concludes that the Second Circuit below erred, Petitioners will still be unable to undertake the construction and operation of the planned rabbinical college. BIO at 10-12; *id.* at 12 ("As their petition specifically does not seek review of [Local Law 1 of 2001], even if the petition was granted and the 2004 Law invalidated, the more restrictive barriers of the 2001 Law would remain."). That result obtains, Respondents contend, by operation of another provision of their zoning ordinance—one not at issue here—that will prevent Petitioners from constructing and operating their planned Rabbinical College. BIO at 10-12. In Respondents' view, that other local law means that no *effective* relief can be obtained by Petitioners here. *Id.*

Respondents are wrong.

The provisions of the Village Zoning Code enacted by the passage of Local Law 1 of 2001 *do not* prevent Petitioners from building and operating the planned rabbinical college for two reasons.

First, the provisions of the Village's zoning ordinance added via enactment of Local Law 1 of 2001 are

6

unenforceable--as the Village has *admitted*--under New York common law, including the decision of the New York Court of Appeals in *Cornell Univ. v. Bagnardi*, 68 N.Y.2d 583 (1986). The Village *knows* that, by force of New York common law, those provisions of Local Law 1 of 2001 that *might* have prevented the construction and operation of the planned rabbinical college are *unenforceable*.

Respondents are bound to the facts adduced below. Respondents *admitted below* that those provisions were unconstitutional. *See* Doris Ulman Decl. ¶ 51 (*Congregation Rabbinical College of Tartikov, Inc., et al. v. Village of Pomona, et al.*, Case No. 7:07-cv-06304, Document 296). Moreover, the Village admitted that its addition of the "dormitory" provision to its zoning ordinance, by enactment of Local Law 5 of 2004, was required in order to bring the Village Zoning Code into compliance with requirements of New York law. *See* Doris Ulman Decl. ¶ 48 (*Congregation Rabbinical College of Tartikov, Inc., et al. v. Village of Pomona, et al.*, Case No. 7:07-cv-06304, Document 296).

Second, the provisions of Local Law 1 of 2001 relevant to the claims remaining at issue are not in force and therefore do not injure Petitioners.[2] As the district court found, the Village, by enactment of Local Law No. 1 of 2001 "defined 'educational institution,' for the first time . . . and subjected such institutions to certain restrictions under the special permit approval process, including minimum net lot area, maximum development intensity, frontage, access, set back, parking, and noise

---

2. There certainly would be a standing issue if Petitioners challenged specific zoning provisions that no longer exist.

7

guidelines." Pet. App. 242a-243a. Subsequently, however, the Village enacted Local Law 5 of 2004. Pet. App. 245a. That enactment replaced *several* provisions from Local Law 1 of 2001, as the district court explained. *See* Pet. App. 245a-246a ("Local Law No. 5 of 2004 re-defined 'educational institution' . . . and amended the minimum lot area, frontage, access, setback, and screening guidelines" and "also included a provision permitting the development of dormitories").

Consequently, Respondents are mistaken. The former zoning code provisions enacted through Local Law 1 of 2001 present no obstacle to Petitioners in constructing, opening, and operating their planned rabbinical college.[3]

Because Local Law 1 of 2001 presents no present obstacle to Petitioners' project, it would not render this Court's decision nugatory. Moreover, the assertion that Petitioners "bought into an injury in fact" cannot be squared either with the unenforceable status of the provisions that the Village eliminated or with the prescriptive effect of New York common law on those provisions.

---

3. Respondents also invoke the Second Circuit's assertion that, because the Village's Zoning Code included provisions preventing Petitioners' planned construction, the Petitioners had bought "into an injury in fact" and, therefore lacked "Article III standing." Pet. App. 90a n.289. Respondents fail to account either for the fact that such provisions no longer exist or for the admitted preclusive effect on those provisions resulting from the application of New York common law.

8

## CONCLUSION

For the foregoing reasons, and those stated in the petition for a writ of certiorari, the petition should be granted.

Respectfully submitted,

| | |
|---|---|
| JOSEPH A. CHURGIN | JOHN G. STEPANOVICH |
| DONNA C. SOBEL | *Counsel of Record* |
| SAVAD CHURGIN | JAMES M. HENDERSON, SR. |
| 55 Old Turnpike Road, | *Of Counsel* |
|   Suite 209 | STEPANOVICH LAW, PLC |
| Nanuet, New York 10954 | 618 Village Drive, Suite K |
| (845) 624-3820 | Virginia Beach, Virginia 23454 |
| | (757) 410-9696 |
| ROMAN P. STORZER | john@stepanovichlaw.com |
| STORZER & ASSOCIATES, P.C. | |
| 1025 Connecticut Avenue NW, | |
|   Suite 1000 | |
| Washington, DC 20036 | |
| (202) 857-9766 | |

*Counsel for Petitioners*