**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI MEILECH MENCZER, RABBI JACOB
HERSHOKOWITZ, and RABBI CHAIM ROSENBERG,

                                                           No. 20-cv-6158-KMK

            Plaintiffs,

    -against-

VILLAGE OF POMONA, NY, and BOARD OF
TRUSTEES OF THE VILLAGE OF POMONA, NY,

            Defendants.
-----------------------------------------------------------------X

——————————————————————————

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**
——————————————————————————

Dated: November 20, 2020

FEERICK NUGENT MACCARTNEY, PLLC
By: Patrick A. Knowles
     Mary E. Brady-Marzolla
96 South Broadway
South Nyack, NY  10960
(845) 353-2000
(845) 353-2789 (fax)
pknowles@fnmlawfirm.com
mmarzolla@fnmlawfirm.com

*Attorneys for the Village Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ................................................................................. iii

**PRELIMINARY STATEMENT** ........................................................................ 1

**SUMMARY OF ARGUMENT** ......................................................................... 1

**STATEMENT OF FACTS AND PROCEDURE** ............................................ 3

    A.    Plaintiffs' Complaint ........................................................................... 3

    B.    Corporate Plaintiff, Congregation Rabbinical College of Tartikov, Inc.,
        ("Plaintiff College") ........................................................................... 5

    C.    Challenged Laws – Local Law No. 1 of 2001 and Local Law No. 5 of 2004 ... 6

    D.    The Purported "Petition for Text Amendment" is Insufficient for
        Plaintiffs to Achieve Standing .......................................................... 6

**ARGUMENT** ..................................................................................................... 7

  <u>POINT I</u>

  Standard of Review ................................................................................... 7

      A.    Motion to Dismiss – FRCP 12(b)(1) ...................................... 7

      B.    Preliminary Injunction – FRCP 65(a) ................................... 8

  <u>POINT II</u>

  Plaintiffs' Perfunctory, "All-Or-Nothing" Petition To Repeal The Challenged
  Laws *In Toto* Is Insufficient To Ripen Their Claims Or Establish Their Standing,
  Requiring Denial Of Plaintiffs' Motion And Dismissal Of The Complaint .................. 9

      A.    Plaintiffs cannot meet the "final-decision" test without submitting
         a meaningful application and obtaining a final, definitive position
         from the Village ...................................................................... 12

      B.    The "very narrow" and rarely applied futility exception does
         not apply here ......................................................................... 17

  <u>POINT III</u>

  Plaintiffs Lack Standing For Several Additional Reasons, Requiring Denial
  Of Plaintiffs' Motion And Dismissal Of The Complaint ............................................... 19

A.    The Complaint makes no allegations that Plaintiff College previously obtained the State's authorization to use the term, hold itself out, or transact any business as a "College", as required by New York State law ................................................................................................ 20

B.    The Complaint makes no allegations that Plaintiff College previously obtained the State's authorization to include the operation of a "School" among its corporate purposes as required by New York State Law ............................................................................................... 23

C.    The Complaint fails to plausibly allege Plaintiff College is a "College" under New York State Law by admitting it does not confer any degree of any kind ............................................................... 23

D.    Complaint fails to plausibly allege that Plaintiff College is an "educational institution" under New York State Law ........................... 24

E.    The Complaint makes no allegations that Plaintiff College satisfied and/or obtained exemption from the State's requirements, and the Court and Village lack jurisdiction to exempt Plaintiff College from same ................................................................................................ 25

F.    The Individual Plaintiffs lack standing, too .......................................... 26

POINT IV
Plaintiffs' Claims Otherwise Fail Pursuant To Fed. R. Civ. P. 12(b)(6) ....................... 26

POINT V
Plaintiffs' Preliminary Injunction Motion Seeking Ultimate Relief Must Be Denied ... 27

CONCLUSION  ................................................................................................... 30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

200 E. 84th St. Owners, Inc. v. Salomone & Co.,
    89 CIV. 5035 (JFK), 1989 WL 111105 (S.D.N.Y. Sept. 20, 1989) ........................................... 28

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967) .................................................................................................................... 13

Adrian v. Town of Yorktown,
    341 F Fed.Appx 699 (2d Cir. 2009) ............................................................................. 13, 14, 16

Agins v. City of Tiburon,
    447 U.S. 255 (1980) .................................................................................................................... 14

American Civil Liberties Union v. Clapper,
    804 F.3d 617 (2d Cir. 2015) ........................................................................................................ 8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .................................................................................................................... 27

Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City
    of Long Beach, 298 A.D.2d 583 (2d Dept. 2002) ....................................................................... 26

BT Holdings, LLC v. Vil. of Chester,
    15-CV-1986 (CS), 2016 WL 796866 (S.D.N.Y. Feb. 23, 2016),
    aff'd, 670 Fed.Appx 17 (2d Cir 2016) ................................................................................... 9, 17

Carter v. HealthPort Techs., LLC,
    822 F.3d 47 (2d Cir. 2016) ........................................................................................................... 8

City of Newburgh v. Sarna,
    690 F. Supp. 2d 136 (S.D.N.Y. 2010) ....................................................................................... 28

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013) ....................................................................................................... 12, 19, 20

Congregation Kol Ami v. Abington Twp.,
    309 F.3d 120 (3d Cir. 2002) ....................................................................................................... 15

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona, N.Y.,
    945 F.3d 83 (2d Cir. 2019) ............................................................................................ 1, 6, 10, 11

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona, N.Y.,,
   915 F. Supp. 2d 574 (S.D.N.Y. 2013), aff'd sub nom., 945 F.3d 83 (2d Cir. 2019) ............ 9, 18

Cornell Univ. v. Bagnardi,
   68 N.Y.2d 583 (1986)........................................................................................................ 4, 26

Country View Estates @ Ridge LLC v. Town of Brookhaven,
   452 F. Supp. 2d 142 (E.D.N.Y. 2006) ..................................................................................... 18

Dean v. Town of Hempstead,
   163 F. Supp. 3d 59 (E.D.N.Y. 2016) ....................................................................................... 16

Dougherty v. Town of New Hempstead Bd. of Zoning,
   282 F.3d 83 (2d Cir. 2002) ...................................................................................................... 13

E. Hampton Library v. Zoning Bd. of Appeals of Vill. of E. Hampton,
   31 Misc. 3d 1231(A), 932 N.Y.S.2d 760 (Sup. Ct. 2011) ........................................................ 19

Gilbert v. City of Cambridge,
   932 F.2d 51 (1st Cir. 1991) ...................................................................................................... 17

Goldfine v. Kelly,
   80 F. Supp. 2d 152 (S.D.N.Y. 2000) ............................................................................. 9, 15, 18

Good v. United States,
   39 Fed.Cl. 81 (Fed.Cl.1997) .................................................................................................... 15

Grand River Enter. Six Nations, Ltd. v. Pryor,
   481 F.3d 60 (2d Cir. 2007) ...................................................................................................... 27

Hirsch v. Arthur Andersen & Co.,
   72 F.3d 1085 (2d Cir. 1995) .................................................................................................... 27

Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.,
   452 U.S. 264 (1981).................................................................................................................. 14

In re Livent, Inc. Noteholders Sec. Litig.,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................................... 27

Inst. of Metropolis v. Univ. of State of New York,
   249 A.D. 33 (3d Dept. 1936), aff'd, 274 N.Y. 504 (1937)........................................................ 22

Islamic Community Ctr. for Mid Westchester v City of Yonkers Landmark Preserv. Bd.,
   742 Fed.Appx. 521 (2d Cir 2018) .............................................................................. 13, 14, 17

Johnston v. Sisters of the Poor of St. Francis,
    112 A.D. 524 (App. Div. 1906), rev'd sub nom.,
    Johnston v. Hughes, 187 N.Y. 446 (1907) ............................................................ 24

Kamerling v. Massanari,
    295 F.3d 206 (2d Cir. 2002) ................................................................................... 27

Kinzli v. City of Santa Cruz,
    818 F.2d 1449 (9th Cir. 1987), amended, 830 F.2d 968 (9th Cir 1987)................... 18

Knick v. Township of Scott, Pennsylvania,
    139 S. Ct. 2162 (2019)............................................................................................ 14

Kowalczyk v. Barbarite,
    594 F. App'x 690 (2d Cir. 2014) ............................................................................. 13

Kurtz v. Verizon N.Y., Inc.,
    758 F.3d 506 (2d Cir. 2014) ................................................................................... 13

Lost Trail LLC. v. Town of Weston,
    289 F.App'x 443 (2d Cir. 2008) .............................................................................. 16

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)........................................................................................... 13, 19

MacDonald, Sommer & Frates v. Yolo Cty.,
    477 U.S. 340 (1986)................................................................................... 14, 15, 18

Makarova v. U.S.,
    201 F.3d 110 (2d Cir. 2000) ..................................................................................... 8

Matter of Basha Kill Area Ass'n. v. Town of Mamakating,
    302 A.D.2d 662 (3d Dept 2003)............................................................................. 10

