**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
**CONGREGATION RABBINICAL COLLEGE OF**       7:20-cv-06158-KMK
**TARTIKOV, INC., RABBI MORDECHAI BABAD,**
**RABBI MEILECH MENCZER, RABBI JACOB**
**HERSHKOWITZ, and RABBI CHAIM ROSENBERG,**


                                 **Plaintiffs,**

        -against-


**VILLAGE OF POMONA, NY and BOARD OF TRUSTEES OF**
**THE VILLAGE OF POMONA, NY,**

                                 **Defendants.**
-------------------------------------------------------------------------X


# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Joseph Churgin (JC 6854)
Donna Sobel (DS 3267)
Savad Churgin
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Stepanovich Law, P.L.C.
John G. Stepanovich
618 Village Drive, Suite K
Virginia Beach, Virginia 23454
(757)-410-9696
john@stepanovichlaw.com

Storzer & Associates, P.C.
Roman P. Storzer, admitted *pro hac vice*
1025 Connecticut Avenue, NW – Suite 1000
Washington, D.C. 20036
(202) 857-9766
storzer@storzerlaw.com



Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION .............................................................................................1

I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE VILLAGE'S ZONING
      REGULATIONS THAT PROHIBIT THEIR USE OUTRIGHT.......................................1

            A.    Plaintiffs Have Engaged in Conduct that "Implicate[s] . . . the Operation
                  of the Challenged Zoning Laws." ...............................................................4

                        1.    Plaintiffs' repeal petition implicated the operation of the
                              Village's zoning challenged zoning laws. ...........................4

                        2.    Any other "conduct" would have been futile as Defendants
                              lacked the authority to grant it. ............................................8

            B.    Defendants' Arguments Regarding Plaintiffs' Petition Should Be
                  Rejected. ...................................................................................................11

                        1.    Defendants' argument that rejection of a "blanket" petition
                              to repeal is immune from review should be rejected. ........12

                        2.    Defendants' argument that the Petition did not "describe
                              the proposed changes" of the chapter must fail. ...............13

                        3.    Defendants' proposed exception for "perfunctory" petitions
                              should not be adopted. .......................................................13

                        4.    Defendants' policy argument concerning the land use
                              regulations of schools is irrelevant to the question of
                              standing. ..............................................................................14

                        5.    Defendants cannot evade judicial review simply by
                              refusing to consider the Petition. .......................................14

                        6.    Local Law 1 of 2001. ..........................................................15

II.   DEFENDANTS' ARGUMENTS REGARDING "SEVERAL ADDITIONAL
      REASONS" DO NOT RELATE TO STANDING. .......................................................16

            A.    Defendants' Arguments are Barred by the Doctrine of Issue Preclusion. .16

            B.    An Alleged Violation of Educational Law, Which Has Never Been
                  Prosecuted, Does Not Bar Plaintiffs' Relief in this Action. ......................18

            C.    Defendants' Assertion That Plaintiff Is Not an Educational Institution
                  Under New York Law is Irrelevant to the Question of Standing. .............19

      D.      The Individual Plaintiffs Have Standing.....................................................19

III.    DEFENDANTS' ARGUMENTS REGARDING THE APPROPRIATENESS OF INJUNCTIVE RELIEF SHOULD BE REJECTED...........................................................20

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*ACORN v. Cty. of Nassau*, No. 05-CV-2301, 2006 WL 2053732 (E.D.N.Y. July 21, 2006) ...... 19

*Adrian v. Town of Yorktown*, 341 F. App'x 699 (2d Cir. 2009) .................................................. 10

*Agins v. City of Tiburon*, 447 U.S. 255 (1980) ............................................................................ 10

*Bennett v. Spear,* 520 U.S. 154 (1997) ........................................................................................... 8

*Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) ........................................................................ 12

*Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267 (S.D.N.Y. 2009) ........................ 13, 14

*BT Holdings, LLC v. Vil. of Chester*, 15-CV-1986 (CS), 2016 WL 796866 (S.D.N.Y. Feb. 23, 2016), *aff'd*, 670 Fed. Appx. 17 (2d Cir. 2016 ........................................................................ 10

*Cent. UTA of Monsey v. Vill. of Airmont, New York*, No. 18 CV 11103 (VB), 2020 WL 377706 (S.D.N.Y. Jan. 23, 2020)................................................................................................................ 2

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) ........................................................................................................................................ 19

*Chicago & S. Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103 (1948)......................................... 7

*Coal. For Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244 (10th Cir. 2001)............... 15

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019), *cert. denied, Rabbinical Coll. v. Pomona, NY*, No. 20-14, 2020 WL 6829150 (Nov. 23, 2020) ..................................................................... *passim*

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574 (S.D.N.Y. 2013) ............................................................................................................... *passim*

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426 (S.D.N.Y. 2017) ................................................................................................................................ 9

*Cornell Univ. v. Bagnardi*, 68 N.Y.2d 583, 503 N.E.2d 509 (1986)............................................. 5

*Covenant Christian Ministries, Inc. v. City of Marietta, Georgia*, 654 F.3d 1231 (11th Cir. 2011) .......................................................................................................................................................... 12

*Dean v. Town of Hempstead*, 163 F. Supp. 3d 59 (E.D.N.Y. 2016)............................................... 8

*Ecogen, LLC v. Town of Italy,* 438 F. Supp. 2d 149 (W.D.N.Y. 2006)...................................... 2, 5

*Francis v. Nichols*, No. 16-CV-1848, 2017 WL 1064719 (S.D.N.Y. Mar. 21, 2017)................. 18

*Goldfine v. Kelly*, 80 F. Supp. 2d 153 (S.D.N.Y. 2000) .............................................................. 10

*Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc*., 452 U.S. 264 (1981) ................... 11

*In re Dunmore Homes, Inc.*, 380 B.R. 663 (Bankr. S.D.N.Y. 2008)............................................... 9

*Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 Fed. Appx. 521 (2d Cir. 2018)............................................................................................................ 10

*Kowalczyk v. Barbarite*, 594 F. App'x 690 (2d Cir. 2014)........................................................ 10

*Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506 (2d Cir. 2014) ......................................................... 10

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).................................................................. 11

*MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340 (1986) ............................................ 10

*Make the Rd. New York v. Pompeo*, No. 19 CIV. 11633 (GBD), 2020 WL 4350731 (S.D.N.Y. July 29, 2020)............................................................................................................................... 2

*Marvel Characters, Inc. v. Simon,* 310 F.3d 280 (2d Cir. 2002) ................................................ 17

*Matter of Basha Kill Area Ass'n. v. Town of Mamakating*, 302 A.D.2d 662 (3d Dept. 2003) ..... 13

*Mirzoyan v. Gonzales*, 457 F.3d 217 (2d Cir. 2006)..................................................................... 3

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005) .......................... 5, 6, 7, 11

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013)........................................ 5

*New Hampshire v. Maine,* 532 U.S. 742 (2001) ......................................................................... 17

*New York v. United States Dep't of Homeland Sec.*, No. 19 CIV. 7777 (GBD), 2020 WL 4347264 (S.D.N.Y. July 29, 2020) ....................................................................................................... 2

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012)................... 12

*Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341 (2d Cir. 2008)......................................... 2

*RGoshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441 (S.D.N.Y. 2003)..................................... 10

*S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452 (S.D.N.Y. 2008)..................................... 10

*S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498 (9th Cir. 1990) ................................. 10

*Safe Harbor Retreat LLC v. Town of East Hampton, N.Y.*, 629 Fed. Appx., 63 (2d Cir. 2015) .. 11

*Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725 (1997) ............................................. 2, 11

*Sunrise Detox V. LLC v. City of White Plains*, 769 F.3d 118 (2d Cir. 2014) .............................. 10

*U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016) ...................................... 15

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (emphasis added), *overruled by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019).. ................................................................................................................................................ 6, 7

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012) ....................................................................... 17, 18

## Statutes

42 U.S.C. § 2000cc-2 ............................................................................................................ 12, 16

5 U.S.C. § 704 ........................................................................................................................... 15

N.Y. VILL. LAW § 7-725-b ........................................................................................................ 8

VILLAGE CODE § 110-12 .................................................................................. 9

VILLAGE CODE § 115-10 .................................................................................. 9

VILLAGE CODE § 118-17 .................................................................................. 9

VILLAGE CODE § 130-12 ................................................................................ 14

VILLAGE CODE § 130-35 .................................................................................. 4

VILLAGE CODE § 130-36 ........................................................................... 13, 14

VILLAGE CODE § 130-38 .................................................................................. 7

VILLAGE CODE § 130-45 ................................................................................ 14

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................... 4

MERRIAM-WEBSTER DICTIONARY, available at https://www.merriam-
webster.com/dictionary/implicate (last accessed Dec. 5, 2020) .............................. 4

**Constitutional Provisions**

U.S. CONST. Art. III ........................................................................................ 12

# INTRODUCTION

The Village of Pomona and its Board of Trustees (the "Village" or "Defendants") claim that Plaintiffs lack standing to challenge, even facially, certain provisions of its Zoning Code that ban their religious land use outright.  By petitioning the Board of Trustees to repeal two Local Laws that prohibit Plaintiffs' rabbinical college, the Plaintiffs have taken the only action available to them to implicate the operation of the challenged laws.  But the Defendants argue that such a Petition is not enough.  Instead, they claim that Tartikov must also file futile applications for permits and variances that they themselves have admitted they have no discretion to grant.  The Defendants also take issue with the form of Tartikov's Petition, claiming that another form of petition would be preferable than one for repeal.  This argument is irrelevant to the question of whether a final decision was rendered, specifically whether Plaintiffs have suffered injury in fact.

Additionally, Defendants argue that Plaintiffs lack standing due to their belief that Congregational Rabbinical College of Tartikov, Inc. ("Tartikov") has committed some hypothetical violation of the New York Educational Law.  These arguments are barred by the doctrine of issue preclusion and are completely irrelevant to Plaintiffs' claims that the Village's laws and actions prevent them from exercising their religious beliefs.  Finally, even if there were any merit to these arguments, the individual plaintiffs would still have standing.

## I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE VILLAGE'S ZONING REGULATIONS THAT PROHIBIT THEIR USE OUTRIGHT.

Plaintiffs acknowledge the paradoxical task of addressing the question of standing to facially challenge land use regulations subject to the Court of Appeals decision[1] in this case.  Prior to the Second Circuit's decision in the earlier action between Plaintiffs and Defendants, and as this

---

[1] The Supreme Court has now denied the Plaintiffs' Petition for Certiorari filed in the original action. *Rabbinical Coll. v. Pomona, NY*, No. 20-14, 2020 WL 6829150 (Nov. 23, 2020).

Court previously held, there was no question that a facial challenge to a law is immediately ripe for review, from "the moment the [Challenged laws] [were] passed.'" *Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725, 736 n.10 (1997); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 384-85 (S.D.N.Y. 2015) ("*Tartikov II*"), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019) ("*Tartikov IV*"), *cert. denied, Rabbinical Coll. v. Pomona, NY*, No. 20-14, 2020 WL 6829150 (Nov. 23, 2020); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 595 (S.D.N.Y. 2013) ("*Tartikov I*"), *aff'd sub nom., Tartikov IV*; *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme,* 539 F. Supp. 2d 524, 536 (D. Conn. 2008); *Ecogen, LLC v. Town of Italy,* 438 F. Supp. 2d 149, 155 (W.D.N.Y. 2006). This Court has not cited the Second Circuit's decision in cases that continue to hold facial challenges ripe. *See Make the Rd. New York v. Pompeo*, No. 19 CIV. 11633 (GBD), 2020 WL 4350731, at *7 (S.D.N.Y. July 29, 2020) (citing *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (citations omitted)); *New York v. United States Dep't of Homeland Sec.*, No. 19 CIV. 7777 (GBD), 2020 WL 4347264, at *3 (S.D.N.Y. July 29, 2020). Judge Briccetti applied this Court's *Tartikov* holding regarding standing to facially challenge a law in another post-*Tartikov* RLUIPA case:

> The Court agrees with Judge Karas's reasoning in Tartikov I and applies the same standard here.

