**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------X

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD, RABBI
WOLF BRIEF, RABBI HERMEN KAHANA, RABBI MEIR          07 Civ. 6304 (KMK)(GAY)
MARGULIS, RABBI GERGELY NEUMAN, RABBI
MEILECH MENCZER, RABBI JACOB HERSHKOWITZ,
RABBICHAIM ROSENBERG, RABBI DAVID A. MENCZER,
RABBI ARYEH ROYDE, and KOLEL BELZ OF MONSEY,

                                        Plaintiffs,

              -against-

VILLAGE OF POMONA, NY; BOARD OF TRUSTEES OF
THE VILLAGE OF POMONA, NY; NICHOLAS SANDERSON,
AS MAYOR; IAN BANKS, ALMA SANDERS ROMAN,
RITA LOUIE and BRETT YAGEL, AS TRUSTEES
AND IN THEIR OFFICIAL CAPACITIES,

                                        Defendants.

--------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

*Respectfully Submitted,*

Paul Savad (PS 5358)
Susan Cooper (SC 5433)
Laura M. Feigenbaum (LF 2998)
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954

Roman P. Storzer (admitted *pro hac vice*)
Robert L. Greene (RG 5430)
Storzer & Greene, P.L.L.C.
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036

John G. Stepanovich (JS 8876)
Lentz, Stepanovich & Bergethon P.L.C.
448 Viking Avenue, Suite 370
Virginia Beach, Virginia 10019

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     COUNTERSTATEMENT OF FACTS....................................................1

III.    STANDARD OF REVIEW.....................................................................8

IV.     PLAINTIFFS' CLAIMS ARE RIPE.......................................................9

      A.      Plaintiffs' Facial Challenges to the Village's Zoning Code Are Ripe........9

      B.      Plaintiffs' As-applied Challenges Are Ripe....................................12

      C.      Second Circuit Precedent Establishes the Plaintiff's FHA
            Claims Are Clearly Ripe.........................................................21

V.      PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS.................22

      A.      Plaintiffs Have Suffered Personal Injury or Threat of Injury...............22

      B.      The Injury is Traceable to the Defendants' Codes and Actions............25

      C.      The Injury is Likely to be Redressed by the Request Relief................25

      D.      Supreme Court and Second Circuit Precedent Clearly Establish
            Plaintiffs' Standing to Assert Their Claims Under the Fair
            Housing Act.......................................................................26

VI.     DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF
       PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE
       TO STATE A CLAIM MUST BE DENIED............................................28

      A.      Plaintiffs' Second Amended Complaint States a Claim Under
            The First Amendment and RLUIPA, 42 U.S.C. § 2000cc(a),
            That the Village's Laws and Actions Substantially Burden
            Their Religious Exercise..........................................................28

      B.      Plaintiffs' "Equal Terms" Claim Should Not Be Dismissed...............33

      C.      Plaintiffs' Discrimination Claims Should Not Be Dismissed..............34

      D.      Plaintiffs' Claim that the Defendants' Code and Targeted
            Ordinances Violate 42 U.S.C. § 2000cc(b)(3) Should Not
            Be Dismissed......................................................................36

E.      Plaintiffs' Free Speech Claims Should Not Be Dismissed..................38

F.      Plaintiffs' Freedom of Association Claims Should Not Be Dismissed....39

CONCLUSION..................................................................................40

# TABLE OF AUTHORITIES

## CASES

**Page**

*1000 Friends of Oregon v. Clackamas Cy.*,
  94 P.3d 160 (Or. App. 2004)......................................................25

*Abbott Labs. v. Gardner*,
  387 U.S. 136, 149 (1967)...........................................................19

*Abramson v. Gonzalez*,
  949 F.2d 1567 (11th Cir. 1992).................................................14

*ACORN v. County of Nassau*,
  2006 WL 2053732, slip op. at *9 (E.D.N.Y. July 21, 2006)..........23, 24

*Agostini v. Felton*,
  521 U.S. 203 (1997)...................................................................10

*Albanian Associated Fund v. Township of Wayne*,
  Civ. No. 2:06-3217 (filed July 19, 2007).................................35

*Altman v. Bedford Cent. Sch. Dist.*,
  245 F.3d 49 (2d Cir.).............................................................29, 32

*Alpine Christian Fellowship v. County Comm'rs of Pitkin Cy.*,
  870 F. Supp. 991 (D. Colo. 1994)............................................29

*American Library Ass'n v. Reno*,
  33 F.3d 78 (D.C. Cir. 1994).....................................................14

*Arlington Heights v. Metro. Hous. Dev. Corp.*
  429 U.S. 252 (1977) ......................................................11

*Anaheim Gardens v. U.S.*,
  444 F.3d 1309 (Fed. Cir. 2006)...............................................17

*Beck v. Prupis*,
  29 U.S. 494 (2000)...................................................................12

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)...............................................................8

*Blasecki v. City of Durham*,
  456 F.2d 87 (4th Cir.1972)...........................................40

*Bowen v. City of New York*,
  476 U.S. 467 (1986).................................................................21

*Brown v. State*,
  89 N.Y. 2d 172 (1996).............................................................40

*Califano v. Sanders*,
  430 U.S. 99(1977).....................................................................19

i

*Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara,*
   344 F.3d 822 (9th Cir.2003)................................ ................................ 17

*CCA Associates v. U.S.,*
   75 Fed. Cl. 170 (Fed. Cl. 2007)................................................................18

*Cf. Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.,*
   468 F. Supp. 1219 (S.D. 1979)................................................................30

*Church of the Hills v. Twp. of Bedminster,*
   2006 WL 462674, slip op. (D.N.J. Feb. 24, 2006)...........................................28

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993)......................................................... 11, 28, 33

*Cienega Gardens v. U.S.,*
   265 F.3d 1237 (Fed. Cir. 2001)................................................. ...17

*City of Chula Vista v. Pagard,*
   171 Cal. Rptr. 738 (Cal. Ct. App. 1981)............. ........................................30

*City of Coeur D'Alene v. Simpson,*
   136 P.3d 310 (Idaho 2006) ................................ ................................18

*Cleveland v. Caplaw Enterprises,*
   448 F.3d 518 (2d Cir. 2006).......... ........................................9

*Congregation Beth Yitzchok of Rockland,*
   593 F. Supp. 655 (S.D.N.Y. 1984)................................................................33

*Congregation Kol Ami v. Abington Township,*
   309 F.3d 120 (3d Cir. 2002)................................................................33

*Congregation Mischknois Lavier Yakov v. Village of Airmont,*
   Civ. No. 02-5642 (S.D.N.Y. 2007)................................................................35

*Cottonwood Christian Center v. Cypress Redevelopment Agency,*
   218 F. Supp. 2d 1203 (C.D. Cal. 2002).......................................................33, 36

*Country View Estates@ Ridge, LLC v. Town of Brookhaven,*
   452 F.Supp 142 (EDNY 2006)............. ................................19

*Davidson v. Davis,*
   1995 WL 60732 at *5 (S.D.N.Y. 1995)................................................................31

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey,*
   920 F.2d 1496 (9th Cir. 1990)................................................................18

*Donovan v. Town Bd. of Town of Oyster Bay,*
   72 N.Y.2d 804 (N.Y. 1988)................................................................18

*Ecogen, LLC v. Town of Italy,*
   438 F. Supp. 2d 149 (W.D.N.Y. 2006)......................................................16, 19

*Eidelson v. Archer,*
   645 P.2d 171.(Ala. 1982)................................................................20

*Elrod v. Burns,*
   427 U.S. 347 (1976)................................................................13

*Employment Div. v. Smith,*
    494 U.S. 872 (1990)................................................................................33

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington,*
    316 F.3d 357 (2d Cir. 2003)........................................................................24

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006).................  ...................................................11

*Fernandez v. City of Poughkeepsie,*
    67 F. Supp. 2d 222 (S.D.N.Y. 1999).................................................................40

*Fighting Finest, Inc. v. Bratton,*
    95 F.3d 224 (2d Cir. 1996).........................................................................40

*Freedom Baptist Church of Delaware County. v. Twp. of Middletown,*
    204 F. Supp. 2d 857 (E.D. Pa. 2002)............................................................ .37-38

*Fund for Animals v. Babbitt,*
    89 F.3d 128 (2d Cir. 1996).......... ...............................................................23

*Gant v. Wallingford Bd. of Educ.,*
    69 F.3d 669 (2d Cir. 1995)...........................................................................8

*Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock,*
    93 F.3d 68 (2d Cir. 1996)....................................................................14, 21

*Gold Diggers, LLC v. Town of Berlin,*
    469 F. Supp. 2d 43 (D. Conn. 2007)..............................................................11

*Goldfine v. Kelly,*
    80 F Supp 2d 153 (S.D.N.Y. 2000)............................... .....................................19

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418(2006)................................................................................33

*Graham v. Comm'r of Internal Revenue Serv.,*
    822 F.2d 844 (9th Cir. 1987)................................ ..............................................31

*Greater Bible Way Temple of Jackson v. City of Jackson,*
    733 N.W.2d 734 (Mich. 2007)................................................ .............30

*Guru Nanak Sikh Soc'y v. County of Sutter,*
    456 F.3d 978 (9th Cir. 2006)................................. .................................32

*Hanzel v. Arter,*
    625 F. Supp. 1259 (S.D. Ohio 1985)..............................................................11

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)........................ .....................................................27

*Havurah v. Zoning Bd. of Appeals,*
    418 A.2d 82 (Conn. 1979)........................................................................30

*HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd.,*
    235 S.W.3d 627 (Tex. 2007).......................................................................17

*Hoehne v. County of San Benito,*
    870 F.2d 529 (9th Cir. 1989)................................. ..............................................20

*Honess 52 Corp. v Town of Fishkill,*
     1 F. Supp 2d 294, (S.D.N.Y. 1998)................................................................16
*House of Good Shepherd v. Dep't. of Revenue,*
     710 P.2d 778, (Ore. 1985)..........................................................................30
*Huntington Branch, NAACP v. Town of Huntington,*
     689 F.2d at 391 (2d. Cir 1982)..............................................................21, 26
*Innovative Health Systems, Inc. v. City of White Plains,*
     117 F.3d 37 (2d Cir. 1997)..........................................................................24
*Islamic Center of Miss. v. City of Starkville,*
     840 F.2d 293 (5ᵗʰ Cir. 1988).................................................................36, 37
*Jacobs v. The Florida Bar,*
     50 F.3d 901 (11ᵗʰ Cir. 1995)......................................................................14
*Kasper v. Town of Brookhaven,*
     122 A.D.2d 200 (N.Y. App. Div. 1986).......................................................18
*Kittay v. Giuliani,*
     112 F Supp. 2d 342 (S.D.N.Y. 2000)...........................................................19
*Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York,*
     356 F.3d 365, 375 (2d Cir. 2004)................................................................26
*League of Residential Neighborhood Advocates v. City of Los Angeles,*
     498 F.3d 1052 (9ᵗʰ Cir. 2007)........................................ ................................25
*Leblanc-Sternberg v. Fletcher ,*
     67 F.3d 412 (2d Cir. 1995)........................... 10, 11, 13, 21, 22, 26, 27, 30, 35, 36
*Leblanc-Sternberg v. Fletcher ,*
     781 F.Supp. 261 (S.D.N.Y. 1991)................................................................21
*Lerman v. Bd. of Elections of New York,*
     232 F.3d 135, 144 (2d Cir. 2000), *cert. denied*, 533 U.S. 915(2001)....................12
*Lighthouse Institute for Evangelism v. City of Long Branch,*
     2007 WL 4166239, at *16 (3d Cir. Nov. 27, 2007)........................................29, 34
*Loyal Tire & Auto Center, Inc. v. Town of Woodbury,*
     445 F.3d 136 (2d Cir. 2006)............................................. .......... ...........................10
*Lucas v. South Carolina Coastal Council,*
     505 U.S. 1003 (1992)................................................................................17
*Lujan v. Defenders of Wildlife,*
     504 U.S. 555 (1992)............................................................................22, 25
*Lunney v. United States,*
     319 F.3d 550 (2d Cir. 2003)..........................................................................8
*Marin v. Arizona,*
     246 F.3d 674 (9ᵗʰ Cir. 2000)......................................................................24
*Marks v. City of Chesapeake,*
     883 F.2d 308 (4ᵗʰ Cir. 1989)......................................................................35

iv

*Martinez v. City of Schenectedy,*
    97 N.Y.2d 78................................................................................................................40

*Meyer v. Nebraska,*
    262 U.S. 390 (1923)......................................................................................................38

*Midrash Sephardi, Inc. v. Town of Surfside,*
    366 F.3d at 1234 (11th Cir. 2004)...............................................................................35

*Mintz v. Roman Catholic Bishop of Springfield,*
    424 F. Supp. 2d 309 (D. Mass. 2006)..........................................................................29

*Muhammad v. New York City Trans. Auth.,*
    450 F. Supp.2d 198 ((E.D.N.Y. 2006)..........................................................................40

*Murphy v. New Milford Zoning Comm'n,*
    402 F.3d at 349 (2d Cir. 2005).........................................................16, 17, 20, 32

*NAACP v. Alabama,*
    357 U.S. 449 (1958)......................................................................................................39

*N. Shore Unitarian Universalist Soc., Inc. v. Inc. Vill. of Upper Brookville,*
    110 A.D.2d 123 (N.Y. App. Div. 1985).......................................................................38

*Napolitano v. Town Bd. of the Town of Oyster Bay,*
    128 A.D.2d 536, 512 N.Y.S.2d 466 (N.Y. App. Div. 1987)........................................18

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights,*
    949 F.2d 890 (6th Cir. 1991)........................................................................................15

*New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. Of Higher Educ.,*
    654 F.2d 868 (3d Cir. 1981)................................................................ ...17, 38

*Norman v. Town Bd. of Town of Orangetown,*
    118 A.D.2d 839 (N.Y. App. Div.  1986).......................................................................18

*NYC C.L.A.S.H., Inc. v. City of New York,*
    315 F. Supp. 2d 461 (S.D.N.Y. 2004)..........................................................................39

*Ohnmeiss v. C. I. R.,*
    T.C. Memo. 1991-594, 1991 WL 251528 (Tax Ct.  1991)..........................................30

*Open Homes Fellowship, Inc. v. Orange County.,*
    325 F. Supp. 2d 1349 (M.D. Fla. 2004).......................................................................34

*Palazzolo v. Rhode Island,*
    533 U.S. 606 (2001)......................................................................................................14

*Palmetto Properties v. County of DuPage,*
    160 F. Supp. 2d 876 (N.D. Ill. 2001)...........................................................................37

