**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., RABBI MORDECHAI BABAD,
RABBI MEILECH MENCZER, RABBI JACOB
HERSHOKOWITZ, and RABBI CHAIM ROSENBERG,

                                                           No. 20-cv-6158-KMK

                  Plaintiffs,

     -against-

VILLAGE OF POMONA, NY, and BOARD OF
TRUSTEES OF THE VILLAGE OF POMONA, NY,

                  Defendants.

-----------------------------------------------------------------X

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

Dated: January 8, 2021

FEERICK NUGENT MACCARTNEY, PLLC
By: Patrick A. Knowles
    Mary E. Brady-Marzolla
96 South Broadway
South Nyack, NY  10960
(845) 353-2000
(845) 353-2789 (fax)
pknowles@fnmlawfirm.com
mmarzolla@fnmlawfirm.com

*Attorneys for the Village Defendants*

**TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ................................................................................... ii

**PRELIMINARY STATEMENT IN REPLY** ....................................................... 1

**POINT I**

    Plaintiffs Did Not Plead A Facial Challenge And Lack Standing To Pursue Same ....... 2

**POINT II**

    Plaintiffs' As-Applied Challenge Is Unripe ................................................................. 5

**POINT III**

    Plaintiffs' Blanket, Village-Wide "Repeal Petition" Is Not A Meaningful
    Application ..................................................................................................................... 5

**POINT IV**

    Plaintiff College, A Creature Of Statute, Admits Noncompliance With
    Statutory Prerequisites To Hold Itself Out, Conduct Business, Or Operate
    As A "College" ............................................................................................................. 8

**CONCLUSION** ...................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

Black Lives Matter v. Town of Clarkstown,
    354 F. Supp. 3d 313 (S.D.N.Y. 2018) ............................................................ 8

Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.,
    462 F.3d 219 (2d Cir. 2006) ............................................................. 3

Bucklew v. Precythe,
    139 S. Ct. 1112 (2019) .................................................................... 3

Burwell v. Hobby Lobby Stores, Inc.,
    573 U.S. 682 (2014) ........................................................................ 9

Cent. UTA of Monsey v. Vill. of Airmont, New York,
    2020 WL 377706 (S.D.N.Y. 2020) ................................................. 4

Chernick v. McGowan,
    238 A.D.2d 586 (2d Dept. 1997) .................................................... 7

Citizens United v. Fed. Election Comm'n,
    558 U.S. 310 (2010) ..................................................................... 1, 2

Fed. Sugar Ref. Co. v. U.S. Sugar Equalization Bd.,
    268 F. 575 (S.D.N.Y. 1920) ........................................................... 9

Field Day, LLC v. Cty. of Suffolk,
    463 F.3d 167 (2d Cir. 2006) ........................................................... 2

Hamilton Watch Co. v. Benrus Watch Co.,
    114 F. Supp. 307 (D. Conn. 1953) ................................................. 9

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) ............................................................. 4

In re Am. Fibre Chair Seat Corp.,
    265 N.Y. 416 (1934) ....................................................................... 9

Islamic Cmty. Ctr. v. City of Yonkers,
    258 F. Supp. 3d 405 (S.D.N.Y. 2017), <u>aff'd</u>, 742 F. App'x 521 (2d Cir. 2018) ................... 1, 2, 4

Jewish Reconstructionist Synagogue of N. Shore, Inc. v. Levitan,
    34 N.Y.2d 827 (1974) ..................................................................... 7

K.D. ex rel. Duncan v. White Plains School Dist.,
    921 F. Supp. 2d 197 (S.D.N.Y. 2013) ..................................................................... 1

Liu v. New York City Campaign Fin. Bd.,
    2015 WL 1514904 (S.D.N.Y. 2015) ....................................................................... 2

Members of City Council of City of Los Angeles v. Taxpayers for Vincent,
    466 U.S. 789 (1984)................................................................................................ 4

