UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGATION RABBINICAL COLLEGE OF
TARTIKOV, INC., *et al.*,

                                        Plaintiffs,

        v.

VILLAGE OF POMONA, *et al*.,

                                        Defendants.

No. 20-CV-6158 (KMK)

OPINION & ORDER

Appearances:

Joseph A. Churgin, Esq.
Donna C. Sobel, Esq.
Savad Churgin, Attorneys at Law
Nanuet, NY
*Counsel for Plaintiffs*

Roman P. Storzer, Esq.
Storzer & Greene, P.L.L.C.
Washington, DC
*Counsel for Plaintiffs*

John G. Stepanovich, Esq.
Stepanovich Law P.L.C.
Virginia Beach, VA
*Counsel for Plaintiffs*

Brian D. Nugent, Esq.
Feerick Nugent MacCartney PLLC
Nyack, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Congregation Rabbinical College of Tartikov, Inc. ("Tartikov") is the owner of

an approximately 100-acre parcel of land (the "Subject Property") located within the Village of

Pomona, New York (the "Village"), upon which it seeks to build a rabbinical college (the "Rabbinical College") that, in addition to providing all of the facilities necessary to train rabbinical judges, will include housing for its students and their families. Rabbi Mordechai Babad, Rabbi Jacob Hershkowitz, Rabbi Meilech Menczer, and Rabbi Chaim Rosenberg (together with Tartikov, "Plaintiffs"), future students and faculty who seek to study and teach at the Rabbinical College, challenge certain zoning ordinances enacted by the Village, alleging that they are unlawful under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the New York State Constitution. Plaintiffs seek a preliminary injunction enjoining the Village and the Board of Trustees of the Village of Pomona (the "Board," together with the Village, "Defendants") from enforcing specific zoning code provisions adopted through the passage of two Local Laws that the Village has refused to repeal that prohibit the construction of non-accredited educational institutions and housing for students with families on the Subject Property. Specifically, Plaintiffs challenge Local Law No. 1 of 2001 and Local Law No. 5 of 2004 (the "Challenged Laws") with respect to "educational institutions" and "dormitories" of such institutions.[1] Before the Court is Defendants' Motion to Dismiss (the "Motion") and Plaintiffs' Motion for a Preliminary Injunction (the "PI Motion"). For the reasons that follow, the Motion is granted and the PI Motion is denied.

---

[1] Local Law No. 1 of 2001 and Local Law No. 5 of 2004 are codified at Village of Pomona, New York Code ("Village Code") §§ 130-4, 130-10. Full versions of the Challenged Laws can be found online. *See* Village of Pomona, NY, *Chapter 130: Zoning*, http://www.ecode360.com/12718574 (last visited Sept. 13, 2021).

## I.  Background

### A. Factual Background

The following facts are taken from Plaintiff's Complaint, (Compl. (Dkt. No. 1)), and the accompanying documents attached to it and are assumed true for purposes of deciding the Motions. Tartikov is a New York religious corporation formed to establish the Rabbinical College, which includes a housing component for students and their families, in Rockland County, New York.  (Declaration of Chaim Babad in Supp. of Pls.' PI Mot. ("C. Babad Decl.") ¶¶ 8–10 (Dkt. No. 38); (Declaration of Michael Tauber in Supp. of Pls.' PI Mot. ("Tauber Decl.") ¶¶ 10–11 (Dkt. No. 40).)  Plaintiffs believe that Orthodox and Hasidic Jews are prevented from resolving disputes that arise within their community through secular courts. (Compl. ¶ 21.)  Instead, for Plaintiffs these disputes must be resolved by specially trained Orthodox Jewish rabbinical judges, called "*dayanim*" who apply Jewish law.  (*Id.*)  Based on these religious beliefs, Tartikov plans to develop and operate a Rabbinical College specifically to train Orthodox Jewish rabbis to become qualified *dayanim*.  (*Id.* ¶ 25.)

Rabbi Hershkowitz, Rabbi Menczer, and Rabbi Rosenberg (together "Student Plaintiffs") are young Orthodox/Hasidic men who are religiously commanded to marry young and raise large families.  (*Id.* ¶ 57.)  Student Plaintiffs are motivated by their religious beliefs to be educated as *dayanim*.  (Declaration of  Jacob Hershkowitz in Supp. of Pls.' PI Mot. ("Hershkowitz Decl.") ¶ 48 (Dkt. No. 36); (Declaration of Meleich Menczer in Supp. of Pls.' PI Mot. ("Menczer Decl.") ¶ 19 (Dkt. No. 37); (Declaration of Chaim Rosenberg in Supp. of Pls.' PI Mot. ("Rosenberg Decl.") ¶¶ 16–18 (Dkt. No. 35).)  Rabbi Mordechai Babad is motivated by his religious belief to serve as the dean and to teach at the Rabbinical College.  (Declaration of Mordechai or Mordcho Babad in Supp. of Pls.' PI Mot. ("M. Babad Decl.") ¶ 39 (Dkt. No. 39).)  Plaintiffs believe that in

order to study to become *dayanim*, they must exile themselves to a Torah community.  (Compl. ¶ 66.)  Tartikov seeks to create a religious campus where students will be completely dedicated to their religious obligations of mastering the Code of Jewish law in order to become *dayanim* while at the same time meeting their religious obligations to God and their families.  (C. Babad Decl. ¶¶ 10, 21, 36; Tauber Decl. ¶¶ 15, 17, 19.)  In order for Tartikov to achieve this vision, it purchased the Subject Property in the Village in August 2004 to build the Rabbinical College. (Compl. ¶¶ 1–2.)