Matter of Structural Tech., Inc. v. Foley,
    56 A.D.3d 677 (2d Dept. 2008)............................................................................... 16

Matter of Wolff v. Town/Vil. of Harrison,
    30 A.D.3d 432 (2d Dept. 2006)............................................................................... 16

Monowise Ltd. Corp. v. Ozy Media, Inc.,
    2018 WL 2089342 (S.D.N.Y. 2018) ....................................................................... 28

Mordy's Appliance Repair Serv. LLC v. Amazon Services LLC,
    2018-2 Trade Cases P 80456 (S.D.N.Y. July 31, 2018),
    aff'd, 756 Fed. Appx. 71 (2d Cir. 2019) ................................................................. 12

Murphy v. New Milford Zoning Comm'n,
    402 F.3d 342 (2d Cir. 2015) .............................................................. 2, 8, 13, 14, 15, 16, 17, 19

Nat'l Org. for Marriage, Inc. v. Walsh,
    714 F.3d 682 (2d Cir. 2013) ..................................................................................... 13

New York Civil Liberties Union v. State of New York,
    3 A.D.3d 811 (3d Dept. 2004), aff'd sub nom.,
    New York Civil Liberties Union v. State, 4 N.Y.3d 175 (2005) ............................................. 25

New York Inst. of Tech., Inc. v. Ruckgaber,
    65 Misc. 2d 241 (Sup. Ct. 1970) .............................................................................. 26

People v. Life Sci. Church,
    113 Misc. 2d 952 (Sup. Ct. 1982), appeal dismissed, 93 A.D.2d 774 (1st Dept. 1983),
    appeal dismissed, 60 N.Y.2d 643 (1983), cert. denied, 469 U.S. 822 (1984) .......................... 22

Plaza Health Lab., Inc. v. Perales,
    878 F.2d 577 (2d Cir.1989) .................................................................................... 30

R-Goshen LLC v. Vill. of Goshen,
    289 F. Supp. 2d 441 (S.D.N.Y. 2003), aff'd, 115 Fed.Appx 465 (2d Cir. 2004) ...................... 14

Rizzo v. Goode,
    423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) ...................................................... 29

S&R Dev. Estates, LLC v. Bass,
    588 F. Supp. 2d 452 (S.D.N.Y. 2008) .................................................................... 13, 17

S. Pac. Transp. Co. v City of Los Angeles,
    922 F.2d 498 (9th Cir. 1990) .............................................................................. 10, 17

Safe Harbor Retreat v. Town of East Hampton,
    629 Fed. Appx. 63 (2d Cir. 2015) ............................................................................ 16

Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City,
    303 F.3d 959 (9th Cir. 2002) .................................................................................. 29

SEC v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990) ................................................................................. 29

Shipping Fin. Servs. Corp. v. Drakos,
    140 F. 3d 129 (2d Cir. 1998) .................................................................................... 8

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,
    549 U.S. 422 (2007) ............................................................................................... 9

Southview Assocs., Ltd. v. Bongartz,
  980 F.2d 84 (2d Cir. 1992) ............................................................ 16

Spann v. Colonial Vill., Inc.,
  899 F.2d 24 (D.C. Cir. 1990).......................................................... 12

Sterngass v. Bowman,
  563 F.Supp. 456 (S.D.N.Y. 1983),
  aff'd, 742 F.2d 1440 (2d Cir. 1983), cert denied, 469 U.S. 823 (1984)................................... 26

Sunrise Detox V, LLC v. City of White Plains,
  769 F.3d 118 (2d Cir. 2014) .......................................................... 13

Tanner Adv. Group, L.L.C. v. Fayette County, GA,
  451 F.3d 777 (11th Cir 2006) .................................................... 19, 20

Thomas v. Town of Mamakating, New York,
  792 Fed.Appx. 24 (2d Cir 2019) ...................................................... 17

Town of Islip v. Dowling Coll.,
  275 A.D.2d 366 (2000) ................................................................ 26

Triebwasser & Katz v. AT & T Co.,
  535 F.2d 1356 (2d Cir. 1976) ......................................................... 28

U.S. v. City of New Haven,
  447 F.2d 972 (2d Cir. 1971) .......................................................... 29

U.S. v. Fell,
  360 F.3d 135 (2d Cir. 2004) ............................................................ 8

UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.,
  660 F.3d 643 (2d Cir. 2011) ............................................................ 8

WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.,
  101 F.3d 259 (2d Cir. 1996) .......................................................... 29

Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,
  473 U.S. 172 (1985)................................................................... 14

Winter v. Nat. Resources Defense Council, Inc.,
  555 U.S. 7 (2008)............................................................... 8, 27, 29

**Statutes, Rules, Codes, and Regulations**

8 NYCRR § 3.29 .................................................................................... 21-22

8 NYCRR § 13.7 ...................................................................................... 21

8 NYCRR § 50.1(k) ................................................................................... 23

Fed. R. Civ. P. Rule 12(b)(1) ................................................................... 1, 7

Fed. R. Civ. P. Rule 12(b)(6) ................................................................. 1, 26

Fed. R Civ. P. Rule 65 ............................................................................ 1, 8

New York State Religious Corporation Law § 2 ............................... 20, 23, 24

New York State Religious Corporation Law § 190 ................................... 23

New York State Education Law § 2 ........................................................... 23

New York State Education Law § 207 ....................................................... 25

New York State Education Law § 214 ....................................................... 24

New York State Education Law § 216 ............................................. 20, 21, 24

New York State Education Law § 224 .............................................. 20, 24

New York State Not-for-Profit Corp. Law § 404 ............................... 20, 23

New York State Village Law § 7-708 ......................................................... 6

New York State Village Law § 7-725 ......................................................... 9

Village of Pomona Code, Chapter 130. ............................................... 4, 6, 7

Village of Pomona Local Law No. 1 of 2001 .................................... *passim*

Village of Pomona Local Law No. 5 of 2004 .................................... *passim*

## PRELIMINARY STATEMENT

Defendants, The Village of Pomona, NY, and Board of Trustees of The Village of Pomona, NY, (together, the "Village"), respectfully submit this memorandum of law (i) in support of the Village's motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and (ii) in opposition to Plaintiffs' motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65.

## SUMMARY OF ARGUMENT

Plaintiffs' spurious reading of the Second Circuit's Order – i.e., that a petition demanding the blanket repeal of two nondiscriminatory, decades-old local laws[1] alone is sufficient to establish a concrete, particularized, and actual injury-in-fact – would, if accepted, render meaningless that Court's concerns over Plaintiffs' failure to submit a formal proposal, apply for a permit, or engage in any other conduct that would "implicate or **invoke *the operation of the challenged zoning laws***." Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona, N.Y., ("Tartikov I"), 945 F.3d 83, 110 (2d Cir. 2019) (emphasis supplied). Plaintiffs did not submit a formal proposal. Plaintiffs did not apply for a permit. And certainly more is needed to implicate or invoke the operation of the challenged zoning laws than a perfunctory petition to revoke the two local laws that enacted them, especially in the absence of any accompanying land use application.

Indeed, even had the Village bowed to Plaintiffs' "all-or-nothing" demand to repeal the

---

[1] In this action, Plaintiffs challenge Local Law No. 1 of 2001 and Local Law No. 5 of 2004, regarding "educational institutions" and "dormitories" of such institutions (the "Challenged Laws").

Yet, despite challenging both the Challenged Laws here, on October 30, 2020, Plaintiffs represented the following to the Supreme Court of the United States in their Rely Brief on their Petition for a Writ of Certiorari from the Second Circuit's Opinion and Order in Tartikov I: "The provisions of the Village Zoning Code enacted by the passage of Local Law 1 of 2001 ***do not*** prevent Petitioners from building and operating the planned rabbinical college" (Def. Ex. I at p. 5 (also available at https://www.supremecourt.gov/docket/docketfiles/html/public/20-14.html) (emphasis in original)); and "The former zoning code provisions enacted through Local Law 1 of 2001 ***present no obstacle*** to Petitioners in constructing, opening, and operating their planned rabbinical college." (id. at p. 7 (emphasis supplied)).

local laws (enacted without any discriminatory intent or effect or knowledge of their rabbinical college idea, see Tartikov I, 945 F.3d at 97-98, 111-19), this Court would still not know "precisely how [Plaintiffs'] can use their property[,]" Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2015)[2], since, most notably, they never submitted a formal development proposal – or any land use application – to the Village.  (See Point II, infra).

Plaintiffs do not otherwise plausibly allege standing.  As a threshold failure, while Plaintiffs seek relief from the Village's zoning code regarding "educational institutions," Plaintiffs do not allege that Plaintiff Rabbinical College of Tartikov, Inc. ("Plaintiff College") is a "college" or other "educational institution" under New York State law.  They do not plausibly allege how they are affected by the local laws they seek to annul.  Indeed, Plaintiff College incorporated under the New York Religious Corporation Law and does not allege that it ever sought or obtained any statutorily required authorizations or consents from New York State[3] to hold itself out, operate, or transact business as a "college" or other "educational institution," as required by New York State statutes, regulations, and courts.  Neither this Court nor the Village has jurisdiction to effectively exempt Plaintiff College from the State's statutory and regulatory requirements via Plaintiffs' declaratory judgment action.  (See Point III, infra).