> 1. Facial Challenges to the Moratorium

> Plaintiffs' facial challenges to the Village's interim land use development moratorium became ripe when the moratorium was passed on February 8, 2017. See Tartikov I, 915 F. Supp. 2d at 595.

*Cent. UTA of Monsey v. Vill. of Airmont, New York*, No. 18 CV 11103 (VB), 2020 WL 377706, at *9 (S.D.N.Y. Jan. 23, 2020). The Court did not hold that a legislative petition to amend or repeal the moratorium at issue was necessary before the matter became "ripe." *Id.*

The *Tartikov IV* decision should not extend beyond its specific holding, nor does it control the present facts. Here, subsequent to that decision, Tartikov took additional action that implicated the zoning laws at issue by filing with Pomona its petition for a text amendment ("the Petition"). Moreover, Pomona acted in response to Tartikov's Petition, refusing to consider it and voting to return the petition fee. Consequently, the Second Circuit requirement of some conduct that would implicate or invoke the operation of the challenged zoning laws in order for Tartikov to demonstrate standing has now been satisfied. Any additional statements in the opinion relied upon by the Defendants constitute mere *dicta*. *Cf. Mirzoyan v. Gonzales*, 457 F.3d 217, 223 n.5 (2d Cir. 2006).

The Second Circuit decided that the prior facial challenge to the land use regulations was not "ripe" because Tartikov had not

> submitted a formal proposal for the building project, applied[2] for a permit, or engaged in any other conduct that would implicate or invoke the operation of the challenged zoning laws.

*Tartikov IV*, 945 F.3d at 110. The Second Circuit did not decide whether a petition to repeal certain land use regulations, as opposed to a petition crafting different replacement regulations, is somehow insufficient to invoke the Court's jurisdiction to hear a facial challenge to such regulations. Now that Tartikov has "engaged in . . . conduct that . . . implicate[d] . . . the operation of the challenged zoning laws," as discussed below, its decision has no further effect.

---

[2] This destroys the distinction between a facial and as-applied challenge. The Court of Appeals, although it was aware that facial challenges were raised in the original action, *id.* at 107, did not address the distinction between facial and as-applied challenges in its standing discussion. *Id.* at 109-10. Further, it equated its analysis of the two in its discussion of Tartikov's cross-appeal. *Id.* at 125 ("The as-applied claims therefore fail here for the same reason as the facial challenges." (footnote omitted)). Plaintiffs respectfully suggest that the precedents of the Supreme Court, the Second Circuit, and this Court that hold that facial challenges are immediately ripe should continue to control here, where the additionally imposed requirement of engaging in conduct that implicated the operation of the challenged zoning laws has now been met.

A. Plaintiffs Have Engaged in Conduct that "Implicate[s] . . . the Operation of the Challenged Zoning Laws."

    1. *Plaintiffs' repeal petition implicated the operation of the Village's zoning challenged zoning laws.*

As discussed in Plaintiffs' original memorandum, pursuant to the Village's own zoning regulations and using the procedure described therein, Tartikov submitted a petition to repeal the challenged land use regulations.  These procedures are explicitly outlined in Defendants' laws:

> The Board of Trustees may from time to time on its own motion, **on petition** or on recommendation of any board, agency or official of the Village, after public notice and hearing, amend, supplement, **repeal** or change the regulations and districts established under this chapter.

VILLAGE CODE § 130-35 (emphases added).  Plaintiffs followed the procedures outlined in the following sections of the Code.  *See id.* §§ 130-36 -- 130-45.  This action is "conduct" under any reasonable interpretation of the word.  *See* "Conduct," BLACK'S LAW DICTIONARY (11th ed. 2019) ("Personal behavior, whether by action or inaction, verbal or nonverbal").

Further, Plaintiffs' conduct of filing the Petition "implicate[d] . . . the operation of the challenged zoning laws."  *See* "Implicate," BLACK'S LAW DICTIONARY (11th ed. 2019) ("2. To bring into play; to involve or affect").  The Petition "involve[d]" and "affecte[d]" the Challenged Laws.  Likewise, the relevant dictionary definition of "implicate" is "to involve in the nature or operation of something."  MERRIAM-WEBSTER DICTIONARY, available at https://www.merriam-webster.com/dictionary/implicate (last accessed Dec. 5, 2020).  A repeal petition involves the nature of the challenged laws by removing the offending provisions from the Village's Code.  And a repeal petition involves the operation of the challenged laws by preventing them from being enforced.  Defendants make the unreasonable argument that repealing the Challenged Laws would somehow not do so.  This self-serving statement cannot be true under any tortured interpretation of "implicate."  The Challenged Laws would no longer be on the books of the Village.

Therefore, even under *Tartikov IV*, Plaintiffs have met the requirement of standing or "ripeness," which is the specific component of standing at issue here. *See* Def. Mem. at 13 n.9; *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (ripeness is "a specific application of the actual injury aspect of Article III standing.").

Additionally, the Defendants' rejection of Tartikov's Petition was a "final" decision. In the *Murphy* case, the Court of Appeals held:

> Following the guideposts outlined in *Dougherty* we ask: (1) whether the Murphys experienced an immediate injury as a result of New Milford's actions and (2) whether requiring the Murphys to pursue additional administrative remedies would further define their alleged injuries.