*Park View Heights Corp v. City of Black Jack,*
    467 F.2d 1208 (8th Cir. 1972)......................................................................................22

*Paulsen v. County of Nassau,*
    925 F.2d 65 (2d Cir. 1991)...........................................................................................13

*People v. Katz,*
    233 N.E.2d 845 (NY 1967)...........................................................................................37

*Personnel Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (Mass. 1979)............................................................... 10,11

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,*
    450 F.3d 1295 (11th Cir. 2006)...........................................................23, 25

*Reese v. Coughlin,*
    1996 WL 374166, *6 (S.D.N.Y. July 3, 1996)......................................31

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)...........................................................................39

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)...................................................................8

*San Jose Christian Coll. v. City of Morgan Hill*
    360 F.3d 1024 (9th Cir. 2004)...........................................................12, 40

*Schad v. Borough of Mt. Ephraim,*
    452 U.S. 61 (1981)..........................................................................36, 37

*Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.,*
    675 N.W.2d 271 (Mich. Ct. App. 2004)............................................29, 30

*Sherbert v. Verner,*
    374 U.S. 398 (1963)...........................................................................32

*Singh v. City of New York,*
    418 F. Supp. 2d 390 (S.D.N.Y. 2005)................................................40

*Sisters of St. Francis Health Services, Inc. v. Morgan County,*
    397 F. Supp. 2d 1032 (S.D. Ind. 2005).......................................13, 14, 21

*Southview Assoc., Ltd. v. Bongartz,*
    980 F.2d 84 (2d Cir. 1992)..................................................................19

*Sts. Constantine & Helen Greek Orthodox Church v. City of New Berlin,*
    396 F.3d 895 (7th Cir. 2005)...........................................................31, 32

*Sugarman v. Vill. of Chester,*
    192 F. Supp. 2d 282 (S.D.N.Y. 2002).................................................11

*Suitum v. Tahoe Reg'l Planning Agency,*
    520 U.S. 725 (1997)........................................................................9, 14

*Tenafly Eruv Ass'n v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 200 ..............................................................35, 39

*The Presbyterian Church (U.S.A.) v. United States,*
    870 F.2d 518 (9th Cir. 1989)...........................................................36, 40

*Thomas v. Collins,*
    323 U.S. 516 (1945).........................................................................40

*Thomas v. Review Bd. of the Indiana Employment Sec. Div.,*
    450 U.S. 707 (1981).........................................................................30

*Trafficante v. Metro. Life Ins. Co.,*
    409 U.S. 205 (1972).......................................................................26-27

*Triple G Landfills v. Board of Comm'rs of Fountain County, Ind.*,
　　977 F.2d 287 (7th Cir. 1992)....................................................................14

*Tsombanidis v. West Haven Fire Dep'tment*,
　　352 F.3d 565 (2d Cir. 2003)....................................................................26

*Turner Broad. Sys., Inc. v FCC*,
　　512 U.S. 622 (1994)................................................................................10

*United States v. Salerno*,
　　481 U.S. 739 (1987)................................................................................11

*United States v. Vill. of Suffern*,
　　Civ. No. 06-7713 (complaint filed Sept. 26, 2006)................................35

*United States v. Yonkers Bd. of Educ.*,
　　837 F.2d 1181 (2d Cir. 1987)..................................................................10

*Vietnamese Buddhism Study Temple In Am. v. City of Garden Grove*,
　　460 F. Supp.2d 1165, (C.D. Cal. 2006)...................................................30

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
　　429 U.S. 252 (1977)................................................................................11

*Vill of Chestnut Ridge v. Town of Ramapo*,
　　2007 WL 2317416 (N.Y. App. Div. 2007)..............................................35

*Vision Church v. Village of Long Grove*,
　　468 F.3d 975 (7th Cir. 2006)...................................................................37

*W.J.F. Realty Corp. v. Town of Southampton*,
　　351 F. Supp. 2d 18 (E.D.N.Y. 2004).......................................................20

*White Mtn. Apache Tribe v. Hodel*,
　　840 F.2d 675 (9th Cir. 1988)...................................................................16

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
　　473 U.S. at 172 (1985)..............................................................9, 15-16, 18

*Xikis v. New York*,
　　1990 U.S. Dist. LEXIS 13715 (E.D.N.Y. 1990)......................................19

*Yee v. City of Escondido*,
　　503 U.S. 519 (1992)..................................................................................9

*Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*,
　　98 F. Supp. 2d 347 (S.D.N.Y. 2000)........................................................35

*Yonkers Racing Corp. v. City of Yonkers*,
　　858 F.2d 855 (2d Cir. 1988)....................................................................30

## CONSTITUTIONS

U.S. CONSTITUTION, FIRST AMENDMENT, ARTICLE III..................................1, 19 ,22 ,24 ,26

U.S. CONSTITUTION, FIRST AMENDMENT......................................11-13, 17, 19, 28, 29, 36-39

NY STATE CONSTITUTION, ARTICLE I, §§3, 8.................................................................40

## STATUTES

42 U.S.C. §1983 ...................................................................................13, 14, 25

42 U.S.C. § 2000cc(a) ...............................................................................32

42 U.S.C. § 2000cc(a)(1) .......................................................................12, 28

42 U.S.C. § 2000cc(a)(2)(B) .......................................................................28

42 U.S.C. § 2000cc(b)(1) ............................................................................31

42 U.S.C. § 2000cc(b)(3) ............................................................................12

42 U.S.C. § 2000cc(b)(3)(A) ...................................................................12, 37

42 U.S.C. § 2000cc(b)(3)(A)-(B) ..................................................................36

42 U.S.C. § 2000cc(b)(3)(B) ........................................................................37

42 U.S.C. § 2000cc 3(g) .........................................................................29, 34

42 U.S.C. § 2000cc(4)(f) .............................................................................35

42 U.S.C. §3613(a)(1)(A) ............................................................................26

FED. R. CIV. P. 12(b)(1) ..........................................................................2, 18

FED. R. CIV. P. 12(b)(6) .......................................................................8, 9, 28

FED. R. CIV. P. 12(d) ....................................................................................9

N.Y. EDUC. L. § 224 .....................................................................................5

6 NYCRR §§ 617.2, 617.3(g)(1) ....................................................................6

VILLAGE CODE Chapter 126 ......................................................................6, 15

VILLAGE CODE § 130-4 ..................................................................5, 6, 14, 15, 31

VILLAGE CODE § 130-5 .................................................................................14

VILLAGE CODE § 130-9 .............................................................................14, 31

VILLAGE CODE § 130-10 ..................................................................4, 5, 14, 16, 31

VILLAGE CODE § 130-28(D)(1) ......................................................................18

Village CODE §§ 130-35 – 130-45 ...................................................................6

## I.      INTRODUCTION

Defendants' Motion to Dismiss ("MTD") the Plaintiffs' Second Amended Complaint ("SAC") is an effort designed to direct this Court's attention away from the material factual allegations presented in the Complaint.  Defendants continue to vilify the Plaintiffs and anyone associated with them in order to recast the facts of this case.  This ignores the true undercurrent of what is happening in Pomona, where a new administration was elected on a platform of keeping the Plaintiffs out of that "close knit community."  Plaintiffs are compelled to respond to these aspersions in order to avoid even the slightest possibility that this Court accepts the Village's allegations.

This case is about the Plaintiffs' right to live in a community free from discriminatory, burdensome, and unreasonable regulations, and free to engage in their constitutionally protected religious speech, worship, and education.  The essence of the Defendants' Motion is that, in order for the Plaintiffs' claims—even the facial challenges to the Village's Zoning Code and its concrete pre-enforcement as-applied challenges—to be ripe for adjudication, Plaintiffs must first attempt to apply for administrative relief that does not exist, or to petition for legislative changes in the very laws that burden and discriminate against their religious exercise.[1]  Plaintiffs respectfully request that this honorable Court deny Defendants' Motion in its entirety and reject such a radical and unprecedented theory of standing—that a party may not challenge a law in an Article III court until it attempts to change the law through the political process.

## II.      COUNTERSTATEMENT OF FACTS

---

[1]  Defendants' argument either ignores or fundamentally misunderstands Plaintiffs' challenge. Plaintiffs do not challenge any denial of a land use permit (as no such administrative process is available to them) or request that this Court grant them a "free pass" to build a Rabbinical College exempt from legitimate land use regulation.  Rather, Plaintiffs challenge the provisions of the Village's Code—both facially and as-applied to the Congregation—which prevent them from worshiping, studying and living within the Village.

There are two distinct types of claims presented in Plaintiffs' Complaint:  (1) the burdening of fundamental freedoms of religion, speech and association, which is constitutionally suspect even if motivated by "legitimate" concerns; and (2) the discriminatory nature of the Village's Code and the motivation behind recently passed ordinances.  At its heart, this case is the most recent in a series of lawsuits arising from a cultural clash, now at a flashpoint in the Town of Ramapo, caused by the natural expansion of the Jewish Orthodox and Hasidic populations into areas where the existing homogeneous population seeks instead to preserve the status quo.

A.  The Nature of the Parties.

1.  **The Congregation**.  The Congregation Rabbinical College of Tartikov, Inc. ("the Congregation") was formed in 2004 for the sole purpose of building and operating a religious school to offer a program to train rabbinical judges who, upon completion of their studies, would serve on religiously mandated *bais dins* (Rabbinical Courts), and counsel Orthodox Jews on matters that arise daily concerning the correct application of Jewish Law to literally every aspect of their lives.[2]  SAC ¶ 46, 50-59; M. Babad Aff. ¶ 15; N. Babad Aff. ¶ 2.[3]

Plaintiff Rabbi Mordechai Babad, who will be Dean of the new College, is a full-time rabbinical judge and Dean at Mechon L'Hoyroa in Monsey, New York, the first traditional 15-year program established in the United States in 1976 by the father of one of the Congregation's trustees,

---

[2] There is a dire need in the Orthodox Jewish communities for rabbinical judges because very few of them survived World War II and no training programs existed in the United States until decades later; yet still there are not enough to train a new generation of judges to serve the Orthodox Jewish population in this country.  SAC ¶¶ 24, 30-33, 29, 47-48; Tauber Aff. ¶¶ 3-4, 9; M. Babad Aff. ¶¶ 8, 17; N. Babad Aff. ¶¶ 1, 3-4; Fleishman Aff. ¶ 5.  The Congregation seeks to recreate the centuries-old religious practice in small towns throughout Eastern Europe, where each town had its own *bais din*.  SAC ¶ 29; N. Babad Aff. ¶ 2.

[3] The attached affidavits are submitted in opposition to Defendants' 12(b)(1) motion challenging this Court's jurisdiction for lack of standing and ripeness; they are not offered in opposition to Defendants' 12(b)(6) motion.  They establish that Plaintiffs have standing to raise these claims, and that their claims are ripe.  They also refute the unsupported and irrelevant attacks on the sincerity of the Plaintiffs' beliefs.

Michael Tauber.[4]  SAC ¶ 20; M. Babad Aff. ¶¶ 1-2, 8; Tauber Aff. ¶ 4.[5]  Two of Rabbi Mordechai

Babad's brothers are also rabbinical judges, one being Rabbi Naftali Babad, who is the Dean of

Yechiel Mechil of Tartikov, which also operates a 15-year program to train rabbinical judges in

Brooklyn.[6]  M. Babad Aff. ¶¶ 6, 7.  It was founded by his father in 1980, and named after the Babad

family's town in Poland.  N. Babad Aff. ¶ 1-2.  Another brother, Chaim Babad, is a real estate

developer who donates funds for the operation of the Brooklyn school and plans to do the same for

the Congregation.  M. Babad Aff. ¶ 7; N. Babad Aff. ¶ 3.

Michael Tauber, who is attacked in Defendants' papers as the man "behind the curtain,"

MTD at 2, 6, is a trustee of the Congregation, the son of a respected rabbinical scholar and the

nephew of the Dean of Mechon L'Hoyroa and developer of its 15-year curriculum.  Tauber Aff.

¶¶ 3-5.  To direct attention away from the material allegations of the Complaint, the Defendants

maliciously attack Michael Tauber's character and integrity, falsely suggesting that his interest in

the project is solely as an investor, which he is *not*.  MTD at 2, 6; Tauber Aff. ¶ 17.  Mr. Tauber was

never found to have lied about the tax exempt status of an unrelated congregation, and never

"partnered with Hanoch Babad" in this unrelated religious corporation, as Defendants falsely and

irrelevantly allege. Tauber Aff. ¶¶ 15-16.

2.   **The Private Individuals.**  Plaintiffs Hershkowitz, Rosenberg, Royde and the two

---

[4] Rabbi Mordechai Babad is not now, nor has he ever been a "real estate developer."  MTD at 7; M. Babad Aff. ¶ 3.  This is but one of the many claims of Defendants in their Motion to Dismiss that has absolutely no basis in fact and is submitted in an attempt to discredit the Plaintiffs.

[5] Currently, there are twenty students studying in Mechon L'Hoyroa's 15-year program, which is at capacity.  M. Babad Aff. ¶ 8; Tauber Aff. ¶ 6.

[6] The Defendants cynically and irrelevantly question the need for 15 years of study, MTD at 8 n.14, and suggest that Yechiel Mechil of Tartikov, an affiliate of the Congregation, is actually in the real estate development business and is not actually operating any "allege[d]" rabbinical college.  MTD at 6.  To the extent that Defendants' arguments address the Plaintiffs' standing in this suit, Plaintiffs wish to inform the Court that the school is undeniably real.  N. Babad Aff. ¶ 2; Tauber Aff. ¶¶ 4-7 & Exh. A (photograph of study hall).

Menczers are all Rabbis and members of the Congregation.[7]  They are currently studying at Plaintiff Kolel Belz of Monsey[8] in precursor studies to enter the Rabbinical College, where they have already been accepted.  SAC ¶¶ 15-19; Hershkowitz Aff. ¶¶ 2, 4; Rosenberg Aff. ¶¶ 2, 4; Royde Aff. ¶¶ 2, 4; D. Menczer Aff.  ¶¶ 2, 4; M. Menczer Aff. ¶¶ 2, 11.  Without the Rabbinical College, there is no place for them to continue their religious training in order to become rabbinical judges. Hershkowitz Aff. ¶ 4; Rosenberg Aff. ¶ 4; Royde Aff. ¶ 4; D. Menczer Aff. ¶ 4; M. Menczer Aff. ¶ 11.  Mechon L'Hoyroa and Yechiel Mechil of Tartikov, both offering a 15-year program for rabbinical judges, are full to capacity with 120 students combined.  N. Babad Aff. ¶ 1; M. Babad Aff. ¶ 8; Tauber Aff. ¶¶ 6, 9.  Plaintiffs Marguilis and Neumann are currently studying at Mechon L'Hoyroa in Monsey, as they also wait to enter the Rabbinical College, where they too have been accepted and will also live.  SAC ¶¶ 11-12; Margulis Aff. ¶ 9; Neumann Aff. ¶ 9.