New York Bankers Ass'n, Inc. v. City of New York,
    2014 WL 4435427 (S.D.N.Y. 2014) ................................................................. 9, 10

New York Civil Liberties Union v. State of New York,
    3 A.D.3d 811 (3d Dept. 2004), aff'd sub nom., 4 N.Y.3d 175 (2005) ...................... 10

New York State Rifle & Pistol Ass'n, Inc. v. Cuomo,
    804 F.3d 242 (2d Cir. 2015) .................................................................................. 3

Real Holding Corp. v. Lehigh,
    2 N.Y.3d 297 (2004).......................................................................................... 7, 8

Sabri v. United States,
    541 U.S. 600 (2004)............................................................................................... 3

Sterngass v. Bowman,
     563 F.Supp. 456 (S.D.N.Y. 1983), aff'd, 742 F.2d 1440 (2d Cir. 1983),
     cert denied, 469 U.S. 823 (1984) .......................................................................... 10

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona, N.Y.,
    945 F.3d 83 (2d Cir. 2019), cert denied, 20-14, 2020 WL 6829150 (U.S. Nov. 23, 2020)..... 3, 4

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona, N.Y.,,
    915 F. Supp. 2d 574 (S.D.N.Y. 2013), aff'd sub nom., 945 F.3d 83 (2d Cir. 2019) .................. 5

Taxpayers for Vincent,
    466 U.S. 789 (1984).............................................................................................. 4

Thompson v. Cty. of Franklin,
    15 F.3d 245 (2d Cir. 1994) ...................................................................................... 8

Weissman v. Fruchtman,
    700 F. Supp. 746 (S.D.N.Y. 1988) ......................................................................... 4

Williams v. Lew,
    819 F.3d 466 (D.C. Cir. 2016)................................................................................ 4

**Other Authorities**

N.Y. Vill. Law § 7-725-b(5) ................................................................................................. 7

N.Y. Vill. Law § 7-725-b(3) ................................................................................................. 7

N.Y. N-PCL § 404 ........................................................................................................... 8, 10

N.Y. N-PCL § 404(d) ....................................................................................................... 9, 10

N.Y. RCL § 2-b[1] ...................................................................................................... 8, 9, 10

Village Code § 130-28(E) ..................................................................................................... 7

Village Code § 130-28(E)(4)(c)(3) ....................................................................................... 7

Village Code § 130-39 ........................................................................................................... 8

Village Code § 130-8 ............................................................................................................. 6

## PRELIMINARY STATEMENT IN REPLY

Plaintiffs constructed their entire case on hypotheticals.  As such, and in a futile effort to evade well-established ripeness and standing requirements, Plaintiffs' opposition recasts their as-applied challenge as a facial one without alleging or explaining how the Challenged Laws are facially unconstitutional or illegal.  Indeed, Plaintiffs concede that the Challenged Laws are facially valid and neutral, (Compl. at ¶ 254), and cannot argue that the Challenged Laws target their religion because the Second Circuit held that the Challenged Laws are non-discriminatory with respect to intent and impact.  The Challenged Laws simply have no religious implication and apply equally to both sectarian and non-sectarian schools alike.

In any event, Plaintiffs' instinctive re-characterization[1] of their claims as facial is incorrect and not controlling.  See, e.g., Islamic Cmty. Ctr. v. City of Yonkers, 258 F. Supp. 3d 405, 415 (S.D.N.Y. 2017), aff'd, 742 F. App'x 521, 524 n.2 (2d Cir. 2018) (rejecting plaintiffs' attempts to avoid the Williamson County final-decision rule by recharacterizing claim as facial instead of as-applied).   And even assuming, arguendo, Plaintiffs had commenced a facial challenge, it would nevertheless fail because, among other reasons, (i) the requirements for standing do not vanish simply where a litigant classifies their lawsuit as facial; and (ii) the distinction between facial and as-applied goes to the breadth of the remedy employed, not what must be pleaded in a complaint, see, e.g., Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010).  Because Plaintiffs neither plead or describe how the Challenged Laws are unconstitutional or illegal on their face, nor establish their standing, any supposed "facial" challenge fails as a matter of law.