Pomona is designated as an "R-40" residential zoning district.  Village Code § 130-5.  A use that is not listed as a permitted or special use in the R-40 zone is prohibited in the Village. *Id.* § 130-9.  Violations of the Village Code are subject to fines up to $5,000 per day and/or imprisonment up to 15 days.  *Id.* § 130-24.  In order for Tartikov to use the Subject Property as a Rabbinical College, building permits and a certificate of occupancy are required, which Tartikov is unable to obtain if its use is not permitted.  *Id.* § 130-22(C),(E).  "Special permit" uses are allowed according to the Village Code if they "are deemed to be permitted uses in their respective districts, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of this chapter."  *Id.* § 130-28(e)(1).  "Educational institutions," as regulated by the Village and as amended by the Challenged Laws are allowed as special permit use in the R-40 district.  *Id.* § 130-10.  Before 2001, the Village's zoning code permitted "[s]chools of general instruction," which were limited to "[a]n educational institution giving regular instruction for grades between kindergarten and 12th grade," among other conditions.  (Compl. ¶ 105.)  Colleges and universities were thus prohibited under the Village Code.  (*Id.* ¶ 106.)  Later, the Village amended its zoning laws related to schools and educational institutions in 2001 and again in 2004.

In 2001, the Village adopted Local Law No. 1 of 2001 (the "2001 Law"), which defined "educational institution," for the first time, as "[a]ny school or other organization or institution conducting a regularly scheduled comprehensive curriculum of academic and/or alternative vocational instruction similar to that furnished by kindergartens, primary[,] or secondary schools and operating under the Education Law[s] of New York State, and duly licensed by the State of New York," and subjected such institutions to certain restrictions under the special permit approval process, including minimum net lot area, maximum development intensity, frontage, access, set back, parking, and noise guidelines.  ("Local Law No. 1 of 2001", as codified at Village Code §§ 130-4, 130-10.)  The law imposed a minimum net lot area of 10 acres, "plus an additional 0.05 acres for each pupil enrolled."  (*Id.* § 4(F)(1)(a).)

Later in 2004, the Village adopted Local Law No. 5 of 2004 (the "2004 Law") which re-defined "educational institution" as "[a]ny private or religious elementary, junior high or high school, college, graduate[,] or post-graduate school conducting a full-time curriculum of instruction . . . accredited by the New York State Education Department or similar recognized accrediting agency," and amended the minimum lot area, frontage, access, setback, and screening guidelines.  ("Local Law No. 5 of 2004") §§ 1, 4–5, as codified at Village Code §§ 130-4, 130-10.)  The minimum lot area was changed to 10 acres—omitting the "net lot" requirement—and the .05 acre-per-student requirement was eliminated.  (*See id.* § 4.)  The law also included a provision permitting the development of dormitories:

> A building that is operated by a school located on the same lot and which contains private or semi-private rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students.  Communal dining, cooking, laundry, lounge and recreation facilities may be provided.  Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities except that one dwelling unit with complete housekeeping facilities may be provided for use of a Superintendent or supervisory staff for every fifty dormitory rooms.  Not more than one communal dining room shall be provided in any building used for

dormitory purposes.  Single family, two-family and/or multi-family dwelling units other than as described above shall not be considered to be dormitories or part of dormitories.

(*Id.* § 2.)  These restrictions prevent Tartikov from building its Rabbinical College.  (Compl. ¶ 1.)[2]

B. Procedural History

Before the Court recounts the procedural history in the instant Action, the Court will provide background for a related case that sets the stage for this dispute that has been ongoing for well over a decade.  In 2007, Plaintiffs brought an action to challenge Village laws which prevented the construction of the Rabbinical College and accompanying dormitories.  (Dkt. Nos. 28, 28-2, No. 07-CV-6304.)  In January 2013, the Court granted in part and denied in part Defendants' Motion To Dismiss the Second Amended Complaint.  (Op. & Order (Dkt. No. 53, No. 07-CV-6304).)  The Court dismissed claims by Plaintiff Kolel Belz for lack of standing, dismissed Plaintiffs' as-applied challenges as unripe, and otherwise denied Defendants' motion.  (*Id.*)  In 2015, after discovery, the Court granted in part and denied in part the Parties' Motions For Summary Judgment.  (Op. & Order (Dkt. No. 207, No. 07-CV-6304).)  The Court granted summary judgment to Defendants as to Plaintiffs' Free Speech and Article I, § 8 New York Constitution claims, granted summary judgment to Plaintiffs as to Defendants' affirmative defenses, and otherwise denied the Motions.  (*Id.*)  After a two-week bench trial in May and June 2017, the Court in December 2017 found that Plaintiffs established violations of the First and Fourteenth Amendments of the United States Constitution, the RLUIPA, the FHA, and §§ 3, 9,