Further, Plaintiffs did not and cannot meet their burden of establishing a heightened likelihood of success on the merits, irreparable harm, or any other requirement for a preliminary injunction, especially since they effort to obtain the ultimate relief they seek in this action by this application.  (See Points IV-V, infra).

This Court should deny Plaintiffs' motion for injunctive relief and dismiss the Complaint.

---

[2] Unless otherwise indicated, case quotations/citations omit all internal alterations, quotation marks, footnotes, and citations.

[3] As used herein, "New York State" and/or "State" refers to New York State Department of Education, New York State, The University of the State of New York, and/or The Office of the Commissioner of Education of the State of New York, as used in New York State Education Law and the related regulations, except where otherwise noted.

## STATEMENT OF FACTS AND PROCEDURE

**A.      Plaintiffs' Complaint**

Plaintiff College holds itself out via its name and pleadings as a "college" and "educational institution."  Plaintiff College alleges it owns certain real property in the Village "upon which it seeks to build a rabbinical college that, in addition to providing all of the facilities necessary to train rabbinical judges, will include housing for its students and their families." (ECF No. 1; Def. Ex. B[4] – Plaintiffs' Complaint ("Compl.") at ¶ 2).  All Plaintiffs "allege an interest in the construction of a rabbinical college on the Subject Property."  (Id. at ¶ 11).

Plaintiffs again sue the Village seeking relief from the Challenged Laws after the Second Circuit "held that Plaintiffs did not have 'standing' to challenge the Laws (even facially) until they engaged in 'conduct that would implicate or invoke the operation of the challenged zoning laws.'"  (Id. at ¶ 6; see also id. at ¶¶ 4-5).  The gravamen of Plaintiffs' Complaint is that the mere existence of the Challenged Laws precludes the Plaintiffs "from building and operating a Rabbinical College".  (Id. at ¶ 1 and Wherefore Clause).   The Complaint specifically seeks relief from that portion of the Challenged Laws involving the definition of "educational institutions" and "dormitories" of such institutions.  (Id. at ¶¶ 133-39, 160-64).

Assuming, *arguendo*, that Plaintiff College plausibly alleged that it is a "college" or "educational institution" under New York State law in the first instance (which it did not), the Complaint further alleges that Plaintiff College "has engaged in 'conduct that would implicate or invoke the operation of the challenged zoning laws'" (id. at ¶ 220); "Tartikov availed itself of the only conduct available to it that may permit its Rabbinical College use, a petition for a text amendment" (id. at ¶ 221); and "[t]here is no further action that Tartikov can take before the

---

[4] "Def. Ex. ___" refers to the Exhibits annexed to the accompanying Declaration of Mary E. Brady Marzolla, Esq., filed herewith.

Village or any of its bodies to have its petition for text amendment considered" (id. at ¶ 219). More particularly, Plaintiffs allege that "[o]n February 7, 2020, Tartikov submitted its petition for text amendment and required fee for a text amendment to Pomona. A copy of that petition is attached hereto as Exhibit A" and that "[t]he petition requested that, pursuant to Pomona Village Code §§ 130-35-45, Pomona repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004." (Id. at ¶¶ 206-07). That purported "petition" was made in the name of the Plaintiff College and contains one sentence asking for Village-wide blanket "repeal" of the Challenged Laws in their entirety. (Id. at Exhibit A; Def Ex. A).

As to its status as a "college" and/or "educational institution" under New York State law, Plaintiff College alleges, in pertinent part, that it "intends to build a rabbinical college" on the subject property (id. at ¶ 24); "[u]nder New York common law, including the decision in *Cornell University v. Bagnardi*, 68 N.Y.2d 583 (1986), educational institutions, including colleges, enjoy special treatment with respect to residential zoning ordinances because these institutions presumptively serve the public's welfare and morals" (id. at ¶ 108); "[e]ducational institutions are permitted to engage in activities and locate on their property facilities for such accessory uses as are reasonably associated with their educational purpose" (id. at ¶ 113) (internal citations omitted); "[s]tudent housing is reasonably associated with a college or university use" (id. at ¶ 114); and "[u]nder New York law, student housing is considered to be part of an educational institution use." (id. at ¶ 115) (internal citations omitted).

In addition to publicly holding itself out as a "college", the Complaint alleges that Plaintiff College seeks to operate and build a "college" without offering any degrees at all. (See id. at ¶¶ 47-49; ECF No. 41-1 at ¶¶ 24-25 (only alleged degree "'Semichah' itself would ***not*** be granted by the Rabbinical College") (emphasis supplied)). Its alleged purpose is to prepare one for ordination as a rabbi.

**B.**  **Corporate Plaintiff, Congregation Rabbinical College of Tartikov, Inc., ("Plaintiff College")**

Plaintiff College incorporated as a religious corporation under New York State Religious Corporations Law, Article 10, via a certificate of incorporation filed with the Rockland County Clerk's Office on August 5, 2004.  (See ECF No. 38-1 – Certificate of Incorporation; ECF No. 38 at ¶ 9; ECF No. 40 at ¶ 10 ("Tartikov is a religious corporation under New York law")).  In pertinent part, the certificate of incorporation provides as follows:

> **FIRST**:  The name of the Corporation shall be **Congregation Rabbinical College of Tartikov, Inc.**
>
> **SECOND:**  The purposes for which this corporation is formed are as follows: . . .
> (b) To provide a suitable place of devine worship for the members of the corporation, their families, and others of the Jewish Orthodox Faith. . . .
> (d) To establish, maintain and conduct a school for the  of the holy Torah and to maintain classes for the teachings of the customs, traditions and mode of worship of the Jewish Orthodox Faith. . . .
> (h) To carry out any other activities and function permitted by the Religious Corporation Law of the State of New York. . . .
>
> **THIRD**:  The principal place of worship of said corporation shall be located in the County of Rockland at <u>Route 306 and Route 202, Pomona, New York.</u> . . .

The filed certificate of incorporation contains no seals, approvals, and/or consent from the State authorizing (i) use of the term "college" or (ii) inclusion of the operation of a college among its corporate purposes.  (ECF No. 38-1).  The Complaint contains no plausible allegations that Plaintiffs ever made any application for such State seal, approval, consent, or exemption therefrom; or any resulting determination of such application.  (See, Point III, <u>infra</u>).

As of today's date, the Rockland County Clerk's Office indicates no amendments to the aforementioned certificate of incorporation were filed.  (Marzolla Decl. at ¶¶ 9-10; Def. Exs. C-D).

5

### C.      Challenged Laws – Local Law No. 1 of 2001 and Local Law No. 5 of 2004

The Challenged Laws enacted zoning provisions that apply Village-wide (not just to Plaintiff College's property) and include several terms and provisions beyond those Plaintiffs complain of. Yet the gravamen of the Plaintiffs' Complaint involves limited, specific portions of the definitions of "educational institutions" and of "dormitories". (See Compl. at ¶¶ 103, 123-25, 161-62). Plaintiffs seek relief from that portion of the definitions involving "the prohibition against nonaccredited educational institutions and the prohibition against student family housing". (Id. at ¶ 125).

In Tartikov I, the Second Circuit held that the Challenged Laws were not adopted with discriminatory intent and did not have a discriminatory effect. Tartikov I, 945 F.3d at 115, 118-19. Likewise, here, Plaintiffs admit that the Village passed the Challenged Laws for non-discriminatory purposes "to comply with the requirements of New York state case law." (Compl. at ¶ 123).

Also relevant is that Plaintiffs recently represented to the U.S. Supreme Court in Tartikov I: "The provisions of the Village Zoning Code enacted by the passage of Local Law 1 of 2001 ***do not*** prevent Petitioners from building and operating the planned rabbinical college" (Def. Ex. I at p. 5 (emphasis in original); and "The former zoning code provisions enacted through Local Law 1 of 2001 ***present no obstacle*** to Petitioners in constructing, opening, and operating their planned rabbinical college." (id. at p. 7) (emphasis supplied).

### D.      The Purported "Petition for Text Amendment" is Insufficient for Plaintiffs To Achieve Standing

The authority to petition for zoning changes is derived from New York Village Law § 7-708. Under the Village's Code at § 130-35, *et seq.* ("Amendments"), a "petition for any amendment of this chapter . . . shall describe the proposed changes." (Def. Ex. H – Village Code

§ 130-36). The "chapter" referred to in § 130-36 is Chapter 130 of the Village Code ("Zoning"). Accordingly, any amendments sought must describe the proposed changes to the language of the Zoning Chapter. Here, the entirety of Plaintiff College's "petition" stated as follows:

> WHEREAS, Congregation Rabbinical College of Tartikov, Inc. ("Tartikov") is a New York religious corporation formed to establish a rabbinical college as a Torah community for its students and teachers on property that it owns in the Village of Pomona;
>
> THEREFORE, Tartikov hereby petitions the Board of Trustees of the Village of Pomona, pursuant to Pomona Village Code §§ 130-35-45, to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004.