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 351 (2d Cir. 2005). Tartikov has certainly experienced an immediate injury resulting from the Village Board's refusal to consider its petition. Had the Petition been considered, and had the offending provisions been repealed, Tartikov's land use (a non-accredited rabbinical college with student family housing) would no longer be prohibited.[3] *See, e.g., Cornell Univ. v. Bagnardi*, 68 N.Y.2d 583, 592, 503 N.E.2d 509 (1986) ("Notably, the zoning ordinance, whose constitutionality plaintiff attacked, has been repealed, and it is the amended ordinance which will unquestionably govern plaintiff's new application for a special permit," thus mooting declaratory judgment action regarding prior ordinance (emphasis added)). This immediate harm stands in stark contrast to the injury alleged in *Murphy*, where "the

---

[3] The fact that the Village's Zoning Code would revert back to its pre-2001 condition, which prohibited colleges outright in the Village, does not affect the analysis, as such prohibition would be unenforceable, as Defendants admit:

> Such repeal would cause the Village's zoning to revert to prohibiting colleges and universities within the Village, which all recognize would violate New York law.

Def. Mem. at 10 n.7 (emphasis added). *See Cornell Univ.*, 68 N.Y.2d at 597 ("Both schools should be given the opportunity to apply for special permits without having to show a special need"). In other words, if the Local Laws would have been repealed, Plaintiffs would be entitled to use the Property as a rabbinical college, at least with a special exception, under New York law.

cease and desist order did not inflict an immediate injury." *Murphy*, 402 F.3d at 351 (2d Cir. 2005).[4]  In *Murphy*, the Second Circuit rejected the plaintiff's claim of immediate injury because their prayer meetings could have continued, had they sought a final decision from the Zoning Board of Appeals, as such appeal would automatically stay enforcement.  *Id.*  Here, on the other hand, Plaintiffs are prevented from using their property for religious education and worship, and the repeal Petition would have—if granted—permitted them to engage in such constitutionally protected conduct.

It is false to claim that we are "no closer to understanding Plaintiffs' injury."  Def. Mem. at 12.  The Village's laws prohibit outright non-accredited colleges, and student family housing, both of which are unquestionably part of Tartikov's proposed use.  Tartikov's proposed land use, and the injury to the same, is not conjectural.  The fact that, for example, the color of the buildings or the layout of the driveways have not been finalized does not mean that there is any doubt about the land use itself.  There is no doubt that Tartikov's land use is completely forbidden, and the rejection of the Petition independently and conclusively confirms that injury.

Using the Supreme Court's language out of context, Defendants suggest that there must a "final, definitive position" (ECF No. 45 at 12) from local <u>legislators</u> as to what <u>laws</u> they might or might not enact, amend, or repeal in the future that would affect use of property, as opposed to the Supreme Court's actual requirement that "the <u>administrative agency</u> has arrived at a final, definitive position regarding how it will <u>apply the regulations at issue</u> to the particular land in question."  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985) (emphasis added), *overruled by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct.

---

[4] This was because there was no immediate effect on the plaintiffs, as the cease and desist order would have automatically been stayed if it was appealed.  *Id.*  Here, on the other hand, Plaintiffs are presently prohibited from using their property as a rabbinical college.

2162 (2019). Such an extreme and untenable standard—never once adopted by any court in the land—could <u>never</u> be met as a legislative body could potentially amend its laws forever. The irrational concept of "finality" of legislation is wholly different from the finality of applying specific regulations; only the latter is required by the courts and the former never has been required.

The relevant question is whether "the government entity charged with implementing the regulations has reached a final decision <u>regarding the application of the regulations</u> to the property at issue." *Williamson Cty.*, 473 U.S. at 186 (1985) (emphasis added). There is no dispute as to how the <u>regulations</u> apply to Tartikov's property. They prohibit outright non-accredited educational institutions and student family housing, with no variance or special permit available. Nevertheless, to comply with the Court of Appeals' ruling, Tartikov attempted to have these regulations repealed. The failure of the Village to do so establishes without doubt that Plaintiffs' injury is concrete and final.

Second, there are no "additional administrative remedies" that would "further define [Plaintiffs'] alleged injuries." As discussed below, no permits or variances are available to Tartikov. And there is no further avenue of administrative review for Plaintiffs' Petition. As the Village Code states: "On the . . . receipt of a petition . . . for a zoning amendment, the Board of Trustees may decide not to formally consider such amendment." VILLAGE CODE § 130-38. The buck stops with the Board of Trustees and the Village does not argue otherwise. In contrast, in *Murphy*, the plaintiffs failed to "appeal . . . the cease and desist order to the New Milford Zoning Board of Appeals . . . ." *Murphy*, 402 F.3d at 351. This was a critical component of the Court of Appeals' holding, and was in line with Supreme Court precedent, which holds that to be final, agency action must constitute the "consummation" of the agency's decision-making process, *Chicago & S. Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 113 (1948), and cannot be "of a

merely tentative or interlocutory nature." *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).  The Board of Trustees' decision to refuse to even consider the Petition (and refund the fee) was the consummation of the process—a form of resolution specifically provided for in the Village Code. There are no further avenues available to Tartikov with respect to the Petition's consideration by the Village.  They have come to the end of the line.

Defendants cite *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78-79 (E.D.N.Y. 2016), for the proposition that there is no "final decision without submitting a plan for development" and "seeking <u>available</u> variances or waivers."  (Emphasis added.)  The key is whether such avenues were in fact "available."  In *Dean*, they were.  *See id.* at 79-80 ("special exception," "certificate of occupancy," "appeal," "variance" available).  Here, they are not.