Plaintiffs Brief and Kahana are Rabbinical Judges at Mechon L'Hoyroa, and desire to be lecturers for the rabbinical students, but due to the unavailablility of such programs are unable to do so.  SAC ¶¶ 13-14; Brief Aff. ¶ 5; Kahana Aff. ¶ 5.  They will also live at the College.  All Plaintiffs sincerely believe that qualified rabbinical judges must be fully trained in all four volumes of the *Shulchan Aruch* in order to carry out their duties necessary for Orthodox Jews to live according to their religious laws and beliefs.  M. Babad Aff. ¶ 9; M. Menczer Aff. ¶ 2-4; Hershkowitz Aff. ¶¶ 3, 7; Rosenberg Aff. ¶¶ 3, 7; Royde Aff. ¶¶ 3, 7; D. Menczer Aff. ¶¶ 3, 7. Margulis Aff. ¶¶ 3, 8; Neumann Aff. ¶¶ 3, 8; Brief Aff. ¶¶ 2, 5, 6; Kahana Aff. ¶¶ 2, 5, 6.

---

[7] It is not true that the individual Plaintiffs are "already studying to become rabbi judges in facilities located nearby."  MTD at 33.  Plaintiffs Menczer, Hershkowitz, Rosenberg, Menczer, Royde, Margulis and Neumann are currently engaged in a course of rabbinical study to become *dayanim*, not rabbinical judges. None of the plaintiffs are currently engaged in studies to become rabbinical judges.  Hershkowitz Aff. ¶¶ 2, 8; Rosenberg Aff. ¶¶ 2, 8; D. Menczer Aff. ¶¶ 2, 8; Royde Aff. ¶¶ 2, 8; Margulis Aff. ¶¶ 2, 4, 9; Neumann Aff. ¶¶ 2, 4, 9; M. Menczer Aff. ¶¶ 5, 8-11.

[8] Kolel Belz of Monsey does not have a program for the training of rabbinical judges.  M. Menczer Aff. ¶¶ 7-10.

**3. Kolel Belz.** Kolel Belz of Monsey is a study program for Orthodox Jews, including five

Plaintiffs and five other Congregation members.   Fleishman Aff. ¶¶ 3-4; Hershkowitz Aff. ¶ 2;

Rosenberg Aff. ¶ 2; Royde Aff. ¶ 2; D. Menczer Aff. ¶ 2.   The Belz sect in Monsey has over 200

members, yet it has no *bais din*, and their disputes often do not get resolved according to their

religious beliefs.[9]  Fleishman Aff. ¶ 5.  Now that some of the Belz students have the commitment of

the Congregation to train them as rabbinical judges, they intend to return and serve on *bais dins* in

the growing Belz community.  Fleishman Aff. ¶ 7.

B.  <u>The Village's Zoning Laws.</u>

**1.  Prohibition on non-accredited schools.**  Pomona's current zoning laws provide for

colleges by special permit, but only if the school is accredited by the State or by a "similar

recognized accrediting agency." VILLAGE CODE §§ 130-4, 130-10(F); SAC ¶ 93; Exh. 18 (Letters of

Village Attorney Doris Ulman Mayor Sanderson).   The Rabbinical College cannot be accredited by

the State[10] nor by a "similar recognized accrediting agency" despite the Defendants' allegation to

the contrary.[11]  SAC ¶¶ 105-106; MTD at 3.   The Defendants' list of accredited schools is simply

that—a list without any explanation of why those schools were accredited by an outside

accreditation agency, "AARTS."  MTD at 23 n.31.  These schools met the criteria for accreditation

because they offer different programs than the Congregation's.[12]   The Congregation is thus

---

[9] Due to the general backlog of disputes being heard by *bais dins* in other Jewish communities, matters brought in from outside Jewish sects are often handled after those of the respective *bais din* community, resulting in delays that make the process unavailable.  Fleishman Aff. ¶ 5.  Some individuals simply abandon their claims, or resort to civil courts, both of which violate their religious beliefs.  *Id.* ¶ 7.

[10]  The State certifies degree-granting institutions, which the rabbinical college does not qualify for. N.Y. EDUC. L. § 224(3); Defendants' Exh. G (State regulations).  (The requirement for consent to use the name "college," N.Y. EDUC. L. § 224(1) is apparently pro forma.  Exh. 15.)

[11]  As such, it is not true that "every other land owner and citizen" must go through the same "usual zoning process."  MTD at 1.

[12]  The Executive Vice President of AARTS, Dr. Bernard Fryshman, has advised the Congregation that its program cannot be accredited by AARTS, because 1) it does not require that its students pass an admission exam; 2) the curriculum is focused exclusively on *Halacha* (Jewish Law), without being "centered

prohibited by the Village Code from using real property anywhere within the Village.

**2. Restrictions on certain student housing characteristics.**  The Village amended its zoning code in 2004 to expressly exclude any type of family housing and to provide that only one dormitory could be built on a school's lot, regardless of the size of the lot—100 acres in this case. VILLAGE CODE §§ 130-4, 130-10(F)(12); SAC ¶¶ 157-158.  In 2007, the Village again amended its code to limit the size of a dormitory building to only 20% of the total square footage of all buildings on the lot.  VILLAGE CODE § 130-10(F)(12); SAC ¶¶ 162.  This latest provision effectively and unreasonably eliminates dormitory housing, since a typical college could house only about 3% of its student body.  SAC ¶ 163. The Code does not permit kitchens in the dormitories, except for one communal dining room.  VILLAGE CODE § 130-4.  These Code provisions effectively exclude religious study for married Hasidic men, which was the Village's intent.  SAC ¶ 164.

**3. Targeted "environmental" law.**  In 2007, the Village adopted a wetlands law with a 100-foot buffer around wetlands of a certain size, but exempted *all* single-family homes, effectively exempting virtually all property in this village of single-family homes, except the Congregation's property. VILLAGE CODE Chapter 126; SAC ¶¶ 168-173.

**4. Lack of any available administrative process.**  Defendants repeatedly condemn the Plaintiffs for taking this action "without having ever so much as applied to the Village for approval of their planned use."  MTD at 2.  Yet the Defendants admit that the only way of permitting the use would be to legislatively amend their zoning laws.  *See* MTD at 9-10 ("A property owner may also petition to amend the zoning law or apply for a zone change should its use not be encompassed by a special use permit or be suitable for a variance.  Village CODE §§ 130-35 – 130-45." ); *id.* at 10

---

around a common core of Talmudic studies"; and 3) the College has not been in operation for a period of two years.  *See* Tauber Aff. ¶ 19 & Exh. A (letter of Dr. Bernard Fryshman).  Dr. Fryshman notes that "While a program of Halacha *only* is unquestionably of value, it does not fit the scope of our accreditation activities." *Id.*  The Plaintiffs do not have an entrance examination or qualifications, and believe that all sincerely motivated students should be admitted.  If the student fails to demonstrate his ability to succeed in the program, he will be asked to leave. M. Babad Aff. ¶ 11.

("[T]he first step it should take towards building the College is to apply for a zoning amendment.").

C. The Planned Rabbinical College.

The Congregation has spent over two years developing a Draft Environmental Impact Statement (DEIS) for the environmentally responsible development of the maximum (not planned) potential of the property as a Rabbinical College, with housing for married students enrolled in its 15-year program.  Tauber Aff. ¶ 14.  The Congregation has taken concrete steps to demonstrate that it intends to pursue its goal of a Rabbinical College with certain known requirements,[13] such as family housing and an unaccredited program.  SAC ¶¶ 64-65, 105; Tauber Aff. ¶¶ 18-19.

The project will occupy only 30 acres of the 100-acre property.  SAC ¶ 1.  It will not, as Defendants claim, be "large-scale residential development" or "dense."[14]  MTD at 1.  It will not house "4,500" people.  Id. at 7.  The current concept is a Rabbinical College campus for 250 students, with the possibility of future growth as may be appropriate.[15]  SAC ¶ 212; Tauber Aff. ¶ 18. There is no plan for 1,000 students with 1,000 parking spaces and "at least nine" housing buildings.  MTD at 2.  Finally, the property is the largest available parcel close to the necessary existing infrastructure of yeshivas, ritual baths, kosher food, etc.  SAC ¶ 83; Tauber Aff. ¶ 11, which are required for the students and their families to live according to their religious beliefs. SAC ¶ 77.  The Defendants concede that it is "by far, the largest piece of property in the Village."

---

[13] The design will include the school building and requisite housing with lecture rooms, worship rooms, study rooms, courts and libraries. The entire site will be a "Torah community," and no part of it will have a secular purpose. Tauber Aff. ¶ 18. The housing component is essential for the training of rabbinical judges, as prescribed in religious texts and in accordance with the Plaintiffs' religious beliefs.  M. Menczer Aff. ¶¶ 12-14; N. Babad Aff.  ¶¶ 5, 6.

[14] An early concept drawing that was leaked when it was filed as part of the DEIS process, MTD at 6 & Defendants' Exh. H, is simply that—an early concept.  This exhibit misleadingly contains a photo of buildings constructed by someone else at an entirely different location.

[15] New York's SEQRA statutes do not permit "segmentation," which is the submission of a plan without inclusion of all potential long-range plans for future development. 6 NYCRR §§ 617.2, 617.3(g)(1). The Congregation is concretely committed only to building an unaccredited rabbinical college with the necessary education and worship facilities, and sufficient and adequate housing for its married students, but is not committed to any particular plan or number of students. Tauber Aff. ¶ 18.

MTD at 5.  There is no other place to locate the Rabbinical College.  SAC ¶ 84.

    D.  The Discriminatory Attitude of Village

Despite the Defendants' repeated declarations that their Code amendments have nothing to do with the "threat" of Hasidic land use, they admit that the Village's interest is in maintaining a "close-knit community vested in [its] rural roots."  MTD at 4 (quoting Village of Pomona website).  The evidence of hostility toward this particular faith community by the Village and its residents is overwhelming.  SAC ¶¶ 156-222; *see generally infra* § IV(B)(2) (discussing futility principle), § IV(B)(2)(b) (discussing discrimination evidence and claims).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires a district court to dismiss a complaint when it lacks "jurisdiction over the subject matter."  FED. R. CIV. P. 12(b)(1).  In defending a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all factual allegations as true. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  Plaintiffs bear the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Id.*  In considering such a motion, while the Court "must accept as true all material factual allegations in the complaint," it is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Central Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

In a Rule 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).  A pleading is sufficient if the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __U.S. __, 127 S. Ct. 1955, 1974 (2007).  "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citations omitted).

## IV.   PLAINTIFFS' CLAIMS ARE RIPE.

Defendants' ripeness challenge either misapprehends the Congregation's claims or selectively ignores them.   The Village repeatedly argues that "administrative remedies" are available to the Plaintiffs, but fails to reveal any actual administrative procedure available to the Congregation.   While Plaintiffs do not have a specific fixed plan, they do have a concrete planned *land use* that is forbidden by the Village's zoning code—no Rabbinical College of any shape, size or form is currently permitted within the Village.   The issues presented are sufficiently concrete. Defendants' argument fails for multiple reasons as described below.

A.   Plaintiffs' Facial Challenges to the Village's Zoning Code Are Ripe.

1.   *Facial challenges are immediately ripe.*

Although it is unclear from the Defendants' papers, they appear to argue that the Congregation's facial challenge[16] is unripe.  MTD at 12-13.  However, these arguments are nothing more than a merits challenge disguised as a "ripeness" issue.  *Id.* at 18-24.  This is highly improper and in fact their attached materials indicate that they are being introduced for purposes of their 12(b)(6) motion, *see* MTD at 24, and not for their jurisdictional challenge.[17]

Plaintiffs' facial challenges to the Village Code are ripe.  "Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation."  *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).  In *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997), the

---

[16] The Plaintiffs challenge certain provisions of the zoning ordinance as unconstitutional and violative of RLUIPA, FHA and other statutory protections of constitutional rights by unreasonably discriminating against Plaintiffs' use, against married students, by prohibiting Plaintiffs' use altogether, and by being enacted with a discriminatory purpose, among other reasons. *See* SAC ¶¶ 156-64, 168-174, 223-26.

[17] Because Defendants are improperly attempting to use this extraneous material for issues going to the merits and not on ripeness or standing, they should be excluded. FED. R. CIV. P. 12(d). The Court may "exclude" such materials by an "explicit refusal to consider" them. *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).

Supreme Court held "'facial' challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, . . . ."

    2.  *Laws enacted with improper legislative purpose are subject to facial challenge.*

Defendants ignore a fundamental constitutional principle underlying certain constitutional, RLUIPA and FHA "discrimination" claims of the Plaintiffs: that a facially neutral law may be held unconstitutional if enacted with a discriminatory *purpose*, especially if it implicates fundamental rights. *See Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (examining whether statute granting hiring preferences to veterans was aimed as discriminating against women); *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997) (examining purpose of statute); *Turner Broadcasting System, Inc. v FCC*, 512 U.S. 622, 647 (1994) (same).

The Second Circuit has repeatedly examined legislative motivation of municipal lawmakers. In *Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 148 (2d Cir. 2006), the court struck down a facially neutral municipal law targeting a specific "tow company" because of animosity against the operator, finding relevant evidence of "discriminatory motivation." *See also Leblanc-Sternberg*, 67 F.3d at 425, 428 (examining discriminatory motivation against Orthodox Hasidic Jews); *United States v. Yonkers Board of Education*, 837 F.2d 1181, 1218-19 (2d Cir. 1987) (examining segregative motive). *See also County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 167 ("Here, the Township knew exactly how appellants intended to use their land and passed the Ordinance specifically tailored to prevent that use.").

The Supreme Court has repeatedly held that such evidence of discriminatory intent in legislative motivation is relevant:

> Proof of discriminatory intent must necessarily usually rely on objective factors, several of which were outlined in *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 564, 50 L. Ed. 2d 397. The inquiry is practical. What a legislature or any official entity is "up to" may be plain from the results its actions achieve, or the results they avoid. Often it is made clear from what has been called, in a different context, "the give and take of the situation."