---

[1] Plaintiffs cannot amend their complaint by asserting their new "facial challenge" theory for the first time in opposition to the Village's motion.  See, e.g., K.D. ex rel. Duncan v. White Plains School Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citations omitted).

**I.      Plaintiffs Did Not Plead A Facial Challenge And Lack Standing To Pursue Same.**

Plaintiffs only alleged an unripe, as-applied challenge, and not a facial challenge.[2]

> A "facial challenge" to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. An "as-applied challenge," on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right.

Field Day, LLC v. Cty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006) (citations omitted).

In Islamic Cmty. Ctr., 258 F. Supp. 3d at 415, for example, this Court rejected another plaintiffs' similar attempts to re-characterize their as-applied First Amendment and RLUIPA claims (among others) as facial to avoid dismissal on ripeness grounds.  This Court explained:

> Even a cursory review of the complaint and plaintiffs' arguments reveals that plaintiffs are challenging the application of the Landmark Law to them. Such challenges are plainly as-applied challenges. Plaintiffs' arguments to the contrary are belied by the fact that their complaint does not plead or explain how or why the Landmark Resolution is facially invalid; that is, unconstitutional or illegal on its face.

Likewise, here, Plaintiffs only challenge the Challenged Laws in relation to their particular self-created facts and circumstances – where in lieu of submitting a single land use application for development, they instead seek the wholesale repeal of two Village-wide, admittedly non-discriminatory local laws, enacted before the Village even knew of Plaintiffs. Their challenge is plainly as-applied and clearly unripe.

Moreover, Plaintiffs' re-characterization of their lawsuit as "facial" does not automatically give rise to constitutional standing, ripe claims, and a sufficiently plead complaint. See Citizens United, 558 U.S. at 331 ("The distinction [between facial and as-applied] . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a

---

[2] It is worth noting that "[t]he Supreme Court has instructed courts facing simultaneous 'as-applied' and facial challenges to first resolve the 'as-applied' challenge before addressing the facial challenge in order to avoid 'proceed[ing] to an overbreadth [facial] issue unnecessarily.'"  Liu v. New York City Campaign Fin. Bd., 2015 WL 1514904, at *5 (S.D.N.Y. 2015) (citations omitted).

complaint.").[3]   Accepting Plaintiffs' position that their claims are automatically fit for judicial review because they classify, in *post hoc* fashion nonetheless, their lawsuit as facial would "invite[] pleading games."  Bucklew v. Precythe, 139 S. Ct. 1112, 1127-28 (2019) ("[to hold that] choosing a label changes the meaning of the Constitution would only guarantee a good deal of litigation over labels, with lawyers on each side seeking to classify cases to maximize their tactical advantage.")[4]

In any event, Plaintiffs do not plausibly alleged or explain how the Challenged Laws are facially deficient; they instead concede that they are facially neutral.  (Compl. at ¶¶ 254-255). And despite their Complaint's 51 pages, the word "facial"/"facially" is mentioned four times:

- "[The Second Circuit] held that Plaintiffs did not have "standing" to challenge the Laws (even facially) . . . ."  (Id. at ¶ 6 (emphasis added)).

- "[T]he Second Circuit ruled that Plaintiffs lack standing to facially challenge the provisions of the zoning code . . . ."  (Id. at ¶ 204 (emphasis added)).

- "Local Law No. 5 of 2004 is **facially neutral** with respect to race, color, national origin, religion, sex, familial status, and disability . . . ." (Id. at ¶ 254 (emphasis added)).