_____

[2] Plaintiffs' Complaint also discusses Local Law No. 1 of 2007 and Local Law No. 5 of 2007, but in light of the Second Circuit's ruling in *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona* ("*Tartikov I*"), 945 F.3d 83 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 885 (2020), that the Village is enjoined from enforcing the entire law, the Court focuses its analysis only on the Challenged Laws at issue here.  (Compl. ¶¶ 171–84.)

and 11 of the New York State Constitution.  (Op. & Order (Dkt. No. 333, No. 07-CV-6304).)

The Court held that discriminatory purpose tainted each of four challenged Village ordinances.

(*Id*. at 28–39.)  On March 20, 2018, the Court entered judgment enjoining the Challenged Laws

and providing additional injunctive relief.  (J. & Mandatory Inj. ("2018 Judgment") (Dkt. No.

356, No. 07-CV-6304).)  Defendants appealed the 2018 Judgment to the Second Circuit, (Not. of

Appeal (Dkt. No. 358, No. 07-CV-6304)), and Plaintiffs cross-appealed the Court's prior orders

dismissing some of their claims, (Not. of Cross-Appeal (Dkt. No. 359, No. 07-CV-6304)).  The

Second Circuit in December 2019 affirmed the Court's judgment with respect to the 2007 Laws,

but reversed it with respect to the 2001 Law and the 2004 Law, and vacated all additional

injunctive relief.  *Tartikov I*, 945 F.3d 83, 126 (2d Cir. 2019).  The Second Circuit affirmed the

portions of the Court's judgment challenged on cross-appeal.  *Id*.  On February 6, 2020, the

Second Circuit denied Plaintiffs' petition for rehearing.  (Dkt. No. 224, No. 07-CV-6304, 18-

1062 Dkt. (2d Cir.).)  A week later, on February 13, 2020, the Second Circuit issued its mandate.

(Dkt. No. 387, No. 07-CV-6304.)  On March 19, 2020, the Court entered judgment consistent

with the Second Circuit's mandate.  (J. (Dkt. No. 390, No. 07-CV-6304).)  Before the appeal,

Plaintiffs moved for attorneys' fees but the Court terminated the 2018 pending Fees Motion and

ordered the Plaintiffs to submit a revised motion for fees, to consolidate their requests for fees

stemming from trial court and appeals court work into a singular motion.  (Dkt. Nos. 360, 393,

No. 07-CV-6304.)  In March 2020, the Court granted Plaintiffs $2,390,927.20 in attorneys' fees

and $90,734.42 in costs, for a total award of $2,481,661.62.  (Dkt. No. 427, No. 07-CV-6304.)

Plaintiffs petitioned the Supreme Court for certiorari, which was ultimately denied.

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 141 S. Ct. 885 (2020).

Plaintiffs filed the Complaint in the instant Action on August 6, 2020.  (Dkt. No. 1.)  On September 1, 2020, Plaintiffs filed a letter requesting that the Court waive the pre-motion conference, or in the alternative schedule a pre-motion conference to grant Plaintiffs permission to move for a preliminary injunction.  (Dkt. No. 18.)  The Court held a pre-motion conference on September 29, 2020 and set a briefing schedule for Plaintiffs' Motion for a Preliminary Injunction.  (Dkt. No. 27.)  On October 20, 2020, Plaintiffs filed their Motion for a Preliminary Injunction and their supporting papers.  (Pls.' Not. of Mot. (Dkt. No. 32); Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Pls.' Mem.") (Dkt. No. 33); Pls.' Decl. of Joseph A. Churgin in Supp. of Mot. for Prelim. Inj. ("Churgin Decl.") (Dkt. No. 34).)  Plaintiffs also submitted several declarations in support of the PI Motion.  (Dkt. Nos. 35–42.)  On November 20, 2020, Defendants filed a Motion To Dismiss and their supporting papers.  (Defs.' Not. of Mot. (Dkt. No. 43); Defs.' Mem. of Law in Supp. of Mot. To Dismiss. ("Defs.' Mem.") (Dkt. No. 45); Defs.' Decl. of Mary E. Marzolla in Supp. of Mot. To Dismiss ("Marzolla Decl.") (Dkt. No. 44).)  On November 25, 2020, Plaintiffs filed a letter to amend the briefing schedule in light of Defendants' Motion To Dismiss, which the Court granted.  (Dkt. Nos. 46–47.)  On December 17, 2020, Plaintiffs filed their Reply in Support of their Motion for a Preliminary Injunction and Opposition to Defendants' Motion To Dismiss.  (Pls.' Reply Mem. of Law in Further Supp. of PI Mot. and in Opp'n to Defs.' Mot. To Dismiss ("Pls.' Reply") (Dkt. Nos. 49, 51).)[3]  On January 8, 2021, Defendants filed their Reply in Support of their Motion To Dismiss.  (Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss ("Defs.' Reply") (Dkt. No. 53).)  On January 13, 2021, Plaintiffs requested permission from the Court to file a Sur-Reply, which Defendants

---

[3] The Court notes that Plaintiffs filed the same document twice and accordingly the Court refers to both as "Pls.' Reply."

opposed. (Dkt. Nos. 54–55.) The Court deemed Plaintiffs' January 13, 2021 letter the Sur-

Reply. (Dkt. No. 56.) On June 15, 2021, Plaintiffs filed a letter requesting a pre-motion

conference to request leave from the Court to amend the Complaint, which Defendants opposed.