(ECF No. 1-1; Def. Ex. A – "Petition for Text Amendment").

This perfunctory petition fails to describe any proposed amendments to Chapter 130 of the Village Code, as required by § 130-36. Rather, Plaintiff College merely demanded the Village to repeal two decades-old, nondiscriminatory local laws *in toto*. The "petition" contains no description of the text of the Zoning Chapter, no description of what amendments were being proposed, and no reference to the subject matter in the Zoning Chapter sought to be amended. Indeed, the purported Petition's lack of content reveals that Plaintiff College did not genuinely seek or describe any meaningful amendment to the Village's Zoning Chapter. In other words, a meaningless and deficient *pro forma* piece of paper was delivered as a means to justify Plaintiffs' return to this Court (*while their motion for attorney's fees in <u>Tartikov I</u> was pending before this Court*), and in a transparent, baseless, attempt to sidestep the deficiencies identified by the Second Circuit.

## <u>ARGUMENT</u>

### I.      Standard Of Review

**A.      Motion to Dismiss – FRCP 12(b)(1):** A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the Court lacks the statutory or

constitutional power to adjudicate it.  See Fed. R. Civ. P. 12(b)(1).  A plaintiff has the burden of proving by a preponderance of evidence that subject matter jurisdiction exists.  Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).  The court "must presume that [it] cannot entertain [Plaintiff's] claims unless the contrary appears affirmatively from the record." Murphy, 402 F.3d at 347; Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("jurisdiction must be shown affirmatively . . . that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").  The Court may consider, without converting the motion into a motion for summary judgment, evidence beyond the pleadings.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).

Ripeness and standing are jurisdiction issues properly considered under Rule 12(b)(1).  If a case is not ripe for review, subject matter jurisdiction is lacking and the case must be dismissed.  U.S. v. Fell, 360 F.3d 135, 139 (2d Cir. 2004).  If a party cannot establish standing, subject matter jurisdiction is also lacking, requiring dismissal.  Carter, 822 F.3d at 56.

**B.      Preliminary Injunction – FRCP 65(a):** "A preliminary injunction is an extraordinary remedy never awarded as of right." UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc., 660 F.3d 643, 648 (2d Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).  "A party seeking a preliminary injunction must generally show [1] a likelihood of success on the merits, [2] a likelihood of irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in the party's favor, and [4] that an injunction is in the public interest." American Civil Liberties Union v. Clapper, 804 F.3d 617, 622 (2d Cir. 2015).

Plaintiffs concede at page 12 of their Memorandum of Law (ECF No. 33) that the "heightened likelihood of success on the merits standard" applies herein because the relief sought "alter[s] the status quo."  As Plaintiffs agree here, the movant must show a "clear" or

"substantial" likelihood of success on the merits, and make a "strong showing" of irreparable

harm, in addition to showing that the preliminary injunction is in the public interest.  Id.

## II. Plaintiffs' Perfunctory, "All-Or-Nothing" Petition To Repeal The Challenged Laws *In Toto* Is Insufficient To Ripen Their Claims Or Establish Their Standing, Requiring Denial Of Plaintiffs' Motion And Dismissal Of The Complaint.[5]

Despite acquiring property within the Village 16 years ago, Plaintiffs still have not

submitted any formal development proposal to the Village.  Nor have they applied for a building

permit, special permit, waiver, or variance.[6]  Accordingly, the Village could not have rendered a

"final decision" ripening Plaintiffs' claims.  See, e.g., BT Holdings, LLC v. Vil. of Chester, 15-

CV-1986 (CS), 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), aff'd, 670 Fed.Appx. 17 (2d

Cir. 2016) ("In the land use development context, a final decision requires that a development

plan must be submitted, considered and rejected by the governmental entity.  Even when the

plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until

plaintiff also seeks variances that would allow it to develop the property."); id. ("An opinion

issued regarding the zoning classification for a given property is not a substitute for a final

decision rendered as to a development plan."); Tartikov I, 915 F. Supp. 2d 574, 597-602

(S.D.N.Y. 2013), aff'd sub nom., 945 F.3d 83 (2d Cir. 2019) (explaining that the final decision

rule requires a landowner to submit at least one meaningful application, and the futility exception

does not excuse this requirement); Goldfine v. Kelly, 80 F. Supp. 2d 152, 160 (S.D.N.Y. 2000)

("Informal efforts to gain approval for land development are insufficient, by themselves, to

constitute final government action.").

---

[5] "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007).

[6] Village Law 7-725-b governs special use permits, and empowers zoning boards to vary and/or waive the requirements associated with special permits.  Village Law 7-725-b(3) ("Application for area variance"), (5) ("Waiver of requirements").  More particularly, Village Law § 7-725-b(5) enables a board of trustees to authorize a board, such as itself, reviewing special permit applications to "waive" any of the requirements for "approval, approval with modifications or disapproval" of a special permit.

Instead, with only the idea of a hypothetical "rabbinical college" project in the ether, Plaintiff College submitted a perfunctory, boilerplate, one-sentence petition to repeal the Challenged Laws *in toto*, which, if granted, would leave the Village with no regulation over any educational institution within its borders.   Matter of Basha Kill Area Ass'n. v. Town of Mamakating, 302 A.D.2d 662, 664 (3d Dept. 2003) ("[T]he repeal of a municipal ordinance wipes out the act for all purposes.").[7]

While Plaintiffs say that Plaintiff College "petitioned the Board to remove such restrictions" that prohibit its use (whatever that actually is since no formal development proposal has ever been submitted) (ECF No. 33 – Plaintiffs' Memorandum of Law at p. 20), in reality, Plaintiff College petitioned to repeal two Village-wide local laws *in their entirety*.  The improper request to eliminate Village's zoning provisions by wholesale repeal based on "imaginary applications" is not sufficient to establish a concrete, particularized, and ripe injury.  See  S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990) ("To address this claim in this posture, federal courts would be required to guess what possible proposals appellants might have filed with the City, and how the City might have responded to these imaginary applications.").  Plaintiffs' harm remains as conjectural as ever.

It certainly looks as if Plaintiffs' petition was not aimed at obtaining building rights, but was instead intended solely to skirt the Second Circuit's Order in Tartikov I and Article III's mandates.  Indeed, rather than take a practical approach to land use development and comply with this Circuit's laws governing land use disputes, Plaintiffs misconstrue and profoundly misinterpret the Second Circuit's ruling.  In Tartikov I, in dismissing the same claims Plaintiffs

---

[7] To be clear, Plaintiffs' petition sought a blanket repeal to remove the definition of an education institution and all criteria associated with approving an educational institution from the Village's Code.  Such repeal would cause the Village's zoning to revert to prohibiting colleges and universities within the Village, which all recognize would violate New York law.

assert here, the Second Circuit held and explained:

> [Plaintiff College] alleges that the four challenged laws prevent it from building and operating a rabbinical college on the property and thus interfere with its religious freedom. *Tartikov, however, never submitted a formal proposal for the building project, applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws.* **Whatever harm may arise from the application of the zoning laws to TRC's property is merely conjectural at this time.**

Tartikov I, 945 F.3d at 110 (emphasis supplied).  Yet, Plaintiffs ignored the Second Circuit.

By failing to submit a formal development proposal, apply for a permit, or engage in any conduct "implicat[ing] or invok[ing] **the operation of the challenged zoning laws**" before commencing this lawsuit, what "harm may arise from the application of the zoning laws to [the] property" remains merely conjectural.  The perfunctory petition did not implicate or invoke **the operation of the challenged zoning laws**.  Rather, it sought to render them non-existent, despite Plaintiffs arguing as follows to the Second Circuit in Tartikov I:

> Obviously, no case law exists to support the absurd proposition that a plaintiff must first petition the legislative body to repeal a law that infringes on its civil and constitutional rights before a challenge to such law is 'ripe.'  *Williamson County* does not demand such a result, as it speaks only to 'implementing the regulations' and not ***changing*** the regulations themselves . . . . As the parties agree, the regulations prohibit Tartikov's use without the possibility of a variance, special permit, or any other ***implementation*** of the regulations at issue.

(Plaintiffs' 2d Cir. Brief at 2018 WL 6120179, *16 ("2d Cir. Brief") (emphasis in original).