> 2.  *Any other "conduct" would have been futile as Defendants lacked the authority to grant it.*

The Second Circuit's opinion in *Tartikov IV* further stated that Tartikov "never submitted a formal proposal for the building project" or "applied for a permit . . . ."  *Tartikov IV*, 945 F.3d at 110.  Despite their prior admissions to this Court and otherwise, Defendants now argue— presumably based on this language—that Plaintiffs could have applied for "a building permit,[5] special permit, waiver,[6] or variance," Def. Mem. at 9; *see also id.* at 14-15, 16, 17 (same);

---

[5] No building permit can be issued for a use that is not permitted.  VILLAGE CODE § 130-8.

[6] The Village's Code contains no such "waivers" that would permit the use, and Defendants do not point to any Code provision that suggests otherwise.  The reference to N.Y. VILL. LAW § 7-725-b(5) (Def. Mem. at 9 n.6) is misleading.  While the Board of Trustees <u>could</u> have adopted Code provisions allowing waivers of the special permit requirements for Educational Institutions, it did not do so and therefore no such waiver is available.  *See id.* ("The village board of trustees <u>may</u> further empower the authorized board to, when reasonable, waive any requirements for the approval, approval with modifications or disapproval of special use permits submitted for approval. Any such waiver, <u>which shall be subject to appropriate conditions set forth in the local law adopted pursuant to this section</u>, may be exercised in the event any such requirements are found not to be requisite in the interest of the public health, safety or general welfare or inappropriate to a particular special use permit." (emphases added)).  It has done so in other

however, nowhere in their brief do they dispute the fact that they "lack[] discretion to grant" such relief. This critical fact was established in the prior litigation and continues to be the case here. *Id.*; *see generally Tartikov I*, 915 F. Supp. 2d at 633 ("under the zoning scheme as it currently exists, Plaintiffs' only option is to seek a text amendment to the Zoning Code."); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 280 F. Supp. 3d 426, 445 (S.D.N.Y. 2017) ("*Tartikov III*") (explaining that no special permit or variance could be obtained), *aff'd in part, rev'd in part and remanded, Tartikov IV*. Their bare assertion that "[n]othing prevents Plaintiffs from submitting a formal proposal, applying for a permit, seeking a waiver/variance," Def. Mem. at 18, ignores the facts established in the original action and Defendants' own admissions that "the only application [Tartikov] could make was for a zone change." ECF No. 34 Ex. 2 ¶ 83; *see also id.* ¶¶ 80, 87. Neither is there any provision for an application for a formal proposal for the building project[7] or a "formal development plan," Def. Mem. at 15. Defendants do not point to any provision of their Code that allows for such a proposal. The <u>only</u> action available to Plaintiffs is a legislative petition. *Tartikov IV*, 280 F. Supp. 3d at 445. Defendants' central argument that "the Village could not have rendered a 'final decision' ripening Plaintiffs'

---

instances. *See, e.g.,* VILLAGE CODE § 115-10 (allowing for waivers of Public Improvement Charges); *id.* § 118-17 (allowing Planning Board to waive required improvements); *id.* § 110-12 (permitting waiver of sewer requirements). Of course, rather than refuse to consider the Petition in its entirety, the Village and its Boards and professionals could have theoretically considered adopting a waiver provision, but failed to do so. VILLAGE CODE § 130-39.

Nor is there any such thing as "submit[ting] a formal proposal." Def. Mem. at 1; *see id.* at 2 (same). A permit, variance application or petition may be submitted; the Village's Code contains no relief or application known as a "formal proposal."

[7] Defendants equate "any other conduct that would implicate or invoke the operation of the challenged zoning laws" with "a formal proposal for the building project," Def. Mem. at 11, but the Second Circuit clearly listed them in the disjunctive, along with "applied for a permit, . . . ." 945 F.3d at 110. These were three different options suggested by the Court. *See, e.g., In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest of justice rationale or the convenience of parties rationale.").

claims" because Plaintiffs did not "appl[y] for a building permit, special permit, waiver, or variance," Def. Mem. at 9, must be rejected.

This situation, where the Village has admitted that it lacks discretion to grant any type of "permit" or "variance," cannot be compared to the cases cited by Defendants, where such relief was available.  *See BT Holdings, LLC v. Vil. of Chester*, 15-CV-1986 (CS), 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), *aff'd*, 670 Fed. Appx. 17 (2d Cir. 2016) (formal application for "site plan approval" or request for "variance" was not filed); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159-60 (S.D.N.Y. 2000) (application for a "subdivision plan" was available to Appellant); *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir. 1990) (variance application from its zoning status was available); *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 514-16 (2d Cir. 2014) (compensation remedy was available through New York Law); *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 Fed. Appx. 521, 524 (2d Cir. 2018) (a "certificate of appropriateness" application was available); *Sunrise Detox V. LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014) (an appeal of the "special permit" denial, and a variance application were available options); *Adrian v. Town of Yorktown*, 341 F. App'x 699, 700 (2d Cir. 2009) (revised application submission and variance application were available); *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (variance application was available); *Kowalczyk v. Barbarite*, 594 F. App'x 690, 692 (2d Cir. 2014) (a final decision from the Zoning Board of Appeals on an application for a zoning variance was available); *RGoshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448-49 (S.D.N.Y. 2003) (application to develop was approved based on one condition involving parking), *aff'd*, 115 App'x 465 (2d Cir. 2004); *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 351-52 (1986) (less intensive subdivision development plans in the residential zoning area were available options); *Agins v. City of Tiburon*, 447 U.S. 255, 260

(1980) (development plan could have been submitted), *abrogated by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005); *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981) (variance and a waiver were both available); *Safe Harbor Retreat LLC v. Town of East Hampton, N.Y.*, 629 Fed. Appx., 63, 65 (2d Cir. 2015) (special permit was available).

Here, such efforts would be futile, and the court in *Tartikov IV* made no decision regarding futility. To the extent that the Village now argues that Plaintiffs should engage in such futile gestures (seeking permits or variances where the Village has admitted it lacks discretion to grant) in order for both their facial and as-applied challenges to be "ripe," such an argument is directly contrary to the holdings of the Second Circuit.