*Personnel Adm'r of Mass.*, 442 U.S. at 279 n.24.[18]   The same evidence is relevant for First Amendment Free Exercise claims:  "In determining [in a Free Exercise claim] whether a law is based on religious animus, <u>the same kinds of evidence noted above with respect to a disparate treatment claim under the FHA are relevant</u>."  *Id.* at 426 (emphasis added).[19]  Plaintiffs' well-pled factual allegations clearly establish that various ordinances enacted by the Village purposely targeted the orthodox/Hasidic Jewish population.  SAC ¶¶ 122-23, 129-33, 142, 156-64, 168-74.

> 3.   *Plaintiffs' facial overbreadth challenge does not require that they must demonstrate that the challenged provisions are violative under any "set of circumstances."*

The Village argues that "[a] facial challenge to a legislative Act is . . . the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  MTD at 18.  However, this standard does not apply in the First Amendment context.[20]  *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (distinguishing First Amendment overbreadth challenges from other facial challenges); *Farrell v. Burke*, 449 F.3d 470, 495-96 (same).  The Second Circuit has specifically noted that *Salerno's* "no set of circumstances" doctrine "does not apply to [cases] in which the plaintiffs assert the violation of rights protected by

---

[18] Particularly relevant here, the Second Circuit has held that the "totality of the circumstances" is relevant in determining "discriminatory intent," including whether "'the law bears more heavily on one [group] than another,' . . . . the 'historical background of the decision . . .'; '[t]he specific sequence of events leading up to the challenged decision,' . . .; 'contemporary statements by members of the decisionmaking body . . .'; . . . and '[s]ubstantive departures ..., particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached,' . . . racist statements by "leaders of the incorporation movement" and fact that "[r]acial criticism . . . was made and cheered at public meetings" could be considered evidence of improper purpose . . . ."  *Leblanc-Sternberg*, 67 F.3d at 425-26.

[19] The Second Circuit cited with approval Justice Kennedy's concurrence in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540-42 (1993), which discussed legislative hostility to the faith group in question, in turn citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267-68 (1977).

[20] This doctrine has been applied to the zoning context where expressive activity is regulated, *Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 288-89 (S.D.N.Y. 2002); *Gold Diggers, LLC v. Town of Berlin, Conn.*, 469 F. Supp. 2d 43 (D. Conn. 2007), and to the Free Exercise context, where there is an inhibitory effect on religious expression.  *See Hanzel v. Arter*, 625 F. Supp. 1259, 1263 n.2 (S.D. Ohio 1985).

the First Amendment." *Lerman v. Bd. of Elections of New York*, 232 F.3d 135, 144 (2d Cir. 2000), *cert. denied*, 533 U.S. 915 (2001).   "The purpose of an overbreadth challenge is to prevent the chilling of constitutionally protected conduct, as prudent citizens will avoid behavior that may fall within the scope of a prohibition, even if they are not entirely sure whether it does." *Farrell v. Burke,* 449 F.3d 470, 499 (2d Cir. 2006).[21]

     4.  *RLUIPA's text contemplates such facial challenges.*

RLUIPA provides clear statutory direction permitting facial challenges to zoning ordinances that either substantially burden or discriminate against religious land use.   The "Substantial Burdens" provision of RLUIPA prohibits governments from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden . . . ."   42 U.S.C. § 2000cc(a)(1) (emphasis added).   The code provisions challenged here are certainly "imposed" (as distinguished from "implemented") upon the Congregation, *i.e.,* the Congregation is subject to the Village Code. *See also* 42 U.S.C. § 2000cc(b)(3) (same).[22]

B.  <u>Plaintiffs' As-applied Challenges Are Ripe.</u>

     1.  *Plaintiffs' Complaint states a valid pre-enforcement challenge.*

Defendants also misconstrue Plaintiffs' as-applied challenge.   Plaintiffs argue that the Village's zoning laws as applied to the Congregation's proposed use are illegal and unconstitutional because they strictly prohibit it—a Rabbinical College—from presently being built, used or

---

[21] Prohibiting a religious college implicates Free Speech, as well as Free Exercise rights.  *See infra,* § VI(A).  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1032-33 (9th Cir. 2004) (rejecting Free Speech claim because zoning ordinance did not prohibit religious college use, because "[t]he record reflects *no* indication that the City's action was motivated by the City's disdain of College's religious orientation," and because law did "not unreasonably limit alternative avenues of communication.").

[22] The Village, on the other hand, argues that an ordinance may only be challenged when it is "implemented" against a claimant.  This violates "the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000).  Likewise, if the Court imposed a requirement that a party must seek to change the law—the only mechanism to avoid the "total exclusion" of the Congregation's use here— this would render § 2000cc(b)(3)(A), *see infra*, completely meaningless.

operated.  *See Sisters of St. Francis Health Services, Inc. v. Morgan Cy., Ind.*, 397 F. Supp. 2d

1032, 1048 (S.D. Ind. 2005) ("*Sisters of St. Francis*") ("Under the procedures applicable in *Murphy*,

the Second Circuit found no immediate injury where an application for a variance from the cease

and desist order would have automatically stayed its enforcement.").

The *Leblanc-Sternberg* decision (uniquely relevant here and wholly ignored by Defendants)

controls this issue, where the Second Circuit squarely decided the question of whether a pre-

enforcement challenge to a facially neutral zoning ordinance under the First Amendment and the

Fair Housing Act is ripe (and which involved the same local anti-Hasidic animus):

> Since the loss of First Amendment freedoms, even for minimal periods of time, constitutes
> irreparable injury, *see, e.g., Elrod v. Burns*, 427 U.S. 347, 373 . . . ; *Paulsen v. County of
> Nassau*, 925 F.2d 65, 68 (2d Cir. 1991) (freedom of expression), the victim of a conspiracy
> to violate First Amendment freedoms has standing to bring suit <u>before the conspiracy</u>[23] <u>has
> resulted in economic or tangible injury</u>.

67 F.3d 412, 426 (2d Cir. 1995) (emphasis added).  In *Leblanc-Sternberg*, the Second Circuit was

faced with an eerily similar factual situation where "the Village itself had done nothing but adopt its

own zoning code and had not yet been called upon to apply it," yet it adjudicated the FHA and First

Amendment claims before it.  67 F.3d at 422; *see id.* at 428 ("In finding that only the Village

violated the private plaintiffs' rights under the Fair Housing Act, the jury may have been persuaded

that the only violative act was the enactment of the Airmont zoning code.").[24]  Similarly, in *Sisters*

---

[23]  The holding of *Leblanc-Sternberg* is not limited to § 1983 Free Exercise claims involving a
conspiracy claim brought under 42 U.S.C. § 1985.  The First Amendment injury in fact exists with or without
a conspiracy.  *See id.* at 427 ("conspiracy is not a necessary element of a § 1983 claim").  Conspiracy claims
were not relevant in the cases cited in support of its pre-enforcement challenge holding.  *See Elrod; Paulsen;
American Booksellers Ass'n*.

[24]  Clearly, these are questions of fact.  "Taking the evidence in the light most favorable to the private
plaintiffs, there was ample support for the jury's implicit finding that Airmont's zoning code <u>would be</u>
interpreted to restrict the use of home synagogues, that <u>the motivation behind the enactment was
discriminatory animus toward Orthodox and Hasidic Jews</u>, and that Airmont pursued this goal jointly with
ACA.  Accordingly, the private plaintiffs established the Village's liability on the claims asserted under the
FHA, the First Amendment, and §§ 1983 . . . ." *Id.* at 431.

*of St. Francis,* another federal court held that

> St. Francis has also met its burden in showing sufficient harm posed by the Ordinance to show a ripe case. In *Triple G Landfills*, the court emphasized that <u>the practical effect of the ordinance was to preclude any landfill construction anywhere</u> in Fountain County.

397 F. Supp. 2d at 1049 (emphasis added).[25]

The Village attempts to deflect this line of cases by stating "[i]t is impossible to determine which elements of the zoning law are likely to be involved in this case." MTD at 12; *see also id.* at 12-14. This is completely unsupported by the facts; it is undisputed that the Congregation's property is classified as R-40; that educational institutions must be accredited; that dormitories may not have separate cooking or dining facilities; that more than one dormitory building is prohibited; that dormitories are limited to 20% of the square footage of all buildings; and that Plaintiffs' use is not permitted anywhere within the Village. VILLAGE CODE §§ 130-4, 130-5, 130-9, 130-10.

The real purpose behind the final decision requirement is to remove uncertainty as to what conduct is permitted or prohibited. In the land use context, this requirement translates into a determination of whether the land's permitted uses are known to a sufficiently concrete degree:

> <u>Ripeness doctrine does not require a landowner to submit applications for their own sake.</u> Petitioner is required to explore development opportunities on his upland parcel only if there is uncertainty as to the land's permitted use.

*Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001) (emphasis added). And in *Suitum, supra,* the

---

[25] *See also Abramson v. Gonzalez*, 949 F.2d 1567, 1573-74 (11th Cir. 1992) (holding that persons who had not applied for a psychologist's license nonetheless were entitled to raise an as-applied challenge to a Florida law mandating that only licensed psychologists may hold themselves out as psychologists); *American Library Ass'n v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) (holding that, although the challenged statute had not been enforced against plaintiffs, plaintiffs sought to alleviate burdens which the statute placed on them, and therefore, challenge was as-applied); *Jacobs v. The Florida Bar*, 50 F.3d 901, 905 (11th Cir. 1995) (permitted as-applied challenge to State bar association rules restricting attorney advertising in the absence of any enforcement action where "Appellants face potential disciplinary action should they use the advertisements that they wish to use").

The Second Circuit has extended this doctrine to non-Free Speech challenges to municipal land use ordinances. *See Gary D. Peake Excavating Inc. v. Town Bd. of Town of Hancock*, 93 F.3d 68 (2d Cir. 1996) (holding Commerce Clause challenge to anti-dump ordinance ripe).

Supreme Court held that a landowners' claim was ripe since there was no question that its land was ineligible for development. 520 U.S. 725 (1997). It noted that the law at issue did "not provide for the variances and exceptions of conventional land-use schemes." *Id.* at 730, 725-26.

### 2. *Plaintiffs' Complaint states valid as-applied "discrimination" claims.*

Plaintiffs' as-applied claims also include a challenge to the discriminatory requirements that they would be subjected to and would not be applied to a similarly situated entity. For instance, a Catholic seminary (or a college with unmarried students) would be permitted to apply for a special exception, while the Rabbinical College would require a zoning text amendment. *See* SAC ¶¶ 94, 97-98, 104-109, 215; Exh.18 (Letter from Doris Ulman, Esq., Village Attorney, dated May 14, 2007, agreeing that Congregation must apply for a zone change). Interpreting *Williamson*, several courts have recognized that "if the [claimed] injury is the infirmity of the process, neither a final judgment nor exhaustion [of administrative remedies] is required." *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991).

Since the effect (and intent) of the Village's Code is to require more onerous procedures for land uses of certain religious faiths that tend not to have the same established accreditation bodies or student body makeup, the harm is immediate and concrete. *Cf. County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 167 (3d Cir. 2006) ("The essence of this claim is that the mere enactment of the Ordinance violates the Equal Protection Clause because it arbitrarily treats appellants differently than other similarly situated property owners.").[26]

### 3. *Resort to unavailable administrative procedures would be futile in any event.*

The text of the Village's Code is clear: Unaccredited educational institutions are not permitted. VILLAGE CODE § 130-4. Dormitories with kitchen facilities are not permitted. *Id.* More

---

[26] Additionally, nearly every other property in the Village (if not every single other property) is not subject to the Wetlands chapter of the Village Code. VILLAGE CODE § 126(3)(D); SAC ¶ 172.

than one dormitory building is prohibited, regardless of the size of the land parcel, and dormitories are limited to 20% of the size of the educational building. *Id.* § 130-10(F)(12). Even if Plaintiffs did not have ripe facial and pre-enforcement as-applied challenges, any application would be futile, as Defendants lack discretion to grant any administrative relief and have "dug in their heels" against the Congregation. "Defendants have not identified any administrative procedures available . . . and there is no evidence that the official is empowered to reverse the factual disputes." *West 95 Housing Corp. v. New York City Dept. of Housing Preservation and Development,* 2001 WL 664628, slip op. at *5 (citing *Honess 52 Corp. v Town of Fishkill*, 1 F. Supp 2d 294, 301 (S.D.N.Y. 1998)). Furthermore, the entrenched hostility of the Village demonstrates that any such effort would be futile. The Second Circuit in *Murphy v. New Milford Zoning Commission* has recognized this futility exception. 402 F.3d 342, 349 (2d Cir. 2005) (recognizing that "a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied."). *See also Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 160-61 (W.D.N.Y. 2006); *White Mtn. Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988) (stating that "administrative review may be futile by virtue of a preannounced decision" by the decisionmaker).

   a.   The Village lacks discretion to grant Plaintiffs any administrative relief.

Defendants claim that Plaintiffs are required to "submit[] an application for a special use permit, variance, zoning amendment or zone change . . . ." MTD at 15. As discussed below, the first two of these options do not exist here and the third is a *legislative* remedy. The Village's radical and unprecedented suggestion that one must attempt to change an unconstitutional law through the political process before it may be challenged in court should be rejected outright.

**Special Exception.** The Village has no discretion to grant the Congregation a special exception. *See* MTD at 12, 15 (suggesting that Plaintiffs are required to apply for SUP). SAC

16

¶ 222. Educational Institutions are permitted in the Village by special use permit only.  VILLAGE CODE, § 130-10(F).  As defined in § 130-4 of the Code, they must be accredited by the State or by a similar accrediting agency.  VILLAGE CODE § 130-4. The Congregation cannot be accredited by the State, nor is there a similar accrediting agency that will accredit the plaintiff Rabbinical College. *See supra.*  The Village thus lacks the discretion to allow its use by granting a special use permit.[27]

**Use Variance.**  The Village, citing *Murphy*, also suggests that the Congregation must first attempt to obtain a "variance."  MTD at 12, 15.  However, they acknowledge that the College cannot satisfy the requirements for a use variance and, according to the Defendants, "the first step in the process would be an application for a zone change."  MTD at 17.[28]  The *Murphy* decision, however, presented a wholly different set of facts.  It did not involve zoning ordinances that clearly prohibited a religious land use, but rather a discretionary interpretation of such ordinances regulating the manner of such a land use, where administrative relief may have been had, but had not been sought.  402 F.3d at 345.  A variance was available to the Murphys because the standard to obtain such relief was:  "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship."  *Id.* n.1.  Here, the Village has no authority to grant a variance,[29]

---

[27] The Village attempts to justify this disparate treatment by suggesting that the Rabbinical College will violate State law.  *See, e.g.,* MTD at 5, fn 10.  However, if true, such a law would violate the First Amendment insofar as it would prohibit a non-degree granting religious institution from educating religious officials.  *See New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.,* 654 F.2d 868 (3d Cir. 1981) (affirming injunction against state board from enforcing accreditation provision in manner that prohibited operation of religious college); *HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Board,* 235 S.W.3d 627 (Tex. Aug. 31, 2007) (holding that provision in statutory accreditation plan, as applied to schools offering only religious programs of study, violated the Free Exercise guarantees of the First Amendment).