- "Despite the **facial neutrality** of Local Law No. 5 of 2004, it inflicts a disparate impact on Orthodox/Hasidic Jews, who are required by their religion to marry young, have large families, and to devote themselves to study of the Torah to the exclusion of other activities that detract therefrom." (Id. at ¶ 255 (emphasis added)).[5]

---

[3] See also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 228 (2d Cir. 2006) ("Facial and as-applied challenges differ in *the extent to which* the invalidity of a statute need be demonstrated (facial, in all applications; as-applied, in a personal application). Invariant, however, is the *substantive rule of law* to be used. In other words, *how* one must demonstrate the statute's invalidity remains the same for both types of challenges, namely, by showing that a specific rule of law, usually a constitutional rule of law, invalidates the statute, whether in a personal application or to all." (citations omitted) (emphasis in original).

[4] Facial challenges are disfavored.  Sabri v. United States, 541 U.S. 600, 608-10 (2004) ("facial challenges are best when infrequent" because "they invite judgments on fact-poor records" and "depart[] from the norms of adjudication in federal courts"); see also New York State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 265 (2d Cir. 2015) ("[A] facial challenge to a legislative enactment is 'the most difficult challenge to mount successfully.'").

[5] For each "cause of action", Plaintiffs repeats the following *pro forma* sentence, as though merely using the word "face" automatically transforms their claims into facial challenges and entitles them to judicial review: "Defendants' laws (on their face and as applied to Plaintiff) and actions deprive and continue to deprive [Plaintiffs] . . . ."  (Compl. at ¶¶ 261, 265, 269, 271, 275).  With respect to their § 3604 Fair Housing Act claim only, Plaintiffs implausibly and conclusory state that Local Law No. 5 of 2004 inflicts a disparate impact on Orthodox/Hasidic Jews.  (Id. at ¶ 255).  Yet, the Second Circuit held that Local Law No. 5 of 2004 was not adopted with discriminatory intent and did not have a discriminatory or disparate impact.  Tartikov I, 945 F.3d 83, 97-98, 118-19 (2d Cir. 2019), cert denied, 20-14, 2020 WL 6829150 (U.S. Nov. 23, 2020).

No credit is afforded to Plaintiffs' conclusory label.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions'").[6]  This Court should reject Plaintiffs' attempts to salvage their case by mischaracterizing it as a facial challenge and inaccurately merging the concepts of ripeness and standing.  Plaintiffs cannot invoke the Court's jurisdiction in this fashion, as facial challenges do "not create any exception from the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court."  Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796-98 (1984).  Similarly put, alleging a facial challenge does not excuse pleading and Article III requirements.  Tartikov I, 945 F.3d at 110); Weissman v. Fruchtman, 700 F. Supp. 746, 753 (S.D.N.Y. 1988) (dismissing plaintiffs' facial challenges to an ordinance as unconstitutional because it was not specifically applied to them); Williams v. Lew, 819 F.3d 466, 476 (D.C. Cir. 2016) ("we know of no case stating that a facial challenge to the constitutionality of a statute itself suffices to establish standing, nor do we adopt such a holding. Unless there is an actual Article III 'Case[ ]' or 'Controvers[y]' before us, we lack jurisdiction.").

Finally, Plaintiffs' reliance on Cent. UTA of Monsey v. Vill. of Airmont, New York, 2020 WL 377706 (S.D.N.Y. 2020) is misplaced.  Plaintiffs omit that this Court dismissed plaintiffs' as-applied challenges because no formal application had been made, and while the Court held that the plaintiffs' facial challenge to the moratorium was ripe for review, the Court determined that the plaintiffs lacked standing to pursue their free exercise, free association, due process, and RLUIPA substantial burden or exclusions and limits claims, to pursue that facial challenge.  Id. at **8-12 (citing Tartikov I, 2019 WL 6975126, at *19).

---

[6] Similarly, in Islamic Cmty. Ctr., 258 F. Supp. 3d at 415 n.5, this Court held "even if the Court were to accept plaintiffs' argument that they are challenging the Landmark Resolution as facially invalid, their claims must still be dismissed for failure to state a claim because the complaint completely fails to allege how the Landmark Resolution is, on its face, illegal."