(Dkt. Nos. 57–58.) The Court held a pre-motion conference on July 8, 2021 and did not grant

Plaintiffs' request for leave to amend the Complaint. The Court informed the Parties' that it

would resolve the pending Motions in due course. (*See* Dkt. (minute entry for July 8, 2021).)

Since filing their Motions and supporting papers the Parties have submitted supplemental

authority to the Court for its consideration. (Dkt. Nos. 60, 62.)

## II.  Discussion

### A. Standard of Review

#### 1. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### 2. Standing

Article III of the Constitution restricts federal judicial power to the resolution of cases and controversies.  U.S. CONST. art. III, § 2.  "That case-or-controversy requirement is satisfied

only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).  The Supreme Court has explained that constitutional standing requires a plaintiff to establish at minimum three elements—that the plaintiff suffered an "injury in fact," which means an "invasion of a legally protected interest," the existence of "a causal connection between the injury and the conduct complained of," and "a likelihood that the 'injury will be redressed by a favorable decision.'"  *Fulton v. Goord*, 591 F.3d 37, 41 (2d Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A "legally protected interest" is one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (quotation marks omitted).  As a threshold matter, standing is a jurisdictional predicate that cannot be waived.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *accord Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 188 (2d Cir. 2018).

### 3. Ripeness

"Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority."  *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete

way by the challenging parties." (citation and quotation marks omitted)); *Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 455 (S.D.N.Y. 2012) ("Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies of sufficient immediacy and reality and not hypothetical or abstract disputes." (citation and quotation marks omitted)), *vacated in part on other grounds*, 755 F.3d 87 (2d Cir. 2014).

"Building on the foregoing, the Supreme Court has developed specific ripeness requirements applicable to land use disputes." *Murphy*, 402 F.3d at 347.  In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court required the land developer to obtain a final, definitive position as to the application of the relevant zoning laws to the property from the municipal entity responsible for those laws.  *Id.* at 186.  Under *Williamson County*, the plaintiff cannot seek federal court review of a zoning ordinance or provision until it has submitted at least one meaningful application for a variance. *Id.* at 190; *see also Murphy*, 402 F.3d at 348 (same).[4]

Although this ripeness paradigm was originally developed by the Supreme Court in the context of a regulatory takings challenge, *see Williamson County*, 473 U.S. at 186, the Second Circuit has extended the finality requirement to land use disputes involving more than just takings claims, s*ee Murphy*, 402 F.3d at 349–50.  Indeed, the Second Circuit has applied this test to as-applied challenges to land use laws under RLUIPA.  *See id.* at 348–51 (applying final

---

[4] *Williamson County* separately required that a land developer "seek compensation through the procedures the State has provided for doing so."  473 U.S. at 194.  The Supreme Court overturned this state law remedies requirement in *Knick v. Township of Scott*, 139 S.Ct. 2162 (2019).  However, *Knick* did not disturb *Williamson County*'s final decision requirement. *See id.* at 2169 ("*Knick* does not question the validity of this finality requirement, which is not at issue here."); *see also Sagaponack Realty, LLC v. Village of Sagaponack*, 778 F. App'x 63, 64 (2d Cir. 2019) (summary order) ("*Knick* leaves undisturbed the [requirement] that a state regulatory agency must render a final decision on a matter before a taking claim can proceed.").

decision test for ripeness to as-applied RLUIPA claims); *Roman Catholic Diocese of Rockville Ctr. v. Inc. Village of Old Westbury*, No. 09-CV-5195, 2012 WL 1392365, at *6 (E.D.N.Y. Apr. 23, 2012) (noting that in the Second Circuit the final decision rule applies to RLUIPA challenges to land use laws).