As Plaintiffs themselves surely recognize, more than a mere one-sentence petition to repeal the Village's local laws *in toto* was required.  Formal action implicating or invoking the operation of the challenge zoning laws – i.e., a formal development proposal – was necessary.  Anything less deprives the Village (and this Court) of any understanding of the still-hypothetical project and all ability to accommodate Plaintiffs' project idea, if such was necessary.[8]

---

[8] It is worth noting that had the Second Circuit held that Plaintiffs' only avenue to obtain a ripe injury was through petitioning to repeal the challenged laws, it would have said so, instead of expressly detailing Plaintiffs' failure to "submit[] a formal proposal for the building project, appl[y] for a permit, or engage[] in any other conduct

To sum up thus far – we are no closer to understanding Plaintiffs' injury.  Plaintiffs refuse to submit a formal proposal for their theoretical project and refuse to give the Village a meaningful opportunity to accommodate any such still hypothetical project.  Guesswork and "hypothetical further harm 'rel[ying] on a highly attenuated chain of possibilities' . . . 'does not satisfy the requirement that threatened injury must be certainly impending.'"  Mordy's Appliance Repair Serv. LLC v. Amazon Services LLC, 2018-2 Trade Cases P 80456 (S.D.N.Y. July 31, 2018), aff'd, 756 Fed.Appx. 71 (2d Cir. 2019) (Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410 (2013)).  Otherwise, "Article III would present no real limitation."  Spann v. Colonial Vill., Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) (Ginsburg, J.).  To be sure, permitting access to Federal Court under these undeveloped circumstances would render Article III hollow, undermine well-established Second Circuit's authority, and allow litigants to access to Federal Court on a hypothetical record.  To be sure, under Plaintiffs' position, a prospective litigant could conjure up a development proposal in their minds that just happened to perfectly conflict with a municipality's zoning, and then, without ever submitting a formal proposal for development or attempting to use the municipality's available land use mechanisms, demand the wholesale repeal all challenged zoning provisions (and more), despite the availability of other, less aggressive land use mechanisms.  Of course, any rationale municipality would reject such a demand.  But, nevertheless, under Plaintiffs' view, the litigant would have a federal claim, even if motivated by insincere objectives, because it purportedly "implicate[d]" the zoning laws.  This is contrary to settled law and reason.

### A.   Plaintiffs cannot meet the "final-decision" test without submitting a meaningful application and obtaining a final, definitive position from the Village.

Plaintiffs have the "high burden" to affirmatively establish their claims are

---

that would implicate or invoke *the operation of the challenged zoning laws*."

constitutionally ripe for adjudication.  Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 514-16 (2d Cir.

2014).  The ripeness question requires determining whether the Court should defer considering a

purported dispute until such time as the claims have matured into a more appropriate form.

Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967).[9]

For constitutional challenges based on land-use disputes,[10] the Second Circuit applies a

similar, but distinct, test than traditionally used[11] for assessing whether a case is ripe.  For these

types of challenges, a matter is not ripe until the Court "can look to a final, definitive position

from a local authority to assess precisely how they can use their property."  Murphy, 402 F.3d at

347; Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014) ("[A] non-

final decision on how a parcel of land may be used does not ordinarily give rise to an injury that

is sufficiently concrete and particularized to satisfy Article III."); Kowalczyk v. Barbarite, 594 F.

App'x 690, 691 (2d Cir. 2014) ("[A] party [is required] to obtain a final determination from a

local land-use governing body before bringing" an action in federal court).

Under this well-established test, not just any "decision" suffices – it must be pursuant to a

---

[9]  The Second Circuit has explained that "the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing. . . .  Constitutional ripeness, in other words, is really just about the first *Lujan* factor[,]" whether a plaintiff's injury is concrete, particularized, and actual or imminent. Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013); see also Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014) (The "final-decision requirement helps distinguish between those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent' injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and those in which the injury is 'merely speculative and may never occur, depending on the final administrative resolution,' *Dougherty,* 282 F.3d at 90 . . . .").

[10]  The final decision requirement applies to Plaintiffs' claims here.  See, e.g., Islamic Community Ctr. for Mid Westchester v. City of Yonkers Landmark Preserv. Bd., 742 Fed.Appx. 521 (2d Cir. 2018) (dismissing plaintiffs' First Amendment right to free exercise of religion and RLUIPA claims, among others, as unripe under the final decision requirement); Sunrise Detox, 769 F.3d at 122 ("We have previously extended the final-decision requirement to zoning challenges based on substantive due process, First Amendment rights of assembly and free exercise; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") . . . and a state analogue to RLUIPA."); Adrian, 341 F. App'x 699 (holding that Plaintiff's takings, due process, and equal protection claims failed to satisfy the finality ripeness prong as Plaintiffs neither sought a variance nor submitted a revised application with respect to the denial of their request for a permit to build a car wash); S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (applying to Fair Housing Act claims).

[11]  Traditionally, Courts assessed whether a case was ripe for adjudication by taking a "two-prong inquiry," Murphy, 402 F.3d at 347, regarding both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id.

"*meaningful application*", it must be made by "the **entity charged with implementing** the zoning regulations", and it must be "*final*".  Murphy, 402 F.3d at 348 (emphasis supplied).  "[A] final decision is 'a **definitive position** on the issue that inflicts an actual, concrete injury.'"  R-Goshen LLC v. Vill. of Goshen, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003), aff'd, 115 Fed.Appx. 465 (2d Cir. 2004) (quoting Williamson Co. Reg. Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)) (emphasis supplied).[12]

These requirements serve an important purpose: they ensure that "all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement in the constitutional disputes.'"  Adrian v. Town of Yorktown, 341 Fed.Appx. 699, 700 (2d Cir. 2009) (quoting Murphy, 402 F.3d at 353-54).  They "aid courts in understanding exactly how a litigant is being harmed by a land use designation, and to prevent litigants from rushing into federal courts when the harm could be avoided through a local process."  Islamic Community Ctr., 742 Fed.Appx. at 525.  Indeed, the courts "uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it."  MacDonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 351 (1986); see also Agins v. City of Tiburon, 447 U.S. 255, 260 (1980) ("Because the appellants have not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions."); Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc., 452 U.S. 264, 297 (1981) (holding that claimants could not raise complaints "about the manner in which the challenged provisions of the [Surface Mining] Act have been or will be applied in specific circumstances, or about their effect on particular coal mining operations," since variances and

---

[12] Knick v. Township of Scott, Pennsylvania did not affect the finality requirement of Williamson.  139 S. Ct. 2162, 2169 (2019) ("Knick does not question the validity of this finality requirement, which is not at issue here.").

waivers had not been sought); Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 125 (3d Cir. 2002) ("[F]ederal courts accord substantial deference to local government in setting land use policy.").   Simply put, the final requirement defers federal review of claims until they have "arisen in a more concrete and final form."  Murphy, 402 F.3d at 347.[13]

Here, Plaintiffs certainly cannot show that the Village took a "definitive position" with respect to Plaintiffs' idea for a "rabbinical college" development.  Nor can they show that they submitted any meaningful application.

First, Plaintiffs have not made any meaningful application to obtain a final decision.  "In order to have a final decision, 'a development plan must be submitted, considered, and rejected by the governmental entity.'"  Goldfine, 80 F. Supp. 2d at 159.  What is more, for instance, "[e]ven where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property."  Id. Here, Plaintiffs have never submitted a formal development plan.  And contrary to Plaintiffs' position, "[l]and use planning is not an all-or-nothing proposition."  MacDonald, 477 U.S. at 347.   Good faith and reasonableness are integral elements of any meaningful application. See Good v. United States, 39 Fed. Cl. 81, 102-03 (Fed.Cl.1997) ("By requiring developers to make a good faith effort to satisfy permitting agency concerns after an initial denial, ripeness doctrine reflects the reality that land development often involves a process of negotiation between the permitting agency and developer."), aff'd, 189 F.3d at 1355.  A blanket repeal of the Village's local laws is not a meaningful, good faith, application.

Second, the Village has not rendered a "definitive position" concerning Plaintiffs' idea for

---

[13] In Murphy, the Second Circuit articulated four reasons for this well-established requirement: it [1] "aids in the development of a full record," [2] enables the court to "know precisely how a regulation will be applied to a particular parcel," [3] may enable resolution of the case on "non-constitutional grounds," which the Courts prefer whenever possible, and [4] reflects the Court's adherence to federalism, because "land use disputes are uniquely matters of local concerns more aptly suited for local resolution."  402 F.3d at 348.  Here, all factors weigh in favor of Plaintiffs' claims being unripe.

a development project (since, again, no formal development project has been submitted).  See Dean v. Town of Hempstead, 163 F. Supp. 3d 59, 78-79 (E.D.N.Y. 2016) ("A plaintiff cannot have received a final decision without submitting a plan for development of the property for its intended or another use and seeking available variances or waivers of the requirements at issue.").  There has been no "final, definitive position from a local authority to assess *precisely* how [Plaintiffs'] can use their property."  Murphy, 402 F.3d at 347 (emphasis supplied).  Rather, Plaintiffs seek this Court's intervention on an incomplete factual record where Plaintiffs, themselves, are unable to point to any final determination with respect to Plaintiffs' hypothetical building project.[14]  Plaintiffs are not precluded from engaging in a proper, good faith, land use process, with a meaningful application and/or petition with respect to a tangible project.  Thus, on this record, Plaintiffs cannot allege that the Village made clear that all applications for relief will be denied.  See Lost Trail LLC. v. Town of Weston, 289 Fed.Appx. 443, 445 (2d Cir. 2008); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 98 (2d Cir. 1992) (plaintiff did not obtain final decision because although first application for permit was denied, plaintiff was not precluded from submitting another proposal to board); Adrian, 341 Fed.Appx. at 700 (plaintiffs did not submit revised application, seek variance or present credible evidence that amended applications or variance requests would be futile).