> [A] property owner need not pursue such applications when a zoning agency lacks discretion to grant variances . . . .

*Murphy*, 402 F.3d at 349; *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992). It is noteworthy that nowhere in its brief does the Village suggest that it actually has discretion to grant permits or variances that would allow Tartikov's use.

### B. Defendants' Arguments Regarding Plaintiffs' Petition Should Be Rejected.

Given that (a) facial challenges are immediately ripe once an ordinance is adopted; (b) there is a final decision regarding Plaintiffs' Petition; (c) no other administrative avenues of relief exist; and (d) the Plaintiffs have engaged in "other conduct that would implicate . . . the operation of the challenged zoning laws," Plaintiffs facial and as-applied claims are now ripe for review and, consequently, Plaintiffs have the requisite Article III standing to challenge both the land use regulations at issue and the Village's refusal to consider their Petition. Defendants, however, argue that something more is necessary. As a preliminary matter, RLUIPA states: "Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article

11

III of the Constitution." 42 U.S.C. § 2000cc-2(a). Nothing more than a constitutionally ripe case or controversy is required. Nevertheless, Defendants make various arguments that something more is necessary. These arguments are addressed in turn.

1. *Defendants' argument that rejection of a "blanket" petition to repeal is immune from review should be rejected.*

The Village's main argument is that a petition to repeal legislation that prohibits land use cannot create an injury in fact providing a claimant with Article III standing. Repealing an ordinance[8] (or failing to do so) can affect a party's injury in fact as much as any other legislative amendment. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 293, n.14 (5th Cir. 2012) (noting that "both sides agree that two key provisions of Section 10.8 violated RLUIPA, and Holly Springs has repealed Section 10.8 in its entirety, thereby mooting Opulent Life's claim for injunctive relief against that section of the ordinance"); *Covenant Christian Ministries, Inc. v. City of Marietta, Georgia*, 654 F.3d 1231, 1239 (11th Cir. 2011) (holding injunctive relief claims moot where "The 2004 Ordinance was repealed by the enactment of a superseding ordinance in May 2008"). "Ripeness and mootness both assume 'that an asserted injury would be adequate; ripeness then asks whether an injury that has not yet happened is sufficiently likely to happen,' *id.,* and mootness asks 'whether the occasion for judicial intervention persists.' *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, . . . (1975)." *Berger v. Heckler*, 771 F.2d 1556, 1562 (2d Cir. 1985). Thus, assuming that the existence of an ordinance violated RLUIPA or the Constitution, if repealing that offending ordinance eliminates the injury-in-fact prong of Article III standing, then failing to repeal an offending ordinance would equally maintain that injury.

---

[8] Repeal actions by municipalities are reviewable under New York law. *Benderson Dev. Co. v. City of Utica*, 5 Misc. 3d 467, 472, 781 N.Y.S.2d 880, 884 (Sup. Ct. 2004) ("While cities are authorized to adopt, amend and repeal zoning regulations, their power is not unfettered" and must be "consistent with the State Constitution").

> 2. *Defendants' argument that the Petition did not "describe the proposed changes" of the chapter must fail.*

Defendants correctly point out that a "petition for any amendment of this chapter . . . shall describe the proposed changes."  Def. Mem. at 6-7 (quoting VILLAGE CODE § 130-36).  Yet that is exactly what the Petition did, as it petitioned the Board of Trustees "to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004."  ECF No. 34, Ex. 22.   The "proposed changes" set forth in the Petition could not be more clear, to remove the amendments adopted through the enactment of those Local Laws.  Neither the Village Code nor State law contain any specific requirements as to exactly <u>how</u> the proposed changes must be described, and the Petition certainly provides sufficient information to the Board as to what is being sought.  *See Matter of Basha Kill Area Ass'n. v. Town of Mamakating*, 302 A.D.2d 662, 664 (3d Dept. 2003) ("[T]he repeal of a municipal ordinance wipes out the act for all purposes.").  This argument must be rejected.

> 3. *Defendants' proposed exception for "perfunctory" petitions should not be adopted.*

Defendants next argue that the Village's action did not create an injury in fact because the petition was "perfunctory."  Def. Mem. at 1, 7, 9, 11, 17, 18; *see id.* at 7 (describing Petition as "*pro forma*").  Similarly, they describe the Petition as not "meaningful."  Def. Mem. at 17-18.

The Village Code does not prohibit a so-called "perfunctory" petition, whatever that might mean.  Their claim that "more than a mere one-sentence petition to repeal the Village's local laws in toto was required," Def. Mem. at 11, is unsupported.  It was a Petition.  It complied with the Village's Code.  Because it would have provided Tartikov with the ability to use its property as a Rabbinical College, there can be no question that it was "meaningful."  *See supra.*

The Court has already rejected such an argument in the RLUIPA context.  In *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009), the defendants unsuccessfully

argued that the controversy was not yet ripe because "Bikur Cholim's application for a variance was perfunctory . . . ."  The Court responded:

> What matters at this stage is whether private plaintiffs adequately pleaded that their variance was denied. That, they did. . . .
>
>     . . . .
>
> . . . . Bikur Cholim sought a use variance from the Zoning Board of Appeals, which was denied.
>
> A case is ripe when the court "can look to a final, definitive position from a local authority to assess precisely how they can use their property." *Murphy,* 402 F.3d at 347. The Court can look at the Zoning Board of Appeals' decision as a definitive ruling on how Bikur Cholim can use its property. It is the denial of the application that serves as the basis for jurisdiction before the Court.

*Id*.  There is no constitutional standard that an application must be in the form that Defendants would prefer.  Tartikov's Petition complied with the Village's laws—which only require that it be made to the Village clerk and describe the proposed changes, VILLAGE CODE § 130-36, and that it be accompanied by the correct fee, *id.* § 130-45—and it was rejected.