[28] Defendants apparently mean a "text amendment" since no zone permits the Congregation's use.

[29] Courts have repeatedly held that administrative relief must not be sought if the granting agency has no discretion to do so.  *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1012 n. 3 (1992); *Anaheim Gardens v. U.S.,* 444 F.3d 1309, 1315 (Fed. Cir. 2006) (requiring "a reasonable degree of certainty, . . . there can be no variance from the facial requirements of the applicable regulation."); *Cienega Gardens v. U.S.,* 265 F.3d 1237 (Fed. Cir. 2001) ("The prerequisites for HUD to grant a prepayment request are set forth

17

as the ZBA in *Murphy* may have.[30]

**Text Amendment to Village Code.**   Finally, the Village focuses on a zoning text amendment (or, as they inaccurately put it, a "zone change") as a necessary "administrative" procedure that the Congregation must engage in before its claims are ripe.  MTD at 12, 15.  The claim in the Supreme Court's *Williamson County* decision was unripe because local administrative agencies had not been asked to apply the regulations and, as a result, there remained the "potential for . . . administrative solutions."  473 U.S. at 187 (emphasis added).  Defendants attempt to extend *Williamson County's* holding to the legislative sphere.  A text amendment (and a zone change) in New York is a *legislative* function and is within the legislative discretion of the local legislative body, in this instance, the Board of Trustees.[31]   Although New York, unlike some other jurisdictions, considers any zoning amendment to be a legislative determination, even if affecting a single property, a *text amendment* implicates all properties–an earmark of the legislative nature of such a request.  *See City of Coeur D'Alene v. Simpson*, 136 P.3d 310, 317 (Idaho 2006) ("Thus, a

---

by statute, and there is no allegation that HUD has any discretion to depart from these statutory requirements."); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990) ("Most recently, we excused as futile a landowner's failure to apply for a variance that the local government was powerless to grant."); *CCA Associates v. U.S.*, 75 Fed. Cl. 170, 182 (Fed. Cl. 2007) ("The Supreme Court has excepted from this general rule the circumstance where the agency "has no discretion to exercise over [the landowner's] right to use her land."); *City of Coeur D'Alene v. Simpson*, 136 P.3d 310, 316-17 (Idaho 2006) ("The plain language of those ordinances grants no discretionary authority to City officials to allow a fence on Sanders Beach").

   [30] In New York, unlike Connecticut, the standard for a use variance is strict, and each mandatory factor must be met, including: "(a) . . . the property in question cannot yield a reasonable return if used only for a purpose allowed in that district.  (b) That the plight of the owner is due to unique circumstances affecting the property which is the subject of the application and not to general conditions in the neighborhood. . . .  (e) That the unnecessary hardship claimed as a ground for the variance has not been created by the owner . . . ."  VILLAGE CODE § 130-28(D)(1). Here, each of the six use variance elements must be met.  *See id.* ("[T]he Board shall make each of the following findings . . . ." (emphasis added)).

   [31] *See Norman v. Town Bd. of Town of Orangetown*, 118 A.D.2d 839, 500 N.Y.S.2d 324 (2d Dept. 1986); *Donovan v. Town Bd. of Town of Oyster Bay*, 137 A.D.2d 652, 524 N.Y.S.2d 744 (2d Dept.), *lv. denied*, 72 N.Y.2d 804, 528 N.E.2d 521, 532 N.Y.S.2d 369 (1988); *Napolitano v. Town Board of the Town of Oyster Bay*, 128 A.D.2d 536, 512 N.Y.S.2d 466 (2d Dept. 1987); *Kasper v. Town of Brookhaven*, 122 A.D.2d 200, 504 N.Y.S.2d 736 (2d Dept. 1986).

county commission or city council cannot amend a land use ordinance in a variance proceeding.").

Accordingly, the "one meaningful application" cases that Defendants cite in their brief to support their assertion that this case is not ripe are irrelevant. *See* MTD at 15-17. In each of those cases there was administrative relief to be applied for that had the potential for resolving the underlying zoning dispute. *See Country View Estates @ Ridge, LLC v. Town of Brookhaven*, 2006 U.S. Dist. LEXIS 91981 (E.D.N.Y. 2006) (site plan application for a residential development); *Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149 (W.D.N.Y. 2006) (hardship exception to moratorium available); *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84 (2d Cir. 1992) (application for a development permit available); *Goldfine v. Kelly*, 80 F. Supp. 2d 153 (S.D.N.Y. 2000) (plaintiff had not applied to state environmental agency for approval of his housing development); *Xikis v. New York*, 1990 U.S. Dist. LEXIS 13715 (E.D.N.Y. 1990) (non-futile variance application available); *Kittay v. Giuliani*, 112 F. Supp. 2d 342 (S.D.N.Y. 2000) (same). Here, there is no administrative action that might resolve Plaintiffs' claims.[32]

           b.   Even if administrative relief was available, the Defendants have clearly "dug in their heels" to make such an effort futile.

Even if the Defendants had the discretion to grant land use permits through some administrative process, there is no question that an administration elected on a platform of keeping the Rabbinical College out of Pomona would certainly reject any such application. As the *Murphy*

---

[32] Neither do prudential considerations counsel otherwise. Determining whether a case is ripe generally requires a court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). The "fitness of the issues for judicial decision" prong requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development. *See Murphy*, 402 F.3d at 347-48 (describing prudential considerations). Even applying prudential considerations—which do not apply to Plaintiffs' FHA and RLUIPA claims, as they are subject only to Article III limitations—it is clear that the instant matter is ripe. The zoning law precludes the use and the Village Attorney has stated that Plaintiffs may not obtain a variance. No further record will aid in the Court's review of the fact that the zoning bars the use and a variance has been determined to be unobtainable. There is nothing for which Plaintiffs can "apply." Further delaying the matter by requiring that Plaintiffs seek a text amendment (which in any event is futile), is likely to entail years of delay, imposing a substantial injury on Plaintiffs' First Amendment right to the free exercise of their religion.

court stated, there is no requirement to engage in an utterly futile process where a zoning agency has "dug in its heels and made clear that all such applications will be denied." 402 F.3d at 349.  *See also Eidelson,* 645 P.2d at 181 (failure to exhaust administrative remedies may be excused where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision); *Hoehne v. County of San Benito,* 870 F.2d 529 (9th Cir. 1989) (finding claim ripe because plaintiff submitted uncontroverted affidavit that he was told that his application would be denied).

The Complaint alleges that such an attempt would be futile. SAC ¶¶ 178-185.  The evidence of the Village through its public officials, past and present, is credible and cumulative.  It has decided to fight any proposed use by the Congregation to build its College.  *See* Exh. 9 (Statements made by former Mayor Herbert Marshall); Exh. 11 (Defendant Yagel's campaign literature stating that he will "fight" the Rabbinical College); Exh. 12 (campaign literature for Defendants Sanderson, Louie and Yagel promoting them as "Fighting for the Future of Pomona," stating that they will "fight this plan," and they have "already prepared themselves with a strategy to win this fight"); Exh. 10 (campaign video and transcript for Defendant Sanderson stating that he will "fight this proposed development"); Exh. 13 (Defendant Sanderson's editorial piece stating that his "vision" is to be "well prepared to fight" and to create a "legal defense fund"); Exh. 13 (Defendant Yagel editorial piece); Exh. 16 (Village hearing transcript describing "tax stabilization fund"); Exhs. 17-18 (letters between the Congregation and the Village describing attempts to establish Rabbinical College use and reactions to same).[33]

3.  *Plaintiffs additionally would suffer irreparable damage from the discriminatory process they would be subjected to if required to apply for any relief.*

Defendant Mayor Sanderson's stated "vision" for Pomona is to delay any application by the

---

[33] Whether an application would be futile is a factual question not appropriate for resolution at this stage.  *W.J.F. Realty Corp. v. Town of Southampton*, 351 F. Supp. 2d 18 (E.D.N.Y. 2004) ("Whether additional petitions for exemption would or would not have been futile remains a disputed issue of fact, thereby foreclosing the possibility of summary judgment on this issue.").

Congregation until the year "2011" when its "legal defense fund created four years ago is almost $1

million," Exhibit 13; SAC ¶ 206, to "allow the Village to fight this proposed development." Exhibit

10; SAC ¶¶ 179, 180 (campaign video and transcript).[34]   Under such circumstances, the Second

Circuit has held that an action is ripe:

> [I]f judicial review were withheld until Peake obtained a DEC permit, Peake would have to
> choose between (1) abandoning his plans to construct the C & D landfill in deference to a
> potentially unconstitutional ordinance and (2) expending "considerable sums" of money to
> obtain a DEC permit and thereafter commencing an action challenging the ordinance.

*Gary D. Peake Excavating Inc.,* 93 F.3d at 72.  *See also Bowen v. City of New York,* 476 U.S. 467,

483-84 (1986) (holding that a failure to exhaust administrative remedies may be excused when the

claimant faces a danger of irreparable harm from the administrative process).

    C.  <u>Second Circuit Precedent Establishes that Plaintiff's FHA Claims Are Clearly Ripe.</u>

    Plaintiffs' FHA claims are also ripe.   The Defendants have ignored controlling Second

Circuit precedent that establishes that a plaintiff asserting an FHA claim based on discriminatory

zoning ordinances need not first pursue remedies under local zoning laws.  *See Huntington Branch,*

*NAACP v. Town of Huntington,* 689 F.2d 391 (2d Cir. 1982) ("*Huntington Branch NAACP I*")

(holding that FHA's promise of "immediate judicial review" would be undermined if FHA plaintiffs

were required to exhaust applicable state remedies); *LeBlanc-Sternberg v. Fletcher,* 781 F. Supp. at

271 (holding that plaintiffs' FHA claims were ripe even though the Village of Airmont had not yet

enacted any discriminatory zoning ordinance because of "discriminatory intent" that adversely

---

[34] Such a delay of many years and cost to the Congregation of millions of dollars to develop a full
site plan, engage in the SEQA process, etc., in an effort that at least has some significant chance of being
unsuccessful, will itself cause substantial hardship. *See Sisters of St. Francis,* 397 F. Supp. 2d at 1048 ("In
this case, however, St. Francis has argued and has presented evidence that the exception application
procedure itself is ill-defined, vague, and imposes a substantial burden on St. Francis's plans for expansion,
including effects on its construction schedule and recruitment of personnel.").

impacted plaintiffs' freedom of association and free exercise of religion);[35] *LeBlanc-Sternberg v. Fletcher*, 67 F.3d at 425 ("a person who is likely to suffer such an injury need not wait until a discriminatory effect has been felt before bringing suit.").

Plaintiffs have amply demonstrated in their Complaint that Defendants' discriminatory zoning ordinances have adversely impacted them, given the Defendants' premeditated efforts to eliminate housing for students and lecturers at the College. *See* SAC ¶¶ 27, 35, 45, 64-67, 107, 163-65. Thus, "hardship would continue to accrue to the plaintiffs were this court to withhold its consideration." *LeBlanc-Sternberg*, 781 F. Supp. at 271. In light of this clear precedent, none of which is cited in Defendants' Memorandum of Law, Plaintiffs' FHA claims are undeniably ripe.

## V. PLAINTIFFS HAVE STANDING TO RAISE THEIR CLAIMS.

Defendants' standing arguments are mostly a restatement of their ripeness arguments. MTD at 24-31. Nevertheless, the Complaint and supporting affidavits demonstrate that each Plaintiff has standing to challenge the Village's laws and targeted ordinance enactments.[36]

### A. The Plaintiffs Have Suffered Personal Injury or Threat of Injury.

**Congregation Rabbinical College of Tartikov, Inc.** As the Defendants themselves admit,

---

[35] The Second Circuit again affirmed, holding that "where it has been established that a zoning ordinance will likely be applied in a discriminatory manner, it is unnecessary that the municipality actually so apply it before the ordinance may properly be challenged." 67 F.3d at 425. The court relied also on *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208, 1214-16 (8th Cir. 1972) which held that the plaintiff's FHA claims against a restrictive zoning ordinance were ripe even though none of the plaintiffs had yet filed a building permit application that had been rejected. 67 F.3d at 425.

[36] With respect to standing, which the Defendants scarcely address, the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). In order to meet this requirement, a plaintiff must establish three elements: "(1) that the plaintiff suffered personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged . . . ; and (3) that the injury is likely to be redressed by the requested relief . . . ." *Fund for Animals v. Babbitt*, 89 F.3d 128, 134 (2d Cir. 1996) (citation omitted). Furthermore, there are no prudential limits on standing for suits brought under RLUIPA and the FHA. *See* 42 U.S.C. § 2000cc-2(a) ("Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution."); *Leblanc-Sternberg* at 424-25 (FHA).

"the College has alleged an interest in the land as an owner."[37]   MTD at 27 n.33.  Being unable to

develop its property for its intended use as a Rabbinical College is an injury in fact.  SAC ¶¶ 168-

174.  This is an "actual or imminent" "personal injury or threat of injury."  *Fund for Animals,* 89

F.3d at 134; *Lujan,* 504 U.S. at 560.  *See Innovative Health Systems, Inc. v. City of White Plains*,

117 F.3d 37 (2d Cir. 1997) (drug and alcohol rehabilitation center had standing to challenge City's

zoning actions preventing it from building); *Primera Iglesia Bautista Hispana of Boca Raton, Inc.*

*v. Broward Cy.*, 450 F.3d 1295, 1303-07 (11th Cir. 2006) (religious organizations had standing to

challenge zoning ordinance restrict their use).

Defendants argue that because Plaintiffs did not apply for a permit, they lack standing to

challenge the Code on its face and as applied.  MTD at 26.  The fact that exact dimensions of the

specific project have not been finalized does not mean that a ruling removing the undisputed

obstacles to *any* Rabbinical College would not benefit the Plaintiffs in a "tangible" way:

> NYAHC alleges that it <u>took substantial steps, and expended resources in preparing a plan,
> but did not formally submit it to defendants because it did not comply with the allegedly
> discriminatory RFP</u>. . . . The law of standing is not so rigid so as to deny a developer
> standing, no matter how significant its "injury in fact," <u>merely because it failed to submit a
> non-conforming proposal, knowing it will be summarily rejected</u>.