## II.     Plaintiffs' As-Applied Challenge Is Unripe.

Plaintiffs' as-applied challenge is unripe for the same reasons this Court previously held –

Plaintiffs have not submitted a single formal application for development for its parcel.  See, e.g.,

Tartikov I, 915 F. Supp. 2d 574, 596-607 (S.D.N.Y. 2013).   In the prior Tartikov action, this

Court rejected the same argument that Plaintiffs press here.[7]   There, like here, Plaintiffs

maintained that they were excused from submitting any formal application because such effort

would be futile.  But in Tartikov I, this Court rejected their argument, holding and explaining:

- "Instead of identifying a final decision by Defendants to reject a particular land development plan, Plaintiffs have cited only the zoning ordinances that they believe would bar them from building a rabbinical college—which ordinances they seek to invalidate, based on how they *might be* applied to the would-be college. Thus, it is Plaintiffs who are attempting 'to address important and potentially complex constitutional and regulatory issues in a vacuum.'" (Id. at 600 (citation omitted)).

- "Under such circumstances, the Court cannot 'know precisely how [the ordinances] will be applied **to [this] particular parcel**.'" (Id. at 603-04). (emphasis added).

- "Plaintiffs contend that, notwithstanding their failure to submit a single application, rejection of their application is certain, because no Village official or entity has discretion to approve Plaintiffs' proposed use of the Subject Property as a rabbinical college under the Village's Zoning Code. . . . But, again, for Plaintiffs to invoke the futility exception on the claim that they could not seek a special use permit or a variance of any kind, because they are not entitled to either under the Village's Zoning Code, they nonetheless had to have submitted at least one formal application for development of the Subject Property before bringing their as-applied claims." (Id. at 604).

Absent a meaningful application for development of its parcel, Plaintiffs' claims are unripe.

## III.    Plaintiffs' Blanket, Village-Wide "Repeal Petition" Is Not A Meaningful Application.

Plaintiffs College's blanket "repeal petition" cannot be deemed a meaningful application

to satisfy ripeness.   To be sure, the petition did not merely seek to repeal the self-labeled

"offending provisions" (which the Second Circuit determined are non-discriminatory) of the

Challenged Laws; it instead sought to repeal the Challenged Laws in their entirety, leaving the

---

[7] Plaintiffs say that their proposed land use and injury to same is not conjectural and suggest that merely the "color of the buildings or the layout of the driveways" is unknown.  (Pls Opp. Mem., p. 6).  Yet, to date, neither the Village nor this Court has any meaningful knowledge of Plaintiffs' proposed use – what buildings, the size of the buildings, what the buildings would be used for, whether there would be classrooms, how many students, etc.

Village without any regulation over educational facilities.  Granting Plaintiff College's petition could not have redressed Plaintiffs' alleged injury.  Indeed, their own theory is self-contradictory.

On one hand, Plaintiffs argue that "Plaintiffs are presently prohibited from using their property as a rabbinical college."  (Pls. Opp. Mem., p. 6 n.4).[8]  They say that "Tartikov has certainly experienced an immediate injury resulting from the Village's refusal to consider its petition.  Had the Petition been considered, and had the offending provisions been repealed, Tartikov's land use (a non-accredited rabbinical college with student family housing) would no longer be prohibited."  (Pls. Opp. Mem., p. 5).  But on the other hand, Plaintiffs argue that if the Village granted their "repeal petition," "[t]he Challenged Laws would no longer be on the books of the Village."  (Pls. Opp. Mem., p. 4) (emphasis added).  They also recognize, however, that "[t]he entire jurisdiction of Pomona is designated as an 'R-40' residential zoning district. . . . A use that is not listed as a permitted or special use permit in the R-40 zone is prohibited in that district."  (Pls. Mov. Mem., p. 3; Pls. Opp. Mem, p. 8 n.5 ("No building permit can be issued for a use that is not permitted.  Village Code § 130-8.")).  Thus, had the "repeal petition" been granted, "Tartikov's [hypothetical] land use" would not be listed as a permitted or special use, and it would be prohibited.  Accordingly, Plaintiffs argument is that the Village's failure to grant a petition that would make the Village's land use regulations unconstitutional confers Plaintiffs with standing and ripe claims in this Court.  This makes little sense.