"A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations." *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008); *see also Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 155 (W.D.N.Y. 2006) (holding that the final decision rule generally requires "that the plaintiff . . . have submitted at least one application for, and been denied, permission for the proposed structure or use of the subject property"); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) ("In order to have a final decision, a 'development plan must be submitted, considered, and rejected by the governmental entity.'" (quoting *Unity Ventures v. County of Lake*, 841 F.2d 770, 774 (7th Cir. 1988))); *accord Church of St. Paul & St. Andrew v. Barwick*, 496 N.E.2d 183, 190 (N.Y. 1986) (holding that decision was not final "until plaintiff has sought and the Commission has granted or denied a certificate of appropriateness or other approval . . . ." (citation omitted)); *Waterways Dev. Corp. v. Lavalle*, 813 N.Y.S.2d 485, 486 (App. Div. 2006) (holding that case was not ripe, because "[t]he plaintiff ha[d] not applied for a building permit for the residential units involving the variance at issue" and "[t]herefore, there [had] been no final determination as to the validity thereof"). Furthermore, generally, even if a plan has been submitted and rejected, a claim is not ripe until the "property owner submit[s] at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348; *see also id.* at 353 ("[F]ailure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe." (citing *Williamson County*, 473 U.S. at 190)); *Bikur Cholim, Inc. v. Village of*

*Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) ("In general, . . . failure to seek a variance

prevents a zoning decision from becoming ripe."); *S&R Dev. Estates*, 588 F. Supp. 2d at 461–64

(dismissing claims on ripeness grounds, where the plaintiff had not applied for a variance);

*Goldfine*, 80 F. Supp. 2d at 159 (same); *Korcz v. Elhage*, 767 N.Y.S.2d 737, 738–39 (App. Div.

2003) (same); *Dick's Quarry, Inc. v. Town of Warwick*, 739 N.Y.S.2d 464, 464–65 (App. Div.

2002) (same).  In the end, "[a] case is ripe when the court 'can look to a final, definitive position

from a local authority to assess precisely how [a property owner] can use [his or her] property.'"

*Bikur Cholim*, 664 F. Supp. 2d at 275 (quoting *Murphy*, 402 F.3d at 347).  And because

"[r]ipeness is a jurisdictional inquiry," it is Plaintiffs' burden to establish that a final decision has

been rendered.  *Murphy*, 402 F.3d at 347.  Thus, the Court "presume[s] that [it] cannot entertain

[Plaintiffs'] claims 'unless the contrary appears affirmatively from the record.'"  *Id.* (quoting

*Renne v. Geary*, 501 U.S. 312, 316 (1991)).

  The Second Circuit has held that the final decision rule: (1) "aids in the development of a

full record"; (2) ensures that a court "will . . . know precisely how a regulation will be applied to

a particular parcel"; (3) recognizes the possibility that, by granting a variance, the administrative

body "might provide the relief the property owner seeks without requiring judicial entanglement

in constitutional disputes"; and (4) "evinces the judiciary's appreciation that land use disputes

are uniquely matters of local concern more aptly suited for local resolution."  *Murphy*, 402 F.3d

at 348.

  <u>B. Analysis</u>

  Plaintiffs argue that the existence of the Challenged Laws preclude Plaintiffs "from

building and operating a Rabbinical College."  (Compl. ¶ 1.)  Specifically, Plaintiffs seek relief

from the Challenged Laws which define "educational institutions" and their accompanying

"dormitories." (*Id.* ¶¶ 133–39, 160–64.)  But Plaintiffs find themselves in exactly the same position that led the Second Circuit to conclude that they lacked standing to assert identical claims against the Village:

> Tartikov . . . never submitted a formal proposal for the [Rabbinical College], applied for a permit, or engaged in any other conduct that would implicate or invoke the operation of the [Challenged Laws]. Whatever harm may arise from the application of the zoning laws to [Tartikov's] property is merely conjectural at this time.

*Tartikov I*, 945 F.3d at 110.  Notwithstanding this clear edict, Plaintiffs have not submitted a formal proposal for the Rabbinical College, they have not applied for a permit, nor have they engaged in any other conduct that would implicate or invoke the Challenged Laws.  (*See generally* Compl.)  As the Second Circuit explained, the conjectural injuries as alleged in the Complaint do not suffice to confer standing under Article III.  *Id.*  The Court still does not know "precisely how [Plaintiffs] can use their property" as implicated in this zoning dispute between Plaintiffs and the Village.  *Murphy*, 402 F.3d at 347.  Thus, "[a] federal lawsuit at this stage would inhibit the kind of give-and-take negotiation that often resolves land use problems, and would in that way impair or truncate a process that must be allowed to run its course."  *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014).

Instead, Plaintiffs attempt to use a text amendment to obtain standing.  Specifically, Tartikov asserts that it "availed itself of the only conduct available to it that may permit its Rabbinical College use, a petition for a text amendment."  (Compl. ¶ 221.)  Indeed, on February 7, 2020, Tartikov submitted its petition for a text amendment.  (*Id.* ¶¶ 206–07; Petition for Text Amendment (the "Petition") (Dkt. No. 44-1).)  The Petition states as follows:

> WHEREAS, Congregation Rabbinical College of Tartikov, Inc. ("Tartikov") is a New York religious corporation formed to establish a rabbinical college as a Torah community for its students and teachers on property that it owns in the Village of Pomona;

THEREFORE, Tartikov hereby petitions the Board of Trustees of the Village of Pomona, pursuant to Pomona Village Code §§ 130-35-45, to repeal Local Law No. 1 of 2001 and Local Law No. 5 of 2004.