Stated another way, "when there is another, perfectly good door nearby . . . [the plaintiff] must try to open it before running to federal court."  Safe Harbor Retreat v. Town of East Hampton, 629 Fed.Appx., 63, 65 (2d Cir. 2015); id. ("Safe Harbor has failed to apply for the special permit as a semi-public facility, notwithstanding the building inspector's and Zoning

---

[14] The Village was not required to consider the perfunctory petition at all.  See, e.g., Matter of Structural Tech., Inc. v. Foley, 56 A.D.3d 677, 677 (2d Dept. 2008) (holding that because amendment of zoning ordinance is a purely legislative function, town is not required to consider and vote on zoning change application); Matter of Wolff v. Town/Vil. of Harrison, 30 A.D.3d 432, 433 (2d Dept. 2006) (holding same).

Board's invitations that it do so.  Safe Harbor thus 'deprive[d] us of any certainty as to what use of [its] property would be permitted.'") (quoting Murphy, 402 F.3d at 353).

In sum, submitting a formal development proposal, and then, if necessary, pursuing relief such as a meaningful text amendment or variance would certainly further define Plaintiffs' alleged injuries, if any.  Islamic Community Ctr., 742 Fed.Appx. at 525 ("ICCMW's failure to attain a final decision on its application by availing itself of the local procedure that could remedy its alleged harm—whatever that may be, since none has yet been articulated—bars it from litigating this claim in federal court."); Thomas v. Town of Mamakating, New York, 792 Fed.Appx. 24, 27 (2d Cir. 2019) ("Because Thomas can still seek a use variance from the zoning board and has not done so, we cannot evaluate how the Town's zoning rules will ultimately be applied to Thomas's property.").  But Plaintiff College's perfunctory petition to completely repeal the Village's local laws cannot be consider an application to remedy their alleged harm – again, whatever that may be.  To hold otherwise would dispense with a municipality's control over land use, effectively transform Federal Courts into a municipality's legislative branch and zoning boards, and encourage litigants to submit insincere applications to shortcut into Federal Court without a fully developed factual record or actual injury redressable in Court.

## B.    The "very narrow" and rarely applied futility exception does not apply here.

The Second Circuit makes clear that "futility" is the only exception to the finality requirement.  Murphy, 402 F.3d at 349.  To invoke this "very narrow" exception, a plaintiff must meet two requirements: "(1) the inevitability of refusal of its application and (2) that it has already filed at least one meaningful application."  BT Holdings, LLC, 2016 WL 796866, at *6.[15]

---

[15] See also, e.g., S&R Dev. Estates, 588 F. Supp. at 464 ("[T]he exception requires that at least one meaningful application be made"); S. Pac. Transp. Co., 922 F.2d at 504 ("The futility exception does not alter an owner's obligation to file one meaningful development proposal."); Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991) ("[T]he filing of one meaningful application will ordinarily be a necessary, although not alone sufficient, precondition for invoking the futility exception.").

With respect to the first prong, courts recognize two limited circumstances where the denial of future applications is considered inevitable: the relevant government body either has no discretion to grant an exemption or "has dug in its heels and made clear that all such applications will be denied." Mamakating, 792 Fed.Appx. at 27; Goldfein v. Kelley, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) ("[A] sort of inevitability is required; the prospect of refusal must be certain."); Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 151 (E.D.N.Y. 2006) ("Because plaintiff has not yet given the Town Board the opportunity to make a reasonable accommodation, the Court cannot infer that plaintiff made a 'meaningful application' sufficient to invoke the futility exception."). And, with respect to the second, "the futility exception does not discharge . . . an owner's obligation to file one meaningful development proposal." Tartikov I, 915 F. Supp. 2d at 602 (S.D.N.Y. 2013), aff'd sub nom., 945 F.3d 83 (2d Cir. 2019); Goldfine, 80 F. Supp. 2d at 160 ("The Second Circuit has refused to apply the futility exception to the final decision requirement where the plaintiff has submitted, and had denied, only one application for a land-use permit.").

Plaintiffs cannot meet either requirement for futility. They have not submitted a meaningful application, as explained above. See also Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1455 (9th Cir. 1987), amended, 830 F.2d 968 (9th Cir. 1987) ("A 'meaningful application' does not include a request for 'exceedingly grandiose development.'") (quoting MacDonald, 477 U.S. at 354 n. 9). Nor have Plaintiffs demonstrated a certainty of denial. Nothing prevents Plaintiffs from submitting a formal proposal, applying for a permit, seeking a waiver/variance, and making a sincere petition to the Village (not one that does not involve the complete repeal of all local laws concerning educational facilities in the Village).

Based upon the foregoing, permitting the type of gamesmanship that Plaintiffs attempt here would encourage litigants to make perfunctory petitions for the purpose of manufacturing

ripeness and standing.  Such a ruling would invite Courts to decide constitutional issues based on undeveloped factual records, which is the very purpose of the ripeness requirement; namely, a fully developed factual record.  Murphy, 402 F.3d at 348, 351.  Plaintiffs' petition to repeal the Village's previously enacted local laws *in toto* is insufficient to cure Plaintiffs' lack of Article III standing as the Second Circuit held.

### III.    Plaintiffs Lack Standing For Several Additional Reasons, Requiring Denial Of Plaintiffs' Motion And Dismissal Of The Complaint.

To establish Article III standing, Plaintiffs must demonstrate (1) an injury that is concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling.  Clapper, 568 U.S. at 409 (2013).  Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."  Lujan, 504 U.S. at 561.

Yet, focusing nearly exclusively on the Challenged Laws' accreditation term of the "educational institutions" definition, Plaintiffs fail to plausibly allege that the Plaintiff College is an "educational institution" under New York State law in the first instance.  It is not for several reasons, as explained immediately below.  See, e.g., E. Hampton Library v. Zoning Bd. of Appeals of Vill. of E. Hampton, 31 Misc. 3d 1231(A), 932 N.Y.S.2d 760 (Sup. Ct. 2011) (holding petitioner/library chartered by the Board of Regents of the University of the State of New York was "educational institution" as matter of state law for zoning purposes). Accordingly, Plaintiffs have not demonstrated that the Challenged Laws Plaintiff College sought to annul (*in toto*) affect them.  See, e.g., Tanner Adv. Group, L.L.C. v. Fayette County, GA, 451 F.3d 777, 791 (11th Cir. 2006) (holding that plaintiff lacked standing to challenge ordinance where plaintiff did not establish that it was affected by the challenged provision).

First, absent plausibly alleging having the required New York State consent or authorization to hold itself out and transact business as a "college", Plaintiff College violates N.Y. Education Law §§ 216 and 224, as well as several pertinent regulations.  Second, by including operation of a "school" among its purposes in its certificate of incorporation absent plausibly alleging approval by New York State, Plaintiff College violates of the N.Y. Not-for-Profit Corp. Law § 404(d) as incorporated by N.Y. Religious Corporation Law § 2-b(1).  Third, Plaintiff College is not a "college" under New York State law because it admits to not awarding *any* degrees at all.  And fourth, Plaintiff College does not plausibly allege that it applied to the State for an exemption from such requirements and/or received same to date, and both the Court and Village are without jurisdiction to grant same.  Unless and until Plaintiff College obtains the required State approvals and/or exemption from same, Plaintiff College is without standing to seek relief from the Challenged Laws.  Absent compliance with applicable State law, Plaintiff College's purported injury that the Challenged Laws alone preclude the Plaintiffs "from building and operating a Rabbinical College" (Compl. at ¶ 1 and Wherefore Clause) remains conjectural, hypothetical, and not fairly traceable to the Challenged Laws they challenge.  See Clapper, 568 U.S. at 410 (hypothetical future harm relying on a "chain of possibilities" does not satisfy the requirements for establishing standing); Tanner, 451 F.3d at 791.

A.     **The Complaint makes no allegations that Plaintiff College previously obtained the State's authorization to use the term, hold itself out, or transact any business as a "College", as required by New York State law.**

N.Y. Education Law § 224(a) provides, in pertinent part, as follows:

> No individual, association, partnership or corporation not holding university, college or other degree conferring powers by special charter from the legislature of this state or from the regents, shall confer any degree or use, advertise or transact business under the name university or college… unless the right to do so shall have been granted by the regents in writing under their seal.

8 NYCRR § 13.7 provides, in pertinent part, as follows:

> The right to use, advertise or transact business under the name or title "university," "college," . . . shall be granted only to such individuals, copartnerships, associations or corporations as satisfactorily meet the requirements prescribed by the department for the registration of a university, college…respectively.