      4.   *Defendants' policy argument concerning the land use regulations of schools is irrelevant to the question of standing.*

Defendants further complain that repealing the challenged Local Laws would "leave the Village with no regulation over any educational institution within its borders."  Such an argument is  irrelevant to the question of whether the Plaintiffs have suffered an injury in fact.  Further, the claim is untrue.  Schools and educational institutions would be subject to the same regulations as, for example, libraries and museums are currently subject to, namely the Area and Bulk Regulations of the R-40 zoning district.  *See* VILLAGE CODE § 130-12(A)-(J) (regulating minimum lot area, lot frontage, lot width, lot depth, front yard setbacks, rear yard setbacks, side yard setbacks, maximum height, maximum lot coverage, and off-street parking spaces) .

      5.   *Defendants cannot evade judicial review simply by refusing to consider*

*the Petition.*

The Village also argues that there was no final determination because the Board of Trustees refused to consider its Petition.  Def. Mem. at 16.  However, as its Code makes clear, and as Defendants admit (Def. Mem. at 16 n.14 (citing cases)), the Board of Trustees is free to <u>never</u> consider a petition.  According to Defendants, by failing to even consider a Petition, the Board can prevent Tartikov's case from ever becoming ripe.  Such an interpretation would defeat any ability to obtain meaningful judicial review as any municipality could enact a burdensome law prohibiting religious or expressive conduct, and then simply refuse to consider any legislative petition to change or repeal such law.  Although the Board's action was a final act, even agency inaction can become "final" under certain circumstances.  *See, e.g., Coal. For Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1251 (10th Cir. 2001) ("we find that in the absence of a definite statutory deadline for action, agency inaction can become 'final' for these purposes in three situations.  First, the agency might affirmatively reject a proposed course of action.").[9]

Defendants further suggest that Plaintiffs should submit another petition to the Board.  Def. Mem. at 16.  In the prior case, the Court held that Plaintiffs' as-applied challenges were not ripe, even if futile, unless they filed "one meaningful application."  *Tartikov I*, 915 F. Supp. 2d at 602-03.  Now the Village argues that two (or more?) are required.  Article III commands no such requirement, and Article III standing is all that is necessary.  42 U.S.C. § 2000cc–2(a).

6.  *Local Law 1 of 2001.*

Defendants state that it is "relevant" that Local Law No. 1 of 2001 does not presently prohibit Tartikov's use, Def. Mem. at 1 n.1, 6, but they do not argue how it is relevant.  The

---

[9] "Finality" of agency action is a jurisdictional requirement under the Administrative Procedures Act.  *See* 5 U.S.C. § 704; *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).

prohibitive provisions of the 2001 law were amended by the 2004 law.  However, if Plaintiffs did

not challenge the 2001 law, Defendants would unquestionably argue that they would lack standing,

claiming that striking down the 2004 provisions would not redress their injuries, as the 2001

provisions would then be revived.  Regardless, Plaintiffs' Complaint seeks declaratory relief

regarding any provisions in Pomona's Code requiring accreditation, curriculum approval,

licensure, or other requirements that would prevent Tartikov's use, or prohibit family student

housing, and injunctive relief enjoining the same.  ECF No. 1 at 48-51.

## II. DEFENDANTS' ARGUMENTS REGARDING "SEVERAL ADDITIONAL REASONS" DO NOT RELATE TO STANDING.

### A. Defendants' Arguments are Barred by the Doctrine of Issue Preclusion.

Defendants allege that Tartikov lacks standing because it violates New York Educational

Law because, inter alia, it contains the word "college" in its name.  This argument is barred by the

doctrine of issue preclusion.  In the original action, Defendants made the same arguments, arguing

in their motion to dismiss that "[t]he College currently is one in name only. Defendants' [sic] note

that Plaintiff College's self-styling of 'college,' while it may generally describe the type of school

it hopes to be, is not permitted under New York law."  Civ. No. 7:07-cv-06304 (ECF No. 37) at 5

n.10; see also id. at 2, 22-23.  Plaintiffs disputed these arguments, arguing that if true that the

Rabbinical College will violate State law "such a law would violate the First Amendment," that

"the College has alleged an interest in the land as an owner," that "[b]eing unable to develop its

property for its intended use as a Rabbinical College is an injury in fact," and that "Pomona is not

charged with enforcing New York's education laws."  Declaration of Joseph Churgin, submitted

herewith, Exhibit 1 at 17, 22-23, 34.

The Court found that Tartikov had standing, holding that it "alleged a particularized injury

that would be redressed if the Court granted the requested relief," that it "sufficiently alleged an

'injury in fact' that gives it a personal stake in the outcome of the litigation, as [Tartikov's] intended use of the Subject Property is allegedly prohibited by the challenged ordinances," and that "[Tartikov] also has met the other elements of Article III standing" because its "alleged injury is fairly traceable to Defendants." *Tartikov I,* 915 F. Supp. 2d at 590-92.

The Second Circuit's decision did not alter this.  The Second Circuit held that Tartikov had standing with respect to its equal protection claims. *Tartikov IV*, 945 F.3d at 109-10.  This decision was about the same entity under the same laws under which this action arises.  The court found that Tartikov is "a religious corporation" that "intended to build and operate a rabbinical college in Rockland County" and the court specifically referenced the fact that Tartikov's "name, which includes the phrase 'Rabbinical College,' is not subtle about the purpose of [Tartikov.]" *Id.* at 100.

Defendants are therefore precluded from arguing that any hypothetical violations of Educational Law bar standing again in this action. "The preclusive effect of a federal court's judgment issued pursuant to its federal-question jurisdiction is governed by the federal common law of preclusion." *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002)).  Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748-49 (2001)).  This minimizes the possibility of "'inconsistent decisions.'" *Id.* (quoting *Montana v. United States,* 440 U.S. 147, 153-54 (1979)).