*ACORN v. County of Nassau*, 2006 WL 2053732, slip op. at *9 (E.D.N.Y. July 21, 2006) (emphasis

added).   Similarly, the Congregation here owns the property, purchased for this specific use,

"expended money on particular plans," Tauber Aff. ¶ 14, knows that its application would be

"summarily rejected," and would benefit from this Court's intervention.

**Individual Students and Teachers.**  The individual Plaintiffs would be the dean, lecturers,

and students of this institution.  They would all study, worship and live there.  Preventing them

from engaging in these activities works a concrete harm upon them.  SAC ¶¶ 24-49, 52-72; M.

---

[37] Defendants devote two pages of their brief to the issue of "associational standing."  MTD at 28-29.
It is not necessary for the Congregation and Kolel Belz to assert associational standing, as they have standing
in their own right, and certain individuals (also with standing) have joined this suit.

Babad Aff. ¶¶ 10, 13; M. Menczer Aff. ¶¶ 4, 6.  The Dean's appointment is not "hypothetical and contingent," MTD at 30, and the students' admissions are not "hypothetical and contingent."[38]  The lecturers are not "yet-to-be hired."  MTD at 31.  *See* M. Babad Aff. ¶ 1 (status as dean); *id.* ¶ 12 (College accepted Plaintiffs Margulis, Neuman, Heshkowitz, Rosenberg, Royde, and both Menczers); M. Menczer Aff. ¶ 11 (plans to accept offered position at Rabbinical College); Brief Aff. ¶ 5 (status as lecturer).

Such injuries are regularly held to be sufficient for Article III.  *See Innovative Health Systems*, 117 F.3d at 44 (holding that zoning action preventing alcohol-dependent persons from receiving counseling services at denied site conferred standing upon them); *Fair Housing in Huntington Committee Inc.* at 365 (holding that standing exists where "there is a 'substantial probability' that housing with greater minority occupancy would have been built in the 'White Areas' of Huntington."). *ACORN v. County of Nassau*, 2006 WL 2053732, slip op. at *11 (E.D.N.Y. July 21, 2006) ("Thus, at least at this stage, there appears to be a 'substantial probability' that if this Court grants the relief sought, plaintiffs will be afforded the opportunity to move to the Social Services Site. *See Arlington Heights*, 429 U.S. at 264.").

**Kolel Belz.**  Plaintiff Kolel Belz suffers a particularized injury[39] and will benefit from this litigation because it will have access to the services of rabbinical judges trained at the Rabbinical

---

[38] *Marin v. State of AZ*, 2000, 246 F.3d 674 (8th Cir. Dec. 22, 2000), an unpublished decision cited by Defendants, is wholly inapplicable.  The court there held that an individual did not have standing to challenge a state's bar application process because he "has already failed the bar examination once and has not chosen to retake it for ten years. During this action, it appears that he has moved to Ohio."  Such a tenuous connection to the regulation at issue is nothing like the concrete interest of the individual Plaintiffs to study, worship and live at the Rabbinical College.

[39] "Particularized" means "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1.  In *ACORN v. County of Nassau*, the Eastern District of New York held that plaintiff ACORN had standing to assert constitutional claims brought under 42 U.S.C. § 1983 as an "advocacy group that endeavors to fight discriminatory local and state government decisions, and to promote more affordable housing and racially integrated housing opportunities for Long Island, New York residents." 2006 WL 2053732, slip op. at *1. Certainly Kolel Belz, with its specific purpose and needs, suffers at least as great of a particularized injury as *ACORN*.

College.  *See* Fleishman Aff. ¶ 5 ("[W]e have no *bais din* or Rabbinical Judges to serve our community.  As a result, disputes often are not resolved according to our religious beliefs. . . .  One or more rabbinical judges trained at the Rabbinical College will allow us to satisfy this need.").  It is not "harmed in the same general way as the public," *Lujan*, 504 U.S. at 574-76, and its injury is not "highly generalized."  MTD at 27 n.33.  *See* Fleishman Aff. ¶¶ 2-7.[40]

 B.  <u>The Injury is Traceable to the Defendants' Codes and Actions.</u>

 Defendants also claim that "there is no injury that is traceable to any official decision, enforcement or administrative ruling of the Village."  MTD at 27.  This again demonstrates the Village's misinterpretation of the Plaintiffs' claims.  The injury—the Village's concrete statutory constraints on the Plaintiffs' use of the subject property—is obviously traceable to the Village, having enacted the laws and being empowered to enforce them.  *Primera Iglesia Bautista Hispana of Boca Raton, Inc.*, 450 F.3d at1304 ("The Church's injury is fairly and easily traceable to the zoning ordinance because applying the ordinance to the Church directly and expressly limits Primera's use of the Property for religious worship services.").

 C.  <u>The Injury is Likely to be Redressed by the Requested Relief.</u>

 Finally, the redressability element also exists here.  If the Village's discriminatory, burdensome and unreasonable code provisions are held to violate Plaintiffs' rights, appropriate

---

[40] Defendants inexplicably cite *1000 Friends of Oregon v. Clackamas Cy.*, 94 P.3d 160 (Or. App. 2004), in support of their standing argument.  MTD at 26-27.  *1000 Friends of Oregon* decided a <u>ripeness</u>, not a <u>standing</u> issue, and is therefore inapposite to the Village's standing argument.  Neither does the decision further Defendants' ripeness claim.  In that case, the Oregon appellate court held that the church's challenge to certain zoning regulations was not ripe because it had failed to utilize an administrative provision whereby it "may be able to request an exception . . . ."  93 P.3d at 161; *see* O.R.S. § 197.732 (providing procedures for "exceptions" to local land use regulation) .  As discussed *supra*, there is no such form of relief available in the instant case.

Neither is *League of Residential Neighborhood Advocates v. Los Angeles*, 498 F.3d 1052 (9th Cir. 2007), even remotely applicable.  MTD at 27.  That case involved the legality of a settlement between a city and a landowner that contradicted state law, holding that such a settlement requires a proven violation of RLUIPA.  The Congregation here *seeks* judicial resolution of its constitutional and statutory claims.

relief can be fashioned limiting their enforcement. SAC ¶¶ 64-69. This is true even if the exact dimensions of the facility have not yet been determined. *See Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) ("Were Lamar to succeed on the merits of its claims, it likely would be able to erect at least some of the signs it has asserted an intent to build, . . . ."); *Primera Iglesia Bautista Hispana of Boca Raton, Inc.*, 450 F.3d at1304; *ACORN*, 2006 WL 2053732, slip op. at *10 ("Other courts have held, however, that these types of uncertainties always exist in housing development cases, and should not be used as a means to defeat standing."). There is no dispute that, if the statutory impediments against the Rabbinical College are removed, the Congregation will build and operate the College. Tauber Aff. ¶¶ 10-14.

D. Supreme Court and Second Circuit Precedent Clearly Establish Plaintiffs' Standing to Assert Their Claims Under the Fair Housing Act.

Defendants have ignored well-established and binding precedent under which Plaintiffs' standing to bring their FHA claims in this case is beyond dispute. The FHA prohibits, among other practices, discriminatory zoning ordinances. *See Tsombanidis v. West Haven Fire Department*, 352 F.3d 565 (2d Cir. 2003); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d at 424; *Huntington Branch, NAACP (II) v. Town of Huntington*, 844 F.2d 926 (2d Cir.), *aff'd*, 488 U.S. 15 (1988).

The FHA confers standing to challenge discriminatory zoning ordinances on any "aggrieved person," 42 U.S.C. § 3613(a)(1)(A). *LeBlanc-Sternberg*, 67 F.3d at 424. An aggrieved person is "any person who -- (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i) (emphasis added). "This definition requires only that a private plaintiff allege 'injury in fact' within the meaning of Article III of the Constitution, that is, that he allege 'distinct and palpable injuries that are "fairly traceable" to [defendants'] actions.'" *Id.* at 424-25 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375-76 (1982)). Because it serves national policy of the "highest priority," the FHA is to be generously construed. *Trafficante v.*

26

*Metro. Life Ins. Co.*, 409 U.S. 205, 211 (1972).   Accordingly, "Congress intended standing under

§ 812 [of the FHA] to extend to the full limits of Art. III."   *Havens Realty Corp.*, 455 U.S. at 372.

The courts lack the authority to create prudential barriers to standing in suits brought under that

section, and the sole requirement for standing to sue under § 812 is the Art. III minimum of injury

in fact criterion.   *Id.   Havens* demonstrates the broad scope of standing under the FHA. 455 U.S. at

378-79; *see also Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (same);

H.R. Rep. No. 711, 100th Cong. 2d Sess. 23, *reprinted in* 1988 U.S. Code Cong. & Admin. News

2173, 2184 (current statutory definition of "aggrieved person" was meant "to reaffirm the broad

holdings" of *Havens Realty Corp. v. Coleman*).

The Second Circuit's decision in *LeBlanc-Sternberg* controls the question of Plaintiffs'

standing to bring their FHA claims in this case.[41]   The district court held the plaintiffs had suffered

injury even though they had not been excluded from living in the Village of Airmont.   The court

further rejected the argument that Plaintiffs were asserting the rights of third parties.   Citing the

broad definition of standing articulated in *Havens*, the court held that:

> Plaintiffs claim that their ability to associate with others of similar beliefs is limited by the
> chilling effect that the incorporation has had on the desire of the Orthodox to move into
> Airmont. Thus, they are deprived of the benefits that would accrue from living in a
> neighborhood where all people are welcome regardless of their color or faith. In this case,
> direct violations of the rights of others injure the plaintiffs.

The Second Circuit subsequently agreed that plaintiffs had standing to bring their FHA, as well as

their constitutional claims, against the defendants.   67 F.3d at 424.

Under *LeBlanc-Sternberg,* all Plaintiffs in this case have standing.   The Plaintiffs here have

suffered injury from Defendants' discriminatory efforts to eliminate housing for the Rabbinical

College, its students and lecturers.   SAC ¶¶ 27, 45, 64-67, 91, 163, 167, 186. Members of Kolel

---

[41] The lamentable history of anti-Hasidic animus in Rockland County is well documented in
*LeBlanc-Sternberg.* It is quite telling that Defendants completely ignore this case throughout their brief.

Belz also suffer injury because Defendants' discriminatory zoning laws banning suitable housing for students at the College deprives them of the *dayanim* essential to Hasidic religious life.  SAC ¶¶ 34-37, 92-94, 98.  They are aggrieved parties under the FHA.

## VI.   DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF PLAINTIFFS' SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM MUST BE DENIED.

Defendants' 12(b)(6) challenge to the Plaintiffs' Second Amended Complaint on the merits of their claims[42]—is just another bite at the ripeness apple rather than addressing the actual merits of Plaintiffs' claims.  This legal maneuver has been attempted before and failed.  *See generally Church of the Hills v. Twp. of Bedminster,* 2006 WL 462674, slip op. (D.N.J. Feb. 24, 2006) (denying 12(b)(6) motion to dismiss all RLUIPA and constitutional claims except due process claim) (attached as Exh. 19).

A.  Plaintiffs' Second Amended Complaint States a Claim Under the First Amendment and RLUIPA, 42 U.S.C. § 2000cc(a), that the Village's Laws and Actions Substantially Burden Their Religious Exercise.

The challenged ordinances violate both the First Amendment and RLUIPA by substantially burdening Plaintiffs' religious exercise without using the least restrictive means of achieving a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1);[43] *Church of the Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993) (applying strict scrutiny to non-neutral laws).[44]   Thus, in this jurisdiction, any governmental action that substantially burdens a central religious practice is

---

[42] Defendants' 12(b)(6) challenge does not seek dismissal of Plaintiffs' claims brought under the Fair Housing Act and therefore Plaintiffs make no defense of those claims here.  SAC ¶¶ 279-289.

[43] This provision applies where "the substantial burden affects, or removal of that substantial burden would affect, commerce . . . among the several States . . . ."  *Id.* § 2000cc(a)(2)(B).  The construction operation, and maintenance of a Rabbinical College clearly effect interstate commerce and therefore trigger that jurisdictional component of the statute.  *See WDS II,* 504 F.3d at 354.

[44] In the Second Circuit, strict scrutiny is also the applicable standard of review under the Free Exercise Clause for even neutral laws that substantially burden religious exercise.  *Altman v. Bedford Cent. School Dist.,* 245 F.3d 49, 79 (2d Cir.) (applying strict scrutiny where "there is no indication that a restriction of a plaintiff's religious activities was the defendant's actual objective, but only that its actions, neutral on their face, had a restrictive effect"), *cert. denied,* 534 U.S. 827 (2001).

subject to strict scrutiny.

### 1. *The Congregation's proposed use is religious exercise.*

Defendants argue that the "Building of a Proposed Rabbinical College is not Religious Exercise." MTD at 36.  The Second Circuit resolved this issue by beginning its analysis in *WDS II* by "remov[ing] any remaining doubt regarding how broadly Congress aimed to define religious exercise." *Id.*; 42 U.S.C. § 2000cc-3(g).  *See WDS II*, at 348 (the court must "consider whether the proposed facilities were for a religious purpose" (emphasis added)).  The court held that religious education was religious exercise. *Id.* at 347-48.[45]

There can be no question that the religious worship, expression, association and education at the planned Rabbinical College is religious exercise.[46]  It is of course true that mere ownership of real property "alone does not automatically bring those activities or facilities within the bill's definition of 'religious exercise.'"  MTD at 36 (quoting *WDS I*, 386 F.3d at 190 n.4).  But it is the *use* of this property that matters.  This use involves strenuous religious study and prayer throughout the day and night, living in a communal facility that allows them to be fully immersed in their religious studies with their families, praying and learning groups, lecturers and fellow students—all contributing to the necessary religious environment.  SAC ¶¶ 60, 63, 68.

The fact that there will be housing for the rabbinical students makes the use no less religious than the use of a monastery or convent with bedrooms and kitchens.  The daily religious lifestyle of

---

[45] This notion is not new.  Religious education has repeatedly been held to be religious exercise protected under RLUIPA and the First Amendment. *See, e.g., Alpine Christian Fellowship v. Cy. Comm'rs of Pitkin Cy.*, 870 F. Supp. 991 (D. Colo. 1994); *Shepherd Montessori Center Milan v. Ann Arbor Charter Tp.*, 675 N.W.2d at 282; *Mintz v. Roman Catholic Bishop of Springfield*, 424 F. Supp. 2d 309, 319, 320-21 (D. Mass. 2006).