Plaintiffs surely recognized their contradiction, as they concede the following:

> The fact that the Village's Zoning Code would revert back to its pre-2001 condition, which prohibited colleges outright in the Village, does not affect the analysis, as such prohibition would be unenforceable, as Defendants admit[.] . . . In other words, if the Local Laws would have been repealed, Plaintiffs would be entitled to use the Property as a rabbinical college, **at least with a special exception**, under New York law.  (Pls. Opp. Mem., p. 5 n.3) (emphasis added).

---

[8] "Pls. Opp. Mem." refers to Plaintiffs' omnibus reply/opposition "Memorandum of Law" at ECF No. 51. And "Pls. Mov. Mem." refers to Plaintiffs' "Memorandum of Law" in support of their motion at ECF No. 33.

While this irreconcilable conflict eviscerates Plaintiffs' theory, they nevertheless state that with the Challenged Laws repealed, they would be able to use their property with "a special exception[] under New York law."  (Id.).  This begs the question – why is a "special exception" only available after the Village's Zoning Code completely prohibits colleges?  And if "a special exception" is required but has never been applied for, how can Plaintiffs' challenge be ripe?

Also fatal to Plaintiffs' case is that while they accept that N.Y. Vill. Law § 7-725-b(5) empowers the Village Board to allow for waivers or modifications of the requirements for special use permits, Plaintiffs mistakenly say that the Village Board has not adopted a "waiver provision" for special use permits and therefore no such waiver is available.  (Pls. Opp. Mem., n.6).  But the Village Code does contain a "waiver provision" at Village Code § 130-28(E)(4)(c)(3) ("Special use permits"), which provides:

> The Zoning Board of Appeals or Board of Trustees may, however, when reasonable and proper, waive any preestablished requirements of approval of a special use permit where such requirements are not found to be requisite in the interest of the public health, safety or general welfare or inappropriate to the particular special use permit use.[9]

To be sure, under New York law, where a legislative body such as a village board reserves to itself the power to excuse compliance with special use "requirements", it is free to consider matters related to the public welfare in determining whether to grant or deny a special permit or exception.  Chernick v. McGowan, 238 A.D.2d 586, 587 (2d Dept. 1997).  "The waiver authority in subdivision (5) [of N.Y. Vill. Law § 7-725-b] is broader than a ZBA's authority in subdivision

---

[9] Village Code § 130-28(E) ("Special use permits") was added to the Village Code on February 28, 1994 by Local Law No. 1-1994.  It follows the 1993 revisions to N.Y. Vill. Law § 7-725-b, which added § 7-725-b(5) and § 7-725-b(3).  Before 1993, a board entertaining a special permit application had no authority to waive or modify any of the explicit conditions mandated by the municipality's local code.  See, e.g., Jewish Reconstructionist Synagogue of N. Shore, Inc. v. Levitan, 34 N.Y.2d 827 (1974).  But the 1993 revisions to N.Y. Vill. Law § 7-725-b changed this law by adding [1] subdivision (5), which permits a board of trustees to authorize a board, including itself, reviewing special permit applications to "waive" any of the requirements for "approval, approval with modifications or disapproval" of a special permit; and [2] subdivision (3), which provides that "where a special use permit contains one or more features which do not comply with the zoning regulations, application may be made to the zoning board of appeals for an area variance . . . ."  See, e.g., Real Holding Corp., 2 N.Y.3d at 301 (reviewing identical N.Y. Town Law provision).  No authorization from the village board is required under subdivision (3).  Id.