(Petition at 3.)  The Petition seeks a repeal of the Challenged Laws in their entirety.  (*Id.*)

The Petition as to the Challenged Laws is insufficient to establish a concrete, particularized, and actual injury-in-fact to confer standing to Plaintiffs.  Under the Village Code with respect to zoning provisions,  a "petition for any amendment of this chapter . . . *shall describe the proposed changes.*"  Village Code, § 130-36 (emphasis added).  Under this provision, any proposed amendments must describe the changes to the zoning language.  *Id.* Plaintiffs' Petition offers no description whatsoever as to what they wish to amend.  (*See generally* Petition.)  Instead, Plaintiffs only sought to repeal the Challenged Laws.  (*Id.*)  From this, Plaintiffs argue that the Village's refusal to consider their petition to repeal the Challenged Laws is a "final decision," sufficient to confer standing.  However, "a final decision is 'a definitive position on the issue that inflicts an actual, concrete injury."  *R-Goshen LLC v. Village of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003); *aff'd*, 115 F. App'x 465 (2d Cir. 2004) (quoting *Williamson County*, 473 U.S. at 193).  Here, no such final decision from the Village exists.  In a land-use dispute,

a final decision requires that a development plan must be submitted, considered[,] and rejected by the governmental entity.  Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property.

*BT Holdings, LLC v. Vil. of Chester*, 15-CV-1986, 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), *aff'd*, 670 F. App'x. 17 (2d Cir. 2016) (quotation marks omitted); *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 F. App'x 521, 525 (2d Cir. 2018) (summary order) ("The final-decision rule is designed to aid courts in understanding exactly how

16

a litigant is being harmed by a land use designation, and to prevent litigants from rushing into federal courts when the harm could be avoided through a local process."); *Sunrise Detox*, 769 F.3d at 123 ("[A] plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision."); *Murphy*, 402 F.3d at 348 (noting that the final-decision requirement in a land-use context "conditions federal review on a property owner submitting at least one meaningful application for a variance."); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) ("The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over the matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution."); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 95–99 (2d Cir. 1992) (noting that a federal court may review a land use decision by a municipal agency only if that agency has reached a "final decision"); *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009) *aff'd*, 414 F. App'x 350 (2d Cir. 2011) ("In a land use development context, a final decision requires that 'a development plan must be submitted, considered and rejected by the governmental entity.  Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property.'"); *S&R Dev. Estates*, 588 F. Supp. 2d at 461 (explaining that in the land use development context, a final decision requires that a development plan be "submitted, considered and rejected by the governmental entity with the power to implement zoning regulations."); *Goldfine*, 80 F. Supp. 2d at 160 ("Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action."); *Tri–State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *3 (N.D.N.Y.

Feb.13, 1998) ("It is well settled that federal courts should not act as municipal zoning boards of appeal . . . ."). Plaintiffs only articulate the desire to build the Rabbinical College, but do not allege facts to show a submission to the Village of an actual proposal or special permit request; instead they have submitted their Petition to repeal the Challenged Laws based on a theoretical plan. This is not sufficient to establish a concrete and particularized ripe injury – since the Court at this juncture still cannot discern the "harm [that] may arise from [the Village's] application of the zoning laws to [the Subject Property]," such injuries remain merely conjectural. *Tartikov I*, 945 F.3d at 110. "[H]ypothetical future harm 'rel[ying] on a highly attenuated chain of possibilities' . . . 'does not satisfy the requirement that threatened injury must be certainly impending.'" *Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*, No. 17-CV-5376, 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018), *aff'd*, 756 F. App'x 71 (2d Cir. 2019). Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); to do so would render Article III with "no real limitation," *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990).

Simply put, the final decision requirement in land-use disputes defers the Court's review of Plaintiffs' claims until they have "arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347. First, as discussed previously, Plaintiffs have not made an application of any sort to obtain a final decision from the Village. "In order to have a final decision, 'a development plan *must be submitted, considered, and rejected by the governmental entity.*" *Goldfine*, 80 F. Supp. 2d at 159 (emphasis added). Still, even had Plaintiffs submitted a proposal, "where [plaintiffs] appl[y] for approval of a subdivision plan and [it] is rejected, a claim is not ripe until [plaintiffs] also seek[] variances that would allow it to develop the property." *Id.* Again, Plaintiffs have never submitted a formal development plan for the Rabbinical College. Second, the Village has

18

not rendered a "definitive position" regarding Plaintiffs' desire to build a Rabbinical College. *See Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78–79 (E.D.N.Y. 2016) ("A plaintiff cannot have received a final decision without submitting a plan for development of the property for its intended or another use and seeking available variances or waivers of the requirements at issue.").  Plaintiffs instead ask this Court to intervene on an incomplete factual record where Plaintiffs do not point to any final determination by the Village about Plaintiffs' hypothetical plans to build the Rabbinical College on the Subject Property or the submission and rejection of an actual plan.[5]  Nothing prevents Plaintiffs from submitting a proposal to the Village or a request for special permit or variance.  On the record before the Court, Plaintiffs have not plausibly alleged that the Village made clear that all applications for relief to build the Rabbinical College will be denied.  *See Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444–45 (2d Cir. 2008) (summary order) (finding plaintiff's claim unripe where it failed to allege that the town entities charged with implementing zoning regulations have made clear that applications for relief will be denied).  In sum, Plaintiffs must submit a development proposal to the Village, and then, if necessary, pursue relief through a text amendment or variance that actually describes any proposed changes, which would ripen their claims.  *Thomas v. Town of Mamakating*, 792 F. App'x 24, 27 (2d Cir. 2019) (summary order) ("Because [plaintiff] can still seek a use variance from the zoning board and has not done so, we cannot evaluate how the [t]own's zoning rules will ultimately be applied to [his] property."); *Islamic Cmty. Ctr.*, 742 F.