8 NYCRR § 3.29, Use of the terms "college" and "university", provides, in pertinent part, as follows:

> (a) Except as provided in subdivisions (b) and (c) of this section, **no individual proprietorship, association, co-partnership or corporation**, other than the State University of New York and the City University of New York and their respective component institutions, a community college as defined in section 6301 of the Education Law, and an institution chartered by the Regents or by special act of the Legislature for the purpose of offering registered undergraduate and/or graduate courses of study creditable toward a degree, **shall use the words "college" or " university" in its name**. (emphasis supplied).

> (b) The commissioner, pursuant to Education Law, section 216, may consent to the amendment of the certificate of incorporation of a corporation formed under the Business Corporation Law, whose purposes include the operation of a program or programs of postsecondary education, to include the word "college" in the corporate name, provided that:

> (1) such corporation has been authorized by the Board of Regents to issue one or more academic degrees;

> (2) the program or programs leading to such authorized degree or degrees have been registered by the department;

> (3) such corporation possesses full and current accreditation by an appropriate regional collegiate accrediting association acceptable to the commissioner;

> (4) the corporation and any school or educational program which it may conduct shall be subject to and comply with all of the statutory provisions, rules of the Regents and regulations of the commissioner which would be applicable to a corporation created by the Regents pursuant to section 216 of the Education Law for the same purpose or purposes; and

> (5) the proposed amendment of the certificate of incorporation specifically states that within thirty days after receipt by the corporation of an order by the Board of Regents directing such action, the holders of the majority of all the outstanding shares of the corporation entitled to vote upon an amendment of this certificate of incorporation will cause to be filed with the Secretary of State a certificate of amendment to the certificate of incorporation changing the corporate name to

delete therefrom the word "college." Such an order of the Board of Regents shall be made upon a finding that the corporation does not comply with one or more of the requirements of paragraphs (1) through (4) of this subdivision.

Notwithstanding the foregoing, Plaintiff College does not plausibly allege that it ever was authorized under any provision of New York State law to use the term or hold itself out as a College as it does via its name, throughout the Complaint, and its dealings with the Courts, public, and the Village. Likewise, Plaintiff College does not plausibly allege that it was ever authorized to transact any business as a "college", including via the subject purported "petition" to repeal or any other land use application.

Further, the exceptions to the required authorization set forth in 8 NYCRR § 3.29 (b) and (c) are inapplicable, as the Plaintiff College purports to be an "educational institution" and is seeking relief from the Challenged Laws as an "educational institution"; Plaintiff College was formed under the RCL (not N.Y. Business Corp. Law); Plaintiff College's stated purpose in its certificate of incorporation does not "include the operation of a program or programs of postsecondary education"; and Plaintiff College otherwise fails to satisfy any of the subsection of 8 NYCRR § 3.29 (c)(1)-(5).

Absent such authorization, and plausibly alleging compliance with same, Plaintiff College is in violation of the foregoing New York State statutes and regulations and cannot have standing to operate or transact business as a "college" regardless of the Challenged Laws. See, People v. Life Sci. Church, 113 Misc. 2d 952, 965-66 (Sup. Ct. 1982), appeal dismissed, 93 A.D.2d 774 (1st Dept. 1983), appeal dismissed, 60 N.Y.2d 643 (1983), cert. denied, 469 U.S. 822 (1984); Inst. of Metropolis v. Univ. of State of New York, 249 A.D. 33, 35 (3d Dept. 1936), aff'd, 274 N.Y. 504 (1937) (Use of the title 'School of Law' would have a tendency to induce the belief that its course of study would be a step toward the legal profession).

**B.     The Complaint makes no allegations that Plaintiff College previously obtained the State's authorization to include the operation of a "School" among its corporate purposes as required by New York State law.**

Articles 1 and 2 of the Religious Corporations Law ("RCL") are generally applicable to all groups incorporating under such law, and Article 10 applies to corporations organized by those of the Jewish faith. See RCL § 190. Various provisions of the Not-For-Profit Corporation Law ("N-PCL") are also applicable because of their incorporation by reference (see RCL § 2-b(1])). Among the applicable provisions of the Not-For-Profit Corporation Law is N-PCL § 404 which provides, in pertinent part, as follows:

> (d) Every corporation whose certificate of incorporation includes among its purposes the operation of a school; a college, university or other entity providing post secondary education; a library; or a museum or historical society shall have endorsed thereon or annexed thereto the approval of the commissioner of education, or in the case of a college or a university, the written authorization of the Regents of the university of the state of New York. Any other corporation the certificate of incorporation of which includes a purpose for which a corporation might be chartered by the regents of the university of the State of New York shall mail a certified copy of the certificate of incorporation to the commissioner of education within thirty days after receipt of confirmation of filing.

Absent proper authorization, Plaintiff College is in violation of the N-PCL as incorporated via the RCL, and without standing to seek the relief requested.

**C.     The Complaint fails to plausibly allege Plaintiff College is a "College" under New York State Law by admitting it does not confer any degree of any kind.**

New York State Education Law § 2 defines "college" as "universities and other institutions for higher education authorized to confer degrees". Similarly, 8 NYCRR § 50.1(k) provides "*College* means a higher educational institution authorized by the Regents to confer degrees." Based upon the forgoing, Plaintiff College is not a "college" under New York State Education Law as it admits to awarding no degrees at all. (See Compl. at ¶¶ 47-49; ECF No. 41-1 at ¶¶ 24-25 (only alleged degree "'Semichah' itself would ***not*** be granted by the Rabbinical

College") (emphasis supplied)).[16]

### D. The Complaint fails to plausibly allege that Plaintiff College is an "educational institution" under New York State Law.

Plaintiffs' Complaint and motion is premised upon the erroneous assumption that the Plaintiff College is an educational institution under New York State law.   Having elected to form in 2004 pursuant to RCL Article 10, Plaintiff College is a creature of statute whose "purposes are fixed by its charter and the laws under which it is organized." Johnston v. Sisters of the Poor of St. Francis, 112 A.D. 524, 526 (1st Dept. 1906), rev'd sub nom., Johnston v. Hughes, 187 N.Y. 446 (1907).  Pursuant to the RCL, to constitute a religious corporation, Plaintiff College "must be either, *first,* an incorporated church created to enable its members to meet for divine worship or other religious observances; or, *second,* an incorporated congregation, society or other assemblage, accustomed to meet for the same purpose." Id. (citing RCL § 2).

In contrast, N.Y. Education Law § 216 expressly restricts the incorporation of "colleges" or "[a]ny other entity incorporated for educational purposes" as follows:

> ***No*** school; ***college***; university ***or other entity providing post secondary education***; library; or museum or historical society ***shall be incorporated under the business corporation law, the not-for-profit corporation law, or any other general law without the consent of the commissioner*** or, in the case of a college or university, without the written authorization of the Regents. Any other entity incorporated for educational purposes may be formed under the business corporation law or the not-for-profit corporation law without the consent of the commissioner, provided that such institution or association submits a certified copy of the certificate of incorporation to the commissioner within thirty days after the corporation receives confirmation from the department of state that the certificate has been accepted for filing…. (emphasis supplied).

N.Y. Education Law § 214 provides as follows:

> The institutions of the university ***shall include all secondary and higher***

---

[16] To the extent Plaintiffs allege that they are an individual who will issue a "degree" (not the Plaintiff College), New York State Education Law § 224, provides, in pertinent part, that "[n]o person…shall offer or otherwise advertise a college degree in the state of New York without the prior written approval of the department…"  Again, no plausible allegations are made identifying such individual or that such individual satisfied the foregoing provision by obtaining the State's written approval.

> ***educational institutions which are now or may hereafter be incorporated in this state***, and such other libraries, museums, institutions, schools, organizations and agencies for education as may be admitted to or incorporated by the university. ***The regents may exclude from such membership any institution failing to comply with law or with any rule of the university***. (emphasis supplied).

Again, absent plausibly alleging compliance with the foregoing provision, Plaintiff College is without standing to seek relief as a "college" or "educational institution" from the Challenged Laws.

> **E.      Complaint makes no allegations that Plaintiff College satisfied and/or obtained exemption from the State's requirements, and Court and Village lack jurisdiction to exempt Plaintiff College from same.**

Notwithstanding extensive State legislative and administrative oversight of all public and private "colleges" and "educational institutions", such State oversight does not "modify in any degree with the freedom of the governing body of any seminary for the training of priest or clergymen to determine and regulate the entire course of religious, doctrinal or theological instruction to be given in such institution".   N.Y. Educ. Law § 207.

To the extent it is anticipated that Plaintiffs will argue Plaintiff College is unilaterally and automatically exempt from the foregoing State regulations regarding "colleges" and "educational institutions", that is an issue Plaintiffs must raise and resolve with the proper entities of the State and before coming to this Court or to the Village seeking relief either as a "college" or "educational institution".   In short, neither the Court nor the Village have jurisdiction to effectively exempt Plaintiff College from the State's statutory and regulatory requirements via this declaratory judgment action.   See, e.g., New York Civil Liberties Union v. State of New York, 3 A.D.3d 811, 814 (3d Dept. 2004), aff'd sub nom. New York Civil Liberties Union v. State, 4 N.Y.3d 175 (2005) (holding the choice of which and how many schools are to be identified for registration review is left to the expertise, judgment and discretion of the Commissioner of Education, and "[i]n light of the Commissioner's discretion in designating

schools for registration review, the courts may not substitute judicial oversight for the discretionary management of the public's business by public officers").