Issue preclusion applies because (1) the identical issue was raised in the prior proceeding (Civ. No. 7:07-cv-06304 (ECF No. 37) at 2, 5, 22-23); (2) the issue was actually litigated and decided in the prior proceeding (*Tartikov I*, 915 F. Supp. 2d at 590-92); (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support

a valid and final judgment on the merits because the Court must always have jurisdiction over a matter and both this Court and the Court of Appeals held that the "Rabbinical College" had standing with respect to certain of its claims. *Tartikov I*, 915 F. Supp. 2d at 590-92; *Tartikov IV*, 945 F.3d at 110. *See Wyly*, 697 F.3d at 141; *Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, at *8 (S.D.N.Y. Mar. 21, 2017) (issue preclusion prevents party from relitigating claim that rests on its argument that another party lacked standing where the party claiming lack of standing had raised that issue in a prior court proceeding and the prior court rejected that argument). Defendants' arguments are therefore barred by issue preclusion.

B.   An Alleged Violation of Educational Law, Which Has Never Been Prosecuted, Does Not Bar Plaintiffs' Relief in this Action.

Defendants claim that Tartikov does not have standing because of alleged violations of New York's Educational Law and other state law. Even if these arguments were not barred by issue preclusion, they would still fail. A party cannot be found to lack standing based upon some hypothetical situation. The fact that Defendants believe that Plaintiffs are in violation of Education Law has no bearing on Plaintiffs' standing in this action.

The "Rabbinical College" has been in existence for sixteen years. At no point in those sixteen years has the Attorney General, the entity charged with enforcing New York Educational Law, brought an action against Tartikov, much less found that Tartikov does not exist. And if such action were brought, it is quite possible that Tartikov would have viable defenses, including the fact that such a law would violate the First Amendment. Nor is there any indication that if the Attorney General did bring an action, that Tartikov would be stripped of its existence. Tartikov would have the opportunity to change its corporate name in order to bring it in compliance with any laws with which it would not comply. As this Court stated, it was "aware that there is a chance that even if the requested relief is granted, [Tartikov] might not build the rabbinical college on the

Subject Property. But 'these types of uncertainties always exist in housing development cases,' and they 'should not be used as a means to defeat standing.'" *Tartikov I*, 915 F. Supp. 2d at 591 (quoting *ACORN v. Cty. of Nassau*, No. 05-CV-230 (JFB)WDW, 2006 WL 2053732, at *10 (E.D.N.Y. July 21, 2006)).

  C. <u>Defendants' Assertion That Plaintiff Is Not an Educational Institution</u>
    <u>Under New York Law is Irrelevant to the Question of Standing.</u>

   Defendants also argue that Plaintiffs do not have standing because they have not alleged that they are an educational institution under New York's Educational Law.  This argument misses the point.  The Complaint alleges that the <u>Village's</u> definition and regulation of an "educational institution" substantially burdens Plaintiffs' religious exercise.  The Village's definition of an educational institution does not require that a school comply with New York Educational Law. Defendants are not empowered to enforce the State's Educational Law and Plaintiffs have not been found to be in violation of any law.  These unsubstantiated allegations have no bearing on Plaintiffs' standing in this action.  Regardless of Tartikov's status under Educational Law and New York law, Tartikov is prohibited from existing in the Village because of the <u>Village's</u> laws.

  D. <u>The Individual Plaintiffs Have Standing</u>

   Even if Tartikov did not have standing, the individual plaintiffs would still have standing. The Student Plaintiffs and the Teacher Plaintiff have suffered injuries-in-fact because they cannot study, teach and live with their families in a Torah community according to their religious beliefs. These Individual Plaintiffs sustain this injury as a result of the Village's laws and failure to repeal those laws at the request of Tartikov.  Clearly, the Individual Plaintiffs' injuries are traceable to Defendants and redressable by the Court.  *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) (rabbi who intended to live at the proposed facilities "met the constitutional requirements of Article III standing to assert his

RLUIPA claim").

## III. DEFENDANTS' ARGUMENTS REGARDING THE APPROPRIATENESS OF INJUNCTIVE RELIEF SHOULD BE REJECTED.

Defendants argue that the Court should not grant a preliminary injunction. Def. Mem. at 27-30. Again, these arguments merely repeat the Village's standing arguments addressed above, and should be rejected for the same reasons. *See* Def. Mem. at 28 (arguing that Tartikov has not suffered any harm). To the extent that Defendants are arguing that Tartikov specifically has not suffered any harm, the allegations of Plaintiffs' Complaint demonstrate otherwise.

Finally, the Defendants argue that an injunction would not be in the public interest because "the public will be burdened . . . ." Def. Mem. at 30. Yet they describe no actual burden or harm other than the philosophical objection to a legal position. There is no harm to the public interest, and enjoining an unconstitutional law is always in the public interest.[10]

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that this Court grant their motion for a preliminary injunction and enjoin the provisions of the Village Code that prohibit non-accredited educational institutions, family dwellings, and separate cooking, dining and housekeeping facilities and deny Defendants' motion to dismiss.

Dated: Nanuet, New York
December 17, 2020

<div style="margin-left: 40%;">

    /s/ Joseph. A. Churgin    
Joseph A. Churgin (JC 6854)
Donna Sobel (DS 3267)
Savad Churgin
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Roman P. Storzer admitted *pro hac vice*

</div>

---

[10] Section IV of Defendants brief adds no new argument, but merely restates its ripeness argument. Def. Mem. at 26-27.

Storzer & Associates, P.C.
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036

John G. Stepanovich (JS 8876)
Stepanovich Law, PLC
618 Village Drive, Suite K
Virginia Beach, Virginia 23454

*Attorneys for Plaintiffs*