[46] Defendants misstate the holding of *Lighthouse Institute for Evangelism v. City of Long Branch*, __ F.3d __, 2007 WL 4166239, at *16 (3d Cir. Nov. 27, 2007).  That court did *not* hold that land use is "not considered religious exercise under the Free Exercise Clause." MTD at 32.  Rather, it held that, where churches were permitted in certain zoning districts and not others, "when a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain in what way the inability to locate in the specific area affects its religious exercise." *Id.*, 2007 WL 4166239, at *16.  The Court should not be misled.

the individual Plaintiffs, intertwined with the continuous religious study, becomes an inseparable component of the principal use.   In this way, *Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734 (Mich. 2007), is wholly distinguishable.   MTD at 37.   The court recognized that, with respect to the proposed "apartment complex," "[n]o evidence has been presented to establish that the proposed apartment complex would be used for religious worship or for any other religious activity."   *Id.* at 746.   The raison d'être of the complex in *Greater Bible Way Temple* was housing, here it is the education of rabbinical judges.[47]

> 2. *Prohibiting the construction and operation of a Rabbinical College substantially burdens the Plaintiffs' religious exercise.*
>
>     a.     Pomona's laws completely prohibit the Congregation's use.

A substantial burden exists where a religious land use is prohibited outright, as here.   The Supreme Court has determined that a "substantial burden" exists when the state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981).   This Court has held:

> In order to establish that his religious exercise was substantially burdened, a plaintiff must "demonstrate that the government's action pressures him to commit an act forbidden by his

---

[47] Religious housing has been protected in the Free Exercise context by the Second Circuit and other courts. *See Leblanc-Sternberg*, 67 F.3d at 417; *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 869-70 (2d Cir. 1988) (ruling in favor of seminary, where "'apron' of quietude surrounding St. Joseph's and contribute to the 'atmosphere of quiet reflection' essential to the "academic, spiritual, psychological and pastoral" preparation of young men for the priesthood."); *Vietnamese Buddhism Study Temple In America v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1167 (C.D. Cal. 2006) (granting preliminary injunction protecting Buddhist "study temple," where "Temple's *sangha* believe that they should pray, meditate, chant, and read the *sutras* (Buddhist spiritual scriptures) together with each other and the Abbot. . . . Much of the daily ritual schedule for the *sangha* is designed to be performed as a community. . . ."); *Ohnmeiss v. C. I. R.*, T.C. Memo. 1991-594, 1991 WL 251528 (Tax Ct. 1991) ("Our nation has a venerable tradition of religious and utopian communities which have practiced communal living."); *House of Good Shepherd v. Dept. of Rev.*, 710 P.2d 778, 780 (Ore. 1985) ("A religion may be advanced by communal living in an atmosphere of prayer and adherence to canon law."); *City of Chula Vista v. Pagard*, 171 Cal. Rptr. 738 (4 Dist. 1981) (striking down City ordinance that prevented "church congregation [from] conduct[ing] their lifestyle, as a matter of religious belief, in a manner requiring a 'communal living arrangement.'"); *Havurah v. Zoning Bd. of Appeals*, 418 A.2d 82, 87-88 (Conn. 1979) ("Beit Havurah has testified, without contradiction, that sleeping accommodations are essential to its religious fellowship, and that their absence would severely limit its religious activities."); *cf. Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.*, 468 F. Supp. 1219 (S.D. 1979) ("The Hutterites have incorporated into their lifestyle many other traditions and practices which are unique to American culture. One of the basic tenets of their religion is communal living.").

religion or <u>prevents him from engaging in conduct</u> or <u>having a religious experience</u> <u>mandated by his faith</u>." *Davidson v. Davis*, 1995 WL 60732 at *5 (S.D.N.Y. 1995) (citing *Graham v. Commissioner*, 822 F.2d 844, 850-51 (9th Cir. 1987), . . . .

*Reese v. Coughlin*, 1996 WL 374166, *6 (S.D.N.Y. July 3, 1996) (emphasis added).

The Second Amended Complaint alleges facts sufficient to demonstrate that the burden placed upon the Plaintiffs is substantial. Admittedly, for a burden to be "substantial," it must be more than an "inconvenience or have more than an "incidental effect." MTD at 37. But the Village Code does not permit the Rabbinical College (and its necessary residential component) to exist *anywhere* in Pomona, either as a "matter of right" or by special use permit.[48] Guidance from *WDS II* is helpful even though the use at entity in that case, an "Orthodox Jewish co-educational day school," *id.* at 344, was not completely prohibited within the jurisdiction. The issue of whether the denial of the expansion was "absolute" was central in the *WDS II* litigation, and was the basis for the original remand. *WDS I*, 386 F.3d at 188. *See WDS II*, at 349 (holding that religious exercise is substantially burdened where there is no "reasonable opportunity" to obtain use). Since there is no opportunity to submit an application, the Second Circuit's standard is met.[49] The inability to locate elsewhere within a jurisdiction is also a critical factor. *WDS II*, at 350 (citing Ninth Circuit decision

---

[48] *See* SAC ¶ 91; VILLAGE CODE §§ 130-9, 130-10. Any use not listed under section 130-9 of the Village Code is prohibited, unless it is permitted by special use permit. *Id.* § 130-9. Educational Institutions are only permitted under the Village Code as a special use. *Id.* § 130-10 (F). Under the Village Code, however, an Educational Institution must be accredited either by the State of New York, or a similar recognized accrediting agency to operate anywhere in the Village. SAC ¶¶ 93, 104; VILLAGE CODE § 130-4. The Rabbinical College is not accredited by the State of New York, nor can it be, and there is no similar accrediting agency for the program offered by the College. SAC ¶¶ 105, 106. With respect to the residential component of the Rabbinical College, the Village's prohibition on kitchens and dining facilities, and restriction on the size of any dormitory building to twenty percent of the total square footage of all buildings on the lot is essentially a flat out denial of Plaintiffs' intended use and effectively eliminates any dormitories. SAC ¶¶ 162, 163; VILLAGE CODE § 130-10(F)(12).

[49] *See also Living Water Church of God v. Charter Twp. Of Meridian,* App. No. 07-0832, slip op. at 18 (6th Cir. Dec. 10, 2007) (RLUIPA violated if government regulation "effectively bars the institution from using its property in the exercise of its religion."); *but see Sts. Constantine & Helen Greek Orthodox Church v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) ("That the burden would not be insuperable would not make it insubstantial."); *Lighthouse Community Church of God v. City of Southfield*, 2007 WL 30280, slip op. at *9 (E.D. Mich. Jan. 3, 2007) (holding that "[s]elling its current building and searching for another is not a mere inconvenience to Plaintiff," but a substantial burden on religious exercise).

holding that no substantial burden exists where plaintiff "was not 'precluded from using other sites within the city'").  Because of the Village's Code, there exists no site for the Rabbinical College anywhere within Pomona.

b. Pomona's enactments of targeted ordinances are "arbitrary, capricious, or unlawful."

In addition to the actual effect on the plaintiffs' religious exercise, the Second Circuit found highly relevant facts which demonstrate that "land use restrictions are imposed on the religious institution arbitrarily, capriciously, or unlawfully."  *WDS II*, at 350-51.[50]  Pomona has drawn an arbitrary distinction between accredited educational institutions and non-accredited ones, and it permits dormitories but excludes those with separate cooking facilities.  These restrictions serve no purpose other than to defeat the Rabbinical College's use, whose students are Orthodox Jewish adult males with families who need kitchen facilities.  SAC ¶ 107.  For no rational reason, Pomona prohibits more than one dormitory building on a lot no matter the size of the lot.  VILLAGE CODE § 130-4; SAC ¶ 108.  And, to ensure that the one permitted dormitory cannot possibly house all of the students at the Rabbinical College, Pomona imposes an absurd restriction on the size of the dormitory: only 20% of the total square footage of all the buildings on the property.  SAC ¶ 109.

3. *A Compelling Interest Can Not Be Established as a Matter of Law on the Plaintiffs' Complaint.*

As described above, the Village must establish that it has a *compelling*, and not merely *rational* justification for its burdensome and targeted ordinances.  *See Altman*, 245 F.3d at 79 (compelling interest required under Free Exercise Clause); *Murphy*, 402 F.3d at 352 (same); 42 U.S.C. § 2000cc(a) (codifying compelling interest requirement).  A compelling interest is one that prevents "some substantial threat to public safety, peace or order."  *Sherbert*, 374 U.S. at 403;

---

[50] *See Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005); *Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 989-91 (9th Cir. 2006).

*Congregation Beth Yitzchok of Rockland,* 593 F. Supp. 655 (S.D.N.Y. 1984) (fire safety regulations were compelling); *Cottonwood Christian Center,* 218 F. Supp. 2d at 1227-28 (holding that preventing "esthetic harm" is not compelling). Despite Defendants' arguments to the contrary, MTD at 19-21,[51] any such interest in keeping the Congregation out of the Village cannot be established at this preliminary stage. The Plaintiffs' Complaint clearly alleges that the Village lacks a compelling interest in prohibiting the Plaintiffs' use altogether.[52]

B. Plaintiffs' "Equal Terms" Claim Should Not Be Dismissed.

RLUIPA's "Equal Terms" provision, 42 U.S.C. § 2000cc(b)(1) states that "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."[53] Plaintiffs have

---

[51] The Defendants' claim that the Village has a "compelling interest in enacting zoning laws" is both circular and unreasonable. It would also render RLUIPA meaningless, as any zoning ordinance would have been "enacted." There mere act of "enacting" a law cannot establish its validity, even in the area of zoning as Defendants argue. The Village's stated interest is protecting the "integrity of the zoning code" was explicitly rejected by the Second Circuit in *WDS II:*

> The Village underlines claims that it has a compelling interest in enforcing zoning regulations and ensuring residents' safety through traffic regulations. However, it must show a compelling interest in imposing the burden on religious exercise underlines in the particular case at hand, not a compelling interest in general.

*Id.* at *10 (emphasis added). *See also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 431(2006) ("invocation of such general interests, standing alone, is not enough.").

[52] Here, the property chosen for the Rabbinical College comprises nearly 100 acres. SAC ¶ 90. Going beyond what could be reasonably expected, in order to preserve the suburban nature of the community, an affiliate of the Congregation bought an additional thirty contiguous acres to provide a buffer between the College and the neighboring community. SAC ¶ 74. The College itself will be a quiet residential community characterized by intensive study, prayer and worship. SAC ¶¶ 60-68. The Village has absolutely no evidence that the College would threaten the health, safety and welfare of Pomona residents in any way whatsoever. SAC ¶ 185.

[53] The Supreme Court has repeatedly held that the Free Exercise Clause also requires "neutrality" with respect to religion. *Employment Div. v. Smith,* 494 U.S. 872, 877-80 (1990) (describing bans on "assembling with others . . . only when they are engaged in for religious reasons" as unconstitutional); *id.* at 877 (the "government may not . . . impose special disabilities on the basis of religious . . . status" (citations omitted)). The Free Exercise Clause protects religiously motivated conduct from being targeted for worse treatment than equivalent secular conduct. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993). A similar analysis exists under the Equal Protection Clause. *See Congregation Kol Ami v. Abington Township,* 309 F.3d 120, 137 (3d Cir. 2002) (holding that "similarly situated uses"—

alleged a prima facie violation of this provision.  As the Village admits, the Equal Terms provision "require[s]  a  secular  comparator  that  is similarly situated as to the regulatory purpose of the regulation in question."  MTD at 39; *see generally Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, __ F.3d __, 2007 WL 4166239, at *7 (3d Cir. Nov. 27, 2007).  As alleged in the Second Amended Complaint, the Village treats the Rabbinical College—"a religious assembly or institution"—on "less than equal terms" as an accredited college ("a nonreligious assembly or institution") as well as other nonreligious uses.[54]

That a secular, accredited college is "similarly situated" to the Rabbinical College "for the regulatory purpose"—with respect to the relevant *land use* issues, and not the State's education laws—is readily apparent, but at the very least presents a question of fact.  *See* 42 U.S.C. § 2000cc-3(g) (RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution.").

C.  Plaintiffs' Discrimination Claims Should Not Be Dismissed.

Senators Kennedy and Hatch, co-sponsors of RLUIPA, noted that religious organizations "are  frequently  discriminated  against  on  the  face  of  zoning  codes  and  also  in  the  highly individualized and discretionary processes of land use regulation. . . .  [O]ften, discrimination lurks behind such vague and universally applicable reasons as traffic, aesthetics, or 'not consistent with the city's land use plan.'" 146 CONG. REC. S774-01 (daily ed. July 27, 2000).  Nowhere is such an

---

including religious uses—must be treated equally unless they "'would threaten legitimate interests of the city *in a way that other permitted uses . . .* would not.'"); *Open Homes Fellowship, Inc. v. Orange Cy., Fla.*, 325 F. Supp. 2d 1349 (M.D. Fla. 2004) (ruling that treating a church-operated "drug and alcohol rehabilitation center" worse than "community residential homes, adult daycare centers, and dormitories" violated the Equal Protection Clause).

[54] Defendants respond by arguing that RLUIPA should not permit a religious college to avoid New York State's accreditation requirements (which do not apply).  This self-serving rationale is irrelevant to the zoning issue before this Court.  Pomona is not charged with enforcing New York's education laws.

attitude more prevalent than against Orthodox Jews in Rockland County.[55]

The Second Circuit's decision upholding a jury verdict against the nearby Village of Airmont in *Leblanc-Sternberg* is instructive, as situations in Pomona and Airmont could not be more similar. The two Villages are only a few miles distant from each other in the Town of Ramapo. Both cases involve strong community anti-Semitism. *See* SAC ¶¶ 186-92; 67 F.3d at 418-21. Both cases involved a private association supporting the use of zoning laws to control the Hasidic population. *See* SAC ¶¶ 193-95; 67 F.3d at 418-421. Both involve a direct connection between the organized private effort and municipal officials. *See* SAC ¶¶ 200-01;[56] 67 F.3d at 419 ("In May 1991, Village elections were held, and the slate of candidates supported by ACA was victorious."). In both cases, the Villages defended their actions by citing issues such as environmental and traffic concerns. 67 F.3d at 421. While Plaintiffs need not prove that the Village was motivated by anti-Hasidic hostility in adopting the targeted ordinances,[57] such

---

[55] *See, e.g., LeBlanc-Sternberg; Congregation Mischknois Lavier Yakov v. Village of Airmont*, Civ. No. 02-5642 (S.D.N.Y. 2007); *Village of Chestnut Ridge v. Town of Ramapo*, 2007 WL 2317416 (2d Dept.); *Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*, 98 F. Supp. 2d 347 (S.D.N.Y. 2000); *United States v. Village of Suffern*, Civ. No. 06-7713 (complaint filed Sept. 26, 2006).