(3), which is restricted to granting area variances." Real Holding Corp. v. Lehigh, 2 N.Y.3d 297, 302 (2004). But here, Plaintiffs never submitted any special use permit or sought any waiver of its special use requirements. In fact, Plaintiffs never submitted any land use application at all.

Moreover, Plaintiffs say: "Of course, rather than refuse to consider the Petition in its entirety, the Village and its Board and professionals could have theoretically considered adopting a waiver provision, but failed to do so. Village Code § 130-39." (Pls. Opp. Mem., n.6). As such, even assuming *arguendo* that Plaintiffs were correct that the Village Code does not contain a "waiver provision", Plaintiffs recognize that with such an available mechanism, the Village could consider, and perhaps would have, had Plaintiffs submitted either a meaningful land use application and/or petition to add such a provision to the Village Code (and not just one that sought the complete Village-wide eradication of the two non-discriminatory local laws).

Plaintiffs' own argument thus confirms why standing and ripeness are lacking. Plaintiffs' injury could not have been redressed had the Village granted the Plaintiff College's petition and globally repealed the Challenged Laws.

## IV. Plaintiff College, A Creature Of Statute, Admits Noncompliance With Statutory Prerequisites To Hold Itself Out, Conduct Business, Or Operate As A "College".

Plaintiffs' opposition does not dispute its noncompliance with New York State Education Law ("NYEL"), Religious Corporation Law ("RCL"), and Not-For-Profit Corporation Law ("N-PCL").[10] Instead, Plaintiff College attempts to mitigate its admitted violations by arguing it has not been prosecuted by the New York Attorney General despite 16 years of undisputed noncompliance.[11] Yet, Plaintiff College is a creature of statute whose powers are limited to that

---

[10] Pls. Opp. Mem., pp. 16-19, refers to NYEL prerequisites but fails to address the Village's arguments pursuant to RCL § 2-b[1] and N-PCL § 404 (see ECF No. 45 at p. 23), and as such have abandoned opposition to same. Black Lives Matter v. Town of Clarkstown, 354 F. Supp. 3d 313, 318 (S.D.N.Y. 2018) ("plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim") (citations omitted).

[11] Plaintiffs' reference to passage of time is irrelevant; standing is jurisdictional and cannot be waived. See Thompson v. Cty. of Franklin, 15 F.3d 245, 248 (2d Cir. 1994). More, "standing cannot be established through

provided under the State law authorizing its formation.  See Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 719 (2014) (discussing courts will "turn to" the "underlying state" corporate law when "resolving disputes" regarding whether corporation can seek relief requested)[12]; see also In re Am. Fibre Chair Seat Corp., 265 N.Y. 416, 420 (1934) ("A corporation is a purely artificial body created by law. It can act only in accordance with the law of its creation").

Here, Plaintiffs affirmatively put Plaintiff College's corporate standing at issue by (i) alleging its corporate status in their Complaint at ¶ 11, and (ii) submitting its Certificate of Incorporation, pursuant to the RCL under which it elected to form.[13]  The enabling laws clearly state what Plaintiff College had to do in order to hold itself out, conduct business, and operate as a "college", but it unilaterally chose not to do comply with same to date.[14]  Plaintiff College cannot simultaneously use the RCL to attempt to establish corporate standing while having admittedly failed to comply with the statutory prerequisites required for the ultimate relief sought herein, to wit: to hold itself out as, conduct business, and operate as a "college" in the Village or elsewhere in the State.   (Compare Compl. at ¶ 1 and WHEREFORE CLAUSE with RCL§ 2-b[1], incorporating provisions of N-PCL, including N-PCL § 404(d)).  There is simply "no power to change the obligations, rights, or liabilities of a corporation which was the creature of the statute; i.e., the creature of the sovereign state of [New York]".  Fed. Sugar Ref. Co. v. U.S. Sugar Equalization Bd., 268 F. 575, 584-85 (S.D.N.Y. 1920) (emphasis added).   Holding otherwise will effectively nullify N-PCL § 404(d) as incorporated via the RCL, and invade the

hindsight alone; instead, a plaintiff must have standing at the time the complaint is filed".  New York Bankers Ass'n, Inc. v. City of New York, 2014 WL 4435427, at *10 (S.D.N.Y. 2014).