---

[5] Also, the Village was not required to consider Plaintiffs' Petition.  *See e.g.*, *Structural Tech., Inc. v. Foley*, 868 N.Y.S.2d 228, 229 (App. Div. 2008) (explaining that the town need not consider and vote on every application for a zoning change); *Wolff v. Town/Village of Harrison*, 816 N.Y.S.2d 186, 187 (App. Div. 2006) (noting that the town board is not "duty-bound" to act upon a petitioner's application because amendment of a zoning ordinance is a purely legislative function) (collecting cases).

App'x at 525 (explaining that plaintiff's "failure to attain a final decision on its application by availing itself of the local procedure that could remedy its alleged harm—whatever that may be, since none has yet been articulated—bars it from litigating this claim in federal court"); *Bar-Mashiah v. Inc. Vill. of Hewlett Bay Park*, No. 18-CV-4633, 2019 WL 4247593, at *8 (E.D.N.Y. Sept. 6, 2019) ("Plaintiffs' failure to affirmatively plead or otherwise present evidence that they sought a 'final decision' from the agency responsible for administering the [v]illage zoning code . . . necessarily prevents them from being able to satisfy their burden with respect to subject matter jurisdiction."); *BT Holdings*, 2016 WL 796866, at *4 (finding that because plaintiff had not alleged that defendant had made clear that applications for the requested relief will be denied, plaintiff failed to satisfy the final decision requirement under *Williamson County*); *Marathon Outdoor, LLC v. Vesconti*, 107 F. Supp. 2d 355, 362 (S.D.N.Y. 2000) (final decision requirement lacking because plaintiff failed to seek variance or waiver from applicable authority).

Plaintiffs urge the Court to apply the futility exception to the finality requirement to render their claims ripe for judicial review.  (Pls.' Reply at 8–11.)  To invoke the futility exception, a plaintiff in a land use dispute may be "excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile," such as when "a zoning agency . . . has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349.  District courts "have found that in order to invoke the futility exception, a plaintiff must demonstrate: (1) the inevitability of refusal of their application, taking into consideration factors such as the defendants' hostility, delay and obstruction; and (2) that plaintiff has filed at least one meaningful application." *Quick Cash of Westchester Ave. LLC v. Village of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *8 (S.D.N.Y. 2013) (quoting *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009)).

Importantly, "the futility exception does not discharge . . . a[] [property] owner's obligation to file one meaningful development proposal." *Tartikov I*, 915 F. Supp. 2d 574, 602 (S.D.N.Y. 2013) (quotation marks omitted); *see also Goldfine*, 80 F. Supp. 2d at 160 ("The Second Circuit has refused to apply the futility exception to the final decision requirement where the plaintiff has submitted, and had denied, only one application for a land-use permit.").

The futility doctrine does not apply to Plaintiffs.  As discussed, Plaintiffs have submitted no application, let alone a meaningful one, regarding the Rabbinical College to the Village. Nothing prevents Plaintiffs from submitting a formal proposal, applying for a permit, seeking a waiver or variance, or proposing a petition to the Village which describes the changes which they seek in order to build the Rabbinical College.[6]  Courts have repeatedly dismissed cases in a similar posture.  *See, e.g., Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, No. 19-CV-443, 2021 WL 1226930, at *14 (S.D.N.Y. Mar. 31, 2021), *on reconsideration*, No. 19-CV-443, 2021 WL 3605041 (S.D.N.Y. Aug. 13, 2021) (dismissing claims as unripe where plaintiffs failed to allege that they had submitted a development plan for approval or sought a variance); *Liu v. N.Y.C. Campaign Fin. Bd.*, No. 14-CV-1687, 2016 WL 5719773, at *6 (S.D.N.Y. Sept. 29, 2016) (holding, where the challenged law "was never applied to [the] [p]laintiffs," that "the only arguable harm that they have been subjected to is the mere existence of an allegedly unconstitutional law" (citation and quotation marks omitted)); *Cashman v. Lane*, No. 14-CV-1539, 2016 WL 1305106, at *3 (D. Conn. Mar. 31, 2016) (finding no subject matter

---

[6] The Court notes that Plaintiffs bring claims regarding the 2001 Law even though they recently represented to the Supreme Court that this zoning provision "do[es] not prevent [Plaintiffs] from building and operating the planned [R]abbinical [C]ollege." (Pls.' Reply Brief for Cert. Before the Supreme Court) 5 (Dkt. 44-9).)  Plaintiffs further concede "[t]he former zoning code provisions enacted through [the 2001 Law] present no obstacle to [Plaintiffs] in constructing, opening, and operating their planned [R]abbinical College."  (*Id.* at 7.)

jurisdiction where the plaintiffs "neither pleaded nor presented any evidence that a final decision

has been entered or that they sought a variance or exception" and "neither pleaded nor presented

evidence that such an appeal or variance request would be futile").