Indeed, Plaintiff College stands in stark contrast to, and does not share the status of, any of the educational institutions referred to in cases cited in Plaintiffs' Complaint at ¶¶ 107, 113, 115, 280, *et seq.*, and Memorandum of Law at pages 4-5.[17]  As such, Plaintiffs' attempt to equate Plaintiff College with those educational institutions or colleges mentioned in the cited cases is without merit.

### F.    The Individual Plaintiffs lack standing, too.

Based upon the foregoing, Plaintiff College does not have standing and therefore has no claim of right to any relief under the Challenged Laws.  As the individual Plaintiffs' standing is contingent upon that of the Plaintiff College, the individual Plaintiffs have no standing as well. See, e.g., Sterngass v. Bowman, 563 F. Supp. 456, 458 (S.D.N.Y. 1983), aff'd, 742 F.2d 1440 (2d Cir. 1983), cert denied, 469 U.S. 823 (1984) (dismissing individual shareholder's claim arising out of a corporation's alleged rights for lack of standing).

## IV.    Plaintiffs' Claims Otherwise Fail Pursuant To Fed. R. Civ. P. 12(b)(6).

The pleading standard "demands more than an unadorned, the-defendant-unlawfully-

---

[17] The Court may take judicial notice that each of the following cases cited by Plaintiffs involved educational institutions recognized by New York State Department of Education or its subdivisions:

- Cornell Univ. v. Bagnardi, 68 N.Y.2d 583, 589 (1986) (Property owners/Cornell University and Sarah Lawrence College recognized by New York State Education Department as having registered programs – See Def. Ex. J  (http://www.nysed.gov/COMS/RP090/IRPS2A)  and Def. Ex. K (http://www.nysed.gov/COMS/RP090/IRPS2A), respectively);

- Town of Islip v. Dowling Coll., 275 A.D.2d 366, 367 (2000) (Property owner/Dowling College then recognized by New York State Education Department as having registered programs – See Def. Ex. L (http://www.nysed.gov/COMS/RP090/IRPS2A));

- Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long Beach, 298 A.D.2d 583 (2d Dept. 2002) (Property owner 1 Mesivta of Long Beach represented "the Mesivta operates a religious school, *chartered by the New York State Board of Regents*" in its brief – See 2002 WL 32724284) (emphasis supplied);

- New York Inst. of Tech., Inc. v. Ruckgaber, 65 Misc. 2d 241 (Sup. Ct. 1970)) ("Plaintiff in this declaratory judgment action *is a nonprofit educational corporation, chartered by the Board of Regents of the University of the State of New York*") (emphasis supplied).

harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "[A] court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." <u>In re Livent, Inc. Noteholders Sec. Litig.</u>, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (<u>citing</u> <u>Hirsch v. Arthur Andersen & Co.</u>, 72 F.3d 1085, 1095 (2d Cir. 1995)). Here, Plaintiffs' non-conclusory factual allegations do not allow "the reasonable inference that the [Village] is liable for the misconduct alleged" where, among other failures, Plaintiffs fail to plausibly allege facts that either "invoked the operation of the challenged laws" or is a "college" or "educational institution" in the first instance.

**V.      Plaintiffs' Preliminary Injunction Motion Seeking Ultimate Relief Must Be Denied.**

Plaintiffs cannot show either a heightened or any likelihood of success on the merits due to lack of ripeness, standing, simultaneous challenge of the laws at issue in another venue (i.e., the U.S. Supreme Court), and failure to state a claim. There is also an absence of causally related irreparable harm.

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." <u>Kamerling v. Massanari</u>, 295 F.3d 206, 214 (2d Cir. 2002). "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." <u>Grand River Enter. Six Nations, Ltd. v. Pryor</u>, 481 F.3d 60, 66 (2d Cir. 2007). In other words, Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." <u>Winter</u>, 555 U.S. at 22. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." WRIGHT & MILLER, 11A Fed. Prac. &

Proc. Civ. § 2948.1 (3d ed.).  "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements of the test".  Monowise Ltd. Corp. v. Ozy Media, Inc., 2018 WL 2089342, at *1 (S.D.N.Y. 2018).

      Here, Plaintiffs' argument at page 14 of their Memorandum of Law fails to allege that the Plaintiff College incurred *any* alleged irreparable harm (the only purported "petitioner" for repeal of the Challenged Laws).  Instead, Plaintiffs only argue alleged harm to the individual Plaintiffs as prospective students and teachers of a corporate entity that is neither a "college" nor an "educational institution" under New York State law, and further lacks ripeness or standing to pursue a claim of their own.

      Also relevant is that "a court must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief."  Monowise, 2018 WL 2089342, at *1.  "[C]ourts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."  Id., at *2.  Plaintiffs delayed over six months from February to September 2020 before filing its pre-motion letter regarding unspecified preliminary injunctive relief, thereby warranting denial.

      Moreover, "[i]t is well-established that the purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo. . . ." City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010); see also Triebwasser & Katz v. AT & T Co., 535 F.2d 1356, 1360 (2d Cir. 1976) (reversing issuance of preliminary injunction that "would in effect give the plaintiffs substantially the ultimate relief they seek . . . before there has been any trial of the issues . . . ."); 200 E. 84th St. Owners, Inc. v. Salomone & Co., 89 CIV. 5035 (JFK), 1989 WL 111105, at *2 (S.D.N.Y. Sept. 20, 1989) ("The grant of preliminary injunctive relief barring defendant from interfering with plaintiff's contemplated termination of the garage lease would essentially award plaintiff all of the ultimate relief it seeks.

Thus, a preliminary injunction will not issue for this additional reason.").

As the Second Circuit articulated in <u>WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.</u>, 101 F.3d 259, 261-62 (2d Cir. 1996):

> [T]he preservation of the court's power to render a meaningful decision after trial on the merits . . . has been, and continues to be, a basic principle of preliminary injunction law. The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks. It is "to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits," "to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began[.]"  As a general rule, therefore, a temporary injunction "ought not to be used to give final relief before trial[.]"  Neither should it "permit[ ] one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ."

In short, the objective of a preliminary injunction is to prevent a dissipation that could render a judgment ineffectual.  A preliminary injunction will not issue, however, where it would give plaintiff the actual advantage to be obtained in a final decree.  <u>Id.</u>  Plaintiffs do not establish the balancing of the equities factor, which requires the Court to determine the relative prejudice to each party accruing from a grant or denial of the requested relief.

Plaintiffs' preliminary injunction is also not in the public interest.  As a guidepost, Courts pay particular regard to the public consequences of employing the extraordinary remedy.  <u>Winter</u>, 555 U.S. at 24.   The inquiry primarily addresses impact on non-parties rather than parties. <u>Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City</u>, 303 F.3d 959, 974 (9th Cir. 2002); <u>see e.g.</u>, <u>U.S. v. City of New Haven</u>, 447 F.2d 972 (2d Cir. 1971) (closing of airport runway inflicted irreparable harm on public).  Likewise, an injunction against a government agency must be structured to take into account "the well-established rule that the government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'"  <u>Rizzo v. Goode</u>, 423 U.S. 362, 378-79 (1976); <u>see, e.g.</u>, <u>SEC v. Unifund SAL</u>, 910 F.2d 1028, 1035-36 (2d Cir. 1990) (recognizing deferential preliminary injunction standard for SEC because "the

standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief"); Plaza Health Lab., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989) (injunction against governmental action taken in the public interest requires a more rigorous standard).

The public will not suffer if Plaintiffs' motion is denied.  But if Plaintiffs' motion is granted, the public will be burdened by the implicit approval of Plaintiffs' tactics in avoiding well-settled Second Circuit precedent and the land use process that every property owner in the Village is bound by; they must submit a formal proposal for development or apply for a permit. Also contrary to the public interest is allowing Plaintiff College to bypass settled State law intended to protect the public from any entity's unauthorized representation of itself as a "college" or transacting business in the name of a "college" when it is not.

## CONCLUSION

Based on the foregoing, the Village respectfully requests that the Court grant Defendants' motion to dismiss the Complaint in its entirety and deny Plaintiffs' motion for preliminary injunction in its entirety, together with such other relief as this Court may deem just and proper.

Dated: November 20, 2020

Respectfully submitted,

/s/ Patrick A. Knowles
Patrick A. Knowles
Mary E. Brady-Marzolla
FEERICK NUGENT MACCARTNEY, PLLC
96 South Broadway
South Nyack, NY  10960
(845) 353-2000
(845) 353-2789 (fax)
pknowles@fnmlawfirm.com
mmarzolla@fnmlawfirm.com

*Attorneys for the Village Defendants*

To: All Counsel of Record (by ECF)