[56] The Defendants claim that Preserve Ramapo "is not affiliated with the Village," MTD at 12, but Trustee Brett Yagel is among its members. SAC ¶ 201. Moreover, regardless of Village officials' own motivations, the Constitution does not permit them to base their land use decisions on a political desire to appease local residents hostile to a religious entity. *See Marks v. City of Chesapeake, Va.*, 883 F.2d 308, 313 (4th Cir. 1989) ("The necessary and obvious inference . . . is that their deliberations were impermissibly tainted by 'irrational neighborhood pressure' manifestly founded in religious prejudice.").

The United States Department of Justice, charged with enforcing RLUIPA by 42 U.S.C. § 2000cc(4)(f), recently filed a brief *amicus curiae* explaining that "appeas[ing] the hostile local residents" through land use regulation is impermissible under RLUIPA. *See* Brief of the United States as *Amicus Curiae* in Opposition to Defendants' Motion for Summary Judgment at 20-22, *Albanian Associated Fund v. Township of Wayne*, Civ. No. 2:06-3217 (filed July 19, 2007) (attached as Exh. 20).

[57] *See Midrash Sephardi*, 366 F.3d at 1234 n.16 ("We reject Surfside's contention that the SZO is neutral because there is no evidence of selective and discriminatory intent against Orthodox Jews, a pattern of hostility or discriminatory animus toward the synagogues") (emphasis added); *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 168 n.30 (3d Cir. 2002) ("We note that, in determining the appropriate standard to apply, we do not believe it necessary to consider the subjective motivations of the Council members who voted to remove the eruv. *Lukumi* and *Fraternal Order of Police* inferred discriminatory

35

remarkable hostility is certainly evidence of differential treatment.

Finally, these issues of discrimination must be left to the finder of fact.  As the Second Circuit noted, "[s]uch assessments of permissible competing factual inferences plainly bespeak a weighing of the evidence." *Id.* at 430.  Certainly, evidence of hostility from the public which led to government action can support a finding of discrimination.  *See, e.g., Leblanc-Sternberg v. Fletcher*, 67 F.3d at 431 (reciting anti-Semitic statements); *Islamic Center of Mississippi*, 840 F.2d at 297; *Albanian Associated Fund v. Township of Wayne*, 2007 WL 2904194, slip op. at *11 (D.N.J. Oct. 1, 2007) (leaving question for the factfinder); *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1225 (C.D. Cal. 2002) (in RLUIPA case, holding that fair probability of success on plaintiffs' discrimination claim exists, "and the City's motives are best decided at trial").

### D. Plaintiffs' Claim that the Defendants' Code and Targeted Ordinances Violate 42 U.S.C. § 2000cc(b)(3) Should Not Be Dismissed.

The Congregation's use is completely and totally prohibited within the Village.  RLUIPA strictly prohibits local governments from completely banning religious land uses from a jurisdiction in two sequential provisions of the Act.  42 U.S.C. § 2000cc(b)(3)(A)-(B).  These sections explicitly prohibit the total exclusion and unreasonable treatment of certain religious land uses, respectively, and have their roots in First Amendment law:

> *Schad* applies only to the complete and total exclusion of activity or expression protected by the First Amendment. *See Schad*, 452 U.S. at 76, 101 S.Ct. 2176 ("Here, the Borough totally excludes all live entertainment, including nonobscene nude dancing that is otherwise protected by the First Amendment." (emphasis added)) . . . .

*Vision Church v. Village of Long Grove*, 468 F.3d 975, 989 (7th Cir. 2006) (RLUIPA case).[58]  As

---

purpose from the objective effects of the selective exemptions at issue without examining the responsible officials' motives.") (emphasis added).

[58] The Seventh Circuit acknowledged that religious land uses were, like adult entertainment land uses, protected by *Schad's* First Amendment principle, and that this protection is "embodied in RLUIPA

described *supra*, such a condition exists here.  The Congregation is a "religious assembl[y]" that is "totally exclude[d]" "from a jurisdiction."  42 U.S.C. § 2000cc(b)(3)(A).

Complete prohibitions on protected First Amendment activity are also generally found to be unreasonable, and would thus violate 42 U.S.C. § 2000cc(b)(3)(B).[59]  *See Schad*, 452 U.S. at 66. ("The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.").  At the very least, there are genuine issues of material fact as to this issue.  *See, e.g., People v. Katz*, 233 N.E.2d 845, 847 (N.Y. 1967) ("While we are in sympathy with the general purpose of the statute involved in this case [preventing the obstruction of streets], . . . its use of total prohibition rather than reasonable regulation render it unconstitutional."); *Church of Jesus Christ of Latter-day Saints v. Jefferson Cy.*, 741 F. Supp. 1522, 1532 (N.D. Ala. 1990) ("The majority of these state court decisions have held that municipalities may not completely exclude facilities for religious use from such districts, . . . .").  The Village cannot defend itself by claiming that the Congregation should go elsewhere.[60]

---

§ 2(b)(3)."  *Id.* at 989.  Teaching rabbinical judges is certainly entitled to at least as much—and likely more—First Amendment protection than performing in strip clubs.

The *Vision Church* court held that a village did not violate § 2000cc(b)(3)(A) because "the Village [permitted] churches in all residential districts as a special use, . . . ."  *Id.* at 990.  Similarly, in *Petra Presbyterian Church v. Village of Northbrook*, 409 F. Supp. 2d 1001, 1007 (N.D. Ill. 2006), the court rejected a "total exclusion" challenge because the plaintiff's use was permitted in 70% of the Village's jurisdiction.  Implicit in the holding is the fact that, if the church's use were permitted in 0% of the jurisdiction—as the Congregation's is here—the total exclusion provision would be violated.  *See id.*

[59] RLUIPA's legislative history declares that "[w]hat is reasonable must be determined in light of all the facts, including the actual availability of land and the economics of religious organizations." 146 CONG. REC. E1563 (daily ed. Sept. 22, 2000) (statement of Rep. Canady).

[60] *See Schad*, 452 U.S. at 76-77 ("[One] is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."); *Palmetto Properties v. County of DuPage*, 160 F. Supp. 2d 876, 883 (N.D. Ill. 2001) ("These alternate avenues of expression must be within the jurisdiction that controls the zoning. It is not sufficient to say that neighboring communities permit the type of speech that the challenged ordinance bans." (emphasis added)); *Islamic Center of Mississippi v. City of Starkville, Mississippi*, 840 F.2d 293, 300 (5th Cir. 1988) (holding that "the availability of other sites outside city limits does not permit a city to forbid the exercise of a constitutionally protected right within its limits." (emphasis added)); *see also Freedom Baptist Church of Delaware Cy. v.*

E.   Plaintiffs' Free Speech Claims Should Not Be Dismissed.

The Second Amended Complaint contains allegations that the Plaintiffs would, but for the

Village's Code, engage in expressive activity.[61]   The Supreme Court has held that the "opportunities

of pupils to acquire knowledge," is a First Amendment right distinct from the right to impart

knowledge.  *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923).  *See also Kleindienst v. Mandel*, 408

U.S. 753, 762-63 (1972) (emphasizing that the distinct "first amendment right 'to receive

information and ideas' . . . is nowhere more vital than in our schools and universities."); *New

Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher

Educ.*, 654 F.2d 868, 886 (3d Cir. 1981) ("We agree that success on the merits in resisting a prior

restraint against all teaching and all advertising is likely.").

In response, the Defendants cite two cases in opposition to the Plaintiffs' Free Speech claim.

First, *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004), actually

supports the Congregation's arguments.[62]   That court rejected the college's free speech claims

because, unlike the case at bar, the zoning ordinances implicated did "not 'ban' speech, but merely

designate[d] where such speech may occur."  *Id.* at 1032.  Furthermore, "[t]he record reflects no

indication that the City's action was motivated by the City's disdain of College's religious

---

*Tp. of Middletown*, 204 F. Supp. 2d 857, 870 (E.D. Pa. 2002) ("It is, for example, well-established that a
municipality cannot entirely exclude a type of conduct that the First Amendment protects.").

Defendants defend the facial validity of the exclusionary R-40 zoning throughout the Village by
citing to *N. Shore Unitarian Universalist Soc., Inc. v. Inc. Vill. of Upper Brookville*, 110 A.D.2d 123 (2 Dept.
1985).  MTD at 23-24.  However, that case involved state claims, and no protected First Amendment
interests were at stake.  It is entirely irrelevant.

[61] As alleged in the Complaint, the Plaintiffs' daily activities will include religious study and prayer
for several hours each day.  SAC ¶ 60.  Prayer will be a fundamental element of the students' life at the
Rabbinical College, and the College will include multiple *shuls*, which will be incorporated into the daily
lives of the students and their families.  SAC ¶¶ 63, 68.  Other rabbis, including Plaintiffs Brief and Kahana,
will serve as lecturers and remain daily in the study halls (*Bais Medrash*) to interact and advise the students
during their studies.  SAC ¶ 61.  This expressive activity is ignored by the Defendants, who claim that the
Congregation's activity will only be "construction."  MTD at 33.

[62] *See id.* at 1032 n.5 (noting that "[b]oth the Supreme Court and this Court have interpreted *Renton*
to apply outside of the "adult business" context.").

38

orientation," again, unlike here.  *Id.*  In *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 162 (3d Cir. 2002), the court held that the placement of *lechis* on utility poles was not "expressive conduct," as "the *eruv* serves a purely functional, non-communicative purpose."

Even though a strict scrutiny review is appropriate for the targeted ordinances, the Village would fail even rational basis review appropriate for a time, place and manner restriction, since the Village has left no alternative channels of communication by the Congregation.

F.    Plaintiffs' Freedom of Association Claims Should Not Be Dismissed.

The First Amendment also protects two forms of freedom of association: that of maintaining "intimate human relationships," and associating for purposes of expressive activity.  *See NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 472 (S.D.N.Y. 2004) (emphasis added). The Village finds it "incredible," MTD at 34, that the Congregation raises its right to freedom of expressive and intimate association, after it passes laws specifically designed to prohibit dormitories for married students.  SAC ¶¶ 156-167. "Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984).[63]

Plaintiffs also wish to associate for expressive purposes, namely religious worship and education as described *supra*.  Although they currently "study in the area," MTD at 35, they are not engaged in a program to train rabbinical judges.  *See NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958). As described above, the sole purpose for the Rabbinical College is to train rabbinical judges.[64]

---

[63] Defendants state in a conclusory faction that "the minimal requirement of submitting a land use plan does not prevent Plaintiffs from associating, marrying, having children, or rearing their families."  MTD at 34.  Again, there is no land use plan that the Congregation can submit.  And specifically targeting married students with children *does* impact Plaintiffs' ability to marry and rear their families.

[64] To be cognizable, the interference with associational rights must be "direct and substantial" or

G.    State Constitutional Claims Should Not Be Dismissed

Defendant argues that plaintiffs' claims under New York State Constitution, Article 1 §§ 3 and 8 must be dismissed, because "no private right of action" exists under these sections, citing *Muhammad v. New York City Trans. Auth.*, 450 F. Supp.2d 198, 212 (E.D.N.Y. 2006) and *Singh v. City of New York*, 418 F. Supp.2d 390, 406 (S.D.N.Y. 2005). Those cases hold that no private right of action for damages exists under these sections, if there are alternative remedies available. Here, plaintiffs are not seeking damages, but rather, are seeking declaratory and injunctive relief. *Muhammad, supra*, at p.211, specifically notes that the leading case of *Brown v. State*, 89 N.Y.2d 172 (1996), which found an implied private right of action for damages under Article I, Section 11 (equal protection), was distinguished by *Martinez v. City of Schenectedy*, 97 N.Y.2d 78, 83 (2001), precisely because "no declaratory or injunctive relief was available" to *Brown*, while *Martinez* had other available remedies.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask this Court to DENY Defendants' Motion to Dismiss, in its entirety.

---

"significant." *Fernandez v. City of Poughkeepsie*, 67 F. Supp. 2d 222, 226-227 (S.D.N.Y. 1999) (citing *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996)). Here, it is absolute. The Village is prohibiting the Congregation's use outright. It has banned such a use and activity from its jurisdiction. Where such rights are infringed, there is no presumption of constitutionality; the state must have a compelling interest to justify abridgment; and the scope of the abridgment itself must not be greater than reasonably necessary to serve the state interest. *Blasecki v. City of Durham*, 456 F.2d 87, 91 (4th Cir. 1972) (citing, *inter alia*, *Thomas v. Collins*, 323 U.S. 516, 530 (1945)).

In response, the single case cited by Defendants, *San Jose Christian College,* again supports the Congregation's claim: "Admittedly, the PUD ordinance and the City's enforcement thereof render College unable to provide education and/or to worship *at the Property*. But the fact that the church's congregants cannot assemble at that precise location does not equate to a denial of assembly altogether." 360 F.3d at 1033 (emphasis in original). Here, the Village's Code prohibits the Congregation's expressive association through the jurisdiction.

Dated: Nanuet, New York
　　　　January 14, 2008

　　　　　　　　　　　　　　　PAUL SAVAD & ASSOCIATES

　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　Paul Savad (PS 5358)
　　　　　　　　　　　　　　　Susan Cooper (SC 5433)
　　　　　　　　　　　　　　　Laura M. Feigenbaum (LF 2998)
　　　　　　　　　　　　　　　55 Old Turnpike Road, Suite 209
　　　　　　　　　　　　　　　Nanuet, New York 10954
　　　　　　　　　　　　　　　Phone: (845) 624-3820

　　　　　　　　　　　　　　　Roman P. Storzer (admitted *pro hac
　　　　　　　　　　　　　　　　　vice)*
　　　　　　　　　　　　　　　Robert L. Greene (RG 5430)
　　　　　　　　　　　　　　　Storzer & Greene, P.L.L.C.
　　　　　　　　　　　　　　　1025 Connecticut Avenue, N.W.
　　　　　　　　　　　　　　　Suite 1000
　　　　　　　　　　　　　　　Washington, D.C. 20036
　　　　　　　　　　　　　　　Phone: (202) 857-9766

　　　　　　　　　　　　　　　John G. Stepanovich (JS 8876)
　　　　　　　　　　　　　　　Lentz, Stepanovich & Bergethon P.L.C.
　　　　　　　　　　　　　　　448 Viking Avenue
　　　　　　　　　　　　　　　Suite 370
　　　　　　　　　　　　　　　Virginia Beach, Virginia 10019
　　　　　　　　　　　　　　　Phone: (757) 498-7035

　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*