[12] In Burwell, 134 S. Ct. at 2770-72, 2775, the Supreme Court examined the state law of the corporate plaintiffs to determine standing to pursue the relief requested and found the corporations were acting within the express powers of their enabling statutes in seeking the relief requested via the subject lawsuit.  Such is not the case for Plaintiff College which does not dispute noncompliance with RCL and N-PCL's statutory prerequisites.

[13] The Court may take judicial notice of Plaintiff College's certificate of incorporation filed at ECF No. 38-1.

[14] Corporations are assumed to know the state law under which they are formed and are bound by it.  See e.g., Hamilton Watch Co. v. Benrus Watch Co., 114 F. Supp. 307, 316 (D. Conn. 1953) (a corporation is "chargeable with knowledge of the [State's] Corporation law").

exclusive jurisdiction of the New York State Education Department.[15]

Contrary to Plaintiffs' opposition at pages 16-18, a review of the documents and decisions that Plaintiffs cite show that RCL § 2-b[1] and N-PCL § 404 were neither cited or otherwise litigated there.  Further, this is a *new* action alleged on *new* facts consisting of the Plaintiff College's 2020 perfunctory "repeal petition".  Plaintiff College's standing to conduct business as a self-designated RCL corporation via the submission of the purported "petition for a text amendment" and/or to operate a college pursuant to such purported "petition" absent its undisputed noncompliance with the cited statutory prerequisites was never previously litigated.

Finally, as in <u>New York Bankers Ass'n, Inc.</u>, 2014 WL 4435427, at *11, standing is absent here because "[e]ven taking every reasonable inference in Plaintiff's favor, the Complaint as pleaded reveals that the harms Plaintiff fears would only occur if" certain intervening steps occurred, to wit: Plaintiff College in fact obtained "the written authorization of the Regents of the university of the state of New York" pursuant to RCL § 2-b[1] and N-PCL § 404(d).  As the Individual Plaintiffs' standing is contingent upon that of the Plaintiff College, and as the Plaintiff College lacks standing, so do the Individual Plaintiffs.  <u>Sterngass v. Bowman</u>, 563 F.Supp. 456, 458 (S.D.N.Y. 1983), <u>aff'd</u>, 742 F.2d 1440 (2d Cir. 1983), <u>cert denied</u>, 469 U.S. 823 (1984). Indeed, the purported "petition" was only in the name of the Plaintiff College, which never had the prerequisite authority under N.Y. State Law to conduct business as a "college" by submitting the "petition" or to operate a "college" in the first instance.

## CONCLUSION

The Village respectfully requests that the Court grants Defendants' motion to dismiss the Complaint in its entirety, together with such other relief as this Court may deem just and proper.

---

[15] Pls. Opp. Mem. also does not dispute the exclusive jurisdiction of the New York State Education Department over Plaintiff College's registration and pre-authorization requirements and can be deemed to have abandoned same. <u>See, e.g.</u>, <u>New York Civil Liberties Union v. State of New York</u>, 3 A.D.3d 811, 814 (3d Dept. 2004), <u>aff'd sub nom.</u>, 4 N.Y.3d 175 (2005); <u>see also</u>, n.10, <u>supra</u>.

Dated: January 8, 2021

Respectfully submitted,

Patrick A. Knowles
Mary E. Brady-Marzolla
FEERICK NUGENT MACCARTNEY, PLLC
96 South Broadway
South Nyack, NY  10960
(845) 353-2000
(845) 353-2789 (fax)
pknowles@fnmlawfirm.com
mmarzolla@fnmlawfirm.com

*Attorneys for the Village Defendants*

To: All Counsel of Record (by ECF)