Plaintiffs attempt to cast their claims as a facial rather than an as-applied attack on the

Challenged Laws.  (Pls.' Reply at 1–8.)  A facial challenge is one that "address[es] not the

application of [an ordinance] to a particular set of plaintiffs . . . , but the [legality] of the

[ordinance]" itself.  *Washington v. Glucksberg*, 521 U.S. 702, 740 (1997) (Stevens, J.,

concurring); *see also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp*., 462 F.3d 219, 228 (2d

Cir. 2006) ("Facial and as-applied challenges differ in *the extent to which* the invalidity of a

statute need be demonstrated (facial, in all applications; as-applied, in a personal application)."

(emphasis in original)), *overruled on other grounds*, *Bond v. United States*, 131 S. Ct. 2355

(2011).  Plaintiffs only bring claims regarding the Challenged Laws *as they apply to them* –

which is squarely an as-applied, not facial, challenge.  Plaintiffs even concede that the

Challenged Laws are facially neutral, further dooming their claim.  (*See* Compl. ¶ 6 ("[The

Second Circuit] held that Plaintiffs did not have 'standing' to challenge the Laws (even facially);

*id.* ¶ 204 ("[T]he Second Circuit ruled that Plaintiffs lack standing to facially challenge the

provisions of the zoning code . . . ."); *id.* ¶ 254 ("Local Law No. 5 of 2004 is facially neutral with

respect to race, color, national origin, religion, sex, familial status, and disability . . . ."); ¶ 255

("Despite the facial neutrality of Local Law No. 5 of 2004, it inflicts a disparate impact on

Orthodox/Hasidic Jews, who are required by their religion to marry young, have large families,

and to devote themselves to study of the Torah to the exclusion of other activities that detract

therefrom.")  But Plaintiffs veiled attempts to characterize their challenge as a facial one is not

controlling.  *See e.g., Islamic Cmty. Ctr*, 258 F. Supp. 3d 405, 415 (S.D.N.Y. 2017) (rejecting

plaintiffs' attempts to avoid the *Williamson County* final decision requirement by recharacterizing their claim as a facial instead of as-applied challenge).  As the court explained in *Islamic Community Center*,

> Even a cursory review of the complaint and plaintiffs' arguments reveals that plaintiffs are challenging the application of the [law] to them.  Such challenges are plainly as-applied challenges.  Plaintiffs' arguments to the contrary are belied by the fact that their complaint does not plead or explain how or why the . . . [r]esolution is facially invalid; that is, unconstitutional or illegal on its face.

*Id.*  Similarly, Plaintiffs only attack the Challenged Laws in relation to their specific circumstances rather than on facial grounds.  The Complaint is lacking an explanation as to how or why the Challenged Laws are facially invalid.  Facial challenges do "not create any exception from the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court."  *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796–98 (1984).  Put another way, alleging a facial challenge does not excuse pleading and Article III requirements.  *See Tartikov I*, 945 F. 3d at 110 (finding no jurisdiction where plaintiffs' claims were merely conjectural); *Weissman v. Fruchtman*, 700 F. Supp. 746, 753 (S.D.N.Y. 1988) (dismissing plaintiffs' facial challenges to an ordinance as unconstitutional because it was not specifically applied to them); *accord Williams v. Lew*, 819 F.3d 466, 476 (D.C. Cir. 2016) ("[W]e know of no case stating that a facial challenge to the constitutionality of a statute itself suffices to establish standing, nor do we adopt such a holding.  Unless there is an actual Article III 'Case[ ]' or Controvers[y]' before [the court], we lack jurisdiction.").

Because Plaintiffs have not alleged a cognizable injury and have not received a final decision from the Village as to the Challenged Laws, their claims fail due to lack standing and are not ripe for the Court's review.[7]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted and the Complaint is dismissed without prejudice and Plaintiffs' PI Motion is denied as moot.[8]  Plaintiffs may file an amended complaint within 30 days of the date of this Opinion & Order.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 32, 43.)

SO ORDERED.

Dated:          September 24, 2021
                White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court grants Defendants' Motion To Dismiss on standing and ripeness grounds, the Court will not address Defendants' other arguments regarding Tartikov's status as a "school," "educational institution," or "college."

[8] *See Free Speech v. Reno*, 98-CV-2680, 1999 WL 147743, at *10 (S.D.N.Y. Mar. 18, 1999) (dismissing preliminary injunction as moot because each of plaintiffs' claims was dismissed), *aff'd*, 200 F. 3d 63 (2d Cir. 1999) (per curiam).